**APPENDIX A: PRIOR STATEMENTS BY JANSSEN AND OTHER JOHNSON & JOHNSON COMPANIES REGARDING FORM EMPLOYEE SECRECY AGREEMENTS**

**PART 1:  Prior Statements by Janssen Supporting Defendants' Interpretation of "COMPANY" and the Epstein, *et al.* Employee Secrecy Agreements**

| Janssen Document & Statement(s) Supporting Defendants' Interpretation of "COMPANY"[1] | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| Letter addressed to former Janssen/Centocor employee Christopher Shanahan <br><br> Ex. 10 at JANREM0115494. | Ken Guza, Human Resources Manager, Janssen Pharmaceuticals | Feb. 16, 2012 | Definition of "Companies" similar to definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements: <br><br> Includes separate definition for "Employer." <br><br> *Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 10 at JANREM00115489 (Shanahan Agreement). |
| Letter addressed to former Janssen/Centocor employee James Torrence | Erin Bittenbender, Human Resources Director, | May 6, 2013 | Same definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements. *Compare* Dkts. Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 11 at JANREM0115483 (Torrence |

---

[1] All emphasis added unless otherwise noted.

| Janssen Document & Statement(s) Supporting Defendants' Interpretation of "COMPANY"[1] | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| ██████████████████████ ██████████████████ ███████████ Ex. 11 at JANREM0115487. | Johnson & Johnson | | Agreement). |

**PART 2: Prior Statements by Other J&J Family Companies Supporting Defendants' Interpretation of "COMPANY" and the Epstein, *et al.* Employee Secrecy Agreements**

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| Verified Complaint in *Johnson & Johnson, DePuy Orthopaedics, and DePuy Prods., Inc. v. Biomet, Inc. and Robin T. Barney*, No. C-107-7 (N.J. Sup. Ct.)<br><br>"Money damages would not adequately compensate *plaintiffs* for the losses and injuries they would suffer, leaving *plaintiffs* with no adequate remedy at law. For example, if Biomet knew of Barney's knowledge about plaintiffs' plans in the areas of manufacturing techniques, research and development, product development, marketing plans or financial, pricing and cost information, it would give Biomet a significant and unfair competitive advantage over *plaintiffs*."<br><br>Ex. 15 at JANREM0113056–57. | Riker, Danzig, Scherer, Hyland & Perretti LLP and Barnes & Thornburg LLP, Counsel for Johnson & Johnson, DePuy Orthopaedics, and DePuy Prods., Inc. | May 21, 2007 | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements:<br><br>"the COMPANY means DePuy and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization more than 50% owned by the COMPANY, by Johnson & Johnson or any subsidiary of Johnson & Johnson."<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 15 at JANREM0113066. |
| Verified Complaint in *Ethicon, Inc. and DePuy Orthopaedics, Inc. v. Laura Angelini*, No. 16-cv-01124-BJD-PDB (M.D. Fla.)<br><br>"Importantly, the term 'COMPANY' in | Murphy & Anderson, P.A. and Blank Rome LLP, Counsel for Ethicon, Inc. and | Complaint - Sept. 6 2016<br><br>Declaration | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements:<br><br>"COMPANY means individually and/or collectively DePuy Orthopaedics, Inc., |

3

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| turn, is defined as 'individually and/or collectively DePuy Orthopaedics, Inc., Johnson & Johnson, and all other entities within the Johnson & Johnson Family of Companies, and their respective successors and assigns. An entity is within the Johnson & Johnson Family of Companies if it is at least 50 percent owned by Johnson & Johnson, either directly or indirectly.' *Id*. **Ethicon falls under the definition of COMPANY, because it is a wholly-owned subsidiary of J&J.**"<br><br>Ex. 13 at JANREM0112404.<br><br>Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law in *Ethicon, Inc. and DePuy Orthopaedics, Inc. v. Laura Angelini*, No. 16-cv-01124-BJD-PDB (M.D. Fla.)<br><br>"Laura Angelini is a top executive who worked for the J&J Companies for over twenty-five years and who, unless enjoined, intends to take a position as Worldwide President of the Biosurgery business of a direct competitor, Baxter, on | DePuy Orthopaedics, Inc. | - Sept. 16, 2016 | Johnson & Johnson, and all other entities within the Johnson & Johnson Family of Companies, and their respective successors and assigns. An entity is within the Johnson & Johnson Family of Companies if it is at least 50 percent owned by Johnson & Johnson, either directly or indirectly."<br><br>Includes separate definition for "Employer."<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 13 at JANREM0112416 (Angelini Agreement). |

