# EXHIBIT 1



## EMPLOYEE SECRECY AGREEMENT

Name of Employee: DAVID A. EPSTEIN

Residence Address: 7 SHADY GROVE DRIVE
EAST AMHERST, NY 14051

As used in this Agreement:

The COMPANY means CENTOCOR and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization at least 50% owned by the COMPANY, by Johnson & Johnson or by any subsidiary of Johnson & Johnson.

I means the employee whose name appears above, also referred to by the use of first person pronouns, such as me and my.

INVENTIONS mean discoveries, improvements and/or ideas, whether patentable or not.

CONFIDENTIAL INFORMATION means information disclosed to me or known by me as a result of my employment by the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, about products, processes, technologies, machines, customers, clients, employees, services and strategies of the COMPANY, including, but not limited to, inventions, research, development, manufacturing, purchasing, finance, computer software, computer hardware, automated systems, engineering, marketing, merchandising, selling, sales volumes or strategies, number or location of sales representatives, names or significance of the COMPANY's customers or clients or their employees or representatives, preferences, needs or requirements, purchasing histories, or other customer or client-specific information.

I AM EMPLOYED OR DESIRE TO BE EMPLOYED BY [OPERATING COMPANY] IN A CAPACITY IN WHICH I MAY RECEIVE OR CONTRIBUTE TO THE CREATION OF CONFIDENTIAL INFORMATION.

In consideration of my employment or the continuation of my employment by the COMPANY:

1. I agree to disclose promptly to the COMPANY all INVENTIONS conceived or made by me whether or not during my hours of employment or with the use of the COMPANY's facilities, materials or personnel, either solely or jointly with another or others during my employment with the COMPANY, and related to the actual or anticipated business or activities of the COMPANY, or related to its actual or anticipated research and development or suggested by or resulting from any task assigned to me or work performed by me for, or on behalf of, the COMPANY. I assign and agree to assign my entire right, title and interest therein to the COMPANY. I will not assert any rights under or to any INVENTIONS as having been made or acquired by me prior to my being employed by the COMPANY unless such INVENTIONS are identified on a sheet attached hereto and signed by me and the COMPANY as of the date of this Agreement.

2. I recognize that all works, including, but not limited to reports, computer programs, drawings, documentation and publications, which I prepare within the scope of my employment with the COMPANY, shall be works made for hire and that the worldwide copyrights therein shall be the sole and exclusive property of the COMPANY. In the event that any said copyrightable work or portion thereof shall not be legally qualified as a work made for hire, or shall subsequently be so held to not be a work made for hire, I agree to assign, and do hereby so assign to the COMPANY, all right, title and interest in and to said work or portion thereof. I will promptly and fully disclose all such works to the COMPANY.

3. I shall, whenever requested to do so by the COMPANY, execute any applications, assignments or other instruments which the COMPANY shall consider necessary to apply for and obtain Letters Patent, trademark and/or copyright registrations in the United States, or any foreign country, or to protect otherwise the COMPANY's interests. These obligations shall continue beyond the termination of my employment with the COMPANY with respect to INVENTIONS, trademarks or copyrightable works conceived, authored or made by me during my period of employment, and shall be binding upon my executors, administrators, or other legal representatives.

4. I shall not disclose to the COMPANY or induce the COMPANY to use any secret, proprietary or confidential information or material belonging to others, including my former employers, if any. I am aware of no agreement, contract, non-compete covenant, non-

Centocor, Inc.·200 Great Valley Parkway·Malvern, Pennsylvania 19355-1307·Telephone (610) 651-6000·Facsimile (610) 651-6100

CONFIDENTIAL                                                                JANREM0098780

disclosure/secrecy agreement or similar restriction that would in any way restrict, limit or prohibit my employment by the COMPANY that I have not disclosed and provided to the COMPANY.

5. I recognize that CONFIDENTIAL INFORMATION is of great value to the COMPANY, that the COMPANY has legitimate business interests in protecting its CONFIDENTIAL INFORMATION, and that the disclosure to anyone not authorized to receive such information will cause immediate irreparable injury to the COMPANY. Unless I first secure the COMPANY's written consent, I will not disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION. I understand and agree that my obligations not to disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION shall continue after termination of my employment for any reason. I understand and acknowledge that if I violate this Agreement or am about to violate this Agreement, the COMPANY shall have the right, and be entitled to, in addition to any other remedies it may have, injunctive relief.

6. Upon termination of my employment with the COMPANY for any reason, I shall turn over to a designated individual employed by the COMPANY, all property then in my possession or custody and belonging to the COMPANY, including any computer equipment. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of the COMPANY and which were entrusted to me or obtained by me at any time during my employment with the COMPANY.

7. I hereby consent and agree to assignment by the COMPANY of this Agreement and all rights and obligations hereunder including, but not limited to, an assignment in connection with any merger, sale, transfer or acquisition by the COMPANY or relating to all or part of its assets, divisions and/or affiliates.

8. Nothing herein shall limit or reduce my common law duties to the COMPANY, including but not limited to my duty of loyalty.

9. This Agreement shall be interpreted according to the laws of the State of New Jersey without regard to the conflict of law rules thereof. I agree that any action relating to or arising out of this Agreement may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. I consent to personal jurisdiction and venue in both such courts and to service of process by United States Mail or express courier service in any such action.

10. In the event that any provision of this Agreement is invalidated or unenforceable under applicable law, that shall not affect the validity or enforceability of the remaining provisions. To the extent that any provision of this Agreement is unenforceable because it is overbroad, that provision shall be limited to the extent required by applicable law and enforced as so limited.

11. The following applies only to a California, Minnesota or North Carolina employee: Notification is hereby given that paragraph 1 does not apply to an invention to the extent that no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely by me on my own time, and (a) which does not relate (i) to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by me for the COMPANY.

