# EXHIBIT 6



# Institute for Civil Justice

A RAND LAW, BUSINESS, AND REGULATION INSTITUTE

CHILDREN AND FAMILIES

EDUCATION AND THE ARTS

ENERGY AND ENVIRONMENT

HEALTH AND HEALTH CARE

INFRASTRUCTURE AND TRANSPORTATION

INTERNATIONAL AFFAIRS

LAW AND BUSINESS

NATIONAL SECURITY

POPULATION AND AGING

PUBLIC SAFETY

SCIENCE AND TECHNOLOGY

TERRORISM AND HOMELAND SECURITY

The RAND Corporation is a nonprofit institution that helps improve policy and decisionmaking through research and analysis.

This electronic document was made available from www.rand.org as a public service of the RAND Corporation.

Skip all front matter: Jump to Page 1 ▼

## Support RAND

Purchase this document

Browse Reports & Bookstore

Make a charitable contribution

## For More Information

Visit RAND at www.rand.org

Explore the RAND Institute for Civil Justice

View document details

### Limited Electronic Distribution Rights

This document and trademark(s) contained herein are protected by law as indicated in a notice appearing later in this work. This electronic representation of RAND intellectual property is provided for non-commercial use only. Unauthorized posting of RAND electronic documents to a non-RAND website is prohibited. RAND electronic documents are protected under copyright law. Permission is required from RAND to reproduce, or reuse in another form, any of our research documents for commercial use. For information on reprint and linking permissions, please see RAND Permissions.

This product is part of the RAND Corporation monograph series. RAND monographs present major research findings that address the challenges facing the public and private sectors. All RAND monographs undergo rigorous peer review to ensure high standards for research quality and objectivity.

# Where the Money Goes

Understanding Litigant Expenditures for Producing Electronic Discovery

Nicholas M. Pace, Laura Zakaras



Institute for Civil Justice

A RAND LAW, BUSINESS, AND REGULATION INSTITUTE

This research was conducted by the RAND Institute for Civil Justice, a research institute within RAND Law, Business, and Regulation, a division of the RAND Corporation.

**Library of Congress Cataloging-in-Publication Data**

Pace, Nicholas M. (Nicholas Michael), 1955-
 Where the money goes : understanding litigant expenditures for producing electronic discovery / Nicholas M. Pace, Laura Zakaras.
     p. cm.
 Includes bibliographical references.
 ISBN 978-0-8330-6876-7 (pbk. : alk. paper)
 1.  Electronic discovery (Law)  I. Zakaras, Laura. II. Title.-

  K2247.P33 2012
  347.73'57—dc23

                                                                                            2012011130

The RAND Corporation is a nonprofit institution that helps improve policy and decisionmaking through research and analysis. RAND's publications do not necessarily reflect the opinions of its research clients and sponsors.

RAND® is a registered trademark.

© Copyright 2012 RAND Corporation

Permission is given to duplicate this document for personal use only, as long as it is unaltered and complete. Copies may not be duplicated for commercial purposes. Unauthorized posting of RAND documents to a non-RAND website is prohibited. RAND documents are protected under copyright law. For information on reprint and linking permissions, please visit the RAND permissions page (http://www.rand.org/publications/permissions.html).

Published 2012 by the RAND Corporation
1776 Main Street, P.O. Box 2138, Santa Monica, CA 90407-2138
1200 South Hayes Street, Arlington, VA 22202-5050
4570 Fifth Avenue, Suite 600, Pittsburgh, PA 15213-2665
RAND URL: http://www.rand.org
To order RAND documents or to obtain additional information, contact
Distribution Services: Telephone: (310) 451-7002;
Fax: (310) 451-6915; Email: order@rand.org

# Preface

This monograph addresses one of the most persistent challenges of conducting litigation in the era of digital information: the costs of complying with discovery requests, particularly the costs of review. Using case studies of eight large corporations and a review of the literature on electronic discovery (e-discovery), we estimate the dimensions of those costs and identify effective ways to reduce them. We also examine the challenges of preserving electronic information and recommend steps that can be taken to address them.

This research was conducted by the RAND Institute for Civil Justice (ICJ), a research institute within RAND Law, Business, and Regulation (LBR). The ICJ is dedicated to improving the civil justice system by supplying policymakers and the public with rigorous and independent research. Its studies analyze litigation trends and outcomes, evaluate policy options, and bring together representatives of different interests to debate alternative solutions to policy problems. The ICJ builds on a long tradition of RAND research characterized by an interdisciplinary, empirical approach to public policy issues and rigorous standards of quality, objectivity, and independence.

LBR, a research division of the RAND Corporation, is dedicated to improving policy and decisionmaking in civil justice, corporate ethics and governance, and business regulation. It serves policymakers and executives in both government and the private sector through research and analysis on controversial and challenging issues in these areas.

