# **EXHIBIT 7**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.,      ) | |
|     ) | |
| Plaintiff,      ) | |
|     ) | Civil Action No. l:17-cv-11008-MLW |
| v.      ) | |
|     ) | |
| CELLTRION HEALTHCARE CO., LTD.,      ) | |
| CELLTRION, INC., and      ) | |
| HOSPIRA, INC.,      ) | |
|     ) | |
| Defendants.      ) | |
|     ) | |
|     ) | |

## <u>DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS (NOS. 1–75)</u>

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's June 21, 2017 Order (No. 15-10698 Dkt. 574), Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc. (together "Celltrion"), and Hospira, Inc. ("Hospira") (collectively "Defendants") hereby request that Plaintiff Janssen Biotech, Inc. ("Janssen") respond to the following requests by August 14, 2017. Documents and things should be produced at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or at such other place or in such other manner as may be mutually agreed upon by the parties.

Janssen lacks standing for its May 31, 2017 complaint, and the complaint should be dismissed for at least the reasons set forth in Defendants' motion to dismiss filed July 11, 2017. Further, Defendants contend that the parties and the Court should not devote resources to conducting discovery while Defendants' motion to dismiss is pending.  These requests are propounded without waiver of any position of Defendants' with respect to standing, their motion to dismiss, or the question of whether further discovery on damages should be stayed until the Defendants' motion to dismiss the 2017 action is decided.

The '083 patent is not infringed and is invalid, and Janssen is not entitled to any form of relief, monetary or otherwise. The below requests are made without any admission or waiver of rights or arguments regarding noninfringement, invalidity, or any of Janssen's theories or claims regarding damages or other relief.

Defendants reserve all rights to serve additional discovery requests, including interrogatories, requests for production, requests for admission, and requests for discovery from third parties.

### DEFINITIONS AND INSTRUCTIONS

1.      These definitions and instruction incorporate by reference the Federal Rules of Civil Procedure and Local Rules of this Court.

2.      "Biosimilar" means a biological product as defined under 42 U.S.C. § 262.

3.      "BLA" means a Biologic License Application submitted to FDA, as authorized by 42 U.S.C. § 262 and as regulated by 21 C.F.R. §§ 600 et seq.

4.      "Celltrion" means Defendant Celltrion, Inc. and/or Defendant Celltrion Healthcare Co., Ltd., and, where applicable, their officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, predecessors, and any Person or organization under their control.

5.      "Celltrion's Biosimilar Infliximab" means the biologic product that is the subject of Celltrion's BLA (BLA 125544) for which Janssen's Remicade® (infliximab) products is the claimed reference product under 42 U.S.C. § 262(k).

6.      "Communication(s)" means any transmission of information from one Person or entity to another or between or among two or more Persons or entities, including but not limited to conveyances of information by e-mail, text message, memorandum, letter, note, Document, telegram, fax, telephone, voicemail, recording, in-person communication, post, instant messaging, tweet, or other media, and also includes the circumstances by which You came into possession of the Document evidencing the communication.

7.      "Defendants" means, individually and collectively, Celltrion and Hospira.

8.      "Document(s)" is to be given its customary and broad sense and means originals and all other copies (whether in printed, optical, or electronic form) of all written or graphic materials however produced or reproduced, of every kind and description, in Your possession, custody, or control, including, without limitation, all content storage media and items, whether

handwritten, printed, recorded, filmed, typewritten, or produced by any other mechanical, optical, or electronic process, whether on disk, diskette, tape, card, hard drive, or otherwise stored in a memory either electronically, optically, digitally, graphically, or mechanically, whether or not asserted to be privileged or immune from discovery, and whether the item is a master or original or copy, including drafts of, or original, preliminary notes or marginal notations appearing on any Document, including self-stick removable notes, and any other information-containing paper or other medium, including but not limited to any such medium that in any way records or Documents a Communication.

9.      "FDA" means the United States Food and Drug Administration.

10.     "Hospira" means Defendant Hospira, Inc. and, where applicable, its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, predecessors, and any Person or organization under their control.

11.     "Infliximab" means chimeric monoclonal antibody that is the active ingredient in Remicade®.

12.     "Infliximab Product(s)" means any and all products, compositions, formulations, or dosage forms containing Infliximab or Biosimilar Infliximab as the active ingredient, including but not limited to proposed, experimental, and commercial embodiments.

