# **<u>EXHIBIT 8</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. l:17-cv-11008-MLW ) ) |
| CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC., | ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1–19)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Local Rules of this Court, and this Court's June 21, 2017 Order (No. 15-10698 Dkt. 574), Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc. (together "Celltrion"), and Hospira, Inc. ("Hospira") (collectively "Defendants") hereby request that Plaintiff Janssen Biotech, Inc. ("Janssen") answer the following Interrogatories by August 14, 2017.

Janssen lacks standing for its May 31, 2017 complaint, and the complaint should be dismissed for at least the reasons set forth in Defendants' motion to dismiss filed July 11, 2017. Further, Defendants contend that the parties and the Court should not devote resources to conducting discovery while Defendants' motion to dismiss is pending. These interrogatories are propounded without waiver of any position of Defendants' with respect to standing, their motion to dismiss, or the question of whether further discovery on damages should be stayed until the Defendants' motion to dismiss the 2017 action is decided.

The '083 patent is not infringed and is invalid, and Janssen is not entitled to any form of relief, monetary or otherwise. The below interrogatories are made without any admission or

waiver of rights or arguments regarding noninfringement, invalidity, or any of Janssen's theories or claims regarding damages or other relief.

Defendants reserve all rights to serve additional discovery requests, including interrogatories, requests for production, requests for admission, and requests for discovery from third parties.

**DEFINITIONS AND INSTRUCTIONS**

1.      These definitions and instruction incorporate by reference the Federal Rules of Civil Procedure and Local Rules of this Court.

2.      "Biosimilar" means a biological product as defined under 42 U.S.C. § 262.

3.      "BLA" means a Biologic License Application submitted to FDA, as authorized by 42 U.S.C. § 262 and as regulated by 21 C.F.R. §§ 600 et seq.

4.      "Celltrion" means Defendant Celltrion, Inc. and/or Defendant Celltrion Healthcare Co., Ltd., and, where applicable, their officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, predecessors, and any Person or organization under their control.

5.      "Celltrion's Biosimilar Infliximab" means the biologic product that is the subject of Celltrion's BLA (BLA 125544) for which Janssen's Remicade® (infliximab) product is the claimed reference product under 42 U.S.C. § 262(k).

6.      "Communication(s)" means any transmission of information from one Person or entity to another or between or among two or more Persons or entities, including but not limited to conveyances of information by e-mail, text message, memorandum, letter, note, Document, telegram, fax, telephone, voicemail, recording, in-person communication, post, instant messaging, tweet, or other media, and also includes the circumstances by which You came into possession of the Document evidencing the communication.

7.      "Defendants" means, individually and collectively, Celltrion and Hospira.

8.      "Document(s)" is to be given its customary and broad sense and means originals and all other copies (whether in printed, optical, or electronic form) of all written or graphic materials however produced or reproduced, of every kind and description, in Your possession, custody, or control, including, without limitation, all content storage media and items, whether

handwritten, printed, recorded, filmed, typewritten, or produced by any other mechanical, optical, or electronic process, whether on disk, diskette, tape, card, hard drive, or otherwise stored in a memory either electronically, optically, digitally, graphically, or mechanically, whether or not asserted to be privileged or immune from discovery, and whether the item is a master or original or copy, including drafts of, or original, preliminary notes or marginal notations appearing on any document, including self-stick removable notes, and any other information-containing paper or other medium, including but not limited to any such medium that in any way records or documents a Communication.

9. "FDA" means the United States Food and Drug Administration.

10. "Hospira" means Defendant Hospira, Inc. and, where applicable, its officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, successors, predecessors, and any Person or organization under their control.

11. "Infliximab" means chimeric monoclonal antibody that is the active ingredient in Remicade®.

12. "Infliximab Product(s)" means any and all products, compositions, formulations, or dosage forms containing Infliximab or biosimilar Infliximab as the active ingredient, including but not limited to proposed, experimental, and commercial embodiments.

13. "Information" means information in any form, including but not limited to documentary, electronic, graphical, or tabular, and communicated by any means, including but not limited to orally, in writing, in a Document, or via electronic communication.

14. To "Identify" means to provide:

- as to a Person, the full name, current or last known address, present or last known place of employment, and Information known about the individual concerning the question asked; and in the case of a Person who is a past or present director, officer, employee, agent, or representative of Janssen, specify all positions or employments held by that

Person during his employment with the company and the dates between which each position or employment was held;

- as to a Document, the title, location, date, author(s), recipient(s) (including addressee(s), copy ("cc" and "bcc") recipient(s), and all Person(s) who actually received the Document or a copy of the Document), number of pages, type of Document, present location and custodian of the Document, a summary of the contents of the Document, as well as to produce the Document for inspection and copying by Defendants; and

- as to facts, a statement and complete explanation of each fact, including any and all Information considered ancillary or related to the facts disclosed in response to these interrogatories, including but not limited to the circumstances surrounding each fact.

