# EXHIBIT 37

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
---------------------------------------x

JANSSEN BIOTECH, INC. and
NEW YORK UNIVERSITY,

        Plaintiffs,

      v.

CELLTRION HEALTHCARE CO., LTD.,
CELLTRION, INC., and
HOSPIRA, INC.,

        Defendants.

---------------------------------------x
Civil Action No. 1:15-cv-10698
Civil Action No. 1:16-cv-11117
---------------------------------------x

      *** HIGHEST CONFIDENTIALITY ***

    *** PURSUANT TO PROTECTIVE ORDER ***

 VIDEO DEPOSITION OF ANNE OSBORNE MARTINSON, ESQ.

  ON BEHALF OF JOHNSON & JOHNSON SERVICES, INC.

  PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE

            30(b)(6)

        NEW YORK, NEW YORK

       Tuesday, May 9, 2017

REPORTED BY:

BRANDON R. RAINOFF, RMR, CRR, FCRR

Ref: 18715

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 16

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    for whatever, reason just let me know.

3              Does that sound okay?

4         A.   Yes.

5         Q.   And do you understand that you are

6    testifying under oath today?

7         A.   I do.

8         Q.   Is there any reason why you cannot

9    give truthful and accurate testimony today?

10        A.   No.

11        Q.   Did you graduate college, Ms.

12   Martinson?

13        A.   I did.

14        Q.   From what college and what year?

15        A.   Princeton University, 1982.

16        Q.   What did you study at Princeton?

17        A.   Politics and economics.

18        Q.   Then did you go to graduate school?

19        A.   I did.

20        Q.   Where did you go?

21        A.   New York University.

22        Q.   Did you go to New York University Law

23   School?

24        A.   I did.

25        Q.   What year did you graduate from New

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 17

1        ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2        York University Law School?

3                A.      1990.

4                Q.      Did you attend any other graduate

5        level school or studies?

6                A.      I did not.

7                Q.      Did you begin practicing law after you

8        graduated law school in 1990?

9                A.      I did.

10               Q.      What were you doing at the time?

11               A.      I was a judicial law clerk.

12               Q.      Where were you a judicial law clerk?

13               A.      Southern District of New York.

14               Q.      In New York City?

15               A.      Yes.

16               Q.      How long were you a judicial law clerk

17       for?

18               A.      One year.

19               Q.      Then what did you do after that?

20               A.      I worked for a law firm.

21               Q.      Which law firm did you work for?

22               A.      Patterson Belknap Webb & Tyler.

23               Q.      I had a feeling that might be the

24       case.

25                       How long were you employed by

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 18

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    Patterson Belknap Webb & Tyler?

3        A.    About a year and a half.

4        Q.    What was your role at the Patterson

5    Belknap firm?

6        A.    Associate.

7        Q.    Were you an associate in any

8    particular department or area of law?

9        A.    Litigation.

10       Q.    Then what did you do after you left

11   the Patterson Belknap law firm?

12       A.    I moved to Kansas City.

13       Q.    What were you doing in Kansas City?

14       A.    I worked for a nonprofit.

15       Q.    What's the name of that organization?

16       A.    The Ewing Marion Kauffman Foundation

17   in the Kauffman Center for Entrepreneurial

18   Leadership.

19       Q.    Was that in a role as an attorney?

20       A.    It was.

21       Q.    So can you tell me what the -- I'm not

22   going to say it properly -- Ewing Marion

23   Kauffman?

24       A.    Marion Kauffman.

25       Q.    Ewing Marion Kauffman Foundation.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 19

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2            Can you tell me what the nature of

3    that organization is?

4        A.    Sure, it's a 501(c)(3) foundation.

5        Q.    So I understand that's some sort of

6    charitable organization?

7        A.    Yes.

8        Q.    What type of charity work do they do?

9        A.    They are involved in education in

10   Kansas City, and they are involved in

11   entrepreneurship which is primarily done through

12   the Kauffman Center for Entrepreneurial

13   Leadership.

14       Q.    Did you grow up in the Kansas City

15   area?

16       A.    No.

17       Q.    How did you end up being in Kansas

18   City?

19       A.    My husband chose to move to Kansas

20   City and I moved with him.

21       Q.    How long were you employed by the two

22   charitable organizations you just mentioned?

