# EXHIBIT 38

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                              SUPERIOR COURT
                                                                          CIVIL ACTION
                                                                          NO. 07-1464 BLS1

DePUY SPINE, INC. & another[1]

vs.

STRYKER BIOTECH, L.L.C. & another.[2]

MEMORANDUM AND ORDER ON REQUEST FOR
PRELIMINARY INJUNCTION

This matter came before the Court on the Plaintiffs' Motion for Preliminary Injunction, or Alternatively, for Temporary Restraining Order, Paper #4. On April 5, 2007, the Court declined entering an *ex parte* temporary restraining order and issued an Order of Notice to show cause why a preliminary injunction should not enter. The matter has now been heard on return of the Order of Notice and the Court issues the following Memorandum and Order.

BACKGROUND

DePuy Spine, Inc. ("DePuy Spine") is a Massachusetts corporation and is one of the Johnson & Johnson family of companies. Its principal place of business is in Raynham, Massachusetts. Johnson & Johnson Regenerative Therapeutics, LLC ("JJRT") is a Massachusetts limited liability corporation and also is one of the Johnson & Johnson family of companies also with its principal place of business in Raynham, Massachusetts.

The defendant G. Joseph Ross ("Ross"), a resident of Rehoboth, Massachusetts, is a former high level employee of DePuy Spine.

---

[1] Johnson & Johnson Regenerative Therapeutics, Inc.

[2] G. Joseph Ross.

By letter dated March 19, 2007, Ross tendered his resignation from DePuy Spine to accept a position at Stryker Biotech, L.L.C. ("Stryker Biotech"), a Michigan limited liability corporation with its principal place of business in Hopkinton, Massachusetts. Ross is about to be engaged by Stryker Biotech as its Vice President of Marketing.

Leading up to his resignation, Ross had served as Worldwide Vice President of New Business Development for DePuy Spine. While employed with DePuy Spine, Ross, on July 27, 2005, executed a standard form of "Employee Secrecy, Non-Competition and Non-Solicitation Agreement" (the "Agreement"), which DePuy Spine, along with JJRT, seeks to enforce in this litigation.

The Agreement, in sec. 6, prohibits Ross from competing as follows:

> [F]or a period of eighteen (18) months after termination of my employment with the COMPANY [DePuy Spine, Johnson & Johnson and any of its affiliates] for any reason, I will not render services, directly or indirectly, to any CONFLICTING ORGANIZATION . . . in which the services I may provide could enhance the use or marketability of a CONFLICTING PRODUCT by application of CONFIDENTIAL INFORMATION which I shall have access to during my employment. . . .

The Agreement, in sec. 7, contains a covenant from Ross as follows:

> . . . I therefore agree that . . . for eighteen (18) months after termination of my employment with the COMPANY for any reason, I will not solicit any business from, sell to, or render any services to, or, directly or indirectly, help others to solicit business from or render service or sell to, any of the accounts, customers or clients with whom I have had contact during the last twelve (12) months of my employment with the COMPANY, for any purpose related to the sale of any such product or service. . . .

The Agreement defines a CONFLICTING ORGANIZATION as: "any person or organization which is engaged or is about to become engaged in research on, consulting regarding, or development, production, marketing, or selling of a CONFLICTING PRODUCT."

The Agreement defines a CONFLICTING PRODUCT as: "any product, process, machine, invention or service of any person or organization other than the COMPANY in existence or under development which resembles or competes with a product, process, machine, invention or service upon which I shall have worked or about which I became knowledgeable as a result of my employment with the COMPANY and whose use or marketability could be enhanced by application to it of CONFIDENTIAL INFORMATION which I shall have had access to during my employment."

It thus becomes significant to understand whether Stryker Biotech is a CONFLICTING ORGANIZATION, as that term is used in the Agreement, and, if so, whether any CONFLICTING PRODUCT will be involved if Ross assumes his new position with Stryker Biotech.

For these purposes, DePuy Spine asserts that its business involves the manufacture and distribution of products utilized in the treatment and repair of spinal disorders and injuries. These products include metal and plastic hardware products, such as spinal implant and external fixation devices, and bone graft products (also called orthobiologic or biologic products), which are utilized in conjunction with spinal implant products to facilitate the regeneration of bone in the spine.

