**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

JANSSEN BIOTECH, INC.,      )
     )
        Plaintiff,      )   Civil Action No. 1:17-cv-11008-MLW
     )
     v.      )
     )
CELLTRION HEALTHCARE CO., LTD.,      )
CELLTRION, INC., and      )
HOSPIRA, INC.,      )
     )
        Defendants.      )
     )

**JANSSEN'S SUPPLEMENTAL BRIEF REGARDING JUDICIAL ESTOPPEL
AND IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS FOR LACK OF STANDING**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...……………………………………………………...………1

II.     JANSSEN IS NOT JUDICIALLY ESTOPPED FROM ASSERTING THAT IT
        IS THE SOLE OWNER OF THE '083 PATENT .............................................................3

        A.      Janssen's Position Here Is Not "Directly Inconsistent" With Its Affiliates'
                Positions in the Non-Compete Litigations ................................................................4

                1.      There Is No Conflict Between Janssen's and Its Affiliates'
                        Interpretation of "COMPANY" ....................................................................4

                2.      Janssen's Interpretation of the Patent Assignment Provision
                        Cannot Be Directly Inconsistent With Its Affiliates' Interpretations
                        of Different Contractual Provisions ............................................................8

        B.      The Court Decisions in the Non-Compete Litigations Are Not Inconsistent
                with Janssen's Position Here ...............................................................................12

        C.      Janssen's Position Here Creates No Unfairness or Threat to Judicial
                Integrity ...................................................................................................................16

III.    CONCLUSION ...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
374 F.3d 23 (1st Cir. 2004)................................................................................3, 4

*Bos. Gas Co. v. Century Indem. Co.*,
708 F.3d 254 (1st Cir. 2013)...............................................................................16

*Datatern, Inc. v. Mircrostrategy, Inc.*,
No. 11-11970-FDS, 2017 U.S. Dist. LEXIS 17078 (D. Mass. Feb. 7, 2017)....................17, 18

*Desjardins v. Van Buren Cmty. Hosp.*,
37 F.3d 21 (1st Cir. 1994).................................................................................11

*Doral Pharmamedics, Inc. v. Pharm. Generic Developers, Inc.*,
148 F. Supp. 2d 127 (D.P.R. June 19, 2001) ...........................................................19

*Environmental Defense v. Duke Energy Corp.*,
549 U.S. 561 (2007)........................................................................................2, 9

*Fieldwork Boston, Inc. v. United States*,
344 F. Supp. 2d 257 (D. Mass. 2004) ................................................................8, 11

*Fitzgibbon v. Martin Cnty. Coal Corp.*,
2007 U.S. Dist. LEXIS 30388 (E.D. Ky. Apr. 25, 2007) .......................................19

*Guay v. Burack*,
677 F.3d 10 (1st Cir. 2012).................................................................................17

*IpVenture, Inc. v. Prostar Computer, Inc.*,
503 F.3d 1324 (Fed. Cir. 2007).............................................................................6

*John Hancock Life Ins. Co. v. Abbott Laboratories*,
863 F. 3d 23 (1st Cir. 2017)................................................................................3

*Knowlton v. Shaw*,
704 F.3d 1 (1st Cir. 2013)...........................................................11, 13, 17, 19

*Lydon v. Bos. Sand & Gravel Co.*,
175 F.3d 6 (1st Cir. 1999)..................................................................................14

*Mach. Project, Inc. v. Pan Am. World Airways, Inc.*,
199 F. Supp. 3d 382 (D. Mass. 2016) ...............................................................17, 20

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
    692 F.3d 983 (9th Cir. 2012) ...................................................................................18

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..............................................................................3, 17, 19

*Nixon v. Mo. Mun. League*,
    541 U.S. 125 (2004) ..................................................................................5, 7, 8

*Perry v. Blum*,
    629 F.3d 1 (1st Cir. 2010) ......................................................................... *passim*

*Quinlan v. Curtiss-Wright Corp.*,
    204 N.J. 239, 8 A.3d 209 (2010) ............................................................................15

*Rederford v. US Airways, Inc.*,
    589 F.3d 30 (1st Cir. 2009) ......................................................................13

*RFF Family P'ship, LP v. Ross*,
    814 F.3d 520 (1st Cir. 2016) ..................................................................... *passim*

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ..................................................................................9, 10

*SBT Holdings, LLC v. Town of Westminster*,
    547 F.3d 28 (1st Cir. 2008) ......................................................................13, 15

*Stratton v. Nat'l Union Fire Ins. Co.*,
    No. 03-CV-12018-RGS, 2004 U.S. Dist. LEXIS 17613 (D. Mass. Sep. 3,
    2004) ................................................................................................................13

*Thore v. Howe*,
    466 F.3d 173 (1st Cir. 2006) ......................................................................2, 13

*Util. Air Regulatory Group v. EPA*,
    134 S. Ct. 2427 (2014) ................................................................................9

*Woodhaven Lumber & Millwork, Inc. v. Monmouth Design & Dev. Co.*,
    2014 N.J. Super. Unpub. 758 (App. Div. Apr. 4, 2014) ............................................5

## I.      INTRODUCTION

The Court has called for further briefing on judicial estoppel.  As Janssen has previously argued (Dkt. 26 at 15), Janssen is not judicially estopped from asserting that it is the sole owner of the '083 patent because its interpretation of the relevant employee secrecy agreements is consistent with prior interpretations of different provisions of similar agreements by other Johnson & Johnson ("J&J") companies.  A deeper analysis of the judicial estoppel case law confirms that Defendants' judicial estoppel argument fails on multiple grounds.

