IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC.,<br><br>                        Plaintiff,<br><br>           v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.,<br><br>                        Defendants. | Civil Action No. l:17-cv-11008-MLW |

## DEFENDANTS' LIST OF PENDING AND EXPECTED MOTIONS

Pursuant to the Court's Order entered after the proceedings held on October 12, 2017, Defendants provide the following list of pending and expected motions. This list is provided based on the current status of the case, including the recently initiated phase of fact discovery related to damages issues, and information presently available to the Defendants.

Assuming for the purpose of this filing that Defendants' pending motion to dismiss for lack of standing (Dkt. 13, *et seq.*) is denied or not ruled upon, Defendants propose and respectfully request that the Court address the following summary judgment issues as soon as possible, and before the end of 2017.[1] Each issue stands to have a meaningful impact on the scope of discovery, and thus on the burden and expense incurred by the parties. More focused discovery and a narrowed case will be beneficial for the Court as well, as it will limit the number of discovery-related disputes. It will also limit the number of other motions, such as *Daubert* and evidentiary motions, which are likely to arise later in the case. Issues 2–4 identified below are related and may be suitable for presenting as a single motion.

---

[1] Defendants understand the Court is unavailable for part of November 2017 due to international travel.

1. Whether Hospira can be liable for infringement of the '083 patent as a matter of law based on the "joint enterprise" theories pled in Janssen's 2017 complaint;

2. Whether Janssen is prohibited, as a matter of law, from seeking damages based on sales of infliximab biosimilar outside the United States due to the established territorial limits of the patent laws and patent damages, to the extent Janssen maintains that it is entitled to such damages, as indicated in its most recent complaint and discovery responses;

3. Whether Janssen is prohibited, as a matter of law, from seeking damages based on sales of Inflectra® in the United States due to the established territorial limits of the patent laws and patent damages;

4. If Janssen is not prohibited from seeking to recover damages in the form of lost profits, the identity of the appropriate date for assessing the availability of non-infringing alternative cell culture media, which is relevant to the availability of damages in the form of lost profits.

Additional details regarding these issues and other potential motions are discussed below.

**A.     Pending or Expected Summary Judgment Motions or Issues**

1. Summary judgment of non-infringement with respect to Hospira

In October 2016, Defendants sought summary judgment of non-infringement with respect to Janssen's theories of direct and induced infringement. *See* No. 15-10698 Dkt. 264, *et seq.* The Court conducted a hearing on the motion for summary judgment on December 22, 2016 but deferred ruling on Hospira's request for summary judgment. Instead the Court ordered additional briefing regarding "whether a reasonable jury could find that Hospira is, with Celltrion Healthcare Co., Ltd. and Celltrion Inc., liable for inducing patent infringement under 35 U.S.C. §271(b) on theories of joint enterprise, agency, or contract," an issue the Court had raised during the December 22, 2016 hearing. No. 16-11117 Dkt. 31 at 1.

In the supplemental briefing, which was completed in January 2017, Janssen alleged that Hospira should be held liable under a "joint enterprise" theory not only for Celltrion's alleged inducement, but also for Celltrion's alleged direct infringement, which itself is premised on a theory of vicarious liability. *See* No. 15-10698 Dkt. 344 at 1, 12 & Dkt. 378 at 3. Janssen's third

and most recent complaint likewise pleads that "Hospira and Celltrion are engaged in a joint enterprise and Hospira is jointly liable for Celltrion's actual infringement and inducement of infringement of the '083 patent" and that "Hospira is jointly liable for Celltrion's active inducement of infringement of the '083 patent because, as alleged above, it is engaged with Celltrion in a joint enterprise." Dkt. 1 at ¶¶ 128, 137.[2]

As noted above, Hospira respectfully requests that the Court hear and resolve its motion for summary judgment as soon as possible, before the end of 2017. If Hospira is entitled to summary judgment such that it will be eliminated from the case, that issue should be resolved before the parties undertake the burden and expense of discovery related to Hospira, and before Hospira incurs the burden and expense associated with other aspects of the case between now and trial, such as motion practice and pretrial preparations.

