**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.<br><br>     Defendants. | No. 1:17-cv-11008<br><br>**PUBLIC**<br>**REDACTED VERSION** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO**
**EXCLUDE OPINION OF SEAN NICHOLSON REGARDING DAMAGES**

**TABLE OF CONTENTS**

Table of Authorities ....................................................................................................... ii

I.       Introduction ........................................................................................................ 1

II.      Factual Background ........................................................................................... 5

         A.       Cell Culture Media ................................................................................ 5

         B.       Dr. Nicholson's Opinions ...................................................................... 6

III.     Legal Standard ................................................................................................... 8

IV.      The Court Should Exclude Dr. Nicholson's Lost Profits and Reasonable
         Royalty Opinions Because of his Failure to Apportion ................................. 9

         A.       "But For" Causation is Necessary But Not Sufficient to Prove Lost Profits:
                  Apportionment is Always Required ........................................................ 9

         B.       Nothing Justifies Dr. Nicholson's Failure to Apportion ....................... 11

                  1.       The Entire Market Value Rule Does Not Apply to the Accused
                           Cell Culture Media ..................................................................... 12

                  2.       Dr. Nicholson's Attempt to Apply the *Panduit* Factors for Lost
                           Profits Fails to Apportion ........................................................... 13

         C.       Dr. Nicholson Misapplied the *Panduit* Test for Lost Profits, Which
                  Provides an Independent Ground for Excluding His Lost Profits Opinions ......... 16

         D.       Dr. Nicholson Fails to Apportion His Reasonable Royalty Damages ................. 19

V.       Conclusion ......................................................................................................... 20

## Table of Authorities

**Cases**

*AAMP of Fl., Inc v. Auto. Data Sols., Inc.*,
No: 8:13-cv-2019, 2015 WL 12843845 (M.D. Fla. Oct. 8, 2015)....................................8, 19

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
1 F.3d 1214 (Fed. Cir. 1993).............................................................................................4, 16

*Bose Corp. v. JBL, Inc.*,
112 F. Supp. 2d 138 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001) ......................17

*Calico Brand, Inc. v. Ameritek Imps., Inc.*,
527 F. App'x 987 (Fed. Cir.), *decision clarified on reh'g*, 547 F. App'x 966
(Fed. Cir. 2013)....................................................................................................................16

*Carapellucci v. Town of Winchester*,
707 F. Supp. 611 (D. Mass. 1989) .........................................................................................8

*Cavanagh v. Taranto*,
95 F. Supp. 3d 220 (D. Mass. 2015) .......................................................................................8

*Commonwealth Sci. and Indus. Research Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)........................................................................................8, 20

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993).............................................................................................................1, 8

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014).................................................................................3, 12, 13

*Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*,
350 F.3d 1327 (Fed. Cir. 2003)..................................................................................9, 10, 11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)..............................................................................................20

*Garretson v. Clark*,
111 U.S. 120 (1884)......................................................................................................passim

*Good Tech. Corp. v. MobileIron, Inc.*,
Civ. No. 12-05826, 2015 WL 3882608 (N.D. Cal. June 23, 2015).............................9, 12, 13

*Gyromat Corp. v. Champion Spark Plug Co.*,
735 F.2d 549 (Fed. Cir. 1984)................................................................................5, 14, 18

*In re: Janssen Biotech Inc.*,
880 F.3d 1315 (Fed. Cir. 2018).................................................................................................5

*Janssen Biotech, Inc. v. Celltrion Healthcare Co.*,
    Fed. Cir. No. 2017-1120, ECF #61 (Jan. 23, 2018) ................................................. 5

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ................................................... 3, 12, 19, 20

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ..................................................... 1, 10

*Martinez v. Porta*,
    601 F. Supp. 2d 865 (N.D. Tex. 2009) ................................................. 8

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017) ............................................ 1, 4, 14, 16

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    870 F.3d 1298 (Fed. Cir. 2017) ............................................... passim

*Micro Chem., Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003) ..................................................... 4, 16

*Mitutoyo Corp. v. Cent. Purchasing, LLC*,
    499 F.3d 1284 (Fed. Cir. 2007) ....................................................... 17

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ..................................................... passim

*Philp v. Nock*,
    84 U.S. 460 (1873) ....................................................................... 10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017) ....................................................... 17

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010) ..................................................... 1, 2, 9

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995) ............................................. 9, 12, 13, 16

*Sessions v. Romadka*,
    145 U.S. 29 (1892) ....................................................................... 12

*Seymour v. McCormick*,
    57 U.S. 480 (1853) ....................................................................... 10

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    891 F. Supp. 751 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996) ............................ 18

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014) ............................................................................................ passim

## I.    INTRODUCTION

The opinions of Janssen's damages expert, Dr. Nicholson, should be excluded under *Daubert* because he failed to apply the law's apportionment requirement. His damage opinions are based on nothing beyond purported "but for" causation, but that is not enough under the law. "[T]he Supreme Court's patent cases make quite clear that ***more than but-for causation*** is required for apportionment," which is a separate and independent requirement. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1301 (Fed. Cir. 2017) (emphasis added) (Dyk, J., dissenting on denial of rehearing).

