IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JANSSEN BIOTECH, INC.                          )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )
                                               )    Civil Action No. 1:17-cv-11008-MLW
CELLTRION HEALTHCARE CO., LTD.,                )
CELLTRION, INC., and                           )
HOSPIRA, INC.,                                 )
                    Defendants.                )
_____           )


**PLAINTIFFS' MOTION TO EXCLUDE REBECCA BETENSKY, Ph.D.**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................. 2

III.  ARGUMENT .................................................................................................................. 5

    A.    With No Dispute About Substantiality, Dr. Butler and Dr. Lavin Will Not Testify About Statistics, Rendering That Subject Irrelevant .................................................................. 5

    B.    With No Testimony from Dr. Butler and Dr. Lavin to Respond to, Dr. Betensky's Testimony Should Be Excluded Under Rule 702 ......................................................... 6

    C.    Dr. Betensky's Testimony Should Also Be Excluded Under Rule 403 .......................... 7

IV.   CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*,
144 F.3d 35 (1st Cir. 1998) ........................................................................................................8

*Lund v. Henderson*,
807 F.3d 6 (1st Cir. 2015) ..........................................................................................................7

*Pinkham v. Burgess*,
933 F.2d 1066 (1st Cir. 1991) ....................................................................................................9

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008) ...........................................................................................6, 7

*Turner v. Allstate Ins. Co.*,
902 F.2d 1208 (6th Cir. 1990) ...................................................................................................8

*United States v. George*,
761 F.3d 42 (1st Cir. 2014) ........................................................................................................8

**Other Authorities**

Federal Rule of Civil Procedure 26(a)(2)(B)(i) ...........................................................................10

Federal Rule of Evidence 403 ................................................................................................5, 7

Federal Rule of Evidence 401 .....................................................................................................7

Federal Rule of Evidence 702 ................................................................................................6, 7

## I.      INTRODUCTION

In his opening report, Janssen's infringement expert Dr. Michael Butler opined that experiments conducted by Dr. Florian Wurm confirmed that the literal differences between the accused cell culture media and the claims of the '083 patent are insubstantial.  Dr. Butler also included a brief statistical analysis that he indicated was a "backup" to his primary assessment of Dr. Wurm's data.  In response to this portion of Dr. Butler's report, Defendants submitted a report from a statistician, Dr. Rebecca Betensky, regarding the statistical analysis done by Dr. Butler.  Janssen subsequently submitted a reply report from another statistician, Dr. Philip Lavin. Both statistical experts (Dr. Betensky and Dr. Lavin) agree that they are not persons of skill in the art of cell culture media, and that as a result they are not qualified to assess whether the statistical analysis means there are or are not substantial differences between the accused cell culture media and the claims of the '083 patent.  That is a question, they both agree, for those of skill in the art, such as Dr. Butler and Defendants' technical expert, Dr. Michael Glacken.

As is the Court is aware, Defendants have now conceded that Dr. Glacken will ***not*** opine that the differences between the '083 patent and the accused media are substantial.  In particular, Dr. Glacken has not opined (and will not opine) that the results of Dr. Wurm's experiments demonstrate the existence of any substantial differences.  Nor does he have any opinion that Dr. Butler's statistics show substantial differences.  Instead, Dr. Glacken's sole opinion on Dr. Wurm's experiments and Dr. Butler's opinions based on them is that they are methodologically flawed.  In light of Dr. Glacken's opinions, it will not be necessary for Dr. Butler to testify about his statistical "backup" to his primary assessment of Dr. Wurm's results.  Accordingly, Janssen does not propose to elicit such testimony from Dr. Butler and it does not plan to call Dr. Lavin as a witness.

With no statistical testimony from Dr. Butler at trial, testimony of non-biologists regarding his statistical analysis is irrelevant and would serve only to confuse the jury and waste time. Unless Janssen opens the door regarding statistical analysis of the differences (which it does not intend to do), Defendants should not be permitted to call Dr. Betensky to testify or to question witnesses about statistical analysis.

