# JANSSEN EXHIBIT 1

```
 1                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS
 2

 3                                  )
     JANSSEN BIOTECH, INC.,         )
 4   and NEW YORK UNIVERSITY,       )
                                    )
 5          Plaintiffs,             )
                                    )    Civil Action
 6   v.                             )    No. 15-CV-10698-MLW
                                    )
 7   CELLTRION HEALTHCARE CO.,      )
     LTD, CELLTRION, INC., and      )
 8   HOSPIRA, INC.,                 )
                                    )
 9          Defendants.             )
                                    )
10

11

12            BEFORE THE HONORABLE MARK L. WOLF
                 UNITED STATES DISTRICT JUDGE
13

14                     MOTION HEARING

15
                      August 17, 2016
16                      1:05 p.m.

17

18        John J. Moakley United States Courthouse
                  Courtroom No. 10
19                One Courthouse Way
               Boston, Massachusetts  02210
20

21

22
                 Kelly Mortellite, RMR, CRR
23                Official Court Reporter
           John J. Moakley United States Courthouse
24            One Courthouse Way, Room 5200
               Boston, Massachusetts  02210
25                mortellite@gmail.com
```

1  defined, because that wouldn't even make any sense.  Nothing

2  like that existed in 2004, and nothing like that exists today.

3      THE COURT:  Are there other points that Mr. Hurst made

4  that you'd like to address?

5      MS. ROYZMAN:  Mr. Hurst made a number of statements

6  about present invention, and I will just address those very

7  quickly.  And he also pointed Your Honor to a whole footnote of

8  present invention case law, and all of those cases are in

9  opposite.  And let me just explain why.

04:35 10     So slide 54, please.  So Mr. Hurst focused you on two

11  present invention statements or two invention statements.  And

12  they're in our slide 54.  I had referred you to them as well.

13  And these are not statements that even say the present

14  invention is a chemically defined media because that just

15  wouldn't be true.  They talk about that it relates to

16  chemically defined media compositions.  It provides

17  compositions, and then you can use those 61 ingredients with

18  other chemically defined ingredients or undefined ingredients.

19  And over and over in the patent -- could I have slide 55,

04:36 20  please -- talks about the invention being a cell culture media.

21  The invention also --

22      THE COURT:  I'm sorry.  This is 55?

23      MS. ROYZMAN:  Yes.  And this is four of the

24  statements.  There are seven such statements.  I believe

25  they're all cited in our answer answering brief, along with the

1   relevant case law.

2          But the point is that over and over we say -- and now

3   in connection with cell culture media, that the invention is

4   just the cell culture media, soluble composition for making a

5   cell culture media.  And of course it makes sense that we say

6   that because we disclose and we claim chemically undefined

7   embodiments, that constructions being advocated by Mr. Hurst

8   are contrary to established claim construction principles.

9          THE COURT:  I guess at the moment -- it's possible I'm

04:37 10  wrong.  I'm due to be.  I come back to it.  I'm being asked to

11  define "cell culture media."

12         MS. ROYZMAN:  Yes.

13         THE COURT:  If there's something that requires the

14  invention to be chemically defined, in my present conception

15  it's not that term.  It's something else, like, it has to

16  comprise these ingredients, and, you know, if a jury at some

17  point in these proportions were persuaded that if you throw soy

18  in there, it will affect the concentrations of the other

19  things, as Mr. Hurst was arguing, based on -- as Mr. Hurst

04:38 20  arguing, maybe there will a problem with the invention.  But I

21  think my task right now is more limited to just, what does

22  "cell culture media" mean?  That's all I was asked to do.

23  That's what I'm prepared to do.

24         MS. ROYZMAN:  No.  Your Honor, we completely agree.

25  It's just that defendants are arguing that "cell culture media"

1  has this definition and that these present invention statements

2  somehow demand that.  Could I have the next slide?  The law is

3  just to the contrary.

4        THE COURT:  What's the next slide?

5        MS. ROYZMAN:  56.  It's slide 56, Your Honor.  It's

6  the *Absolute Software* case.  And I don't actually think there

7  are any invention statements in Mr. Hurst's favor.  But even if

8  there were, unless the statements are uniform and unless

9  there's no intrinsic evidence to the contrary, those statements

04:39 10  are not limiting.  That's just simply the law and their

11  statements, statement after statement, that just say this

12  invention is a composition for making a cell culture media.

13  That's the law.  And Mr. Hurst ignores each one of those

14  statements.

15        THE COURT:  All right.  It's 20 of 5:00.  I'm going to

16  hold you hostage here for a while because I may be able to

17  decide this this afternoon, and then I'll let you know what

18  time to come back tomorrow.  Court is in recess is.

19        (Recess taken 4:39 p.m. to 5:14 p.m.)

