# JANSSEN EXHIBIT 13

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC., <br><br> Defendants. | Civil Action No. 1:17-cv-11008-MLW |

### DECLARATION OF JOHN RUESCH IN SUPPORT OF NON-PARTY BIOGEN, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL BIOGEN TO COMPLY WITH SUBPOENAS

I, JOHN RUESCH, hereby declare as follows:

1. I submit this declaration in support of non-party Biogen, Inc.'s Opposition to Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.'s (the "Defendants") Motion to Compel Biogen, Inc. to Comply with Subpoenas in the lawsuit captioned above. My declaration is based on my experience, my personal knowledge as an employee of Biogen MA, Inc., and on information that I have obtained to prepare this declaration. If called to testify as to the facts stated in this declaration, I could and would testify competently thereto.

2. I am over the age of eighteen (18). I reside in Lexington, Massachusetts.

3. I am the Vice President of Technical Development at Biogen MA, Inc. Biogen MA, Inc. is a subsidiary of Biogen, Inc. I refer to Biogen MA, Inc. and Biogen, Inc. collectively herein as "Biogen."

4. I am experienced in the development of biologic products, including the development of products and processes intended to maximize cell cultures' expression of certain

molecules. In my experience, the ability to effectively cause the expression of a certain desired molecule through the use of such products and processes depends on many factors, including, for example, the cell line, the cell culture basal medium, the cell culture feed media, culture duration, temperature, pH, dissolved Oxygen, process operating conditions (*e.g.*, aeration strategy, $CO_2$ removal, and cell shear), and a host of other environmental conditions.

5. As part of Biogen's efforts to maximize the expression of certain desired molecules using certain of its proprietary cell lines, Biogen has created proprietary cell culture basal and feed media.

6. I am aware that proprietary cell culture basal and feed media developed by Biogen are presently used by Samsung Bioepis Co., Ltd. ("Bioepis") – which I understand to be a joint venture between Biogen and Samsung BioLogics – to make the active ingredient (infliximab) used in Renflexis®, a biosimilar product sold by Bioepis. I will refer to these cell media herein as the "Biogen Media."

7. The Biogen Media are unique formulations different from any other cell culture media I am aware of, including other proprietary media developed by Biogen, other companies, or academic institutions, and media that are made commercially available to the public.

8. I understand, based on the information presently available to me, that Biogen developed the Biogen Media through extensive experimentation and the expenditure of much effort and financial resources. Biogen's development of the Biogen Media was an iterative process that took place continually over the course of many years before Biogen arrived at the proprietary formulation of the Biogen Media.

9. Biogen has not made, and does not presently make, the Biogen Media available for sale to the public. Biogen has not supplied, and does not presently supply, any third-party with the Biogen Media for purposes of resale to the public.

10. While the Biogen Media is used to make Bioepis' infliximab product, I understand that Bioepis is obligated to maintain confidentiality of the compositions and formulations of the Biogen Media. I also understand that Bioepis is prohibited from undertaking any efforts to reverse-engineer or otherwise test the Biogen Media to discover their compositions or formulations.

11. Biogen treats information regarding the Biogen Media, including information sufficient to determine the Biogen Media's compositions or formulations, as strictly confidential. Biogen has taken steps to ensure the confidentiality of this information and to prevent its disclosure to third-parties.

12. Those steps include, for example, restricting the number of Biogen personnel whom are permitted to access information regarding the Biogen Media's compositions and formulations. Aside from Biogen's counsel (whom I understand may be granted access to such information as necessary to represent Biogen), I am presently aware of no more than six (6) Biogen employees who have full access to the information sufficient to determine the Biogen Media's compositions and formulations.

13. Biogen has also taken steps to limit the distribution and volume of hardcopy and electronic materials containing information sufficient to determine the Biogen Media's compositions and formulations. I understand, for example, that such materials are marked as "confidential" or that the sensitive nature of the information is otherwise communicated. In addition, hardcopy and electronic documents containing information sufficient to determine the

Biogen Media's compositions and formulations cannot, to the best of my present knowledge, be accessed using physical or electronic (*e.g.*, network drives/folders) document repositories generally available to Biogen personnel. Biogen restricts access to such materials to the small number of Biogen personnel who must know about the Biogen Media's compositions and formulations to perform their job functions.

14. Biogen purchases certain of the raw materials it uses to make the Biogen Media from third parties. Biogen has taken care to divide its material purchasing among various vendors in an effort to ensure that none of them can independently determine the composition of the Biogen Media.

15. I understand, based on the information presently available to me, that Bioepis and Biogen directly compete with Defendants, as well as plaintiff Janssen Biotech, Inc., in the marketplace for biologic therapies.

16. I understand, based on the information presently available to me, that the proprietary materials and processes Biogen uses to produce biologic products – including, in substantial part, the Biogen Media – result in exceptionally high productivity and yield. This, in turn, results in Biogen's costs being lower relative to its competitors, affording it a material competitive advantage in the marketplace. Were the proprietary compositions and formulations of the Biogen Media made available to Biogen's competitors, that advantage would rapidly and irreparably erode.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and understanding. Executed this __12__ day of January, 2018.

_____
JOHN RUESCH

Case 1:17-cv-11008-MLW Document 264 Filed 05/16/18 Page 56 of 67

## CERTIFICATE OF SERVICE

       I, Joshua S. Barlow, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 16th day of January 2018.

                                    */s/ Joshua S. Barlow*
                                      Joshua S. Barlow