IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JANSSEN BIOTECH, INC.                            )
                                                 )
                          Plaintiff,             )
                                                 )
              v.                                 )
                                                 )    Civil Action No. 1:17-cv-11008-MLW
CELLTRION HEALTHCARE CO., LTD.,                  )
CELLTRION, INC., and                             )
HOSPIRA, INC.,                                   )
                          Defendants.            )
_____         )


**JANSSEN'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE*
NUMBERS 4 – 7 REGARDING INFRINGEMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ii

Janssen's MIL No. 4: To Exclude Evidence or Argument on Public Notice ................................. 4

Janssen's MIL No. 5: To Exclude Evidence or Argument on Vitiation........................................ 9

Janssen's MIL No. 6: To Exclude Evidence or Argument that the '083 Patent has a Narrow
Range of Equivalents ............................................................................................. 11

Janssen's MIL No. 7:  To Exclude Hypothetical Questioning Regarding the Scope of the
Doctrine of Equivalents ......................................................................................... 155

CONCLUSION.................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs v. Dey, LP*,
   287 F.3d 1097 (Fed. Cir. 2002)..............................................................................13

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009)..............................................................................7

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002)................................................................................................6

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
   339 U.S. 605 (1950) (Black, J. dissenting) ............................................................6

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
   370 F.3d 1131 (Fed. Cir. 2004)..............................................................................14

*Innovention Toys, LLC v. MGA Entm't, Inc.*,
   637 F.3d 1314 (Fed. Cir. 2011)..........................................................................7, 15

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
   274 F.3d 1371 (Fed. Cir. 2001)..............................................................................13

*Jang v. Boston Sci. Corp.*,
   872 F.3d 1275 (Fed. Cir. 2017)........................................................................11, 13

*Kenney v. Head*,
   670 F.3d 354 (1st Cir. 2012)...................................................................................8

*Larue v. Nat'l Union Elec. Corp.*,
   571 F.2d 51 (1st Cir. 1978).....................................................................................16

*Pelletier v. Main St. Textiles, LP*,
   470 F.3d 48 (1st Cir. 2006).....................................................................................16

*SSL Servs., LLC v. Citrix Sys.*,
   940 F. Supp. 2d 480 (E.D. Tex. 2013)....................................................................12

*Toucet v. Maritime Overseas Corp.*,
   991 F.2d 5 (1st Cir. 1993).......................................................................................16

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997) ...................................................................................................6, 7, 11, 13

*Winans v. Denmead*,
  56 U.S. 330 (1854) ...................................................................................................7

**Other Authorities**

Federal Rule of Evidence 702 ...................................................................................................1

Federal Rule of Evidence 403 ...................................................................................................8

iii

As the Court is aware, Defendants' non-infringement expert Dr. Glacken has offered no opinion that the differences between the accused Celltrion Media and the claims of the '083 patent are substantial, and Defendants' counsel have confirmed that they will not seek to elicit any such opinion from Dr. Glacken at trial.  Instead of opining that the differences are substantial, Dr. Glacken offered a collection of essentially legal objections to Janssen's infringement theories, grouped under the heading "Profs. Wurm and Butler Have Not Offered an Appropriate Theory of Infringement Under the Doctrine of Equivalents."  Janssen MIL Ex. 1, Rebuttal Expert Report of Michael Glacken, Sc.D. ("Glacken Rebuttal Report") ¶¶ 57–112 (Oct. 14, 2016).[1]

In a motion brought in advance of the scheduled 2017 trial in the previous action, Janssen argued that Dr. Glacken's opinions that Janssen's infringement case was not legally "[a]ppropriate" did not constitute proper expert testimony under Federal Rule of Evidence 702. *See* Dkt. No. 343 in Case No. 1:15-cv-10698-MLW ("Original Motion").  In particular, Janssen contended that each of the four grounds on which Janssen's infringement theories were supposedly not "[a]ppropriate" corresponded to legal attacks on Janssen's case that Defendants should not be allowed to present to the jury: (1) that the '083 patent is not subject to the doctrine of equivalents, or alternatively is entitled to only to a narrow range of equivalents, under an "equivalents of equivalents" theory (Janssen MIL Ex. 1 (Glacken Rebuttal Report) ¶¶ 60–68); (2) that extending the ranges in the '083 patent to encompass the infringing products would vitiate the patent's claims (*id.* ¶¶ 69–81); (3) that Janssen's doctrine of equivalents theory

---

[1] Dr. Glacken also criticized experiments conducted by Professor Wurm and relied on by Professor Butler, in a section of his report titled "Janssen Also Cannot Rely on Prof. Wurm's Testing to Show Infringement Under the Doctrine of Equivalents." *Id.* at ¶¶ 113–94.  Janssen has never challenged the admissibility of Dr. Glacken's opinions concerning Professor Wurm's experiments.

