IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JANSSEN BIOTECH, INC.,                                )
                            Plaintiff,        )
                                   )
                    v.                        )        Civil Action No. 1:17-cv-11008-MLW
                                   )
CELLTRION HEALTHCARE CO., LTD.,        )        **CONFIDENTIAL**
CELLTRION, INC., and                                  )        **FILED UNDER SEAL**
HOSPIRA, INC.,                                            )
                       Defendants.      )
_____ )

**JANSSEN'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE* NOS.
11 & 12 REGARDING NON-INFRINGING ALTERNATIVES**

10383525

# TABLE OF CONTENTS

**Page**

JANSSEN'S MIL NO. 11: TO EXCLUDE TESTIMONY FROM DR. BERT
FROHLICH RELATED TO LIABILITY ...................................................................................1

I.      Background ..............................................................................................................2

II.     Dr. Frohlich Should Not Be Permitted To Offer Improper Liability Opinions....................3

        A.      Dr. Frohlich Should Not Be Permitted to Opine That the Accused Media
                Do Not Infringe ..........................................................................................4

        B.      Dr. Frohlich Should Not Be Permitted to Testify About The Scope of the
                Prior Art or the Inventiveness of the '083 Patent ........................................5

        C.      Dr. Frohlich Should Not Be Permitted to Offer Opinions About Ferric
                Ammonium Citrate .......................................................................................6

        D.      Dr. Frohlich Should Not Be Permitted to Offer Opinions Relating to Dr.
                Wurm's Laboratory Testing .........................................................................7

        E.      Dr. Frohlich Should Not Be Permitted to Challenge Dr. Butler's
                Infringement Opinions .................................................................................8

        F.      ████████████████████ Dr. Frohlich Should Not Be Permitted to
                Testify Regarding Comparisons With the Patent Claim ........................................9

        G.      Dr. Frohlich Should Not Be Permitted to Testify Regarding Hypothetical
                Modifications to the Accused Media ....................................................11

JANSSEN'S MIL NO. 12: TO EXCLUDE EVIDENCE OR ARGUMENT
REGARDING PURELY THEORETICAL NON-INFRINGING ALTERNATIVES ...................13

I.      Evidence of Purely Theoretical Non-Infringing Alternatives Should Be Excluded
        Under *Grain Processing* ......................................................................................14

II.     Evidence of Purely Theoretical Non-Infringing Alternatives Should Be Excluded
        Under Rule 403 .......................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cash v. United States*,
 No. 1:15-cv-00518-JAW, 2016 U.S. Dist. LEXIS 148032 (D. Me. Oct. 26,
 2012) .................................................................................................................................18

*Deere & Co. v. Bush Hog, LLC*,
 703 F.3d 1349 (Fed. Cir. 2012)........................................................................................12

*Grain Processing Corp. v. American Maize-Products Co.*,
 185 F.3d 1341 (Fed. Cir. 1999).................................................................................. *passim*

*Janssen Biotech, Inc. v. Celltrion Healthcare Co.*,
 239 F. Supp. 3d 328, 331 (D. Mass. 2017) .........................................................................5

*Micro Chem., Inc. v. Lextron, Inc.*,
 318 F.3d 1119 (Fed. Cir. 2003).........................................................................................17

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
 637 F.3d 1269 (Fed. Cir. 2011).........................................................................................17

*Synqor, Inc. v. Artesyn Techs., Inc.*,
 709 F.3d 1365 (Fed. Cir. 2013).........................................................................................16

*United States v. Shay*,
 57 F.3d 126 (1st Cir. 1995)................................................................................................17

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
 520 U.S. 17 (1997).............................................................................................................12

**Other Authorities**

Fed. R. Evid. 403 ............................................................................................................. *passim*

10383525

In support of their non-infringing alternatives case, Defendants have submitted an expert report from a cell culture media scientist, Dr. Bert Frohlich, that represents a thinly-veiled attempt to fix holes in their liability case.  Dr. Frohlich's liability-directed testimony should be excluded (**MIL No. 11**).  Furthermore, although all of Defendants' proposed non-infringing alternatives fail as a matter of law as Janssen demonstrates in its pending motion for summary judgment on the issue (Dkt. No. 246), a handful of them stand out as purely theoretical, lacking any basis whatsoever in the record.  Evidence and argument regarding these alleged non-infringing alternatives should be excluded even if Janssen's summary judgment motion is denied (**MIL No. 12**).

