IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| JANSSEN BIOTECH, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-11008-MLW |
| | ) | |
| CELLTRION HEALTHCARE CO., LTD., | ) | **CONFIDENTIAL** |
| CELLTRION, INC., and | ) | **FILED UNDER SEAL** |
| HOSPIRA, INC., | ) | |
| Defendants. | ) | |
| | ) | |

---

**JANSSEN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 13
TO PRECLUDE EVIDENCE OR ARGUMENT THAT JANSSEN IS EMPLOYING A
DOUBLE STANDARD FOR INFRINGEMENT AND VALIDITY**

10380748

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

I.      The Legal Standards for Infringement and Obviousness Are Completely Different ..........2

II.     Janssen's Infringement Case Relies on the Interchangeability of Certain
        Ingredients and the Non-Criticality of the Precise Endpoints of Certain Claimed
        Concentration Ranges .........................................................................................................5

III.    Janssen's Nonobviousness Case Relies on the Infinite Number of Possibilities
        That Are Available in Non-Obvious Combinations ............................................................7

IV.     Defendants' Remaining Arguments Regarding Supposed Inconsistencies in
        Janssen's Case Are Baseless...............................................................................................11

CONCLUSION......................................................................................................................12

10380748

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001)..........................................................................11

*Belden Inc. v. Berk-Tek LLC*,
  805 F.3d 1064 (Fed. Cir. 2015)............................................................................7

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
  707 F.3d 1342 (Fed. Cir. 2013)............................................................................5

*Cheese Sys. v. Tetra Pak Cheese & Powder Sys.*,
  725 F.3d 1341 (Fed. Cir. 2013)............................................................................2

*Cohesive Techs., Inc. v. Waters Corp.*,
  543 F.3d 1351 (Fed. Cir. 2008)..........................................................................10

*Eisai Co. v. Dr. Reddy's Labs., Ltd.*,
  533 F.3d 1353 (Fed. Cir. 2008)............................................................................8

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
  655 F.3d 1291 (Fed. Cir. 2011)............................................................................8

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966)..................................................................................4, 7, 11

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
  676 F.3d 1063 (Fed. Cir. 2012)........................................................................3, 8

*In re Peterson*,
  315 F.3d 1325 (Fed. Cir. 2003)............................................................................8

*Intendis GmbH v. Glenmark Pharm. Inc., USA*,
  822 F.3d 1355 (Fed. Cir. 2016)..........................................................................11

*KSR Int'l Co. v. Teleflex, Inc.*,
  550 U.S. 398 (2007)......................................................................................3, 8, 9

*Personal Web Techs., LLC v. Apple, Inc.*,
  848 F.3d 987 (Fed. Cir. 2017)..............................................................................8

*Pozen, Inc. v. Par Pharm., Inc.*,
  696 F.3d 1151 (Fed. Cir. 2012)..........................................................................10

10380748

*Rolls-Royce, PLC v. United Techs. Corp.*,
    603 F.3d 1325 (Fed. Cir. 2010)..................................................................3

*Siemens Medical Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011)..................................................................4

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011)..................................................................3

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)............................................................................3, 5, 6

**Statutes**

35 U.S.C. § 103...............................................................................2, 3, 4, 7

## INTRODUCTION

Through argument and witness testimony Defendants propose to undertake an extremely prejudicial and improper effort to confuse the jury about the issues they must decide. They wish to argue that "Janssen's experts are arguing for a double standard: one for infringement, and an entirely different one for validity." Janssen MIL Ex. 15 (Glacken Reply Rep.) ¶ 161; s*ee also id*. ¶¶ 5-12. That is a false charge. Janssen's experts have taken consistent positions on the scientific facts. They have then applied their analysis of the facts to reach conclusions as to infringement and obviousness, which are governed by "entirely different standards" ***under the applicable law***. Defendants' criticisms of Janssen's experts for correctly applying the law, as it has been provided to them, could have a poisonous effect on the trial, rendering it essentially lawless. Defendants should not be permitted to make their "double standard" argument.[1]

