IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC.,<br>    Plaintiff,<br><br>  v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.,<br>    Defendants. | Civil Action No. 1:17-cv-11008-MLW |

**JANSSEN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 14
TO BIFURCATE TRIAL**

10272412

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.   The Court Should Exercise Its Discretion to Bifurcate the Damages and Liability Phases of the Trial Before a Single Jury ...................................................................2

    A.   The Complex Damages Issues Present a Substantial Risk of Jury Confusion and Unfair Prejudice if Tried Simultaneously with Liability .................3

        1.   The Damages Analysis Presents Several Points of Likely Confusion with Liability Issues ....................................................................4

            a.   The Calculation of Lost Profits and a Reasonable Royalty is Complex ........................................................................4

            b.   Non-Infringing Alternatives Present Several Points of Confusion with Liability and Validity Issues ..................................6

        2.   Premature Discussion of Damages Could Unfairly Prejudice the Jury's Liability Analysis ..................................................................8

        3.   Trying Damages Prior to a Liability Verdict Would Require Presentation of Alternative Damages Analyses ..........................................9

        4.   Willfulness Should be Tried Together with Infringement and Validity ..................................................................................................9

    B.   Trying Damages Separately Would Save Substantial Judicial and Party Resources ......................................................................................................11

II.  Argument and Evidence Regarding Damages Should be Precluded from the Liability Phase ........................................................................................................13

CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arctic Cat, Inc. v. Bombardier Recreational Prods.*,
　876 F.3d 1350 (Fed. Cir. 2017) ................................................................................................10

*Ciena Corp. v. Corvis Corp.*,
　210 F.R.D. 519 (D. Del. 2002) ................................................................................................2, 9

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
　318 F. Supp. 1116 (S.D.N.Y. 1970) ...........................................................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
　563 U.S. 754 (2011) ..................................................................................................................10

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
　185 F.3d 1341 (Fed Cir. 1999) ....................................................................................................7

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
　136 S. Ct. 1923 (2016) ..............................................................................................................10

*Hewlett-Packard Co. v. GenRad, Inc.*,
　882 F. Supp. 1141 (D. Mass. 1995) ............................................................................................2

*In re Innotron Diagnostics*,
　800 F.2d 1077 (Fed. Cir. 1986) ...................................................................................................2

*In re Seagate Tech., LLC*,
　497 F.3d 1360 (Fed. Cir. 2007) .................................................................................................10

*Laitram Corp. v. Hewlett-Packard Co.*,
　791 F. Supp. 113 (E.D. La. 1992) .....................................................................................3, 5, 6

*Lucent Techs., Inc. v. Gateway, Inc.*,
　580 F.3d 1301 (Fed Cir. 2009) ....................................................................................................5

*Lund v. Henderson*,
　807 F.3d 6 (1st Cir. 2015) ...........................................................................................................2

*Novartis Corp. v. Teva Pharms. USA, Inc.*,
　No. Civ. 04-4473, 2008 U.S. Dist. LEXIS 125223 (D.N.J. Oct. 28, 2008) ................................3

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
　180 F.R.D. 254 (D.N.J. 1997) .................................................................................................3, 9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Quantum Corp. v. Tandon Corp.*,
   940 F.2d 642 (Fed. Cir. 1991) .................................................................................. 9, 10

*Smith v. Alyeska Pipeline Serv. Co.*,
   538 F. Supp. 977 (D. Del. 1982), *aff'd without op.*, 758 F.2d 668 (Fed. Cir.
   1984) ............................................................................................................................. 3

*WCM Indus., Inc. v. IPS Corp.*,
   No. 2016-2211, 2018 U.S. App. LEXIS 2949 (Fed. Cir. Feb. 5, 2018) ..................... 10

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   837 F.3d 1358 (Fed. Cir. 2016), *cert. granted on other grounds*, 138 S. Ct.
   734 (2018) ................................................................................................................... 10

