**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC. <br><br> Plaintiffs, <br><br> v. <br><br> CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC. <br><br> Defendants. | **Civil Action No. l:17-cv-11008-MLW** <br><br> **PUBLIC REDACTED VERSION** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE*
NO. 8:  TO PRECLUDE EVIDENCE AND ARGUMENT FROM JANSSEN
CONCERNING PRIVILEGE INSTRUCTIONS
<u>REGARDING THE CHANGE OF MANUFACTURING TO SINGAPORE</u>**

## I.     INTRODUCTION

During their depositions, when asked about Celltrion's decision to move the manufacturing site of the accused cell culture media from Utah to Singapore, Celltrion's witnesses were correctly instructed not to reveal privileged information, and they followed those instructions. Yet Janssen seeks to argue that the Celltrion witnesses were "disingenuous[]" because they followed counsel's instructions. Dkt. 193 at 1. The Court should exclude any such evidence and prohibit any such attempt to impeach or otherwise discredit Celltrion's witnesses because "no adverse inference shall arise from invocation of the attorney-client and/or work product privilege." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004). At the very least, any such suggestion is highly misleading and prejudicial, and would only serve to confuse and prejudice the jury, while shedding no light on the credibility of Celltrion's witnesses.

## II.     BACKGROUND

During the pendency of this lawsuit, GE HyClone moved the location where it manufactures the accused cell culture media purchased by Celltrion from Utah to Singapore. This move was long in the works, beginning in 2012, before Celltrion was aware of the '083 patent. Ex. 1, 2016 Cho. Dep. Tr. at 132:13-133:1. In 2015, before the move to Singapore had been implemented, Celltrion had internal discussions relating to the timing of the move. Those discussions were based on ███████████████████████████████████████████ ████████████████████████████ Dkt. 193 at 10. At the time of the depositions at issue, Defendants maintained the attorney-client privilege with respect to communications related to the ██████████

During those depositions, Janssen counsel asked Celltrion witnesses about the change in manufacturing location from Utah to Singapore. For example, Janssen's counsel asked Celltrion's Jong Moon Cho:



*See, e.g.*, Ex. 1, 2016 Cho Dep. Tr. at 132:13-15. Celltrion's counsel properly instructed Mr. Cho not to reveal privileged communications in his answer, and Mr. Cho followed that instruction:

---

[1]     Indeed, when Defendants discovered that certain documents discussing the move to Singapore had been inadvertently disclosed in unredacted form, they promptly clawed back those documents as privileged and re-produced them in redacted form. Ex. 2, 2/1/2018 Hoang Ltr. to Fischer; Ex. 3, 2/2/2018 Hoang Ltr. to Fischer.



*Id*. at 132:16-133:1.  A similar exchange occurred at the deposition of Celltrion's Dr. Jeon:

Ex. 4, Jeon Dep. Tr. at 207:21-208:7.

To the extent Celltrion's witnesses knew anything about the ▮▮▮▮▮▮▮▮▮ that knowledge was based on privileged attorney-client communications.  Thus, Celltrion witnesses did not reveal information (assuming that they even possessed any) about the ▮▮▮▮▮ in their answers about the move to Singapore. Notably, Janssen did not challenge Celltrion counsel's privilege instructions at either deposition and has never challenged those instructions since.

On February 28, 2018, three weeks (in the case of Dr. Jeon) and two years (in the case of Mr. Cho) after their depositions, Janssen moved to compel unredacted versions of documents that Defendants had produced in redacted form.  By that time, the Court had ruled that Janssen would be permitted to present its new theory that manufacturing Inflectra with Singapore-made media still infringes under § 271(f), meaning that the jury will receive evidence about GE HyClone's move to Singapore.  Dkt. 183 (2/20/2018 Memorandum and Order).  In March, 2018, Defendants decided not to burden the Court with a dispute over privilege redactions that they then viewed as unnecessary. Dkt. 212.

Nonetheless, Janssen now alleges that Celltrion witnesses "***disingenuously***… claimed that the move to Singapore ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 193 (Janssen's

2/28/2018 Motion to Compel) at 1. Janssen thus plans to attack the "credibility of Celltrion witnesses" on the basis of alleged inconsistencies between the deposition testimony and the now unredacted documents. Janssen is wrong for two reasons.

