**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.<br><br>Plaintiff,<br><br>v.<br><br>CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC.<br><br>Defendants. | **Civil Action No. 1:17-cv-11008-MLW**<br><br>**PUBLIC**<br>**REDACTED VERSION**<br><br>REQUEST FOR ORAL ARGUMENT |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 11: TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING PRE-SUIT COMMUNICATIONS PURSUANT TO THE BPCIA**

## I. INTRODUCTION

The Court should preclude Janssen from presenting evidence or argument that pre-litigation Biologics Price Competition and Innovation Act ("BPCIA") exchanges between Celltrion's outside counsel and Janssen's outside counsel indicate that Celltrion (or Hospira) ***knew*** that the accused GE HyClone cell culture media infringe the '083 patent, under Fed. Rs. Evid. 401, 402, and 403.

To prove induced infringement, Janssen must show "the defendant[s] knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015) (citation omitted). In a strained attempt to prove Defendants "knew" they infringed, Janssen intends to offer Celltrion's February 2015 BPCIA Detailed Statement, which provides reasons why Celltrion believed it does ***not*** infringe the '083 patent. As Janssen's "theory" goes, [REDACTED]

[REDACTED]

[1] Unless otherwise noted, docket citations in this motion refer to Civ. No. 15-10698.

Janssen argues that the Detailed Statement was misleading for two reasons. [REDACTED]

[REDACTED] Janssen does not dispute that the statements are 100% accurate; indeed Defendants rely on these same facts to this day as part of their noninfringement defense.

The Court should preclude Janssen from using these allegedly "misleading" statements because any such arguments would be severely prejudicial, highly misleading, and confusing to the jury.

*First*, Celltrion fully complied with the law, and Janssen should not be permitted to argue otherwise. Celltrion was not required to provide ***any*** information to Janssen, let alone what Janssen says was misleadingly omitted. *See Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1676 (2017). And Celltrion's Detailed Statement includes ***exactly*** what the BPCIA optionally specifies: non-infringement contentions. 42 U.S.C. § 262(*l*)(3)(B)(ii)(I). Absent a requirement to provide the information at all, it cannot be misleading to present Celltrion's infringement defenses in this way. And this case is complex enough (including, *e.g.*, infringement theories under §§ 271(a), (b), and (f), agency and enterprise theories, and invalidity) without getting into the requirements of the exchanges under the BPCIA, which has been described as "a riddle wrapped in a mystery inside an enigma." *Amgen Inc. v. Sandoz Inc.*, 794 F.3d 1347, 1351 n.1 (Fed. Cir. 2015), *rev'd in part,*

*vacated in part*, 137 S. Ct. 1664 (2017). Janssen's effort would only confuse the jury on an irrelevant issue.

*Second*, Janssen should not be able to argue about what was legally required and what was included by cross-examining ***Celltrion scientist*** Jong Moon Cho, as Janssen intends, Ex. 1 (May 11, 2018 counsel correspondence), [REDACTED] And Mr. Cho can give no relevant testimony about Hospira's knowledge. If Janssen were permitted to cross-examine Mr. Cho about a document prepared by counsel, to avoid prejudice in their ability to rebut Janssen's arguments, Defendants would be required to respond by calling their trial counsel as a witness to testify about what they believe the law requires and introducing other counsel correspondence to provide a fuller picture, all while protecting the attorney-client privilege. The distraction and prejudice would be palpable.

Defendants would also have to call Janssen's counsel to show that Janssen's claims of being misled are disingenuous. [REDACTED] Arguments and evidence about pre-trial correspondence between counsel should not be paraded before a lay jury.

Janssen should not be allowed to cross-examine a Celltrion employee regarding truthful non-infringement contentions, which he did not write, in order to imply that Celltrion failed to abide by non-existent obligations. Janssen's effort would be a baseless and irrelevant attempt to disparage counsel's truthfulness and Celltrion's non-infringement positions.

