IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| JANSSEN BIOTECH, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-11008-MLW |
| | ) | |
| CELLTRION HEALTHCARE CO., LTD., | ) | |
| CELLTRION, INC., and | ) | |
| HOSPIRA, INC., | ) | |
| Defendants. | ) | |
| | ) | |

---

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
*DAUBERT* MOTION TO EXCLUDE THE TESTIMONY
OF JANSSEN'S DAMAGES EXPERT, DR. SEAN NICHOLSON**

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ..................................................................................................... ii

**BACKGROUND** ................................................................................................................... 2

**A.**     **Janssen's Lost Profits Resulting From Defendants' Infringement** ............................ 2

**B.**     **Dr. Nicholson's Opinions on Damages** ........................................................... 3

**C.**     **This Court's March 3, 2017 Decision on Damages** ........................................ 4

**ARGUMENT** ...................................................................................................................... 5

**I.**     **DR. NICHOLSON'S DAMAGES ANALYSIS IS CONSISTENT  WITH CONTROLLING LAW AND SHOULD NOT BE EXCLUDED** ................................ 5

    **A.**     **The *Daubert* Standard** .................................................................................. 5

    **B.**     **"Apportionment" Principles Are Inapplicable Here** ........................................ 6

        1.     Dr. Nicholson's Opinions are Consistent with Controlling Case Law and This Court's Prior Decision on Damages ................................... 6

        2.     Proof of But-for Causation Adequately Accounts for Apportionment ............................................................................... 6

        3.     This Case Is Unlike the Multi-Component Cases That Defendants Cite ...................................................................................... 9

        4.     Defendants Do Not Present a Basis for Excluding  Dr. Nicholson's Opinions on a Reasonably Royalty ........................................... 11

    **C.**     **Dr. Nicholson Properly Adapted the *Panduit* Factors to the Facts of This Case** ............................................................................................. 13

**CONCLUSION** ................................................................................................................. **16**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAMP of Florida, Inc v. Automotive Data Solutions, Inc.*,
No. 13-cv-2019, 2015 WL 12843845 (M.D. Fla. Oct. 8, 2015) .......................................15, 16

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014)...............................................................................................12

*Astrazeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015)................................................................................................8

*CardioNet, LLC v. ScottCare Corp.*,
C.A. No. 12-2516, 2017 U.S. Dist. LEXIS 173622 (E.D. Pa. Oct. 19, 2017).....................8, 9

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)..............................................................................................................5, 6

*Ericsson, Inc. v. D-Link Sys.*,
773 F.3d 1201 (Fed. Cir. 2014)............................................................................................9, 11

*Finjan, Inc. v. Blue Coat Sys.*,
879 F.3d 1299 (Fed. Cir. 2018)..............................................................................................12

*Fiskars, Inc. v. Hunt Mfg. Co.*,
221 F.3d 1318 (Fed. Cir. 2000)................................................................................................2

*Fujifilm Corp. v. Benun*,
605 F.3d 1366 (Fed. Cir. 2010)..............................................................................................11

*Garretson v. Clark*,
111 U.S. 120 (1884)...........................................................................................................10, 11

*Georgetown Rail Equipment Co. v. Holland LP*,
867 F.3d 1229 (Fed. Cir. 2017)..............................................................................................13

*Grain Processing Corp. v. American Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir.1999)................................................................................................8

*Janssen Biotech, Inc. v. Celltrion Healthcare Co.*,
239 F. Supp. 3d 328 (D. Mass 2017) .............................................................................. *passim*

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...................................................................................................10

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017)................................................................... *passim*

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    870 F.3d 1298 (Fed. Cir. 2017).................................................................10

*Micro-Chem. Inc. v. Lextron, Inc.*,
    318 F. 3d 1119 (Fed. Cir. 2003)............................................................9, 11

*Minco Inc. v. Combustion Eng'g*,
    95 F. 3d 1109 (Fed. Cir. 1996).......................................................7, 9, 11, 12

*Packgen v. Berry Plastics Corp.*,
    847 F.3d 80 (1st Cir. 2017)....................................................................6

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ........................................................... *passim*

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
    745 F.2d 11 (Fed. Cir. 1984)...................................................................7

