**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JANSSEN BIOTECH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:17-cv-11008-MLW |
| | ) | |
| v. | ) | |
| | ) | **REDACTED VERSION** |
| CELLTRION HEALTHCARE CO., LTD., | ) | |
| CELLTRION, INC., and | ) | |
| HOSPIRA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ON THE ISSUE OF NON-INFRINGING ALTERNATIVES**

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................. 3

  A.   The Modified Media Is Infringing ...................................................................... 4

  B.   The Modified Media Was Not Readily Available. ........................................... 10

    1.   Defendants Ignore the Controlling Case Law on Availability...................... 10

    2.   It Would Take Months To Substitute the Modified Media for the Accused Media. ..... 12

    3.   The Modified Media Is Purely Theoretical.................................................. 16

  C.   The Modified Media Is Not An Acceptable Alternative To the Accused Media. ............ 17

III. CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Calcar, Inc. v. American Honda Motor Co.*,
    651 F.3d 1318 (Fed. Cir. 2011)..................................................................................8

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
    707 F.3d 1342 (Fed. Cir. 2013)...............................................................................8, 9

*Deere, Co. v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012)..................................................................................9

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
    567 F.3d 1314 (Fed. Cir. 2009)..................................................................................3

*Dolly, Inc. v. Spalding & Evenflo Cos.*,
    16 F.3d 394 (Fed. Cir. 1994)......................................................................................7

*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*,
    305 F.3d 1303 (Fed. Cir. 2002).....................................................................2, 6, 7, 10

*Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*,
    149 F.3d 1309 (Fed.Cir.1998)....................................................................................7

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)..............................................................................................1, 4

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)............................................................................11, 16

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008)................................................................................16

*Micro Chem., Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003)............................................................................11, 16

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006)..................................................................................8

*Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)..............................................................................7, 8

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011)............................................................................11, 16

*Sun Studs, Inc. v. ATA Equip. Leasing Inc.*,
   872 F.2d 978 (Fed.Cir.1989)...................................................................................7

*Synqor Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013).........................................................................11, 16

*Toro Co. v. White Consol. Indus.*,
   266 F.3d 1367 (Fed. Cir. 2001).............................................................................5, 6

**Statutes**

Federal Rule of Civil Procedure 56(f) ......................................................................3, 19

## I.      INTRODUCTION

As Janssen shows in its motion for summary judgment (Dkt. 246), all of Defendants' proposed non-infringing alternatives fail as a matter of law because they are speculative and have never been readily available.  Yet some of Defendants' proposed alternatives are more speculative than others.  In the real world, Defendants considered, but have never successfully implemented, two of their proposed alternatives: they tested and then rejected one alternative media, ███████████, and they later moved production of the accused media to Singapore in an unsuccessful attempt to avoid the '083 patent.  The remaining alternatives proposed by Defendants – moving to a foreign location other than Singapore, replacing the accused media with the never-before-considered ████████ media, or modifying the accused media in an effort to avoid infringement – are purely theoretical, lacking any basis whatsoever in the factual record.  Because assessing these latter alternatives would require the jury to engage in unbridled speculation, Janssen has moved *in limine* to preclude evidence of these alternatives even if its motion for summary judgment is denied.  *See* Dkt. No. 268 at 13-17 (Janssen MIL No. 12).

In their present motion, Defendants move for summary judgment that one of these purely theoretical alternatives has been proven as a matter of law.  Defendants argue that (███████████ ████████████████) they could have made a single, inconsequential change to the accused media: removing either magnesium sulfate or magnesium chloride and replacing the missing magnesium salt with an equivalent amount of the remaining magnesium salt (the "Modified Media").  This is a non-starter from the get go.  The doctrine of equivalents exists to prevent "copyists" from making "unimportant and insubstantial changes and substitutions" that "add[] nothing," and then claiming they do not infringe.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732-33 (2002) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607

(1950)).  That precisely describes Defendants' Modified Media.

