# Exhibit B

# Filed Under Seal

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

JANSSEN BIOTECH, INC.,                    )
                        Plaintiff,        )
                                          )
            v.                            )   Civil Action No. 1:17-cv-11008-MLW
                                          )
CELLTRION HEALTHCARE CO., LTD.,           )
CELLTRION, INC., and                      )
HOSPIRA, INC.,                            )
                        Defendants.       )
_____ )


**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR
DISMISS JANSSEN'S COUNTERCLAIMS UNDER 35 U.S.C. § 271(f)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ II

INTRODUCTION ............................................................................................................................ 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT ................................................................................................................................... 4

I.   JANSSEN'S § 271(f)(1) COUNTERCLAIMS ARE PROCEDURALLY
     APPROPRIATE ................................................................................................................. 4

     A.   The Text of the Federal Rules Permit Reply Counterclaims ................................ 4

     B.   The Great Weight of Authority Supports Counterclaims in Reply ........................ 5

     C.   Janssen's Counterclaims Are Compulsory ........................................................... 8

II.  AMENDMENT OF JANSSEN'S COMPLAINT TO ASSERT A § 271(f)(1)
     CLAIM WOULD BE PROPER .......................................................................................... 10

     A.   Applying Rule 16(b)'s Good Cause Standard Would Be Contrary to First
          Circuit Precedent ............................................................................................... 11

     B.   Amendment of Janssen's Complaint to Add Its § 271(f) Claim Would
          Comport With Rule 15 ....................................................................................... 12

          1.   Janssen Is Bringing Its § 271(f) Claim in Good Faith and Without
               Undue Delay ........................................................................................... 12
          2.   Janssen's § 271(f)(1) Claims Do Not Require Additional Discovery ........ 13

     C.   Permitting Janssen's § 271(f)(1) Claims to Proceed Does Not Require
          Modification of the Schedule .............................................................................. 15

III. JANSSEN STATES VALID CLAIMS UNDER § 271(f)(1) ............................................ 15

     A.   Celltrion "Caused the Supply" of Cell Media Components from the United
          States to Singapore ............................................................................................ 16

     B.   Hospira is Liable for Celltrion's Violation of § 271(f)(1) as a Member of a
          Joint Enterprise to Produce and Market Inflectra ............................................. 20

CONCLUSION .............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akamai v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015)...............................................................19, 20

*Am. Cyanide Co. v. Capuano*,
    381 F.3d 6 (1st Cir. 2004).........................................................................9

*Davis & Cox v. Summa Corp.*,
    751 F.2d 1507 (9th Cir. 1985)..................................................................6

*Doe v. Housing Authority of Portland*,
    No. 13-cv-1974, 2015 U.S. Dist. LEXIS 21191 (D. Or. Feb. 23, 2015) .................8

*Emhart Indus. v. Century Indem. Co.*,
    559 F.3d 57 (1st Cir. 2009).......................................................................6

*Foman v. Davis*,
    371 U.S. 178 (1962)...............................................................................12

*Glassman v. Computervision Corp.*,
    90 F.3d 617 (1st Cir. 1996)......................................................................16

*Gonzalez v. Central Electric Cooperative*,
    No. 08-cv-6236, 2009 U.S. Dist. LEXIS 98104 (D. Or. Oct. 15, 2009)..................8

*Grain Processing Corp. v. American Maize-Products*,
    185 F. 3d 1341 (Fed. Cir. 1999)................................................................14

*Grant v. News Grp.*,
    55 F.3d 1 (1st Cir. 1995).........................................................................12

*Ivey v. Daus*,
    17 F.R.D. 319 (S.D.N.Y. 1955).................................................................6

*Jacobs Vehicle Sys. v. Pac. Diesel Brake Co.*,
    424 F. Supp. 2d 388 (D. Conn. 2006).........................................................18

*Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons*,
    50 F.R.D. 415 (D. Del. 1970)...................................................................6

*Klunder v. Brown Univ.*,
    778 F.3d 24 (1st Cir. 2015)......................................................................12

ii

*Limelight Networks, Inc. v. Akamai Techs.*,
    134 S. Ct. 2111 (2014) ..................................................................................... 18

*Mattel, Inc. v. MGA Entm't, Inc.*,
    705 F.3d 1108 (9th Cir. 2013) ...................................................................... 6, 8

*McCaffrey v. Rex Motor Transp., Inc.*,
    672 F.2d 246 (1st Cir. 1982) ............................................................................. 9

*MGM Studios, Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ......................................................................................... 19

*Old Town Industries, Inc. v. Ryan*,
    No. 09-cv-2587, 2010 U.S. Dist. LEXIS 83049 (D. Colo. July 12, 2010) .............. 8

*Pellegrini v. Analog Devices, Inc.*,
    375 F.3d 1113 (Fed. Cir. 2004) ....................................................................... 17

*Pennington v. Wells Fargo Bank, N.A.*,
    947 F. Supp. 2d 529 (E.D. Pa. 2013) ................................................................. 6

*Pogue v. Allied Prods. Corp.*,
    No. 89-C-3548, U.S. Dist. LEXIS 11092 (N.D. Ill. Sept. 19, 1989) ................... 5, 6

*Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*,
    No. 05-cv-73615, 2007 U.S. Dist. LEXIS 29571 (E.D. Mich. Apr. 20, 2007) ......... 6

*Rates Technology, Inc. v. Nortel Networks Corp.*,
    399 F.3d 1302 (Fed. Cir. 2005) ......................................................................... 7

*Se. Indus. Tire Co. v. Duraprene Corp.*,
    70 F.R.D. 585 (E.D. Pa. 1976) ....................................................................... 4, 6

*Soilworks, LLC v. Midwest Indus. Supply, Inc.*,
    No. CV-06-2141, 2007 U.S. Dist. LEXIS 37595 (D. Ariz. May 22, 2007) ............ 6

*Strandberg v. Country Mutual Insurance Co.*,
    No. 11-cv-1545, 2011 U.S. Dist. LEXIS 146416 (D. Minn. Dec. 20, 2011) ........... 7

