# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC. <br><br> Defendants. | No. 1:17-cv-11008 <br><br> **PUBLIC** <br> **REDACTED VERSION** |

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S
### MOTION TO EXCLUDE REBECCA BETENSKY, PH.D.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION................................................................................................................ | 1 |
| II. | FACTUAL BACKGROUND............................................................................................. | 3 |
| III. | LEGAL STANDARD ........................................................................................................ | 5 |
| IV. | ARGUMENT...................................................................................................................... | 6 |
| | A. Dr. Betensky is well-qualified to offer her opinions............................................... | 6 |
| | B. Dr. Betensky's analysis is relevant to rejecting Dr. Wurm's testing and Dr. Butler's infringement opinion, regardless of the testimony that Dr. Butler may offer. ..................................................................................................................... | 7 |
| | C. Janssen cannot prevent Defendants from addressing Dr. Butler's statistical analysis by not explicitly referencing certain portions of his report....................... | 8 |
| | D. Rule 403 Does Not Justify Excluding Dr. Betensky's Opinion............................. | 10 |
| |     1. Dr. Betensky's opinions have significant probative value........................ | 10 |
| |     2. Janssen fails to prove any issue "substantially outweigh[s]" the probative value of Dr. Betensky's testimony............................................ | 12 |
| V. | CONCLUSION ................................................................................................................ | 14 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
    808 F.3d 1313 (Fed. Cir. 2015)...................................................................................1

*Aviva Sports v. Fingerhut Direct Mktg., Inc.*,
    829 F. Supp. 2d 802 (D. Minn. 2011).........................................................................8

*CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*,
    144 F.3d 35 (1st Cir. 1998)..................................................................................12, 13

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).................................................................................................5, 6

*Jama v. Esmor Corr. Servs., Inc.*,
    No. 97-3093 DRD, 2007 WL 1847385 (D.N.J. June 25, 2007) ...............................13

*LG Display Co., Ltd. v. AU Optronics Corp.*,
    709 F. Supp. 2d 311 (D. Del. 2010)...........................................................................11

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3rd Cir. 1994) ......................................................................................13

*Plumbers & Pipefitters Nat. Pension Fund v. Burns*,
    967 F. Supp. 2d 1143 (N.D. Ohio 2013).....................................................................9

*SEB S.A. v. Montgomery Ward & Co.*,
    594 F.3d 1360 (Fed. Cir. 2010), *aff'd sub nom. Glob.-Tech Appliances, Inc. v.
    SEB S.A.*, 563 U.S. 754 (2011) ...............................................................................6, 7

*Straub v. Simmons Co.*,
    No. CIV. A. 91-2854, 1992 WL 176419 (E.D. Pa. July 17, 1992), *aff'd*, 993
    F.2d 226 (3d Cir. 1993).....................................................................................2, 8, 9

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008)..................................................................................6

*Turner v. Allstate Ins. Co.*,
    902 F.2d 1208 (6th Cir. 1990) .............................................................................10, 11

*United States v. George*,
    761 F.3d 42 (1st Cir. 2014).......................................................................................12

*United States v. Mooney*,
    315 F.3d 54 (1st Cir. 2002)................................................................................1, 7, 8

*United States v. Rivera*,
   83 F.3d 542 (1st Cir. 1996) ................................................................................................. 5

*United States v. Shay*,
   57 F.3d 126 (1st Cir. 1995) ................................................................................................. 5

*United States v. Whitney*,
   524 F.3d 134 (1st Cir. 2008) ............................................................................................... 5

*Villanueva v. Leininger*,
   707 F.2d 1007 (8th Cir. 1983) ............................................................................................ 9

*Viskase Corp. v. Am. Nat. Can Co.*,
   261 F.3d 1316 (Fed. Cir. 2001) .......................................................................................... 3

**Rules**

Fed. R. Evid. 403 ............................................................................................... 5, 10, 12, 13

Fed. R. Evid. 702 ........................................................................................................ 5, 6, 7

I.      **INTRODUCTION**

Janssen's motion to exclude Defendants' biostatistician expert, Dr. Rebecca Betensky, is a thinly veiled attempt to spare their experts' flawed opinions from scrutiny. For his infringement opinion under the doctrine of equivalents, Janssen expert Dr. Michael Butler relied on graphical representations of data from Dr. Wurm's testing and conducted a "backup" statistical analysis to purportedly "confirm" his opinion.