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| September 12, 2016 in violation of the plain terms of ***her Agreement with the J&J Companies***."<br><br>Ex. 29 at JANREM0112439.<br><br>Declaration of Thiago Licias de Oliveira, Head of Human Resources for DePuy Synthes, re Plaintiffs' Reply In Support of Their Amended Motion For Temporary Restraining Order and Preliminary Injunction in *Ethicon, Inc. and DePuy Orthopaedics, Inc. v. Laura Angelini*, No. 16-cv-01124-BJD-PDB (M.D. Fla.)<br><br>"I explained to Angelini that the Non-Compete does not apply to specific competitors, but relates to the confidential information she has access to and ***if such access could be used against J&J companies*** if she went to a competitor."<br><br>Ex. 30 at JANREM0112911. | | | |
| Verified Complaint in *Johnson & Johnson and Cordis Corp. v. Stentys, Inc. and Jin S. Park*, No. 141-08 (N.J. Sup. Ct.)<br><br>"Overall, Park was involved with 7 patents | Riker, Danzig, Scherer, Hyland & Perretti LLP, Counsel for Johnson & | July 3, 2006 | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements:<br><br>"the COMPANY means CORDIS CORPORATION and JOHNSON & |

5

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| while at Cordis. Significantly, Park is also listed as an inventor on two pending patent applications regarding a new stent for the treatment of coronary and peripheral blockages located in bifurcated vessels and arteries: (1) US 2005/0288771 A1 and (2) US 2005/031524 A1. …<br><br>Pursuant to Paragraph 1 of the Agreement, ***plaintiffs own all inventions, patentable or not, developed by Park while at plaintiffs***."<br><br>Ex. 9 at JANREM0113321. | Johnson and Cordis Corp. | | JOHNSON and any of their successors or assigns, purchasers, acquirers and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization more than 50% owned by the COMPANY, by Johnson & Johnson or any subsidiary of Johnson & Johnson."<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 9 at JANREM0113333 (Park Agreement). |
| <u>Verified Complaint in *Johnson & Johnson and Cordis Corp. v. EV3, Inc., Rhonda Barr, Andrew Fitzpatrick and Brendan McKeever*, No. 09-06306-GEB (N.J. Sup. Ct.)</u><br><br>"To prevent immediate and irreparable harm, *plaintiffs* seek injunctive relief to stop the flagrant pirating of plaintiffs' top-performing Sales Representatives by ev3 and to enforce the Individual Defendants' covenants not to compete, covenants not to solicit *plaintiffs'* customers and common law duties owed to plaintiffs, including the | Riker, Danzig, Scherer, Hyland & Perretti LLP, Counsel for Johnson & Johnson and Cordis Corp. | Complaint - Dec. 10, 2009<br><br>Motion - Dec. 11, 2009 | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements:<br><br>"the COMPANY means CORDIS CORPORATION, and JOHNSON & JOHNSON, and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or |

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| duty of loyalty.  In addition to injunctive relief, *plaintiffs* seek an award of damages that they have sustained or will sustain."<br><br>Ex. 7 at JANREM0112988.<br><br><u>Brief In Support of Plaintiffs' Application for Temporary Restraining Order and Accelerated Discovery in *Johnson & Johnson and Cordis Corp. v. EV3, Inc., Rhonda Barr, Andrew Fitzpatrick and Brendan McKeever*, No. 09-06306-GEB (N.J. Sup. Ct.)</u><br><br>"The Individual Defendants entered into valid, enforceable Employee Secrecy, Non-Competition and Non-Solicitation Agreements ("Agreement") with *plaintiffs*, which contained non-disclosure, non-compete and non-solicitation covenants.<br><br>During their tenure at Cordis, the Individual Defendants had access to and acquired intimate knowledge *plaintiffs'* customer relationships and confidential, proprietary and trade secret information, including pricing, marketing and research and development efforts and strategies." | | | organization at least 50% owned by the COMPANY, by Johnson & Johnson or by any subsidiary of Johnson & Johnson."<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 7 at JANREM0113022 (Barr Agreement).<br><br>"the COMPANY means CORDIS CORPORATION, and JOHNSON & JOHNSON, and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future.  Affiliates of the COMPANY are any corporation, entity or organization at least 50% owned by the COMPANY, by Johnson & Johnson or by any subsidiary of Johnson & Johnson."<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 7 at JANREM0113036 (McKeever Agreement). |