12. The following applies only to a State of Washington employee: Notification is hereby given that paragraph 1 does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the COMPANY.

I ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, and agree that with respect to the subject matter hereof it is my entire agreement with the COMPANY, superseding any previous oral or written communications, representations, understandings, or agreements with the COMPANY or any of its officials or representatives.

DATE: *April 10, 2001*

EMPLOYEE *David A. Epstein*
Name *DAVID A. EPSTEIN*
Address *7 SHADY GROVE DRIVE*
City/State *EAST AMHERST, NY 14051*

- 2 -

Revised 11/16/00

CONFIDENTIAL

JANREM0098781



**EMPLOYEE SECRECY, NON-COMPETITION
AND NON-SOLICITATION AGREEMENT**

Name of Employee: _Roger J. Monsell_

Residence Address: _5308 Woodview Way_
_Malvern, PA 19355_

As used in this Agreement:

**The COMPANY** means CENTOCOR and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization at least 50% owned by the COMPANY, by Johnson & Johnson or by any subsidiary of Johnson & Johnson.

**I** means the employee whose name appears above, also referred to by the use of first person pronouns, such as me and my.

**INVENTIONS** mean discoveries, improvements and/or ideas, whether patentable or not.

**CONFIDENTIAL INFORMATION** means information disclosed to me or known by me as a result of my employment by the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, about products, processes, technologies, machines, customers, clients, employees, services and strategies of the COMPANY, including, but not limited to, inventions, research, development, manufacturing, purchasing, finance, computer software, computer hardware, automated systems, engineering, marketing, merchandising, selling, sales volumes or strategies, number or location of sales representatives, names or significance of the COMPANY's customers or clients or their employees or representatives, preferences, needs or requirements, purchasing histories, or other customer or client-specific information.

**CONFLICTING PRODUCT** means any product, process, technology, machine, invention or service of any person or organization other than the COMPANY in existence or under development which resembles or competes with a product, process, technology, machine, invention or service upon which I shall have worked or about which I become knowledgeable as a result of employment with the COMPANY and whose use or marketability could be enhanced by application to it of CONFIDENTIAL INFORMATION which I shall have had access to during my employment.

**CONFLICTING ORGANIZATION** means any person or organization which is engaged in or about to become engaged in research on, consulting regarding, or development, production, marketing, or selling of a CONFLICTING PRODUCT.

I recognize that the business in which the COMPANY is engaged is extremely competitive and that the COMPANY will be providing me with CONFIDENTIAL INFORMATION both at the commencement of my employment and thereafter and may also be providing me with the opportunity to contribute to the creation of CONFIDENTIAL INFORMATION, which will assist both the COMPANY and me in competing effectively. I recognize that CONFIDENTIAL INFORMATION is significant to the COMPANY'S competitive position and that the COMPANY therefore expects me to keep it secret and also expects me not to compete with the COMPANY during my employment and for a period of time thereafter.

Accordingly, in consideration of the receipt of CONFIDENTIAL INFORMATION, my employment or the continuation of my employment by the COMPANY, and other benefits being provided to me in connection with this Agreement, including those provided pursuant to paragraph 9:

1. I agree to disclose promptly to the COMPANY all INVENTIONS conceived or made by me whether or not during my hours of employment or with the use of the COMPANY's facilities, materials or personnel, either solely or jointly with another or others during my employment with the COMPANY, and related to the actual or anticipated business or activities of the COMPANY, or related to its actual or anticipated research and development or suggested by or resulting from any task assigned to me or work performed by me for, or on behalf of, the COMPANY. I assign and agree to assign my entire right, title and interest therein to the COMPANY. I will not assert any rights under or to any INVENTIONS as having been made or acquired by me prior to my being employed by the COMPANY unless such INVENTIONS are identified on a sheet attached hereto and signed by me and the COMPANY as of the date of this Agreement.

2. I recognize that all works, including, but not limited to reports, computer programs, drawings, documentation and publications, which I prepare within the scope of my employment with the COMPANY, shall be works made for hire and that the worldwide copyrights therein shall be the sole and exclusive property of the COMPANY. In the event that any said copyrightable work or portion thereof shall not be legally qualified as a work made for hire, or shall subsequently be so held to not be a work made for hire, I agree to assign, and do hereby so assign to the COMPANY, all right, title and interest in and to said work or portion thereof. I will promptly and fully disclose all such works to the COMPANY.

Centocor, Inc.·200 Great Valley Parkway·Malvern, Pennsylvania 19355-1307·Telephone (610) 651-6000·Facsimile (610) 651-6100

3. I shall, whenever requested to do so by the COMPANY, execute any applications, assignments or other instruments which the COMPANY shall consider necessary to apply for and obtain Letters Patent, trademark and/or copyright registrations in the United States, or any foreign country, or to protect otherwise the COMPANY's interests. These obligations shall continue beyond the termination of my employment with the COMPANY with respect to INVENTIONS, trademarks or copyrightable works conceived, authored or made by me during my period of employment, and shall be binding upon my executors, administrators, or other legal representatives.

4. I shall not disclose to the COMPANY or induce the COMPANY to use any secret, proprietary or confidential information or material belonging to others, including my former employers, if any. I am aware of no agreement, contract, non-compete covenant, non-disclosure/secrecy agreement or similar restriction that would in any way restrict, limit or prohibit my employment by the COMPANY that I have not disclosed and provided to the COMPANY.

5. I recognize that CONFIDENTIAL INFORMATION is of great value to the COMPANY, that the COMPANY has legitimate business interests in protecting its CONFIDENTIAL INFORMATION, and that the disclosure to anyone not authorized to receive such information, including a CONFLICTING ORGANIZATION, will cause immediate irreparable injury to the COMPANY. Unless I first secure the COMPANY's written consent, I will not disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION. I understand and agree that my obligations not to disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION shall continue after termination of my employment for any reason.