Research is supported by pooled grants from a range of sources, including corporations, trade and professional associations, individuals, government agencies, and private foundations. It disseminates its work widely to policymakers, practitioners in law and business, other researchers, and the public. In accordance with RAND policy, all its reports are subject to peer review. Its publications do not necessarily reflect the opinions or policies of its research sponsors.

For more information on LBR, see http://lbr.rand.org or contact the director:

James Dertouzos
Director, RAND Law, Business, and Regulation
1776 Main Street
P.O. Box 2138
Santa Monica, CA 90407-2138
310-393-0411 x7476
James_Dertouzos@rand.org

For more information on the ICJ, see http://lbr.rand.org/icj or contact the research director:

Paul Heaton
Director for Research, RAND Institute for Civil Justice
1776 Main Street
P.O. Box 2138
Santa Monica, CA 90407-2138
310-393-0411 x7526
Paul_Heaton@rand.org

# Abbreviations

| | |
|---|---|
| ABA | American Bar Association |
| BLS | Bureau of Labor Statistics |
| DESI | Discovery of Electronically Stored Information |
| EDRM | Electronic Discovery Reference Model |
| ESI | electronically stored information |
| FJC | Federal Judicial Center |
| FRCP | Federal Rules of Civil Procedure |
| FRE | Federal Rules of Evidence |
| GB | gigabyte |
| ICAIL | International Conference on Artificial Intelligence and Law |
| ICJ | RAND Institute for Civil Justice |
| IT | information technology |
| LBR | RAND Law, Business, and Regulation |
| LPO | legal process outsourcing |
| NAICS | North American Industry Classification System |
| NIST | National Institute of Standards and Technology |
| NPV | negative predictive value |
| OCR | optical character recognition |
| PPV | positive predictive value |
| ROC | receiver operating characteristic |
| TREC | Text REtrieval Conference |

CHAPTER TWO

# Production Expenditures, by Task

In this chapter, we examine how production costs in our sample cases break out by collection, processing, and review.

## Total Costs of Production

Though it is not possible to assess the extent to which the cases included in our data collection actually reflect typical e-discovery production in the participating companies as we had requested, total expenditures do range from a seemingly modest $17,000 (in an intellectual property matter) to $27 million (in a product-liability case), with a median value of $1.8 million (see Table 2.1). Note that we were able to calculate total spend for ESI production in only 45 of the 57 cases for which we sought cost data. As is apparent in the tables and figures in this chapter, there were gaps in the information available to us that prevented applying the same set of metrics to all 57 cases. Some of the 12 cases missing from Table 2.1 might not, for example,

**Table 2.1**
**Production Costs for 45 Cases**

| Subject Matter | Total Cost ($) |
|---|---|
| Intellectual property | 17,183 |
| Government subpoena | 22,810 |
| Product liability | 38,743 |
| Intellectual property | 76,950 |
| Intellectual property | 82,478 |
| Insurance | 147,004 |
| Government subpoena | 186,692 |
| Government subpoena | 187,979 |
| Fraud or false claims | 252,473 |
| Intellectual property | 275,394 |
| Contract | 307,587 |
| Intellectual property | 328,405 |
| Contract | 334,372 |

17

**Table 2.1—Continued**

| Subject Matter | Total Cost ($) |
| --- | --- |
| Intellectual property | 432,588 |
| Intellectual property | 573,365 |
| Intellectual property | 708,016 |
| Intellectual property | 718,083 |
| Government subpoena | 788,928 |
| Government subpoena | 1,173,685 |
| Contract | 1,266,457 |
| Intellectual property | 1,324,597 |
| Fraud or false claims | 1,329,891 |
| Government subpoena | 1,770,715 |
| Intellectual property | 1,969,971 |
| Product liability | 2,031,138 |
| Intellectual property | 2,076,257 |
| Intellectual property | 2,150,000 |
| Antitrust | 2,169,189 |
| Product liability | 2,198,006 |
| Product liability | 2,210,724 |
| Government subpoena | 2,489,165 |
| Intellectual property | 2,541,383 |
| Fraud or false claims | 2,623,693 |
| Government subpoena | 3,007,116 |
| Intellectual property | 3,186,587 |
| Fraud or false claims | 3,208,863 |
| Government subpoena | 3,426,014 |
| Contract | 4,042,606 |
| Product liability | 4,418,022 |
| Government subpoena | 5,133,422 |
| Employment | 6,974,027 |
| Intellectual property | 7,803,064 |
| Antitrust | 8,367,649 |
| Product liability | 21,007,504 |
| Product liability | 27,118,520 |

have complete information about the costs of review or for all expenses associated with vendors, so we could not calculate the total spend for responding to requests for production.