13.     "Information" means information in any form, including but not limited to Documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, in a Document, or via electronic communication.

14.     "Janssen," "You," and "Your" mean Janssen Biotech, Inc., its predecessors (including Centocor, Inc. and Centocor Ortho Biotech, Inc.) and successors, its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest, its past and

present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing, including any and all Persons acting or purporting to act, or who have acted or purported to act, on behalf of Janssen Biotech, Inc., its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest, its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing.

16.     "Johnson & Johnson" and "J&J" mean Johnson & Johnson, its predecessors and successors, its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest (*e.g.*, the Johnson & Johnson family of companies), its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing, including any and all Persons acting or purporting to act, or who have acted or purported to act, on behalf of Johnson & Johnson, its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest, its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing.

16.     "Janssen's BLA" means Janssen's Biologics License Application No. 103772, including any amendments, supplemental filings, or additions, filed with the FDA for approval to commercially market Remicade®.

17.     "Person(s)" means any natural person, firm, association, partnership, government agency, or other entity and its officers, directors, partners, employees, former employees, representatives and agents.

18.     "Remicade®" means any drug product or pharmaceutical formulation marketed or sold under the name Remicade®, any other drug product or pharmaceutical formulation

marketed further to the FDA's approval of Janssen's BLA, as amended and/or supplemented, and any Infliximab Product for which Janssen seeks damages.

19.     "Remicade® Media" means any cell medium used to manufacture or produce Remicade®.

20.      "'083 Patent" and "Asserted Patent" mean U.S. Patent No. 7,589,083.

21.     "'083 Patent Inventors" means those individuals, individually and collectively, who contributed in any way to the conception of the subject matter claimed in U.S. Patent No. 7,589,083, including but not limited to the individuals listed on the face of the '083 Patent: David Epstein, Roger Monsell, Joseph Horwitz, Susan Lenk, Sadettin Ozturk, and Christopher Marsh.

22.     "'083 Patent Media Product(s)" means any cell medium composition embodying the composition claimed in the '083 Patent.

23.     "Reflecting," "referring," "relating to," "regarding," "concerning" or any derivation thereof shall mean, without limitation, being in any way legally, logically, or factually connected with the matter discussed.

24.     As used in these Requests for Production ("Request"), the singular shall include the plural, the past tense shall include the present tense, and vice versa, the words "and" and "or" shall be both conjunctive and disjunctive, the word "all" shall mean "any and all," and the word "including" shall mean "including without limitation," whichever makes the Request more inclusive.

25.     If You claim that a Request is in any way objectionable, respond to the portion of the Request believed to be unobjectionable and specifically identify that aspect of the Request that You claim to be objectionable and why.

26.     If You claim that Information requested or required in response to a given Request is also responsive to another Request, You may not answer the Request by referring to the answer to another Request unless the answer to the Request being referred to supplies a complete and accurate response to the Request being answered.

27.     If You object to any Request on the ground that it is vague and/or ambiguous, identify the particular words, terms, or phrases that You assert make such Request vague and/or ambiguous and specify the meaning You actually attribute to such words, terms, or phrases for purposes of Your response.

28.     If any requested Document is known, thought, or believed to have once existed and cannot now be located, or has been destroyed or discarded, identify the Document by stating the last known custodian of the Document, the date the Document was discarded or destroyed, the manner and means by which the Document was destroyed or discarded, the reason or reasons the Document was discarded or destroyed, the efforts made to locate such Document or a duplicate of it, and a statement describing the contents of the Document and all authors, addressees and recipients of the Document.

29.     Each Document responsive to any Request shall be produced in its entirety, including all attachments and enclosures. If a portion of a Document is responsive to a Request, produce the entire Document, including all attachments, enclosures, "post-it"-type notes, and any other part physically attached to the Document. If a Document responsive to any Request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why.

30.     Separately with respect to each piece of Information called for by these Requests that You withhold under a claim of privilege or otherwise, state that You are withholding it and

explain why, including a description of the Information withheld in accordance with Fed. R. Civ. P. 26(b)(5).

31.     No Request shall be read as limiting any other Request.

32.     Unless otherwise stated, all electronically stored information ("ESI") shall be produced in the form in which it is ordinarily maintained, or as text searchable single page TIFF images with associated multi-page text files containing extracted text or OCR with Concordance and Opticon load files containing all requisite Information including relevant metadata. The integrity of the underlying ESI including formatting, metadata, and revision history shall be preserved.