15.  "Janssen," "You," and "Your" mean Janssen Biotech, Inc., its predecessors (including Centocor, Inc. and Centocor Ortho Biotech, Inc.) and successors, its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest, its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing, including any and all Persons acting or purporting to act, or who have acted or purported to act, on behalf of Janssen Biotech, Inc., its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest, its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing.

16.  "Johnson & Johnson" and "J&J" mean Johnson & Johnson, its predecessors and successors, its past and present parents, subsidiaries, and divisions, any entities in which they have or had an interest (*e.g.*, the Johnson & Johnson family of companies), its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing, including any and all Persons acting or purporting to act, or who have acted or purported to act, on behalf of Johnson & Johnson, its past and present parents, subsidiaries, and divisions, any entities in which they have or had an

interest, its past and present directors, officers, employees, and agents, and past and present representatives (including consultants and attorneys) of any of the foregoing.

17. "Janssen's BLA" means Janssen's Biologics License Application No. 103772, including any amendments, supplemental filings, or additions, filed with the FDA for approval to commercially market Remicade®.

18. "Person(s)" means any natural person, firm, association, partnership, government agency, or other entity and its officers, directors, partners, employees, former employees, representatives and agents.

19. "Remicade®" means any drug product or pharmaceutical formulation marketed or sold under the name Remicade®, any other drug product or pharmaceutical formulation marketed further to the FDA's approval of Janssen's BLA, as amended and/or supplemented, and any Infliximab Product for which Janssen seeks damages.

20. "'083 Patent" and "Asserted Patent" mean U.S. Patent No. 7,589,083.

21. "'083 Patent Inventors" means those individuals, individually and collectively, who contributed in any way to the conception of the subject matter claimed in U.S. Patent No. 7,589,083, including but not limited to the individuals listed on the face of the '083 Patent: David Epstein, Roger Monsell, Joseph Horwitz, Susan Lenk, Sadettin Ozturk, and Christopher Marsh.

22. "'083 Patent Media Product(s)" means any cell medium composition embodying the composition claimed in the '083 Patent.

23. "Reflecting," "referring," "relating to," "regarding," "concerning" or any derivation thereof shall mean, without limitation, being in any way legally, logically, or factually connected with the matter discussed.

24. "Including" shall mean "including without limitation."

25. If You claim that an Interrogatory is in any way objectionable, respond to the portion of the Interrogatory believed to be unobjectionable and specifically identify that aspect of the Interrogatory that You claim to be objectionable and why.

26. If You claim that Information requested or required in response to a given Interrogatory is also responsive to another Interrogatory, You may not answer the Interrogatory by referring to the answer to another Interrogatory unless the answer to the Interrogatory being referred to supplies a complete and accurate response to the Interrogatory being answered.

27. If You object to any Interrogatory on the ground that it is vague and/or ambiguous, identify the particular words, terms, or phrases that You assert make such request vague and/or ambiguous and specify the meaning You actually attribute to such words, terms, or phrases for purposes of Your response.

28. If Janssen elect to avail itself of the procedure for answering interrogatories authorized by Rule 33(d) of the Federal Rules of Civil Procedure, Defendants request that, for each interrogatory so answered, Janssen specify the particular Documents relating to the subject matter of the specific interrogatory, including by production number, and separately for each Document, specify its source (*i.e.*, the Person from whom files were obtained or other location from which it was taken), and its author and date of preparation, if not apparent from the face of the Document.

29. These Interrogatories are continuing and require You, to the extent authorized by Fed. R. Civ. P. 26(e), to furnish supplemental answers whenever You or those in privity with You obtain different or additional knowledge, Information, or belief in relation to these Interrogatories after the date of Your original response.

**INTERROGATORIES**

**INTERROGATORY NO. 1:**

Separately, for each category of monetary damages alleged, state the basis for such claims. For clarity, each basis should include an identification of each damages theory that Janssen alleges should be used in the damages calculation (*e.g.*, reasonable royalty, lost profits, price erosion), the factual and legal support for those theories (for a reasonably royalty, a detailed analysis, and an explanation of the impact, if any, of each Georgia-Pacific factor, or for lost profits, a detailed explanation of how and why the requirements for lost profits are allegedly met), the specific inputs that Janssen alleges should be used under each such theory in the damages calculation (*e.g.*, the royalty rate and royalty base), the date ranges for which damages should apply, the relevant market, a computation of any alleged damages Janssen claims, and an identification of all Documents on which such calculations are based, and the five individuals most knowledgeable of the above, excluding counsel.