23       A.    I was employed by one.

24       Q.    How long were you employed by the one?

25       A.    Five years.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 20

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2         Q.    All of those years in the capacity as

3    an attorney?

4         A.    Yes.

5         Q.    Do you remember what your title was?

6         A.    It was general -- at different times

7    it was general counsel and secretary.

8         Q.    Then what did you do upon your

9    departure from the Ewing Marion --

10              MR. FISCHER:  Is it the Kauffman

11   Foundation?

12        Q.    Kauffman Foundation?

13              Can I call it the Kauffman Foundation?

14   That would be great.

15        A.    You may.

16        Q.    That would be great.  That's much

17   easier to remember.

18              What did you do upon your departure

19   from the Kauffman foundation?

20        A.    I moved to Swarthmore, Pennsylvania.

21        Q.    Did you take a job there?

22        A.    I did not.

23        Q.    So were you unemployed or employed --

24   not employed outside the household for a number

25   of years?

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 21

1     ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2          A.    I did a little bit of work

3     independently for the Kauffman Foundation.

4          Q.    In the capacity as an attorney?

5          A.    Yes.

6          Q.    What type of work were you doing for

7     the Kauffman Foundation?

8          A.    Private equity.

9          Q.    No litigation?

10         A.    No.

11         Q.    How many years did you do some

12    independent work for the Kauffman Foundation?

13         A.    About a year.

14         Q.    Then what did you do after that point?

15         A.    I primarily ran PTAs, raised children.

16         Q.    How many years did you do that for?

17         A.    Get my years wrong.

18               I did that until 2005.

19         Q.    Then at some point did you enter the

20    work force again?

21         A.    Yes.

22         Q.    Was that in 2005?

23         A.    Yes.

24         Q.    What did you do then in 2005, where

25    were you working?

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 22

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2         A.    In 2005 I returned to Patterson

3    Belknap Webb & Tyler.

4         Q.    What was your title then at Patterson

5    Belknap?

6         A.    Associate.

7         Q.    In litigation again?

8         A.    Yes.

9         Q.    Then how long were you an associate at

10   Patterson Belknap after you started in 2005?

11        A.    Almost two years.

12        Q.    Did you work on any patent litigation

13   matters while you were an associate at Patterson

14   Belknap?

15        A.    At that time?

16        Q.    Hm-hmm.

17        A.    No.

18        Q.    So after you were an associate at

19   Patterson Belknap for about two years starting

20   in 2005, what did you do at that point in terms

21   of employment?

22        A.    I'm sorry, can you say it again?

23        Q.    Sure.  You said that you went back to

24   Patterson Belknap in 2005, right, and you think

25   you were there about two years?

Page 23

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2         A.    Yes.

3         Q.    Then after that two years where did

4    you go?

5         A.    I joined Johnson & Johnson.

6         Q.    In the capacity as an attorney?

7         A.    Yes.

8         Q.    So that was around 2007?

9         A.    Correct.

10        Q.    What was your title when you joined

11   Johnson & Johnson in 2007?

12        A.    Senior counsel.

13        Q.    Were you, in 2007 when you joined

14   Johnson & Johnson, were you employed in any

15   particular department or subgroup of a legal

16   department?

17        A.    Yes, I was in the litigation

18   department.

19        Q.    What were your responsibilities at the

20   time as senior counsel in the litigation

21   department?

22        A.    My responsibilities were to handle

23   various litigation matters that were assigned to

24   me working with outside counsel.  I was also

25   responsible for advising a number of clients

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 24

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    with respect to employment matters.

3         Q.    When you say advising a number of

4    clients, who are you referring to when you say

5    clients?

6         A.    I am referring to specific assigned

7    operating companies within the Johnson & Johnson

8    family of companies.

9         Q.    When you were working as senior

10   counsel in the litigation department at Johnson

11   & Johnson starting in about 2007, and you were

12   advising clients about employment matters, were

13   you assigned to particular identified Johnson &

14   Johnson subsidiaries or would it just be kind of

15   whatever came your way?

16        A.    At that time I was assigned to

17   specific identified companies.

18        Q.    What were those companies?

19        A.    As best I can recall, those companies

20   were LifeScan, Animas --

21        Q.    Can you spell that, please?

22        A.    A-N-I-M-A-S, Ethicon Endo-Surgery,

23   Biosense Webster, Centacor R&D, and I don't

24   remember -- I don't remember.