DePuy Spine describes its spinal implant products as including cages, rods, plates and the specialized screws used to affix these items to human bone. Spinal implant products are used in spinal surgeries to fuse together segments of the spine.

DePuy Spine says that its spinal bone graft products are materials designed to facilitate bone regeneration in the spine, using a variety of biologic approaches.

DePuy Spine's product development work is performed for it by JJRT.

DePuy Spine asserts that "Stryker Biotech and its affiliated company, Stryker Spine," are competitors of DePuy Spine in the markets for spinal implant and bone graft products.

Stryker Biotech responds to DePuy Spine's allegations regarding competition by asserting that Stryker Biotech and Stryker Spine are two wholly separate subsidiary entities in the Stryker Corporation family of companies. It says that Stryker Corporation has its corporate headquarters in Kalamazoo, Michigan, Stryker Spine is located in New Jersey, and, as noted above, Stryker Biotech is located in Hopkinton, Massachusetts.

Stryker Biotech further responds that Ross will be employed solely by it, and will not have any dealings with or perform any services for Stryker Spine.

Stryker Biotech still further responds that Stryker Biotech is solely in the business of developing, manufacturing and marketing bone graft products and does not get involved in spinal implant products. The latter, it says, is "hardware," which is the province and business of Stryker Spine in New Jersey.

According to Stryker Biotech, it is only in the area of bone graft products that there could be any CONFLICTING PRODUCTS between DePuy Spine and Stryker Biotech. In this business, Stryker Biotech insists that it has two particular products (referred to as "OP-1 Implant" and "OP-1 Putty") that are already FDA approved, at least with Humanitarian Device Exemptions, and are being marketed with appropriate FDA limitations. It further, claims that DePuy Spine's bone graft products are significantly different (being "osteoconductive," rather than "osteoinductive" like Stryker Biotech's), and are only in early development and may be years away from attaining FDA approval, if they ever do. Consequently, Stryker Biotech says

4

that it has no use whatsoever for confidential information about DePuy Spine's bone graft products in development.

The details of the products, their state of development and/or current usage and related matters are not something that this Court can assay with clarity or precision on the present record. "By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and the law." Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980).

There has been communication between Stryker Biotech and DePuy Spine before the commencement of this action regarding the nature of Ross's anticipated employment and assurances have been proffered by Stryker Biotech to DePuy Spine on these matters. See Affidavit of Mark Philip, Paper #11, at paras. 50 and 51.

## DISCUSSION

In order to prevail on their request for preliminary injunctive relief, the plaintiffs bear the burden of showing: their likelihood of success on the merits; that they will suffer irreparable harm if the injunctive relief sought is not granted; and that their harm, without the injunction, outweighs any harm to the defendants from being enjoined. Boston Police Patrolmen's Ass'n, Inc. v. Police Dept. of Boston, 446 Mass. 46, 49-50 (2006); GTE Products Corp. v. Stewart, 414 Mass. 721, 722-723 (1993); Packaging Indus. Group, Inc., supra, 380 Mass. at 616-617.

The plaintiffs have the burden of proof of demonstrating their chance of success on the merits. John T. Callahan & Sons, Inc. v. City of Malden, 430 Mass. 124, 131 (1999).

> Injunctive relief either by way of a temporary restraining order or by a preliminary injunction implicates a power of equity which should be exercised delicately. It should not be exercised routinely and the Court should refuse to

grant such relief unless the circumstances require it.

Nolan and Sartario, Equitable Remedies, 31 M.P.S. sec. 139 (1993).

In these kinds of cases, this Court believes it important for all parties to understand that non-competition covenants or agreements, although enforceable in Massachusetts, are exceptions to the general rule. Thus, the Court often reminds its readers of Lord Macnaughten's early comments on the subject. In Nordenfeldt v. Maxim Nordenfelt Guns & Ammunition Co., [1894] A.C. 535 at 565, he reminded litigants that:

> The public have an interest in every person's carrying on his trade freely: so has the individual. All interference with individual liberty of action in trading, and all restraints of trade themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule. But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case. It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable – reasonable, that is, in reference to the interest of the parties concerned and reasonable in reference to the interest of the public, so framed and so guarded as to afford adequate protection to the party in whose favour it is imposed, while at the same time it is in no way injurious to the public. That, I think, is the fair result of all of the authorities.