The "purpose" of judicial estoppel "is 'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,'" *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 527 (1st Cir. 2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)), and thereby "play[ing] fast and loose with the courts." *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010).  Here, the record evidence demonstrates that the opposite is true.  Far from deliberately changing its interpretation of the employee agreements in order to gain an advantage in this litigation, Janssen has held the position it advocates here continuously in the regular course of business since it first began using the language in question more than twenty years ago.  Indeed, this point is not even disputed: However the Court may view the language of the agreements, there can be no question that Janssen and its employees, including the inventors of the '083 patent, have always ***believed*** that patent rights are assigned to Janssen alone.  Janssen is not playing fast and loose with the Court but rather steadfastly defending the position it has consistently taken outside the context of litigation for many years. This poses no threat whatsoever to the integrity of the judicial process.

Defendants' judicial estoppel argument relies on the fact that in a handful of cases J&J affiliates other than Janssen have brought lawsuits in which they interpreted different provisions of the employee secrecy agreements at issue – their confidentiality and non-compete provisions –

to apply to more than one J&J company.  But these differing interpretations of different contractual provisions are not inconsistent with Janssen's position here, and they certainly do not create a judicial estoppel.  As explained in prior briefing, Janssen believes that the common term "COMPANY," defined ambiguously to include both the employer and "any" J&J subsidiary or affiliate and also to suggest that the COMPANY is distinct from J&J itself, can be fairly read to apply to the employer alone or to multiple companies depending on the context.  Dkt. 26 at 2-8. There is nothing inconsistent about Janssen's position here and in the litigations that Defendants rely upon.

Even if the Court were to conclude that J&J companies have used the term "COMPANY" inconsistently in enforcing different provisions of the employee agreements, however, that would still not mean that Janssen is judicially estopped from defending its longstanding position that patents invented by Janssen employees are assigned to Janssen alone.  As the Supreme Court has held in the statutory interpretation context, "[t]here is . . . no 'effectively irrebuttable' presumption that the same defined term in different provisions of the same statute must 'be interpreted identically.'"  *Environmental Defense v. Duke Energy Corp.,* 549 U.S. 561, 575-76 (2007).  Interpreting the agreements' confidentiality and non-compete provisions to mean one thing and its patent assignment provision to mean another are not "directly inconsistent" or "mutually exclusive" positions, which is a requirement for judicial estoppel to apply.  *RFF*, 814 F.3d at 528 (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004)).

Judicial estoppel also does not apply because the decisions reached by the courts in the J&J non-compete litigations are not inconsistent with Janssen's interpretation of "COMPANY" here.  Judicial estoppel applies only when a party's current position is irreconcilable with a prior position that was "accepted" by a court.  *Thore v. Howe*, 466 F.3d 173, 184 (1st Cir. 2006).  But

2

as discussed below, the court orders obtained by Janssen's sister companies in non-compete litigations are limited to the employer and small numbers of related J&J companies whose confidential information the former employee obtained.  These orders do not address – let alone contradict – Janssen's interpretation of the patent assignment provision and they provide no support at all for Defendants' position that the '083 patent has been assigned to more than 200 J&J companies.

Finally, Defendants' judicial estoppel argument fails because reaching the merits of this dispute would not confer an unfair advantage or disadvantage on anyone and this case does not otherwise raise any of the equitable considerations underlying the judicial estoppel doctrine. Defendants were not parties to any of the J&J non-compete litigations and are not prejudiced by Janssen's right to assert its position here.  Furthermore, Janssen itself was not a party to any of those litigations and received no benefit from them.  More fundamentally, as noted above, Janssen's defense of its longstanding patent practices stands at the far opposite end of the equitable spectrum from the unfair and opportunistic litigation maneuvers the judicial estoppel doctrine exists to discourage.  There is simply no reason to apply that equitable doctrine here.

## II.     JANSSEN IS NOT JUDICIALLY ESTOPPED FROM ASSERTING THAT IT IS THE SOLE OWNER OF THE '083 PATENT

The First Circuit[1] has "identified three conditions that must be satisfied to establish judicial estoppel."  *RFF*, 814 F.3d at 528; *accord New Hampshire*, 532 U.S. at 750-51 (listing three similar factors that "typically inform the decision whether to apply" judicial estoppel). First, the earlier and later positions must be "directly inconsistent, that is, mutually exclusive."

---

[1] Because the underlying issue here is a question of New Jersey contract law, it is an open question whether federal or state law of judicial estoppel applies.  *See Alt. Sys. Concepts, Inc.*, 374 F. 3d at 32 (discussing choice of law but not deciding the issue because the parties assumed it was federal); *RFF*, 814 F.3d at 528 n.5 (same); *John Hancock Life Ins. Co. v. Abbott Laboratories*, 863 F. 3d 23, 34 (1st Cir. 2017) (same).  Janssen assumes that federal law applies.