> 2. <u>Whether Janssen is entitled to damages based on sales of infliximab biosimilar outside the United States, due to established territorial limits on the patent laws and patent damages</u>

Earlier this year, Janssen told the Court and Defendants that it is "not seeking damages for sales of Inflectra around the world, either reasonable royalty or lost profits." 2/23/17 Hr'g Tr. at 120:10–13; *id.* at 125. Janssen's damages theory was based on "Defendants' sales [of infliximab] *in the United States* that are the [alleged] foreseeable result of Defendants' acts of infringement *in the United States*." No. 15-10698 Dkt. 445 at 11 (emphasis original); *see also id*. at 12–14.

Janssen appears to have changed course, however, claiming now that it is entitled to lost profits and a reasonable royalty based on sales of infliximab manufactured by Celltrion regardless of where the product is sold. In Janssen's May 31, 2017 complaint, for example, Janssen claims to have "los[t] market share for and profits from Remicade® in the *markets* in which Defendants'

---

[2] Since the time the parties completed the supplemental briefing, Janssen has dismissed its 2016 complaint (as well as its 2015 complaint) in view of standing deficiencies raised by Defendants. *See* Dkt. 32; No. 15-10698 Dkt. 582.

3

biosimilar product is marketed," and claims that its "licensee for the distribution of Remicade®," which sells Remicade® in certain foreign countries, "los[t] market share for and profits from Remicade® in *markets* in which Defendants' biosimilar product is marketed." Dkt. 1 at ¶ 117 (emphasis added);[3] *see also* Dkt. 33 Ex. 4 (Janssen Resp. to Interrog.) at 7–8.

The patent laws do not provide "compensation for a defendant's foreign exploitation of a patented invention, which is not infringement at all." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013); *see also Brown v. Duchesne*, 60 U.S. 183, 195–196 (1856); *WesternGeco LLC v. ION Geophysical Corp.*, 791 F.3d 1340, 1350 (Fed. Cir. 2015), *vacated sub. nom. on other grounds*, 136 S. Ct. 2486 (2016) ("It is clear that under § 271(a) the export of a finished product cannot create liability for extraterritorial use of that product."). As noted above, Janssen has previously conceded that it is not entitled to damages based on sales of biosimilar infliximab outside the United States.

To the extent Janssen now attempts to seek damages based on sales of infliximab manufactured by Celltrion and sold outside the United States, the Court should permit summary judgment briefing on and address this issue as soon as possible, before the end of 2017. Prompt resolution of this issue would narrow the case and dramatically impact the scope of fact and expert discovery. Janssen has requested that Defendants produce documents and information pertaining to sales of infliximab in foreign markets, and Defendants have thus far declined to do so, because such sales cannot, as a matter of law, form the basis of a claim for damages. Thus, the issue is already affecting discovery. It should be resolved before the case proceeds much further and before the parties begin expending substantial resources on expert discovery.

---

[3] *See* "Merck and Johnson & Johnson Reach Agreement on Distribution Rights for REMICADE® and SIMPONI®," available at http://www.investor.jnj.com/releasedetail.cfm?releaseid=569376.

3. <u>Whether Janssen is entitled to damages based on sales of Inflectra® in the United States, due to established territorial limits on the patent laws and patent damages</u>

Earlier in 2016, the Court agreed to accept briefing and provide guidance on the question of whether Janssen may, as a matter of law, seek to recover damages in the form of lost profits based on sales of Inflectra® in the United States. No. 15-10698 Dkt. 412, 414, 441, 445; No. 15-10698 Dkt. 518 at 1. Defendants contend that an appropriate measure of damages, if any, would be a reasonable royalty on the accused cell culture media powders. Janssen contends it is entitled to lost profits based on United States sales of Inflectra® made entirely in South Korea using a process that includes use of the accused media powders to make cell culture media that is used to feed the cells that produce infliximab antibody.