In addition to showing "but for" causation, the Supreme Court and Federal Circuit have long required apportionment of damages: "When a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark,* 111 U.S. 120, 121 (1884). That rule applies in "***every case***," requiring patentees to provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (partly quoting *Garretson*, 111 U.S. at 121) (emphasis added).

As the Federal Circuit recently held, "apportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017). The apportionment requirement ensures that a patentee "seek[s] only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (citing *Garretson*, 111 U.S. at 120–21). To satisfy this requirement, "the trial court must carefully tie proof of damages to the claimed invention's footprint in the market place." *ResQNet.com, Inc.*

*v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Permitting an expert to expand beyond that footprint "does not support compensation for infringement but punishes beyond the reach of the statute." *Id.*

Here, Dr. Nicholson made no effort to apportion. While admitting ███████████ ████████████████████████████████████████████ infliximab products, he concedes he has not ████████████████████████████████████████████████████ ██████████████████████████ Ex. 1, Nicholson Dep. Tr. at 37:21-22, 40:16-21, 41:3-8. This renders both his lost profits and reasonable royalty opinions inadmissible under the law, because apportionment is required in "every case." *Garretson*, 111 U.S. at 121.

A failure to apportion is particularly egregious here, because the accused products—the media or "food" used to grow cells—are only a tiny part of a much larger process for creating infliximab antibodies. That larger process includes, for instance, creating specific DNA that codes for the antibodies, incorporating that DNA into specially engineered cells lines, growing the cells to produce antibodies, filtering, harvesting, and purifying the resulting antibodies, and creating injectable formulations for those once-patented antibodies. The tiny portion of the value of infliximab attributable to cell media is confirmed by ████████████████████████████ ████████████████████████████████████████. Ex. 2, Hales Dep. Tr. at 66:14-19; Ex. 3, Leonard Report at Appx. 3.

Yet Dr. Nicholson calculated his damages on the *entire market value* of the infliximab products—Inflectra®'s entire value for his reasonable royalty calculation and Remicade®'s entire value for his lost profits analysis—even though the '083 patent covers cell food, which is not even part of the final product. Janssen has no legal justification for Dr. Nicholson's approach. The Federal Circuit has recognized only two specific circumstances—neither of which applies here—

where any such "entire market value" analysis complies with the Supreme Court's apportionment requirement.

*First*, the Federal Circuit applies what is known as the "entire market value rule," which is "a narrow exception to th[e] general rule" requiring a specific apportionment analysis. *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). That exception applies, however, only "[i]f … the patented feature drives the demand for" the entire product. *Id.* "[I]t is not enough to merely show that the [claimed invention] is viewed as valuable" or even "essential to the [product's] use." *Id*. at 68. The invention must actually "drive[] demand." *Id*. at 67. In that circumstance, the apportionment requirement is satisfied because the "entire value of" a product "is properly and legally attributable to the patented feature," meaning a proper apportionment reflects the "entire value" of that product. *Ericsson, Inc. v. D-Link Sys., Inc*., 773 F.3d 1201, 1227 (Fed. Cir. 2014).

Janssen does not claim that the entire market value rule applies here. Nor could it. The particular kind of cell culture media a company uses does not "drive demand" for infliximab products. As Janssen's medical expert admitted, "cell culture media is not something that physicians or patients take into account when selecting a biologic." Ex. 4, Rustgi Reply Report ¶8.

███████████████████████████████████████████████████████

███████████████████████████████ Ex. 1, Nicholson Dep. Tr. at 112:6-22.

*Second*, in limited circumstances not applicable here, a so-called *Panduit* analysis can provide a fair proxy for the apportionment requirement (only as a lost profits claim) and, thus, justify a full-market-value analysis without any separate apportionment. In *Mentor Graphics,* for instance, the Federal Circuit held that "on the undisputed facts of [the] record, satisfaction of the *Panduit* factors satisfies principles of apportionment: ***Mentor's damages are tied to the worth of***

*its patented features*." *Mentor Graphics*, 851 F.3d at 1288 (emphasis added). In a concurring opinion denying a petition for rehearing *en banc* just last year, Judge Stoll likewise stated that under "the narrow facts" of that case, "the panel determined that because the *Panduit* factors are satisfied, the damages award properly accounted for apportionment." *Mentor Graphics II*, 870 F.3d at 1300.