## II.   BACKGROUND

In his opening expert report on infringement, Dr. Butler included a four-paragraph section on statistical analysis that he used "as a backup." Butler Infringement Report (Ex. A) ¶¶ 126–29. The statistical analysis served to "confirm" Dr. Butler's prior opinions that the data showed no substantial differences between the Celltrion media and the relevant variants. *Id.* Dr. Butler explicitly noted that regardless of the statistical analysis, "[i]n any event . . . the magnitude of the differences are such that I do not consider them substantial." *Id.* ¶ 129. Dr. Butler's report did not rely on the statistical analysis for his conclusion that the Celltrion media infringe the '083 patent.

In response to Dr. Butler's report, Defendants submitted a rebuttal report from Dr. Betensky disputing the validity of Dr. Butler's statistical analysis. While Dr. Betensky criticized Dr. Butler's statistical analysis, she did not conduct her own analysis. Nor did she purport to have an independent opinion on the substantiality of the differences. *See* Betensky Rebuttal Report (Ex. B) ¶ 71 (concluding only that Dr. Butler's statistical analysis did not support Janssen's allegations regarding statistical proof and that there are some statistically significant differences). At her deposition, Dr. Betensky testified that "experts in the field" are those who are "best able to make a determination whether or not a particular . . . difference is meaningful." Betensky Dep.

Tr. (Ex. C) at 95:13–22.  And she agreed that "statistically significant differences in performance" are not automatic "defen[ses] against the doctrine of equivalents."  *Id*. at 94:16–24.

Dr. Lavin's reply, submitted by Janssen, opines that the statistical tests performed by Dr. Butler as a backup to his analysis are reliable.  Like Dr. Betensky, Dr. Lavin does not take a position on the ultimate question of whether the '083 patent and the Celltrion media are equivalent under the doctrine of equivalents.  *See* Lavin Reply Report (Ex. D) ¶ 46–48; *see also* Lavin Dep. Tr. (Ex. E) at 22:24–23:3 ("Q. Okay. Is it your opinion, are you providing an opinion that the variants are equivalent to either CGM or CPM?  A. That's a conclusion that's beyond my scope.") (objection omitted).

The scope of the dispute between Drs. Butler and Lavin and Dr. Betensky is therefore highly limited.  Dr. Butler initially identified four statistically significant differences out of 132 relevant comparisons.  Butler Infringement Report ¶ 128.  Dr. Betensky criticized his methods but did not "did not do any data analysis," Betensky Dep. Tr. at 37:10, or identify any relevant significant differences other than those identified by Dr. Butler.  *See* Betensky Report App'x 1; Betensky Dep. Tr. 53:12–55:9 (explaining that she identified two differences each for CGM and CPM).[1]  This small number of statistically significant differences is meaningless.  As Dr. Betensky notes in her report, at the relevant threshold for p-value, one would expect a "5% false positive error . . . i.e. the probability of declaring a significant difference when there truly is no difference is 5% or 5 out of 100."  Betensky Report ¶ 28.  The number of statistically significant differences falls comfortably in the zone of false positives.  Dr. Lavin supported Dr. Butler's

---

[1] Dr. Betensky's report lists 82 statistically significant differences, but the vast majority are either comparisons between the negative controls and the tested media, where differences would be expected, or between the variants compared to one another, which are irrelevant to infringement.  *See* Lavin Report ¶ 31.

initial analysis and performed some additional tests as well, which Dr. Betensky testified that "at

the high level" she "agree[d] with . . . minus some details." Betensky Dep. Tr. 122:20−21; *see*

*also id.* at 115:13−16. Dr. Lavin's statistically significant results were also "far fewer than

chance alone would have suggested." Lavin Dep. Tr. at 25:12−15.