05:13 20        THE COURT:  Once again, I'm going to decide this

21  matter orally and construe the term "cell culture media" as

22  used in Claim 1 particularly of the '083 patent.  I'm doing

23  this because there's urgency to having the matter decided in

24  view of the relatively new regime for litigating issues

25  concerning biosimilar drugs.  I'm doing it because I'm immersed

1   in the issue.  The transcript, again, will be a record of the

2   decision.  I may convert it into a more formal memorandum and

3   order.

4           In addition, as the parties recognize, a *Markman*

5   construction of a claim can evolve or change in the course of a

6   case.  The parties have each asked me to do this claim

7   construction before we get to summary judgment, if summary

8   judgment is ever appropriate.  I'm trying to be of service.

9   But it's conceivable, as more work is done, the claim

05:15 10   construction could evolve or change.  I don't anticipate that

11   now, however.

12           I have studied this deeply based on the submissions.

13   I construe the term "cell culture media" as used in Claim 1 in

14   patent number 7,598,083, the '083 patent, to mean nutritive

15   media for culturing cells.  This is the construction advocated

16   by the plaintiffs, Janssen Biotech and New York University.  It

17   is, I find, the plain meaning of the term for people skilled in

18   the art.  In reaching this conclusion, I've applied the

19   standards for claim construction in the relevant cases that

05:16 20   include but are by no means limited to *Phillips*, 415 F.3d 1303

21   at 1312 to 19, *Renishaw*, 158 F.3d 1243 at 1248 to 50, *Comark*,

22   156 F.3d 1182 at 1186 to 87, *Thorner*, 669 F.3d 1362 to 67.  All

23   of those are Federal Circuit cases.  I've also considered the

24   key cases cited today, particularly in the arguments.  In

25   addition, I've taken the approach I described through *Markman*

1    in *Biogen v. Berlex*, 113 F. Supp. 2d, 77 at 95 to 96.

2         Claim 1 of the '083 patent is "a soluble composition

3    suitable for producing a final volume of cell culture media

4    wherein the composition comprises the following components in

5    the following amounts per liter of the final volume of cell

6    culture media."  This sentence is followed by a list of 61

7    chemicals in certain defined concentration ranges for each.

8         The plaintiffs and defendants propose constructions of

9    the term "cell culture media" in their opening briefs as

05:18 10   follows:

11         Janssen asserts that "cell culture media" has its

12    plain and ordinary meaning to those skilled in the art; that

13    is, a nutritive media for culturing cells.  Until its reply

14    brief at least, the defendant asserted that "cell culture

15    media" means chemically defined media, i.e. media compositions

16    containing only known chemical compounds and are free of all

17    proteins, even those not of animal origin, such as recombinant

18    proteins, optimized for biopharmaceutical use.

19         In their reply brief, which is an utterly

05:19 20   inappropriate time for a party to add a new argument or change

21    its argument and which the jurisprudence indicates is a basis

22    for disregarding the argument, the defendants asserted that

23    "cell culture media" should be construed to mean nutritive

24    media free of all proteins for culturing eukaryotic cells.

25    This is a proposed construction that was not in the prehearing

1   statements required by our local rules and my orders.

2       In essence, the defendants argue that "cell culture

3   media" should be construed to, one, exclude media containing

4   any proteins like defendants' media; and two, include only

5   media that are optimized for biopharmaceutical production.

6   That's the assertion in the defendants' opening brief at page

7   15.  In particular, they argue that the specification indicates

8   that "cell culture media" must be construed to mean chemically

9   defined media and that the specification of the '083 expressly

05:20 10   defines "chemically defined" as media composition containing

11   only known chemical compounds and are free of all protein, even

12   those not of animal origin, such as recombinant proteins,

13   language that comes from column 1, lines 46 to 49 of the

14   Background of Invention in the specification.

15       In the alternative, defendants argue that the term

16   should be construed of being free of all proteins, regardless

17   of whether the media must also be chemically defined.

18   Plaintiffs argue that no construction is necessary because the

19   meaning of "cell culture media" is obvious and universally

05:21 20   understood.  In the alternative, they argue that it should be

21   construed according to the plain and ordinary meaning, which is

22   nutritive media for culturing cells.  As indicated earlier, I

23   find that the plaintiffs' proposed construction is correct.

24       With regard to the standard and process for construing

25   the term "cell culture media," I've done the following:

1

2                    CERTIFICATE OF OFFICIAL REPORTER

3

4           I, Kelly Mortellite, Registered Merit Reporter

5    and Certified Realtime Reporter, in and for the United States

6    District Court for the District of Massachusetts, do hereby

7    certify that pursuant to Section 753, Title 28, United States

8    Code that the foregoing is a true and correct transcript of the

9    stenographically reported proceedings held in the

10   above-entitled matter and that the transcript page format is in

11   conformance with the regulations of the Judicial Conference of

12   the United States.

13              Dated this 24th day of August, 2016.

14

15              /s/ Kelly Mortellite

16              _____

17              Kelly Mortellite, RMR, CRR

18              Official Court Reporter

19

10:33 20

21

22

23

24

25