1

provides inadequate notice to potential infringers (*id*. ¶¶ 82–89); and (4) that Janssen's doctrine of equivalents theory ensnares the prior art (*id*. ¶¶ 90–112).

In response to Janssen's motion, Defendants conceded that Dr. Glacken was not going to testify to the jury about the law.  Dkt. No. 371 in Case 1:15-cv-10698-MLW ("Original Opposition") at 9–12.  Subsequently, they conceded that three out of these four opinions ("equivalents of equivalents," vitiation, and ensnarement) were not fact issues for the jury to decide (though they contend that they jury should be asked to reach an advisory verdict on vitiation), and that the fourth, public notice, was not a "defense" to infringement.  1/31/18 H'g Tr., Dkt. 178, at 119:10–11 (equivalents of equivalents); 111:8–10 (vitiation); 114:23–24 (public notice); Original Opposition at 12 (ensnarement).  With the exception of ensnarement, however, which Defendants agreed should not be presented to the jury, Defendants maintain that Dr. Glacken should be permitted to present the same opinions at trial, so long as he does not recite the improper legal instructions on which they were based.

Janssen's motion to exclude Dr. Glacken's infringement theories was briefly addressed at the hearings held from January 30 to February 2, 2018.  At the conclusion of these hearings, the Court indicated that Dr. Glacken would grant Janssen's motion in part and deny it in part without prejudice to being renewed along with *in limine* motions in June 2018.  *See* 2/2/18 H'g Tr., Dkt. 180, at 32:4–18.  The Court ordered the parties to submit proposed versions of Dr. Glacken's report identifying the portions of his opinions that they considered inadmissible in light of the Court's guidance.  *Id*.  The parties submitted their competing strikethroughs on February 9, 2018. Dkt. 171.

The parties' competing strikethroughs to Dr. Glacken's report bring into sharp relief the questions that remain at stake in Janssen's challenge to Dr. Glacken's testimony, and, more

2

broadly, Defendants' non-infringement case.  As their submission makes clear, Defendants continue to believe that they should be able to argue, and Dr. Glacken should be able to opine, that Janssen's infringement case is not "[a]ppropriate" for the reasons laid out in Dr. Glacken's report (except for ensnarement), so long as they surgically excise the legal instructions on which the opinions are based.  But as explained below, Defendants should not be permitted to repackage improper legal arguments as expert opinions.  The problem with Dr. Glacken's opinions is not merely that they make reference to purely legal principles, but rather that they are, in **_substance_**, organized around legal propositions that should not be presented to the jury and which the jury should not be invited to consider.

In particular, whether or not Defendants refer to it as a "defense," they should not be permitted to argue that Janssen's infringement theory provides inadequate notice to potential infringers.  Notice to potential infringers plays no part in the applicable legal test for infringement under the doctrine of equivalents and the argument would simply confuse the jury about the law (**MIL No. 4**).  Similarly, it is no solution to the problem of improper vitiation testimony for Defendants to eliminate a single sentence referring to the law of vitiation from Dr. Glacken's opinions on that subject, but otherwise to present to the jury the exact same substantive opinions and arguments that are by Defendants' own admission "related to claim vitiation."  Original Opposition at 9-12.  This is precisely what Defendants' propose in their most recent submission.  Dkt. 171-2, ¶ 69.  They should be precluded from doing so (**MIL No. 5**).  Furthermore, Defendants should not be permitted to replace Dr. Glacken's admittedly improper opinion that the '083 patent has **_no_** range of equivalents under the "equivalents of equivalents" theory with the equally improper argument that the patent has a **_narrow_** range of equivalents (**MIL No. 6**).