## Janssen's MIL No. 11: To Exclude Testimony from Dr. Bert Frohlich Related to Liability

Janssen moves to bar Defendants' damages expert Dr. Bert Frohlich from offering opinions about liability.  Dr. Frohlich's proposed testimony provides a good reason for the Court to bifurcate damages from liability.  Indeed, if the trial were not bifurcated, Dr. Frohlich's testimony would inevitably be perceived by the jury as directed principally at liability issues – including defenses such as ensnarement and vitiation not properly for the jury to consider.  There would be no effective way to limit the jury's consideration of his testimony to damages alone.  But even if a bifurcation is granted, Dr. Frohlich's opinions risk jury confusion and unfair prejudice to Janssen.

During liability discovery in this case, Defendants disclosed the opinions of Dr. Michael Glacken related to infringement under the doctrine of equivalents and validity.  But his opinions failed to join issue on two scientific questions central to the liability case.  First, as Defendants confirmed at the *Daubert* hearing in January, Dr. Glacken will not opine that there are substantial differences between the accused media and Janssen's patent claim.  Dkt. No. 161 (1/31/2018

Hr'g Tr.) at 70-71.  Second, as explained in Janssen's opposition to Defendants' summary judgment motion on the issue of ensnarement (Dkt. No. 259), Dr. Glacken did not opine that the claimed invention ***would have*** been obvious over the prior art, as required to demonstrate obviousness; he merely said that a person of ordinary skill ***might*** or ***could*** have arrived at the invention.

In an apparent attempt to compensate for Dr. Glacken's manifest deficiencies, Defendants have now, well after the close of liability discovery, offered the testimony of a new cell culture media scientist, Dr. Frohlich.  Janssen submitted an opening damages report from Dr. Michael Butler, its infringement expert, opining that there were not acceptable and readily available non-infringing alternatives to the '083 patent at the time of first infringement.  Rather than relying on Dr. Glacken in response, Defendants submitted a report from Dr. Frohlich.  Ostensibly focused on non-infringing alternatives, Dr. Frohlich's expert report is replete with opinions that are plainly directed to liability.

Since Dr. Frohlich was not disclosed during the liability discovery period and did not, by his own admission, provide a liability opinion, he cannot provide liability testimony at trial.  If damages are severed from liability, Dr. Frohlich should not be permitted to testify in the liability phase.  And in any event his disguised liability opinions should be excluded both as contrary to the scheduling order, which required liability expert reports to be filed a year and a half ago (Case No. 15-cv-10698, Dkt. Nos. 124, 243), and under Fed. R. Evid. 403.  Their probative value is limited, and would be vastly outweighed by the danger of confusing the jury.

## I.     BACKGROUND

The Court originally bifurcated liability and damages issues in this case.  Case No. 15-cv-10698, Dkt. No. 226, at ¶ 7(c).  Throughout 2016, the parties completed fact and expert

discovery pertaining to liability alone. In August, October, and November 2016, Defendants disclosed the opinions of their sole cell culture scientist expert on infringement and validity, Dr. Glacken. The parties completed all liability discovery by Christmas 2016. Trial was set to commence on February 13, 2017. But for the need to resolve a belatedly raised jurisdictional question about Janssen's standing as patentee to bring this case, the liability trial in this case would have been completed over a year ago.

On October 31, 2017, the Court denied Defendants' standing motion and issued a scheduling order requiring the parties to complete damages discovery, "including expert discovery," by March 16, 2018. Dkt. No. 63 ¶ 1. The Scheduling Order made clear that ***"[d]iscovery concerning liability has been completed*."** *Id.* ¶ 1 n.1 (emphasis added).