The heart of Defendants' argument is that (1) some ingredients in the '083 patent are interchangeable with other known compounds containing the same active ingredients, and (2) the precise endpoints of some of the claimed concentration ranges are not critical. *See id.* ¶¶ 6-7, 10-11. These propositions are true as a matter of science and Janssen's experts rely upon them for purposes of all their analyses. That is why Defendants do not really mount a non-infringement defense. After all, the Celltrion media has all the claimed ingredients of the '083 patent with only 12 ingredients out of the claimed concentration ranges by – indisputably – insignificant amounts. Those facts are just as true when it comes to analyzing validity – and Janssen's experts rely upon them for that analysis also. But they do not add up to a validity defense because, as

---

[1] Janssen raised this issue in its *in limine* motion directed to Dr. Glacken's testimony (Case No. 15-cv-10698, Dkt. No. 341), but that portion of Janssen's motion has not yet been decided. The present motion is addressed to any effort by Defendants to make this argument, through Dr. Glacken, through cross-examination or through attorney argument.

1

discussed below – and as Defendants concede – the standards of validity and infringement are completely different.

Simply put, there is no inconsistency in concluding that (1) the '083 patent is infringed by Celltrion's media because its small concentration differences are not substantial, and (2) the '083 patent is valid because it claims a unique and non-obvious combination of particular ingredients and particular concentrations, all known in the art but never before combined in the fashion claimed and selected from among billions of possibilities.  In the end, and prior to trial, the Court will set the legal rules by which the infringement and validity analyses are undertaken, and all witnesses and counsel will abide by them.  Defendants should not be permitted to confuse and mislead the jury by accusing Janssen's experts of applying a "double standard."

## I.     The Legal Standards for Infringement and Obviousness Are Completely Different

The case law makes clear that there are many differences between infringement and obviousness.  They include:

(1)     <u>Different comparisons</u>.  An obviousness analysis considers whether the claimed invention is obvious in light of the prior art; the accused product does not matter.  35 U.S.C. § 103(a) (obviousness based on "the differences between the claimed invention and the prior art").  An infringement analysis compares the claimed invention to the accused product, not the prior art.

(2)     <u>Hindsight</u>.  An obviousness analysis forbids the use of hindsight, so the prior art must be considered on its own, without knowledge of the claimed invention.  *See Cheese Sys. v. Tetra Pak Cheese & Powder Sys.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) (obviousness analysis requires "avoidance of

even a hint of hindsight").  Infringement requires comparison of the claimed

invention to the accused product.

(3)     Motivation.  An obviousness analysis requires motivation to combine

elements of the prior art into a claimed combination.  *Rolls-Royce, PLC v.*

*United Techs. Corp.*, 603 F.3d 1325, 1338 (Fed. Cir. 2010) (court "flexibly

seeks evidence from before the time of the invention in the form of some

teaching, suggestion, or even mere motivation (conceivably found within the

knowledge of an ordinarily skilled artisan) to make the variation or

combination"); *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed.

Cir. 2011) ("obviousness requires the . . . showing that a person of ordinary

skill at the time of the invention would have selected and combined those

prior art elements in the normal course of research and development to yield

the claimed invention.") (citing *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398,

418 (2007)).  Motivation is irrelevant to an infringement analysis.

(4)     As a whole.  An obviousness analysis requires consideration of the claimed

invention "as a whole."  35 U.S.C. § 103(a) (whether "the claimed invention

as a whole would have been obvious").  An infringement analysis under the

doctrine of equivalents must be element-by-element.  *Warner-Jenkinson Co. v.*

*Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).

(5)     Relevant time.  An obviousness analysis considers the prior art at the time of

the claimed invention.  35 U.S.C. § 103(a) (obviousness assessed "at the time

the invention was made").  An infringement analysis takes place at the time of

infringement.  *Warner-Jenkinson*, 520 U.S. at 37.