*Wyeth v. Abbott Labs.*,
   No. Civ. 08-230, 2010 U.S. Dist. LEXIS 116921 (D.N.J. Nov. 3, 2010) ..................... 3

**Statutes**

28 U.S.C. § 1292(c)(2) ........................................................................................................ 2

35 U.S.C. § 271(f)(1) .......................................................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 42(b) ................................................................................................ 2, 3, 13

**INTRODUCTION**

The trial in this case should be in two phases – first liability and then damages – presented consecutively before a single jury. The damages questions are complex and present several specific points of likely confusion with the liability issues. Trying these issues simultaneously would introduce a substantial risk of confusion and inefficiency into the proceedings. On top of this analytical confusion, a single-phase trial would allow Defendants to introduce unfair prejudice into the liability case by emphasizing the size of Janssen's claimed damages and trying to use that as a purported liability defense. Bifurcation would avoid the dual risk of unfair prejudice and confusion.

Not only would bifurcation before a single jury reduce the risk of confusion and unfair prejudice, it presents the most efficient and convenient procedure for resolving this case. A consolidated trial would require numerous limiting instructions, several alternative damages scenarios, and jury instructions to cover all of the hypothetical interactions between the two phases of the case. A bifurcated proceeding would eliminate these inefficiencies. Given the limited overlap between the two phases, the substantial benefits of bifurcation can be obtained without inconveniencing the parties, the Court, or the jury.

**BACKGROUND**

In June 2016, the parties agreed to bifurcate the damages and liability issues in this case for both discovery and trial. The Court approved and scheduled a liability trial for February 2017. No. 15-cv-10698, Dkt. Nos. 212 and 226. The original liability trial was postponed due to Defendants' motion to dismiss for lack of standing, and the parties were ordered to proceed with damages discovery in June 2017. No. 15-cv-10698, Dkt. No. 574. The question whether trial would be consolidated was left open.

In February 2018, the Court indicated that all issues would be tried before a single jury, but again left open the question whether the trial would be divided into separate phases. Feb. 2, 2018 Hearing Tr. at 24:17-20, Dkt. No. 180. Defendants indicated a preference for a consolidated trial. *Id.* at 25:3:6. Janssen disagreed and suggested that a two-phase trial would reduce confusion and allow for more efficient presentation of evidence. *Id.* at 26:4-6. Janssen now files this motion seeking to bifurcate the trial into two separate phases before a single jury, with the first phase concerning validity, infringement, and willfulness, and the second phase to follow immediately after a liability verdict to determine economic damages.

## ARGUMENT

### I. The Court Should Exercise Its Discretion to Bifurcate the Damages and Liability Phases of the Trial Before a Single Jury

Bifurcation of issues for trial is a matter "peculiarly within the discretion of the trial court." *Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) (internal quotation marks omitted). In exercising that discretion, courts should proceed in the manner "'most likely to result in a just final disposition of the litigation.'" *Hewlett-Packard Co. v. GenRad, Inc.*, 882 F. Supp. 1141, 1157 (D. Mass. 1995) (quoting *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)). In service of this objective, "experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 521 (D. Del. 2002) (internal quotation marks omitted). Recognizing the benefits of bifurcation in patent cases, Congress has expressly provided for interlocutory appeal of patent liability decisions to the Federal Circuit. *See* 28 U.S.C. § 1292(c)(2). Rule 42(b) provides three grounds for bifurcation: (1) convenience; (2) the avoidance of prejudice; and (3) to expedite and economize resolution of the matter. *See* Fed. R. Civ. P. 42(b). All three apply in this case.