First, Celltrion witnesses did not testify that the move to Singapore had altogether ████████ ████████████████████ Dkt. 193 at 1. The testimony Janssen cites from Mr. Cho's deposition does not support Janssen's assertion that he ███████████████████████████████████████ ██████████ Dkt. 193 at 9-10. Rather, Mr. Cho was asked whether moving manufacturing to Singapore was ██████████████████████████ he responded by noting that ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████████████ Ex. 1, 2016 Cho. Dep. Tr. at 132:13-133:1. Mr. Cho's testimony about the 2012 time period, ████████████████████████████████████ does not support Janssen's claim that he █████████ ████████████████████████████████ Dkt. 193 at 1.

Second, Janssen's assertion that Celltrion's witnesses testified inconsistently with the previously privileged documents is also wrong. For example, Janssen argues that Mr. Cho testified that the move to Singapore ████████████████████████████ but stated in a 2015 e-mail that the move to Singapore ████████████████████████████████████████████

████████████████████████████████████████████ Dkt. 193 at 10 (citing CELLREM-0362046).  The testimony Janssen cites is the same as above.  Ex. 1, 2016 Cho. Dep. Tr. at 132:13-133:1.  But there is no contradiction.  The deposition and email note the move to Singapore was

████████████████████████████████████████████████████████████████

████  *Id.*; Dkt. 193 at 10 (citing CELLREM-0362046).  The 2012 discussions that Mr. Cho's answer refers to ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  *Id*. at 132:20-133:1.

Janssen's allegation that testimony from Celltrion's leader of corporate regulatory affairs, Dr. Min Kyoung Jeon, is inconsistent is similarly inaccurate.  Janssen points to e-mails Dr. Jeon received indicating a ████████████ was one consideration in the move to Singapore.  Dkt. 193 at 10.  Janssen alleges that this contradicts her deposition, during which she gave only "benign reasons" for the move to Singapore, ████████████████████████████  *Id.* (citing Ex. Ex. 4, Jeon Dep. Tr. at 207:21-208:22).  ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████  *Id.* at 207:21-22, 208:9-11. In both instances, Dr. Jeon was instructed not to reveal privileged information in her response.  *Id.* at 207:23-208:2, 207:12-16.

Dr. Jeon's answers ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Nor would she have any particular reason to remember discussions about the ████████ in her capacity as a regulatory lead, responsible for "regulatory affairs to get approval from European agencies and the FDA." *Id.* at 7:23-8:10.  Indeed, as shown above, she said "I don't know why the facility should be in Singapore." *Id.* at 208:17-18.  Finally, Janssen cites no evidence that the "benign" reasons Dr. Jeon did provide were inaccurate.  Dkt. 193 at 10.

## III.    ARGUMENT

Janssen seeks to have the jury infer that Celltrion witnesses were dishonest *because* they followed their counsel's instructions on privilege.  The Court should preclude Janssen from doing so for three reasons.

***First***, the Federal Circuit has held that "no adverse inference shall arise from invocation of the attorney-client and/or work product privilege."  *Knorr-Bremse*, 383 F.3d at1344.   This is because there is a strong public interest in protecting attorney-client privilege, the purpose of which is "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). An adverse inference based on the assertion of privilege, as Janssen effectively seeks here, would impermissibly create a "risk of liability in disclosures to and from counsel in patent matters" and "intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney." *Knorr-Bremse*, 383 F.3d at 1344.  Applying the *Knorr-Bremse* rule, this district has granted a similar motion *in limine*.  As is the case here, in *Smith & Nephew, Inc. v. Interlace Med*, the plaintiff sought to draw an adverse inference from deposition testimony in which the

defendant's witness invoked the attorney-client privilege regarding legal opinions about the patent-in-suit.  Ex. 5, *Smith & Nephew, Inc. v. Interlace Med., Inc.*, No. CIV.A. 10-10951-RWZ, Dkt. 149-16 (MIL #16) at 2. The plaintiff, relying on *Knorr-Bremse*, moved to "preclude argument of an adverse inference based upon defendant's invocation of the attorney-client privilege with respect to the [patent-in-suit]." *Id*.  The court agreed, granting the motion to "bar any adverse inference from defendant's invocation of the attorney-client privilege." *Smith & Nephew, Inc. v. Interlace Med., Inc.*, No. CIV.A. 10-10951-RWZ, 2012 WL 3560811, at *4 (D. Mass. Aug. 17, 2012).