## II. FACTUAL BACKGROUND

In December 2014, Janssen's counsel sent Celltrion a letter pursuant to the BPCIA listing patents in connection with Celltrion's FDA application for marketing approval of Inflectra®. Dkt. 369 Ex. 5. Janssen identified the '083 patent as potentially infringed. *Id.*

In December 2014, Celltrion scientist JongMoon Cho [redacted]

In February 2015, Celltrion's counsel sent Janssen a 53-page letter pursuant to the BPCIA (the "Detailed Statement"), [redacted]

Janssen does not dispute that Celltrion uses the media outside of the United States. [redacted]

[redacted] Janssen does not dispute that the accused media have these literal differences from the claims of the ’083 patent.

In 2016, during summary judgment briefing on liability issues, Janssen tried to show Defendants “knew” they infringed based on the same theory as now, using the December 2014 and February 2015 BPCIA letters, as well as numerous prior and subsequent emails between the parties’ counsel. Dkt. 366 at 6–14; *see also* Dkt. 424 at 2–6; Dkt. 281 at 13–14. Thus, before the scheduled liability trial, Defendants filed Motion *in limine* No. 3 to preclude evidence and argument regarding discovery communications among outside counsel. *See* Dkts. 365, 366. That motion sought to exclude these same arguments, but particularly targeted Janssen’s intent to rely on ***informal*** discovery requests and BPCIA correspondence as purportedly showing the requisite intent to infringe and belief of infringement. *See* Dkt. 366. Though Janssen narrowed the evidence it sought to proffer, Dkt. 424 at 6–7, that did not address Defendants’ objections.

During the parties’ recent discussions regarding the current motions *in limine* deadline, Janssen informed Defendants that it “does not intend to introduce evidence regarding discovery correspondence” and thus believes Motion *in limine* No. 3 is moot. Ex. 1 (May 11, 2018 counsel correspondence). But it still intends to “introduce evidence relevant to Defendants’ state of mind . . . by cross-examining Jong Moon Cho” regarding Defendants’ February 5, 2015 Detailed Statement. *Id*. Thus, Janssen plans to make essentially the same arguments Defendants previously objected to, in a slightly different way.[2]

---

[2] It is unclear if Janssen will argue that Mr. Cho [redacted] That also would

## III. ARGUMENT

The Court should not permit Janssen to argue that the two allegedly "misleading" statements show that Defendants *knew they infringed*. Janssen's arguments have no probative value because they are irrelevant and factually baseless, *see* Dkt. 366 at 6–14, and, of equal importance, are highly prejudicial. The Court should exclude them under Rules 401, 402, and 403. *See Windsor Shirt Co. v. N.J. Nat. Bank*, 793 F. Supp. 589, 616 (E.D. Pa. 1992), *aff'd*, 989 F.2d 490 (3d Cir. 1993) (evidence of "low probative value" excluded where "it would consume too much trial time"); *United States v. Rodriguez-Berrios*, 573 F.3d 55, 70 (1st Cir. 2009) (cross-examination regarding victim's affair with district attorney properly excluded under "Rule 403 because of its high potential for prejudice compared to its low probative value."); *Pinkham v. Burgess*, 933 F.2d 1066, 1071 (1st Cir. 1991) ("'When evidence with great potential to confuse is of questionable relevance, limited probative value, or both, courts will usually exclude it.'" (quoting 10 *Moore's Federal Practice* § 403.12 at IV-82 (1988))).

### A. Celltrion Complied with the BPCIA, Making the BPCIA Correspondence Irrelevant

The Court should preclude Janssen from using these allegedly "misleading" statements because Celltrion fully complied with the law and Janssen should not be permitted to argue otherwise. [redacted] in fact, Celltrion was not required to provide any information at all: "when an applicant declines to provide its application and manufacturing

---

be improper for the reasons previously provided to the Court. *See* Dkt. 366 at 12–14. Moreover, Janssen's lead counsel acknowledged that he was "not accusing them of, you know, intentionally not finding the material in the locked box." Dkt. 369 Ex. 34 (December 22, 2016 Hearing Tr.) at 5:5–20.

information to the sponsor" it "does not violate the BPCIA."[3] *Sandoz*, 137 S. Ct. at 1676; *see also Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1319 (Fed. Cir. 2017). With no obligation to partake in the BPCIA "patent dance," provide a detailed statement, or provide any information at all, the fact that Celltrion voluntarily provided accurate information regarding non-infringement positions it still holds is neither relevant nor misleading, nor probative evidence of "guilty knowledge," simply because Janssen takes the view that Celltrion should have provided more information.