*Radware, Ltd. v. F5 Networks, Inc.*,
    No. 13-cv-02024-RMW, 2016 U.S. Dist. LEXIS 18010
    (N.D. Cal. Feb. 13, 2016)......................................................................15

*Rite-Hite Corp. v. Kelley Co.*,
    56 F. 3d 1538 (Fed. Cir. 1995) (en banc)................................7, 13, 14, 15

*Trell v. Marlee Elecs. Corp.*,
    912 F.2d 1443 (Fed. Cir. 1990)..............................................................12

*VirnetX, Inc. v. Cisco Sys.*,
    767 F.3d 1308 (Fed. Cir. 2014)................................................................9

*Westinghouse Elec. & Mfg. Co.* v. *Wagner Elec. & Mfg. Co.*,
    225 U.S. 604 (1912)............................................................................11

**Statutes**

35 U.S.C. § 284.......................................................................................11

**Other Authorities**

Federal Rule of Evidence 702.........................................................................5

**INTRODUCTION**

Defendants' arguments for why this Court should exclude the testimony of Janssen's damages expert, Dr. Sean Nicholson, are at odds with this Court's March 3, 2017 decision on damages (Case No. 15-cv-10698, Dkt. No. 518), *Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, 239 F. Supp. 3d 328, 330 (D. Mass 2017).  In that decision, this Court explained that Janssen is "entitled to compensation for reasonably foreseeable lost profits that it would not have suffered 'but for' the defendant's infringement."  *Janssen Biotech*, 239 F. Supp. 3d at 330 (citing *Rite-Hite Corp. v. Kelley Co.*, 56 F. 3d 1538, 1545 (Fed. Cir. 1995) (en banc)).  This decision defeats Defendants' arguments.

Defendants argue that Dr. Nicholson's analysis is deficient because he did not "apportion" Janssen's damages to reflect the relative contribution of the '083 patent to Inflectra's overall value, as compared to the value contributed by other technology.  Defendants previously raised the same argument, and this Court rejected it in its March 3, 2017 decision.  The apportionment approach that Defendants advocate applies in cases, unlike this one, where a patentee seeks lost profits on a multi-component product.  But here, Janssen's contention is that the patented cell media is a predicate for Inflectra's existence.  Once Janssen establishes that there are no non-infringing alternatives to the patented media (an issue the parties have briefed separately), it will follow as a matter of course that Defendants' use of the patented media is the but-for cause of Janssen's lost profits due to Inflectra.   Under controlling Federal Circuit authority, proof of but-for causation is sufficient on these facts to account for apportionment.

Defendants' other argument concerns the *Panduit* factors, which are derived from the Sixth Circuit decision in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).  The *Panduit* factors are one way – but not the only way – to analyze whether a

defendants' infringing acts are the "but-for" cause of a patentee's lost profits.  Here, if Janssen

shows that there are no non-infringing alternatives, then here will be no further room for doubt

that Defendants' infringement is the "but-for" cause of Janssen's lost profits.  The *Panduit*

factors are framed to address the situation where a patentee seeks lost profits on sales of a

product covered by the patent-in-suit.  Those factors needed to be adapted to address the

different situation presented here because Janssen's lost profits result from sales of a product

made by using the patented cell media – not directly from sales of the patented product.  Dr.

Nicholson appropriately adapted the *Panduit* factors to the circumstances of this case.

Dr. Nicholson's report is consistent in all respect with controlling law.  There is no basis

for striking his testimony.

## BACKGROUND

### A.      Janssen's Lost Profits Resulting from Defendants' Infringement

At trial, Janssen will demonstrate that Defendants infringed the '083 patent by using

infringing cell media to make Inflectra.  Inflectra is biosimilar to Janssen's drug Remicade and is

marketed and sold in direct competition with Remicade.

Defendants' infringing use of the patented cell media caused Janssen to lose profits that it

would have earned on Remicade but for the infringement.  Janssen's lost profits include:

(1) diminished Remicade sales, which reduce Janssen's profits; and (2) price erosion due to a

reduction in the prices that Janssen charges for Remicade.  The Federal Circuit has recognized

both forms of lost profits.  *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324–26 (Fed. Cir.

2000).