As Defendants acknowledge, and as both parties' experts agree, magnesium sulfate and magnesium chloride are interchangeable ingredients, so replacing one of them with an equivalent amount of the other would make no difference from a scientific perspective.  In the real world, that is likely why Defendants never considered using the Modified Media; it would infringe the '083 patent to the same extent the accused media infringe.  A single magnesium salt, in double the amount, would still satisfy both magnesium claim elements under the doctrine of equivalents. But in the present motion, Defendants contend that the utter triviality of the differences between the Modified Media and the accused media is actually a virtue.  They argue that precisely because the Modified Media is scientifically equivalent to the accused media, there can be no dispute that it is an available and acceptable non-infringing alternative.

Defendants are mistaken and their motion should be denied.  The Modified Media is not an acceptable and readily available non-infringing alternative because it is not non-infringing, it is not readily available, and it is not acceptable.  Unable to dispute that the Modified Media is scientifically equivalent to the accused media, Defendants contend that the Modified Media is non-infringing because it vitiates a claim element.  But as explained below, the Federal Circuit has expressly rejected the argument that a claim element is vitiated whenever a single component of the accused product satisfies multiple elements of the asserted claim.  *See Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1317 (Fed. Cir. 2002).  Where, as here, a single component supplies a legitimate equivalent to two different claim elements, the doctrine of equivalents still applies.

Defendants' motion should also be denied because, as Janssen has demonstrated elsewhere, the Modified Media could not have been substituted for the accused media quickly

enough to be "readily available" under the applicable law.  Defendants repeatedly, but misleadingly, cite Dr. Michael Butler's testimony that ███████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████The reason for this is that in the real world, no biotechnology company would ever have considered the Modified Media to be an acceptable non-infringing substitute for the accused media.  Indeed, Defendants' expert █████████████████████████████

██████████████████████████████████████████████████████████████

████████ Defendants' motion must be denied.

## II.    ARGUMENT

To be entitled to summary judgment that the Modified Media is a non-infringing alternative, Defendants must show three things as a matter of law:  (1) the Modified Media is not infringing; (2) the Modified Media was available on the date of first infringement; and (3) the Modified Media is an acceptable alternative to the accused media.  *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1332 (Fed. Cir. 2009) (affirming award of lost profits because "no acceptable noninfringing alternative was available").  Because no reasonable jury could make *any* of these findings on the undisputed facts, Defendants' motion for partial summary judgment should be denied and summary judgment under Federal Rule of Civil Procedure 56(f) should be granted to Janssen.

3

A.      The Proposed "Modified Media" Is Infringing

Defendants' motion fails out of the gate because the Modified Media is infringing as a matter of law.  As noted, the Modified Media is identical to the accused media (which, for purposes of this damages motion, are assumed to infringe) except for a single change.  The '083 patent claims two magnesium salts:  magnesium chloride and magnesium sulfate.  In Defendants' proposed non-infringing alternative, "one of the two claimed forms of magnesium" would be "removed from the accused media and replaced by a compensating amount of the other claimed form of magnesium."  Def. Br. (Dkt. 238) at 5; *accord id.* at 4.  Janssen's and Defendants' experts ███████████████████████████████ Ex. 1 (Transcript of Deposition of Michael Butler (Apr. 17, 2018) ("Butler Dep. Tr.")) at 116:6-22; Ex. 2 (Transcript of Deposition of Dr. Bert Frohlich (Apr. 25, 2018) ("Frohlich Dep. Tr.")) at 208:23-209:13; 210:10-18; 220:12-21.  In other words, it is undisputed that replacing one magnesium salt with another would be unlikely to have a discernible effect on the performance of the accused media.  Indeed, the scientific equivalency between the accused media and the Modified Media is the starting premise of Defendants' motion.  Def. Br. at 5-6 ("The magnesium switch was an interchangeable alternative, and thus acceptable.").