*T.D. Williamson, Inc. v. Laymon*,
    723 F. Supp. 587 (N.D. Okla. 1989) ................................................................. 19

*Trailer Source, Inc. v. Hyundai Translead, Inc.*,
    No. 3:10-cv-148, 2010 U.S. Dist. LEXIS 30234 (M.D. Tenn. Mar. 29, 2010) ........ 6

*Turner & Boisseau v. Nationwide Mutual Insurance Co.*,
    175 F.R.D. 686 (D. Kan. 1997) .......................................................................... 7

*United Magazine Co. v. Murdoch Magazines Distributors, Inc.*,
No. 00-cv-3367, 2003 U.S. Dist. LEXIS 1440 (S.D.N.Y. Feb. 3, 2003)...................................7

*United States ex. rel. D'Agostino v. ev3, Inc.*,
802 F.3d 188 (1st Cir. 2015) ...........................................................................................11

*Vivid Techs, Inc. v. Am. Science & Eng'g, Inc.*,
200 F.3d 795 (Fed Cir. 1999)............................................................................................9

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
No. 88-Civ-7062, 1989 U.S. Dist. LEXIS 13518 (S.D.N.Y. Nov. 14, 1989)..........................6

*Weitz Co. LLC v. MH Wash., LLC*,
No. 06-559-CV, 2007 U.S. Dist. LEXIS 40747 (W.D. Mo. June 5, 2007) ..............................6

*WesternGeco L.L.C. v. ION Geophysical Corp*,
791 F.3d 1340 (Fed. Cir. 2015)..............................................................................16, 17, 18

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
837 F.3d 1358 (Fed. Cir. 2016)........................................................................................17

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
876 F. Supp. 2d 857 (S.D. Tex. 2012) ...........................................................................16, 18

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
No. 4:09-cv-1827, 2012 U.S. Dist. LEXIS 90755 (S.D. Tex. June 29, 2012)........................16

*WesternGeco LLC v. ION Geophysical Corp.*,
136 S. Ct. 2486 (2016)....................................................................................................17

*Wiggins v. FDIC*,
No. 2:12-cv-2705, 2017 U.S. Dist. LEXIS 167042 (N.D. Ala. Oct. 10, 2017) ........................6

**Statutes**

35 U.S.C. § 271..........................................................................................................9, 20

35 U.S.C. § 271(a) ......................................................................................................2, 20

35 U.S.C. § 271(f)(1) ...................................................................................... *passim*

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1188
(3d ed. 2004) ..............................................................................................................5

3 James W. Moore et al., Moore's Federal Practice § 13.44 (Matthew Bender
2017) .........................................................................................................................5

Fed. R. Civ. P. 7 ...............................................................................................4, 8

Fed. R. Civ. P. 7(a) .........................................................................................4, 5

Fed. R. Civ. P. 7(a)(3) ........................................................................................4

Fed. R. Civ. P. 12(b)(6) .....................................................................................15

Fed. R. Civ. P. 13 ....................................................................................4, 6, 7, 8

Fed. R. Civ. P. 13(a) ........................................................................................4, 5

Fed. R. Civ. P. 13(b) ...........................................................................................4

Fed. R. Civ. P. 15 .........................................................................................10, 11

Fed. R. Civ. P. 15(a)(2) .................................................................................10, 11

Fed. R. Civ. P. 15(b)(1) .................................................................................10, 11

Fed. R. Civ. P. 16(b) .....................................................................................10, 11

Fed. R. Civ. P. 16(b)(4) .....................................................................................11

# INTRODUCTION

Defendants assert that Janssen is not entitled to lost profits damages because they have moved production of the accused cell culture media to Singapore, and, they contend, this shift in the location of production is a non-infringing alternative. As described in its counterclaim (Dkt. No. 94), however, Janssen recently learned that all or a substantial portion of the components of the Singapore media are being supplied from the United States and combined in Singapore, which constitutes infringement under 35 U.S.C. § 271(f)(1). Because Singapore-made media cannot be a non-infringing alternative if it is infringing, the question of infringement under § 271(f)(1) is part of this case, would be part of this case even if Janssen had not pleaded § 271(f)(1) counterclaims, and will continue to be part of this case regardless of the outcome of Defendants' motion to dismiss Janssen's counterclaims.

Defendants' motion lacks merit and should be denied. Contrary to Defendants' contention, reply counterclaims are consistent with the text of the Federal Rules of Civil Procedure, and they are supported by the great weight of authority, including the leading treatises on federal civil procedure. Because reply counterclaims are procedurally proper, there is no need for the Court to assess whether Janssen should be permitted to amend its complaint to add a § 271(f)(1) claim. If the Court were to address this question, however, Janssen should be permitted to amend. Janssen did not unduly delay in discovering the surprising fact that Defendants failed to stop infringing when they moved production of the accused media to Singapore, and bringing a § 271(f)(1) claim would cause no prejudice to Defendants given that they are already relying on Singapore-made media as an alleged non-infringing alternative for purposes of their damages case and must therefore litigate whether it is infringing.

As for Defendants' motion to dismiss the § 271(f)(1) claim for failure to state a claim, it finds no support in the text of the statute or the case law interpreting it. By its terms, § 271(f)(1) states that whoever "supplies *or causes to be supplied*" from the United States components of patented invention to be assembled abroad is liable for infringement. 35 U.S.C. § 271(f)(1) (emphasis added). Defendants' argument that only the exporter itself can be liable for infringement, and not companies such as themselves that cause the export, is contrary to the text of the statute and the cases that have addressed similar fact patterns. Defendants' motion should be denied and Janssen should be permitted to proceed with its counterclaims.