But Dr. Butler's statistical analysis did not confirm his opinion. As Dr. Betensky explains, Dr. Butler's statistical analysis "is not designed to identify equivalents and, at least in part, is weighted toward not identifying differences," and "demonstrates some statistically significant differences, thus supporting Defendants' defense of non-infringement." Dkt. 241-2 Ex. B (Betensky Rept.) ¶ 4.

Janssen now seeks to prevent the jury from hearing Dr. Betensky's criticisms. The Court should reject this argument. Janssen bears the burden of proof on the doctrine of equivalents, meaning it has to prove that the many disputed differences between the claimed media and accused media are all ***insubstantial***. *See Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319–20 (Fed. Cir. 2015). And, of course, "any flaws in [an expert's] opinion may be exposed through cross-examination or competing expert testimony." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002).

To avoid this fundamental premise of any trial, Janssen argues that Dr. Butler will not testify about his statistical analysis, so Dr. Betensky purportedly would have nothing to rebut. That is nonsense. Defendants have every right to question Dr. Butler about anything relevant to his opinions, including that he previously relied on a statistical analysis he's now trying to abandon and that Janssen is trying to bury. The fact that his *own* statistical analysis—as explained by Dr. Betensky—helps establish non-infringement is powerful evidence the jury is entitled to consider.

Even if Dr. Butler says not one word about "statistics" during his testimony, either on direct or cross, there still would be no basis to exclude Dr. Betensky's testimony. Dr. Butler will testify about Dr. Florian Wurm's data and graphical representations, which include standard deviation error bars, *i.e.*, a statistical analysis. *See, e.g.*, Dkt. 241-1 Ex. A (Butler Rept.) ¶¶ 104, 107, 110, 116, 119, 122, 126; *cf.* Ex. 1, 12/14/16 Butler Dep. Tr. at 251:4–252:3. Dr. Betensky criticizes those graphical representations, including Dr. Butler's reliance on the error bars and embedded statistical analysis. There is simply no basis to exclude her vigorous attack. No matter how Janssen tries to cabin Dr. Butler's opinion, Defendants are entitled, through cross examination and Dr. Betensky, to challenge **all of the bases** for Dr. Butler's opinions. *Straub v. Simmons Co.*, No. CIV. A. 91-2854, 1992 WL 176419, at *4–5 (E.D. Pa. July 17, 1992), *aff'd*, 993 F.2d 226 (3d Cir. 1993).

Janssen alternatively argues that Dr. Betensky's opinion should be excluded because "there will not be a dispute about Dr. Butler's primary analysis regarding the substantiality of the differences." Dkt. 241 (Br.) at 5. According to Janssen, there is no "dispute" because Defendants' expert, Dr. Glacken, will not testify that Dr. Wurm's testing shows **substantial** differences under the doctrine of equivalents. Dkt. 241 (Br.) at 4. Again, that is meritless. Defendants do not need to prove that there **are** substantial differences. Janssen must prove that there **are not** any. And Defendants vigorously dispute that Janssen can satisfy that burden. Dr. Glacken will testify, for example, that Drs. Butler and Wurm fail to show that the differences are **insubstantial** due to the numerous deficiencies and flaws in the test methodology. Dr. Betensky's opinion further supports that failure, as she explains why the testing, statistically, does not support Dr. Butler's opinion.

Dr. Betensky's opinions are obviously probative regardless of what Dr. Butler includes in his testimony at trial. Janssen's attempt to bury one of the bases of his opinions in order to avoid the scrutiny it will face is inappropriate.