7

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| Ex. 8 at 1.<br><br>"First, the Agreement's post-employment restrictions are reasonable, and are narrowly drafted to **protect J&J's and Cordis' legitimate interests** in their customer relationships and confidential, proprietary and trade secret information."<br><br>Ex. 8 at 12. | | | |
| Verified Complaint in <u>*DePuy Spine, Inc. and Johnson & Johnson Regenerative Therapeutics, LLC v. Stryker Biotech LLC and G. Joseph Ross*, No. 07-1464-GLSI (Mass. Sup. Ct.)</u><br><br>"The Agreement is enforceable by DePuy Spine and JJRT."<br><br>Ex. 5 at JANREM0113344.<br><br>"At the time that Stryker Biotech hired Ross, it knew Ross was subject to a non-competition and non-solicitation agreement. Stryker Biotech reviewed the Agreement in advance of offering to hire Ross. Stryker Biotech's hiring of Ross was in knowing violation of **Ross's Agreement** | Nutter, McClennen & Fish LLP, Counsel for DePuy Spine, Inc. and Johnson & Johnson Regenerative Therapeutics (JJRT) | April 5, 2007 | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements:<br><br>"the COMPANY means DePuy Spine, and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization more than 50% owned by the COMPANY, by Johnson & Johnson or any subsidiary of Johnson & Johnson."<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 5 at JANREM0113354 |

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| *with JJRT and DePuy Spine.*"<br><br>Ex. 5 at JANREM0113345.<br><br><u>Plaintiffs' Motion for Preliminary Injunction, or Alternatively, for Temporary Restraining Order in *DePuy Spine, Inc. and Johnson & Johnson Regenerative Therapeutics, LLC v. Stryker Biotech LLC and G. Joseph Ross*, No. 07-1464-GLSI (Mass. Sup. Ct.)</u><br><br>"***As a former employee of DePuy Spine, Ross is subject to non-competition and non-solicitation covenants with DePuy Spine and JJRT***, which prohibit him from taking employment in a position where he can utilize confidential information of the Companies to 'enhance the use or marketability' of products which 'resemble or compete' with a product of DePuy Spine or JJRT. ***Ross's Agreement with the Companies*** also prohibits Ross from assisting other companies in the solicitation of customers with whom Ross has had contact in the twelve months prior to terminating his employment with DePuy Spine."<br><br>Ex. 4 at 2. | | | (Ross Agreement). |

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| Memorandum In Support of Plaintiffs' Motion for Preliminary Injunction, or Alternatively, for Temporary Restraining Order in *DePuy Spine, Inc. and Johnson & Johnson Regenerative Therapeutics, LLC v. Stryker Biotech LLC and G. Joseph Ross*, No. 07-1464-GLSI (Mass. Sup. Ct.)<br><br>"The term 'Company' is defined to include not only DePuy Spine but also 'JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates.' Agreement, § 1."<br><br>Ex. 4 at 7. | | | |
| First Amended Verified Complaint in *LifeScan, Inc., Diabetes Diagnostics, Inc., and Inverness Med. Ltd. v. Daniel F. O'Connell and Agamatrix, Inc.*, No. 2004-02043-C (Mass. Sup. Ct.) ▮ | Nutter, McClennen & Fish LLP, Counsel for LifeScan, Inc., Diabetes Diagnostics, Inc., and Inverness Med. Ltd. | | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements. ▮ |

10

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| ███████████████<br><br>Ex. 6 at JANREM0115564.<br><br>███████████████<br><br>Ex. 6 at JANREM0115569. | | | ███████████████<br><br>*Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 6 at JANREM0115585 (O'Connell Agreement). |
| Complaint in <u>*Johnson & Johnson, DePuy, Inc. and DePuy Spine, Inc. v. Steven F. McAllister, Biomet, Inc., EBI Holdings, Inc. and EBI, LP,* No. MID-C-227-07 (N.J. Sup. Ct.)</u><br><br>"McAllister's intended and actual | Riker, Danzig, Scherer, Hyland & Perretti LLP, Counsel for Johnson & Johnson, DePuy, | Oct. 27, 2007 | Similar definition of "Company" as found in Epstein, Monsell, Marsh, and Ozturk agreements.<br><br>"the COMPANY means DePuy AcroMed, and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers |

11

| J&J Family Company Document(s) & Statement(s) Supporting Defendants' Interpretation of "COMPANY" | Author | Date | Definition of "COMPANY" |
|---|---|---|---|
| employment with Biomet Spine and Trauma will and do constitute a breach of the Agreement because McAllister would be employed by a Conflicting Organization, as defined in the Agreement, within 18 months after termination of his employment with plaintiffs. McAllister's intended employment with Biomet Spine and Trauma also will inevitably induce and require McAllister to breach ***his agreement with plaintiffs*** because he would be joining an organization that is engaged in ***direct competition with plaintiffs*** and McAllister's employment with Biomet Spine and Trauma would make it inevitable that he would disclose Confidential Information that he learned while employed by plaintiffs." <br><br> Ex. 31 at JANREM0113299. | Inc. and DePuy Spine, Inc. | | and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization more than 50% owned by the COMPANY, by Johnson & Johnson or any subsidiary of Johnson & Johnson." <br><br> *Compare* Ex. 1 at JANREM0098780, -98807, -98796, -98813 *with* Ex. 31 at JANREM0113308 (McAllister Agreement). |