6. During my employment with the COMPANY and for a period of eighteen (18) months after termination of my employment with the COMPANY for any reason, I will not render services, directly or indirectly, to any CONFLICTING ORGANIZATION in the United States, or in any foreign country or territory in which the services I may provide could enhance the use or marketability of a CONFLICTING PRODUCT by application of CONFIDENTIAL INFORMATION which I shall have had access to during my employment, except that I may accept employment with a CONFLICTING ORGANIZATION whose business is diversified and which is, as to that part of its business in which I accept employment, not a CONFLICTING ORGANIZATION, provided that the COMPANY, prior to my accepting such employment, shall receive separate written assurances satisfactory to the COMPANY from such CONFLICTING ORGANIZATION and from me, that I will not render services directly or indirectly, for an 18-month period, in connection with any CONFLICTING PRODUCT. I also agree that during my employment with the COMPANY and for a period of 18 months thereafter, I will not render services to any other organization or person in a position in which I could use CONFIDENTIAL INFORMATION to the detriment of the COMPANY.

7. I recognize that the COMPANY's relations with its accounts, customers and clients represents an important business asset that results from the COMPANY's significant investment of its time and resources. I further recognize that by virtue of my employment by the COMPANY, I have gained or may gain relationships with the accounts, customers and clients of the COMPANY, and because of such relationships, I could cause the COMPANY great loss, damage, and immediate irreparable harm, if, during my employment by the COMPANY or subsequent to the termination of such employment for any reason, I should for myself or on behalf of any other person, entity, firm or corporation, sell, offer for sale, or solicit or assist in the sale of a product or service that could compete with a product or service being sold or developed by the COMPANY. I therefore agree that during my employment with the COMPANY and for eighteen (18) months after termination of such employment for any reason, I will not solicit any business from, sell to, or render any service to, or, directly or indirectly, help others to solicit business from or render service or sell to, any of the accounts, customers or clients with whom I have had contact during the last twelve (12) months of my employment with the COMPANY, for any purpose related to the sale of any such product or service. I also agree that for a period of twelve (12) months after termination of employment with the COMPANY for any reason, I will not solicit or hire on my own behalf, or on behalf of others, any COMPANY employee.

8. To enable the COMPANY to monitor my compliance with the obligations imposed by this Agreement, I agree to inform the COMPANY, at the time I give notice of my termination of employment, of the identity of my new employer and of my job title and responsibilities, and will continue to so inform the COMPANY, in writing, any time I change employment during the eighteen (18) months following termination of my employment with the COMPANY for any reason.

9. If I am unable to obtain employment consistent with my training and education solely because of a prohibition of paragraph 6 or 7 of this Agreement, or if I am able to obtain only a position in which my Gross Monthly Pay is less than what I last received from the COMPANY as Gross Monthly Pay, then any prohibition of those paragraphs that caused me to be unable to obtain such employment (or that is responsible for the above-referenced differential in pay), shall bind me only as long as the COMPANY shall make monthly payment to me equal to the lesser of (a) the amount last received from the COMPANY as Gross Monthly Pay, or (b) the difference between my last Gross Monthly Pay at the COMPANY and my Gross Monthly Pay in any subsequent employment. Gross Monthly Pay shall consist of the sum of the following applicable amounts, prorated to a monthly basis: my annual base pay, annual commissions, year-end cash bonus, and the monetary value of my year-end stock award (but not stock option grants, any other extra compensation or benefits). My Gross Monthly Pay at the COMPANY will be based on the amounts actually received by me during the last twelve calendar months I was employed by the COMPANY. My Gross Monthly Pay in any subsequent employment will be based on a projection of the amounts to be received by me during the first twelve months in that employment.

Revised 11/16/00

CONFIDENTIAL

JANREM0098808

10. In order to qualify for the payments provided for in paragraph 9 above, I understand that I must, for each month that I claim payment is due, represent to the Vice President of Human Resources of the COMPANY, in writing within fifteen (15) days following the end of that calendar month, that although I diligently sought employment consistent with my training and education, I was unable to obtain it, or was unable to attain a position in which my Gross Monthly Pay equaled what I last received from the COMPANY as Gross Monthly Pay, as the case may be, solely because of a prohibition of paragraph 6 or 7 of this Agreement. I must also promptly submit such further information as the COMPANY may request to enable it to verify the accuracy of my representation. I understand that the COMPANY shall, at its option, be relieved of making a monthly payment to me for any month with respect to which I have failed to comply with a requirement of this paragraph 10.

11. I further understand that if, at any time within the period of prohibition specified in paragraph 6 or 7, the COMPANY gives me a written release from the prohibition of paragraph 6 or 7 that has been the sole cause of my inability to obtain employment consistent with my training and education or my inability to obtain a position in which my Gross Monthly Pay equals what I last received from the COMPANY as Gross Monthly Pay, as the case may be, then, the COMPANY will no longer be obligated to make the payments that had been required due to those prohibitions.

12. Upon termination of my employment with the COMPANY for any reason, I shall turn over to a designated individual employed by the COMPANY, all property then in my possession or custody and belonging to the COMPANY, including any computer equipment. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents in any form whatsoever (including information contained in computer memory or on any computer disk) relating in any way to the affairs of the COMPANY and which were entrusted to me or obtained by me at any time during my employment with the COMPANY.

13. I understand and acknowledge that if I violate this Agreement or am about to violate this Agreement by disclosing or using information prohibited by paragraph 5 above, accepting employment or providing services prohibited by paragraph 6 or 7 above, or failing to turn over property as required by paragraph 12 above, the COMPANY shall have the right, and be entitled to, in addition to any other remedies it may have, injunctive relief; in other words, I understand and acknowledge that the COMPANY can bar me from disclosing or using such information, bar me from accepting such employment or rendering such services for the periods specified in paragraphs 6 and 7 above, and require that I turn over such property.