Most of the cases included in our data collection involved discovery expenditures that were much larger than what a recent Federal Judicial Center (FJC) survey reported as the median total litigation expenditures of producing parties in a sample of federal cases.[1] The cost data presented in this monograph should be considered in light of the fact that the scope of production was atypical compared with that of the "average" case described in the FJC study. But total expenditures in and of themselves mean little in interpreting whether the costs of production were justified by the unique circumstances of the case, such as monetary claims made by the plaintiffs, the probative value of the information produced, or particular challenges faced during collection, processing, or review. We did attempt to collect information about stakes, but the results were judged to be unacceptable due to difficulties in applying a uniform definition for litigation value. For example, the stakes in one case were estimated by our organizational contact to be worth tens of millions of dollars if only the instant litigation were considered, but many hundreds of millions more based on that litigation's potential to disrupt the company's other lines of business if resulting media coverage was unfavorable or if a successful outcome for the opposing party spawned a rash of similar claims. The stakes associated with regulatory investigations were particularly difficult to determine. Some of the participating companies' representatives were quite frank in describing how they approached the problem of balancing e-discovery expenditures against the apparent stakes in a case, reporting that they would not shy away from committing what might seem to be a disproportional amount of resources to comply with an electronic-document demand if they believed that the claims against them were of questionable merit or the damages sought were grossly exaggerated.[2]

Perhaps a more useful way to view these cases is by the costs incurred for each gigabyte (GB) of what was actually turned over to the other side after collection, processing, and review were completed, as shown in Figure 2.1 (for a detailed list of cases presented in that figure, along with their primary subject matters, see Table A.1 in Appendix A). For most cases in our study group, those costs were less than $40,000 per gigabyte, and, for about one-third of the cases, less than $20,000. However, in one instance, the company spent $900,000 to produce an amount of data that would consume less than one-quarter of the available capacity of an ordinary DVD.[3] Arguably, it is not the volume of the production that matters but what it contained in terms of the data's intrinsic value (for example, the degree to which the data help provide all litigants with mutual knowledge of relevant facts). Such an analysis was beyond the scope of this monograph. Some cases in our collection did reach the trial stage, though the extent to which any e-discovery was transformed into admitted evidence and presented to the trier of fact is unknown.

The numbers are somewhat more consistent across cases when the focus is on the total costs per gigabyte reviewed. Arguably, gigabytes reviewed provides a more useful way of com-

---

[1] Lee and Willging, 2009, Tables 4 and 5.

[2] We were confident of both the estimated stakes and total spend in just six instances. In four of those six cases, final production expenditures were 3 percent or less of case value; in a fifth, it was about 16 percent. In the remaining case, e-discovery expenditures were roughly about the same as the apparent monetary stakes in the case, but an adverse outcome in that particular litigation was said to have important implications for other actions in which the company was involved.

[3] The discussion concerns costs per gigabyte of data. In actuality, the case discussed involved a production of about 3.5 gigabytes of data in total, with total e-discovery–related expenditures of about $3.2 million.

**Figure 2.1**
**Total Costs per Gigabyte Produced, 32 Cases**



NOTE: The figure excludes one case in which costs per gigabyte produced were greater than $350,000.
RAND *MG1208-2.1*

paring the e-discovery process across cases because, at least in theory, the review stage is not primarily intended as a tool to reduce volume. Documents may be excluded from production because of concerns about privilege or a determination that they are not relevant and responsive. However, it is arguable that the "success" of a review is not measured by how many documents or gigabytes of data were ultimately withheld. As can be seen in Figure 2.2, the total costs per gigabyte reviewed were generally around $18,000, with the first and third quartiles in the 35 cases with complete information at $12,000 and $30,000, respectively.[4] There was one instance in which total costs for each gigabyte of data reviewed was $358,000; it appears that this case was subjected to an especially vigorous review effort using both outside counsel and offshore vendors, resulting in a final production that was just 40 percent of the volume of the reviewed data.

## Costs of Collection

As the e-discovery world began to mature in the 1990s and early 2000s, many of the leading opinions and rule-making efforts during that period focused on issues of collection. Locating specific emails on disaster-recovery backup tapes that may not be in reasonably accessible formats, pulling files off inactive servers, accessing legacy computer systems, and sifting through metadata dominated the fact patterns of important court rulings and stakeholder complaints. But, in more-recent times, as represented by Figure 2.3, collection generally consumes less than 10 percent of total e-discovery expenditures.[5] There are exceptions, as can be seen in the right

---

[4]   See also Table A.2 in Appendix A.

[5]   See also Table A.3 in Appendix A.