33.     The Requests are continuing and require, to the extent authorized by Fed. R. Civ. P. 26(e), production of any additional responsive Documents that may be located or acquired by You or those in privity with You after the date of Your original production.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents relating to development, testing, and evaluation of cell culture media for commercial production of Remicade® and Infliximab Products, including but not limited to '083 Patent Media Products and/or Remicade® Media.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents relating to Janssen's consideration of or decision not to use any '083 Patent Media Product to commercially produce Remicade® and any other Infliximab Products.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents, created by You or on Your behalf, that constitute, refer to, or reflect analysis of or Information about the United States market and all other markets in which Infliximab Products are sold for (a) Remicade®, (b) Infliximab Products generally, or (c) Celltrion's Biosimilar Infliximab.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents relating to business plans, commercial strategic plans, or marketing plans relating to Remicade® for sale in the United States and in all other markets in which Infliximab Products are sold.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents concerning Communications with FDA regarding sales or marketing of Remicade®, including any comparison to other biologic or pharmaceutical drugs.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents concerning physician demand, medical provider demand, insurer demand, or consumer demand for Remicade® in the United States and in all other markets in which Infliximab Products are sold, including all articles, press releases, consultant reports, trade press, surveys concerning demand or consumer preferences, and demand analyses.

**REQUEST FOR PRODUCTION NO. 7:**

Documents sufficient to identify all competitive products to Remicade® (*e.g.*, products used to treat one or more conditions treated by Remicade®) in the United States and in all other markets in which Infliximab Products are sold, as between or among Infliximab Products, other Biosimilars, other pharmaceuticals, or other products or treatment used to treat one or more conditions treated by Remicade®.

**REQUEST FOR PRODUCTION NO. 8:**

All Documents concerning competition between Remicade® and any other product or treatment used to treat one or more conditions treated by Remicade®, including, without limitation, assessments of projected market share and/or revenue analyses, consumer surveys, consultant surveys, economic studies, promotional materials, sales materials, training materials, or any other Documents concerning the (dis)advantages, benefits, weaknesses, or limitations of, Remicade® in relation to any other product or treatment. This Request applies to competition in the United States and in all other markets in which Infliximab Products are sold.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents concerning the business plans, commercial strategic plans, and marketing plans of all '083 Patent Media Products for sale in the United States and in all other markets in which '083 Patent Media Products are sold, including any plans, research, projections, reports, and budgets for the sale of such media or soluble composition.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents regarding any financial valuations of the '083 Patent or '083 Patent Media Products, including for licensing, transfer pricing, inter-company transfer, transaction purposes, or any other reason.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents concerning consumer demand for '083 Patent Media Products in the United States and worldwide, including all articles, press releases, consultant reports, trade press, surveys concerning Consumer demand or consumer preferences, and consumer demand analyses.

**REQUEST FOR PRODUCTION NO. 12:**

Documents sufficient to identify all competitive products to '083 Patent Media Products (*e.g.*, Remicade® Media, and products used to or capable of producing Remicade® or any other Infliximab Product).

**REQUEST FOR PRODUCTION NO. 13:**

All Documents concerning competition between '083 Patent Media Products and any other product that is or may be used for the same purpose(s) as the '083 Patent Media Products, including, without limitation, assessments of projected market share and/or revenue analyses, consumer surveys, consultant surveys, economic studies, promotional materials, sales materials, training materials, or any other Documents concerning the (dis)advantages, benefits, weaknesses, or limitations of, the '083 Patent Media Products in relation to any other product. This Request applies to competition in the United States and in all other markets in which '083 Patent Media Products are sold.