**INTERROGATORY NO. 2:**

Identify every product developed, manufactured, tested, used, made, sold, or offered for sale by You or any licensee or assignee or co-owner that falls within the scope of any claim of the '083 Patent (*e.g.*, all '083 Patent Media Products), including by specifying: (a) the product name, (b) the dates and locations each product was made, used, sold, offered for sale, licensed, or imported, (c) the claim(s) of the '083 Patent that were embodied, practiced, and/or used in or by each such product, and (d) the name(s) of the purchaser and/or customer.

**INTERROGATORY NO. 3:**

Identify every product developed, manufactured, tested, used, made, sold, or offered for sale by You or any licensee or assignee or co-owner that was developed or manufactured using '083 Patent Media Products or using a process that incorporates '083 Patent Media Products, including by specifying: (a) the product name, (b) the dates and locations each product was made, used, sold, offered for sale, licensed, or imported, (c) the claim(s) of the '083 Patent that were embodied, practiced, and/or used, and (d) the name(s) of the purchaser and/or customer of the product.

**INTERROGATORY NO. 4:**

Describe in detail all costs, received or expected revenues, or returns on investment attributable to the '083 Patent and '083 Patent Media Products at the most granular level for which Janssen maintains records in the ordinary course of business (*e.g.*, monthly, quarterly, biannually, annually, etc.). The response should include, without limitation, all valuations, appraisals, associated costs (with each separate cost identified separately (*e.g.*, costs of developing, making, purifying, distributing, marketing, and selling, etc.)), and associated gross and net profit margins, and a detailed description of how Janssen accounts for its revenues, profits, and costs associated with the '083 Patent and '083 Patent Media Products, including: an identification of which Janssen and/or Johnson & Johnson entities is responsible for costs; an

identification of which Janssen and/or Johnson & Johnson entities profit, directly or indirectly, from the sale and/or licensing of the '083 Patent and '083 Patent Media Products; an identification of any related financial statements, reports, budgets, forecasts, valuations, and/or projections; and an identification of the five individuals most knowledgeable of Janssen's marketing, advertisements, and finances related to the '083 Patent and '083 Patent Media Products.

**INTERROGATORY NO. 5:**

Identify any license, offer to license, covenants-not-to-sue, assignment, or other agreements conferring exclusive or non-exclusive rights concerning or including the '083 Patent or any purported commercial embodiment of the '083 Patent, including the following information: the parties to the agreement; the subject matter of the agreement, including but not limited to all intellectual property, technology, and know-how subject to license; any payment obligations provided for in the agreement; and the amount of proposed or actual royalties or milestones paid (by month or quarter) pursuant to the agreement since its execution and identify the five individuals most knowledgeable of the negotiations, offer or execution of each license, or offers to license.

**INTERROGATORY NO. 6:**

State the basis for any alleged consumer demand for '083 Patent Media Products, including: the identity of the individuals most knowledgeable of any purported consumer demand for '083 Patent Media Products; an identification of all consumer or marketing surveys or reports that address the value of '083 Patent Media Products or comparable cell media products; and an identification of each Document reflecting the marketing or monetary value of '083 Patent Media Products or comparable cell media products.

**INTERROGATORY NO. 7:**

State the basis for how any portion of sales of Infliximab Products is allegedly attributable to use of '083 Patent Media Products and/or comparable cell media products, including what portion of sales of Infliximab Products You attribute to the use of '083 Patent Media Products and/or comparable cell media products.

**INTERROGATORY NO. 8:**

State the basis for any alleged consumer demand for Infliximab Products, including the portion of total demand attributable to each basis, an identification of individuals most knowledgeable of any purported consumer demand for Infliximab Products, and an identification of all consumer or marketing surveys or reports that address the demand for Infliximab Products.

**INTERROGATORY NO. 9:**

Identify every product that has been at any time an actual or potential rival, competitor, or would-be competitor of '083 Patent Media Products, including the basis for and identification of the Documents that support Your response. Competitive products include other products from Johnson & Johnson family companies that compete with Janssen's '083 Patent Media Products.

**INTERROGATORY NO. 10:**

Describe in detail all costs, received or expected revenues, or return on investment attributable to Remicade® at the most granular level for which Janssen maintains records in the ordinary course of business (*e.g.*, monthly, quarterly, biannually, annually, etc.).  The response should include, without limitation, all valuations, appraisals, associated costs (with each separate cost identified separately (*e.g.*, costs of making, purifying, distributing, marketing, and selling, etc.)), associated gross and net profit margins, and a detailed description of how Janssen accounts for its revenues, profits, and costs associated with Remicade®, including: an identification of which Janssen and/or Johnson & Johnson entities is responsible for costs; an identification of which Janssen and/or Johnson & Johnson entities profit, directly or indirectly, from the sale of Remicade®; an identification of any related financial statements, reports, budgets, forecasts, valuations, and/or projections; and an identification of the five individuals most knowledgeable of Janssen's marketing, advertisements, and finances related to Remicade®.