25        Q.    During the time that you were -- this

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 29

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    & Johnson subsidiaries for which you had

3    responsibilities related to employment matters

4    change?

5              Were there additions or subtractions

6    from the list you gave me?

7        A.    Yes.  My responsibilities did change

8    over the course of those years, and included in

9    that change were the companies for which I'm

10    responsible.

11        Q.    So I guess currently today can you

12    give me the list of, if you can think of them,

13    all of the Johnson & Johnson subsidiaries for

14    which you have responsibilities?

15        A.    Directly I have responsibility for

16    Janssen R&D.

17        Q.    When you say directly, what do you

18    mean?

19        A.    I'm now what we call a practice group

20    leader, meaning that all of the Johnson &

21    Johnson employment lawyers or the majority of

22    Johnson & Johnson employment lawyers report in

23    to me.

24              So lawyers who report in to me are

25    responsible directly for providing employment

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 30

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    law support to other operating companies.  When

3    they are not around, I do it.

4         Q.    So I believe you said -- am I correct

5    that you said the majority of Johnson & Johnson

6    employment lawyers report to you?

7         A.    Yes.

8         Q.    So is it correct to understand that

9    those Johnson & Johnson employment lawyers have

10   responsibilities related to the entire scope of

11   J&J subsidiaries or most of them?

12        A.    Most of them.

13        Q.    But then you said you currently have

14   responsibility for Janssen R&D, right?

15        A.    Correct.

16        Q.    Is that because there is no one who

17   reports to you who has responsibility for

18   Janssen R&D?

19        A.    That's correct.

20        Q.    Okay.  Is Janssen R&D different than

21   Janssen Biotech?

22        A.    Yes.

23        Q.    In what way?

24        A.    Janssen Research and Development is

25   the R&D arm of our pharmaceutical companies.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 43

ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    e-mailed?

3         A.    I did not.

4         Q.    Okay.  Was there anyone else that you

5    spoke to over the phone during that meeting?

6         A.    No.

7         Q.    Was there anyone else you obtained

8    information from in some way during that meeting

9    by e-mail or some other means?

10        A.    Tried to.

11        Q.    Who did you try to obtain information

12   from?

13        A.    Glenn Clark.

14        Q.    C-L-A-R-K?

15        A.    Yes.

16        Q.    Who is Glenn Clark?

17        A.    He is a partner at Riker Danzig.

18        Q.    What is Riker Danzig?

19        A.    A law firm.

20        Q.    Do you know Glenn Clark personally?

21        A.    Yes.

22        Q.    How do you know him?

23        A.    He's a partner at a law firm that I

24   have done business with.

25        Q.    You say "I have done business with."

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 44

ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

1

2            You mean in your capacity as counsel

3      for Johnson & Johnson?

4        A.    Correct.

5        Q.    What type of work does the law firm of

6      Riker Danzig do that you have been involved

7      with?

8            MR. FISCHER:  Again, on this line of

9      questioning, make sure to answer the questions

10     without revealing the contents of conversations

11     with counsel.

12       A.    Riker Danzig has been involved in

13     non-compete litigation on behalf of J&J and its

14     operating companies.

15       Q.    Is the Riker Danzig firm located in

16     New Jersey?

17       A.    It is.

18       Q.    When you say non-compete litigation on

19     behalf of J&J companies, do you mean enforcement

20     of employment agreements?

21       A.    Both enforcement and defense.

22       Q.    Does Glenn Clark typically work on the

23     cases that you just described, enforcement and

24     defense of employment agreements?

25           MR. FISCHER:  Objection to the form.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 84

ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY
2        A.    So the last time that I was asked to
3    contribute to an employment agreement relating
4    to a section of December 2016.
5        Q.    Do you recall the particular
6    employment agreement that you just mentioned?
7        A.    Yes.
8        Q.    Who if you recall was the operating
9    Johnson & Johnson subsidiary involved in that
10   agreement?
11            MR. FISCHER:  Objection to the form.
12   You can answer.
13       A.    So there was -- it's a difficult
14   question to answer in that way.  In December of
15   2016 I rewrote the template employee secrecy and
16   employee non-compete agreements which would then
17   be used across the Johnson & Johnson companies
18   in the United States.
19       Q.    In the process of rewriting the
20   template secrecy non-compete agreements that
21   would be used across Johnson & Johnson companies
22   in the United States, did you rewrite or work on
23   the provision of that agreement that relates to
24   assignment of rights to inventions or patents?
25       A.    Generally, yes.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 94

1      ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2      not, who were involved with the process of

3      revising the template secrecy and non-compete

4      agreement in late 2016 who you have not

5      identified to me because you believe that doing

6      so would reveal privileged information?