Massachusetts[3] adopted Lord Macnaughten's statement, at least as early as 1922. See Sherman v. Pfefferkorn, 241 Mass. 468, 474 (1922).

The law most recently has been recited as follows:

> A covenant not to compete is enforceable only if it is necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest. See Marine Contrs. Co., v. Hurley, 365 Mass. 280, 287-

---

[3] The Agreement here is said to be governed by New Jersey law. The parties at oral argument, however, seemed in agreement that there is no significant difference between the law of New Jersey and that of Massachusetts on the subject. New Jersey case law reflects as much. See, e.g., Ingersoll-Rand Co. v. Ciavatta, 110 N.J. 609, 634-635 (1988); Solari Industries, Inc. v. Malady, 55 N.J. 571, 585 (1970); Raven v. A. Klein & Co., 195 N.J. Super. 209 (App. Div. 1984).

> 288 (1974); <u>All Stainless, Inc.</u> v. <u>Colby</u>, 364 Mass. 773, 778 (9174). Covenants not to compete are valid if they are reasonable in light of the facts in each case. See <u>Marine Contrs. Co.</u> v. <u>Hurley, supra</u>, at 287; <u>Saltman</u> v. <u>Smith</u>, 313 Mass. 135, 145 (1943). Historically, covenants not to compete typically have arisen in either the employment context or in the context of the sale of a business. See, e.g., <u>Whitinsville Plaza, Inc.</u> v. <u>Kotseas</u>, 378 Mass. 85 (1979) (sale of business); <u>Marine Contrs. Co.</u> v. <u>Hurley, supra</u> (employment); <u>All Stainless, Inc.</u> v. <u>Colby, supra</u>, (employment); <u>Alexander & Alexander, Inc.</u> v. <u>Danahy</u>, 21 Mass. App. Ct. 488 (1986) (sale of business). . . .

<u>Boulanger</u> v. <u>Dunkin' Donuts Incorporated</u>, 442 Mass. 635, 639-640 (2004).

> Legitimate business interests include protection of trade secrets, confidential information, and good will. <u>Marine Contrs. Co.</u> v. <u>Hurley, supra</u> at 287. A covenant not to compete designed to protect a party from ordinary competition does not protect a legitimate business interest.

<u>Id.</u> at 641.

This Court finds here a confluence of the various issues involved in these kinds of cases. Ross, a sophisticated individual who, willingly, entered into the Agreement with DePuy Spine cannot freely walk away from that Agreement. At the same time, DePuy Spine cannot reach too far to bar Ross and Stryker Biotech from ordinary competition with it.

### ORDER

For the foregoing reasons, this Court orders the following preliminary injunction:

The defendants, G. Joseph Ross and Stryker Biotech, L.L.C., are restrained and enjoined only as hereafter set forth:

1. from disclosing by Ross, or soliciting by Stryker Biotech, any confidential DePuy Spine information, including any confidential information regarding any DePuy Spine products, either in existence or in development, its distribution network, or its business plan;

2. from not coordinating, working or consulting with any Stryker Spine employees in connection with the sale or marketing of any non-Stryker Biotech products for the duration of this injunction;

3. from not communicating with any thought leaders on behalf of Stryker Spine or with respect to any Stryker Spine products or initiatives until further order of this injunction, and Ross's dealings with key opinion leaders shall be limited to discussions of bone morphogenetic protiens and Stryker Biotech's products and/or its initiatives;

4. from having any direct responsibilities for licensing and acquisition, clinical affairs, research and development, or regulatory issues on behalf of Stryker Biotech until completion of the duration of this injunction;

5. from having any responsibility for Stryker Biotech's outside sales force and any responsibility for calling on surgeons on a daily basis until completion of the duration of this injunction; and

6. that Ross will only have responsibility for the marketing of Stryker Biotech's OP-1 products and any new initiatives that develop with Stryker Biotech's bone morphogenetic protiens.

The foregoing injunction shall remain in place until August 19, 2008, or until further modified, dissolved or otherwise changed by this Court or any appropriate appellate court.

_/s/ Allan van Gestel_
Allan van Gestel
Justice of the Superior Court

DATED: April 17, 2007