3

*Alt. Sys. Concepts, Inc.*, 374 F.3d at 33.  "Second, the party must have succeeded in persuading a

court to accept the earlier position." *Perry*, 629 F.3d at 9.  "Third, the party seeking to assert the

inconsistent position must stand to derive an unfair advantage if the new position is accepted by

the court." *RFF*, 814 F.3d at 528.[2]  None of these conditions is met here.

### A.      Janssen's Position Here Is Not "Directly Inconsistent" With Its Affiliates' Positions in the Non-Compete Litigations

As Janssen explained in prior briefing, its position is that the employee secrecy

agreements in question, read in the light of the extrinsic evidence of Janssen's and the inventors'

understanding and practical interpretations of them, assign rights to the '083 patent to Janssen

alone.  *See* Dkt. 26 at 8-9; Dkt. 42 at 9.  There is no inconsistency, let alone a "direct"

inconsistency, between Janssen's position here and the positions taken by its affiliates when

litigating different provisions of the employee agreements.

### 1.      There Is No Conflict Between Janssen's and Its Affiliates' Interpretation of "COMPANY"

Janssen freely admits that the relevant contractual language (which has since been

revised) is both ambiguous and unwieldy.  *See* Dkt. 42 at 3-7.  As J&J lawyer Anne Martinson

recognized when she amended the J&J form employee secrecy agreement in 2008, the pre-2008

agreements at issue here attempted to accomplish with one term – "COMPANY" – what is better

broken out into two terms: "COMPANY" and "EMPLOYER."  Dkt. 26-1 (Martinson Dep. Tr.)

at 154-55.  The agreements thus define "COMPANY" to include the employer Centocor "and

JOHNSON & JOHNSON and any" J&J subsidiary or affiliate.  Dkt. 27-1 at JANREM0098780.

In the very next sentence, however, they define "affiliate" as a company at least 50% owned by

the COMPANY, by J&J, *or* by any subsidiary of J&J.  *Id.*  The agreements' definition of

---

[2] As discussed below, there is some dispute in the case law as to the precise status of the third judicial
estoppel factor.  *See infra* at 16-17.

COMPANY is therefore ambiguous in at least two ways: (1) it relies on the term "any," which "can and does mean different things depending upon the setting," *Nixon v. Mo. Mun. League*, 541 U.S. 125, 132 (2004), and (2) it contains two conflicting sentences, the latter of which excludes J&J from the defined term "COMPANY." *See Woodhaven Lumber & Millwork, Inc. v. Monmouth Design & Dev. Co*., 2014 N.J. Super. Unpub. LEXIS 758, at *16 (App. Div. Apr. 4, 2014) ("A contract is ambiguous if its terms are 'susceptible to at least two reasonable alternative interpretations,' or when it contains conflicting terms.") (internal citation omitted).  Because the agreements are ambiguous, they must be interpreted in light of the extrinsic evidence, which clearly shows that the '083 patent was intended to be assigned to Janssen alone.  *See* Dkt. 26 at 15-20; Dkt. 42 at 11-17.

At oral argument, Defendants contended that even if the agreement is ambiguous (a point that they did not seriously dispute), Janssen's reading is not reasonable because under the definition's first sentence, the "COMPANY" includes "at least Centocor 'and' Johnson & Johnson."  Oct. 12, 2017 Defs' Hrg. Slides at 9.  That argument is wrong because the second sentence of the definition refers to the "COMPANY" *or* J&J, creating a conflict between terms that can only be resolved by the extrinsic evidence.  Dkt. 27-1 at JANREM0098780.  In response to questioning from the Court on this issue, the best Defendants could do was to argue that "or J&J" was surplusage.  That is, they conceded that the second sentence rendered the definition of "COMPANY" ambiguous and, implicitly, that whether J&J was included in the definition was unclear.  Janssen's contention that "COMPANY" means Centocor alone in the patent assignment provision is a reasonable interpretation of the agreements' conflicting language.

But even if J&J were included within the definition of "COMPANY," that would not change the outcome of this motion because J&J unequivocally disclaimed any ownership in the

5

'083 patent in March 2017, before this lawsuit was filed.  Dkt. 26-5.   Since standing is assessed

at the time the lawsuit is filed, *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364

(Fed. Cir. 2010), the J&J disclaimer is even more clearly effective than the HP disclaimer in

*IpVenture, Inc. v. Prostar Computer, Inc.,* 503 F.3d 1324, 1326-27 (Fed. Cir. 2007), which was

executed after litigation commenced.  Janssen believes that J&J is not included in the term

"COMPANY" as used in the patent assignment provision, as the extrinsic evidence of its

assignment practices (and the text of the disclaimer itself) establishes.  But because of the

disclaimer, it is unnecessary for the Court to decide whether J&J is always included within the

term "COMPANY."  Janssen has standing either way.

Once J&J is set aside, the remaining question is what is meant by the phrase "and any of

their successors or assigns, purchasers, acquirers, and any of their existing and future

subsidiaries, divisions or affiliates."  Dkt. 27-1 at JANREM0098780.  Janssen's position is that

reading "any" to mean "all collectively" in this phrase is untenable, and that "any" here means an

indeterminate number to be specified by "a selection or discretionary act [that] will follow."