On March 3, 2017, the Court provided the guidance that "[t]he fact that Celltrion produces Inflectra® abroad would not prevent Janssen from recovering lost profits relating to sales of Inflectra in the United States if those sales could not have been made without the production and sale of the infringing media powders in the United States." No. 15-10698 Dkt. 518 at 2. The briefing leading up to the Court's guidance had addressed a number of issues related to damages, including availability of non-infringing cell culture media and the provision of the BPCIA that limits any remedy in this case to a reasonable royalty, on which the Court also provided guidance. *See generally* No. 15-10698 Dkt. 414, 441, 518. However, Defendants believe the Court should permit a motion for summary judgment and provide a formal ruling on the narrow question of whether Janssen's request for damages, including lost profits as well as a reasonable royalty, based on U.S. sales of Inflectra® violates established limits on the territoriality of the patent laws.

The territoriality issues are explained in Defendants' briefs filed in January 2017. *See* No. 15-10698 Dkt. 414 at 1–16, 441 at 10–12. Briefly, however, the accused cell culture media products are used by Celltrion in South Korea, to make a cell culture media that is used as food to

5

grow cells that produce infliximab antibody. Janssen cannot recover lost profits on sales of Inflectra®, a drug product that is manufactured abroad and indisputably does not embody or contain any component that is covered by the '083 patent. "[T]he use of [a patented invention] outside of the jurisdiction of the United States is not an infringement of [a patent owner's] rights, and he has no claim to any compensation for the profit or advantage the party may derive from it." *Duchesne*, 60 U.S. at 195–196. The "entirely extraterritorial" use of the accused cell culture media in South Korea is an "independent, intervening act" that "cuts off the chain of causation initiated by an [alleged] act of domestic infringement." *Power Integrations*, 711 F.3d at 1371–72. Janssen may not recover a reasonable royalty premised on sales of Inflectra® in the United States for the same reasons. *See, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1307 (Fed. Cir.), *reh'g en banc denied in part*, 805 F.3d 1382 (Fed. Cir. 2015) ("In the lost-profits context, this court indicated in *Power Integrations* that, where the direct measure of damages was foreign activity (*i.e.*, making, using, selling outside § 271(a)), it was not enough, given the required strength of the presumption against extraterritoriality, that the damages-measuring foreign activity have been factually caused, in the ordinary sense, by domestic activity constituting infringement under § 271(a). 711 F.3d at 1371–72. We think that the presumption against extraterritoriality, to be given its due, requires something similar in the present royalty setting.").

The availability of damages based on U.S. sales of Inflectra® is a question of law that involves no disputed issues of material fact. Given the importance of the damages issues in this case and the potential to have a substantial impact on the scope of discovery, as with the other damages issues discussed above, Defendants request that the Court permit summary judgment briefing on and resolve this question as soon as possible, before the end of 2017.

Defendants may wish to seek summary judgment regarding other issues that were raised in the parties' earlier briefing related to damages, such as the existence of non-infringing alternatives and whether the BPCIA bars Janssen from recovering lost profits. *See* 42 U.S.C. § 262(*l*); 35 U.S.C. § 271(e)(6)(A)–(B); No. 15-10698 Dkt. 414 at 16–20; Dkt. 460 at 5–8. The question of whether the BPCIA bars Janssen from seeking lost profits, in particular, may be suitable for resolution before the close of discovery.[4]

### 4. The appropriate date for assessing the availability of non-infringing alternative cell culture media

If the Court does not rule that Janssen is prohibited as a matter of law from recovering damages in the form of lost profits, the Court should formally resolve the lost profits-related question of the appropriate date for assessing the availability of non-infringing alternatives.

As Defendants argued in their briefs related to lost profits issues submitted in early 2017, Janssen cannot prove that "but-for" the alleged infringement, it would have captured any sales of Inflectra®. *See* No. 15-10698 Dkt. 414 at 16–12, Dkt. 441 at 12–20. This is in part because Celltrion could have turned to any of a number of available non-infringing alternative cell culture media. *Id*; *see also, e.g.*, *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1160 (6th Cir. 1978); *see also* No. 15-10698 Dkt. 414 at 16-20, Dkt. 441 at 17-20.