Here, *Panduit* doesn't even apply, much less provide a fair proxy for the apportionment requirement. In fact, Janssen recognized over a year ago that "[t]he *Panduit* factors are not well suited to the facts of this case, as Janssen is not selling a competing cell culture media and does not seek lost profits based on lost sales of cell culture media." No. 15-10698, Dkt. 412 at 3. Yet Janssen has now done an about face, seeking to justify its massive damages request through a misapplication of *Panduit*.

Janssen's distortion of *Panduit* does not and cannot satisfy the apportionment requirement. The Federal Circuit emphasizes that "the *Panduit* test is a demanding one." *Mentor Graphics*, 851 F.3d at 1289. It "operates under an inherent assumption, not appropriate in this case, that the patent owner and the infringer sell products sufficiently similar to compete against each other in the same market segment." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). "The relevant market … includes other devices or substitutes similar in physical and functional characteristics to the *patented invention*." *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003) (emphasis added).

Here, the "patented invention" is cell culture media, which is therefore the "relevant market." But "Janssen is not selling a competing cell culture media" and thus is not "seek[ing] lost profits based on lost sales of cell culture media," No. 15-10698, Dkt. 412 at 3. Therefore, the "inherent assumption" in *Panduit* does not apply here, which fundamentally derails Dr.

Nicholson's efforts to rely on *Panduit*.

He also misapplies *Panduit* by mixing and matching different markets, which provides a separate and independent basis for rejecting his lost profits opinion beyond his failure to apportion. For example, *Panduit* factor 1 asks whether there is "demand for the patented product." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). For that factor, Dr. Nicholson states that ████████████████████████████████████████████████ ████████████████████████ Ex. 5, Report at 17 (emphasis added). But *Panduit* factor 3 asks whether the patentee has the "capability to meet the demand" for "the product covered by the patent," (again, cell culture media). *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit*, 575 F.2d at 1156. Yet, Dr. Nicholson opines that ████████████ ████████████████████████████ ████████████████████████ ██████████████████ Ex. 1, Nicholson Dep. Tr. at 316:8-20, 317:14-318:15. Thus, *Panduit* provides no justification for Dr. Nicholson's failure to apportion.

Janssen's motivation for basing damages on the ███-fold more valuable infliximab market is transparent: it allows Janssen to present damages figures grossly inflated beyond anything remotely resembling the fair value of the "footprint" of the claimed media. Law settled for over a century precludes any such approach. Because Dr. Nicholson applied the wrong legal standard for patent damages, his opinions should be excluded.

## II.   FACTUAL BACKGROUND

### A.   Cell Culture Media

Janssen no longer has a patent on infliximab. In August 2016, this Court invalidated the '471 patent, which covered infliximab. No. 15-10698, Dkt. 226. The Federal Circuit confirmed that patent's invalidity earlier this year. *In re: Janssen Biotech Inc.*, 880 F.3d 1315, 1326 (Fed. Cir. 2018); *Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, Fed. Cir. No. 2017-1120, ECF #61

(Jan. 23, 2018).

The '083 patent claims cell culture media. *See* Dkt. 1-1. 

Ex. 6, Plaintiff's Resp. to

Defendants' First Set of RFAs (Feb. 1, 2018) at RFA No. 13.

*Id*. at RFA No. 14; Ex. 7,

Douglass Dep. Tr. at 67:21-73:13; Ex. 1, Nicholson Dep. Tr. at 158:25-159:6.

Ex. 1,

Nicholson Dep. Tr. at 40:16-41:8. One such input is a cell culture media, which is used to grow

cells and which Celltrion obtains from GE HyClone. Ex. 8, Frohlich Report at 26-27, 33. Cell

culture media does not end up in the final drug product. *Id*.

There are many other inputs into that process. For instance, 

Ex. 9, White

Dep. Tr. at 378:22-24.

*Id*. at 377:22-24, 378:25-379:6. (Ex. 10, Hickey Dep.

Tr. at 71:16-23), but

Ex. 1, Nicholson Dep.

Tr. at 41:3-8, and thus made no attempt to tie Janssen's alleged damages to any value attributable

to the '083 patent.

B.    **Dr. Nicholson's Opinions**

Dr. Nicholson provides two alternative damages opinions: one based on Janssen's alleged

lost Remicade® profits (in the form of alleged lost Remicade® sales and alleged erosion of the

price of Remicade®) and one based on an alleged "reasonable royalty" (based on Defendants'

worldwide sales of Remsima® and Inflectra®). Ex. 5, Report at 3-5. Neither of Dr. Nicholson's

analyses are based on sales of cell culture media, the subject of the '083 patent. Indeed, Dr. Nicholson never bothered to calculate the total sales of the allegedly infringing media, or determine any value actually tied to those sales, as he █████████████████████████████ ████████████ Ex. 1, Nicholson Dep. Tr. at 160:8-161:13.