Recently, Defendants' noninfringement expert Dr. Glacken confirmed that he had offered

no opinion that the differences between the accused media and the '083 patent are substantial, and

Defendants have confirmed that they will not attempt to present any such opinion at trial. 1/31/18

H'g Tr. at 70:16−18. Indeed, Dr. Glacken testified at his deposition not only that he omitted to

identify any substantial differences based on Dr. Wurm's test results, but that he didn't think it

was "worth the time to talk about the results" of Dr. Wurm's experiments at all:

> Q. Okay. Again, in your report, ***you didn't express an opinion that
> Dr. Wurm's results revealed any substantial difference*** in
> performance in terms of cell growth and antibody production
> comparing the Celltrion media to the respective variance he created?
>
> A. No. In my -- in my expert report, ***I spent all my time explaining
> why I thought the experiment was not -- not valid and not, you
> know -- wasn't worth the time to talk about the results***. But again,
> I do believe I did reference Dr. Butler who actually despite the
> flawed experiment did find statistically significant differences.
>
> Q. But ***you didn't express the opinion in your reports that the
> statistically significant results that Dr. Butler saw were substantial
> differences*** under the insubstantial differences test, right?
>
> A. Again, you know, so, so we can move on, but ***I'm always going
> to place my answers in context is that no, I didn't give that opinion***,
> but neither did I feel I needed to give that opinion because the burden
> of proof is on the plaintiffs. As I mentioned the -- Dr. Wurm's
> experiment was -- was not valid for the purposes of -- of proving
> infringement and I could stop there. ***I didn't need to go looking into
> the results,*** but again, you know, I think it should always be noted
> even though I wasn't looking for statistically significant results, Dr.
> Butler did find some.

Glacken Tr. (Ex. F) at 187:17−189:23 (emphasis added and objections omitted).

4

Given that there will not be a dispute about Dr. Butler's primary analysis regarding the substantiality of the differences, there is no point in complicating matters by addressing the statistical tests.  It does not make any sense for the jury to hear complex statistical disputes between two experts—disputes that in the end are about nothing at all since both experts agree that they should not be the ones to opine on the ultimate issue of equivalence and that the few differences they identified could all be false positives.  Testimony on statistical analysis, which Dr. Butler did only as a "backup" and about which he will not testify at trial, would be confusing and wasteful of the jury's time.  To the extent it has some minimal relevance, its probative value would be outweighed by the "danger of . . . confusing the issues, misleading the jury" or "wasting time."  Fed. R. Evid. 403.

## III.    ARGUMENT

### A.    With No Dispute About Substantiality, Dr. Butler and Dr. Lavin Will Not Testify About Statistics, Rendering That Subject Irrelevant

As noted, Defendants have now conceded that Dr. Michael Glacken, their infringement expert, will not present an opinion that the differences between the '083 patent and the Celltrion media are substantial.  1/31/18 H'g Tr. at 70:16–18.  Indeed, Dr. Glacken did not think it was "worth the time to talk about the results" of Dr. Wurm's experiments at all.  Defendants' concession that Dr. Glacken will not testify that Dr. Wurm's results show substantial differences obviates the need for Janssen to rely on Dr. Butler's backup statistical analysis. Dr. Butler's primary analysis of Dr. Wurm's results is effectively uncontested and requires no backup.  Accordingly, Janssen does not intend to have Dr. Butler testify about his statistical analysis at trial.  Likewise, it will not present Dr. Lavin to testify about his statistical analysis.

The only possible relevance of the testimony of Dr. Betensky would have been to rebut Dr. Butler's statistical analysis.  By her own admission, Dr. Betensky presents no independent

analysis that the differences between the '083 patent and the Celltrion media are substantial.
Betensky Dep. Tr. at 37:10.  She agreed that it is outside her expertise to make the ultimate
conclusion as to whether the differences are substantial or not.  The conclusion of her expert
report is only that Dr. Butler's analysis did not support his statistical conclusions and that there
are a few statistically significant differences, all in the zone of false positives.  Betensky Rebuttal
Report ¶ 71.  At her deposition she testified that "experts in the field" are those who are "best able
to make a determination whether or not a particular . . . difference is meaningful."  Betensky Dep.
Tr. at 95:13–22.  And she did not conclude that "statistically significant differences in
performance" are necessarily a "defen[se] against the doctrine of equivalents."  *Id*. at 94:16–24.
With no statistical testimony from Dr. Butler to rebut, Dr. Betensky's testimony has no remaining
relevance.