3

In addition to confirming that they still intend to present the improper opinions in Dr. Glacken's report, the *Daubert* hearing of January and February of this year demonstrated that Defendants will rely attempt to rely heavily on improper legal hypotheticals.  At the hearing, they questioned Janssen's witnesses about whether some hypothetical medium would be equivalent under the expert's "theory of the doctrine of equivalents," by which they purport to show that Janssen's doctrine of equivalents theory goes too far.  But the only question at issue in this case is whether the accused Celltrion media infringe under the doctrine of equivalents as defined by the law, not whether some hypothetical media might be equivalent as Janssen's scientific experts understand that term.  The questions are legally irrelevant and likely to confuse and mislead the jury.  Defendants should be precluded from questioning Janssen's experts about the legal consequences of hypothetical scenarios that have no basis in the facts of this case (**MIL No. 7**).

### Janssen's MIL No. 4:[2] To Exclude Evidence or Argument on Public Notice

Defendants should be barred from presenting evidence or argument regarding the public notice function of patents.  Allowing Defendants to build a case based on this legally irrelevant issue would be prejudicial and create substantial risk that the jury would decide the case based on an erroneous view of the law.

Defendants' public notice argument first appeared in the rebuttal expert report of Dr. Glacken.  In that report, Dr. Glacken explained his "understand[ing] that . . . competitors[] are entitled to clear and specific notice of what the inventor claims."  Janssen MIL Ex. 1 (Glacken Rebuttal Report) ¶ 82.  This understanding served as the foundation for an entire section of Dr.

---

[2] Janssen's motions *in limine* numbers 1–3 were filed in the previous action, Case No. 1:15-cv-10698-MLW, Dkt. No. 353.   They were not decided at that time.

Glacken's report in which he opined that the infringement "theory" advanced by Janssen's experts, Professors Florian Wurm and Michael Butler, would fail to provide a person of skill in the art (POSA) a practical way to assess infringement.  *Id.* ¶¶ 82–89.  He elaborated on this objection with what amounts to a critique of the doctrine of equivalents itself, complaining about the undue cost and burden on competitors of assessing potential infringement by concentrations outside the literal ranges claimed in the '083 patent.  Dr. Glacken concluded this analysis by reiterating that application of the doctrine of equivalents in this case "would not give a skilled artisan fair notice that the accused products infringe."  Janssen MIL Ex. 1 (Glacken Rebuttal Report) ¶ 89.

Janssen moved to exclude this public notice analysis as an improper (and inaccurate) legal opinion.  At the hearing on that motion, the Court recognized that "uncertainty alone doesn't defeat the doctrine of equivalents."  1/31/18 H'g Tr. at 75:20.  In response, Defendants disclaimed the use of the public notice argument as a "defense" to infringement, insisting instead that the discussion of public notice is merely "context" that the jury must hear to understand Dr. Glacken's overall analysis.  *Id.* at 115:15.  They then pointed to the Federal Circuit Bar Association's general preliminary jury instruction – unrelated to the doctrine of equivalents or even to the test for infringement more generally – which notes that a patent's claims "define the boundaries of its protection and give notice to the public of those boundaries."  Fed. Bar Ass'n Model Jury Instruction A.1 (2016).  But as the Court noted, this concept is "incomplete, because if there's an insubstantial change, something outside of the literal boundaries can infringe the patent."  1/31/18 H'g Tr. at 115:16–18.  Ultimately, Defendants were unable to articulate how Dr. Glacken's public notice argument amounts to anything more than a rejection of the applicability of the doctrine of equivalents in this case.

5

Despite their concession at the hearing that purported lack of public notice is not a "defense" to infringement, 1/31/18 H'g Tr. at 115:15, Defendants' post-hearing submission made *no* changes to Dr. Glacken's public-notice analysis, other than to eliminate reference to other doctrines that Defendants had agreed not to mention. *See* Dkt. 171-2. To the contrary, Defendants have informed Janssen that they intend to use "public notice" as a core theme of their non-infringement defense. It appears that Defendants envision an opening statement framed by the public notice principle, followed by Dr. Glacken's testimony that a POSA could not have easily recognized that concentrations outside the literal claims of the '083 patent nonetheless infringe, tied together with inapposite instructions to the jury emphasizing the importance of public notice in the patent system. In short, with no expert willing to testify that substantial differences exist between the concentrations in the '083 patent and the accused media, Defendants intend to make the infringement case into an attack on the doctrine of equivalents itself. Janssen recognized this and now brings this motion to preclude the improper argument not only as it appears in Dr. Glacken's testimony, but also in any other form Defendants seek to present it.