On December 12, 2017, the Court adopted the parties' proposed intermediate deadlines regarding damages discovery. Dkt. No. 101. The adopted schedule provided that "Janssen's opening report(s) regarding ***damages-related issues***, including non-infringing alternatives," would be due on January 19, 2018, and "Defendants' responsive expert report(s) regarding ***damages-related issues***, including non-infringing alternatives" would be due on February 16, 2018. *Id.* (emphases added). Though the schedule was later modified by Court order (Dkt. No. 176) and stipulation (Dkt. No. 211), this period of discovery remained limited to "damages-related issues."

On March 20, 2018, nearly 15 months after the completion of liability discovery, Defendants disclosed the opinion of a new cell culture media scientist, Dr. Frohlich.

## II.   DR. FROHLICH SHOULD NOT BE PERMITTED TO OFFER IMPROPER LIABILITY OPINIONS

████████████████████████████████████

████████████████████████████████████

3



Despite this admission, many of Dr. Frohlich's opinions are plainly directed toward liability, some explicitly so and others under transparent pretenses.  These opinions are improper and should be excluded.

### A.   Dr. Frohlich Should Not Be Permitted to Opine That the Accused Media Do Not Infringe



Dr. Frohlich should not be permitted to testify that the accused products do not infringe.

4

**B.      Dr. Frohlich Should Not Be Permitted to Testify About The Scope of the Prior Art or the Inventiveness of the '083 Patent**

Dr. Frohlich's report includes a section devoted to the '083 patent, including the manner of its invention, the scope of the patent, and its claims.  *See id.* ¶¶ 32-46.  These opinions, as well as similar opinions elsewhere in his report (*see, e.g.*, *id.* ¶ 99, 110, 232, 296), are improper liability opinions.

The purpose of these opinions is transparent.  As if by Freudian slip, Dr. Frohlich repeatedly discusses the art as of 2004, the date of the obviousness analysis, rather than 2009, the earliest date at which it is proper to consider the availability of acceptable non-infringing alternatives.  *See Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, 239 F. Supp. 3d 328, 331 (D. Mass. 2017).  This is a tell-tale sign that his opinion is directed toward validity rather than damages.

More generally, the entire substance of Dr. Frohlich's opinion about the patent and its relationship to the prior art is improper invalidity testimony.

5

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████

**C.**     **Dr. Frohlich Should Not Be Permitted to Offer Opinions About Ferric Ammonium Citrate**

For no apparent damages-related reason, Dr. Frohlich opines about ferric ammonium citrate ("FAC"), one of the 61 ingredients recited in the '083 patent claim.  As Dr. Butler stated in his liability reports and will explain at trial, FAC was not commonly used in cell culture media at the time of the invention, and the prior art taught away from using it.  Janssen MIL Ex. 13 (Butler Rebuttal Rep.) ¶¶ 82-84.  That is a reason – for purposes of the obviousness analysis – that one of skill would be unlikely to use FAC in a cell media.  But whether that is correct, or not, has nothing to do with non-infringing alternatives.

Nonetheless, without even a pretense of opining on damages, Dr. Frohlich's report responds to Janssen's ***liability*** position ██████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

6

██████████████████████████████████████████

██████████████████████████████████████████

██ Dr. Frohlich's opinions about the use of FAC in the prior art – and the introduction of a new prior art patent – are liability opinions plain and simple.  They have no connection to non-infringing alternatives.

Dr. Frohlich's opinions about the '083 patent and FAC should be excluded as disguised validity opinions.  To the extent that they bear any relevance to damages – and none is apparent from Dr. Frohlich's report – they should be precluded under Rule 403.  Their minimal probative value, given their attenuated relationship to non-infringing alternatives, is far outweighed by the potential to confuse the jury and the unfair prejudice to Janssen.