3

(6)      <u>Secondary considerations.</u>   Secondary considerations can make a patent non-

obvious all by themselves.  *In re Cyclobenzaprine Hydrochloride Extended-*

*Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012)

(secondary considerations, "when considered with the balance of obviousness

evidence in the record, guard as a check against hindsight bias").  Secondary

considerations are irrelevant to the infringement analysis.

Recognizing these many differences, the Federal Circuit has squarely rejected efforts like

those by Defendants to treat the analysis of obviousness and infringement under the doctrine of

equivalents as somehow the same.  In *Siemens Medical Solutions USA, Inc. v. Saint-Gobain*

*Ceramics & Plastics, Inc.*, 637 F.3d 1269 (Fed. Cir. 2011), the infringer raised an argument that,

on the somewhat complex facts of that case, a finding of equivalence for the accused product

was tantamount to a finding of obviousness for the asserted patent.  *Id.* at 1279.  The Federal

Circuit had no interest in the argument.  Obviousness and equivalence, it held, "require different

analytical frameworks."  *Id.* at 1282.  The doctrine of equivalents, on the one hand, "typically

involves application of the insubstantial differences test."  *Id.*  "Obviousness, by contrast,

requires analysis under the four *Graham* factors."  *Id.*  Obviousness considers factors beyond

those relevant to an equivalence analysis, such as "objective evidence of commercial success" or

the "level of predictability in the art."  *Id.*  Not only are the relevant modes of analysis different,

but the relevant timeframes differ as well.  Under the doctrine of equivalents, the proper time

frame for evaluating equivalency "is at the time of infringement, not at the time the patent was

issued."  *Id.* (quotation marks omitted).  In contrast, "obviousness asks whether a claimed

invention 'would have been obvious at the time the invention was made.'"  *Id.* (quoting 35

U.S.C. § 103(a)).

4

In their opposition to Janssen's original motion raising this issue, Defendants conceded that "[t]o be sure, these legal tests [for infringement and obviousness] are different."  Case No. 15-cv-10698, Dkt. No. 385, at 14-15.  They refused to acknowledge, however, that because infringement and obviousness are different, Janssen is not applying a "double standard" by analyzing the two questions differently.  A review of Janssen's arguments makes the consistency of its analyses perfectly clear.

## II.    Janssen's Infringement Case Relies on the Interchangeability of Certain Ingredients and the Non-Criticality of the Precise Endpoints of Certain Claimed Concentration Ranges

Under the doctrine of equivalents, the "essential question" is simply:  "Does the accused product . . . contain elements identical or equivalent to each claimed element of the patented invention?"  *Warner-Jenkinson*, 520 U.S. at 40.[2]  The answer to the infringement question is based simply on a comparison of two media formulas:  the '083 formula is in the patent and the formula of Celltrion's accused media has been uncovered in discovery.  The jury is permitted, indeed required, to consider both – as they are today – and compare them one to the other to conduct the obviousness analysis.

The analysis must proceed element by element.  Each element considered separately must be met for there to be infringement.  *See id.*; *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347-48 (Fed. Cir. 2013).  Here, the Celltrion media have all of the required ingredients of the '083 patent and thus no further analysis of the components is necessary.  The components literally infringe.  With respect to the concentrations, most also literally infringe the concentration ranges claimed in the patent.  There are 12 concentration differences and the

---

[2] Non-infringement arguments can also be based on estoppel or ensnarement, but neither issue is for the jury.  There is no estoppel claim here and ensnarement is fully addressed in Janssen's response to Defendant's motion on that issue.  Dkt. No. 259.

dispute between the parties on infringement is entirely focused on the question whether the concentrations that are present in the accused media are substantially equivalent to the concentrations claimed in the '083 patent.  That analysis was conducted limitation-by-limitation. It would have been improper to consider the accused media as a whole.  *See Warner-Jenkinson*, 520 U.S. at 29 ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.").