2

### A. The Complex Damages Issues Present a Substantial Risk of Jury Confusion and Unfair Prejudice if Tried Simultaneously with Liability

The complexity of patent damages is a well-recognized reason for bifurcation, particularly when "the damages issues are complicated and extensive evidence would be necessary on these issues." *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997); *see also, e.g.*, *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 984 (D. Del. 1982) (trying damages alongside liability "would tend to clutter the record and to confuse the jury"), *aff'd without op.*, 758 F.2d 668 (Fed. Cir. 1984); *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 116-17 (E.D. La. 1992) (bifurcating due to a "substantial risk of the type of prejudice from jury confusion contemplated by Rule 42(b)" if damages were tried alongside liability); *Novartis Corp. v. Teva Pharms. USA, Inc.*, No. Civ. 04-4473, 2008 U.S. Dist. LEXIS 125223, at *5 (D.N.J. Oct. 28, 2008) (bifurcating damages from liability after noting that damages including "lost profits and price erosion theories of economic injury" would complicate the jury's task); *Wyeth v. Abbott Labs.*, No. Civ. 08-230, 2010 U.S. Dist. LEXIS 116921, at *5 (D.N.J. Nov. 3, 2010) ("Bifurcation will allow the jury to focus on the complicated issues of infringement and validity without simultaneously having to consider evidence relating to various theories of damages.").

Bifurcation of damages is particularly warranted in this case because of several factors that heighten the risk of confusion or prejudice. First, the damages inquiry presents several issues that are ripe for confusion with the liability case. Second, a consolidated proceeding would open the door for Defendants to introduce unfair prejudice into the liability inquiry by discussing the amount of damages Janssen seeks in this case. Third, the analysis of two damages issues depends on the date of first infringement – a date that will not be established until a liability verdict is reached.

3

1. **The Damages Analysis Presents Several Points of Likely Confusion with Liability Issues**

The damages issues in this case are ripe for confusion with the liability questions. The calculations themselves are complex, and, if Defendants' non-infringing alternatives defense survives summary judgment, that argument presents numerous specific points of likely confusion with liability issues.

   a. **The Calculation of Lost Profits and a Reasonable Royalty is Complex**

The damages calculations presented in this case are complex, even compared to other patent cases. The hypothetical lost profits and a reasonable royalty analyses are particularly intricate here due to the novel biosimilar context. This point is reflected in the expert reports of the parties' economics experts, both of whom engaged in sophisticated analyses that go far beyond the simple calculation of Janssen's profits or imposition of a running royalty on sales. *See* Janssen MIL Ex. 3 (Expert Report of Dr. Gregory K. Leonard ("Leonard Report")) ¶¶ 92-173; Janssen MIL Ex. 18 (Expert Report of Sean Nicholson, Ph.D. ("Nicholson Report")) ¶¶ 40-158.

The lost profits analysis requires projecting Remicade's sales volume and price in a "but-for" world in which infringing Inflectra was not introduced to the market. That calculation is complicated by several factors. First, the entry of a non-infringing biosimilar (Renflexis) eight months after Inflectra creates a variable with no precedent in the United States pharmaceutical market. *See* Janssen MIL Ex. 3 (Leonard Report) ¶¶ 226, 229; Janssen MIL Ex. 18 (Nicholson Report) ¶¶ 53-55, 74-79, 85-87. Second, the net price for Remicade is not the official list price, but rather the actual price after consideration of rebates, discounts, government formulas, and individual contract incentives – an issue that must be explained to the jury, even if the ultimate net price is not contested. *See* Janssen MIL Ex. 3 (Leonard Report) ¶¶ 204-206; Janssen MIL Ex.

4

18 (Nicholson Report) ¶¶ 29-38. Third, infliximab is not the only treatment for the numerous approved indications. In fact, infliximab is used by a minority of patients. Thus, constructing a "but-for" world in which Defendants' infringement did not occur requires considering the impact of several products other than Remicade and Inflectra. Given this complex market dynamic, the issues of how much of Inflectra's sales would have gone to Remicade in the "but-for" world and how much price erosion was caused by Inflectra's infringing entry on the market are vigorously contested.