Here, Defendants' counsel properly instructed Celltrion witnesses not to reveal privileged communications in answering questions about the move from Utah to Singapore. Celltrion witnesses answered the questions they were asked, but, following the instructions, did not reveal privileged information in their responses. There is nothing disingenuous about a witness following an instruction not to reveal privileged information, and it would be highly prejudicial to penalize Celltrion witnesses simply because they followed counsel's instructions on privilege.[2] Fed. R. Evid. 403. Celltrion witnesses cannot be faulted for following those instructions and their decision to follow those instructions has nothing to do with credibility. To imply otherwise runs afoul of the *Knorr-Bremse* rule.

**Second**, that the witnesses did not reveal privileged information is not relevant as it has nothing to do with credibility. Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). Any

---

[2]    As the Court previously found after Defendants' motion to compel, Janssen's counsel made overreaching privilege instructions during depositions of Janssen witnesses. Dkt. 570; Dkt. 568 (6/1/2017 Hrg. Tr.) at 28:15–17. While Defendants moved the Court to get answers to the questions, they did not suggest the witness's following of the instruction called the witness's credibility into question. *See* Dkt. 571 (Joint Report on proposed remedies to privilege ruling). Nor could they seek such an inference without violating *Knorr-Bremse*.

effort by Janssen to cast aspersions on Celltrion witnesses because they did *not* talk about the ███████████ when asked about the reasons for the move to Singapore, would be improper because the witnesses had a privilege basis for doing so, and were instructed by their counsel accordingly.[3]

**Third**, Janssen is simply wrong that Celltrion witnesses were "disingenuous[]," or even inconsistent, in their deposition testimony about the move to Singapore, Dkt. 193 at 1, and any attack on that basis creates an unacceptable risk of misleading and confusing the jury and wasting its time. Fed. R. Evid. 403.

Mr. Cho correctly testified that ███████████████████████████████ ████████████████████████████████████████ Ex. 1, 2016 Cho. Dep. Tr. at 132:13-133:1. Dr. Jeon testified about several reasons why the move to Singapore was made (Ex. [], Jeon Dep. Tr. at 207:21-208:22), none of which Janssen has disputed, ███████ ████████████████████████████████████████████ ████████████████████████████████ *Id.* at 208:3-8, 208:17-22.   Regardless, it would be unreasonable to say that she should have remembered any consideration of ███████████ given her unrelated role as a regulatory lead; instead, she testified "I don't know why the facility should be in Singapore." *Id*. at 208:17-18.

Put simply, Janssen cannot properly impeach Mr. Cho or Dr. Jeon based on the Singapore documents and e-mails where no contradiction exists.  Any attempt to do so is not only an improper impeachment, but it would risk misleading the jury into believing that Mr. Cho and Dr. Jeon had been "disingenuous[]" in their depositions, or risk misleading the jury into believing that Celltrion had something to "hide," which per above, would be inappropriate given the instructions not to

---

[3]   Evidence about the reasons for the move to Singapore should also be excluded as evidence of a subsequent remedial measure under Federal Rule of Evidence 407, as explained in Defendants' MIL No. 4.  Dkt. 349.

reveal privileged information. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("There should be no risk of liability in disclosures to and from counsel in patent matters").

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion *in limine* to preclude evidence and argument from Janssen related to Celltrion's witnesses following instructions not to reveal privileged information regarding the change of manufacturing to Singapore.

Dated: May 18, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

*/s/Andrea L.  Martin, Esq.* _____
Dennis J.  Kelly (BBO # 266340)
Andrea L.  Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B.  Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C.  (*pro hac vice*)
Bryan S.  Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## **CERTIFICATE OF SERVICE**

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 18, 2018.

*/s/Andrea L. Martin, Esq.*
Andrea L. Martin, Esq.