Moreover, Celltrion complied with the BPCIA in any event. It provided Janssen with [REDACTED] and the Detailed Statement, which provides exactly what the BPCIA (optionally) specifies: a "descri[ption], on a claim by claim basis, [of] the factual and legal basis of [Celltrion's] opinion . . . that such patent is invalid, unenforceable, or will not be infringed." 42 U.S.C. § 262(*l*)(3)(B)(ii)(I). Janssen's argument that the Detailed Statement is misleading because it omitted certain information makes no sense—Janssen asserts that Celltrion should have included information ***not required*** under the statute, *i.e.*, information which is not "the factual and legal basis of [Celltrion's] opinion" that the '083 patent "will not be infringed." At best, Janssen's complaints are a thinly-veiled discovery dispute that "should not be presented to the [factfinder]." *See Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C-08-04990-JW, 2012 WL 2339762, at *2 (N.D. Cal. June 7, 2012).

Finally, Janssen has no other claim for which the alleged omission of information from the Detailed Statement could be relevant. Janssen's original complaint purported to raise a claim based on Celltrion's failure to provide this information, but it dismissed that claim ***with prejudice***. Dkt. 582 at 2. This case is already inordinately complex. The jury will have to parse infringement

[3] If the applicant declines to provide information, the sponsor has the ability to file an immediate declaratory judgment action, which Janssen did in 2015. *See* 42 U.S.C. § 262(*l*)(9)(C); Dkt. 1.

theories under §§ 271(a), (b), and (f), agency and enterprise theories, invalidity theories, lost profits theories, reasonable royalty theories, non-infringing alternatives, and many other issues. There is no need for them to also be saddled with interpreting the exchange requirements of the BPCIA, *e.g.*, under 42 U.S.C. §§ 262(*l*)(2)(A) and (*l*)(3)(B)(ii)(I), which are convoluted, irrelevant, and only likely to confuse. Even the Federal Circuit has described the BPCIA as "a riddle wrapped in a mystery inside an enigma." *Amgen*, 794 F.3d at 1351 n.1, *rev'd in part, vacated in part*, 137 S. Ct. 1664 (2017). Adding this level of confusion is unnecessary and would be inappropriate. The Court should exclude this highly prejudicial and improper argument under Rules 401–403.

**B. Testimony From Mr. Cho on the Detailed Statement Would be Irrelevant and Confusing, Necessitating that Defendants' Trial Counsel Testify**

Janssen's plan to cross-examine Celltrion scientist Mr. Cho to establish *Defendants'* "guilty knowledge" is also highly improper and prejudicial. [redacted] Thus, Janssen's arguments have no probative value, but would be confusing and unduly prejudicial.

To rebut Janssen's effort, Defendants would be forced to call their trial counsel, Charles Klein, who signed the Detailed Statement, to testify, or suffer prejudice in their ability to rebut Janssen. Defendants would need Mr. Klein to explain his understanding of the law and his bases

for the statements in the letter, *i.e.*, how the Detailed Statement is ***true*** and that Janssen was ***not*** misled. Moreover, Mr. Klein would need to do so while still protecting the attorney-client privilege and attorney work product privilege. This can only be distracting and confusing for the jury.

As Courts have recognized, this would be incredibly prejudicial and raise serious privilege concerns, which merits exclusion of the proposed evidence and argument. *See Galarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 206 (1st Cir. 2007), *as amended* (Nov. 30, 2007). In *Galarneau*, the First Circuit affirmed the exclusion of evidence which "would likely require testimony from the attorneys as to the motivations behind the proposed U–5 language and Merrill Lynch's refusal to adopt it." *Id.* The same is true here, but even more so; Janssen's approach puts Defendants' entire litigation strategy on trial and exposes trial counsel to cross examination with the Court's orders issued long after counsel sent the Detailed Statement.