Defendants' infringement of the '083 patent is the but-for cause of Janssen's injuries.  As

Janssen demonstrated in its Motion for Summary Judgment on the Issue of Non-Infringing

Alternatives, Dkt. 246, Defendants did not have an acceptable, readily available non-infringing substitute for the patented cell media.  If that motion is denied, then Janssen will prove the absence of non-infringing alternatives at trial.  Once that showing is made, it will follow that Defendants would not have been able to make Inflectra or sell it in competition with Remicade if they had not used the infringing cell media.  In short, their infringing acts are the predicate for Inflectra's existence and therefore the but-for cause of Janssen's claimed damages.

**B.      Dr. Nicholson's Opinions on Damages**

Janssen's damages expert, Dr. Sean Nicholson, is a Ph.D. economist and a Professor of economics at Cornell University.  His work focuses on the economics of the healthcare industry, with an emphasis on the biotechnology and pharmaceutical and biologics sectors.

Dr. Nicholson provided an expert report dated January 19, 2018 (Ex. 1) and a supplemental expert report dated March 20, 2018 (Def. Ex. 11).  In these reports, Dr. Nicholson did not provide an independent opinion as to whether there were non-infringing alternatives to the patented cell media. This question was addressed by Janssen's other experts, Dr. Michael Butler and Dr. Richard Lit.  For his part, Dr. Nicholson assumed, for purposes of lost profits, that there were no non-infringing alternatives. Ex. 1 ¶ 48.  Dr. Nicholson then calculated the damages needed to compensate Janssen for Defendants' infringing use of the cell media claimed in the '083 patent.  Those damages include lost profits and a reasonable royalty for any sales of Inflectra that would not be subject to an award of lost profits.

In addressing lost profits, Dr. Nicholson explained that Defendants' "use of the patented cell media to manufacture Inflectra™ for sale in the U.S. is the 'but-for' cause" of Janssen's lost profits and those lost profits "are the 'reasonably foreseeable' result of the infringement."  Ex. 1 ¶ 42.  Dr. Nicholson applied sound economic principles in calculating Janssen's resulting lost

profits.  Dr. Nicholson's damages analysis is consistent in all respects with this Court's March 3,

2017 decision and controlling case law from the Federal Circuit.

## C.      This Court's March 3, 2017 Decision on Damages

On February 23-24, 2017, this Court held a hearing on the appropriate standard for

damages in this case.  In that hearing, Defendants raised the same "apportionment" argument that

they raise in this motion.  *See* Case No. 15-cv-10698, Dkt. No. 515 (2/23/17 H'g Tr.) 94:1–3,

141:8–9.  In their papers, they also argued that the cell culture media does not "'drive consumer

demand' for Inflectra," Case No. 15-cv-10698, Dkt. No. 414 at 6, precisely the same argument

they make here in arguing that damages must be apportioned.  Dkt. 240 at 15 (arguing that "the

accused media. . . does not 'drive demand' for infliximab").

In its March 3, 2017 Order, this Court rejected Defendants' approach.  As this Court held,

a patentee is "entitled to compensation for reasonably foreseeable lost profits that it would not

have suffered 'but for' the defendant's infringement."  *Janssen Biotech*, 239 F. Supp. 3d at 330

(citing *Rite-Hite*, 56 F. 3d at 1545).  This Court also stated:  "The fact that Remicade is not now

itself patented . . . does not affect plaintiff's entitlement to damages, including lost profits, for any

proven infringement of the '083 Patent."  *Id.* at 331.  As the Court explained:

> A patentee may recover damages in the form of lost profits to
> compensate for sales of an unpatented product (i.e., Remicade) lost
> to an infringer's non-infringing product (i.e., Inflectra), if the
> infringer could only have captured the patentee's sales by
> infringing the patent by, in this case, using an infringing powder.
> *See Micro-Chem. Inc. v. Lextron, Inc.*, 318 F. 3d 1119, 1125–26
> (Fed. Cir. 2003).

*Id*.  This Court then stated:

> More specifically, a patentee is entitled to lost profits, even on
> unpatented products, if a competitor makes the sales-capturing
> end-product using an infringing method or product, where the
> competitor could have only captured the sales by infringing the

> patent. *See Minco Inc. v. Combustion Eng'g*, 95 F. 3d 1109, 1119
> (Fed. Cir. 1996).