Defendants' contention that making an admittedly trivial and inconsequential change to the accused media would avoid infringement is contrary to the fundamental policy underlying the doctrine of equivalents.  The doctrine protects the inventor "from copyists who 'make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of the law."  *Festo*, 535 U.S. at 732-33 (quoting *Graver Tank*, 339 U.S. at 607).  Defendants' proposed Modified Media would make a single change that would add nothing to

the field and is "facially unimportant and insubstantial." *Toro Co. v. White Consol. Indus.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001). The whole purpose of the doctrine of equivalents is to prevent defendants from avoiding infringement by making the sort of trivial modifications that Defendants here propose.

Because there is no dispute on the science, the only disagreement between the parties with respect to infringement is whether the Modified Media is non-infringing as a matter of law (assuming that the accused media are infringing). Defendants argue that the Modified Media would not infringe because applying the doctrine of equivalents would vitiate one of the limitations of the '083 patent (namely, the missing magnesium salt). Def. Br. at 2, 7-9. As Defendants have acknowledged, vitiation is a question of law for the Court (or, they unpersuasively contend, an advisory jury), not a question of fact for the fact-finder. Jan. 31, 2018 Hr'g Tr. at 110:4-6. Accordingly, Defendants' cell culture media expert, Dr. Bert Frohlich,

████████████████████████████████████████████████████████

Dkt. 247 (Statement of Material Facts In Support of Plaintiff's Motion For Summary Judgment On the Issue Of Non-Infringing Alternatives) Ex. 1 (Frohlich Report) ¶ 272; Ex. 2 (Frohlich Dep. Tr.) at 217:19-219:24; 223:12-224:3. In contrast, Janssen's expert, Dr. Butler, was not asked to give an opinion as to whether or not the doctrine of vitiation applied to the Modified Media. *See* Defs' Br. at 2, 9; Ex. 1 (Butler Dep. Tr.) at 114:17-116:13. Contrary to Defendants' argument, the fact that Dr. Butler did not give an opinion on vitiation does not mean that the question whether the Modified Media infringe is undisputed. Def. Br. at 2, 9. Rather, it means that the dispute is a question of law to be resolved by this Court.

Defendants' contention that the Modified Media is non-infringing is wrong on the law. Defendants' argument rests on the proposition that "[w]here a claim requires multiple sources, a

single source cannot satisfy the claim without vitiating the limitations at issue." *Id.* at 8.  Given the undisputed evidence that the Modified Media and the accused media are equivalent as a matter of science, Defendants' motion rises or falls with the truth of this legal proposition.  The proposition is demonstrably untrue.  It has been expressly rejected by the Federal Circuit.  *See Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1317 (Fed. Cir. 2002).

In *Eagle Comtronics*, the patent required a collet assembly[1] comprising three elements: a front cap, a rear insert body, and a seal located between the two.  *Id.*  In contrast, the accused product contained a one-piece collet assembly; it did "not have separate elements corresponding to the front cap and rear insert body limitations." *Id.*  The defendant argued that a finding of infringement under the doctrine of equivalents would vitiate claim elements because the accused product did not have a distinct part corresponding to each element of the asserted claim.  *Id.*  In short, the defendants in *Eagle Comtronics* relied on the exact same legal proposition Defendants are espousing here: that a single component of the accused product cannot satisfy two elements of a claim under the doctrine of equivalents.

The Federal Circuit rejected that proposition.  It held that "Eagle is correct that 'one-to-one correspondence of components is not required,' and the all-limitations rule does not preclude a finding of equivalents here."  *Id.* (quoting *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1320 (Fed.Cir.1998)).[2]  In particular, the court held, "***when separate claim***

---

[1] A collet assembly is a band or sleeve used to grip a shaft or spindle.  The collet assembly in *Eagle Comtronics* was used to prevent moisture or other contaminants from entering an electrical signal filter. *Id.* at 1306-07.