## BACKGROUND

Although Janssen learned about the existence of HyClone's Singapore facility during discovery in the liability phase of this case, it was not until October 2016, after the close of fact discovery and shortly before trial was scheduled to begin, that Defendants informed Janssen they had decided to move production of the accused cell culture media from Utah to Singapore. *See* No. 15-cv-10698, Dkt. No. 282-75. Although the parties disputed the relevance of this late-breaking development to liability, Janssen did not initially question Defendants' assertion that Singapore-made media would be non-infringing. *See, e.g.*, Ex. A (12/22/16 Tr.) at 26:6-8 (Defendants' counsel: "We're purchasing from the Singapore facility. So what would the injunction enjoin us from doing?"); Ex. B (1/18/17 Sealed Tr.) at 10:4-5 (Janssen counsel stating that "Singapore is the non-infringing alternative"); Ex. C (2/14/17 Tr.) at 35:13-14 (Janssen counsel stating that "we expect them to switch to material made from Singapore by September, so the damage period is nine months"). After all, the '083 patent is a product patent, and as a result making, using, or selling the accused media outside the United States does not infringe the patent under § 271(a).

2

Janssen's belief that Singapore-made media would be non-infringing persisted after the liability trial was postponed and throughout the time that the parties engaged in extended proceedings on Janssen's standing. During the damages phase of the case, however, which did not intensify until after the Court denied Defendants' motion to dismiss in October 2017, Defendants have asserted that making the accused media in Singapore is an available non-infringing alternative that prevents Janssen from recovering its lost profits. ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████ As Defendants acknowledge, these three emails were included within approximately 50,000 pages of documents that HyClone produced in late 2016, after the close of liability discovery and shortly before trial was then scheduled to begin. *See* Dkt. No. 123-2 at ¶ 4.

These documents are highly material to damages discovery. Not only do they indicate that Defendants' alleged non-infringing alternative is in fact infringing, they are also powerful evidence that contrary to Defendants' contention, avoiding infringement by moving production to Singapore is not a simple task that could constitute an available substitute. Recognizing the relevance of this issue, Janssen served document and deposition subpoenas on HyClone in November 2017 seeking full information about its supply of components to Singapore. *See* Ex. D (Janssen Subpoena to HyClone). Although HyClone initially objected to these requests, it subsequently agreed to produce documents and deposition testimony on the subject, and this discovery will proceed regardless of the outcome of this motion. *See* Ex. E (Email from David Caine to Aron Fischer). Meanwhile, Janssen's expert witnesses, whose opening reports are due

on January 19, 2018, will address whether Defendants' Singapore-made media is an available

non-infringing alternative, including whether it is non-infringing.  This testimony will also

proceed regardless of the outcome of this motion.

**ARGUMENT**

## I.  JANSSEN'S § 271(f)(1) COUNTERCLAIMS ARE PROCEDURALLY APPROPRIATE

Contrary to Defendants' argument, Janssen's reply counterclaims are procedurally

appropriate.  Reply counterclaims are consistent with the plain language of the Federal Rules of

Civil Procedure, and the weight of authority, including numerous court decisions and major

treatises on federal civil procedure and practice, confirm that they are permissible.

### A.  The Text of the Federal Rules Permit Reply Counterclaims

The plain language of the Federal Rule of Civil Procedure permits plaintiffs to assert

counterclaims in reply to a defendant's counterclaim.  Rule 7 states that among the "pleadings"

that "are allowed" by the Federal Rules is "an answer to a counterclaim designated as a

counterclaim."  Fed. R. Civ. P. 7(a)(3).  Rule 13(a), in turn, states that "[a] *pleading* must state as

a counterclaim any claim that—at the time of its service—the pleader has against an opposing

party" that arises from the same transaction or occurrence and does not require adding another

party over whom the court cannot acquire jurisdiction.  Fed. R. Civ. P. 13(a).[1]  "Rule 13, in

conjunction with [Rule 7(a)] thus authorizes a counterclaim to be stated in a reply to the

counterclaim of the other party."  *Se. Indus. Tire Co. v. Duraprene Corp.*, 70 F.R.D. 585, 586

(E.D. Pa. 1976).  The fact that the drafters of Rule 13 chose the broad defined term "pleading"

---

[1] Rule 13(b) adds that "[a] *pleading* may state as a counterclaim against an opposing party any claim that is not compulsory."  Fed. R. Civ. P. 13(b) (emphasis added).

4

indicates that counterclaims are permitted in connection with any pleading and not just in connection with a defendant's answer, as Defendants contend.

Here, Janssen filed a timely "pleading" under Rule 7(a) on December 7, 2017: its answer to Defendants' counterclaims of non-infringement.  Dkt. No. 94.  Because Janssen had, "at the time of [the] service" of this pleading, a claim for infringement under § 271(f)(1) that arose from the same transaction and occurrence as its existing infringement claims and did not require the joinder of additional parties, Janssen's pleading was required to state a § 271(f)(1) counterclaim.  Fed. R. Civ. P. 13(a).  Nothing in Defendants' motion addresses, much less refutes, this simple textual analysis of the Federal Rules.

## B. The Great Weight of Authority Supports Counterclaims in Reply

 "Aside from a rogue decision or two, courts have long agreed that the federal rules provide for a counterclaim in reply."  *Pogue v. Allied Prods. Corp.*, No. 89-C-3548, U.S. Dist. LEXIS 11092, at *9 (N.D. Ill. Sept. 19, 1989).  Indeed, both leading treatises on federal civil procedure have recognized the availability of counterclaims-in-reply, at least where, as here, the reply counterclaim is compulsory.  The Wright and Miller treatise comments that "[i]f a plaintiff has a claim arising from the same transaction as the one involved in the defendant's counterclaim . . . a counterclaim in the plaintiff's reply to the defendant's counterclaim seems entirely appropriate."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1188 (3d ed. 2004).  Similarly, Moore's Federal Practice states that "a pleader may raise a counterclaim in its reply in response to an opposing party's set of counterclaims." 3 James W. Moore et al., Moore's Federal Practice § 13.44 (Matthew Bender 2017).