## II.     FACTUAL BACKGROUND

The accused GE HyClone media do not literally infringe the '083 patent because 12 or 13 elements of the asserted claims are present outside the claimed ranges. Dkt. 241-1 Ex. A (Butler Rept.) ¶ 48. Janssen argues the accused media infringe under the doctrine of equivalents, which "requires determination of whether the accused composition is only insubstantially changed from what is claimed." *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1324 (Fed. Cir. 2001). Janssen argues that even though 20% of the ingredients of the accused media fall outside the claimed concentrations, these differences are "insubstantial." Dkt. 241-1 Ex. A (Butler Rept.) ¶ 40.

Janssen's experts assert that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1, 12/14/16 Butler Dep. Tr. at 99:14–100:14; Ex. 2, 12/7/16 Wurm Dep. Tr. at 48:7–14. Indeed, while Dr. Butler speculated about the 12 and 13 differences between the accused GE HyClone media and the '083 patent claims, he admitted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



3

Ex. 1, 12/14/16 Butler Dep. Tr. at 101:14–102:6 (objection omitted). Thus, Dr. Butler's infringement opinions ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 241-1 Ex. A (Butler Rept.) ¶ 47.

Dr. Butler relies on Dr. Wurm's data in two ways. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



Defendants' technical expert, Dr. Glacken, submitted a rebuttal report in which he opines that Dr. Butler failed to show that the differences are in fact insubstantial. Dkt. 265-1 Ex. 1 (Glacken Rept.) ¶ 57. Dr. Glacken explains the numerous flaws in Dr. Wurm's testing which make it unreliable, including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Dkt. 265-1 Ex. 1 (Glacken Rept.) ¶¶ 113, 117, 121, 124, 141, 152. Dr. Glacken does not, however, opine on Dr. Butler's statistical analysis, other than to note that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* ¶ 131.

Dr. Rebecca Betensky, a biostatistician, submitted a rebuttal report regarding Dr. Butler's opinions based on Dr. Wurm's data. Dr. Betensky criticizes Drs. Butler's and Wurm's

experimental design, opining that "'statistical analysis' can[not] be properly used in this case 'as a backup'" and that they should have "applied [statistical analysis] at the outset to design an experiment that has a good chance at detecting an effect if one exists." Dkt. 241-2 Ex. B (Betensky Rept.) ¶¶ 36, 37. Dr. Betensky also criticizes Dr. Butler for relying on Dr. Wurm's charts, which "should almost never constitute the formal analysis of the data." *Id*. ¶ 38. In addition, Dr. Betensky opines that Dr. Butler "performed the wrong analysis for Plaintiff['s] purposes" and thus drew an unsupported conclusion. *E.g. id*. ¶¶ 26, 35, 49. Further, Dr. Betensky explains how Dr. Butler's statistical analysis was flawed, used a misguided approach, and was biased toward not finding differences. *Id*. ¶¶ 43–49. Even so, Dr. Betensky opines that Dr. Butler's analysis actually shows statistically significant differences. *Id*. ¶¶ 50–63.

**III.  LEGAL STANDARD**

Under Rule 702, experts may testify as long as their testimony "both rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). But the Federal Rules have a "liberal thrust" when it comes to admissibility. *Id*. at 588, 596. Moreover, experts may testify on anything that "assists the trier of fact," *id*. at 589, including the credibility of other experts. Indeed, "no constitutional provision, law, or rule requires the automatic exclusion of expert testimony simply because it concerns a credibility question." *United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995).

Under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The law shields Janssen "against **unfair** prejudice, not against all prejudice." *United States v. Whitney*, 524 F.3d 134, 141 (1st Cir. 2008). "Rule 403 tilts the balance in favor of admission." *United States v. Rivera*, 83 F.3d 542, 545 (1st Cir. 1996).