14. I hereby consent and agree to assignment by the COMPANY of this Agreement and all rights and obligations hereunder including, but not limited to, an assignment in connection with any merger, sale, transfer or acquisition by the COMPANY or relating to all or part of its assets, divisions and/or affiliates.

15. Nothing herein shall limit or reduce my common law duties to the COMPANY, including but not limited to my duty of loyalty.

16. This Agreement shall be interpreted according to the laws of the State of New Jersey without regard to the conflict of law rules thereof. I agree that any action relating to or arising out of this Agreement may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. I consent to personal jurisdiction and venue in both such courts and to service of process by United States Mail or express courier service in any such action.

17. In the event that any provision of this Agreement is invalidated or unenforceable under applicable law, that shall not affect the validity or enforceability of the remaining provisions. To the extent that any provision of this Agreement is unenforceable because it is overbroad, that provision shall be limited to the extent required by applicable law and enforced as so limited.

18. The following applies only to a California, Minnesota or North Carolina employee: Notification is hereby given that paragraph 1 does not apply to an invention to the extent that no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely by me on my own time, and (a) which does not relate (i) to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by me for the COMPANY.

19. The following applies only to a State of Washington employee: Notification is hereby given that paragraph 1 does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the COMPANY.

20. Nothing contained in this Agreement shall be deemed to confer on me any rights with respect to the duration of my employment with the COMPANY. I UNDERSTAND AND AGREE THAT MY EMPLOYMENT RELATIONSHIP WITH THE COMPANY IS TERMINABLE AT WILL BY EITHER THE COMPANY OR ME, WITH OR WITHOUT CAUSE, EXCEPT THAT IF I INITIATE THE TERMINATION, THERE SHALL BE, AT THE COMPANY'S OPTION, A PERIOD OF UP TO FOURTEEN (14) DAYS AFTER I GIVE WRITTEN NOTICE OF TERMINATION BEFORE THE TERMINATION BECOMES EFFECTIVE. If the COMPANY elects to continue my employment during the notice period, it shall advise me of that fact, and of the duration of the notice period. During any

Revised 11/16/00

CONFIDENTIAL

JANREM0098809

notice period, I will provide such transitional services as the COMPANY may request. The COMPANY will be obligated to continue my pay during the notice period, and my duty of loyalty to the COMPANY shall continue through such period.

I ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, and agree that with respect to the subject matter hereof it is my entire agreement with the COMPANY, superseding any previous oral or written communications, representations, understandings, or agreements with the COMPANY or any of its officials or representatives.

DATE: *July 2, 2001*

EMPLOYEE: *Roger J. Monsell*

Name: *5308 Woodview Way*

Address/City/State: *Malverne, PA 19355*

- 4 -

Revised 11/16/00

CONFIDENTIAL

JANREM0098810

# Centocor

## EMPLOYEE SECRECY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

Name of Employee: Chris Marsh

Residence Address: 1427A Roosevelt Blvd
Vineland NJ 08361

## DEFINITIONS

As used in this Agreement:

the COMPANY means [ CENTOCOR ], and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization at least 50% owned by the COMPANY, by Johnson & Johnson or by any subsidiary of Johnson & Johnson.

I means the employee whose name appears above, also referred to by the use of first person pronouns, such as me and my.

INVENTIONS means discoveries, improvements and/or ideas, whether patentable or not.

CONFIDENTIAL INFORMATION means information disclosed to me or known by me as a result of my employment by the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, about products, processes, machines, customers, clients, employees and services of the COMPANY, including, but not limited to, inventions, research, development, manufacturing, purchasing, finance, data processing, engineering, marketing, merchandising, selling, sales volumes and strategies, number and location of sales representatives, names and significance of the COMPANY's customers and clients and their employees and representatives, preferences, needs and requirements, purchasing histories, and other customer or client-specific information, and comparable information about the products, processes, machines, customers, clients and services of affiliates of the COMPANY acquired by me during my employment by the COMPANY.

CONFLICTING PRODUCT means any product, process, machine, invention or service of any person or organization other than the COMPANY in existence or under development which resembles or competes with a product, process, machine, invention or service upon which I shall have worked or about which I become knowledgeable as a result of employment with the COMPANY and whose use or marketability could be enhanced by application to it of CONFIDENTIAL INFORMATION which I shall have had access to during my employment.

CONFLICTING ORGANIZATION means any person or organization which is engaged in or about to become engaged in research on, consulting regarding, or development, production, marketing, or selling of a CONFLICTING PRODUCT.

I recognize that the business in which the COMPANY is engaged is extremely competitive and that the COMPANY will be providing me with CONFIDENTIAL INFORMATION both at the commencement of my employment and thereafter and may also be providing me with the opportunity to contribute to the creation of CONFIDENTIAL INFORMATION, which will assist both the COMPANY and me in competing effectively. I recognize that CONFIDENTIAL INFORMATION is significant to the COMPANY'S competitive position and that the COMPANY therefore expects me to keep it secret and also expects me not to compete with the COMPANY during my employment and for a period of time thereafter.

Accordingly, in consideration of the receipt of CONFIDENTIAL INFORMATION, my employment or the continuation of my employment by the COMPANY, and the benefits being provided to me pursuant to paragraph 9:

1. I agree to disclose promptly to the COMPANY all INVENTIONS conceived or made by me whether or not during my hours of employment or with the use of the COMPANY's facilities, materials or personnel, either solely or jointly with another or others during my employment with the COMPANY, and related to the actual or anticipated business or activities of the COMPANY, or related to its actual or anticipated research and development or suggested by or resulting from any task assigned to me or work performed by me for, or on behalf of, the COMPANY. I assign and agree to assign my entire right, title and interest therein to the COMPANY. I will not assert any rights under or to any INVENTIONS as having been made or acquired by me prior to my being employed by the COMPANY unless such INVENTIONS are identified on a sheet attached hereto and signed by me and the COMPANY as of the date of this Agreement.