**REQUEST FOR PRODUCTION NO. 14:**

Documents sufficient to identify possible or anticipated use(s) of '083 Patent Media Products.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents relating to projected or estimated sales (in units and dollars), costs, profits, pricing, market share, sales volume, market projections or analysis, or consumer profiles concerning Remicade® for sale in the United States and in all other markets in which Infliximab Products are sold.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents concerning the potential effect of selling Remicade® on promoting sales of other products, including, but not limited to, derivative or convoyed sales.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to identify the total number of units of Remicade® sold, in the United States and in all other markets in which Infliximab Products are sold, to end-payers, on a monthly, quarterly, annual and/or other period basis, together with Documents or data sufficient to show: (a) the location of sales (country, city, and state); (b) product description; (c) product strength; (d) product form; (e) package size in terms of units per package; and (f) NDC, UPC, or SKU.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents reflecting the sales and/or prescriptions for Remicade® by quarter and by year, as reported in dollars and number of units of Remicade® sold, including (a) National Drug and Therapeutic Index (NDTI) data, (b) Xponent data and/or Xponent PlanTrak data, (c) Formulary Focus data, (d) IMS data, (e) Scott-Levin data, (f) Calls, Samples, and Details data, (g) Integrated Promotional Services (IPS) data, and (h) Early View data.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents concerning the costs, actual revenues, royalties, expenses, returns, profits, or profit margins relating to the sale of Remicade® sold in the United States and in all other markets in which Infliximab Products are sold on a monthly and annual basis, including Documents reflecting: (a) gross revenues; (b) net revenues; (c) fixed and variable costs of goods sold; (d) fixed and variable costs of manufacturing; (e) sales and distribution costs; (f) marketing, advertising, promotional, and sales expenses; (g) fixed and variable operating expenses; (h) research and development expenditures (including costs related to Remicade® Media and costs for testing cell media not ultimately used to produce Remicade®); (i) licensing fees and royalties paid and/or received; (j) depreciable and capital improvements; (k) materials cost; (l) labor cost; (m) marginal cost; (n) rebates and discounts; (o) unit volume of sold net of returns; (p) gross profits; (q) operating profits; (r) net profits; and (s) allocation of overhead costs not booked separately.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to show how any revenues, royalties, returns, and profits relating to the sale of Remicade®, sold in the United States and in all other markets in which Infliximab Products are sold, are distributed between Janssen and other Johnson & Johnson entities.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents relating to projected or estimated sales (in units and dollars), costs, profits, pricing, market share, sales volume, market projections or analysis, or consumer profiles concerning '083 Patent Media Products for sale in the United States and in all other markets in which '083 Patent Media Products are sold.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, created by You or on Your behalf, that constitute, refer to, or reflect analysis of, or Information about, pricing of (a) Remicade®, (b) Infliximab Products, or (c) Celltrion's Biosimilar Infliximab in the United States and in all other markets in which Infliximab Products are sold, including, but not limited to, the effect of price on demand or sales of Infliximab Products, price elasticity, and the effect of Infliximab Product pricing on demand or sales of products used to treat one or more conditions treated by Remicade®.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents that constitute, refer to, or reflect Your pricing strategy for Remicade® that is made, sold, offered for sale, used, or imported into the United States, including but not limited to any price lists, pricing manuals, pricing histories, pricing plans, pricing policies, pricing forecasts, pricing strategies, pricing analyses, pricing projections, or pricing decisions, and Documents showing rebate calculations.

**REQUEST FOR PRODUCTION NO. 24:**

All product-specific profit and loss statements, including but not limited to Documents or data concerning any of the following financial characteristics of Remicade®, broken down by indicated treatment if available: (a) the total amount of revenue from sales; (b) the total gross profit from sales; (c) the total net profit from sales, together with all expenses, deductions, allowances or other adjustments used to calculate net profits; and (d) the total amount spent on marketing, advertising, promotions and sales both in the aggregate and based on the particular type of expense.

**REQUEST FOR PRODUCTION NO. 25:**

Janssen's financial reports and statements from the year(s) of the initial research and development that led to the subject matter of the '083 Patent to the present including annual reports, monthly reports, balance sheets and statements of income, gross revenue, gross profit, net profit, and costs.

**REQUEST FOR PRODUCTION NO. 26:**

Documents sufficient to identify what You contend the measure of lost profits would be in this case, or which would otherwise establish what You contend is the value of the '083 Patent.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents that support, refute, or concern Your assertion that Janssen has lost or will lose "market share for and profits from Remicade® in the markets in which Defendants' Biosimilar [infliximab] product is marketed," as asserted in the Complaint.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents that support, refute, or concern Your assertion that Janssen's licensee for distribution of Remicade® has lost or will lose "market share for and profits from Remicade® in markets in which Defendants' Biosimilar [infliximab] product is marketed," as asserted in the Complaint.