**INTERROGATORY NO. 11:**

Identify every product that has been at any time an actual or potential rival, competitor, or would-be competitor of Remicade® (including but not limited to Infliximab Products) on a country-by-country basis, and state the basis for how You define or identify competitive products, including: the conditions or indications to which any given competitive product is directed; and an identification of the Documents that support Your response.  Competitive products include other products from Johnson & Johnson family companies that compete with Remicade®.

**INTERROGATORY NO. 12:**

Identify and describe every cell media that has been tested, proposed, considered for use, or used by anyone as media for production of Remicade® or any Infliximab Product. Your response should include, for each such media, an explanation of whether or not Janssen believes it is an '083 Patent Media Product, either literally or under the Doctrine of Equivalents, an explanation of the basis for how Janssen identifies it as an '083 Patent Media Product, if applicable,  a statement of all reasons why Janssen chose not to use any '083 Patent Media Product for the process of producing Remicade® or all reasons why Janssen chose the media it does use or has used for the process of producing Remicade®; and an identification of the five individuals most knowledgeable of the above, excluding counsel.

**INTERROGATORY NO. 13:**

For each limitation in the asserted claims of the '083 Patent, identify all substitute ingredients and outer limits to the ingredient ranges which Janssen contends are equivalent to '083 Patent Media Products under the Doctrine of Equivalents, as well as all media or media composition which Janssen contends are equivalent to '083 Patent Media Products under the Doctrine of Equivalents.

**INTERROGATORY NO. 14:**

For each limitation in the asserted claims of the '083 Patent, explain how to determine whether a given media or media composition does not meet that limitation under the Doctrine of Equivalents, including all metrics and cut-offs employed.

**INTERROGATORY NO. 15:**

Identify all acceptable non-infringing alternatives to '083 Patent Media Products for production of any Infliximab Product of which Janssen is aware, including why You contend each such media is a non-infringing alternative.

**INTERROGATORY NO. 16:**

Identify the advantages, if any, of the '083 Patent Media Products relative to prior art cell culture media or any other non-infringing alternative cell culture media for the purpose of producing any Infliximab Product. The response should include, without limitation, a description of the value allegedly added by '083 Patent Media Products to any prior art cell culture media or non-infringing alternatives for the purpose of producing any Infliximab Product, including a description of the value allegedly added by '083 Patent Media Products to the media Janssen uses in the process for producing Remicade®.

**INTERROGATORY NO. 17:**

To the extent Janssen contends there is no available non-infringing alternative to the '083 Patent for the purpose of producing Remicade® or any Infliximab Product, explain how any patent that allegedly claims Infliximab (*e.g.*, U.S. Pat. No. 6,284,471) or methods of treatment of using Infliximab (*e.g.*, U.S. Pat. No. 7,223,396) is enabled, including how a person of ordinary skill would be able to make and use the claimed inventions without undue experimentation as of their respective filing and priority dates.

**INTERROGATORY NO. 18:**

For each asserted claim of the '083 Patent, state the basis for Your contention that Defendants have willfully infringed or are willfully infringing the '083 Patent, including without limitation all facts and circumstances contradicting or otherwise relating to Your contention, an identification of the time period over which Janssen claims that Defendants have willfully infringed, the identities of all individuals affiliated with Defendants that Janssen claims knew of the '083 Patent and alleged infringement, an identification of all facts and Documents on which Janssen relies to support its allegations, and an identification of all individuals with knowledge concerning the factual and legal bases of Janssen's allegations.

**INTERROGATORY NO. 19:**

State the basis for Your contention that this case is an exceptional case under 35 U.S.C. § 285, including the identity of all Documents and individuals with knowledge of the facts concerning that contention.

Dated:  July 11, 2017

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C.  (*pro hac vice* to be filed)
Bryan S. Hales, P.C. (*pro hac vice* to be filed)
Elizabeth A. Cutri (*pro hac vice* to be filed)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Charles B. Klein (*pro hac vice* to be filed)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## **CERTIFICATE OF SERVICE**

    I, Andrea L. Martin, hereby certify that this document was served on counsel of record by electronic mail on July 11, 2017.

                              /s/Andrea L. Martin, Esq.
                              Andrea L. Martin, Esq.