7           A.    No.

8           Q.    Has the process of revising the

9      template secrecy and non-compete agreement that

10     we just spoke of that happened at the end of

11     2016 been complete or is that still under way?

12          A.    It is complete.

13          Q.    Is the revised template secrecy and

14     non-compete agreement based on the revisions

15     that were made at the end of 2016 with your

16     involvement now being used by Johnson & Johnson

17     companies?

18          A.    I hope so.

19          Q.    Has there been an instruction to

20     anyone that the recently revised version of the

21     template secrecy and non-compete agreement that

22     you recently revised is to be the only version

23     of the agreement used going forward?

24               MR. FISCHER:  So you can answer that

25     with respect to general policies.  If you have

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 95

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    given legal advice with respect to that, that

3    would be privileged.  But if there is a policy

4    that relates to that question you can answer it.

5         A.    I don't believe there is a policy.

6              MR. FISCHER:  Okay.  Let me make the

7    instruction this way.  You can answer that

8    question, but please don't reveal the contents

9    of attorney-client communications.

10        A.    So the question again?  I'm sorry.

11   Short term memory.

12        Q.    Sure.  Has there been an

13   instruction -- has there been an instruction to

14   anyone that the recently revised version of the

15   template secrecy and non-compete agreement that

16   we just spoke of that you were involved is to be

17   the only version of the agreement used going

18   forward by Johnson & Johnson companies?

19        A.    Within the United States?

20        Q.    That's right.

21        A.    I believe so.

22        Q.    Do you recall when you were first

23   asked to give a deposition in connection with

24   this litigation?

25        A.    Yes.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 98

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2        Q.    Do you have any familiarity at all

3    with Rule 30(b)(6) of the Federal Rules of Civil

4    Procedure?

5        A.    Yes.

6        Q.    What is your understanding of what

7    Rule 30(b)(6) is or what it means?

8        A.    My understanding of Rule 30(b)(6) is

9    that it is a rule that enables a company to

10   appoint a person who will answer questions on a

11   topic to the best of their ability.

12       Q.    Do you understand that you have been

13   designated as a witness under Federal Rules of

14   Civil Procedure 30(b)(6) with respect to certain

15   subject matters on behalf of Janssen Biotech,

16   Inc.?

17       A.    Yes, I do.

18       Q.    Do you understand that you have been

19   designated as a witness under Federal Rule of

20   Civil Procedure 30(b)(6) with respect to certain

21   subject matters on behalf of Johnson & Johnson?

22       A.    Yes.

23       Q.    In front of you I believe are two

24   documents, one marked Exhibit 1 and one marked

25   Exhibit 2.

Page 100

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2        Q.    Under the heading deposition topics?

3        A.    Yes.

4        Q.    Have you reviewed, I guess not in this

5    particular document, but have you reviewed

6    topics for your deposition with respect to your

7    testimony on behalf of Johnson & Johnson prior

8    to today?

9        A.    I'm sorry?  That's --

10       Q.    Sure.  Yeah.  Sure.

11             Have you at any point prior to today

12   reviewed topics, subject matters with which you

13   understood you were supposed to give testimony

14   on behalf of Johnson & Johnson?

15             MR. FISCHER:  Objection to the form,

16   you can answer.

17       A.    Yes.

18       Q.    Reading these two topics here that are

19   in front of you, one and two on the back of

20   Exhibit 1, do you understand that you have been

21   designated on behalf of Johnson & Johnson to

22   testify about Johnson & Johnson's interpretation

23   of employment agreements that are the same as or

24   similar to those at issue in defendants

25   Celltrion and Hospira's motion to dismiss in

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 101

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2    this particular litigation?

3         A.    Yes.

4         Q.    Do you understand that you have been

5    designated on behalf of Johnson & Johnson to

6    give testimony about Johnson & Johnson's efforts

7    to enforce employment agreements at issue in the

8    actions -- in a list of actions that was

9    provided by Janssen in connection with this

10   particular litigation?