Prior Dkt. 521-2 (Garner's Modern American Usage (3d Ed. 2009)) at 52; Dkt. 26 at 4-7; Dkt. 42

at 4-7.  Defendants are hardly serious in contending that "any" can be reasonably interpreted to

mean "all" in this context.  The extrinsic evidence may suggest that "any" can mean more than

one in certain circumstances.  But there is absolutely no extrinsic evidence that supports a

reading that "COMPANY" means *all* 200+ J&J affiliates, and the evidence, which Defendants

failed to challenge, demonstrates that this outcome would be unreasonable to the point of

absurdity.  Dkt. 26 at 20 (collecting New Jersey case law on absurd results); Dkt. 26 at 20-22

(discussing evidence).

In the context of these agreements, the "selection or discretionary act" that follows the signing of the agreement and that determines the meaning of "any" affiliate or subsidiary is determined by the language of the particular paragraph of the agreement and the circumstances of the employee's career at J&J. As Ms. Martinson recognized, it *always* means the employer and it can mean "any" other affiliate, as applicable. Dkt. 26-1 at 163-66. Thus, if the employee transfers to another J&J company, then that affiliate acquires rights under the agreement to inventions created during the course of employment and also to the protection of its confidential information. *Id.* at 159-60. Likewise, if the employee receives confidential information from another J&J affiliate, then that affiliate acquires rights under the agreement to protect that information. *Id.* at 165-66. Absent such an event, none of the 200-odd J&J affiliates have any rights under the agreement.

Application of the term COMPANY may change over the course of the employee's employment depending on the facts and the contractual provision at issue, but there is no contention here of any relevant change. The '083 patent was invented during the inventors' employment at Centocor, and for that reason they assigned it Centocor pursuant to the terms of the contract. Dkt. 27-8 (assignments to Centocor/Janssen). There is no contention that the inventors received any confidential information from another J&J company during that period, and even if they had, that would only affect their obligations to keep that information confidential, not their obligation to assign their inventions to their employer, Centocor. Thus, although the term "COMPANY" applies, as the circumstances dictate, to give rights to Centocor and potentially to other J&J companies under different provisions of the contract, no other J&J company has acquired any relevant rights here. Janssen (Centocor's successor) is the sole owner of the '083 patent.

7

Meanwhile, because the word "any" in the definition of COMPANY is indeterminate, there is no conflict between Janssen's position that patents are assigned only to the employer, here Centocor, and the position of other J&J companies in litigation that affiliated companies in addition to the employer also have rights under the confidentiality and non-compete provisions of the employee agreements when, on the facts, their confidential information is at risk.  The terms of the patent assignment provision, which assigns to the COMPANY inventions made "during my employment with the COMPANY," do not implicate any company other than the employer, Centocor (or a future employer).  Dkt. 27-1 at JANREM0098780.  By contrast, the agreements' provision regarding confidential information, which "means information disclosed to me or known by me *as a result of* my employment by the COMPANY," can refer to information of other J&J companies when an employee receives information  from multiple companies as a result of their employment.  *Id.*  In other words, the term "COMPANY" has a single definition, but because that definition contains the indeterminate word "any," it can apply to different companies depending on the contractual provision at issue and the facts.  There is no inconsistency, let alone a "clear[] inconsisten[cy]," in applying the term "COMPANY" in this way.  *RFF*, 814 F.3d at 528.

> **2.    Janssen's Interpretation of the Patent Assignment Provision
> Cannot Be Directly Inconsistent With Its Affiliates'
> Interpretations of Different Contractual Provisions**

Even if the Court were to disagree that the term "COMPANY" has been used consistently in the non-compete litigations and here, Janssen would still not be estopped from asserting its sole ownership of the '083 patent.  For judicial estoppel to apply, the two statements must be "directly inconsistent, that is, mutually exclusive."  *Id.*; *see also Fieldwork Boston, Inc. v. United States*, 344 F. Supp. 2d 257, 268 (D. Mass. 2004) (requirement that positions be "totally

inconsistent").  But although the confidentiality and non-compete provisions at issue in the

employment litigations and the patent assignment provision at issue here come from the same

form agreement and share the common term "COMPANY," there is no **_direct_** inconsistency or

mutual exclusivity in interpreting the agreements' patent provision one way and its

confidentiality and non-compete provisions another.  As the Supreme Court has noted in the

statutory context, while there is a "natural presumption that identical words used in different

parts of the same act are intended to have the same meaning," this presumption "is not rigid and

readily yields whenever there is such variation in the connection in which the words are used as

reasonably to warrant the conclusion that they were employed in different parts of the act with

different intent." *Duke Energy Corp.,* 549 U.S. at 574 (quoting *Atlantic Cleaners & Dyers, Inc.*

*v. United States*, 286 U.S. 427, 433 (1932)); *accord Util. Air Regulatory Group v. EPA*, 134 S.

Ct. 2427, 2441 (2014) ("[T]he presumption of consistent usage 'readily yields' to context, and a

statutory term – even one defined in the statute – 'may take on distinct characters from

association with distinct statutory objects calling for different implementation strategies.'").

       Defendants contend that the presumption of consistent meaning is effectively irrebuttable

when the word in question is a defined term, but that is not the case.  Oct. 12, 2017 Defs' Hrg.