---

[4] The question of whether the BPCIA bars Janssen from recovering lost profits relates in part to Defendants' motion to dismiss Janssen's May 2017 complaint, which, as of the date of this filing, remains pending. Defendants, despite continuing to believe that they properly completed the steps of the patent dance, including good-faith negotiations over the scope of the lawsuit, conducted additional good-faith negotiations with Janssen beginning in April 2017, in view of the Court's guidance related to the same. *See* No. 15-10698 Dkt. 518 at 6. Janssen filed its third complaint on May 31, 2017, after and in view of the additional negotiations. *See Amgen Inc. v. Apotex Inc.*, 827 F.3d 1052, 1058 (Fed. Cir. 2016) ("If the reference product sponsor is late in bringing the first-stage infringement action under § 262(*l*)'s paragraph (6), *i.e.*, does so more than 30 days after the scope of that litigation has been determined under (4) or (5), the only remedy the reference product sponsor can get in that action is a reasonable royalty.").

A threshold issue related to non-infringing alternatives is the date when the availability of such alternatives is to be assessed. During briefing submitted earlier this year, Defendants contended that the relevant date is at or around the date of first alleged infringement (in 2009). No. 15-10698 Dkt. 414 at 17–18, Dkt. 441 at 17–18. Janssen contended that the relevant date is the date when the "accounting period" for lost profits began, or alternatively December 2014, when Defendants first became aware of the '083 patent. No. 15-10698 Dkt. 412 at 10, Dkt. 445 at 15–16. Recognizing the importance of this dispute, the Court held a hearing on February 24, 2017 and offered guidance on the issue on March 3, 2017. No. 15-10698 Dkt. 518 at 4 ("To decide whether it was feasible for Celltrion to have used a non-infringing media powder to produce Inflectra, it must be determined whether, starting on the date of first infringement, Celltrion could have switched to using a non-infringing alternative.").

Defendants propose that the Court provide a formal ruling on this issue as soon as possible, before the end of 2017. It is a question of law, and stands to significantly narrow the scope of discovery and related time, expense, and burden. Without a ruling from the Court on this issue, the parties will be required to conduct fact and expert discovery related to which non-infringing alternatives were available at any of two or more different times, rather than at the time the Court determines is appropriate as a matter of law.

        5.    <u>Other possible summary judgment issues related to damages</u>

Further discovery related to damages may present additional opportunities to narrow the case. Defendants may identify additional issues that they propose are appropriate for resolution on summary judgment after the close of expert discovery and before trial.

    **B.**    **Potential Discovery Disputes**

Discovery related to damages has just begun, and the parties have only exchanged a single preliminary round of discovery requests. The parties have not fully met and conferred about

apparent disputes, nor identified any impasses at the present time. Defendants will meet and confer with Janssen in good faith to attempt to resolve any disputes that arise, and to the extent they are not able to resolve them, may seek resolution by the Court.

### C. Pending or Expected *Daubert* Motions

   1. <u>Whether the opinions of Janssen's experts Drs. Wurm and Butler should be excluded pursuant to Federal Rule of Evidence 702 and *Daubert*</u>

In January 2017, Defendants filed a motion seeking to exclude the testimony and opinions of Janssen's experts Dr. Wurm and Dr. Butler regarding alleged infringement. *See* No. 15-10698 Dkt. 339, *et seq*. The primary bases for the motion were:

> (1) Janssen's experts' theory of equivalence, which focuses on the whole cell culture media, results in vitiation of claim elements because, as Janssen's experts admitted, "**any concentration**" is allegedly equivalent to the claimed composition. This is directly contrary to established legal standards on the doctrine of equivalents and the rule against vitiation of claim elements. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997); *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1362 (Fed. Cir. 2005). Janssen's experts' theory of infringement is textbook vitiation, as illustrated by the fact that the holdings of many leading cases apply word-for-word to the experts' opinions, as outlined on slides 25–29 of Defendants' February 7, 2017 presentation.
>
> (2) Janssen's experts admittedly never tested the accused media powders, instead adding five ingredients to "replicas" of the powders and omitting one ingredient—changes Janssen's experts admitted impacted the outcome of the testing, or at least could not be ruled out as impacting the outcome of the testing. The experts also never tested the powder of claim 1 of the '083 patent, instead testing "variants" that are different from claim 1 in at least 45 ways, and contain ingredients that make them more like the accused powders. This was explained in Defendants' briefing, as well as on slides 34–48 of Defendants' February 7, 2017 presentation.