For his lost profits analysis, Dr. Nicholson relies solely on "the four *Panduit* factors." Ex. 5, Report at 3; Ex. 1, Nicholson Dep. Tr. at 197:11-19. For the first two *Panduit* factors—"demand for the patented product" and "absence of acceptable noninfringing substitutes"—Dr. Nicholson focuses on the market for cell culture media. █████████████████████████████ ██████████████████████████████████████ Ex. 5, Report at 3. Based on the opinion of other experts, he also finds that there was no ████████████████████████ ████████████████████████████████ *Id.*

By contrast, for the third and fourth *Panduit* factors—the "capability to exploit the demand" and "the amount of the profit he would have made"—Dr. Nicholson switches his focus to the market for infliximab. He ████████████████████████████████ ████████████████████████████ *Id.* (emphasis added). And he concludes that absent infringement, Janssen would have made ██████████████████████ ████████████████████████ Ex. 11, Supp. Report at 2. For that conclusion, he attributes 100 percent of every dollar of alleged lost profits associated with *Remicade*® (an unpatented infliximab molecule) to the '083 patent (a patent covering certain cell culture media compositions). Ex. 5, Report at 4, 21.

As an alternative basis for damages, Dr. Nicholson offers a reasonable royalty opinion based on three potential hypothetical negotiations (each based on a different date of first alleged infringement). Ex. 5, Report at 4-5. Dr. Nicholson bases this opinion on the assumption that, absent

the alleged infringement, Defendants' launch of Remsima® and Inflectra® worldwide would have been materially delayed. Ex. 5, Report at 35-37. To avoid any delay, Dr. Nicholson concludes that Defendants would have paid 100 percent of the U.S. **Inflectra®** profit for the delay period for the use of the '083 patent, which, in his view, is ███████████ Ex. 5, Report at 48-49; Ex. 1, Nicholson Dep. Tr. at 85:18-25. Dr. Nicholson offers no analysis of what portion of these alleged reasonable royalties are attributable to the '083 patent compared to other contributors of Inflectra®'s value.

## III.   LEGAL STANDARD

The Supreme Court has observed that Federal Rule of Evidence 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The question of admissibility requires a determination of "whether the premises upon which the [expert's] opinion is based include assumptions about the applicable legal standard that are incorrect." *Carapellucci v. Town of Winchester*, 707 F. Supp. 611, 619 (D. Mass. 1989). Expert opinions "cannot be based on an erroneous legal premise." *Martinez v. Porta*, 601 F. Supp. 2d 865, 866 (N.D. Tex. 2009). Where an expert's opinion is based on a legally improper standard, it is excluded. *See Cavanagh v. Taranto*, 95 F. Supp. 3d 220, 231 (D. Mass. 2015) (expert's legally irrelevant testimony excluded under Rule 702); *AAMP of Fl., Inc v. Auto. Data Sols., Inc.*, No: 8:13-cv-2019, 2015 WL 12843845, at *9 (M.D. Fla. Oct. 8, 2015) (expert's opinions which are "based on an incorrect legal standard" are excluded because "those opinions are irrelevant, unreliable, and would mislead the jury.").

The Court should exclude damages opinions that do not apportion because "to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *See Commonwealth Sci. and Indus. Research Org. v. Cisco*

*Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015); *VirnetX*, 767 F.3d at 1328 ("[T]he district court should have exercised its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury."); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1346 (Fed. Cir. 2003) (reversing award of lost profits where district court failed to apportion between patented and unpatented features); *Good Tech. Corp. v. MobileIron, Inc.*, Civ. No. 12-05826, 2015 WL 3882608, at *4 (N.D. Cal. June 23, 2015) (no lost profits where damages expert did not apportion).

## IV. THE COURT SHOULD EXCLUDE DR. NICHOLSON'S LOST PROFITS AND REASONABLE ROYALTY OPINIONS BECAUSE OF HIS FAILURE TO APPORTION

### A. "But For" Causation is Necessary But Not Sufficient to Prove Lost Profits: Apportionment is Always Required

"To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). But in addition to "but for" causation, there is another requirement, specific to patent law. This requirement, apportionment, makes sure that a patentee "seek[s] only those damages attributable to the infringing features." *VirnetX*, 767 F.3d at 1326 (citing *Garretson*, 111 U.S. at 120–21). Merely showing "but for" causation does not establish apportionment, as Judge Dyk recently explained: "the Supreme Court's patent cases make quite clear that more than but-for causation is required for apportionment." *Mentor Graphics II*, 870 F.3d at 1301 (Dyk, J., dissenting on denial of rehearing).