### B.      With No Testimony from Dr. Butler or Dr. Lavin to Respond to, Dr. Betensky's Testimony Should Be Excluded Under Rule 702

Standing on its own, Dr. Betensky's testimony is inadmissible under Rule 702.  By her
own admission, Dr. Betensky, a professor of statistics, is not a person of ordinary skill in the art
of cell culture media development. *See* Betensky Dep. Tr. at 65:2–8.  As a result, controlling
Federal Circuit laws holds that Rule 702 bars her from testifying on "issues of noninfringement."
*Sundance, Inc. v. DeMonte Fabricating Ltd*., 550 F.3d 1356, 1362 (Fed. Cir. 2008).  As the court
explained in *Sundance*:

> *[I]t is an abuse of discretion to permit a witness to testify as an
> expert on the issues of noninfringement or invalidity unless that
> witness is qualified as an expert in the pertinent art.* Testimony
> proffered by a witness lacking the relevant technical expertise fails
> the standard of admissibility under Fed. R. Evid. 702. Indeed, where
> an issue calls for consideration of evidence from the perspective of
> one of ordinary skill in the art, it is contradictory to Rule 702 to
> allow a witness to testify on the issue who is not qualified as a
> technical expert in that art.

*Id.* at 1363 (emphasis added).

If there were a dispute as to whether Dr. Wurm's results established substantial differences and Dr. Butler relied on his statistical analysis or Dr. Lavin's at trial to support his opinion, then it might be appropriate under Rule 702 for Dr. Betensky to address Dr. Butler's statistics. But since Dr. Butler is not going to rely on his statistical analysis at trial and Dr. Lavin is not going to testify, any testimony by Dr. Betensky would simply be in support of Defendants' noninfringement case. That is precisely what *Sundance* holds an expert who is not a person of skill in the art in the relevant field cannot do. Rule 702 dictates that Dr. Betensky should be precluded from testifying unless Dr. Butler opens the door by testifying on direct examination about his statistical analysis.

### C.     Dr. Betensky's Testimony Should Also Be Excluded Under Rule 403

In addition to Rule 702, Federal Rule of Evidence 403 would bar Dr. Betensky's testimony. Rule 403 provides that evidence that meets the minimal relevance requirements of Federal Rule of Evidence 401 may nevertheless be excluded if its probative value would be outweighed by the potential for confusing the issues, misleading the jury or wasting time at trial. Fed. R. Evid. 403. The determination of whether to admit or exclude evidence pursuant to Rule 403 is a matter of "wide discretion" for the District Court. *Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) (internal quotation marks omitted). Here, permitting Dr. Betensky—and therefore Dr. Lavin—to testify about Dr. Butler's statistical analysis would lead to jury confusion and wasted time that greatly outweighs any marginal relevance that their testimony may have.

Allowing Dr. Betensky to testify would result in "a mini-trial about a side issue" with the serious potential to "confuse[] the jury." *United States v. George*, 761 F.3d 42, 57 (1st Cir. 2014);

7

*see also CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 45 (1st Cir. 1998) (affirming exclusion of evidence regarding prior actions as it would "result in jury confusion" and "wasted time").  This is particularly true since the use of statistical evidence here is of, at best, marginal probative value.  *See Turner v. Allstate Ins. Co.*, 902 F.2d 1208, 1213 (6th Cir. 1990) (upholding exclusion of statistics where there was "limited probative value" outweighed by "the likelihood that the statistics would confuse the jury").  Moreover, the scope of the dispute is tightly circumscribed.  When discounting the irrelevant statistically significant differences between individual variants or differences between variants and the negative controls, Dr. Betensky's analysis reveals only the same four differences as Dr. Butler's.  And by her own admission she conducted no independent statistical analysis. *See* Betensky Dep. Tr. at 34:1–8, 37:10, 41:8–10, 93:4.  This further limits any possible probative value that hearing the testimony might provide and weighs against allowing Dr. Betensky to testify.