The tension between the doctrine of equivalents and the public notice function of patents has long been recognized. But this tension is not unique to this case, nor is it a basis for defeating infringement in any particular case. To the contrary, "[t]hese concerns with the doctrine of equivalents . . . are not new. Each time the Court has considered the doctrine, it has acknowledged this uncertainty as the price of ensuring the appropriate incentives for innovation, and it has affirmed the doctrine over dissents that urged a more certain rule." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732 (2002); *see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) (affirming the doctrine of equivalents,

6

even though "when applied broadly, [the doctrine] conflicts with the definitional and public-notice functions of the statutory claiming requirement"); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 617 (1950) (Black, J. dissenting) (objecting that under the doctrine, a competitor "cannot rely on what the language of a patent claims" but must instead "forecast how far a court relatively unversed in a particular technological field will expand the claim's language."); *Winans v. Denmead*, 56 U.S. 330, 347 (1854) (Campbell, J. dissenting) ("Who can tell the bounds within which the mechanical industry of the country may freely exert itself?").

Defendants can cite no cases suggesting that the ability of potential infringers to anticipate whether their products infringe affects whether the literal differences at issue in a particular case are insubstantial for purposes of the doctrine of equivalents. To the contrary, Defendants have conceded, as noted, that lack of public notice is ***not*** a "defense" to infringement. Nevertheless, they seek to provide Dr. Glacken's public notice testimony, arguments emphasizing that testimony, and jury instructions regarding public notice as supposed "context" for the "theory" underlying Dr. Glacken's entire expert analysis. 1/31/18 H'g Tr. at 115:12–15. This semantic distinction does not salvage defendants' improper line of argument. Whether labeled as a "defense" or as "context," Defendants seek to present the jury with a policy critique of the doctrine of equivalents that has been squarely rejected by the Supreme Court and that has no bearing on the factual dispute the jury will be asked to decide.

To the extent that there are legal limitations on the doctrine of equivalents, those limits are enforced by the Court. *See Warner-Jenkinson*, 520 U.S. at 39 n.8 ("Of course, the various legal limitations on the application of the doctrine of equivalents are to be determined by the court."); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009) ("[E]nsnarement, like prosecution history estoppel, is a legal limitation on the doctrine of

7

equivalents to be decided by the court, not a jury."). The question before the *jury* in determining infringement is "whether all of the claim limitations [of claim 1 of the '083 patent] are present [in the Celltrion media], either literally or by a substantial equivalent." *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318−19 (Fed. Cir. 2011). Thus, even if certain limitations to the doctrine of equivalents may be animated by public notice concerns, the jury is not tasked with enforcing those limitations and therefore has no need for education about this "context."

Regardless of whether Defendants seek to present the public notice issue as a "defense," as "context," or under some other semantic label, the argument would serve the same purpose: Distracting the jury with an argument that has been rejected as a matter of law for generations. The fundamental confusion that Defendants seek to introduce should be excluded under Rule 403. *See Kenney v. Head*, 670 F.3d 354, 359−60 (1st Cir. 2012) (exclusion of otherwise relevant evidence is appropriate "'if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury.'") (quoting Fed. R. Evid. 403).

To justify their argument that that the jury should hear about public notice, Defendants have pointed to the model jury instruction's background explanation that a patent's "claims define the boundaries of its protection and give notice to the public." Fed. Bar Ass'n Model Jury Instruction A.1 (2016). But this jury instruction is inapt – or at the very least incomplete – in a doctrine of equivalents case, as the Court has already noted. 1/31/18 H'g Tr. at 115:16-18.[3] Public notice does not provide a defense to infringement under the doctrine of equivalents, and, as described above, the issue is therefore irrelevant to the jury's task in this case. And even if a discussion of public notice provides background insight in some patent cases, that marginal

---

[3] Janssen intends to oppose instructing the jury on public notice for the same reasons described in this motion.

probative value is overwhelmingly outweighed by the risk of confusion on the fundamental

inquiry in this case:  Whether the concentrations of components in the accused media infringe as

equivalents of the concentrations claimed in the '083 patent.  This risk of confusion on the

ultimate question before the jury warrants exclusion under Rule 403.