### D.    Dr. Frohlich Should Not Be Permitted to Offer Opinions Relating to Dr. Wurm's Laboratory Testing

Dr. Frohlich also offered irrelevant and improper opinions regarding Dr. Florian Wurm's laboratory testing.  *See, e.g.*, *id.* ¶¶ 176-719, 290-291.  Dr. Wurm's testing related to the doctrine of equivalents and examined whether the literal differences between the accused media and the '083 patent claim, on an element by element basis, led to substantially different results.  The results of the tests demonstrated that the literal differences between the accused media and the claim did not have a substantial effect on the performance of the accused media.  Dr. Glacken did not disagree.  Dkt. No. 161 (1/31/2018 Hr'g Tr.) at 71.  Dr. Butler relied on the results of Dr. Wurm's testing in concluding that the differences between the accused media and the claim are insubstantial.  Again, Dr. Glacken did not disagree.  *Id.* at 70.

In his damages report, Dr. Frohlich directly criticizes Dr. Wurm's testing without identifying any purported connection to damages.  ████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████  But Defendants had their chance
to criticize Dr. Wurm's testing during the liability phase of the case, and they did so with Dr.
Glacken.  Indeed, critiques are all Dr. Glacken offered about Dr. Wurm's work.  Dr. Glacken did
not disagree with the conclusions Dr. Wurm and Dr. Butler drew from the results.  Dr. Frohlich's
critiques are too late, and inappropriate coming from Defendants' damages expert.

**E.      Dr. Frohlich Should Not Be Permitted to Challenge Dr. Butler's
Infringement Opinions**

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

10383525

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████

    ██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

**F.**         ████████████████████████  **Dr. Frohlich Should Not Be Permitted to Testify Regarding Comparisons With the Patent Claim**

Defendants propose to have Dr. Frohlich testify about the differences between two of his proposed alternatives ████████████ and claim 1 of the '083 patent, supposedly to demonstrate that the proposed alternatives do not infringe the '083 patent.  *See* Janssen MIL Ex. 12 (Frohlich Rep.) ¶ 147, 198.  But as Dr. Frohlich acknowledges, Janssen had already conceded these two alternatives do not infringe, so comparisons of ████████████ to the claim have no probative value.  *Id.* ¶ 149, 201.

9

But Dr. Frohlich plows forward, offering a series of irrelevant liability-directed opinions about ingredient and concentration differences between ███████████████ and the '083 patent. This testimony would utterly confuse the jury, who will be asked to assess whether the literal differences between the ***accused media*** and the claims are insubstantial.  Presenting Dr. Frohlich's analysis – which concerns different compositions each having more than 60 different ingredients in differing amounts – would bury the central infringement inquiry under a confusing web of ancillary damages-related issues.  And it would have no relevance given that it is undisputed that ███████████████ are non-infringing.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

### G.    Dr. Frohlich Should Not Be Permitted to Testify Regarding These Hypothetical Modifications to the Accused Media

Besides ████████████, Dr. Frohlich's proposes two other supposed non-infringing substitutes that are created by modifying the accused media to allegedly make them non-infringing.  These entirely speculative and theoretical proposals should be excluded under *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999), as Janssen argues below in its MIL No. 12.  Even if the Court denies that motion, however, Dr. Frohlich's opinions on them should be excluded because they are improper attempts to argue validity and infringement to the jury and because they would require complicated legal instructions on two subjects – ensnarement and vitiation – that are not properly jury questions.

Dr. Frohlich opines that Defendants could develop hypothetical media that would be similar enough to the accused media as to be essentially identical, yet not infringe under the doctrine of equivalents because of ensnarement or vitiation.  ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ As explained in Janssen's opposition to Defendants' ensnarement summary judgment motion, ensnarement is a defense to infringement under the doctrine of equivalents that relies on obviousness.  Dkt. No. 259, at 6-7.  Ensnarement is complicated, requiring considering hypothetical patent claims alongside actual patent claims.  It is also confusing; although it involves assessing patentability, a successful ensnarement defense does not necessarily invalidate the underlying patent.  For these reasons, ***ensnarement is not a jury question***; indeed, Defendants in this case have agreed ensnarement is an issue for the Court.  Case No. 15-cv-10698, Dkt. No. 382, at 12.