In conducting that analysis, Janssen's experts have relied (in part) on the undisputed scientific propositions that (1) some of the claimed ingredients in the '083 patent have interchangeable substitutes, and (2) the precise endpoints of the concentration ranges in the '083 patent are not critical in that concentrations somewhat beyond the ranges may function equivalently.  Relying on the first proposition with respect to ingredients, for example, Dr. Butler noted that while the amount of L-asparagine hydrate in the accused media is below the range in the '083 patent, there is a second, interchangeable source of asparagine in the accused media, L-asparagine, and that by combining the two amounts of asparagine, the accused media has an amount within the range.  Janssen MIL Ex. 16 (Butler Opening Infringement Rep.) ¶¶ 81-85.  Dr. Butler concluded (and Dr. Wurm's experiments confirmed) that for this reason there was a substantial equivalent in the accused media to the L-asparagine hydrate concentration limitation in the '083 patent.  Dr. Glacken did not disagree.  Dkt. No. 161 (1/31/2018 Hr'g Tr.) at 70; Janssen MIL Ex. 17 (Glacken Tr.) at 201:19-202:03.

Relying on the second proposition with respect to concentrations, Dr. Butler recognized that there was a range of equivalent concentrations on the plateau of the trapezoidal graph identified by Dr. Ham.  Considering the twelve specific differences at issue one-by-one, limitation-by-limitation, he concluded that the particular concentration differences between the

'083 patent and the accused media were in fact insubstantial.  For example, there is a four-fold difference in the amount of sodium phosphate in the accused media than in the '083 patent, but in Dr. Butler's experience the amount of phosphate is not critical and even 20-fold differences have been observed.  Janssen MIL Ex. 16 (Butler Opening Infringement Rep.) ¶¶ 91-93.  He concluded (and Dr. Wurm's experiments confirmed) that this difference was insubstantial.  Again Dr. Glacken did not disagree.

In sum, Dr. Butler's essentially undisputed analysis of the science underlying cell culture media development leads to the conclusion that Defendants' cell culture media infringe the claims of the '083 patent under the doctrine of equivalents.  Dr. Butler's analysis is scientifically and legally correct.  Although Defendants may dispute his conclusions at trial, they have no legitimate basis to attack the legal framework of his analysis or accuse him of inconsistencies.

**III.   Janssen's Nonobviousness Case Relies on the Infinite Number of Possibilities That Are Available in Non-Obvious Combinations**

Defendants also have no basis to accuse Dr. Butler of inconsistencies based on his nonobviousness opinions.  Under 35 U.S.C. § 103, the jury must apply the four-part test identified in *Graham v. John Deere Co.*, 383 U.S. 1 (1966).  The four *Graham* factors to be considered are: (1) "the scope and content of the prior art," (2) the "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) "secondary considerations [such] as commercial success, long felt but unsolved needs, failure of others, etc."  *Id.* at 17.  As explained above, the obviousness inquiry is completely different from the analysis of infringement under the doctrine of equivalents and Defendants do not dispute this.

Defendants' "double standard" charge rests on an incorrect and improper view of the law of obviousness.  Defendants point to the interchangeability of certain ingredients and the non-criticality of some concentrations and announce – with literally nothing more – that the '083

7

patent must be obvious because an artisan "could" or "might" have come up with it.  Janssen

MIL Ex. 17 (Glacken Tr.) at 140:23-141:3, 149:12-17, 213:24-214:3, 215:12-20.  But this is

simply an argument that the claimed combination was technically feasible, not that it was

obvious.  *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1073 (Fed. Cir. 2015); *Personal Web

Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017).  For the reasons Janssen has

presented in its opposition to Defendants' ensnarement motion (Dkt. No. 259), Defendants'

analysis is contrary to the law of obviousness and is wholly improper.[3]

        The law of obviousness rejects Defendants' position that whenever the art contains many

possibilities within the knowledge of a person of ordinary skill in the art, any and all

combinations must be "obvious to try" and therefore obvious.  Rather, that mode of analysis

works only where the universe of choices provided by the prior art is small; otherwise there must

be a motivation to make the particular combination claimed in the challenged patent.