In addition to lost profits, the jury will be asked to devise a reasonable royalty based on a hypothetical negotiation. This inquiry will require the jury to set aside the *actual* market projections implicated by lost profits, and instead to ascertain what value the parties would have assigned to a license for the '083 patent during a hypothetical negotiation at the date of first infringement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed Cir. 2009) (the hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began"). This calculation is not only factually complex, but the legal framework which governs the inquiry "reaches at least fifteen separate factors, only a few of which are even tangentially related to liability." *Laitram*, 791 F. Supp. at 116 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). As a result, the parties' damages experts take fundamentally different approaches to analyzing the reasonable royalty issue. *See* Janssen MIL Ex. 3 (Leonard Report) ¶¶ 126-173; Janssen MIL Ex. 18 (Nicholson Report) ¶¶ 93-158. At trial, the fact-finder will not merely need to settle on a number, but rather engage in a complex analysis of which of the two competing approaches is correct.

As with lost profits, the unprecedented context of a biosimilar drug adds further complication.  For example, at least one date of first infringement (October 2009) requires contemplating a hypothetical negotiation several years before any biosimilar had been launched in the United States.  While Janssen maintains faith in the ability of a well-instructed jury to render a legally sound verdict, both lost profits and a reasonable royalty present the jury with complex hypothetical economic analysis, and the jury's task "will be made significantly easier if it is spared this highly technical evidence until the jury is narrowly focused on the specific issues to which the evidence is relevant (the damages inquiry)."  *Laitram*, 791 F. Supp. at 116.

    b.  **Non-Infringing Alternatives Present Several Points of Confusion with Liability and Validity Issues**

In the event that Defendants' non-infringing alternatives argument survives summary judgment, it provides yet another complicated set of issues ripe for confusion with liability issues.  Of Defendants' many proffered non-infringing alternatives, only one, making the accused media in Singapore, was ever attempted, and only one other, ████████████ ████████████████████, relies on any record evidence of what Defendants ever considered.  The remaining options are entirely theoretical.  If they are presented to the jury, as Defendants contend they should be,[1] examining those theoretical options prior to resolving the concrete liability issues would introduce serious confusion.  They would require the jury to engage in a theoretical infringement analysis of hypothetical media for purposes of damages, in addition to assessing infringement of the accused product for purposes of liability.

The Singapore media analysis would also be simplified through bifurcation.  Proceeding in two phases would allow the jury to resolve whether the Singapore media infringes in the real

---

[1] In addition to a motion for summary judgment regarding non-infringing alternatives, Janssen has filed a *separate in limine* motion to exclude testimony regarding non-infringing alternatives other than the Singapore media and ████ ████████████ alternative media.

world under 35 U.S.C. § 271(f)(1) before considering its viability as a non-infringing alternative. If the Singapore media is infringing, it would not present a realistic non-infringing alternative. If it is non-infringing in the real world, then the analysis at the damages phase could focus on the narrow question of whether it was readily available at the date of first infringement. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1351-54 (Fed Cir. 1999).  In either case, the clarity gained by determining whether the Singapore media infringes during a separate liability phase would simplify the damages analysis.

Defendants also hope to present expert testimony on non-infringing alternatives that risks being confused with a liability analysis. Apparently unhappy with Dr. Glacken's performance as an expert on validity and infringement, Defendants have hired Dr. Bert T. Frohlich as a cell culture expert to testify regarding non-infringing alternatives. Much of what Dr. Frohlich has to say is obviously designed to bolster Defendants' liability defenses. But Dr. Glacken is the only defense expert on liability. His problems as a witness cannot be cured by adding Dr. Frohlich as a liability expert at this time. Janssen has moved to exclude the most blatantly liability-directed portions of Dr. Frohlich's opinions in a separate motion. Most importantly, whatever else happens at trial, Dr. Frohlich should not be permitted to testify about alleged alternatives that – in order to be non-infringing – require the jury to be instructed on, and resolve, claims of ensnarement and vitiation. These issues are not properly before the jury in any circumstances and could invite the jury improperly to consider ensnarement and vitiation as liability defenses. *See* Janssen's Motion to Exclude Testimony from Dr. Bert Frohlich Related to Liability (MIL No. 11).  If Dr. Frohlich is permitted to testify at trial with no limitations on his testimony, his testimony would hopelessly conflate liability and damages issues. Even if Dr. Frohlich's testimony is limited, however, a jury hearing both liability and damages would be likely to

improperly consider his opinions in connection with liability. Without bifurcation, the prejudice and confusion introduced by Dr. Frohlich's testimony is effectively unavoidable.