Defendants would also have to call Janssen's counsel to confirm that the factual claims in the Detailed Statement are unquestionably true and never misled Janssen. For instance, Janssen argues that [redacted]

But Janssen lacks any basis to suggest this was misleading, much less that Celltrion was attempting to mislead. [redacted]



Janssen's argument that Celltrion was trying to be deceptive stands on an absurd premise: that Celltrion agreed with Janssen's flawed agency theory at the time of the Detailed Statement, even though Janssen had not raised such a theory at that time. The fact that Janssen ***now*** relies on this theory is irrelevant—it cannot be a "misleading omission" to not address a theory Janssen had not yet advanced, nor can it demonstrate that Celltrion "knew" it infringed.[4]

[4] And even had it considered the issue, Celltrion has a strong basis to believe no agency existe

Janssen also argues the Detailed Statement was misleading because [redacted]

But, Celltrion's statements are literally true and defenses to infringement Defendants continue to pursue in this case. *See, e.g.*, Dkt. 343 Ex. A (Glacken Reb. Rpt.) ¶¶ 55–56; No. 17-11008, Dkt. 67 at 49, 53. Janssen's argument to the contrary again requires the assumption that Celltrion envisioned Janssen's 12-way doctrine of equivalents agency theory at the time of the Detailed Statement, even though Janssen had never hinted at this approach at that time. Dkt. 424 at 4–5. It also requires the unfounded assumption [redacted] Again, it cannot be "misleading" to not respond to a theory not yet asserted, nor can it demonstrate that Celltrion "knew" it infringed. And demonstrating that Janssen was not misled will require Defendants to call, for example, Janssen's counsel to testify.

As to Janssen's attempt to impugn Celltrion for [redacted]

[redacted] Rebutting Janssen's unfounded attack again will involve Defendants calling Janssen's counsel to show Janssen was not misled. Trying to twist Celltrion's compliance with a confidentiality obligation into "misleading" statements showing "guilty knowledge" of infringement would be unduly prejudicial, but not probative.

In order to explain that the Detailed Statement is true and not misleading, while examining either their own or Janssen's trial counsel, Defendants would likely have to introduce the very same (or related) counsel correspondence that Janssen has indicated it would not offer at trial, in its effort to moot Defendants' Motion *in limine* No. 3. This could include, for example, [redacted] This would end-run Janssen's agreement not to introduce that correspondence by forcing Defendants to use it in rebuttal. And Janssen may use Defendants' rebuttal to later argue that Defendants opened the door to Janssen introducing still further counsel correspondence that it agreed not to offer.

This entire issue would be a side-show, a mini-trial on an irrelevant discovery issue, and a waste of time and energy for the parties, the jury, and the Court. *See Lund v. Henderson*, 807 F.3d 6, 11 (1st Cir. 2015) (district court has "wide discretion" to exclude evidence which "would have turned this trial into a series of mini-trials"); *United States v. George*, 761 F.3d 42, 57 (1st Cir. 2014) (proper to exclude evidence which "could have ended up with a mini-trial about a side issue—Hansen's innocence of charges not made—that might have confused the jury."); *Windsor Shirt Co.*, 793 F. Supp. at 616, *aff'd*, 989 F.2d 490 (3d Cir. 1993) (Evidence of "low probative value" excluded where "it would consume too much trial time."); *Rodriguez-Berrios*, 573 F.3d at

70 (Cross-examination regarding victim's affair with district attorney properly excluded under "Rule 403 because of its high potential for prejudice compared to its low probative value."). The Court should not allow Janssen to cross-examine a Celltrion employee regarding truthful non-infringement contentions he did not write, in order to imply that Celltrion's failure to abide by non-existent obligations shows knowledge of infringement. Janssen's arguments and evidence will not help advance the jury's understanding of this case, but only confuse them.

## IV. CONCLUSION

The Court should not allow Janssen to present irrelevant and baseless accusations to the jury. Janssen should not be allowed to introduce any pre-litigation correspondence, including the December 2014 BPCIA patent list and the February 2015 BPCIA Detailed Statement, cross examine Mr. Cho on such correspondence or other BPCIA-exchange related issues, or argue that Defendants' voluntary pre-litigation correspondence was misleading, or that it shows that Celltrion "knew" it infringed.

Dated: May 21, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq. ______________

Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

**CERTIFICATE OF SERVICE**

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 21, 2018.

/s/Andrea L. Martin, Esq.
Andrea L. Martin, Esq.