*Id.*; *see also* Case No. 15-cv-10698, Dkt. No. 516 (2/24/17 H'g Tr) at 8:21–25 ("In this case, but for the infringement of the '083 patent . . . and the resulting production and sales of Inflectra in the U.S., the plaintiff Janssen would have sold more Remicade, as was foreseeable, and would have made more profit.").

As this Court recognized, the principles set forth in this Court's March 3, 2017 decision are consistent with controlling caselaw from the Federal Circuit. *See Janssen Biotech*, 239 F. Supp. 3d at 331 (citing *Micro-Chem. Inc. v. Lextron, Inc.*, 318 F. 3d 1119, 1125–26 (Fed. Cir. 2003) (holding that lost profits damages were properly awarded where it was "reasonably foreseeable" that infringement would cause plaintiff to lose sales of an unpatented product), and *Minco, Inc. v. Combustion Eng'g*, 95 F. 3d 1109, 1119 (Fed. Cir. 1996) (holding that damages were properly based on sales of unpatented fused silica made using patented rotary furnace)).

Defendants have acknowledged the controlling force of this Court's March 3, 2017 decision. In a telephone conference on December 5, 2017, the Court asked whether Defendants were "content to leave" that decision intact. Defendants responded: "That's correct." Dkt. No. 97 (12/5/17 H'g Tr.) at 28:8–13.

## ARGUMENT

## I.   DR. NICHOLSON'S DAMAGES ANALYSIS IS CONSISTENT WITH CONTROLLING LAW AND SHOULD NOT BE EXCLUDED

### A.   The *Daubert* Standard

The admissibility of expert testimony is governed by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and by Federal Rule of Evidence 702. To pass muster under *Daubert*, an expert's testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand."

509 U.S. at 597.  "To determine whether testimony is sufficiently reliable . . . a district court

must determine the whether it is 'based on sufficient facts or data,' was 'the product of reliable

principles and methods,' and whether the expert 'reliably applied the principles and methods to

the facts of the case."  *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 85 (1st Cir. 2017) (quoting

Fed. R. Evid. 702).  "Exactly what is involved in 'reliability' . . . must be tied to the facts of a

particular case."  *Id.* (quoting *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 14–15

(1st Cir. 2011)).  "So long as an expert's scientific testimony rests upon good grounds, based on

what is known, it should be tested by the adversarial process, rather than excluded . . . ."  *Id.*

(internal quotation marks omitted) (quoting *Daubert*, 509 U.S. at 590).

### B. "Apportionment" Principles Are Inapplicable Here

#### 1. Dr. Nicholson's Opinions are Consistent with Controlling Case Law and This Court's Prior Decision on Damages

Defendants argue that Dr. Nicholson's damages analysis should be excluded because he

has not "apportioned" Janssen's claim damages to reflect the contribution of the patented

technology relative to the overall value of Remicade.  Dkt. No. 240 at 9.

Janssen recently addressed the apportionment issue in its Damages Motion *In Limine* No.

8 to bar evidence and argument that its claimed damages are subject to apportionment.  Dkt. No.

267.  That *in limine* motion and this motion address closely related issues.

#### 2. Proof of But-for Causation Adequately Accounts for Apportionment

The Federal Circuit's decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d

1275 (Fed. Cir. 2017), is directly on point and defeats Defendants' argument.  *Mentor Graphics*

makes clear that in cases such as this any concern about "apportionment" is adequately addressed

by proof of but-for causation.

The infringer in *Mentor Graphics* argued – as Defendants argue here – that the patentee should first "calculate the amount of profits it lost as a result of the infringement" and then "apportion its lost profits to cover only the patentee's inventive contribution." *Id.*, 851 F.3d at 1287. The Federal Circuit rejected that approach. It held that proof of but-for causation under the *Panduit* test "satisfies principles of apportionment." *Mentor Graphics*, 851 F.3d at 1288. As the Federal Circuit explained, a showing of but-for causation sufficiently attributes the appropriate value to the patent, with no need to further "apportion." *Id.*

Other cases are consistent with *Mentor Graphics*. *See Rite-Hite*, 56 F.3d at 1548 ("[Defendants'] concern that lost profits must relate to the 'intrinsic value of the patent' is subsumed in the 'but for analysis; if the patent infringement had nothing to do with lost sales, 'but for' causation would not have been proven."); *Minco*, 95 F.3d at 1119 (holding that the district court's finding that plaintiff "had a reasonable probability of making . . . sales but for the infringement" was sufficient to support lost profits award); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22–23 (Fed. Cir. 1984) (declining to further apportion a lost profits award because the patentee proved it would have made the sales in question but for the infringing sales).