[2] The principle that vitiation does not require "one-to-one" correspondence between the accused product and the elements of the claim is well-established.  *See, e.g.*, *Toro Co. v. White Consol. Indus.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001) ("[I]f an accused infringer has simply separated into two components what the patentee has claimed as one component, a fact finder might indeed find such a change 'insubstantial.'"); *Ethicon Endo-Surgery, Inc*, 149 F.3d at 1320 ("[T]wo physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed

***limitations are combined into a single element of the accused device, a claim limitation is not***

***necessarily vitiated.***"  *Id.* (emphasis added).  The Federal Circuit's holding that a claim is not

necessarily vitiated "when separate claim limitations are combined into a single element of the

accused device" directly refutes Defendants' argument that "[w]here a claim requires multiple

sources, a single source cannot satisfy the claim without vitiating the limitations at issue."  Def.

Br. at 8.  A single component of the accused product ***can*** satisfy multiple elements of a claim,

where, as here, it provides an equivalent for ***each*** of the claimed elements.  In the Modified

Media, the original amount of the first magnesium salt satisfies the first magnesium-salt element

of the '083 patent, while the additional amount added to compensate for the omitted salt satisfies

the second magnesium-salt element by equivalence.

The primary case on which Defendants rely, *Power Integrations, Inc. v. Fairchild*

*Semiconductor International, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016), does not support their

position.  As Defendants point out, the patent in *Power Integrations* claimed "a first feedback

signal" and "a second feedback signal,"[3] *id*. at 1342, whereas the accused product contained "a

single feedback signal," *id.* at 1344.  Defendants fail to note, however, that the patent had been

construed to require that the second feedback signal "be ***distinct*** from the first feedback signal."

*Id.* at 1342 (emphasis added).  In holding that the doctrine of vitiation precluded a finding of

infringement, the Federal Circuit did not hold, as Defendants contend, that finding a single

---

invention, as long as no claim limitation is thereby wholly vitiated."); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 398 (Fed. Cir. 1994) ("An accused device may infringe under the doctrine of equivalents even though a combination of its components performs a function performed by a single element in the patented invention."); *Sun Studs, Inc. v. ATA Equip. Leasing Inc.*, 872 F.2d 978, 989 (Fed.Cir.1989) ("One-to-one correspondence of components is not required, and elements or steps may be combined without ipso facto loss of equivalency.").

[3] The patent concerned power supplies for electronic devices.  The claimed invention related to a mechanism for converting relatively high-voltage AC current from a power source to lower-voltage DC current for use of the devices.  *Id.* at 1321.

feedback signal to be equivalent to two feedback signals would necessarily vitiate a claim element.  Rather, the court held that "a finding of infringement under the doctrine of equivalents would vitiate the requirement that the claimed feedback signals be '***distinct***.'"  *Id.* at 1344 (emphasis added).  The requirement that the signals be "distinct" was "critical to the invention's novelty"; it "is what distinguished the claimed invention from the prior art."  *Id.*  It was the elimination of this "critical" element that led to the finding of vitiation.  Here, in contrast, there is no requirement that the two magnesium salts claimed in the '083 patent be "distinct," nor is there any contention that the inclusion of these two separate salts is "critical" to the novelty of the '083 media.  To the contrary, both parties' experts agree that the two magnesium salts are interchangeable and fulfill the same function, namely, to supply magnesium to the cell culture media when dissolved in water.  *Power Integrations* is therefore inapposite.

More generally, *Power Integrations* and the other cases cited by Defendants are inapposite because they rely on the inapplicable principle that claim elements may be vitiated where the accused product contains the "antithesis of the claimed structure."  *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1345 (Fed. Cir. 2006) (no infringement under the doctrine of equivalents where patented bingo device disclosed winning combination ***before*** play began while accused device disclosed winning combination ***after*** play began); *see also Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) (noting that the "polar opposite[]" of a claimed limitation cannot be its equivalent).  Thus, the court in *Power Integrations* observed that "[n]ot using two distinct signals to control voltage and current can't be equivalent to using distinct signals—the signals are either distinct or they aren't."  *Power Integrations.*, 843 F.3d at 1344.  Similarly, in *American Calcar, Inc. v. American Honda Motor Co.*, 651 F.3d 1318, 1338-39 (Fed. Cir. 2011), also relied on by Defendants, the court found that

a product that received a "single signal" would vitiate a claim limitation requiring "signals from a plurality of sources."