A substantial majority of courts have reached the same conclusion.  The Ninth Circuit, for example, has held that "[c]ounterclaims-in-reply are permitted" where, as here, "they are

compulsory." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (citing *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1525 (9th Cir.1985)). As exemplified in the below footnote, more than a dozen district courts throughout the country have agreed that reply counterclaims are permissible.[2]

Although the First Circuit has not had occasion to speak directly on the availability of counterclaims-in-reply, it recently evaluated the merits of such a claim without objecting to the procedure. *See Emhart Indus. v. Century Indem. Co.*, 559 F.3d 57, 61, 74-77 (1st Cir. 2009) (affirming judgment on the merits of claims that were plead as a counterclaims-in-reply). To our knowledge, there are no First Circuit cases in which a district court dismissed a counterclaim in reply as procedurally improper. In *Bethlehem Fabricators v. John Bowen Co.*, 1 F.R.D. 274, 275 (D. Mass. 1940), the court concluded that "Rule 13 permits this Plaintiff to file the counterclaim" because Rule 13 "uses the words 'pleadings' and 'pleader' rather than 'answer' and 'defendant.'"

---

[2] *See, e.g.*, [1] *Wiggins v. FDIC*, No. 2:12-cv-2705, 2017 U.S. Dist. LEXIS 167042, at *11 (N.D. Ala. Oct. 10, 2017) ("[T]he court finds that a counterclaim in response to a counterclaim is a permissible pleading."); [2] *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 533 (E.D. Pa. 2013) ("Wells Fargo's last argument—that a counterclaim contained in a reply to a counterclaim is procedurally unallowable—fails as a matter of law"); [3] *Trailer Source, Inc. v. Hyundai Translead, Inc.*, No. 3:10-cv-148, 2010 U.S. Dist. LEXIS 30234, at *13 n.3 (M.D. Tenn. Mar. 29, 2010) ("This court agrees with the view that nothing in the Federal Rules of Civil Procedure prevents a plaintiff from bringing a counterclaim-in-reply"); [4] *Weitz Co. LLC v. MH Wash., LLC*, No. 06-559-CV, 2007 U.S. Dist. LEXIS 40747, at *7 (W.D. Mo. June 5, 2007) ("The weight of authority on this question favors [permitting a counterclaim-in-reply]."); [5] *Soilworks, LLC v. Midwest Indus. Supply, Inc.*, No. CV-06-2141, 2007 U.S. Dist. LEXIS 37595, at *5 (D. Ariz. May 22, 2007) ("The Court concludes that the plain language of the Federal Rules of Civil Procedure permit Plaintiff's counterclaim in reply."); [6] *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, No. 05-cv-73615, 2007 U.S. Dist. LEXIS 29571, at *4 (E.D. Mich. Apr. 20, 2007) ("[T]he Court concludes that the plain language of the Federal Rules of Civil Procedure permit plaintiff's counterclaims in reply."); [7] *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, No. 88-Civ-7062, 1989 U.S. Dist. LEXIS 13518, at *2-3 (S.D.N.Y. Nov. 13, 1989) ("Both case law and commentators support the view that under the Federal Rules a plaintiff may interpose counterclaims in a reply"); [8] *Pogue, supra*, U.S. Dist. LEXIS 11092, at *9; [9] *Duraprene Corp., supra*, 70 F.R.D. at 586; [10] *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons*, 50 F.R.D. 415, 418 (D. Del. 1970) ("That a plaintiff may counterclaim in his reply is established both in the case law and the texts."); [11] *Ivey v. Daus*, 17 F.R.D. 319, 321 (S.D.N.Y. 1955) ("Counterclaims are perfectly proper subjects of a reply."); [12] *Bethlehem Fabricators v. John Bowen Co.*, 1 F.R.D. 274, 275 (D. Mass. 1940) ("Rule 13 permits this Plaintiff to file the counterclaim" because Rule 13 "uses the words 'pleadings' and 'pleader' rather than 'answer' and 'defendant.'").

Meanwhile, the case law cited in Defendants' motion is inapposite and at best represents the unpersuasive minority view. Indeed, some cases cited by Defendants simply do not support their position. For example, Defendants' leading citation is *Bethlehem Fabricators*, a decision that *permits* counterclaims-in-reply. *See id.* Defendants cite *Bethlehem* for its comment that it would have been "better" to bring a motion to amend, Dkt. No. 123 at 3, but they fail to mention that its ultimate holding on the issue is that reply counterclaims are allowed. Defendants' citation to *Strandberg v. Country Mutual Insurance Co.*, No. 11-cv-1545, 2011 U.S. Dist. LEXIS 146416, at *9-11 (D. Minn. Dec. 20, 2011) is similarly puzzling because that decision makes no mention of counterclaims-in-reply. The "procedurally improper" claim at issue in *Strandberg* was a bad-faith insurance claim that was "improper" because the plaintiff had failed to seek leave of court to file the claim, as required by Minnesota insurance law. *Id.* at *10-11.

Other cases cited by Defendants rely on specific circumstances not present here and do not hold as a general matter that reply counterclaims are improper. In *Rates Technology, Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1310 (Fed. Cir. 2005), the court held that a counterclaim-in-reply was improper on the ground that it would have required joining a new party after the deadline for joinder of additional parties had passed. The decision does not suggest that reply counterclaims are generally unavailable; it merely holds that they do not warrant an exception to court deadlines for adding parties (not applicable here). In *Turner & Boisseau v. Nationwide Mutual Insurance Co.*, 175 F.R.D. 686, 687 (D. Kan. 1997), the court acknowledged that reply counterclaims have frequently been allowed where, as here, they are compulsory, but expressed skepticism that permissive reply counterclaims are allowed. Furthermore, the court **granted** the plaintiff leave to amend the complaint. *Id.* And in *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, No. 00-cv-3367, 2003 U.S. Dist. LEXIS 1440, at *11-12 (S.D.N.Y. Feb. 3,

2003), the court noted that "[i]n most cases, the Court would permit a reply counterclaim or an amendment of the complaint," but did not permit it on the circumstances of the case because the court had previously "explicitly ruled . . . that plaintiffs were prohibited from further amending their complaint."