IV.     ARGUMENT

The Court should deny Janssen's motion to exclude Dr. Betensky's testimony. Even if Janssen chooses not to question Dr. Butler on his "backup" statistical analysis, Dr. Betensky's testimony remains relevant and admissible.

   A.     **Dr. Betensky is well-qualified to offer her opinions.**

Janssen raises no substantive challenge to Dr. Betensky under *Daubert*. Indeed, it could not credibly do so because she has a Ph.D. in Statistics from Stanford University, is the director of the Biostatistics Program at Harvard University, and has decades of experience in biostatistics. Ex. 3, (Ex. 1 Betensky Rept.). Nonetheless, in conclusory fashion, Janssen argues that "Dr. Betensky's testimony is inadmissible under Rule 702." Dkt. 241 (Br.) at 6. However, Janssen fails to identify anything about Dr. Betensky's expertise, principles, or facts and data which would make her testimony inadmissible. *See id.* at 6–7. This is not open to debate—Dr. Betensky's opinions are well-supported by the evidence on which she relies, and she is well qualified to offer these opinions. Ex. 3, (Ex. 1 Betensky Rept.).

Rather, Janssen argues Dr. Betensky cannot testify on "issues of noninfringement" because she is not a person of skill in the art of cell culture media development. Dkt. 241 (Br.) at 6. Thus, according to Jansen, her opinions "standing on [their] own" are "inadmissible under Rule 702." *Id.* Janssen cites one case, *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008), but it provides no support. In *Sundance*, a patent attorney, with no relevant technical expertise, gave opinions regarding the ultimate questions of noninfringement and invalidity. *See Sundance*, 550 F.3d at 1362.

"This case comes nowhere close to the unusual situation in *Sundance*." *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010), *aff'd sub nom. Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011). Unlike the lawyer in *Sundance*, Dr. Betensky's

6

opinions point out the flaws in Dr. Wurm's testing and Dr. Butler's analysis from the perspective of a biostatistician. These opinions are well within Dr. Betensky's competence, and Janssen does not even attempt to challenge a ***single specific*** opinion that she offered. This is analogous to the expert witness in *SEB S.A. v. Montgomery Ward & Co.*, who was not an expert "in the art of designing deep fryers," but "had sufficient relevant technical experience for the district court to allow him to testify" on the issue on which he was offered. *Id.*

Because Dr. Betensky's opinions tend to undermine the opinions offered by Dr. Butler, as shown below, even "standing on [their] own" (*i.e.*, whether or not Dr. Butler testifies about statistics), Dr. Betensky's opinions are plainly admissible. Fed. R. Evid. 702.

### B. Dr. Betensky's analysis is relevant to rejecting Dr. Wurm's testing and Dr. Butler's infringement opinion, regardless of the testimony that Dr. Butler may offer.

Janssen argues that "there will not be a dispute about Dr. Butler's primary analysis regarding the substantiality of the differences" between the accused GE HyClone cell culture media and the claims of the '083 patent. Dkt. 241 (Br.) at 5. Thus, Janssen reasons, Dr. Butler will not "testify about his statistical analysis" and Janssen believes "Dr. Betensky's testimony has no remaining relevance." *Id.* at 5, 6. But whether or not Dr. Butler presents his statistical analysis, Dr. Betensky's testimony is plainly relevant.

For example, Dr. Betensky's opinions on the statistical analysis of the data are both relevant and admissible, at the very least, to challenge Dr. Butler's and Dr. Wurm's credibility and reliability and to explain what statistics say about Dr. Wurm's data. As the First Circuit has recognized, once Dr. Butler or Dr. Wurm is permitted to testify, "any flaws in his opinion may be exposed through cross-examination or competing expert testimony." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) (citation omitted).