Centocor, Inc. 200 Great Valley Parkway·Malvern, Pennsylvania 19355-1307·Telephone (610) 651-6000·Facsimile (610) 651-6100

CONFIDENTIAL

JANREM0098796

2. I recognize that all works, including, but not limited to reports, computer programs, drawings, documentation and publications, which I prepare within the scope of my employment with the COMPANY, shall be works made for hire and that the worldwide copyright therein shall be the sole and exclusive property of the COMPANY. I will promptly and fully disclose all such works to the COMPANY.

3. I shall, whenever requested to do so by the COMPANY, execute any applications, assignments or other instruments which the COMPANY shall consider necessary to apply for and obtain Letters Patent, trademark and/or copyright registrations in the United States, or any foreign country, or to protect otherwise the COMPANY's interests. These obligations shall continue beyond the termination of my employment with the COMPANY with respect to INVENTIONS, trademarks or copyrightable works conceived, authored or made by me during my period of employment, and shall be binding upon my executors, administrators, or other legal representatives.

4. I shall not disclose to the COMPANY or induce the COMPANY to use any secret, proprietary or confidential information or material belonging to others, including my former employers, if any. I am aware of no agreement, contract, non-compete covenant, non-disclosure/secrecy agreement or similar restriction that would in any way restrict, limit or prohibit my employment by the COMPANY that I have not disclosed and provided to the COMPANY.

5. I recognize that CONFIDENTIAL INFORMATION is of great value to the COMPANY, that the COMPANY has legitimate business interests in protecting its CONFIDENTIAL INFORMATION, and that the disclosure to anyone not authorized to receive such information, including a CONFLICTING ORGANIZATION, will cause immediate irreparable injury to the COMPANY. Unless I first secure the COMPANY's written consent, I will not disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION. I understand and agree that my obligations not to disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION shall continue after termination of my employment for any reason.

6. During my employment with the company and for a period of eighteen (18) months after termination of my employment with the COMPANY for any reason, I will not render services, directly or indirectly, to any CONFLICTING ORGANIZATION in the United States, or in any foreign country or territory in which the services I may provide could enhance the use or marketability of a CONFLICTING PRODUCT by application of CONFIDENTIAL INFORMATION which I shall have had access to during my employment, except that I may accept employment with a CONFLICTING ORGANIZATION whose business is diversified and which is, as to that part of its business in which I accept employment, not a CONFLICTING ORGANIZATION, provided that the COMPANY, prior to my accepting such employment, shall receive separate written assurances satisfactory to the COMPANY from such CONFLICTING ORGANIZATION and from me, that I will not render services directly or indirectly, for an 18-month period, in connection with any CONFLICTING PRODUCT.

7. I recognize that the COMPANY's relations with its accounts, customers and clients represents an important business asset that results from the COMPANY's significant investment of its time and resources. I further recognize that by virtue of my employment by the COMPANY, I have gained or may gain relationships with the accounts, customers and clients of the COMPANY, and because of such relationships, I could cause the COMPANY great loss, damage, and immediate irreparable harm, if, during my employment by the COMPANY or subsequent to the termination of such employment for any reason, I should for myself or on behalf of any other person, entity, firm or corporation, sell, offer for sale, or solicit or assist in the sale of a product or service that could compete with a product or service being sold or developed by the COMPANY. I therefore agree that during my employment with the COMPANY and for eighteen (18) months after termination of such employment for any reason, I will not solicit any business from, sell to, or render any service to, or directly or indirectly, help others to solicit business from or render service or sell to, any of the accounts, customers or clients with whom I have had contact during the last twelve (12) months of my employment with the COMPANY, for any purpose related to the sale of any such product or service. I also agree that for a period of twelve (12) months after termination of employment with the COMPANY for any reason, I will not solicit or hire on my own behalf, or on behalf of others, any COMPANY employee.

8. To enable the COMPANY to monitor my compliance with the obligations imposed by this Agreement, I agree to inform the COMPANY, at the time I give notice of my termination of employment, of the identity of my new employer and of my job title and responsibilities, and will continue to so inform the COMPANY, in writing, any time I change employment during the eighteen (18) months following termination of my employment by the COMPANY for any reason.

9. If I am unable to obtain employment consistent with my training and education solely because of a prohibition of paragraph 6 or 7 of this Agreement, or if I am able to obtain only a position in which my gross monthly income is less than what I last received from the Company as regular monthly base pay (exclusive of extra compensation and employee benefits), then any prohibition of those paragraphs that caused me to be unable to obtain such employment (or that is responsible for the above-referenced differential in pay) shall bind me only as long as the Company shall make payment to me equal to the lesser of (a) the amount last received from the Company as regular monthly base pay, or (b) the difference between the amount I last received from the Company as regular monthly base pay and the gross monthly income that I am receiving in any subsequent employment.

10. In order to qualify for the payments provided for in paragraph 9 above, I understand that I must, for each month that I claim payment is due, represent to the Vice President of Human Resources of the Company, in writing within fifteen (15) days following the end of that calendar month, that although I diligently sought employment consistent with my training and education, I was unable to obtain it, or was unable to obtain a position in which my gross monthly income equaled my last regular monthly base pay at the Company, as the case may be, solely because of a prohibition of paragraph 6 or 7 of this Agreement. I must also promptly submit such further

- 2 -

Revised 6/6/01

CONFIDENTIAL

JANREM0098797

information as the Company may request to enable it to verify the accuracy of my representation. I understand that the Company shall, at its option, be relieved of making a monthly payment to me for any month with respect to which I have failed to comply with a requirement of this paragraph 10.