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to show Your strategy or planning (or both) with respect to reimbursements to be received by any Person or entity for purchase of Remicade® in the United States and in all other markets in which Infliximab Products are sold.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents that constitute, refer to, or reflect Your strategy or analysis (or both) for discounts or rebates (or both) of Remicade® on sale in the United States and in all other markets in which Infliximab Products are sold.

**REQUEST FOR PRODUCTION NO. 31:**

Documents sufficient to show Remicade®'s (i) wholesale acquisition cost, (ii) retail or usual and customary price, (iii) net sales, (iv) total prescription market share and volume, (v) new prescription market share and volume, and (vi) marketing budget for each month since its introduction in the U.S.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents concerning the costs, expenses, or profitability of making, using, offering for sale, research and development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, or pursuit of regulatory approval for any '083 Patent Media Products.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents concerning the costs, expenses, or profitability of making, using, offering for sale, research and development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, and pursuit of regulatory approval for Remicade® Media.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents concerning the costs, expenses, or profitability of making, using, offering for sale, research and development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, and pursuit of regulatory approval for any cell medium or cell medium composition evaluated, tested, contemplated, or proposed for use to commercially produce Remicade®.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents concerning the costs, expenses, or profitability of making, using, offering for sale, research and development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, and pursuit of regulatory approval for Remicade®.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents regarding any monetary or non-monetary compensation, benefits, bonuses, or inducements that Janssen or any other Johnson & Johnson family company offered, provided, or proposed to any of the '083 Patent Inventors related to the '083 Patent Media Products and/or the '083 Patent, including Communications concerning profit sharing, salary, commissions, bonuses, fringe benefits, insurance, stock options, health and medical benefits, vacation benefits, retirement benefits, deferred compensation benefits and annuity benefits.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents regarding any monetary or non-monetary compensation, benefits, bonuses, or inducements that Janssen or any other Johnson & Johnson family company offered, provided, or proposed to any of the '083 Patent Inventors after the '083 Patent Inventors left the employment of Janssen, including Communications concerning profit sharing, salary, commissions, bonuses, fringe benefits, insurance, stock options, health and medical benefits, vacation benefits, retirement benefits, deferred compensation benefits and annuity benefits.

**REQUEST FOR PRODUCTION NO. 38:**

Documents sufficient to identify each Janssen and/or Johnson & Johnson entity that has employed or currently employees each of the '083 Patent Inventors.

**REQUEST FOR PRODUCTION NO. 39:**

All agreements or licenses, and Documents regarding agreements or licenses, between or among Janssen and New York University that refer to or relate to Remicade®.

**REQUEST FOR PRODUCTION NO. 40:**

All agreements or licenses, and Documents regarding current, former, future, proposed, contemplated, or rejected agreements or licenses, between You and any third party that refer to or relate to the making, use, offering for sale, sale, research, development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, pursuit of regulatory approval in the United States, profit sharing, or royalty distribution of Remicade®.

**REQUEST FOR PRODUCTION NO. 41:**

All agreements or licenses, and Documents regarding current, former, future, proposed, contemplated, or rejected agreements or licenses, between You and any third party that refer to or relate to the making, use, offering for sale, sale, research, development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, pursuit of regulatory approval in the United States, profit sharing, or royalty distribution of '083 Patent Media Products.

**REQUEST FOR PRODUCTION NO. 42:**

All agreements or licenses, and Documents regarding current, former, future, proposed, contemplated, or rejected agreements or licenses, between You and any third party that refer to or relate to the making, use, offering for sale, sale, research, development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, pursuit of regulatory approval in the United States, profit sharing, or royalty distribution of Remicade® Media.

**REQUEST FOR PRODUCTION NO. 43:**

All agreements or licenses, and Documents regarding current, former, future, proposed, contemplated, or rejected agreements or licenses, between You and any third party that refer to or relate to the making, use, offering for sale, sale, research, development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, pursuit of regulatory approval in the United States, profit sharing, or royalty distribution of cell culture media.