11        A.    Yes.

12              MR. FISCHER:  Just for the record, the

13   exhibit also says:  Or other similar actions

14   identified by the defendants.

15              That's not part of the topic of

16   30(b)(6) and, of course, it's not possible to

17   have prepared the witness on unidentified

18   actions.

19              MS. CUTRI:  Okay.  I don't want to

20   take up the witness's time right now.  I'm going

21   to look up the documents relevant to that later

22   so I don't want to take any of your time right

23   now.

24              MR. FISCHER:  I'm not going to

25   instruct her not to answer.  You can select

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 109

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2        Q.    Those would be people who would report

3    to you?

4        A.    Not always.  There are some employment

5    attorneys who are in other practice groups.

6        Q.    In connection with managing the

7    Ethicon DePuy versus LA matter that we spoke

8    about, has one of your responsibilities been to

9    review papers or materials that are filed in

10   connection with that case before they are filed?

11       A.    Yes.

12       Q.    Did you review the complaint in that

13   case before it was filed?

14       A.    Yes.

15       Q.    Can you think of any other documents

16   you reviewed in that case before they were

17   filed?

18       A.    Motions.

19       Q.    What about in connection with other

20   non-compete or enforcement-type litigations that

21   you've managed that might not necessarily be

22   listed here, have you in the past reviewed

23   complaints in those types of litigations before

24   they are filed?

25       A.    For the litigations that I managed.

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 110

1    ANNE O. MARTINSON, ESQ. - HIGHEST CONFIDENTIALITY

2         MR. FISCHER:  Objection to the form.

3    You can answer.

4         A.    I have reviewed complaints that were

5    filed for the litigations that I managed.

6         Q.    What about other types of pleadings

7    beyond the complaint, motions, briefs, other

8    types of things?

9         A.    Generally, yes.

10        Q.    Is it important to Johnson & Johnson

11   that they attempt to be truthful and accurate in

12   pleadings that are filed with courts?

13        A.    Yes.

14        Q.    When you review complaints and other

15   papers that are filed in connection with

16   non-compete or enforcement type litigations, is

17   one of the things you try to do or you aim to do

18   to make sure that the statements contained in

19   those documents are truthful and accurate?

20        A.    To the best of our ability.

21        Q.    What about when you draft or send a

22   letter in connection with an employee secrecy or

23   non-compete-type matter, do you typically make

24   an effort to ensure that your statements are

25   truthful and accurate?

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 361

```
 1
 2                 A C K N O W L E D G M E N T
 3
 4     STATE OF NEW YORK        )
                                             :ss
 5     COUNTY OF NEW YORK    )
 6
 7     I, ANNE OSBORNE MARTINSON, ESQ., hereby certify that
 8     I have read the transcript of my testimony taken
 9     under oath in my deposition of Tuesday, May 9, 2017;
10     that the transcript is a true, complete and correct
11     record of my testimony; and that the answers on the
12     record as given by me are true and correct.
13
14
15                      _____
                        ANNE OSBORNE MARTINSON, ESQ.
16
17
18     Signed and subscribed to before me,
19     this _____ day of _____, 2017.
20
21
       _____
22                  (NOTARY PUBLIC)
23
24     My Commission expires:
25
```

HIGHEST CONFIDENTIALITY
PURSUANT TO PROTECTIVE ORDER

Page 362

1

2                    C E R T I F I C A T E

3

4    STATE OF NEW YORK        )
                                                    :ss
5    COUNTY OF NEW YORK    )

6

7              I, BRANDON RAINOFF, a Federal Certified

8    Realtime Reporter and Notary Public within and for

9    the State of New York, do hereby certify:

10              That ANNE OSBORNE MARTINSON, ESQ., the

11   witness whose  deposition is hereinbefore set forth,

12   was duly sworn by me and that such deposition is a

13   true record of the testimony given by the witness.

14              I further certify that I am not related

15   to any of the parties to this action by blood or

16   marriage; and that I am in no way interested in the

17   outcome of this matter.

18              IN WITNESS WHEREOF, I have hereunto set

19   my hand this 9th day of May , 2017.

20

21

22         _____
            BRANDON RAINOFF, FCRR, RMR, CRR
23

24

25