Slides at 14.  To the contrary, the Supreme Court held in *Duke Energy* that "[t]here is . . . no

'effectively irrebuttable' presumption that the same defined term in different provisions of the

same statute must 'be interpreted identically.' Context counts."  *Duke Energy Corp.,* 549 U.S. at

575-76 (internal citation omitted).  The *Duke Energy* Court relied on *Robinson v. Shell Oil Co.*,

519 U.S. 337, 343-44 (1997), which addressed whether the term "employees" as used in section

704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, included former

employees or was limited only to current employees.  In analyzing the Act, the Court recognized

the definition of "employees" was "consistent with either current or past employment," and further that the term was used to have different meanings in different sections.  *Id.* at 342.  It concluded that "[o]nce it is established that the term 'employees' includes former employees in some sections, but not in others, the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute."  *Id.* at 343-344.

*Robinson* is directly on point.  Because the definition of "COMPANY" is ambiguous, each individual provision of the contracts must be analyzed to determine what the term means in the context of that provision.  As explained in prior briefing, that analysis demonstrates that the patent assignment provision (the only provision at issue here) applies only to Centocor.  Dkt. 26 at 8-9; Dkt. 42 at 9.  Paragraph one directs the employee to disclose inventions made in the course of employment to the COMPANY.  Dkt. 27-1 at JANREM0098780.  There is only one employer, Centocor, and the obligation to disclose inventions to the COMPANY makes sense only as a direction to disclose the invention to a single company, the employer.  That is what the language says, what the extrinsic evidence establishes, and what Ms. Martinson recognized in clarifying the provision years before this litigation.  Dkt. 26-1 at 154-55.  That is the correct reading of paragraph one, regardless of how other paragraphs of the agreement may be construed.

Because there is no irrebuttable presumption that the term COMPANY means the same thing in both the patent assignment provision and the confidentiality and non-compete provisions, the interpretations of the latter provisions by other J&J companies cannot judicially

estop Janssen from asserting its position here.[3]  The First Circuit has repeatedly recognized that merely arguable or ambiguous inconsistencies cannot lead to judicial estoppel.  In *RFF*, for example, a proponent of judicial estoppel argued that a property owner asserting that a mortgage was invalid had previously taken the inconsistent position that the same mortgage was valid.  814 F.3d at 528-29.  The First Circuit determined that by maintaining a malpractice suit against an attorney for failing to "identify and payoff [sic]" the mortgage, the property owner had not necessarily taken the "directly inconsistent" position that the mortgage was valid.  *Id.*  Similarly, in *Knowlton v. Shaw*, 704 F.3d 1, 11 (1st Cir. 2013), the plaintiff asserted that State officials were judicially estopped from claiming immunity in a Section 1983 case because in an earlier lawsuit against the State for breaching a consent agreement the State said that even if the State had acted improperly, "there is a section 1983 remedy for that, I think."  *Id.*  Because a "close look at the record" "clarified" that the State was "merely noting that" a section 1983 suit was the vehicle through which the plaintiff could address a potential claim, not necessarily conceding that the claim could be brought, there was no direct inconsistency.  *Id.*[4]

---

[3] In only one non-compete case was the patent assignment provision even mentioned, and that reference did not lead to a judicial decision that Defendants even assert could create judicial estoppel.  *See infra* Part II(B).  In a case brought by J&J and Cordis against an inventor employed by Cordis, the complaint included a general allegation that "[p]ursuant to Paragraph 1 of the Agreement, plaintiffs own all inventions, patentable or not, developed by Park while at plaintiffs."  Dkt. 15-8 at JANREM0113321.  If that vague plural reference in the complaint to "plaintiffs" can be read to mean that Park's inventions are owned by two companies, not one, it is incorrect.  As the public record reflects, Park assigned the patents on his inventions made while at Cordis to his employer, Cordis, alone.  That is apparent on the publicly available face of the patents, *see e.g.*, U.S. Patent No. 7,918,884 (Dkt. 26-3), and is consistent with the uniform practices of all employees under the agreement.  In any event, this stray general allegation was not discussed by the court or relied upon in any way and therefore cannot create judicial estoppel.  Plaintiffs did not seek any relief regarding the patent assignment provision (Dkt. 15-8 at JANREM0113321) and the court did not discuss or order any relief based on the patent-assignment provision (*see* Appendix A).

[4] *See also Desjardins v. Van Buren Cmty. Hosp.*, 37 F.3d 21, 23 (1st Cir. 1994) (where the "relationship between the Hospital and the District is surely one open to different interpretations and susceptible to argument," there was no "wrongful self-contradiction, let alone unfair advantage" in having taken a prior position that "the District now presumably rejects"); *Fieldwork Boston, Inc. v. United States*, 344 F. Supp.

This case is much easier.  Because the employment actions required construction of different sections of the employment agreement – ones with different terms and different context – there can be no direct inconsistency sufficient to create an estoppel.

### B.      The Court Decisions in the Non-Compete Litigations Are Not Inconsistent with Janssen's Position Here

Turning to the individual non-compete litigations, none of them led to court rulings that create a judicial estoppel.  Indeed, none of the cases involved in any way the issues disputed here:  whether the employer is the sole owner of patents under paragraph one of the agreements, or whether those patents are instead owned by 200 or more J&J companies.  Whatever one makes of the J&J positions in the other cases, they were efforts to enforce the agreements on behalf of two or three companies, not 200+.