Dr. Wurm's testing and opinions, and Dr. Butler's opinions, which necessarily incorporate and are based on the testing, do not fit either the case or the required legal standard for the doctrine of equivalents. They cannot help resolve the questions the jury will be called upon to decide.

Prior to postponement of trial and Janssen's voluntary dismissal of its 2015 and 2016 actions, the Court conducted a hearing regarding Defendants' *Daubert* motion (*see generally* 2/7/17 Hr'g Tr.), and in doing so, proposed that it may be helpful to conduct *voir dire* of Janssen's

9

experts. Defendants provided a list of exemplary topics on which they would propose Drs. Wurm and Butler be examined. No. 15-10698 Dkt. 482. These and similar questions will help demonstrate that the experts have not done what the law requires and that the Court must fulfill its gate-keeping function under *Daubert*.

As the parties explained to the Court during the February 7 hearing, granting Defendants' *Daubert* motion would leave Janssen without expert opinions to support its infringement claim. Defendants propose that the Court complete its process of considering Defendants' *Daubert* motion and issue a decision before trial.

2. Potential *Daubert* motions related to damages

Fact discovery related to damages issues has just begun and Janssen has not yet made expert witness disclosures under Federal Rule of Civil Procedure 26. Based upon the damages theories Janssen has disclosed to date, Defendants believe there may be bases to exclude Janssen's expert theories related to lost profits and/or reasonable royalty damages. Any such motions should be briefed, heard, and decided after the close of expert discovery and before trial.

D. **Pending or Expected Motions *In Limine***

Below is a list of Defendants' motions *in limine* which were pending in connection with Case Nos. 15-10698 and 16-11117 as of early February 2017. Briefing regarding these motions was completed, but none were heard or decided by the Court. Defendants will reevaluate closer to trial whether any of the below-listed motions no longer require resolution by the Court, and whether any of them require updating or modification in view of developments since early 2017.

- Defendants' Motion *in Limine* No. 1: to Preclude Evidence and Argument Regarding Alleged Copying (No. 15-10698 Dkt. 361, *et seq.*);
- Defendants' Motion *in Limine* No. 2: to Preclude Evidence and Argument Regarding Remicade® (No. 15-10698 Dkt. 363, *et seq.*);
- Defendants' Motion *in Limine* No. 3: to Preclude Evidence and Argument Regarding Discovery Communications (No. 15-10698 Dkt. 365, *et seq.*);

- Defendants' Motion *in Limine* No. 4: to To Preclude Evidence and Argument From Janssen Concerning Change to Media Compositions From Singapore (No. 15-10698 Dkt. 370, *et seq.*);
- Defendants' Motion *in Limine* No. 5: To Preclude Evidence and Argument Regarding Active Inducement Prior to April 2016 (No. 15-10698 Dkt. 372, *et seq.*).

Defendants may file additional motions *in limine* concerning damages-related evidence, but will be better informed with respect to the subject matter of such motions after the close of fact and expert discovery related to damages. Defendants propose that any motions *in limine* be ruled upon before trial.

Dated: October 19, 2017

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)

        WINSTON & STRAWN LLP
        35 W. Wacker Drive
        Chicago, IL  60601-9703
        Tel: (312) 558-7931
        spark@winston.com
        dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## **CERTIFICATE OF SERVICE**

      I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 19, 2017.

                                          /s/Andrea L. Martin, Esq.
                                          Andrea L. Martin, Esq.