In addition to showing "but for" causation, a patentee must apportion damages by "carefully t[ying] proof of damages to the claimed invention's footprint in the market place." *ResQNet.com*, 594 F.3d at 869. As the Supreme Court explained 150 years ago, "[w]here the

infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent." *Philp v. Nock*, 84 U.S. 460, 462 (1873); *see also Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement.").

Here, cell culture media is not even part of the final product. It's one small part of a much larger multi-step process to create infliximab, which, again, is not even patented. Thus Janssen must provide "evidence tending to separate or apportion ... patentee's damages between" the "added ... usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent*, 580 F.3d at 1337 (partly quoting *Garretson*, 111 U.S. at 121) (emphasis added). But Dr. Nicholson has not ████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. 1, Nicholson Dep. Tr. at 41:3-8, and thus made no attempt to tie Janssen's alleged damages to any "added usefulness" attributable to the '083 patent.

Instead, Dr. Nicholson calculates his damages on the *entire market value* of the infliximab products—Inflectra®'s entire value for his reasonable royalty calculation and Remicade®'s entire value for his lost profits analysis. The impropriety of Dr. Nicholson's analysis is readily apparent, as confirmed by the factual similarities of this case to *Ferguson Beauregard/Logic Controls*, 350 F.3d at 1346. There, the Federal Circuit reversed an award of lost profits where the district court failed to apportion between patented and unpatented features. *Id.* at 1346. The patentee asserted two patents, one of which was infringed and one of which was found not infringed. *Id.* at 1336. The Federal Circuit held that it was error to award lost profits because the district court "failed to distinguish the allocation of profits that would have been made 'but for' the infringement of the

[infringed] patent with the profits that could fairly be allocated to customer demand related to the features embodying the [not infringed] patent." *Id*. at 1346. Likewise, Janssen makes no attempt to distinguish between the profits due to any infringement of the '083 patent with any other features which drive customer demand.

For example, Janssen's now-invalid '471 patent covered the infliximab molecule. Janssen never disputes that the "features embodying the ['471] patent," namely the infliximab antibody itself, drive consumer demand. Infliximab is what customers actually purchase. Cell media is not even present in the final product. Yet Dr. Nicholson's analysis attributes one input in the manufacturing process of infliximab to the entire value of the end drug product. Under Dr. Nicholson's logic, every single input required to manufacture Inflectra® would be valued at the entirety of Remicade®'s (or Inflectra®'s) sales, because ████████████████████████ ████████████████████ *See* Ex. 1, Nicholson Dep. Tr. at 48. Dr. Nicholson's failure to apportion requires that his opinions be excluded from trial.

Dr. Nicholson's failure to apportion is particularly egregious considering that this Court invalidated Janssen's patent covering the infliximab antibody. Yet Janssen's damages model assumes that the value of the '083 patent is coextensive with the value of infliximab. This attempt to calculate damages on the entire market value of infliximab is legally improper, and the Court should "exercise[] its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury." *VirnetX*, 767 F.3d at 1328.

## B.   Nothing Justifies Dr. Nicholson's Failure to Apportion

The Federal Circuit has recognized only two specific circumstances where any such "entire market value" analysis complies with the Supreme Court's apportionment requirement. Neither circumstance applies here.

1.    The Entire Market Value Rule Does Not Apply to the Accused Cell
Culture Media

The primary circumstance is under the narrowly applied "entire market value rule." *LaserDynamics*, 694 F.3d at 67. Under that rule, the full value of a product may be used to calculate damages only "where the ***entire value*** of a machine as a marketable article is properly and legally attributable to the ***patented feature***." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) (emphasis added); *see also Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature.").

"To employ the entire market value rule, plaintiffs first must show that the infringing feature is the primary reason that consumers buy the product." *Good Tech.*, 2015 WL 3882608, at *4 (citing *Ericsson*, 773 F.3d at 1226; *VirnetX,* 767 F.3d at 1326). "It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential to the use of the [entire accused product.]" *LaserDynamics,* 694 F.3d at 67–68. Rather, the plaintiff must show that the patented feature "is the 'basis for customer demand.'" *Rite-Hite*, 56 F.3d at 1549 (citation omitted).

Janssen does not even contend the entire market value rule applies. Nor could it. As Janssen's medical expert admitted, "cell culture media is not something that physicians or patients take into account when selecting a biologic." Ex. 4, Rustgi Reply Report ¶8; *see also* Ex. 9, White Dep. Tr. at 170:25-171:4 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 1, Nicholson Dep. Tr. at 112:6-22.