The likelihood of confusion would be compounded by the semantic similarity between substantial differences and statistically significant differences.  In ordinary speech, "substantial" and "significant" are often used as synonyms.  But as used at trial, they would be technical terms that both parties agree are completely distinct.  Dr. Glacken has conceded that a statistically significant difference is not necessarily substantial.  Glacken Tr. 189:7–15 ("Q. But you didn't express the opinion in your reports that the statistically significant results that Dr. Butler saw were substantial differences under the insubstantial differences test, right? . . .  [N]o, I didn't give that opinion.").  The relevant question at trial is whether the literal differences between the accused media and the '083 patent are insubstantial.  Introducing the irrelevant question as to whether any of the experimental results are statistically significant would be hopelessly confusing.

Furthermore, allowing Dr. Betensky to testify would lead to a great deal of wasted time. Although irrelevant, Dr. Betensky's response to Dr. Butler's statistical analysis is complicated and would take hours of trial time to cover.  If Dr. Betensky were permitted to testify, moreover, Janssen would need to call Dr. Lavin to respond to her testimony.  Dr. Lavin's testimony would be no more relevant to infringement than Dr. Betensky's.  Like Dr. Betesnky, Dr. Lavin did not draw any ultimate conclusions as to infringement.  *See* Lavin Reply Report ¶ 46–48.  Also like Dr. Betensky, he testified that it was "beyond [his] scope" to opine on whether Dr. Wurm's tested variants "are equivalent to either CGM or CPM." Lavin Dep. Tr. 22:24–23:3.  Nevertheless, Dr. Lavin's analysis is even lengthier and more involved than Dr. Betensky's, as he, unlike Dr. Betensky, conducted his own statistical analysis of Dr. Butler's results.  The end result would be multiple trial days devoted to testimony on a highly technical subject that has nothing to do with the dispositive questions at trial.

In sum, the proposed testimony of Dr. Betensky is of, at the very best, "questionable relevance," as she does not opine on the ultimate issue which the statistical experts agree is beyond their purview, and of "limited probative value," as Dr. Butler only presented statistical analysis as a short "backup" to his already-substantiated conclusions.  It should be excluded.  *See Pinkham v. Burgess*, 933 F.2d 1066, 1071 (1st Cir. 1991) ("'When evidence with great potential to confuse is of questionable relevance, limited probative value, or both, courts will usually exclude it.'") (quoting 10 *Moore's Federal Practice* § 403.12 at IV-82 (1988)).

Finally, Defendants will also suffer no prejudice from the exclusion of Dr. Betensky.  If this motion is granted, Janssen will not rely on the statistical analysis performed by Dr. Butler or call Dr. Lavin.  Thus, there will be nothing for Dr. Betensky to rebut at trial.  She disclaimed any intent to conclude that the '083 patent and accused media are substantially different as a matter of

the doctrine of equivalents and she cannot alter her opinion on that issue at this stage.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (expert witness reports must provide a "complete statement of all opinions the witness will express").

IV.   **CONCLUSION**

For the foregoing reasons, the Court should grant Janssen's motion to exclude the testimony of Dr. Betensky.

Respectfully Submitted,

Dated: May 4, 2018


*Of Counsel*
Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
PATTERSON BELKNAP WEBB & TYLER
LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000

  */s/ Alison C. Casey*
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
Alison C. Casey (BBO #688253)
acasey@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

## LOCAL RULE 7.1 CERTIFICATION

I, Alison C. Casey, certify that plaintiff's counsel conferred with defendants' counsel on the subject of this motion and attempted in good faith to resolve or narrow the issue raised in this motion.  No agreement has been reached.  Defendants have asserted that they will oppose this motion.

/s/ Alison C. Casey

## CERTIFICATE OF SERVICE

I certify that on May 4, 2018 this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.

/s/ Alison C. Casey

3852479.1