**Janssen's MIL No. 5: To Exclude Evidence or Argument on Vitiation**

Defendants should be barred from making any argument or procuring any testimony

regarding vitiation.  Vitiation is a legal determination and the Court has already indicated both

that the analysis of Janssen's experts does not vitiate the claim limitations and that the jury will

not be called on to advise on the Defendants' vitiation argument.  Allowing the Defendants to

argue vitiation, or ask questions designed to show that the claims are vitiated, would be contrary

to what the Court has already held and confuse the jury about an issue it will not be called upon

to decide.

Dr. Glacken initially opined that the application of the doctrine of equivalents by

Janssen's experts vitiated claim limitations of the '083 patent.  Janssen MIL Ex. 1 (Glacken

Rebuttal Report) ¶¶ 69–81.  Janssen moved to exclude this opinion, explaining that whether a

claim element is vitiated was a question of law for the judge.  Subsequently, at the *Daubert*

hearing held earlier this year, the Court held that the analysis of Dr. Butler does not vitiate any

claim limitations on the '083 patent: "His testimony therefore does not render the claimed

concentrations meaningless; or to put it differently, none of the claims are vitiated."  1/31/18 H'g

Tr. at 88:23–25 (ruling on Defendants' *Daubert* motions).

Meanwhile, Defendants, after defending Dr. Glacken's vitiation opinions in their original

opposition to Janssen's motion, conceded at oral argument that vitiation is not a question that

9

should be presented to the jury unless the Court asks the jury for an advisory opinion.  1/31/18

H'g Tr. at 110:4–6. Although Defendants do propose a jury instruction on vitiation and an

advisory jury finding, the Court already indicated that it is unlikely to agree, in large part due to

the potential for confusion.  *Id.* at 111:8–13 ("[MR. HALES]: Your Honor at some point is going

to decide whether there's an advisory opinion from the jury on vitiation which is appropriate.

THE COURT: Probably not. They're going to have enough trouble deciding what they need to

decide.").

       Despite their concession that vitiation is a question of law that is not part of the jury's

fact finding, Defendants have refused to strike the vitiation section from Dr. Glacken's report in

their proposal to strike improper portions of the report.  *See* Dkt. 171-2, ¶¶ 69–81.  Rather, they

have indicated that they intend to make the same points under the guise of discussing "the

ramifications of [Janssen's] philosophy of doctrine of equivalents infringement."  1/31/18 H'g

Tr. at 112:11–12.  Once again, this is just another way of saying the exact same thing without

using the word "vitiation."  Janssen has no "philosophy of doctrine of equivalents infringement."

Janssen contends that the specific cell culture media used by Celltrion infringe the '083 patent

under the doctrine of equivalents.  And the Court has already held that its allegations do not

vitiate any claim limitations in the '083 Patent.

       Defendants should not be permitted to raise these admittedly confusing legal questions in

front of the jury in the guise of presenting evidence on the alleged ramifications of a non-existent

"philosophy" of the doctrine of equivalents to which Janssen purportedly subscribes.  The jury

will be called upon to decide if the '083 patent is infringed by the Celltrion Media under the

relevant test and should hear evidence and argument that goes to that question.  The Court has

held that the claims are not vitiated.  Defendants should not be permitted to present their vitiation

arguments to the jury, whether they use the word "vitiation" or not.

**Janssen's MIL No. 6: To Exclude Evidence or Argument that the '083 Patent has a Narrow Range of Equivalents**

Defendants should be barred from offering evidence or argument that the '083 patent has

a narrow range of equivalents.  Such an argument would give the jury an incorrect impression of

the law and invade the Court's role as the interpreter of the patent's claims.

Through Dr. Glacken, Defendants have contended that a person of ordinary skill in the art

would "afford the '083 patent a narrow range of equivalents for the claimed compositions."