The ensnarement analysis Dr. Frohlich proposes to present to the jury in connection with his damages opinion is similar to, but even more complicated than, Defendants' actual

11

ensnarement case.  In presenting this analysis, Dr. Frohlich would in essence be arguing

Defendants' obviousness case, or at least there is a high risk the jury would think that was what

was happening.  And to make any sense of this, the Court would be forced to give an otherwise

unnecessary – and confusing – jury instruction on ensnarement.

Dr. Frohlich's other hypothetical media are just as confusing. 

*But vitiation is also not a jury question*.  *See*

*Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356-57 (Fed. Cir. 2012) ("'Vitiation' is not an

exception to the doctrine of equivalents, but a legal determination that 'the evidence is such that

no reasonable jury could determine two elements to be equivalent.'") (quoting *Warner-Jenkinson*

*Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997)).  Although Defendants have asked

the Court to request an advisory opinion on vitiation from the jury, the Court has indicated it is

not inclined to do so.  Dkt. No. 178 (1/31/2018 Hr'g Tr.) at 110-12.

These hypothetical media are too clever by half.  They go far beyond speculative – they

are trumped up ideas that have no connection to reality.  Defendants have real media to argue

about, if the Court permits any such argument –            .  These proposed

alternatives are just thinly disguised efforts to argue that the '083 patent is obvious and is not

infringed.  Such opinions should come from Dr. Glacken, not Dr. Frohlich.  And there are

12

legitimate issues for the jury to resolve – not falsely inserted notions of ensnarement and vitiation.

*       *       *

For the above reasons, the Court should grant Janssen's motion *in limine* and preclude Dr. Frohlich from testifying about liability issues, either expressly or in the guise of non-infringing alternatives testimony.  The opinions Dr. Frohlich should be precluded from offering include, but are limited to, those disclosed in paragraphs 32-46, 116-136, 146-147, 152-159, 166-179, 197-199, 204-212, 255-280, 290-291 of his expert report (Janssen MIL Ex. 12) as discussed above.

### Janssen's MIL No. 12: To Exclude Evidence or Argument Regarding Purely Theoretical Non-Infringing Alternatives

In the event the Court denies Janssen's summary judgment motion with respect to Defendants' non-infringing alternatives defense (Dkt. No. 246), Janssen moves *in limine* to preclude Defendants from presenting evidence, testimony, or argument regarding purely theoretical non-infringing alternatives that Celltrion has never attempted to implement in the real world and that have no basis in the record.  This evidence should be excluded because: (1) it is theoretical and speculative and therefore irrelevant under *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); and (2) it is confusing, complicated and redundant, and should be excluded under Rule 403.  Defendants and their experts should be limited to discussing the only two alleged non-infringing alternatives that have any nexus to reality (although they have never been implemented and are therefore still theoretical): (1) non-infringing cell culture media produced at HyClone's Singapore facility; and (2) ██████████

████████.

Defendants' three other proposed non-infringing alternatives – ████████████

████████████████████████████████

13

██████████████████████████████ – are theoretical in the extreme, as

Celltrion has never even considered them in the real world, let alone attempted to implement

them.  Permitting Defendants and their experts to discuss these completely hypothetical

alternatives would turn this trial into a circus of conjecture and speculation, confusing the jury

and inflating the time required for trial by days if not weeks – all in the service of litigating

proposed non-infringing alternatives that cannot possibly meet the standard set forth in *Grain*

*Processing*.  This spectacle of speculation would unfairly prejudice Janssen, confuse the issues,

mislead the jury, and waste the time of everybody involved.  The Court should accordingly

preclude Defendants from presenting evidence or expert testimony regarding these purely

speculative proposed non-infringing alternatives under *Grain Processing* and Rule 403.

## I.      EVIDENCE OF PURELY THEORETICAL NON-INFRINGING ALTERNATIVES SHOULD BE EXCLUDED UNDER *GRAIN PROCESSING*

As set forth in Janssen's motion for summary judgment on the issue of non-infringing

alternatives, it is now beyond reasonable dispute that there was no acceptable non-infringing

alternative to the accused Celltrion cell media "on the market" at the time of first infringement.