*Cyclobenzaprine*, 676 F.3d at 1072 (reliance on an "obvious to try" theory "is insufficient unless

it indicates the possible options skilled artisans would have encountered were 'finite,' 'small' or

'easily traversed,' and that the skilled artisan would have had a reason to select the route that

produced the claimed invention"); *Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1359

(Fed. Cir. 2008) ("[T]he Supreme Court's analysis in *KSR* presumes that the record before the

time of the invention would supply some reasons for narrowing the prior art universe to a 'finite

number of identified, predictable solutions.'") (quoting *KSR*, 550 U.S. at 421).  *Compare

Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1306 (Fed. Cir.

2011) ("where the 'disclosed range [in the prior art] is so broad as to encompass a very large

---

[3] Even if Defendants had applied the proper mode of analysis (and they did not), that would not make the
'083 patent obvious.  For example, the ferric ammonium citrate limitation of the '083 patent is neither an
obvious component of a cell culture media nor is it interchangeable with other iron sources.

8

number of possible distinct compositions,'" there is no presumption of obviousness), *with In re Peterson,* 315 F.3d 1325, 1330 (Fed. Cir. 2003) (unlike situation where "the disclosed range [in the prior art] is so broad as to encompass a very large number of possible distinct compositions," a narrow range by itself "provides the motivation to determine where in a disclosed set of percentage ranges is the optimum combination of percentages").

In this case, as Dr. Glacken has concluded, the choices available to an artisan are almost "infinite." *See* Dkt. No. 260, JSOF Ex. 5 (Exhibit 10 to Dr. Glacken's Opening Expert Report), at CELLREM-0345754 (there are "almost an infinite number of possible formulations"); Janssen MIL Ex. 17 (Glacken Tr.) at 212:5-213:2. Thus, as *KSR* states, a patent is not obvious absent "a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." 550 U.S. at 418. "This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense is already known." *Id.* at 418-19.

For this reason, it is not inconsistent to accept the facts – as Janssen does – that there are interchangeable substitutes for certain ingredients in the '083 patent, and that some of the endpoints of the concentrations ranges may be non-critical, but to conclude that the art provides no motivation to make the unique combination – from among trillions of choices – that Janssen created. *See* Janssen MIL Ex. 15 (Glacken Reply Rep.) ¶¶ 10-11. For instance, if one wished to replace the sodium metavanadate in the prior art GSK formula, there are 5 interchangeable choices, and if one wanted to replace the ferric fructose, there are 11 choices. And if one wished to replace them both, there are 55 unique combinations of just those two components. Thus, even limiting the analysis to just those two limitations, rather than considering the claim "as a

9

whole," for the patent to be obvious, there must be a motivation to select one particular combination from among those 55 – and there is not.

Likewise, it is not inconsistent to accept the proposition that many of the concentration ranges are not critical, but to note that the claim nonetheless requires precise ranges.  *See id.* ¶¶ 6-7.  That means for the ranges in the '083 patent to be obvious, the prior art must teach values that actually fall within those ranges, in contrast to less precise patents that use words of approximation to claim ranges that are "about" or "approximately" particular values.  *Compare Cohesive Techs., Inc. v. Waters Corp.*, 543 F.3d 1351 (Fed. Cir. 2008) (use of the word "about" in a claim including the limitation "greater than about 30 μm" broad enough that claim should be construed to literally include equivalents), *with Pozen, Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1170 (Fed. Cir. 2012) ("substantially all" is not so broad as to literally include equivalents). Because the claims of the '083 patent contain specific endpoints and there are a near-infinity of choices, there must a motivation to create a combination actually within those ranges, not one just somewhere nearby – and there is not.

Thus, considering the invention as a whole, one would need a motivation to make changes in the ingredients in the prior art GSK media – and that motivation encompasses all of its components, not just the ones identified with hindsight – and one would also need motivation to adjust the concentrations identified as preferred in the GSK media.  The result is that there are trillions of choices and no reason to wind up with the unique combination – considered as a whole – created by the Janssen scientists.  And secondary considerations require consideration of the fact that the resulting combination ████████████████████████████████ ████████████████████  Dkt. No. 260, at JSOF ¶ 66.  This analysis is at the heart of Janssen's position that the formula of the '083 is both novel and non-obvious.  If Janssen is correct on the

law, Defendants' arguments about inconsistency are plainly wrong and would mislead and confuse the jury.  And if Janssen is wrong about the law, the Court will so advise it, and Janssen will present a position consistent with whatever instructions the Court provides.  Either way, Defendants' "double standard" argument would confuse the jury about the applicable law and should be excluded.