### 2. Premature Discussion of Damages Could Unfairly Prejudice the Jury's Liability Analysis

There is also a risk that the financial stakes of this litigation could unfairly prejudice the jury's liability inquiry. Defendants have made no secret of their desire to argue to the jury that biosimilar drugs lower the costs of health care and that they should win this case for that reason, no matter what the patent law says. That is a plainly improper argument and Janssen has filed an *in limine* motion directed to precluding it. But even if that motion is granted, Defendants will seek to use the large damage award that Janssen seeks to make the same point. In particular, Defendants will try to argue that price erosion damages are inappropriate in a case involving biosimilar drugs, given the purported reduction in healthcare costs offered by biosimilars.

This argument is not relevant even to the damages case. More broadly, discussion of the financial stakes of the case – even in general terms – has no bearing on Defendants' liability. But trying damages together with liability will permit such an argument to be presented to the jury, at least implicitly. The only impact on the liability case would be unfair prejudice, and the risk of prejudice is substantial, given that the amount of damages (reflecting the cost of prescription medication) is likely more salient to a juror than an application of the doctrine of equivalents or the careful analysis required to assess patent validity.

Whether from genuine confusion or from rhetorical misdirection, the risk of unfair prejudice and confusion resulting from the simultaneous presentation of liability and damages issues is substantial. Deferring consideration of damages issues to a second phase would avoid this risk. If the jury answers the liability question in Janssen's favor, the parties could then present the complex damages issues to the jury with a sharper focus, based on a concrete liability

10272412

finding and a specific date of first infringement. In that instance, careful instructions could mitigate the risk of unfair prejudice.

### 3. Trying Damages Prior to a Liability Verdict Would Require Presentation of Alternative Damages Analyses

The analyses of two crucial damages issues in this case – a reasonable royalty and Defendants' asserted non-infringing alternatives defense – are shaped by the date of first infringement. This date remains disputed and might not be resolved until a liability verdict is rendered because it depends on the type of infringement (direct and/or indirect) and the jury's resolution of specific facts regarding Defendants' actions and knowledge. The date may also differ for purposes of non-infringing alternatives and the reasonable royalty. As a result, the damages experts have all computed elaborate and different analyses based on different dates. *See* Janssen MIL Ex. 3 (Leonard Report) ¶¶ 249-273; Janssen MIL Ex. 18 (Nicholson Report) ¶¶ 117-143. Presenting the jury with alternative damages scenarios based on each potential date of first infringement would be hopelessly confusing.

### 4. Willfulness Should be Tried Together with Infringement and Validity

When bifurcating a patent trial, some courts defer willfulness to the second, damages-focused, phase; others include it as a liability issue to be tried together with infringement and validity. *Compare, e.g., Princeton Biochemicals*, 180 F.R.D. at 261 (bifurcating into (1) liability; and (2) damages and willfulness) *with Ciena Corp.*, 210 F.R.D. at 521 (trifurcating "in the following sequence: (1) infringement and willfulness; (2) invalidity; (3) damages"). Deferring willfulness to the damages phase often makes sense when there are concerns that the willfulness inquiry could unfairly prejudice the liability case, particularly if a defendant faces the so-called "*Quantum* dilemma" of whether or not to reveal attorney-client communication as a defense to willfulness. *See, e,g., Princeton Biochemicals*, 180 F.R.D. at 260 (citing *Quantum Corp. v.*

9

*Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991)) (discussing the dilemma faced by parties asserting an advice-of-counsel defense to willfulness). Defendants have not raised an advice-of-counsel defense, so the *Quantum* dilemma does not arise in this case. More importantly, general concerns of unfair prejudice arising from the willfulness question do not apply here because Janssen's induced infringement claim will require consideration of the same factual evidence as willfulness.