The Federal Circuit's reasoning in *Mentor Graphics* applies to but-for causation generally and is not restricted to cases where the *Panduit* factors are used to establish but-for causation because other methods of proving but-for causation could also "adequately incorporate[] apportionment principles" and "there is no particular required method to prove but for causation." *Mentor Graphics*, 851 F.3d at 1288. Here, as in *Mentor Graphics*, Janssen's showing of but-for causation sufficiently addresses any concern about apportionment. Any further attempt to apportion damages is not required and would thwart the patentee's right to

"full compensation for 'any damages' [the patent owner] suffered as a result of the

infringement." *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349

(Fed. Cir.1999) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)).

Rather than accept the controlling authority of *Mentor Graphics*, 851 F.3d at 1288,

Defendants rely on a separate concurrence and dissent from the denial of rehearing en banc in

that case.  Dkt. 240 at 1 (citing *Mentor Graphics Corp. v. EVE-USA, Inc*., 870 F.3d 1298, 1301

(Fed. Cir. 2017) (Dyk, J., dissenting from the denial of rehearing)); *id.* at 15 (citing *Mentor*

*Graphics*, 870 at 1299 (Stoll, J., concurring in the denial of rehearing)).  Needless to say, those

opinions are not controlling precedent here.  Judge Stoll's concurring opinion is discussed below

at page 10, and it actually provides further support for Janssen's position.

*Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), is also instructive.  In

that case, the infringer argued that the district court erred by failing to apportion damages

between the active ingredient of a pharmaceutical product and the patented coating for the pill.

The Federal Circuit held that apportionment would be inappropriate because the patented coating

"made it possible for drug manufacturers to commercialize" the product and "created a new,

commercially viable . . . drug." *Id.* at 1340.  The same reasoning applies here because the

infringing cell media allows Defendants to manufacture and commercialize their biosimilar.

In *CardioNet, LLC v. ScottCare Corp.*, C.A. No. 12-2516, 2017 U.S. Dist. LEXIS

173622 (E.D. Pa. Oct. 19, 2017), the district court rejected the argument that Defendants raise

here.  The court in that case denied a motion to exclude the testimony of the patentee's damages

expert for failure to apportion.  Applying *Mentor Graphics*, the court stated that it "cannot

conclude that [plaintiff's damages expert's] methodology is flawed due to her failure to

apportion." *Id.* at \*16.  As the court explained, proving but-for causation "is a highly factual determination that must be made by the trier of fact." *Id.*

Dr. Nicholson's analysis of lost profits is consistent with these cases and this Court's holding that "[a] patentee may recover damages in the form of lost profits to compensate for sales of an unpatented product (*i.e.*, Remicade) lost to an infringer's non-infringing product (*i.e.*, Inflectra), if the infringer could only have captured the patentee's sales by infringing the patent by, in this case, using an infringing powder." *Janssen Biotech*, 239 F. Supp. 3d at 331.  It also is consistent with Federal Circuit cases holding that a defendant may be liable for the reasonably foreseeable damages resulting from lost sales of an unpatented product.  *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F. 3d 1119, 1125–26 (Fed. Cir. 2003) (holding that lost profits damages were properly awarded where it was "reasonably foreseeable" that infringement would cause plaintiff to lose sales on unpatented product); *Minco, Inc. v. Combustion Eng'g*, 95 F. 3d at 1119 (holding damages were properly based on sales of unpatented fused silica made using a patented furnace). Defendants' "apportionment" theory is not applicable here and does not provide any basis for striking Dr. Nicholson's testimony.

### 3.     This Case Is Unlike the Multi-Component Cases That Defendants Cite

The cases cited by Defendants requiring apportionment uniformly involved an inapposite situation where the patent-in-suit covered one component or feature of a product with many components or features – such as a flashlight app on a cell phone or keyless ignition for an automobile.  Apportionment is appropriate in such cases.  *See*, *e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (explaining that where "accused infringing products have both patented and unpatented *features*" a damages calculation requires "a determination of the value added by such *features*."); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed.