In recent case law, the Federal Circuit has cautioned against applying the "antithesis" principle in such a way that the doctrine of vitiation swallows the doctrine of equivalents. In "every case applying the doctrine of equivalents, at least one claimed element is not literally present in the accused product." *Deere, Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). If courts apply a "binary" vitiation analysis "in which an element is either present or 'not present'" and an element that is "not present" is considered vitiated, then the doctrine of vitiation "would swallow the rule" of the doctrine of equivalents. *Id.* at 1356-57. That is not the law. Instead, "the question is whether an omitted part is supplied by an equivalent device or instrumentality." *Id.* at 1356. "[V]itiation applies [only] when one of skill in the art would understand that the literal and substitute limitations ***are not interchangeable***, not insubstantially different, and when they do not perform substantially the same function in substantially the same way, to accomplish substantially the same result." *Brilliant Instruments*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) (emphasis added).[4]

Here, magnesium chloride is not the "antithesis" of magnesium sulfate. To the contrary, it is undisputed that the two magnesium salts are interchangeable. Replacing one magnesium salt with an equivalent amount of another, interchangeable magnesium salt is not vitiation. But by Defendants' own account of the Modified Media – which is all we have to go on since the Modified Media is purely hypothetical – that is exactly what it does. The second magnesium salt is not eliminated, but rather is "***replaced***" by an equivalent amount of the first magnesium salt. Def. Br. at 5 (emphasis added). The "***same total amount of magnesium*** is provided." *Id*. at 4

---

[4] This Court has previously recognized that this is the correct view of the law of vitiation. *See* Jan. 31, 2018 Hr'g Tr. at 85-86 (citing this passage in *Brilliant Instruments*).

(emphasis added).  Increasing the amount of one magnesium salt to precisely fulfill the function of two interchangeable magnesium salts is a paradigmatic example of "separate claim limitations" being "combined into a single element of the accused" product, which the Federal Circuit has held does not constitute vitiation.  *Eagle Comtronics*, 305 F.3d at 1317.[5]  Because there is no vitiation, and because the parties are in agreement that the Modified Media is scientifically equivalent to the accused media, the Modified Media cannot be a non-infringing alternative to the accused media as a matter of law.

### B.    The Modified Media Was Not Readily Available

Defendants' motion also fails because, as Janssen demonstrated in its motion for summary judgment, the undisputed facts show that the Modified Media was not available on the date of first infringement.

### 1.    Defendants Ignore the Controlling Case Law on Availability

In Janssen's memorandum of law in support of its motion for summary judgment on the issue of non-infringing alternatives, Janssen exhaustively discussed the controlling Federal Circuit law on the issue of availability.  Dkt. 246 at 10-15.  Janssen will not repeat that discussion here and incorporates it by reference.  Several points are relevant to this motion. First, because the Modified Media has never been sold on the market, Defendants have the

---

[5] Notably, replacing the first magnesium salt with an equivalent amount of the second salt would bring the first magnesium salt outside the claimed concentration range of the '083 patent.  In the below table, calculations have been done to ascertain the amounts of the magnesium salts in each of the Modified Media.  They were derived by removing each magnesium salt from each of the two accused media and adding back a compensating (*i.e.*, equimolar) amount of the remaining magnesium salt. ███████████

burden of proving it was an acceptable and available substitute for the accused media.  *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999).  Second, Defendants must show that the Modified Media was "readily available."  *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003).  Third, non-infringing alternatives that are only "theoretically possible" do not cut off lost profits.  *Grain Processing Corp.*, 185 F.3d at 1353.  Indeed, the Federal Circuit has never found that a hypothetical alternative that was never actually developed – like the proposed Modified Media – was available.