The few remaining cases cited by Defendants are unpersuasive.  In *Old Town Industries, Inc. v. Ryan*, No. 09-cv-2587, 2010 U.S. Dist. LEXIS 83049, at *4 (D. Colo. July 12, 2010), the court cited no authority and did not examine the text of the rules to justify its decision to strike a counterclaim-in-reply. The court also relied on the fact, not present here, that a court-imposed deadline for adding new claims had already passed.  *Id.*  Such a deadline had also passed in *Doe v. Housing Authority of Portland*, No. 13-cv-1974, 2015 U.S. Dist. LEXIS 21191, at *15-*16 (D. Or. Feb. 23, 2015), where the court also cited no authority for its refusal to entertain a reply counterclaim.  *Doe* and *Gonzalez v. Central Electric Cooperative*, No. 08-cv-6236, 2009 U.S. Dist. LEXIS 98104, at *16 (D. Or. Oct. 15, 2009), are both Ninth Circuit district courts, moreover, and as discussed above, controlling Ninth Circuit case law holds that reply counterclaims **are** permitted where, as here, they are compulsory.  *See Mattel, supra*, 705 F.3d at 1110.  In sum, Defendants' motion rests on case law that is inapposite, unpersuasive, and contrary to the great weight of authority.

### C.     Janssen's Counterclaims Are Compulsory

Although the Rules 7 and 13 literally appear to permit both compulsory and permissive reply counterclaims, some courts have permitted counterclaims-in-reply only when they are compulsory counterclaims.  *See, e.g.*, *Mattel*, 705 F.3d at 1110 ("Counterclaims-in-reply are permitted only if they are compulsory.").  Here, there is no serious dispute that Janssen's § 271(f)(1) counterclaims are compulsory counterclaims.

8

Although Defendants contend that Janssen's § 271(f)(1) counterclaims are not compulsory (Dkt. No. 123 at 4-5), they do not even attempt to analyze the relevant legal standards for compulsory counterclaims. A counterclaim is compulsory if it meets any one of four well-established tests:

    (1) Whether the legal and factual issues raised by the claim and counterclaim are largely the same;

    (2) Whether, absent the compulsory counterclaim, *res judicata* would bar a subsequent suit on the counterclaim;

    (3) Whether substantially the same evidence supports or refutes both the claim and counterclaim; and

    (4) Whether there is a logical relation between the claim and counterclaim.

*Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 801 (Fed Cir. 1999); *see McCaffrey v. Rex Motor Transp., Inc.*, 672 F.2d 246, 248 (1st Cir. 1982) (citing same four tests).

Janssen's § 271(f)(1) counterclaims are compulsory counterclaims under all four of these tests. Defendants' First Counterclaim seeks a broad declaratory judgment that they have not "infringe[d], either directly or indirectly . . . any valid and enforceable claim of the '083 patent." Defs.' Counterclaim ¶ 15. This broadly worded counterclaim seeks a declaration that Defendants have not violated any portion of 35 U.S.C. § 271 – including § 271(f)(1) – with respect to the '083 patent. A counterclaim of infringement under § 271(f)(1) therefore raises the exact same facts, concerns the exact same evidence, and bears a precise logical relationship to the claim for declaratory judgment of non-infringement of the '083 patent. Furthermore, a judgment here would have *res judicata* effect because Janssen's § 271(f)(1) claim "'could have been raised in [this] action.'" *Am. Cyanide Co. v. Capuano*, 381 F.3d 6, 16 (1st Cir. 2004) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Not surprisingly, the Federal Circuit has held that "an

infringement counterclaim is compulsory in an action for declaration of non-infringement."
*Vivid Techs.*, 200 F.3d at 801.

Unable to dispute these simple legal principles, Defendants contend that Janssen's

271(f)(1) counterclaims are not compulsory because Janssen did not assert them in response to

similar counterclaims in the previous action "despite being in full possession of the GE HyClone

documents Janssen claims to rely upon for its § 271(f) allegations." Dkt. No. 123 at 4-5. As

discussed below, this is incorrect. At the time of Janssen's response to Defendants' previous

counterclaims, the HyClone documents in question had only recently been produced, along with

tens of thousands of pages of additional documents. Janssen did not know that the Singapore

media was infringing under § 271(f)(1), as evidenced by its repeated representations to the Court

to that effect. *See supra* at 2. In any event, the fact that Janssen was unaware of its § 271(f)(1)

claim in November 2016 hardly suggests that the claim is not compulsory now that it has been

identified. Because the § 271(f)(1) counterclaim is compulsory, there can be no serious dispute

that it is permitted under the Federal Rules and the relevant case law.

## II.  AMENDMENT OF JANSSEN'S COMPLAINT TO ASSERT A § 271(f)(1) CLAIM WOULD BE PROPER

Because compulsory reply counterclaims are permissible, the Court does not need to

assess whether Janssen should be permitted to amend its complaint to add a claim for

infringement under § 271(f)(1). But if the Court were to consider the question, Janssen should be

granted leave to amend its complaint. Contrary to Defendants' contention, the Rule 16(b) "good

cause" standard would not apply because the scheduling order does not provide any deadline for

amending the complaint. Furthermore, there would be good cause to amend, given that the

timing of Janssen's discovery of infringement was reasonable, infringement under § 271(f)(1) is

already part of the case, and adding a § 271(f)(1) claim would therefore have little or no impact on discovery.

### A.   Applying Rule 16(b)'s Good Cause Standard Would Be Contrary to First Circuit Precedent

Under Rule 15, amendments to a complaint are "freely" granted, even up to and during trial.  Fed. R. Civ. P. 15(a)(2) & (b)(1).  The only exception to this liberal approach to amendment is when a scheduling order provides a deadline for amendments to the complaint. Then, Rule 16(b)(4) comes into play, and provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Here, as Defendants acknowledge, no scheduling order provides a deadline for amendments to the complaint and permitting an amendment would not require modification of any scheduling order.  Dkt. No. 123 at 5-6.  Thus, the Rule 16(b)(4) standard, by its terms, does not apply here.