Dr. Betensky's opinions challenge the design of Dr. Butler's and Dr. Wurm's experiments, data, and analysis and thus are independently relevant. *Id.* As Dr. Betensky explained, Dr. Butler's and Dr. Wurm's analysis "demonstrates some statistically significant differences, thus supporting Defendants' defense of non-infringement." Dkt. 241-2 Ex. B (Betensky Rept.) ¶ 4. She further notes that they should have "applied [statistical analysis] at the outset to design an experiment that has a good chance at detecting an effect if one exists." *Id*. ¶ 37. Similarly, she also will explain how graphical representations of testing data, such as the ones Dr. Butler relies on, "should almost never constitute the formal analysis of the data." *Id*. ¶ 38.

And while Janssen criticizes Dr. Betensky for "present[ing] no independent analysis that the differences between the [']083 patent and the [accused GE HyClone] media are substantial," Dkt. 241 (Br.) at 5–6, this is no basis to exclude her opinions. Without question, "[i]t is the proper role of rebuttal experts to critique plaintiff['s] experts' methodologies and point out potential flaws in the plaintiff's experts' reports." *Aviva Sports v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011). ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ *See, e.g.*, Dkt. 244-1 Ex. 1 (Butler Reply) ¶¶ 29–32, 66–69.

### C. Janssen cannot prevent Defendants from addressing Dr. Butler's statistical analysis by not explicitly referencing certain portions of his report.

Janssen cannot avoid Dr. Butler's statistical bases for his infringement opinion just by choosing not to elicit that testimony on direct examination. Defendants are entitled to test ***all of the bases*** for Dr. Butler's opinions, even those he claims are not the "primary" basis for his opinion. *Straub*, 1992 WL 176419, at *4–5. In *Straub*, the plaintiff objected to the cross examination of her expert on an "ANSI standard for power press safety" when "the expert made no reference to it on direct examination." *Id.* The expert's report included the standard as a

8

document the expert relied upon. *Id.* The court concluded that cross examination "to highlight misquotations of the standard" was appropriate, and "[t]he fact that [the] plaintiff avoided the subject . . . on direct, however, [did] not necessarily preclude defendant from probing the area on cross-examination." *Id.* The court held that the defendant was entitled to "test the expert's credibility, particularly as it related directly to the basis for her expert's conclusion." *Id.* at *5; *see also Plumbers & Pipefitters Nat. Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1155 (N.D. Ohio 2013) ("Cross 'may embrace any matter germane to direct examination, qualifying or destroying it, or tending to elucidate, modify, explain, contradict or rebut testimony given by the witness.'" (citing *Villanueva v. Leininger,* 707 F.2d 1007, 1010 (8th Cir. 1983))).

The same principle applies here; Defendants can test and rebut all of the bases for Dr. Butler's opinion. Dr. Betensky's testimony is relevant to criticizing Dr. Butler's opinion. As Dr. Butler will testify that the accused GE HyClone media infringe the '083 patent ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Dkt. 241-1 Ex. A (Butler Rept.) ¶ 126; *cf.* Ex. 1, 12/14/16 Butler Dep. Tr. at 251:4–252:3, Dr. Betensky's criticisms of the statistical analysis and design, from a statistical perspective, of Dr. Wurm's tests are fair game. For example, Dr. Betensky explains that Dr. Butler's "'statistical analysis' can[not] be properly used in this case 'as a backup'." Dkt. 241-2 Ex. B (Betensky Rept.) ¶¶ 36, 37.

Dr. Betensky also explains that Dr. Butler "did not properly apply a statistical analysis to determine equivalence." *E.g.*, *id.* ¶ 35. In fact, she will testify that Dr. Butler's analysis is biased towards ***not*** finding differences—a powerful point about biased testing which is something that cannot be kept from the jury in any fair trial. *Id.* ¶¶ 54–63. And Dr. Betensky will explain how Dr.

9

Wurm's experiments rely on a small sample size, which makes it unlikely that there will be statistically significant results. *See, e.g.*, *id.* ¶ 47.

### D.     Rule 403 Does Not Justify Excluding Dr. Betensky's Opinion

Janssen argues that Dr. Betensky's testimony should be excluded under Rule 403 because it would confuse the jury or waste time. Dkt. 241 (Br.) at 7-10. That is without merit.