11. I further understand that if, at any time within the period of prohibition specified in paragraph 6 or 7, the Company gives me a written release from the prohibition of paragraph 6 or 7 that has been the sole cause of my inability to obtain employment consistent with my training and education or my inability to obtain a position in which my gross monthly income equals my last regular monthly base pay at the Company, as the case may be, then, the Company will no longer be obligated to make the payments that had been required due to these prohibitions.

12. Upon termination of my employment with the COMPANY, either prior to or upon my retirement, I shall turn over to a designated individual employed by the COMPANY, all property then in my possession or custody and belonging to the COMPANY, including any computer equipment. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents, including electronic information and property, relating in any way to the affairs of the COMPANY and which were entrusted to me or obtained by me at any time during my employment with the COMPANY.

13. I understand and acknowledge that if I violate this Agreement or am about to violate this Agreement by accepting employment or providing services prohibited by paragraph 6 or 7 above, the COMPANY shall have the right, and be entitled to, in addition to any other remedies it may have, injunctive relief; in other words, I understand and acknowledge that the COMPANY can bar me from accepting such employment or rendering such services for the periods specified in paragraphs 6 and 7 above.

14. I hereby consent and agree to assignment by the COMPANY of this Agreement and all rights and obligations hereunder including, but not limited to, an assignment in connection with any merger, sale, transfer or acquisition by the COMPANY or relating to all or part of its assets, divisions and/or affiliates.

15. Nothing herein shall limit or reduce my common law duties to the COMPANY, including but not limited to my duty of loyalty.

16. This Agreement shall be interpreted according to the laws of the State of New Jersey without regard to the conflict of law rules thereof. I agree that any action relating to or arising out of this Agreement may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. I consent to personal jurisdiction and venue in both such courts and to service of process by United States Mail or express courier service in any such action.

17. In the event that any provision of this Agreement is invalidated or unenforceable under applicable law, that shall not affect the validity or enforceability of the remaining provisions. To the extent that any provision of this Agreement is unenforceable because it is overbroad, that provision shall be limited to the extent required by applicable law and enforced as so limited.

18. The following applies only to a California, Minnesota or North Carolina employee: Notification is hereby given that paragraph 1 does not apply to an invention to the extent that no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely by me on my own time, and (a) which does not relate (i) to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by me for the COMPANY.

19. The following applies only to a State of Washington employee. Notification is hereby given that paragraph 1 does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the COMPANY.

20. Nothing contained in this Agreement shall be deemed to confer on me any rights with respect to the duration of my employment with the COMPANY. I UNDERSTAND AND AGREE THAT MY EMPLOYMENT RELATIONSHIP WITH THE COMPANY IS TERMINABLE AT WILL BY EITHER THE COMPANY OR ME, WITH OR WITHOUT CAUSE, EXCEPT THAT IF I INITIATE THE TERMINATION, THERE SHALL BE, AT THE COMPANY'S OPTION, A PERIOD OF UP TO FOURTEEN (14) DAYS AFTER I GIVE WRITTEN NOTICE OF TERMINATION BEFORE THE TERMINATION BECOMES EFFECTIVE. If the Company elects to continue my employment during the notice period, it shall advise me of that fact, and of the duration of the notice period. During any notice period, I will provide such transitional services as the Company may request. The Company will be obligated to pay me my full base salary during the notice period, and my duty of loyalty to the Company shall continue through such period.

Revised 6/6/07

CONFIDENTIAL

JANREM0098798

I ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, and agree that with respect to the subject matter hereof it is my entire agreement with the COMPANY, superseding any previous oral or written communications, representations, understandings, or agreements with the COMPANY or any of its officials or representatives.

DATE: 30 Sep 02

EMPLOYEE Chris Marcel
Name 17213 Boswell Rd
Address
City/State Vinion NJ

- 4 -

Revised 6/6/01

CONFIDENTIAL

JANREM0098799



# EMPLOYEE SECRECY, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

Name of Employee: SADETTIN S. OZTURK

Residence Address: 1965 BLACK ROCK LANE
PAOLI PA 19301

## DEFINITIONS

As used in this Agreement:

the **COMPANY** means [ CENTOCOR ], and JOHNSON & JOHNSON and any of their successors or assigns, purchasers, acquirers, and any of their existing and future subsidiaries, divisions or affiliates, including any such subsidiary, division or affiliate of Johnson & Johnson to which I may be transferred or by which I may be employed in the future. Affiliates of the COMPANY are any corporation, entity or organization at least 50% owned by the COMPANY, by Johnson & Johnson or by any subsidiary of Johnson & Johnson.

**I** means the employee whose name appears above, also referred to by the use of first person pronouns, such as me and my.

**INVENTIONS** means discoveries, improvements and/or ideas, whether patentable or not.

**CONFIDENTIAL INFORMATION** means information disclosed to me or known by me as a result of my employment by the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, about products, processes, machines, customers, clients, employees and services of the COMPANY, including, but not limited to, inventions, research, development, manufacturing, purchasing, finance, data processing, engineering, marketing, merchandising, selling, sales volumes and strategies, number and location of sales representatives, names and significance of the COMPANY's customers and clients and their employees and representatives, preferences, needs and requirements, purchasing histories, and other customer or client-specific information, and comparable information about the products, processes, machines, customers, clients and services of affiliates of the COMPANY acquired by me during my employment by the COMPANY.

**CONFLICTING PRODUCT** means any product, process, machine, invention or service of any person or organization other than the COMPANY in existence or under development which resembles or competes with a product, process, machine, invention or service upon which I shall have worked or about which I become knowledgeable as a result of employment with the COMPANY and whose use or marketability could be enhanced by application to it of CONFIDENTIAL INFORMATION which I shall have had access to during my employment.