**REQUEST FOR PRODUCTION NO. 44:**

All agreements or licenses, and Documents regarding current, former, future, proposed, contemplated, or rejected agreements or licenses, between You and any third party that refer to

or relate to the making, use, offering for sale, sale, research, development, commercialization, design, testing, characterization, evaluation, regulatory approval, formulating, manufacturing, packaging, labeling, supplying, importation, export, distribution, promotion, marketing, pursuit of regulatory approval in the United States, profit sharing, or royalty distribution of any biologic drug.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents related to each instance of licensing of related applications, related patents, or foreign counterparts of the '083 Patent, including a copy of each such license and any appendices, attachments, or amendments thereto.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents relating to the royalty rate or rates that You contend would constitute a reasonable royalty under 35 U.S.C. § 284, assuming infringement of the '083 Patent, including, for example, Documents regarding any facts, circumstances, legal contentions, and other factors upon which Janssen bases its contention, including any or all of the factors to be considered under a Georgia-Pacific analysis; the relevant time period(s) during which the rate or rates should be applied; and any assumptions, estimates, circumstances, and calculations upon which Janssen bases such contention(s).

**REQUEST FOR PRODUCTION NO. 47:**

All Documents relating to Janssen's assertion that it is entitled to damages for lost profits, assuming infringement of the '083 Patent, including, for example, Documents regarding any facts, circumstances, legal contentions, and other factors upon which Janssen bases its contention; the relevant time period(s) for which lost profits are sought; and any assumptions, estimates, circumstances, and calculations upon which Janssen bases such contention(s).

**REQUEST FOR PRODUCTION NO. 48:**

All Documents relating to Janssen's assertion that it is entitled to damages for price erosion, assuming infringement of the '083 Patent, including, for example, Documents regarding any facts, circumstances, legal contentions, and other factors upon which Janssen bases its contention; the relevant time period(s) for which recovery for price erosion is sought; and any assumptions, estimates, circumstances, and calculations upon which Janssen bases such contention(s).

**REQUEST FOR PRODUCTION NO. 49:**

Documents sufficient to show the complete composition of and manufacturing process for '083 Patent Media Products that have ever been made, used, offer for sale, sold, or commercialized by Janssen or any licensee of the '083 Patent.

**REQUEST FOR PRODUCTION NO. 50:**

Documents sufficient to show the complete composition and formula of, and manufacturing process for, Remicade® Media.

**REQUEST FOR PRODUCTION NO. 51:**

Documents sufficient to show the sources of or vendors for Remicade® Media or all components or ingredients of Remicade® Media.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents that refer to or mention Infliximab, any Infliximab Product, or the Sp2/0 cell line and also Iscove's medium, Iscove's powder, Iscove's modified Dulbecco's medium or IMDM.

**REQUEST FOR PRODUCTION NO. 53:**

All Documents that refer to or mention Infliximab, any Infliximab Product or the Sp2/0 cell line and also CD Hybridoma Medium or any version or modification of CD Hybridoma Medium.

**REQUEST FOR PRODUCTION NO. 54:**

All publicly available Documents that disclose a cell culture medium or cell culture medium composition that has been or may be used for producing Infliximab or any Infliximab Product.

**REQUEST FOR PRODUCTION NO. 55:**

Documents sufficient to identify all cell culture media or media compositions of which Janssen is aware that can be used to produce infliximab and which Janssen contends are not '083 Patent Media Products, including Documents sufficient to show that any such media or media composition is not an '083 Patent Media Product.

**REQUEST FOR PRODUCTION NO. 56:**

Documents sufficient to show all Janssen and Johnson & Johnson entities and third parties involved in the development, manufacture, testing, sale, offer for sale, importation, and exportation of '083 Patent Media Products.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to show all Janssen and Johnson & Johnson entities and third parties involved in the development, manufacture, testing, sale, offer for sale, importation, and exportation of Remicade® Media.

**REQUEST FOR PRODUCTION NO. 58:**

Documents sufficient to show all Janssen and Johnson & Johnson entities and third parties involved in the development, manufacture, testing, sale, offer for sale, importation, and exportation of Remicade®.

**REQUEST FOR PRODUCTION NO. 59:**

Documents relating to the capacity of all Janssen and Johnson & Johnson entities to develop, manufacture, sell, import, and export Remicade® and any other Infliximab Products.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents concerning any agreement between a third party and Janssen or any other J&J entity regarding any partnership, collaboration, or any other joint venture for the sale, marketing, promotion, or manufacture of Remicade®.

**REQUEST FOR PRODUCTION NO. 61:**

All Documents which form the basis for, or which contradict, Your contention that this case is "exceptional," as asserted in the Complaint.