Janssen is aware of eleven cases brought by more than one J&J entity to enforce employment agreements.  Ten of those involved employment agreements similar to the ones at issue here.  Eight of these cases were brought by two J&J companies; three of them named three J&J companies as plaintiffs.  (The "vast majority" of cases enforcing the employment agreement were brought by only a single J&J entity, the employer.  Dkt. 26-1 at 354-55.)  These eleven cases are addressed in more detail in Appendix A.  The principal plaintiff in each case was the defendant's former employer.

As shown in Appendix A, judicial decisions were rendered in only seven of the eleven cases.  Because judicial estoppel is primarily concerned with the integrity of the judiciary, the cases that settled before any judicial opinion cannot be the basis for judicial estoppel.  *See Perry*, 629 F.3d at 11 (party proposing estoppel "must show that the court adopted and relied on the

---

2d 257, 269 (D. Mass. 2004) (earlier position that claim was a tort claim not "totally inconsistent" with later position that indemnification not warranted under the FTCA because discussion was not about the "viability of the potential tort claim").

represented position either in a preliminary matter or as part of a final disposition."); *RFF*, 814

F.3d at 530 ("[J]udicial estoppel does not apply to the settlement of an ordinary civil suit because

there is no judicial acceptance of anyone's position.") (quoting *Lowery v. Stovall*, 92 F.3d 219,

225 (4th Cir. 1996)) (internal quotation marks omitted); *Thore*, 466 F.3d at 182 ("[J]udicial

estoppel does not usually apply to non-judicially approved settlements. . . .").

For the cases in which there was a judicial decision, defendants cannot show that the J&J

affiliates "succeeded" in persuading a court to have "adopted and relied on" any allegedly

inconsistent position. *Perry*, 629 F.3d at 9, 11. "The showing of judicial acceptance must be a

strong one." *Id.* at 11. The record must be clear that the court accepted the party's position. *See*

*SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 37 n.8 (1st Cir. 2008). It is

defendants' burden to "affirmatively show, by competent evidence or inescapable inference, that

the prior court adopted or relied upon the previous inconsistent assertion." *Perry*, 629 F.3d at

12-13. An inconsistent statement that was not adopted or relied on is insufficient. *See Rederford*

*v. US Airways, Inc.*, 589 F.3d 30, 38 (1st Cir. 2009) ("The question here is not whether a party to

the proceeding relied on the position, but rather whether the court did so in reaching its

decision."); *Thore*, 466 F.3d at 183 (rejecting view that inconsistent positions alone are enough

for judicial estoppel, and noting that "[i]f 'chutzpah' alone justified judicial estoppel, a great

many claims would be estopped").

Six of the seven cases in which decisions were rendered provided relief to the plaintiffs

generally.[5]  But none of them presented the issues or arguments relevant to this dispute, and so

---

[5] In one case, relief was granted only to the defendants' immediate former employer, without mention of
the other plaintiffs.  *See* Appendix A (discussion of *Depuy Spine, Inc. v. Stryker Biotech LLC*).  The court
in that case could not have been relying on the construction of "COMPANY" proffered by Defendants
and disputed by Janssen here.  *See Knowlton*, 704 F.3d at 11 ("Nothing about the decision permits us to
draw even the slightest inference that" a ruling on sovereign immunity from breach of contract suit in the
prior case was based on any acceptance of the possibility that plaintiff might have a 1983 claim.); *Stratton*

13

the courts in those cases were not presented with, and did not adopt or reject, any allegedly inconsistent position.  Most importantly, none of the orders issued by the courts construed – or even mentioned – the patent assignment provisions of the agreements.[6]  For that reason alone, there is no judicial estoppel, since constructions of different provisions of the agreements cannot be mutually exclusive with Janssen's construction of the patent assignment provision.  *See supra* Part II(A)(2).

Likewise, none of the cases presented the question whether "any" affiliate meant 200-plus affiliates, even with respect to the confidentiality provisions.  The J&J plaintiffs never argued that proposition and it was not decided, implicitly or explicitly, by any court.  It was sufficient in all the cases that the two or three J&J plaintiffs had rights under the contract, and they plainly did.  In the typical judicial estoppel case, one party is accused of making arguments, relied upon by another court, that would defeat that party's claim in the current litigation.  *E.g.*, *Lydon v. Bos. Sand & Gravel Co.*, 175 F.3d 6, 13 (1st Cir. 1999) (party judicially estopped from asserting in one forum that federal law provided an exclusive remedy and arguing in another forum that state law provided the remedy).  Here, no such arguments were made, and so no such arguments were relied upon by the courts.

Furthermore, on the facts of these cases, the J&J employer would have been entitled to protection of the confidential information at issue – its own and its affiliates' – regardless of the scope given to the contract and regardless of the presence of additional plaintiffs.  Under all the agreements in dispute, "CONFIDENTIAL INFORMATION" means information "known to [the

---

*v. Nat'l Union Fire Ins. Co.*, No. 03-CV-12018-RGS, 2004 U.S. Dist. LEXIS 17613, at *20 n.13 (D. Mass. Sep. 3, 2004)  (declining to apply judicial estoppel because "[t]here is no evidence that any prior court has affirmatively based a decision on the plaintiffs' failure to object to MHC's self-description or on its adoption").

[6] As noted above, the only mention of the patent assignment provision in any of the cases was a single paragraph in the complaint that was never referenced in any order or decision.  *See supra* n. 3.

employee] *as a result of* [his or her] employment by the COMPANY," not "generally known" in

the industry and "about" the COMPANY's business activities.  Dkt. 27-1 at JANREM0098780.