███████████████████████████████████████████████████████

████████████████████████████████████ Ex. 12, Plaintiffs' Resp. to Defendants' First Set

of RFAs (May 31, 2016) at RFA Nos. 6-7; Ex. 13, HOS0044966 at 970; Ex. 6, Plaintiff's Resp. to

Defendants' First Set of RFAs (Feb. 1, 2018) at RFA Nos. 1, 7; Dkt. 87-3. Customers do not care,

or likely even know, what kind of media is used. Therefore, the '083 media is not the "primary

reason that consumers buy the product." *Good Tech.*, 2015 WL 3882608, at *4 (citing

*Ericsson*, 773 F.3d at 1226; *VirnetX,* 767 F.3d at 1326).

Moreover, to invoke the entire market value rule, a patentee must show that the "unpatented

and patented components are physically part of the same machine," or "the unpatented and

patented components together were considered to be components of a single assembly or parts of

a complete machine, or they together constituted a functional unit." *Rite-Hite*, 56 F.3d at 1540-50.

The accused media is not part of Inflectra® nor is Inflectra® "a functional unit" with the accused

media. Ex. 3, Leonard Report at 12; Ex. 8, Frohlich Report at 27. As the Federal Circuit explains:

> It is a clear purpose of the patent law to redress competitive damages resulting from
> infringement of the patent, but ***there is no basis for extending that recovery to***
> ***include damages for items that are neither competitive with nor function with the***
> ***patented invention***. Promotion of the useful arts, see U.S. Const., art. I, § 8, cl. 8,
> requires one, but not the other.

*Rite-Hite*, 56 F.3d at 1551.

Here, the accused cell culture media is neither sold with nor part of Remicade® or

Inflectra®. Dr. Nicholson thus wrongly "extend[s] recovery to include damages for items that are

neither competitive with nor function with the patented invention." *Id*. The entire market value

rule is not applicable.

2.      Dr. Nicholson's Attempt to Apply the *Panduit* Factors for Lost Profits
        Fails to Apportion

In certain circumstances—not applicable here—a proper application of *Panduit* can satisfy

the requirement to apportion. To establish lost profits under *Panduit*, the patentee must prove: (1) demand for the patented product, (2) absence of acceptable non-infringing substitutes, (3) his manufacturing and marketing capability to exploit the demand for the patented product, and (4) the amount of the profit he would have made. *Gyromat Corp.*, 735 F.2d at 552.

But "[d]amages under *Panduit* are not easy to prove." *Mentor Graphics*, 851 F.3d at 1285. One reason is because "[u]nder *Panduit*, however, there can only be one recovery of lost profits for any particular sale," which logically precludes a lost profits award for claimed inventions making up a small portion of the overall value of a product, particularly one that incorporates other claimed inventions. *Id.* at 1289.

For example, in *Mentor Graphics*, the *Panduit* analysis justified a lost profits award based on the infringing product's full value, but only because the value of the infringing product (computer emulation technology for testing microchips) was fairly attributed to the patented features of that product (a method of checking for source code "bugs"). 851 F.3d at 1289. The Federal Circuit specifically held that "on the undisputed facts of [the] record, satisfaction of the *Panduit* factors satisfies principles of apportionment: ***Mentor's damages are tied to the worth of its patented features***." *Id.* at 1288 (emphasis added). But *Mentor Graphics* does not stand for the proposition that the satisfaction of the *Panduit* factors—in every case—satisfies the Supreme Court's apportionment requirement. *See id.* ("We leave for another day whether a different theory of 'but for' damages adequately incorporates apportionment principles."). Dr. Nicholson's so-called *Panduit* analysis differs significantly from *Mentor Graphics*. While the patentee in *Mentor Graphics* sought damages based on an infringing product, Janssen seeks damages beyond the accused products' market, based on sales of a separate, unpatented product. In such circumstances, *Panduit* does not satisfy the "necessary" requirement to apportion. *Id.* at 1287.

14

A concurring opinion denying rehearing *en banc*[1] in *Mentor Graphics* further confirmed the need to ***always*** comply with the apportionment requirement, ***regardless*** of "but for" causation under a *Panduit* analysis. In that opinion, Judge Stoll—joined by Judges Newman, Moore, O'Malley, Reyna, and Wallach—noted that the Federal Circuit has "consistently held that" "apportionment is required." *Mentor Graphics II*, 870 F.3d at 1299 (citing multiple cases). She then explained that apportionment ***had*** been satisfied in *Mentor Graphics* under "the narrow facts of this case." *Id.* at 1300. Judge Stoll explained that the panel had "recognized" that the first two *Panduit* factors "together 'consider[ ] demand for the ***patented product as a whole'*** and 'consider[ ] demand for particular limitations or features of the claimed invention.'" *Id.* (citation omitted, emphasis added).