Janssen MIL Ex. 1 (Glacken Rebuttal Report) ¶ 68.  There is no legal or factual basis for the

contention that a patent is afforded a "narrow" range of equivalents depending on how a person

of ordinary skill would read the claims.  Equivalence is determined by applying "the well-

established 'substantially the same function-way-result' or 'insubstantial differences' inquiry."

*Jang v. Boston Sci. Corp.*, 872 F.3d 1275, 1284 (Fed. Cir. 2017).  The test does not change

depending on how the claims are written or how a person of skill would read them;[4]

insubstantially different accused products infringe under the doctrine of equivalents.  This is true

regardless of the fact that here the patent states a concentration range and the accused product is

outside of the range.  Such a claim is entitled to a range of equivalents like any other.  *See*, *e.g.*,

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 22 n.1 & 41 (1997) (holding that

---

[4] There is an exception for "about" claims, which are already deemed to encompass a range of
equivalents, but Defendants have disclaimed any equivalents-of-equivalents argument.  1/31/18 H'g Tr. at
119:10–11 (defense counsel stating that Dr. Glacken is "not going to make" the "equivalents-on-
equivalents" argument).

11

an accused product with a tenfold difference in the relevant range was subject to doctrine of equivalents).

Indeed, Defendants had to withdraw their initial position in Dr. Glacken's report that the claims of the '083 patent "represent the furthest reach of the purported invention" and therefore have no range of equivalents at all.  Janssen MIL Ex. 1 (Glacken Rebuttal Report) ¶ 60.  Instead, they attempted to repackage the same improper argument in different terms, arguing that Dr. Glacken could testify that the range of equivalents is "narrow" in light of the "intrinsic record" including the preferred embodiment of MET 1.5 and that the concentration ratios in the '083 patent were deliberately set as equivalents of MET 1.5.  *See* Original Opposition at 8–9; Defendants' Proposed Limitations on Dr. Glacken's Testimony, Dkt. 171-2, ¶¶ 63–66, 68 (refusing to delete the narrow range of equivalents opinion).

Defendants have cited no case holding that an expert should be permitted to testify that the patent's claims, read in light of the specification, limit application of the doctrine of equivalents to a narrow range. To the contrary, in one case previously cited by defendants, *SSL Servs., LLC v. Citrix Sys.*, 940 F. Supp. 2d 480 (E.D. Tex. 2013), the court found that the expert's testimony regarding a preferred embodiment was admissible only because it was clear, regardless of the testimony about a preferred embodiment, that "infringement was determined by analyzing the claims and not the preferred embodiments." *Id.* at 492.  The court did not permit the expert to testify that the preferred embodiment disclosed in the patent somehow narrowed the range of permissible equivalents, as Defendants seek to argue here.

It is important to recall that Dr. Glacken has ***not*** offered the opinion that the differences between the accused media and the claims of the '083 patent are substantial.  That is, Dr. Glacken has not used the notion that the claim has a "narrow" range of equivalents to conclude

12

that, therefore, the concentration differences here are substantial.  In light of this, Dr. Glacken's testimony about the '083 patent's supposedly "narrow" range of equivalents is simply an attempt to impose a limitation on the doctrine of equivalents that does not exist in the law and in any event would not be the province of the jury to determine.  The doctrine of equivalents is circumscribed by certain legal doctrines such as prosecution history estoppel, vitiation, and ensnarement, none of which will be presented to the jury.  *See Warner-Jenkinson*, 520 U.S. at 29–30 (identifying vitiation and prosecution history estoppel as limits on the doctrine of equivalents); *Jang*, 872 F.3d at 1284–85 (identifying ensnarement as a "limitation on the reach" of the doctrine of equivalents); *Abbott Labs v. Dey, LP*, 287 F.3d 1097, 1105–06 (Fed. Cir. 2002) (explaining that scope of equivalents is limited by the ensnarement doctrine).  Indeed, the Court already suggested that Dr. Glacken's testimony on this subject is directed toward a legal doctrine, ensnarement, that the jury will not be asked to address: "[Dr. Glacken] wants to testify that a person ordinarily skilled in the art would rely on the crowded prior art and conclude the scope of equivalents was limited . . . . That's an ensnarement argument for me . . . ."  1/31/18 H'g Tr. at 75:12–16.  Plainly, Dr. Glacken's opinions on a "narrow" range of equivalents are directed toward purported limitations on the scope of the doctrine of equivalents, not whether the accused media infringe under the applicable test.  These opinions are improper.