Dkt. No. 246, at 1-3.  Because there was no acceptable non-infringing alternative on the market,

under the Federal Circuit's decision in *Grain Processing*, Defendants bear the burden at trial of

proving that a non-infringing alternative that was not sold on the market was readily available on

the date of first infringement.  *See* 185 F.3d at 1353.  However, as the Federal Circuit

emphasized, if Defendants' evidence ultimately amounts to "[m]ere speculation" and

"theoretical[] possib[ilities]," it cannot meet this burden.  *Id.*

Defendants claim they can meet their burden at trial by proving that any one of ***five***

different alleged non-infringing alternatives was available on the date of first infringement.

14

However, in the real world, Celltrion has only ever tested or even tried to implement the

Singapore facility and ███ .  Even these supposed alternatives are theoretical and speculative, as

they have never been proved to work as non-infringing substitutes.  But if Defendants are

permitted to present any supposed alternatives at trial, these are the only alternatives Defendants

should be permitted to present, as they are the only two that would not require days or weeks of

confusing, speculative testimony, and the only two that could possibly meet the standard set forth

in *Grain Processing*.

In assessing Defendants' alleged non-infringing alternatives, the most relevant evidence

is what Celltrion actually did in the real world.  In the real world, Celltrion *actually* developed

the ability to manufacture cell culture media at HyClone's Singapore facility ████████

███████████████████████████████████████ .  Janssen MIL

Ex. 12 (Frohlich Rep.) ¶ 160, 229.  Of course, in the real world neither of these was a readily

available and acceptable alternative to the infringing cell culture media.  Even to this day, the

Singapore facility does not manufacture non-infringing cell culture media.  *See* Janssen MIL Ex.

14 (Lit Supp. Rep.) ¶¶ 1-15. ██████████████████████

███████████████████████████████████████

███████████████████  Thus, even these alternatives are theoretical.

Nonetheless, if Defendants are permitted to present a defense based on non-infringing

alternatives, they should be limited to these two alternatives, both to limit the risk of jury

confusion and because they are the only ones with any conceivable claim to reality.

Defendants' other alleged non-infringing alternatives – ██████████████

███████████████████████████████████████

██████████████████████ – have never been tested or tried in the

real world, or even considered by Celltrion as possibilities.  As set forth in detail in Janssen's

summary judgment motion (Dkt. No. 246), all of the evidence and expert testimony about these

alleged non-infringing alternatives would amount to a purely hypothetical and confusing exercise

involving many years of imaginary development, testing, validation, contract negotiations,

regulatory approval, manufacturing, and sales.  Presenting this evidence and expert testimony

would be complex, elaborate, and time-consuming.  Indeed, it would require days if not weeks of

trial time, as shown by Defendants' hundreds of pages' worth of expert reports on the issue of

non-infringing alternatives and the similarly lengthy responses from Janssen's experts.  Dkt. No.

247 Exs. 1, 10, 13, 22.

This evidence should be excluded even if Defendants are permitted to present a non-

infringing alternatives defense.  First, such evidence does not meet the *Grain Processing*

standard precluding an alleged infringer from relying upon "[m]ere speculation" and

"theoretical[] possib[ilities]."  185 F.3d at 1353.

> When an alleged alternative is not on the market during the accounting period, a
> trial court may reasonably infer that it was not available as a noninfringing
> substitute at that time. The accused infringer then has the burden to overcome this
> inference by showing that the substitute was available during the accounting
> period. ***Mere speculation or conclusory assertions will not suffice to overcome
> the inference.*** After all, the infringer chose to produce the infringing, rather than
> noninfringing, product. Thus, the trial court must proceed with caution in
> assessing proof of the availability of substitutes not actually sold during the period
> of infringement. Acceptable substitutes that the infringer proves were available
> during the accounting period can preclude or limit lost profits; ***substitutes only
> theoretically possible will not.***