## IV.   Defendants' Remaining Arguments Regarding Supposed Inconsistencies in Janssen's Case Are Baseless

Defendants make a few other, incorrect, arguments alleging that Janssen's case is inconsistent.  They note, correctly, that claims must be construed consistently both for validity and infringement.  *See, e.g.*, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  But there is no issue of claim construction here.  Application of the doctrine of equivalents is not a question of claim construction; it is a question of factual proof whether a particular difference is substantial.  *See, e.g.*, *Intendis GmbH v. Glenmark Pharm. Inc., USA*, 822 F.3d 1355, 1360 (Fed. Cir. 2016) ("Infringement under the doctrine of equivalents is a question of fact . . . .").  Moreover, as noted, Janssen is construing the claims in exactly the same way for both infringement and validity.

Defendants also suggest that there is some imagined inconsistency in considering the unclaimed ingredients irrelevant to the infringement analysis, yet relevant to the obviousness analysis.  Janssen MIL Ex. 15 (Glacken Reply Rep.) ¶¶ 8-9.  For infringement, the claim has been construed by the Court to be a "comprising" claim and so additional ingredients may be added to the accused media without changing the infringement analysis. That is the necessary consequence of the claim construction and it is correct.  For obviousness, considering the prior art GSK media without hindsight, there are a total of 90 ingredients in its formula.  Defendants wish to focus only on the 52 that are only in the '083 patent, but that is possible only by using

11

hindsight, which is forbidden.  Using foresight, Dr. Butler noted that a scientist who wished to modify the GSK media would consider modification of any and all of the 90 ingredients.  There is nothing inconsistent in pointing that out.  Also, using foresight, Dr. Butler pointed out that there was a long-standing need for a chemically defined media, such as claimed in the '083 patent.  That is a classic secondary consideration of non-obviousness, *Graham*, 383 U.S. at 17 ("secondary considerations [include] long felt but unsolved needs"), and that is what the '083 patent discloses, notwithstanding the fact that it also permits the addition of other ingredients (as Defendants have chosen to do) that make the media no longer chemically defined.

## CONCLUSION

Janssen is prepared for a fair fight over infringement and validity under the rules of law, as construed by this Court.  But infringement and validity are separate topics governed by different rules.  Defendants should not be permitted to commingle the two and accuse Janssen of inconsistencies that do not exist.  Doing so would do more than confuse the jury about the applicable law; it would outright mislead them into the incorrect belief that equivalence and obviousness are based on the same legal standards.

10380748

Dated:  May 18, 2018

Respectfully Submitted,

JANSSEN BIOTECH, INC.

By its attorneys,
*/s/ Alison C. Casey*_____
NUTTER MCCLENNAN & FISH LLP
Heather B. Repicky (BBO #663347)
Alison C. Casey (BBO# 688253)
155 Seaport Boulevard
Boston, MA  02210
Tel.: 617-439-2000
Fax: 617-310-9000
hrepicky@nutter.com
acasey@nutter.com

PATTERSON BELKNAP WEBB &
TYLER LLP
Gregory L. Diskant (*pro hac vice*)
Irena Royzman (*pro hac vice*)
Aron Fischer (*pro hac vice*)
Andrew D. Cohen (*pro hac vice*)
David S. Kleban (*pro hac vice*)
1133 Avenue of the Americas
New York, NY  10036
Tel.: 212-336-2000
Fax: 212-336-2222
gldiskant@pbwt.com
iroyzman@pbwt.com
afischer@pbwt.com
acohen@pbwt.com
dkleban@pbwt.com

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.

/s/ *Alison C. Casey*_____