As a legal matter, willfulness and induced infringement require the same basic inquiry. To establish induced infringement, Janssen must prove that Defendants induced acts that they knew infringed the patent, or were willfully blind to the fact that the induced acts were infringing. *See Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 766 (2011) (holding that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement" and that knowledge could be established with evidence of willful blindness). Similarly, a finding of willful infringement requires proof that the risk of infringement was "either known or so obvious that it should have been known to the accused infringer." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), *cert. granted on other grounds*, 138 S. Ct. 734 (2018) (internal quotation marks omitted).[2]

---

[2] Prior to 2016, the Federal Circuit applied a two-prong test for willfulness, requiring (1) an "objectively high likelihood that [defendant's] actions constituted infringement of a valid patent," and (2) that this risk "was either known or so obvious that it should have been known to the accused infringer." *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), the Supreme Court invalidated the objective requirement, and held that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." *Id.* at 1933. The Federal Circuit has concluded that "*Halo* did not disturb the substantive standard for the second prong of *Seagate*, subjective willfulness." *WesternGeco*, 837 F.3d at 1362; *see also Arctic Cat, Inc. v. Bombardier Recreational Prods.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (same); *WCM Indus., Inc. v. IPS Corp.*, No. 2016-2211, 2018 U.S. App. LEXIS 2949, at *21 (Fed. Cir. Feb. 5, 2018) ("[U]nder the new *Halo* standard, we must determine whether . . . [defendant] acted despite a risk of infringement that was either known or so obvious that it should have been known to [defendant].").

The evidence that Janssen will rely on to prove both allegations is exactly the same. As the Court concluded in denying the Defendants' motion for summary judgment on Janssen's induced infringement claim, the evidence includes: (1) knowledge of the '083 patent (Dec. 22, 2016 Hearing Tr. at 19:10-14, Case No. 15-cv-10698, Dkt. No. 332); (2) knowledge of the formula of the HyClone media (*Id.* at 20:7-10); (3) knowledge of evidence demonstrating infringement (*Id.* at 20:14-25); (4) failure to conduct any experiments refuting infringement (*Id.* at 21:1-4); (5) failure to ask their expert to consider whether the differences in media are substantial (*Id.*); and (6) the attempt to relocate manufacturing to Singapore (*Id.* at 21:11-17). The same evidence establishes Defendants' willfulness.

Since both induced infringement and willfulness will require consideration of the same evidence and a substantially similar legal test, they should be tried together during the first phase of the trial. Delaying the willfulness inquiry until the damages phase would require the jury to consider all the relevant evidence during one phase, but to defer a finding on one of the legal questions to a second phase – creating inefficiency (and potential confusion) with no apparent benefit.

**B.    Trying Damages Separately Would Save Substantial Judicial and Party Resources**

Bifurcation creates the potential for substantial savings of judicial and party resources. If Defendants were to prevail during the first phase, the complex damages analysis described above would be averted. And although settlement has proven elusive to this point, a liability verdict in Janssen's favor could provide the legal clarity necessary for the parties to reach agreement. Even if both phases are tried to completion, a bifurcated proceeding would reduce the need for limiting instructions, allow a more focused presentation of issues, and eliminate the need for alternative damages timelines.

Meanwhile, the inefficiency or inconvenience of holding trial in two phases would be slight. Janssen does not expect the need to recall any of its fact witnesses from the liability phase to testify again during the damages phase. For the experts, Janssen relies on Dr. Butler for both phases, but he will be available to testify in both parts of the case. Indeed, his testimony will be interrupted in any event, as his infringement testimony will be presented as part of Janssen's affirmative case, while his validity testimony will be presented on rebuttal. Given the complexity of the different issues and their severability, different appearances by Dr. Butler will only enhance clarity. (Mr. Lit may also testify in both phases. If so, his liability testimony will be brief.) The other Janssen experts will testify only in one phase or the other.