9

Cir. 2014) ("[W]hen claims are drawn to an individual component of a *multi-component product*, it is the exception, not the rule, that damages may be based upon the value of the *multi-component product*."); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (applying apportionment requirement to "any case involving *multi-component products*") (emphases added).

As the Federal Circuit explained in *Mentor Graphics*, in cases involving multi-feature products, an available non-infringing alternative will always exist in the form of "the infringing product without the patented feature." 851 F.3d at 1286. This logic also accounts for the entire market value rule, which requires the plaintiff to show that the entire value of a multi-component product is attributable to the patented component – essentially requiring proof that the infringing multi-component product without the patented component is not an acceptable alternative.

As noted above, Defendants cite Judge Stoll's concurrence in the denial of rehearing in *Mentor Graphics*. Dkt. No. 240 at 15. Judge Stoll's concurrence reinforces the conclusion that a showing of but-for causation adequately accounts for apportionment here. As Judge Stoll noted, the Federal Circuit has required apportionment in cases unlike this one, "where an infringing product is a *multi-component product* with patented and unpatented components . . . ." *Mentor Graphics*, 870 F.3d at 1299 (emphasis added). Judge Stoll also explained that the panel's decision in *Mentor Graphics* did not broadly do away with the apportionment principle, but rather held that proving the first two *Panduit* factors (and, thus, but-for causation) adequately accounted for apportionment. *See id*. at 1300.

As Judge Stoll noted, the apportionment principle has its roots in *Garretson v. Clark*, 111 U.S. 120 (1884), again a multi-feature product case, where the Supreme Court held that the patentee must "apportion the defendant's profits and the patentee's damages between the

patented *feature* and the unpatented *features*." *Id.*, 111 U.S. at 121 (emphasis added); *see also*

*Westinghouse Elec. & Mfg. Co.* v. *Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 614-15 (1912)

(explaining that *Garretson* applies where "the plaintiff's patent is only a part of the machine").

This case does not present the multi-component scenario addressed in *Ericsson* and

similar cases. As discussed above, Defendants used the '083 invention to make their infliximab

biosimilar. Defendants are entitled to contend that there would have been acceptable non-

infringing alternatives, although as Janssen argues elsewhere their proof on this issue fails as a

matter of law. Dkt. No. 246. But once it is established that there were no non-infringing

alternatives, the patented product is clearly the but-for cause of Janssen's lost profits. Without

the infringing cell culture media, Inflectra would not exist. The patented technology is a

necessary predicate to the existence of Defendants' Inflectra product – not just one component of

a multi-component product. None of the cases Defendants rely on involved a similar situation.

Here, as in *Mentor Graphics*, proof of but-for causation is sufficient and further analysis of

apportionment is not required. This situation is governed by cases such as *Micro-Chem* and

*Minco*, which this Court relied on those cases in its March 3, 2017 decision. That decision

correctly applies the principle described in *Mentor Graphics*. "Apportionment" has no

application here. *See Mentor Graphics*, 851 F.3d at 1287–88.

### 4. Defendants Do Not Present a Basis for Excluding Dr. Nicholson's Opinions on a Reasonably Royalty

Under section 284 of the patent statute, 35 U.S.C. § 284, Janssen is entitled to a

"reasonable royalty" on any sales of Inflectra made by infringing use of the patented cell media

that are not the subject of an award of lost profits damages. In his expert report, Dr. Nicholson

applied the "hypothetical negotiation" framework that is applicable in assessing a reasonable

royalty. *See* Ex. 1 ¶¶ 93–158; *see Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010).

Defendants recycle their "apportionment" argument in criticizing Dr. Nicholson's reasonable royalty analysis. Dkt. 240 at 19–20. But that theory does not provide a basis for excluding Dr. Nicholson's opinion on a reasonable royalty. Dr. Nicholson's opinion that Janssen is entitled to a reasonable royalty that reflects the fact that Defendants would not be able to sell Inflectra for a period of time without using the infringing media is supported by the law. *See*, *e.g.*, *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (explaining that defendants' anticipated profits made by infringing determines possible willingness to pay in hypothetical negotiation); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990) ("In determining the result of such a hypothetical negotiation, the district court may consider the infringer's anticipated profits."). Defendants have their own arguments, primarily based on the alleged possibility of designing around the '083 patent without delaying the launch of Inflectra. After hearing the evidence, the jury can decide what royalty is appropriate.