Defendants do not cite or engage with the controlling law.  Def. Br. at 6-7.  Startlingly, they fail to even cite the Federal Circuit's seminal *Grain Processing* decision.  They do not argue that the Modified Media would be "readily available," as the Federal Circuit has explained the *Grain Processing* rule, *Synqor Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013), or could be "commercialized 'readily,'" *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011).  Instead, they contend that the Modified Media could have been implemented without disturbing "Inflectra's product launch seven years later in 2016."  Defs' Br. at 7.  As Janssen explained in its motion, the question Defendants answer – whether they could have switched to a non-infringing media and still launched in the U.S. on the same date – is not the right question.  Dkt. 246 at 15-20.[6]

---

[6] Even under Defendants' view of the law – that is, even if the question were whether Defendants could have implemented the Modified Media over the course of seven years without delaying their 2016 launch of Inflectra – Defendants would not be entitled to summary judgment on the issue of availability.  As Janssen's expert Richard Lit explains in detail in his reply expert report, ███████████████████████████████████████████████████.  Dkt. 247 Ex. 13 (Lit Reply Report) ¶¶ 87-144.  Furthermore, as discussed below, the Modified Media are mere "theoretical possib[ilities]" that cannot "preclude or limit lost profits."  *Grain Processing*, 185 F.3d at 1354.

**2. It Would Take ███████ To Substitute the Modified Media for the Accused Media.**

Defendants' summary judgment motion should be denied and summary judgment should be granted to Janssen because it is undisputed that it would take Defendants ████████ ███████ – and likely much longer – to complete all the steps required to substitute the Modified Media for the accused media in October 2009.  Therefore, the Modified Media was not available as a matter of law.

Dr. Butler opined that the Modified Media was not readily available ██████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████ Dkt. 247 Ex. 22 (Butler Reply Report) ¶¶ 112-21.  Because Celltrion ████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* ¶ 115. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *Id.* ¶ 98. ██████████████ ████████████████████████████████████████████ *Id.* ¶¶ 104-05, 112, 115. ██████ ████████████████████████████████████████ *Id.* ¶ 116. ██████ ████████████████████████████████████████████ ██████████████████ *Id.* ¶¶ 116-120.

Defendants cite deposition testimony in which Dr. Butler elaborated that ██████████ ████████████████████████████████████████████████████ ████████████████████████ Ex. 1 (Butler Dep. Tr.) at 118:19-119:15.  But Defendants

ignore Dr. Butler's testimony that ███████████████████████████

███████████████ Dr. Butler emphasized in his deposition that ███████████

███████████████████████████████████████████████████████

███████████████████████ *Id.* at 214:8-215:4. ███████████████████

███████████████████████████████████████████████ *id.* at 136:5-

10, ███████████████████████████████ *Id.* at 134:18-19.  Dr. Butler also

testified – immediately after the snippet of his testimony on which Defendants rely – ████████

███████████████████████████████████████████████████████

███████████████ *Id.* at 119:10-15. ████████████████████████

█████ *Id.* at 121:14-122:2.  Defendants simply ignore this testimony.

In their motion, Defendants also ignore other undisputed evidence (including from their

own expert) that the switch to a Modified Media would take ██████.  Janssen's expert, Richard

Lit, testified that ████████████████████████████████████████

██████████████████████████████████████ Ex. 3 (Transcript of

Deposition of Richard Lit (Apr. 24, 2018) ("Lit Dep Tr.")) at 340:24-342:6.  Mr. Lit opined that

███████████████████████████████████████████████████████

█████████ *Id.* at 344:22-349:11.  Indeed, Defendants' own expert stated in his expert report

that █████████████████████████████████████████████ Dkt. 247

Ex. 1 (Frohlich Report) ¶¶ 273, 276.  Furthermore, Dr. Frohlich's ███████████does not

take into consideration steps that he admits would be required.  The additional required steps,

which are not included in ██████████████████████████████

████████ include the following:

████████████████████████   ████████████████████████

██████████████████████████████████████ Dkt. 247 Ex. 28 (Declaration of Jong Moon

Cho) (Jan. 12, 2017) ("Cho Decl.") ¶ 5; *see also* Dkt. 247 Ex. 13 (Lit Reply Report) ¶ 73.