Nevertheless, Defendants, citing cases from outside this Circuit, urge the Court to apply Rule 16(b)'s good cause standard.  But as the First Circuit recently held, that would be legally incorrect.  *See United States ex. rel. D'Agostino v. ev3, Inc.*, 802 F.3d 188, 194 (1st Cir. 2015). In *D'Agostino*, the district court had applied 16(b)'s good cause standard as a "sanction" for the plaintiff's request to amend its complaint at an advanced stage in the litigation, despite a lack of a specific deadline for amending pleadings in the scheduling order – precisely what Defendants have asked the Court to do in this case.  *Id.* at 194.  The First Circuit held that this was an error of law.  *Id.*  Since the relevant scheduling order "did not specify any deadline for amending the pleadings . . . the gears of Rule 16(b) were not engaged" and the rule "could not be a permissible ground for employing a more stringent standard" to the plaintiff's motion to amend its complaint.  *Id.* at 194-95.  Under *D'Agostino*, which Defendants fail to cite – and under the plain language of the Federal Rules – the "good cause" standard of Rule 16(b) does not apply.

11

**B.     Amendment of Janssen's Complaint to Add Its § 271(f) Claim Would
Comport With Rule 15**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a pleading should

be granted "freely . . . when justice so requires."  Under this liberal standard, leave to amend

must be granted unless there is an "adequate reason for the denial (*e.g.*, undue delay, bad faith,

dilatory motive on the part of the movant, [or] futility of the amendment)."  *Grant v. News Grp.*,

55 F.3d 1, 5 (1st Cir. 1995) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).  The First Circuit

focuses its analysis on whether leave to amend would cause "prejudice to the opposing party

. . . [such as] additional, prolonged discovery and a postponement of trial."  *Klunder v. Brown

Univ.*, 778 F.3d 24, 34 (1st Cir. 2015).

Here, there would be no reason to deny Janssen leave to amend its complaint to add §

271(f) claims.  Contrary to Defendants' contentions, Janssen's assertion of claims under § 271(f)

was not unduly delayed and, since the claims rest on the same facts as Defendants' non-

infringing alternatives argument which is already at the center of damages discovery, allowing

the amendment would not require additional discovery or the postponement of trial, and would

not prejudice Defendants in any way.

**1.     Janssen Is Bringing Its § 271(f) Claim in Good Faith and
Without Undue Delay**

Defendants contend that Janssen unduly delayed the assertion of its § 271(f) claims

because the documents providing a basis for the claims were produced to Janssen in October

2016.  This argument ignores reality.  As Defendants acknowledge, HyClone produced "over

50,000 pages of documents to Janssen" in October 2016, after the close of discovery in liability

case and just months before trial.  Dkt. No. 123 at 8. ████████████████████████

████████████████████████████████████████████████████████████

12

███████████████████████████████████████████████

██████████████████████████████████████ The idea that Janssen engaged in
undue delay by not immediately locating and recognizing the significance of these emails cannot
be credited.

To the contrary, for months Janssen operated under the belief (now shown to be incorrect)
that by moving production of the accused media to Singapore, Defendants would cease
infringing the '083 patent. *See*, *e.g.*, Ex. B (1/18/17 Sealed Tr.) at 10:4-5 (Janssen counsel
stating that "Singapore is the non-infringing alternative"); Ex. C (2/14/17 Tr.) at 35:12-14
(Janssen counsel stating that "we expect them to switch to material made from Singapore by
September, so the damage period is nine months"). Defendants also repeatedly asserted that the
Singapore media was non-infringing, relying on it to oppose Janssen's injunction request, as well
as its claim *See, e.g.*, Ex. A (12/22/16 Tr.) at 26:5-8 (Defendants' counsel: "We're purchasing
from the Singapore facility. So what would the injunction enjoin us from doing?")

As Janssen indicated at the conference call before the Court on December 5, 2017, it was
not until the parties turned to damages discovery in earnest in the last half of 2017, including the
question of non-infringing alternatives, that Janssen unearthed the emails indicating ongoing
infringement under § 271(f)(1). Ex. F (12/5/17 Tr.) at 21:19-22:14. Janssen asserted its §
271(f)(1) claim shortly thereafter. In this context, the timing of Janssen's assertion of the §
271(f) claims does not evince undue delay.

### 2. Janssen's § 271(f)(1) Claims Do Not Require Additional Discovery

There can be no serious dispute that Defendants' reliance on Singapore as an alleged non-
infringing alternative raises the question whether Singapore media is in fact non-infringing, and
that as a result discovery on § 271(f)(1) infringement will be necessary regardless whether

13

Janssen is allowed to pursue its counterclaims. Nevertheless, Defendants offer two implausible reasons that Janssen's § 271(f) claims would supposedly require additional discovery. First, Defendants argue that because their non-infringing alternatives argument legally hinges on what *could have* occurred, rather than on what actually occurred, the evidence necessary to prove Janssen's claims somehow differs from the evidence at the center of the non-infringing alternatives dispute. Dkt. No. 123 at 12. But under controlling Federal Circuit law, "[a]cceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F. 3d 1341, 1353 (Fed. Cir. 1999). Defendants' suggestion that they can prove their case by offering mere theoretical possibilities is therefore incorrect. Furthermore, the most relevant evidence of what Defendants "could have" done is what they actually did. The fact that Defendants have not been able to successfully avoid infringement despite their extensive efforts and great incentive to do so is powerful evidence that a move to Singapore is not an available non-infringing alternative.

Defendants' second argument as to why Janssen's § 271(f) counterclaim would require additional discovery makes even less sense. Defendants stress that Singapore media is not their only proposed non-infringing alternative (Dkt. No. 123 at 13), but this does not show that Janssen's § 271(f) claims would require additional discovery. That Defendants purport to rely on non-infringing alternatives besides Singapore only shows that there will be ***additional*** discovery beyond § 271(f)(1) discovery. It does not change the fact that the Singapore media is part of the case and discovery on whether it is infringing will need to proceed.

Indeed, discovery concerning infringement under § 271(f)(1) is already being pursued. Prior to the filing of Janssen's § 271(f) claims, Defendants had already requested from HyClone

documents sufficient to show HyClone's capacity to manufacture cell culture media in Singapore before Janssen filed its § 271(f) claims, *see* Dkt. No. 123. Ex. 16 at 10, and Janssen had already requested detailed sourcing information for the Singapore-produced media from HyClone. *See* Ex. A (Janssen subpoena to HyClone) at 12-13. HyClone has agreed to produce documents responsive to Janssen's request. *See* Ex. C (Email from David Caine) Accordingly, the fact discovery that Defendants have identified in their brief as necessary to resolve Janssen's § 271(f) claim is already underway and will be completed regardless of the outcome of this motion.