#### 1.     Dr. Betensky's opinions have significant probative value.

Dr. Betensky's testimony has significant probative value. As explained above, her testimony is rebuttal evidence on a core issue: whether Janssen has carried its burden to prove infringement under the doctrine of equivalents. It also goes to Dr. Butler's and Dr. Wurm's credibility, the reliability of their opinions, and the design of their tests.

Janssen attempts to sweep Dr. Betensky's testimony under a rug by arguing that "the scope of the dispute is tightly circumscribed," and this, somehow, "limits any possible probative value" of the testimony. Dkt. 241 (Br.) at 8. Janssen's argument finds no support in the law. Whether Dr. Betensky's opinion is narrow or not does not change that it goes to a core issue in the case—whether Janssen has carried its burden on the doctrine of equivalents.

Likewise, Janssen offers no analysis to support its claim that "statistical evidence here is of, at best, marginal probative value." Dkt. 241 (Br.) at 8. In support, Janssen cites a single case, *Turner v. Allstate Ins. Co.*, 902 F.2d 1208 (6th Cir. 1990), but *Turner* is irrelevant. *Turner* was a wrongful discharge claim by an insurance company employee fired because he falsely represented that a number of his customers were entitled to a particular discount. *Turner*, 902 F.2d at 1209. The employer sought to introduce a statistical analysis of the percentage of the employee's customers who received the discount compared to the percentage of statewide policyholders who received the discount. *Id.* at 1212. The court excluded the analysis under Rule 403 because its relevance was only "slight" and "circumstantial[]" but "[t]he probative value of the evidence

depended upon too many inferences and assumptions, some of which were proven to be false." *Id.* at 1214.

*Turner* has nothing to do with this case. Dr. Butler's doctrine of equivalents opinion, no matter what words he uses during direct examination, depends on statistical analysis, which Dr. Betensky will rebut. Dkt. 241-1 Ex. A (Butler Rept.) ¶ 126. Dr. Betensky's opinions are not "circumstantial," they are directly on point to the reliability of Janssen's experts. And Dr. Betensky's opinions do not depend on false inferences, but rely directly on Janssen's experts' data.

Janssen also distorts the evidence to imply that the presence of statistically significant differences in Dr. Wurm's data is irrelevant. Janssen repeatedly argues that there is "no dispute about [the] substantiality" of differences between the accused GE HyClone media and the claims of the '083 patent. *See, e.g.*, Dkt. 241 (Br.) at 5. But this is false; the burden of proof for insubstantiality is on Janssen, and all of Defendants' liability experts will testify that Janssen failed to carry that burden. *See, e.g.*, *LG Display Co., Ltd. v. AU Optronics Corp.*, 709 F. Supp. 2d 311, 331 (D. Del. 2010).

Likewise, Janssen argues that "Dr. Glacken [] conceded that a statistically significant difference is not necessarily substantial," but omits the part of Dr. Glacken's testimony which refutes their argument:



Dkt. 241-1 Ex. F. (Glacken Dep. Tr.) at 189:15-23. While a statistically significant difference may "not necessarily" be substantial, the jury may conclude that a particular difference *is* substantial. Dr. Betensky's

11

testimony that, despite being "biased toward not finding differences," Dr. Butler nonetheless found there to be differences undermines Dr. Butler's conclusion that the differences are insubstantial. Dkt. 241-2 Ex. B (Betensky Rept.) ¶ 54. Defendants are entitled to have the jury in possession of both sides' evidence on the question of whether Janssen carried its burden.

### 2. Janssen fails to prove any issue "substantially outweigh[s]" the probative value of Dr. Betensky's testimony.

Janssen must prove that Dr. Betensky's high probative value is "substantially outweighed by a danger of" unfair prejudice, confusing the issues, or wasting time. Fed. R. Evid. 403. But Janssen fails to show any danger, much less a danger that "substantially outweigh[s]" Dr. Betensky's probative value.