**CONFLICTING ORGANIZATION** means any person or organization which is engaged in or about to become engaged in research on, consulting regarding, or development, production, marketing, or selling of a CONFLICTING PRODUCT.

I recognize that the business in which the COMPANY is engaged is extremely competitive and that the COMPANY will be providing me with CONFIDENTIAL INFORMATION both at the commencement of my employment and thereafter and may also be providing me with the opportunity to contribute to the creation of CONFIDENTIAL INFORMATION, which will assist both the COMPANY and me in competing effectively. I recognize that CONFIDENTIAL INFORMATION is significant to the COMPANY'S competitive position and that the COMPANY therefore expects me to keep it secret and also expects me not to compete with the COMPANY during my employment and for a period of time thereafter.

Accordingly, in consideration of the receipt of CONFIDENTIAL INFORMATION, my employment or the continuation of my employment by the COMPANY, and the benefits being provided to me pursuant to paragraph 9:

1. I agree to disclose promptly to the COMPANY all INVENTIONS conceived or made by me whether or not during my hours of employment or with the use of the COMPANY's facilities, materials or personnel, either solely or jointly with another or others during my employment with the COMPANY, and related to the actual or anticipated business or activities of the COMPANY, or related to its actual or anticipated research and development or suggested by or resulting from any task assigned to me or work performed by me for, or on behalf of, the COMPANY. I assign and agree to assign my entire right, title and interest therein to the COMPANY. I will not assert any rights under or to any INVENTIONS as having been made or acquired by me prior to my being employed by the COMPANY unless such INVENTIONS are identified on a sheet attached hereto and signed by me and the COMPANY as of the date of this Agreement.

Centocor, Inc.·200 Great Valley Parkway·Malvern, Pennsylvania 19355-1307·Telephone (610) 651-6000·Facsimile (610) 651-6100

CONFIDENTIAL

JANREM0098813

2. I recognize that all works, including, but not limited to reports, computer programs, drawings, documentation and publications, which I prepare within the scope of my employment with the COMPANY, shall be works made for hire and that the worldwide copyrights therein shall be the sole and exclusive property of the COMPANY. I will promptly and fully disclose all such works to the COMPANY.

3. I shall, whenever requested to do so by the COMPANY, execute any applications, assignments or other instruments which the COMPANY shall consider necessary to apply for and obtain Letters Patent, trademark and/or copyright registrations in the United States, or any foreign country, or to protect otherwise the COMPANY's interests. These obligations shall continue beyond the termination of my employment with the COMPANY with respect to INVENTIONS, trademarks or copyrightable works conceived, authored or made by me during my period of employment, and shall be binding upon my executors, administrators, or other legal representatives.

4. I shall not disclose to the COMPANY or induce the COMPANY to use any secret, proprietary or confidential information or material belonging to others, including my former employers, if any. I am aware of no agreement, contract, non-compete covenant, non-disclosure/secrecy agreement or similar restriction that would in any way restrict, limit or prohibit my employment by the COMPANY that I have not disclosed and provided to the COMPANY.

5. I recognize that CONFIDENTIAL INFORMATION is of great value to the COMPANY, that the COMPANY has legitimate business interests in protecting its CONFIDENTIAL INFORMATION, and that the disclosure to anyone not authorized to receive such information, including a CONFLICTING ORGANIZATION, will cause immediate irreparable injury to the COMPANY. Unless I first secure the COMPANY's written consent, I will not disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION. I understand and agree that my obligations not to disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION shall continue after termination of my employment for any reason.

6. During my employment with the company and for a period of eighteen (18) months after termination of my employment with the COMPANY for any reason, I will not render services, directly or indirectly, to any CONFLICTING ORGANIZATION in the United States, or in any foreign country or territory in which the services I may provide could enhance the use or marketability of a CONFLICTING PRODUCT by application of CONFIDENTIAL INFORMATION which I shall have had access to during my employment, except that I may accept employment with a CONFLICTING ORGANIZATION whose business is diversified and which is, as to that part of its business in which I accept employment, not a CONFLICTING ORGANIZATION, provided that the COMPANY, prior to my accepting such employment, shall receive separate written assurances satisfactory to the COMPANY from such CONFLICTING ORGANIZATION and from me, that I will not render services directly or indirectly, for an 18-month period, in connection with any CONFLICTING PRODUCT.

7. I recognize that the COMPANY's relations with its accounts, customers and clients represents an important business asset that results from the COMPANY's significant investment of its time and resources. I further recognize that by virtue of my employment by the COMPANY, I have gained or may gain relationships with the accounts, customers and clients of the COMPANY, and because of such relationships, I could cause the COMPANY great loss, damage, and immediate irreparable harm, if, during my employment by the COMPANY or subsequent to the termination of such employment for any reason, I should for myself or on behalf of any other person, entity, firm or corporation, sell, offer for sale, or solicit or assist in the sale of a product or service that could compete with a product or service being sold or developed by the COMPANY. I therefore agree that during my employment with the COMPANY and for eighteen (18) months after termination of such employment for any reason, I will not solicit any business from, sell to, or render any service to, or, directly or indirectly, help others to solicit business from or render service or sell to, any of the accounts, customers or clients with whom I have had contact during the last twelve (12) months of my employment with the COMPANY, for any purpose related to the sale of any such product or service. I also agree that for a period of twelve (12) months after termination of employment with the COMPANY for any reason, I will not solicit or hire on my own behalf, or on behalf of others, any COMPANY employee.