**REQUEST FOR PRODUCTION NO. 62:**

All Documents that support, refute, or concern Your contention that the alleged infringement of the '083 Patent was willful, as asserted in the Complaint.

**REQUEST FOR PRODUCTION NO. 63:**

All confidential, non-public, and/or sealed filings and discovery responses in the action entitled *Janssen Biotech, Inc. v. Samsung Bioepis Co., Ltd.*, Case No. 17-cv-03524-MCA-SCM (D.N.J.).

**REQUEST FOR PRODUCTION NO. 64:**

All Documents relating to, and Documents sufficient to identify the bases for, Janssen's contention that Samsung Bioepis Co., Ltd. infringes one or more claims of the '083 Patent as asserted in *Janssen Biotech, Inc. v. Samsung Bioepis Co., Ltd.*, Case No. 17-cv-03524-MCA-SCM (D.N.J.), including the protocol for and results of any testing of Samsung Bioepis Co., Ltd.'s products conducted by, for, or on behalf of Janssen.

**REQUEST FOR PRODUCTION NO. 65:**

All transcripts of court hearings in the action entitled *Janssen Biotech, Inc. v. Samsung Bioepis Co., Ltd.*, Case No. 17-cv-03524-MCA-SCM (D.N.J.).

**REQUEST FOR PRODUCTION NO. 66:**

Documents sufficient to identify all accused products and the compositions of all accused products in the action entitled *Janssen Biotech, Inc. v. Samsung Bioepis Co., Ltd.*, Case No. 17-cv-03524-MCA-SCM (D.N.J.).

**REQUEST FOR PRODUCTION NO. 67:**

All confidential, non-public, and/or sealed filings in the action entitled *Janssen Biotech, Inc. v. HyClone Labs. Inc.*, Case No. 16-cv-00071-JNP-EJF (D. Utah).

**REQUEST FOR PRODUCTION NO. 68:**

All Documents relating to, and Documents sufficient to identify the bases for, Janssen's contention that HyClone Laboratories, Inc. infringes one or more claims of the '083 Patent as asserted in *Janssen Biotech, Inc. v. HyClone Labs. Inc.*, Case No. 16-cv-00071-JNP-EJF (D. Utah), including the protocol for and results of any testing of GE's or HyClone Laboratories, Inc.'s products conducted by, for, or on behalf of Janssen.

**REQUEST FOR PRODUCTION NO. 69:**

All transcripts of court hearings in the action entitled *Janssen Biotech, Inc. v. HyClone Labs. Inc.*, Case No. 16-cv-00071-JNP-EJF (D. Utah).

**REQUEST FOR PRODUCTION NO. 70:**

Documents sufficient to identify all accused products in the action entitled *Janssen Biotech, Inc. v. HyClone Labs. Inc.*, Case No. 16-cv-00071-JNP-EJF (D. Utah).

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to identify all Persons or entities aside from Defendants whom You contend infringe or practice, or have infringed or practiced, the '083 Patent, including identification of all products You contend infringe or practice the '083 Patent.

**REQUEST FOR PRODUCTION NO. 72:**

Documents sufficient to show how any monetary damages recovered in this case will be distributed among Janssen, Johnson & Johnson entities, or any other third party, including identification of which entities will recover any portion of damages.

**REQUEST FOR PRODUCTION NO. 73:**

All Documents that support, refute, or concern whether You or any licensee of the '083 Patent marked any products and/or packaging with the '083 Patent.

**REQUEST FOR PRODUCTION NO. 74:**

All Documents that were considered by, or form the basis of, Your experts' opinion on or determination of the amount and type of damages to be awarded in this case.

**REQUEST FOR PRODUCTION NO. 75:**

All Documents and things referred to, relied upon, cited, identified, or otherwise used to prepare any answer to any Interrogatory propounded by Defendants in the present action.

Dated:  July 11, 2017

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L.  Martin, Esq.
Dennis J.  Kelly (BBO # 266340)
Andrea L.  Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C.  (*pro hac vice* to be filed)
Bryan S.  Hales, P.C. (*pro hac vice* to be filed)
Elizabeth A. Cutri (*pro hac vice* to be filed)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Charles B.  Klein (*pro hac vice* to be filed)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Andrea L. Martin, hereby certify that this Document was served on counsel of record by electronic mail on July 11, 2017.

/s/Andrea L. Martin, Esq.
Andrea L. Martin, Esq.