In all of the cases, the complaints allege (either literally or by fair implication) that the defendant

employees obtained information from the other J&J affiliates as a result of their employment by

their J&J employer, and that the information related to the business engaged in by the employer.

The information at issue would therefore meet the contractual definition and be entitled to

protection under the agreement, even if COMPANY meant the employer alone.  Indeed, in 3 of

the 6 cases that rendered relief to multiple plaintiffs, the applicable definition of

"CONFIDENTIAL INFORMATION" in at least one of the employment agreements at issue

*expressly* covered confidential information about "affiliates of the COMPANY" that was

acquired "as a result" of employment.  *See, e.g.*, Ex. 2, at JANREM0113247 (Barringhaus

agreement in *Johnson & Johnson v. Invatec, LLC*); Dkt. 16-14, at JANREM0013308

(McCallister agreement in *Johnson & Johnson v. Biomet, Inc. ("McAllister")*), and Dkt. 15-6, at

JANREM0113036 (McKeever agreement in *Johnson & Johnson v. ev3, Inc.*).  Thus, the

definition of "COMPANY" did not itself need to embrace multiple affiliates to safeguard their

information.[7]

   Even if there were any inconsistency between Janssen's position here and its position in

the non-compete litigations – which as discussed above there is not – there would be no judicial

---

[7] In all seven cases, plaintiffs also asserted claims based on breaches of the employees' common law duty of loyalty or state law trade secret/misappropriation claims.  Five of the seven asserted claims under the common law of New Jersey to protect the J&J's employer's confidential information and to prevent unfair competition.  "[E]mployees have a common law duty to safeguard confidential information they have learned through their employment relationship and . . . are generally precluded from sharing that information with unauthorized third parties."  *Quinlan v. Curtiss-Wright Corp.*, 204 N.J. 239, 260, 8 A.3d 209, 221-22 (2010).  The two remaining cases asserted similar claims under Massachusetts statutory law protecting trade secrets.

estoppel.  Rather, the situation here would be like the one the First Circuit described in *Perry*,

629 F.3d at 8.  In *Perry*, one party to a business dispute asserted that the amount due on notes

was approximately $7 million, but in an earlier bankruptcy proceeding the bankruptcy court was

told that the value was approximately $1 million.  Although the bankruptcy court took judicial

action (lifting an automatic stay and allowing a third party to retain the notes), its decision was

not based on acceptance of the prior inconsistent position.  *Id.*  There was "no semblance of

proof that a bankruptcy court would treat uncollectible notes worth over $7,000,000 differently

than uncollectible notes worth roughly $1,000,000" because "[b]y definition, an uncollectible

note is an uncollectible note (and, thus, worthless)."  *Id.*  Here the case against judicial estoppel

is much stronger.  No party in the prior litigation argued either what Janssen argues here or what

the Defendants argue here and the meaning of the patent assignment provision was not at issue.

The prior decisions did not adopt or rely on a position inconsistent with Janssen's.

### C.      Janssen's Position Here Creates No Unfairness or Threat to Judicial Integrity

Finally, Defendants' judicial estoppel argument fails because Janssen's position creates

no unfair advantage or disadvantage for anyone, poses no threat to the integrity of the courts,

and, to the contrary, is an entirely appropriate and equitable exercise of Janssen's right to defend

its longstanding practices with respect to patents.  As suggested at oral argument, there is debate

among First Circuit panels about the precise role of unfair advantage in the judicial estoppel

inquiry.  *Compare, e.g., RFF*, 814 F.3d at 528 (identifying "three conditions that ***must*** be

satisfied to establish judicial estoppel," including that "the party seeking to assert the inconsistent

position must stand to derive an unfair advantage if the new position is accepted by the court")

(emphasis added); *Perr*y, 629 F.3d at 8-9 (noting that "courts generally ***require*** the presence of

three things," including "unfair advantage") (emphasis added); *with Bos. Gas Co. v. Century*

*Indem. Co.*, 708 F.3d 254, 261 (1st Cir. 2013) (recognizing only "two conditions that must be satisfied for judicial estoppel to attach"); *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012) ("We generally have ***not*** required a showing of unfair advantage.") (emphasis added).

Janssen believes that the better view of the law is that all three factors – inconsistency, acceptance, and unfair advantage – are important, not least because this is how the leading Supreme Court case on judicial estoppel treats the doctrine.  *See New Hampshire*, 532 U.S. at 750-51 (listing three factors that "typically inform the decision whether to apply" judicial estoppel, including "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped"). Accordingly, courts in this District have declined to apply equitable estoppel in the absence of the third factor even when the first two factors are met.  *See, e.g., Datatern, Inc. v. Mircrostrategy, Inc.*, No. 11-11970-FDS, 2017 U.S. Dist. LEXIS 17078, at *21 (D. Mass. Feb. 7, 2017) ("Despite satisfying the first two prongs of the judicial estoppel test, MicroStrategy  has not demonstrated that DataTern stands to derive an 'unfair advantage' if its new definition is accepted by this Court."); *Mach. Project, Inc. v. Pan Am. World Airways, Inc.*, 199 F. Supp. 3d 382, 388-389 (D. Mass. 2016) (declining to apply judicial estoppel where first two elements were met but "[t]hird element is problematic").