The jury in *Mentor Graphics* further found that the claimed invention drove demand and "imbued" the product with its "marketable value," based on the jury's specific finding that "Intel would not have purchased the [infringing] Synopsys emulator system without the two patented features." *Id.* Judge Stoll thus noted that "[u]nder these circumstances, further apportionment is unnecessary," because whether viewed "in terms of what imbues value to the ultimate combination of features or what is a driver of demand for those combined features, the result is the same: the apportionment required by *Garretson* is satisfied." *Id.*

Here, by contrast, the accused media—which is not even part of infliximab product—is obviously not "what imbue[s] the combined features that made up the [drug] with marketable value" and certainly does not "drive demand" for infliximab. There is no dispute about this. Accordingly, even if *Panduit* applied here—which it does not—a separate apportionment analysis

---

[1] Subsequent to the denial of rehearing *en banc*, Eve-USA filed for *certiorari*. The petition for *certiorari* is currently pending, and the Supreme Court recently called for the view of the Solicitor General.

would still be required. Thus, Dr. Nicholson's failure to apply the proper legal standard for patent damages and apportion, by itself, justifies exclusion of his damages opinions. *See VirnetX*, 767 F.3d at 1328.

### C.   Dr. Nicholson Misapplied the *Panduit* Test for Lost Profits, Which Provides an Independent Ground for Excluding His Lost Profits Opinions

Exclusion of Dr. Nicholson's lost profits opinion is independently warranted based on his misapplication of *Panduit*. The *Panduit* test is his sole justification for lost profits, but he misapplied that test in fundamental ways.

The *Panduit* test "operates under an inherent assumption, not appropriate in this case, that the patent owner and the infringer sell products sufficiently similar to compete against each other in the same market segment." *BIC*, 1 F.3d at 1218. "The proper starting point to identify the relevant market is the patented invention." *Micro Chem.*, 318 F.3d at 1124. Thus, under a *Panduit* analysis, the accused infringer and the patentee must both participate in the accused product's market. *See, e.g.*, *Panduit*, 575 F.2d at 1155-56 (patent covered ducts for electrical control systems and both patented and accused product were such ducts); *Rite–Hite*, 56 F.3d at 1548 (patent covered vehicle restraints and both patentee and infringer sold vehicle restraints); *Calico Brand, Inc. v. Ameritek Imps., Inc.*, 527 F. App'x 987, 996–97 (Fed. Cir.), *decision clarified on reh'g*, 547 F. App'x 966 (Fed. Cir. 2013) (patent covered utility lighter safety mechanism and both patentee and infringer sold utility lighters); *Mentor Graphics*, 851 F.3d at 1283 (patents covered emulation technology and both patentee and infringer sold emulators).

The Federal Circuit's opinion in *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993) provides a good example. There, both the patentee and the infringer sold sailboards, but the sailboards "differed significantly in terms of price" and thus were not "sufficiently similar to compete against each other in the same market segment." *Id.* at 1218-19.

Because the products were in separate markets, the patentee "did not show 'but for' causation under a correct application of *Panduit* or otherwise." *Id.* at 1219.

The Federal Circuit has not hesitated to throw out *Panduit* analyses that fail to focus on the correct market, even when the markets at issue are much more closely related than here, where there is no comparison between the low value cell culture market and the high value infliximab market. *See, e.g., Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1288–89 (Fed. Cir. 2007) (no "market overlap" where infringer's brake calipers were priced substantially lower than patentee's brake calipers); *Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 161-162 (D. Mass. 2000), *aff'd*, 274 F.3d 1354 (Fed. Cir. 2001) (no lost profits where patentee's and accused products "represent two distinct segments of the home speaker market" and patentee "failed to establish a reasonable probability that a consumer buying one would purchase the other as a substitute.").



Dr. Nicholson concedes ███████████████████████. He states that *Panduit* factor 1, "demand for the patented product," is about ████████████████████████ ████████ Ex. 5, Report at 3 (emphasis added).  And he says that *Panduit* factor 2, the "absence of non-infringing alternatives," is all about █████████████████████████ ██████████████████████████████████ Ex. 5, Report at 3 (emphasis added).[2]

Yet for Panduit factors 3 and 4, Dr. Nicholson does an about face ████████████████ ████████ He concludes for the third factor ███████████████████████████████████ ███████████████████████ Ex. 5, Report at 3, 18 (emphasis added). For the fourth factor, Dr. Nicholson again ██████████████████████████ ██████████████

---

[2] Dr. Nicholson relies on two other Janssen experts, Dr. Butler and Mr. Lit, to satisfy this element of Panduit. But, in addition to the flaws discussed herein, Mr. Lit, Dr. Butler, and Dr. Nicholson misapply Panduit's second factor by comparing Defendants' alternatives to the accused products rather than Janssen's cell culture media. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017) ("The correct inquiry under *Panduit* is whether a non-infringing alternative would be acceptable ***compared to the patent owner's product***, not whether it is a substitute for the infringing product.") (emphasis added).