To be clear, Janssen is not suggesting that there is no basis for discussion of the intrinsic record when considering the doctrine of equivalents.  Intrinsic evidence can be useful, for example, to assist in determining the function, way, and result to consider for various claim elements. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001) (holding that in applying the function-way-result test, "we look to the way in which [the] functions are accomplished and the attendant results in the specification").  Furthermore, Dr.

13

Glacken will be permitted to explain the patent and to testify about the technology that is described in it – opinions that Dr. Glacken disclosed in his report and that Janssen has not challenged.  Janssen MIL Ex. 1 (Glacken Rebuttal Report) ¶¶ 27–46.  But there is no basis to rely on the intrinsic record to evaluate the supposed broadness or narrowness of a range of equivalents to a set of concentration ranges, particularly when the expert does not even purport to apply that concept in concluding that differences are substantial.

Dr. Glacken should not be allowed to testify that the preferred embodiment limits the range of equivalents for the '083 patent for another reason.  He opines that claim 1 was meant to capture a range of equivalents around MET 1.5, a preferred embodiment.  However, claim 6, not asserted here, claims the specific formula for MET 1.5.  It is well established that "[e]ach claim defines a separate invention, whether or not written in independent form," *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1148–49 (Fed. Cir. 2004), a doctrine known as claim differentiation.  Dr. Glacken's opinion that the ranges of equivalents of claim 1 is in effect limited to media that would be equivalent to claim 6 is inconsistent with this doctrine and is therefore legally improper.

Finally, the jury will be instructed on the doctrine of equivalents by the Court.  Neither side proposed a jury instruction that the breadth of the range of equivalents is informed by the specification or prosecution history.  Proposed Jury Instructions, *Janssen v. Celltrion*, 1:15-cv-10698-MLW, Dkt. 429 & 430.  Testimony that the intrinsic record limits the scope of equivalents would be legally incorrect, confuse the jury, and contradict their instructions on the law of the doctrine of equivalents.  Defendants should be precluded from offering any testimony or argument that the '083 patent has a narrow range of equivalents.

14

**Janssen's MIL No. 7**:  **To Exclude Hypothetical Questioning Regarding the Scope of the Doctrine of Equivalents**

At trial, Defendants should not be able to question Janssen's witnesses or offer argument regarding whether Janssen's "theory" of the doctrine of equivalents would extend to some hypothetical medium not at issue in the case.  Janssen's experts are not lawyers and do not purport to have a comprehensive view of the doctrine of equivalents and its application to different factual situations.  Janssen's experts are applying legal doctrines they have been given about a particular set of facts present in this case and asking them quintessentially legal questions about the application of the doctrine of equivalents to different sets of facts is both irrelevant and highly confusing to the jury.

Defendants have consistently questioned Janssen's witnesses regarding whether some irrelevant hypothetical medium would nonetheless be equivalent under the witness's understanding of the doctrine of equivalents, both in their depositions and in the *Daubert* hearing held during the last week of January.  For example, Dr. Butler was asked a series of hypothetical questions as to whether he would consider a hypothetical medium with missing ingredients – differences more extreme than those at issue here – to be equivalent if Dr. Wurm's testing showed them to perform equivalently and he agreed that they would be *scientifically* equivalent. *See*, *e.g.*, Butler Dep. Tr. (Janssen MIL Ex. 2) at 151:7–16.  Counsel for Defendants repeated this line of questioning in the *Daubert* hearing.  *See*, *e.g.*, 1/30/18 H'g Tr. at 194:3–6.  This line of questioning is (1) irrelevant to any fact at issue in the case and (2) likely to confuse the jury about how to apply the doctrine of equivalents in this case.