*Id*. (emphases added) (citations omitted).  Heeding this warning, every decision of which we are

aware that has relied on an alleged non-infringing alternative that was not actually on the market

at the time of first infringement concerned an alleged alternative that nonetheless actually

existed, if only at some later time.  *E.g.*, *Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382

(Fed. Cir. 2013) (high-performing fully regulated converters available for commercial use, but years after infringement); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011) (LaBr$^3$-based scanner was a year and a half behind the infringing LYSO-based scanner); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003) (alternative Type 5 machine actually developed and operational, albeit nine years after infringement began).  The claimed alternative in each of these cases was rejected as not readily available, even though it could be proved to be real and to work.  There is no basis for this Court to deviate from this salutary approach, which is required by *Grain Processing*, by inviting jury to speculate about complicated and untested supposed alternatives, which have at best minimal probative value.

## II.   EVIDENCE OF PURELY THEORETICAL NON-INFRINGING ALTERNATIVES SHOULD BE EXCLUDED UNDER RULE 403

Second, any evidence, testimony, or argument on these purely hypothetical alleged non-infringing alternatives should be excluded under Rule 403 as "misleading, wasteful, confusing, or cumulative."  *United States v. Shay*, 57 F.3d 126, 134 (1st Cir. 1995).  Defendants' three purely hypothetical alleged non-infringing alternatives are untested Rube Goldberg concepts – complex, convoluted, fragile, indirect, and worst of all, *never-been-tried* ways of achieving a goal that Celltrion demonstrably tried to achieve in a more straightforward manner (the Singapore facility) in the real world.  They would require complicated and unnecessary factual development and legal instructions. ███████████████████████████████

███████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

17

██████████████████████████████████████████████████
██████████████████████████████████████   These problems just multiply as one walks through the details of these three speculative scenarios.  Permitting Defendants' experts to testify as to many different non-infringing alternatives would confuse the jury by leading it to focus on the quantity, and not the quality, of expert testimony on the issue of non-infringing alternatives, which is the precise reason why courts often limit the number of expert opinions a party may offer on a single issue at trial.  *See Cash v. United States*, No. 1:15-cv-00518-JAW, 2016 U.S. Dist. LEXIS 148032, at *11-12 (D. Me. Oct. 26, 2012).

In the end, if Defendants are permitted to present a non-infringing alternatives defense, they need only prove one readily available and acceptable non-infringing alternative, not five, to defeat Janssen's lost profits claim.  There is nothing unfair about limiting Defendants to their two most concrete arguments.  And it is fair to the jury, the parties and the Court to do just that.  The Court should preclude Defendants from offering evidence, testimony, or argument on these three alleged non-infringing alternatives at trial under Rule 403.

\*       \*       \*

Under *Grain Processing* and Rule 403, the Court should preclude Defendants from presenting evidence, testimony, or argument regarding alleged non-infringing alternatives that Celltrion never considered in the real world.

18

Dated:  May 18, 2018

Respectfully Submitted,

JANSSEN BIOTECH, INC.

By its attorneys,
*/s/ Alison C. Casey*_____
NUTTER MCCLENNAN & FISH LLP
Heather B. Repicky (BBO #663347)
Alison C. Casey (BBO# 688253)
155 Seaport Boulevard
Boston, MA  02210
Tel.: 617-439-2000
Fax: 617-310-9000
hrepicky@nutter.com
acasey@nutter.com

PATTERSON BELKNAP WEBB &
TYLER LLP
Gregory L. Diskant (*pro hac vice*)
Irena Royzman (*pro hac vice*)
Aron Fischer (*pro hac vice*)
Andrew D. Cohen (*pro hac vice*)
David S. Kleban (*pro hac vice*)
1133 Avenue of the Americas
New York, NY  10036
Tel.: 212-336-2000
Fax: 212-336-2222
gldiskant@pbwt.com
iroyzman@pbwt.com
afischer@pbwt.com
acohen@pbwt.com
dkleban@pbwt.com

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.

/s/ *Alison C. Casey*_____