Defendants have retained separate experts for liability and damages, so there will be no overlap on their part. As to fact witnesses, Janssen recognizes that Defendants will bring some witnesses from out of the country or from Utah. Janssen does not know whether Defendants intend any of these witnesses to testify in both phases, but if that is so, it should be possible to present all of their testimony in the liability phase (subject to appropriate instructions) so that they can return home. Of course, if Defendants prefer, they can also recall the witness in the damages phase.

Although Defendants have suggested that damages and liability issues are so intertwined as to render a bifurcated trial inconvenient or inefficient, the actual overlap between the phases would be minimal. The first phase would inquire into whether the Celltrion media infringes the '083 patent, whether that infringement is attributable to Defendants, whether the infringement was willful, and whether the '083 patent is valid. These issues require evidence and testimony about the science of cell culture media and Defendants' relationship with each other and HyClone. Damages turns on whether Defendants' infringing sales of Inflectra caused Janssen

lost profits and what royalty the parties would have hypothetically negotiated. These issues are economic, and most of the experts who will offer this analysis have nothing to present during the liability phase. To be sure, there is some overlap around the perimeter of the issues – mostly regarding non-infringing alternatives. But the Court has already indicated that all issues will be tried before a single jury, so bifurcation will not require duplicative presentation of facts. On the other hand, the additional time devoted to presenting numerous alternative expert opinions, explaining the interrelations between the alternative scenarios, and crafting limiting instructions and alternative jury instructions during a consolidated trial would add substantial inconvenience and inefficiency for the parties, the Court, and the jury. On balance, a bifurcated trial is the most convenient and efficient procedure.

## II.     Argument and Evidence Regarding Damages Should be Precluded from the Liability Phase

In the event that the trial is bifurcated, evidence and argument regarding damages issues – including the opinions of Dr. Nagaich and Dr. Frohlich – should be precluded from introduction during the liability phase. Although this rule would be implied by the decision to bifurcate, Janssen raises this issue for the avoidance of doubt. The introduction of evidence relevant only for damages during the liability trial would undermine the purpose of bifurcation and create the very risk of prejudice that bifurcation is well suited to avoid. This should not be allowed.

## CONCLUSION

All three factors cited in Rule 42(b) favor bifurcation in this case, and a bifurcated trial would not prejudice any party or create substantial inefficiencies for the parties or the Court. Janssen's motion to bifurcate the damages phase of trial should be granted, and evidence and argument regarding damages issues should be precluded during the liability phase.

13

Dated:  May 18, 2018

Respectfully Submitted,

JANSSEN BIOTECH, INC.

By its attorneys,
*/s/ Alison C. Casey*
NUTTER MCCLENNAN & FISH LLP
Heather B. Repicky (BBO #663347)
Alison C. Casey (BBO# 688253)
155 Seaport Boulevard
Boston, MA  02210
Tel.: 617-439-2000
Fax: 617-310-9000
hrepicky@nutter.com
acasey@nutter.com

PATTERSON BELKNAP WEBB & TYLER LLP
Gregory L. Diskant (*pro hac vice*)
Irena Royzman (*pro hac vice*)
Aron Fischer (*pro hac vice*)
Andrew D. Cohen (*pro hac vice*)
David S. Kleban (*pro hac vice*)
1133 Avenue of the Americas
New York, NY  10036
Tel.: 212-336-2000
Fax: 212-336-2222
gldiskant@pbwt.com
iroyzman@pbwt.com
afischer@pbwt.com
acohen@pbwt.com
dkleban@pbwt.com

**CERTIFICATE OF SERVICE**

      I certify that on May 18, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.

                                              /s/ *Alison C. Casey*_____