Defendants also miss the mark when they argue that the reasonable royalties must be based on the "smallest salable patent-practicing unit" of an infringing product and that the cell media is that unit. Dkt. 240 at 19. The "smallest salable unit principle" – like Defendants' "apportionment" theory on lost profits – only applies in "case[s] involving multi-component products." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1310 (Fed. Cir. 2018) (internal quotation marks omitted). That principle has no application here because the patented cell culture media is a necessary predicate for the existence of Inflectra – it is not a component of Inflectra. Basing a reasonable royalty on sales of Inflectra is perfectly reasonable and appropriate where Defendants used the '083 invention to make Inflectra. *See Minco*, 95 F.3d at 1119-20 (awarding a reasonable royalty as well as lost profits on sales of unpatented fused silica made used patented furnace).

12

### C.     Dr. Nicholson Properly Adapted the *Panduit* Factors to the Facts of This Case

Defendants also argue that Dr. Nicholson's lost profits analysis should be excluded because he supposedly misapplied the *Panduit* factors.  Dkt. No. 240 16–19.  But, as Dr. Nicholson acknowledged, the *Panduit* factors are "not the *sine qua non* for proving 'but for' causation."  Ex. 1 ¶ 41 (quoting *Rite-Hite*, 56 F.3d at 1548).  He appropriately adapted the *Panduit* factors to the facts of this case.

"To recover lost profits damages, the patentee must show a reasonable probability that 'but for' the infringement, it would have made the sales that were made by the infringer."  *Rite-Hite*, 56 F.3d at 1545; *see also Janssen Biotech*, 239 F. Supp. 3d at 330 (stating that a patentee is entitled to recover reasonably foreseeable lost profits that it "would not have suffered 'but for' the defendant's infringement.") (citing *Rite-Hite*, 56 F. 3d at 1545).  "There is no particular required method to prove but for causation."  *Georgetown Rail Equip. Co. v. Holland LP*, 867 F.3d 1229, 1241 (Fed. Cir. 2017) (quoting *Mentor Graphics*, 851 F.3d at 1284).  The *Panduit* test is "[o]ne useful, but non-exclusive method to establish the patentee's entitlement to lost profits . . . ."  *Id.* (quoting *Mentor Graphics*, 851 F.3d at 1284); *see also Rite-Hite*, 56 F. 3d at 1545 (same).  "But-for" causation can also be shown in other ways, through other methods of proof.  *Rite-Hite*, 56 F.3d at 1548.

Where a patentee satisfies the *Panduit* factors, a court may "reasonably infer that the lost profits claimed were in fact caused by the [defendants'] sales, thus establishing a patentee's *prima facie* case with respect to 'but for' causation."  *Rite-Hite*, 56 F. 3d at 1545.  "When the patentee establishes the reasonableness of this inference, *e.g.*, by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits . . . ."  *Id.*

13

The *Panduit* factors include: "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profits it would have made." *Rite-Hite*, 56 F.3d at 1545 (quoting *Panduit*, 575 F.2d at 1156). The *Panduit* test is framed to address the typical situation "whe[re] a patentee is seeking lost profits for a device covered by the patent in suit." *Rite-Hite*, 56 F.3d at 1548. "[O]ther fact situations may require different means of evaluati[ng] [but-for causation], and failure to meet the *Panduit* test does not *ipso facto* disqualify a loss from being compensable." *Id*. "If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable." *Id*.