████████████████████████████████████████████████████████

██████████████████████████████████████ Dkt. 247 Ex. 22 (Butler Reply Report)

¶ 115. ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████ Ex. 2 (Frohlich Dep. Tr.) at 226:20-227:2 (emphasis added).

To avoid this problem, Dr. Frohlich confirmed that his opinions related to the Modified Media

rest on the assumption that ██████████████████████████████████████

██████████████████████████████████████ *Id.* at 90:7-93:15.  This

assumption is contrary to the facts. ████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████ Dkt. 247

¶¶ 53-57 and Ex. 22, 33-35; Ex. 1 (Butler Dep. Tr.) at 214:8-215:4.

████████████████████████ It is undisputed that Defendants ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See*

Ex. 2 (Frohlich Dep. Tr.) at 235:1-236:9 ████████████████████████████

████████; Ex. 3 (Lit Dep. Tr.) at 339:25-340:23.  There is no legitimate dispute that this

process would take time.  Ex. 1 (Butler Dep. Tr.) at 136:5-10 (████████████████████); Ex.

2 (Frohlich Dep. Tr.) at 235:1-24 (████████████████████████); *id.* (████████████

████████████████████████████████).  Furthermore, there is no guarantee

that the process would have resulted in approval for the Modified Media.  In the real world, after

14

all, ████████████████████████████████████████████████████████████

████████████████████████████ According to Defendants' expert Dr. Frohlich, the

way Defendants would gain confidence that the Modified Media was safe to implement would be

██████████████████████████████████████████████ Ex. 2 (Frohlich Dep.

Tr.) at 313:24-314:15.  But despite admitting that this would be necessary, Dr. Frohlich ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ *Id.* at 304:22-306:20, 316:3-317:19.  ████████████████████

████████████████████████████████████████████████████

██████████

████████████████████████████████ It is undisputed that Celltrion ████████

████████████████████████████████████████████████████████

Ex. 2 (Frohlich Dep. Tr.) at 278:21-280:4 ████████████████████; Ex. 4

(Transcript of Deposition of Akhilesh Nagaich, Ph.D (April 27, 2018) ("Nagaich Dep. Tr.")) at

331:12-22 ████████████████; Dkt. 247. Ex. 22 (Butler Reply Report) ¶ 117 ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████; *id.* ¶ 105.  ██████████████████████████

████████████████████████████████████████████ Ex. 1

(Butler Dep. Tr.) at 119:10-15; 121:14-122:2; Ex. 2 (Frohlich Dep. Tr.) at 64:11-65:12.

Because it is undisputed that switching to the Modified Media would take ██████████

████████████████████████, the Modified Media was not "readily available" as of the

date of first infringement.  *See* Dkt. No. 246 at 8.

### 3.   The Modified Media Is Purely Theoretical.

The Modified Media also is unavailable as a matter of law because it does not exist and never has existed in the real world.  Such a hypothetical and speculative alternative – which remains to be developed more than eight years after the date of first infringement – cannot have been available.  *See Grain Processing*, 185 F.3d at 1353 ("Mere speculation or conclusory assertions will not suffice to overcome the inference" that a proposed alternative not on the market was nonetheless available); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) (although the infringer "had the ability, the resources, and the desire to design around [the patentholder's] patents" and "it could probably figure out a way to avoid infringement," there was "no available and acceptable noninfringing alternative, . . . merely the possibility that it could have come up with one.").

Federal Circuit cases applying the non-infringing alternatives doctrine all discuss alternatives that were on the market or, if not on the market at the time of first infringement, were actually developed and available at some later point.  In *Grain Processing*, the Federal Circuit considered (and accepted as available) an alternative that was actually implemented commercially in two weeks.  185 F.3d at 1346-47.  In *Micro Chem*, the Federal Circuit considered an alternative that was actually implemented before the time of trial (but rejected it as unavailable because it took up to four months to be implemented).  318 F.3d at 1123.  In *Synqor*, the Federal Circuit considered an alternative that was developed by the time of trial (but rejected it as unavailable because it took defendants "nearly a year, if not longer" to ready the alternative for commercial use).  709 F.3d at 1382.  And in *Siemens Med Solutions*, the proposed non-infringing alternative was held not to be available because "[c]linical testing of [the alternative] had not occurred as of trial."  615 F. Supp. 2d 304, 317 (D. Del. 2009), *aff'd*, 637 F.3d at 1288.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ process to switch production of the accused media to Singapore.  Dkt. 247 ¶¶ 71-84.