Defendants further contend that Janssen's § 271(f) claims would require additional expert discovery to establish what is a "substantial portion of the components" of the accused media and whether that changed over time. Dkt. No. 123 at 10. But as discussed above, expert testimony on this question will be required anyway, to assess the viability of the Singapore media as a non-infringing alternative. Because a non-infringing alternative must be non-infringing, any disputes over the "substantial portion" element, or any other element, of § 271(f)(1) will need to be litigated as part of the damages case and allowing Janssen's § 271(f)(1) claim to proceed will not enlarge discovery.

### C. Permitting Janssen's § 271(f)(1) Claims to Proceed Does Not Require Modification of the Schedule

Defendants ask the Court to modify the case schedule if Janssen is allowed to proceed with its § 271(f) claims. Dkt. No. 123 at 20. Janssen opposes this request for the same reasons discussed above. Since there is no need for additional discovery, there is no reason to further delay the resolution of this case.

## III. JANSSEN STATES VALID CLAIMS UNDER § 271(f)(1)

Defendants' arguments for dismissal under Rule 12(b)(6) (Dkt. No. 123 at 14-20) are not only legally incorrect, but also ask the Court to resolve factual issues not properly considered on

motion to dismiss.  The same standard applies to a motion to deny leave to amend based on futility.  *See Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996) (holding that denying a motion to amend based on futility is appropriate only when "the complaint, as amended, would fail to state a claim upon which relief could be granted").

### A. Celltrion "Caused the Supply" of Cell Media Components from the United States to Singapore

Contrary to Defendants' argument (Dkt. No. 123 at 14-16), liability under § 271(f) is not limited to exporters.  The statute applies to a party that "supplies or *causes to be supplied*" the components of a patented invention from the United States.  35 U.S.C. § 271(f)(1) (emphasis added).  Defendants' interpretation that the statute applies *only* to exporters would erase "causes to be supplied" from the text of the statute, and none of the authority cited by Defendants supports this result.

One of the cases cited by Defendants, *WesternGeco L.L.C. v. ION Geophysical Corp* ("*WesternGeco III*"), 791 F.3d 1340, 1348 (Fed. Cir. 2015), not only fails to show that § 271(f) applies only to exporters, but, to the contrary, demonstrates that the "causes to be supplied" language in § 271(f) expands liability beyond the entity that itself does the exporting.  In that case, the defendant did not carry out the unlawful exportation itself, but instead employed a third party to do so.  *See WesternGeco L.L.C. v. ION Geophysical Corp.* ("*WesternGeco I*")*,* 876 F. Supp. 2d 857, 900-01 (S.D. Tex. 2012).  The court rejected exactly the same argument that Defendants have presented here, reasoning that "even if Defendants' argument were accepted – that is, even if Fugro's use of Kuehne and Nagel [to carry out the exporting] could not render it a

supply of components – it would nonetheless indisputably be *causing* the supply of these items abroad." *Id.* (emphasis in original). The Federal Circuit did not disturb this conclusion.[3]

The other authority cited by Defendants also fails to show that § 271(f) is limited to the exporters themselves. In *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1118 (Fed. Cir. 2004), the defendant was located within the United States, while the components were supplied to and from a foreign jurisdiction. *Id.* The Federal Circuit held that § 271(f) did not apply because the "physical supply of components" did not occur "from" the United States as required by the statute. *Id.* Celltrion's conduct in this case presents the opposite situation as was present in *Pellegrini.* Even though Celltrion is headquartered abroad, it caused cell media components to be *physically supplied from Utah* and shipped abroad to be combined into the accused media outside the United States. Unlike the situation in *Pellegrini*, Celltrion's conduct tracks the statutory language and constitutes infringement under § 271(f)(1).[4]

---

[3] The district court ultimately granted summary judgment in the plaintiff's favor on its § 271(f)(1) claim. *WesternGeco L.L.C. v. ION Geophysical Corp.* ("*WesternGeco II*"), No. 4:09-cv-1827, 2012 U.S. Dist. LEXIS 90755, at *10 (S.D. Tex. June 29, 2012). At a subsequent trial, the jury found the defendants liable for infringing the same patent under § 271(f)(2), and the Federal Circuit found no error underlying that verdict, so it declined to review the district court's ruling regarding liability under § 271(f)(1). *WesternGeco III*, 791 F.3d at 1348. The Federal Circuit's initial decision was vacated by the Supreme Court and remanded for reconsideration in light of an intervening Supreme Court decision concerning enhanced patent infringement damages, *see WesternGeco LLC v. ION Geophysical Corp.* ("*WesternGeco IV*"), 136 S. Ct. 2486, 2486 (2016), but the Federal Circuit reinstated its original decision with respect to all issues except for enhanced damages. *WesternGeco L.L.C. v. ION Geophysical Corp.* ("*WesternGeco V*"), 837 F.3d 1358, 1360 (Fed. Cir. 2016). The Federal Circuit's ultimate decision is the subject of a pending petition for a *writ of certiorari* seeking review of the Federal Circuit's decision holding that plaintiffs cannot recover lost profits from outside the United States caused by a violation of 35 U.S.C. § 271(f). *See* Petition for *Writ of Certiorari*, *WesternGeco LLC v. ION Geophysical Corp.*, No. 16-1011 (Feb. 17, 2017). Thus, despite the case's extensive appellate history, the district court's analysis of § 271(f)(1) liability was the final word on that issue in the case.

[4] Given that Janssen seeks a straightforward application of § 271(f), Defendants' argument that enforcing § 271(f) in this case would contravene the presumption against extraterritorial application of the patent laws must be rejected. Janssen seeks to hold Defendants liable for their *domestic* activity: causing the shipment of Celltrion media components from the United States to Singapore. This is precisely the conduct contemplated by § 271(f), and holding that application of § 271(f) is invalid in this case would be tantamount to concluding that § 271(f) is facially unenforceable.