**"Mini-trial about a side issue"**: Janssen begins by arguing Dr. Betensky's testimony is a "mini-trial about a side issue." Dkt. 241 (Br.) at 7. But, as explained above, her opinions go to core issues at the heart of Dr. Butler's doctrine of equivalents opinion, including the design of Dr. Wurm's experiment, and Dr. Butler's credibility. This case is not remotely like the cases excluding potential "mini-trials" which Janssen cites. In *United States v. George*, 761 F.3d 42, 57 (1st Cir. 2014), the "mini-trial about a side issue" was about the defendant's coconspirator's plea colloquy and whether that coconspirator was "innocen[t] of charges not made." And the issue in *CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 144 F.3d 35, 44 (1st Cir. 1998), was prior judicial decisions from different cases against the defendant which "would [have] require[d] a 'replay of the litigation of those two cases,' in that the parties would have to argue about the similarity of the previous lawsuits to the instant case." In contrast, Dr. Betensky's opinions go to the reliability and sufficiency of Janssen's proof of infringement, one of the key issues in the case.

**Jury confusion**: Janssen also suggests that statistics may confuse the jury. Dkt. 241 (Br.) at 8. Janssen appears to believe that the phrase "statistically significant" sounds too much like

12

"substantial differences" and would cause confusion. *Id.* Janssen gives the jury too little credit. This case will involve many technical terms which the jurors may learn for the first time during trial, including terms which sound similar (*e.g.*, infringement v. inducement v. invalidity, copper sulfate v. copper chloride, viable cell density v. viability, drug substance v. drug product). And in any case, the jurors will be instructed as to the law and the parties able to argue their cases to the jury based on those instructions. "[F]or a district court to exclude scientific evidence, there must be something *particularly* confusing about the scientific evidence at issue—something other than the general complexity of scientific evidence," such as statistics. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 747 (3rd Cir. 1994) (emphasis original). And courts have not found statistics to be so particularly confusing that they should be kept from juries. *See, e.g., Jama v. Esmor Corr. Servs., Inc.*, No. 97-3093 DRD, 2007 WL 1847385, at *28 (D.N.J. June 25, 2007). Dr. Betensky's probative evidence on a key issue is not "substantially outweighed" by Janssen's unfounded speculation about confusion. Fed. R. Evid. 403.

**Wasted Time and Prejudice:** As a last ditch effort, Janssen argues that Dr. Betensky's testimony would be a waste of time and her exclusion would not prejudice Defendants. Dkt. 241 (Br.) at 9. Janssen's "prejudice" argument is irrelevant under Rule 403—lack of prejudice to the proffering party is not part of the balancing analysis. *See* Fed. R. Evid. 403. And Janssen **never** argues that Dr. Betensky's testimony will cause Janssen "unfair prejudice." Nonetheless, Janssen is wrong even under its own arguments. Because Dr. Betensky's testimony addresses core issues, including the credibility and reliability of Dr. Butler's doctrine of equivalents opinions, her time on the stand—whether a lot or a little—will be well spent, not wasted. Moreover, her exclusion certainly is prejudicial because, while Defendants will still have the opportunity to cross-examine Dr. Butler on his statistical analysis, Dr. Betensky is Defendants' only witness to affirmatively

13

explain how statistics undermine Janssen's experts' infringement opinions, including the statistical flaws in Janssen's experiment design, Dr. Wurm's data, Dr. Butler's "statistical analysis," and Dr. Butler's reliance on graphical representations of the data. Defendants are entitled to present that evidence to the jury.

## V.     CONCLUSION

Dr. Betensky's testimony is relevant to undermining Dr. Butler's conclusion as to the ultimate issue. The Court should deny Janssen's motion to exclude that testimony.

Dated: May 25, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was filed through the electronic filing system and served electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                                                    */s/ Andrea L. Martin*