8. To enable the COMPANY to monitor my compliance with the obligations imposed by this Agreement, I agree to inform the COMPANY, at the time I give notice of my termination of employment, of the identity of my new employer and of my job title and responsibilities, and will continue to so inform the COMPANY, in writing, any time I change employment during the eighteen (18) months following termination of my employment by the COMPANY for any reason.

9. If I am unable to obtain employment consistent with my training and education solely because of a prohibition of paragraph 6 or 7 of this Agreement, or if I am able to obtain only a position in which my gross monthly income is less than what I last received from the Company as regular monthly base pay (exclusive of extra compensation and employee benefits), then any prohibition of those paragraphs that caused me to be unable to obtain such employment (or that is responsible for the above-referenced differential in pay) shall bind me only as long as the Company shall make payment to me equal to the lesser of (a) the amount last received from the Company as regular monthly base pay, or (b) the difference between the amount I last received from the Company as regular monthly base pay and the gross monthly income that I am receiving in any subsequent employment.

10. In order to qualify for the payments provided for in paragraph 9 above, I understand that I must, for each month that I claim payment is due, represent to the Vice President of Human Resources of the Company, in writing within fifteen (15) days following the end of that calendar month, that although I diligently sought employment consistent with my training and education, I was unable to obtain it, or was unable to attain a position in which my gross monthly income equaled my last regular monthly base pay at the Company, as the case may be, solely because of a prohibition of paragraph 6 or 7 of this Agreement. I must also promptly submit such further

CONFIDENTIAL                                                                                  JANREM0098814

information as the Company may request to enable it to verify the accuracy of my representation. I understand that the Company shall, at its option, be relieved of making a monthly payment to me for any month with respect to which I have failed to comply with a requirement of this paragraph 10.

11. I further understand that if, at any time within the period of prohibition specified in paragraph 6 or 7, the Company gives me a written release from the prohibition of paragraph 6 or 7 that has been the sole cause of my inability to obtain employment consistent with my training and education or my inability to obtain a position in which my gross monthly income equals my last regular monthly base pay at the Company, as the case may be, then, the Company will no longer be obligated to make the payments that had been required due to those prohibitions.

12. Upon termination of my employment with the COMPANY, either prior to or upon my retirement, I shall turn over to a designated individual employed by the COMPANY, all property then in my possession or custody and belonging to the COMPANY, including any computer equipment. I shall not retain any copies of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents, including electronic information and property, relating in any way to the affairs of the COMPANY and which were entrusted to me or obtained by me at any time during my employment with the COMPANY.

13. I understand and acknowledge that if I violate this Agreement or am about to violate this Agreement by accepting employment or providing services prohibited by paragraph 6 or 7 above, the COMPANY shall have the right, and be entitled to, in addition to any other remedies it may have, injunctive relief; in other words, I understand and acknowledge that the COMPANY can bar me from accepting such employment or rendering such services for the periods specified in paragraphs 6 and 7 above.

14. I hereby consent and agree to assignment by the COMPANY of this Agreement and all rights and obligations hereunder including, but not limited to, an assignment in connection with any merger, sale, transfer or acquisition by the COMPANY or relating to all or part of its assets, divisions and/or affiliates.

15. Nothing herein shall limit or reduce my common law duties to the COMPANY, including but not limited to my duty of loyalty.

16. This Agreement shall be interpreted according to the laws of the State of New Jersey without regard to the conflict of law rules thereof. I agree that any action relating to or arising out of this Agreement may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. I consent to personal jurisdiction and venue in both such courts and to service of process by United States Mail or express courier service in any such action.

17. In the event that any provision of this Agreement is invalidated or unenforceable under applicable law, that shall not affect the validity or enforceability of the remaining provisions. To the extent that any provision of this Agreement is unenforceable because it is overbroad, that provision shall be limited to the extent required by applicable law and enforced as so limited.

18. The following applies only to a California, Minnesota or North Carolina employee: Notification is hereby given that paragraph 1 does not apply to an invention to the extent that no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely by me on my own time, and (a) which does not relate (i) to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) which does not result from any work performed by me for the COMPANY.

19. The following applies only to a State of Washington employee: Notification is hereby given that paragraph 1 does not apply to an invention for which no equipment, supplies, facility, or trade secret information of the COMPANY was used and which was developed entirely on my own time, unless (a) the invention relates (i) directly to the business of the COMPANY or (ii) to the COMPANY's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by me for the COMPANY.

20. Nothing contained in this Agreement shall be deemed to confer on me any rights with respect to the duration of my employment with the COMPANY. I UNDERSTAND AND AGREE THAT MY EMPLOYMENT RELATIONSHIP WITH THE COMPANY IS TERMINABLE AT WILL BY EITHER THE COMPANY OR ME, WITH OR WITHOUT CAUSE, EXCEPT THAT IF I INITIATE THE TERMINATION, THERE SHALL BE, AT THE COMPANY'S OPTION, A PERIOD OF UP TO FOURTEEN (14) DAYS AFTER I GIVE WRITTEN NOTICE OF TERMINATION BEFORE THE TERMINATION BECOMES EFFECTIVE. If the Company elects to continue my employment during the notice period, it shall advise me of that fact, and of the duration of the notice period. During any notice period, I will provide such transitional services as the Company may request. The Company will be obligated to pay me my full base salary during the notice period, and my duty of loyalty to the Company shall continue through such period.

CONFIDENTIAL

JANREM0098815

I ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, and agree that with respect to the subject matter hereof it is my entire agreement with the COMPANY, superseding any previous oral or written communications, representations, understandings, or agreements with the COMPANY or any of its officials or representatives.

DATE: 1/28/2003

Sadettin S. Ozturk
EMPLOYEE
SADETTIN S. OZTURK
Name
1965 BLACK ROCK LANE
Address
PAOLI PA 19301
City/State

- 4 -

Revised 6/6/01

CONFIDENTIAL

JANREM0098816