Whether or not unfair advantage is required – a question the Court need not reach because none of the factors are satisfied here – it is clearly highly relevant to the inquiry.  *See Guay*, 677 F.3d at 16-17 ("Where unfair advantage exists . . . it is a powerful factor in favor of applying the doctrine.").  Judicial estoppel, after all, "is an equitable doctrine." *Knowlton*, 704 F.3d at 10 (quoting *New Hampshire*, 532 U.S. at 750).

Here, there is no equitable consideration that would remotely call for preventing Janssen from contending that it owns the '083 patent.  First, the purportedly inconsistent positions taken by other J&J companies in non-compete litigations were never asserted against any of the Defendants here, meaning that the Defendants suffer no unfair disadvantage from Janssen's ability to defend its position here.  Although there is no rule that judicial estoppel can only be asserted in cases involving the same parties to the prior litigation, it is "relevant" that Defendants face no prejudice from any purported inconsistency.  *See Datatern,* 2017 U.S. Dist. LEXIS 17078, at *21 ("[I]t is relevant that DataTern did not espouse its original position adversely to MicroStrategy.  The earlier proceeding was brought against a third party, SAP.").  Nor will any of the parties to the enforcement litigations experience "obvious prejudice as a result of" any allegedly changed position.  *Id.*  As noted, the relief sought and obtained would have been substantially the same regardless of how many plaintiffs were included in the action or how "COMPANY" was construed.

Second, Janssen obtained no benefit in the prior non-compete litigations brought by different J&J companies.  It is not even in the same line of business as the J&J affiliates in the employment actions.  Although there is no bright-line rule concerning whether a party can be estopped based on the allegedly inconsistent statements of a different but related party, courts have considered whether "the estopped party was responsible in fact for the earlier representation," *Perry*, 629 F.3d at 9, or whether they derived a benefit from the prior inconsistent position, *e.g., Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 998 (9th Cir. 2012) (beneficiaries of Marilyn Monroe's estate estopped by prior positions of the executor when the statements were made "on behalf of the estate and its beneficiaries to minimize exposure to California taxes").  Here, while it is true that J&J, as the parent company,

owns both Janssen and its affiliates, it is Janssen – not J&J – that Defendants seek to estop. Janssen was not responsible for any of the positions taken by its affiliates in non-compete litigation and it did not benefit from the court orders they obtained.  In these circumstances, there is no equitable reason Janssen should be bound by the prior positions of its affiliates.  *See Knowlton*, 704 F.3d at 10 (the "party asserting the alleged 'position' in state court and the parties here are not the same" because the previous party was "the State" and in this case it was "three state officials in their individual capacities only"); *Doral Pharmamedics, Inc. v. Pharm. Generic Developers, Inc.*, 148 F. Supp. 2d 127, 132-33 (D.P.R. June 19, 2001) (declining to apply judicial estoppel based on previous position taken by "sister company" where there was no evidence the plaintiff "exercised substantial control over the prior litigation"); *cf. Fitzgibbon v. Martin Cnty. Coal Corp.*, 2007 U.S. Dist. LEXIS 30388, at *25 (E.D. Ky. Apr. 25, 2007) ("Plaintiff has cited no authority for the proposition that sister corporations are . . . bound by or accountable for each other's actions.").

Finally, Defendants' judicial estoppel argument fails because, as discussed above, Janssen is defending its longstanding practices with respect to the ownership of its patents and is not changing positions in order to obtain an advantage in litigation.  As noted, the purpose of judicial estoppel "is 'to protect the integrity of the judicial process,' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,'" and thus "prevent 'improper use of judicial machinery.'"  *New Hampshire*, 532 U.S. at 749-50 (internal citations omitted).  But here, whether or not the Court discerns an inconsistency between J&J affiliates' interpretations of the agreements' confidentiality and non-compete clauses and Janssen's interpretations of their patent assignment clauses, there can be no question that these interpretations reflect the consistent positions of J&J companies over a period of many years.  By

advocating their longstanding positions, neither Janssen nor its affiliates are deliberately

changing positions according to the exigencies of the moment or making any sort of improper

use of the courts.  For this reason – as well as all those given above – the Court should not apply

the equitable doctrine of judicial estoppel.  *See Perry*, 629 F.3d at 13 (noting that doctrine

"should be employed sparingly when 'there is no evidence of intent to manipulate or mislead the

courts'"); *Mach. Project, Inc.*, 199 F. Supp. 3d at 389 (declining to apply judicial estoppel where

plaintiffs' behavior "simply does not cause this Court to be concerned that they are attempting to

'play fast and loose with the courts'").

## III.    CONCLUSION

The Court should decline to apply judicial estoppel in this case and should deny the

Defendants' motion to dismiss for lack of standing.  Janssen is the sole owner of the '083 patent

and it may properly bring this action in its own name.


Respectfully Submitted,

Dated: October 16, 2017


*Of Counsel*
Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
Daniel A. Friedman (admitted *pro hac vice*)
dfriedman@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
FAX: 212-336-2222

*/s/ Heather B. Repicky*_____
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
Alison C. Casey (BBO #688253)
acasey@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2017, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and if not so registered, that copies will be electronically mailed to such parties or their counsel.

/s/ *Heather B. Repicky*