███████████████████████████████████████████

████████████████████████████████████████ *Id.* at 3 (emphasis added).

*Panduit*'s third factor, however, asks whether patent owner has "capability to meet the demand for the ***product covered by the patent***." *Gyromat Corp.*, 735 F.2d at 552 (emphasis added). This is clear from the language of the test itself. The first *Panduit* factor requires "demand for the patented product," and the third factor requires that the patentee has "manufacturing and marketing capability to exploit ***the demand***." *Panduit*, 575 F.2d at 1156. Thus the patentee must have the capability to exploit the demand for the ***patented product***, which is cell culture media. *See Gyromat*, 735 F.2d at 552; *see also SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991) (the patent owner must prove "(1) a demand for the ***patented product***," and "(3) the patent owner's manufacturing and marketing capability to exploit the ***demand for the patented product***.") (emphasis added); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 825 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996) ("The third-*Panduit* factor concerns the manufacturing and marketing capability of the patentee to ***meet the demand for the patented product***.") (emphasis added).

The crux of Dr. Nicholson's misapplication of *Panduit* is his failure to define the relevant market and then apply the test to that market. Instead, he selects different products and different markets depending on the factor, violating the fundamental premise underlying the *Panduit* test. The reason for Dr. Nicholson's misapplication of the factors is clear. As Janssen recognized over a year ago, "[t]he *Panduit* factors are not well suited to the facts of this case, as Janssen is not selling a competing cell culture media and does not seek lost profits based on lost sales of cell culture media." No. 15-10698, Dkt. 412 at 3. If Dr. Nicholson had applied the factors to the cell

culture media market, as he should have, Janssen would not meet the *Panduit* test and would not be entitled to lost profits at all, and certainly could not craft a claim for ▮▮▮▮▮▮▮ damages. Dr. Nicholson's application of the *Panduit* factors simply cannot be squared with the law or language of *Panduit*. It must be excluded. *See AAMP of Fl.*, 2015 WL 12843845 at *9 (expert's opinions which are "based on an incorrect legal standard" are excluded because "those opinions are irrelevant, unreliable, and would mislead the jury.").

### D.    Dr. Nicholson Fails to Apportion His Reasonable Royalty Damages

Dr. Nicholson's failure to apportion also warrants exclusion of his alternative reasonable-royalty opinion. "[I]t is generally required that [reasonable] royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit'"—here, cell culture media. *LaserDynamics*, 694 F.3d at 67. Just as with a lost profits analysis, a patentee cannot go beyond that footprint unless "the demand for the entire product is attributable to the patented feature." *Id.* at 67-68.

Dr. Nicholson did not base his so-called reasonable royalty on the smallest salable patent-practicing unit (again, cell culture media). He didn't even determine the volume or dollar amount of those sales. Instead, he based his reasonable royalty of ▮▮▮▮▮▮▮ on the assumption Defendants would have paid 100 percent of their U.S. *Inflectra®* profit for the alleged one-year delay required to design around the '083 patent. Ex. 5, Report at 48-49; Ex. 1, Nicholson Dep. Tr. at 85:18-25.

But, as discussed above, the cell culture media does not drive demand for Inflectra® and, thus, the entire market value rule is inapplicable. *See supra* at IV.B.1. It is also undisputed that there are a number of inputs necessary to make infliximab other than cell media, such as the cell line, bioreactors, facilities, and machinery, and each has value. Yet, Dr. Nicholson made no attempt to separate these inputs and assign a value to the cell media, instead equating the entire market

value of Inflectra® with the '083 patent. Indeed, ███████████████████████████

████████████████████████████████████████████████████████████████ Ex. 14,

HOS0044877 at 879; Ex. 3, Leonard Report at Appx. 4.

Dr. Nicholson should have isolated the value attributable to the '083 patented media compositions, not sought the value of infliximab as a whole. His failure to do so is legally improper and requires that his reasonable royalty opinions be excluded. *See Commonwealth Sci.*, 809 F.3d at 1301 ("to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features"); *VirnetX*, 767 F.3d at 1328 ("only theories comporting with settled principles of apportionment [are] allowed to reach the jury"); see also *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311-12 (Fed. Cir. 2018) (vacating portion of reasonable royalty opinion which failed to apportion); *LaserDynamics*, 694 F.3d at 66 (affirming grant of new trial on damages due to expert's failure to apportion).

## V.   CONCLUSION

Dr. Nicholson's damages methodologies are legally improper and must be excluded from trial.

Dated: May 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/ *Andrea L. Martin, Esq.*
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.

21

Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare
Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed through the electronic filing system and served electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Andrea L. Martin*