As noted, the only questions the jury will be asked in the liability phase are "whether all of the claim limitations [of claim 1 of the '083 Patent] are present [in the accused cell media],

either literally or by a substantial equivalent," *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1318–19 (Fed. Cir. 2011); and, if so, whether Defendants are liable for that infringement. Whether other hypothetical media which lack some of the required ingredients would or would not be scientifically equivalent has absolutely no relevance to whether the Celltrion media, which includes all of the required ingredients, infringes under the doctrine of equivalents or whether defendants are liable for that infringement.

It is axiomatic that although experts can be asked hypothetical questions, their answers to those questions are irrelevant unless the hypothetical is based on the actual facts and "a hypothetical should include only those facts supported by the evidence." *Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993); s*ee also e.g., Larue v. Nat'l Union Elec. Corp.*, 571 F.2d 51, 58 (1st Cir. 1978) (affirming district court's decision to strike expert's opinion based on a hypothetical fact for which the record "failed to provide an independent basis"). No facts will be admitted into evidence regarding any relevant medium which lacks one of the claimed ingredients and its alleged equivalence to the claimed media.[5]  The Court has already noted that these hypothetical questions are premised on asking Dr. Butler to "ignore . . . his immediately prior testimony that he expected each ingredient to be important and that he thought that removing an ingredient would affect the test results."  1/31/18 H'g Tr. at 89:19–22.  Asking the experts to go beyond their application of the law to the facts of this case and apply the doctrine of equivalents to different sets of facts not at issue here is tantamount to asking them to

---

[5] Defendants do propose such a hypothetical medium as a non-infringing alternative for purposes of their damages case.  Janssen's experts, however, offered no opinions as to whether or not these hypothetical media would be infringing – precisely because legal hypotheticals about the scope of the doctrine of claim vitiation are outside the scope of their scientific opinions.

16

"instruct the jury on the law," which is plainly improper.  *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 54 (1st Cir. 2006).

Dr. Butler's actual opinion, based on his two-part analysis, is that the specific concentrations in the Celltrion Media are equivalent to those recited in the claim.  And Dr. Wurm's actual opinion, based on what he tested, is that the concentration differences between the '083 patent's ranges and the Celltrion Media do not make a substantial difference.  The "extreme outer ranges" of what would be considered equivalent are irrelevant. And Janssen's assertion – its legal theory – is only that the analysis of those particular ingredients and concentrations combined with well-controlled experiments is sufficient to prove infringement under the doctrine of equivalents.

Celltrion is of course free to ask Drs. Wurm and Butler about their actual opinions about the Celltrion Media and its equivalence to the claim of the '083 patent and the related instructions they received about the application of the doctrine of equivalents to this case. Celltrion's hypothetical questioning, in contrast, attempts to transform Janssen's *scientific* experts who will opine on whether the media are *scientifically* equivalent into legal experts on the scope of the doctrine of equivalents.  Drs. Wurm and Butler are not legal experts and should only be asked relevant questions about the scientific equivalence of the claims of the '083 patent and the accused media and their application of the doctrine of equivalents to this case. Celltrion should be barred from asking hypothetical questions about hypothetical media not at issue in the case, which would serve only to confuse the jury and invade the province of the Court to instruct

## CONCLUSION

For the reasons set forth above, this Court should grant Janssen's motions *in limine* Nos. 4 through 7.

Dated:  May 18, 2018

Respectfully Submitted,

JANSSEN BIOTECH, INC.

By its attorneys,
*/s/ Alison C. Casey*_____
NUTTER MCCLENNAN & FISH LLP
Heather B. Repicky (BBO #663347)
Alison C. Casey (BBO# 688253)
155 Seaport Boulevard
Boston, MA  02210
Tel.: 617-439-2000
Fax: 617-310-9000
hrepicky@nutter.com
acasey@nutter.com

PATTERSON BELKNAP WEBB &
TYLER LLP
Gregory L. Diskant (*pro hac vice*)
Irena Royzman (*pro hac vice*)
Aron Fischer (*pro hac vice*)
Andrew D. Cohen (*pro hac vice*)
David S. Kleban (*pro hac vice*)
1133 Avenue of the Americas
New York, NY  10036
Tel.: 212-336-2000
Fax: 212-336-2222
gldiskant@pbwt.com
iroyzman@pbwt.com
afischer@pbwt.com
acohen@pbwt.com
dkleban@pbwt.com

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.


/s/ *Alison C. Casey*_____