In this case, it is necessary to adapt the *Panduit* factors because Janssen's lost profits relate to a product (Remicade) that competes with Defendants' Inflectra biosimilar, which Defendants made by infringing the patent-in-suit. Dr. Nicholson appropriately adapted the *Panduit* factors to address that situation. In particular, Dr. Nicholson considered demand for Remicade and demand for the patented cell media in considering *Panduit* factor No. 1 ("demand for the patented product"). He considered alternatives to the patent cell media in considering *Panduit* factor No. 2 ("absence of acceptable non-infringing substitutes"). He considered Janssen's capability to satisfy the demand for Inflectra/Remicade in considering *Panduit* factor No. 3 ("manufacturing and marketing capability to exploit the demand"). And he considered the Remicade profits that Janssen would have made but-for the infringement in considering *Panduit* factor No. 4 ("the amount of profits it would have made."). *See* Ex. 1 ¶¶ 40–58. This was an appropriate adaptation of the *Panduit* factors to the facts of this case.

Defendants criticize Dr. Nicholson for considering alternatives to the patented cell media in applying *Panduit* factor No. 2 and Janssen's ability to satisfy additional demand for Remicade

14

in applying *Panduit* factor No. 3.  This criticism misses the point.  As discussed above, the

*Panduit* factors were framed to address the typical situation "whe[re] a patentee is seeking lost

profits for a device covered by the patent in suit," *Rite-Hite*, 56 F.3d at 1548, and this case

presents a different situation where Janssen is seeking to recover lost profits of Remicade that

resulted from sales of a competing product (Inflectra) that is manufactured by infringing use of

the patented cell media.  Dr. Nicholson cannot fairly be criticized for adapting the *Panduit*

factors to reflect the facts of this case.

At bottom, Defendants' arguments about the *Panduit* factors are unconnected to

commercial realities.  There is no doubt that Defendants' infringing use of the patented cell

media is the "but-for" cause of the lost profits that Janssen seeks.  Dr. Nicholson's adaptation of

the *Panduit* factors to the atypical facts of this case is consistent with Federal Circuit's

recognition that "[i]f there are other ways to show that the infringement in fact caused the

patentee's lost profits, there is no reason why another test should not be acceptable."  *Rite-Hite*

56 F.3d at 1548.  It is not a basis for excluding his testimony on lost profits.  *See Radware, Ltd.*

*v. F5 Networks, Inc.*, No. 13-cv-02024-RMW, 2016 U.S. Dist. LEXIS 18010, at *55-57 (N.D.

Cal. Feb. 13, 2016) (denying a motion to exclude the testimony of a damages expert on the

theory that the expert misapplied the first *Panduit* factor as requiring a showing that the patented

*feature* drives demand, and stating that "demand for the patented feature may still be relevant to

. . . the 'but for' analysis as a whole.").

Defendants cite *AAMP of Florida, Inc v. Automotive Data Solutions, Inc.*, No. 13-cv-

2019, 2015 WL 12843845 (M.D. Fla. Oct. 8, 2015), to justify the exclusion of Dr. Nicholson's

opinions, but that case involved an different situation where the challenged expert admitted that

his opinion was "based on an incorrect legal standard" and disavowed his opinion "when

15

confronted with the correct legal standard." *Id.* at *9.  In contrast, Dr. Nicholson's adaptation of the *Panduit* factors to the facts of this case is appropriate and consistent with Federal Circuit cases.

## CONCLUSION

This Court should deny Defendants' motion to exclude Dr. Nicholson's testimony.

Dated: May 25, 2018

|  |  |
|---|---|
| | */s/ Alison C. Casey* |
| Gregory L. Diskant (*pro hac vice*) | Heather B. Repicky (BBO # 663347) |
| Irena Royzman (*pro hac vice*) | Alison C. Casey (BBO #688253) |
| Aron Fischer (*pro hac vice*) | NUTTER MCCLENNEN & FISH LLP |
| PATTERSON BELKNAP WEBB & TYLER LLP | Seaport West |
| 1133 Avenue of the Americas | 155 Seaport Boulevard |
| New York, NY 10036-6710 | Boston, MA 02210 |
| 212-336-2000 | 617-439-2000 |
| FAX: 212-336-2222 | FAX: 617-310-9192 |
| gldiskant@pbwt.com | hrepicky@nutter.com |
| iroyzman@pbwt.com | acasey@nutter.com |
| afischer@pbwt.com | |
| | *Attorneys for Plaintiff Janssen Biotech, Inc.* |

## CERTIFICATE OF SERVICE

I certify that on May 25, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and if not so registered, that copies will be electronically mailed to such parties or their counsel.

/s/  *Alison C. Casey*
Alison C. Casey