This effort ████████████████████ and, because Defendants export a substantial portion of

the raw materials from the United States to Singapore, has resulted in media that continues to

infringe to this day.  *Id.* ¶ 80.  ████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████ Dkt. 247 Ex. 1

(Frohlich Report) ¶¶ 252-80; Ex. 2 (Frohlich Dep. Tr.) at 50:2-51:14.  An alternative that was

conceived for litigation purposes and exists only in the mind of expert witnesses and lawyers

cannot possibly be a readily available alternative.[7]

### C. The Modified Media Is Not An Acceptable Alternative To the Accused Media.

Defendants' summary judgment motion should be denied and summary judgment should

be granted to Janssen for the additional reason that no company in Celltrion's position would

ever substitute the Modified Media for the accused media.  Why, if the Modified Media is non-

infringing, could be implemented in one month, and would make no difference in the production

of an infliximab biosimilar, ████████████████████████████

███████████████████████████████ The answer is that Defendants, when making

---

[7] It is notable that Defendants did not move for summary judgment on any of their other proposed
alternatives, including their Singapore plant ████████████████████████████
████████████████████ or the development of a new media ██████████████
████████████████████████ Instead, Defendants have
moved for judgment as a matter of law on an option that was ████████████████
███████████████████████████████████████
████████████████████████████

business decisions in the real world, do not believe the arguments they present to the Court in this motion. Neither Defendants nor any other responsible company in their position would actually consider the trivial changes reflected in the Modified Media to constitute acceptable non-infringing substitutes for the accused media.

From a business and commercial point of view, Celltrion would not switch from the accused media to the Modified Media because, if the accused media infringes, so does the Modified Media. *Supra* at 4-10. Janssen's expert, Mr. Lit, is the only one among the parties' expert witnesses with any experience as an executive at a major pharmaceutical company. Mr. Lit opines that



Dkt. 247 Ex. 13 (Lit Reply Report) ¶ 107.

Ex. 2 (Frohlich Dep. Tr.) at 313:24-315:13. In any event, Defendants' experts lack any basis to dispute Mr. Lit's opinion and they do not do so. Rather, Defendants' expert witnesses disclaim any opinions on whether the Modified Media would have been acceptable to Defendants' executives from a business perspective. *See* Ex. 2 (Frohlich Dep. Tr.) at 52:3-55:19; 324:2-14; Dkt. 247 Ex. 10 (Nagaich Report) ¶¶ 3, 37, 39, 40, 42, 45, 47, 49, 123 (opinions limited to "from a regulatory perspective"); Ex. 4 (Nagaich Dep. Tr.) at 98:24-104:8; 210:7-25; 323:3-23. As a result, Mr. Lit's opinion that the Modified Media was not an acceptable alternative is unrebutted.

### III.     CONCLUSION

Because no reasonable jury could find that the Modified Media was non-infringing, available, or acceptable, Defendants' motion for partial summary judgment should be denied and the Court should grant Janssen's summary judgment on the Modified Media under Fed. R. Civ. P. 56(f) even if it denies Janssen's broader motion on the issue of non-infringing alternatives. Dkt. 245.

Respectfully Submitted,

Dated: May 25, 2018


*Of Counsel*
Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Irena Royzman (admitted *pro hac vice*)
iroyzman@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
Daniel A. Friedman (admitted *pro hac vice*)
dfriedman@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
FAX: 212-336-2222

*/s/ Alison C. Casey*
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
Alison C. Casey (BBO #688253)
acasey@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on May 25, 2018, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and if not so registered, that copies will be electronically mailed to such parties or their counsel.


*/s/ Alison C. Casey*
Alison C. Casey