17

*Pellegrini* establishes that it is the location of the exportation – not the location of the defendant – that determines if § 271(f) applies. 375 F.3d 1113 at 1118.  Nothing in the court's reasoning suggests that "causing" exportation escapes § 271(f) liability when exportation occurs from the United States.  *Id.*  Likewise, Defendants' string citation of courts generally describing § 271(f)'s application to exportation does not provide a basis for limiting the application of § 271(f).  Dkt. No. 123 at 15-16.  These passages merely explain that "[s]ection 271(f) now prohibits the exporter's conduct at issue in *Deepsouth*."  *Limelight Networks, Inc. v. Akamai Techs.*, 134 S. Ct. 2111, 2118 n.4 (2014).  Nothing in that general description of § 271(f) – or any of the other similar passages cited by Defendants – supports the proposition that "causes to be supplied" should be read out of the statute.

Since the statute applies to those who "cause" the supply of components from the United States, Defendants' liability turns on whether they caused HyClone to supply the components from Utah to Singapore in a manner that actively induced combination of the components in Singapore.   As noted above, this precise issue was presented to the district court in *WesternGeco*, and the court applied basic tort principles to analyze "cause."   *See WesternGeco I*, 876 F. Supp. 2d at 900-01.  The *WesternGeco* court is not alone in its reasoning.  At least two other courts have likewise concluded that the plain meaning of "causes to supply" expands the scope of § 271(f) beyond those who literally carry out the exportation of components, applying basic causation principles to analyze liability.  *See Jacobs Vehicle Sys. v. Pac. Diesel Brake Co.*, 424 F. Supp. 2d 388, 395 (D. Conn. 2006) ("[A] jury could conclude that Danaher's promotion of, and financial support for, the Mitsubishi deal encouraged Jacobs to develop engine brakes for Mitsubishi, thereby 'causing' Jacobs to supply them."); *T.D. Williamson, Inc. v. Laymon*, 723 F. Supp. 587, 592 (N.D. Okla. 1989), *aff'd without op.*, 924 F.2d 871 (Fed. Cir. 1990) (holding that

18

§ 271(f) "cover[s] both those who actually supply the components as well as those (contributory infringers) who cause others to supply components").

Here, Janssen has alleged ample conduct on Celltrion's part to show that Celltrion "caused" HyClone to export the Singapore media components.  During 2015 and 2016, Celltrion communicated extensively with HyClone about the possibility of shifting the production of the cell culture media to Singapore.  Dkt. No. 94 ¶ 10.  HyClone informed Celltrion no later than October 2015 that it conducts a quality check of the components in Utah before shipping them to be combined in Singapore.  *Id.* ¶ 21.  On July 19, 2016, Celltrion asked HyClone whether HyClone had shipped components to the Singapore facility to be combined there.  *Id.* ¶ 22.  And on September 29, 2016, Celltrion placed a $4,000,000 order for Celltrion media from HyClone, with knowledge that the components of the media had been shipped to be combined in Singapore only a few months before.  *Id.* ¶ 23.  These factual allegations are more than enough to demonstrate that Celltrion "caused the supply" of the components from the United States for the purpose of combining them in Singapore in a manner that it knew would infringe the '083 patent if completed in the United States.  This is precisely the conduct expressly forbidden by § 271(f), and Celltrion is directly liable under the statute.[5]

---

[5] In addition to the "cause" prong present in § 271(f) itself, basic tort principles dictate that vicarious liability – whether established by an agency relationship, contract, or other indicia of direction and control – apply to § 271 as a whole and would serve as an alternative basis for imputing HyClone's exportation of Celltrion media components to Celltrion.  *See MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (noting that that "vicarious liability" arising from under the patent laws "emerged from common law principles and are well established in the law"); *Akamai Techs. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (applying general tort principles to define agency, contractual, "direction or control," and joint enterprise bases for liability under 35 U.S.C. § 271(a)).

19

**B.**     **Hospira is Liable for Celltrion's Violation of § 271(f)(1) as a Member of a Joint Enterprise to Produce and Market Inflectra**

Defendants contend that Janssen's § 271(f) claim against Hospira must be dismissed because it is not accompanied by any allegations that Hospira itself directed HyClone to ship the Singapore media components to Singapore.  Dkt. No. 123 at 18-19.  But this is no defense to joint enterprise liability, which is the primary basis for Janssen's § 271(f)(1) claim against Hospira.  As the Federal Circuit has recognized, "where two or more actors form a joint enterprise, *all can be charged with the acts of the other*, rendering each liable for the steps performed by the other as if each is a single actor." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (emphasis added).  As Janssen has demonstrated in briefing on the pending motion for summary judgment, Celltrion and Hospira are engaged in a joint enterprise to produce Inflectra using the Celltrion media made in Singapore.  *See* 15-cv-10698 Dkt. Nos. 281, 305, 344 and 405.  Because of this joint enterprise, if Celltrion has violated § 271(f) in its production of Inflectra using Singapore media, then Hospira shares in the liability for that violation even if it did not directly participate in coordinating the Singapore media supply chain.[6]

## CONCLUSION

For the above reasons, the Court should deny Defendants' motion to dismiss or strike Janssen's counterclaims of infringement under § 271(f)(1).

---

[6] Janssen's argument regarding Hospira's joint enterprise liability is more fully presented in its briefing related to Defendants' motion for summary judgment on Janssen's claims under sections 271(a) and (b).  *See* 15-cv-10698 Dkt. Nos. 281, 305, 344 and 405.  Although joint enterprise liability turns on factual issues that are not appropriate for resolution on a motion to dismiss, Janssen incorporates the legal arguments presented in its earlier briefing concerning Hospira's joint enterprise liability to the extent they are applicable in this context.

Dated:  January 11, 2018

*Of Counsel*:


Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Irena Royzman (admitted *pro hac vice*)
iroyzman@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
Andrew D. Cohen (admitted *pro hac vice*)
acohen@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
FAX: 212-336-2222

*/s/ Alison C. Casey*
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
Alison C. Casey (BBO #688253)
acasey@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

### CERTIFICATE OF SERVICE

I certify that on January 11, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.


/s/ *Alison C. Casey*