## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JANSSEN BIOTECH, INC.,

                Plaintiff,

    v.

CELLTRION HEALTHCARE CO., LTD.,
CELLTRION, INC., and
HOSPIRA, INC.

              Defendants.

No. 1:17-cv-11008

**PUBLIC**
**REDACTED VERSION**

## REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON ENSNAREMENT

[LEAVE TO FILE GRANTED 4/4/18, DKT 224]

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      Introduction ................................................................................................. 1

II.     The Law Does Not Require Proof That One Of Skill In The Art Would "Select"
        The Closest Prior Art As A Starting Point .......................................................... 4

III.    Where, As Here, The Claim Is Nothing More Than Routine Selection Of Known
        Ingredients To Perform Known Functions, No Specific Motivation Is Required ............ 10

IV.     Despite Its Burden, Janssen's Opposition Fails To Rebut The Prima Facie
        Obviousness Of The Hypothetical Claims .......................................................... 14

        A.      Janssen Offers No Evidence Of Unexpected Results ............................. 14

        B.      Janssen's "Copying" Allegations Cannot Avoid Summary Judgment ................. 16

                1.      No Amount Of Secondary Considerations Can Overcome
                        Obviousness In This Case ................................................. 16

                2.      The Accused Media Are Radically Different From The Claimed
                        Media ....................................................................... 17

                3.      Janssen Offers No Evidence Of Actual Copying ...................... 18

V.      Conclusion ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ex Parte Abdul Gaffar, Sarita v. Mello, & Michael Prencipe*,
   APPEAL 2013-001533, 2015 WL 7720188 (Oct. 26, 2015) ...............................................2, 8

*In re Aller*,
   220 F.2d 454 (CCPA 1955) ........................................................................................................8

*Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*,
   555 F.3d 984 (Fed. Cir. 2009)...........................................................................................4, 5, 10

*In re Carlson*,
   983 F.2d 1032 (Fed. Cir. 1992), *as revised on reh'g* (Feb. 1, 1993) .......................................5

*In re Corkill*,
   771 F.2d 1496 (Fed. Cir. 1985)..............................................................................................10

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
   676 F.3d 1063 (Fed. Cir. 2012)..............................................................................................14

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009)......................................................................................1, 2, 14

*Eisai Co. v. Dr. Reddy's Labs., Ltd.*,
   533 F.3d 1353 (Fed. Cir. 2008)..............................................................................................14

*In re Ethicon, Inc.*,
   844 F.3d 1344 (Fed. Cir. 2017)..............................................................................................11

*Gemalto S.A. v. HTC Corp.*,
   754 F.3d 1364 (Fed. Cir. 2014)..............................................................................................15

*Gen. Hosp. Corp. v. Sienna Biopharmaceuticals, Inc.*,
   No. 2017-1012, 2018 WL 2072125 (Fed. Cir. May 4, 2018)................................................16

*Graham v. John Deere Co. of Kansas City*,
   383 US 1 (1966).........................................................................................................4, 5, 13

*KSR Int'l Co. v. Teleflex Inc.*,
   127 S. Ct. 1727 (2007) .................................................................................................. *passim*

*In re Kubin*,
   561 F.3d 1351 (Fed. Cir. 2009)..............................................................................................14

*Ex Parte Lynette Zaidel, Guisheng Pan, Suman K. Chopra, Prakasarao Mandadi, & Michael Prencipe,*
   APPEAL 2012-009555, 2015 WL 1925737 (Apr. 23, 2015) ...................................................8

*Merck & Co. v. Biocraft Labs., Inc.,*
   874 F.2d 804 (Fed. Cir. 1989) ...................................................................................3, 9, 10

*In re Omeprazole Patent Litig.,*
   483 F.3d 1364 (Fed. Cir. 2007) .......................................................................................12

*Otsuka Pharm. Co. v. Sandoz, Inc.,*
   678 F.3d 1280 (Fed. Cir. 2012) ..................................................................................6, 7, 8

*In re Peterson,*
   315 F.3d at 1329 ...............................................................................................................15

*Pfizer, Inc. v. Apotex, Inc.,*
   480 F.3d 1348 (Fed. Cir. 2007) .......................................................................................13

*Ex Parte Rajnish Kohli & Jose Eder Fontana,*
   APPEAL 2014-005597, 2016 WL 3269664 (June 13, 2016) ............................................7

*Ex Parte Rajnish Kohli, Richard Scott Robinson, & Richard J. Sullivan,*
   APPEAL 2013-001531, 2015 WL 7755538 (Nov. 2, 2015) .............................................8

*In re Rouffet,*
   149 F.3d 1350 (Fed. Cir. 1998) .........................................................................................5

*Stone Strong, LLC v. Del Zotto Prods. of Florida, Inc.,*
   455 Fed. App'x 964 (Fed. Cir. 2011) .........................................................................16, 17

*Takeda Chem. v. Alphapharm Pty.,*
   492 F.3d 1350 (Fed. Cir. 2007) .........................................................................................7

*Unigene Labs., Inc. v. Apotex, Inc.,*
   655 F.3d 1352 (Fed. Cir. 2011) ..................................................................................6, 7, 8

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC,*
   683 F.3d 1356 (Fed. Cir. 2012) .......................................................................8, 12, 13, 20

*Wyers v. Master Lock Co.,*
   616 F.3d 1231 (Fed. Cir. 2010) .............................................................................. *passim*

## I.   Introduction

Janssen does not dispute any of the material facts mandating summary judgment. ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Likewise, Janssen does not dispute that Life Techs discloses 47 of the 52 required ingredients "overlapping in concentration ranges."  JSOF at Resp. to ¶¶ 47, 55; *see also* Dkt. 230, Mot.  Appendix  B.  ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

The massive overlap between the claimed media and GSK/Life Techs is not surprising,

████████████████████████████████████████████████████████████

████████████████████████████████████████████ JSOF at Resp. to ¶ 15 (quoting Ex. 4 (Epstein Dep.)).  Nowhere in its brief does Janssen argue otherwise.  In fact, it cannot argue otherwise.  Janssen's Dr. Butler ████████████████████████████████████████

████████████████████████████████████████████████████████████

Ex. 3 (1/30/2018 Hr'g Tr. (Butler)) at 88:11-25.  And he ██████████████████████████

██████████████████████████████████ Ex. 16 (Butler Dep.) at 58:13-17.

All of this is dispositive as a matter of law.  For ensnarement, Janssen has the "burden of persuasion" to prove that the hypothetical claim is patentable over the strikingly similar prior art media.  *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1323-24 (Fed. Cir. 2009).  Yet, it does not even contend that the alleged tiny differences between the claimed media

and prior art media were somehow "inventive" or even important.  Nor does Janssen contend that its claimed media produces anything special or surprising.  Nor could it make any such claim. Janssen does not even use the claimed media for any of its biological products, not even for Remicade.  Nor does any other biologics company.

So what does Janssen argue to attempt to avoid summary judgment?  Rather than contest any of the material facts, Janssen manufactures "legal requirements" that simply do not exist, and that would defy the Supreme Court's mandate that obviousness be determined not through some "rigid" "formula[ic]" analysis, but through an "expansive," "flexible," and "common sense" analysis.  *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1739-1742 (2007).   Once the Court rejects Janssen's two purported legal requirements—neither of which exists—summary judgment on the "legal limitation" of ensnarement is unavoidable. *Depuy Spine*, 567 F.3d at 1323-24.

***First***, Janssen argues that obviousness requires proof of a "motivation for one of skill in the art … to select" either the GSK or Life Techs media as the "starting point" for "modification." Opp. at 2, 17.  That is not the law.  Janssen is relying on a narrow and inapplicable line of chemical-compound cases that have nothing to do with this case.

Janssen's proposed "starting point" requirement would defy both the law and common sense.  Under the law, "[t]here is no requirement . . . that the obviousness analysis for a composition or formulation claim must always be based on a motivation to modify a particular reference composition"—a requirement that would "run counter to the flexible analysis set out by the Supreme Court in *KSR*." *Ex Parte Abdul Gaffar, Sarita v. Mello, & Michael Prencipe*, APPEAL 2013-001533, 2015 WL 7720188, at *3 (Oct. 26, 2015).

Under *KSR,* a new "combination" that simply "unites old elements with no change in their respective functions" is not a patentable invention.  *KSR*, 127 S. Ct. at 1739.  Likewise, the "mere

substitution of one element for another known in the field" that does no "more than yield a predictable result" is unpatentably obvious. *Id.* That is exactly the current situation, as Janssen tacitly admits, and that is obviousness as a matter of law.

Janssen's "starting point" argument fails logically, too.  Janssen never argues there is any "inventive" difference between the claimed media and the GSK or Life Techs media.  Given that, why would the claimed media suddenly be patentable simply due to a purported lack of "motivation" to start with GSK or Life Techs, rather than another of the many routine options available in the prior art?  It would not.  Obvious and routine variations to *any* known media are not patentable.  Otherwise companies could "withdraw[] what already is known into the field of its monopoly and diminish[] the resources available to skillful men." *KSR*, 127 S. Ct. at 1729. The claimed media is a blatantly obvious variation of either of two known media, which ends the obviousness inquiry as a matter of law.

**Second**, Janssen argues that obviousness requires proof of a "motivation" to select the ***specific and particular*** ingredients and concentrations recited in the '083 patent, which it asserts would be impossible given the "endless menu of possibilities" and the "literally ***trillions*** of different unique combinations that could be created." Opp. at 3-4 (emphasis in original).  Again, there is no such legal requirement, which would defy both the law and common sense.

Obviousness exists as long as the disputed claim element is one obvious option, regardless of how many other obvious and acceptable options might also exist.  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989). As the Federal Circuit has explained, the fact that there are "a multitude of effective combinations does not render any particular formulation less obvious," particularly where it is used "for the identical purpose taught by the prior art." *Id.*  Again, this case fits squarely within *KSR*'s definition of textbook obviousness—a "combination of

familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  127 S. Ct. at 1740.

Janssen's argument also defies common sense.  Under Janssen's logic, virtually every new media formulation is a patentable invention simply by virtue of the fact there is always an "endless menu of possibilities."  No matter how slight the difference from the prior art, skilled artisans always have countless options because media typically contains dozens of ingredients, many known alternatives exist for almost every ingredient, and a "broad plateau of interchangeable concentrations" generally work for most ingredients.  JSOF at Resp. to ¶ 10. Thus, if Janssen were right, every routine adjustment to a known media would be an invention.  That is not and cannot be the law.

*Finally*, Janssen points to alleged evidence of copying to avoid summary judgment of obviousness.  But because the hypothetical claims "represent no more than 'the predictable use of prior art elements according to their established functions,'" evidence of copying, even if it did exist (it does not), is "inadequate to establish nonobviousness as a matter of law." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010) (quoting *KSR*, 127 S.Ct. at 1727).

Summary judgment of non-infringement, because Janssen's doctrine of equivalents theory ensnares the prior art, should be granted.

## II.   The Law Does Not Require Proof That One Of Skill In The Art Would "Select" The Closest Prior Art As A Starting Point

Janssen asserts that "a [person of skill in the art] engaged in the 'normal course of research and development' in this field would not have arrived at the formula of the hypothetical claim[.]" Opp. at 15. That is because, according to Janssen, one of skill would not start with GSK or Life Techs, but would go back to the drawing board and begin with a "classic" "basal media" instead. *Id.* at 16-17. Thus, according to Janssen, it constitutes "hindsight" to "start with the GSK or Life

4

Techs media" in the obviousness analysis. *Id.* at 17. Janssen's argument is contrary to law.

*First*, a reference that constitutes close "prior art," is *necessarily* the starting point of the obviousness analysis under long-settled law. Under 35 U.S.C. § 103 and *Graham v. John Deere Co. of Kansas City*, 383 US 1, 17-18 (1966), obviousness "is a question of law, with underlying factual considerations regarding (1) the scope and content of the prior art, (2) the differences between the prior art and the claimed invention, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations." *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 991 (Fed. Cir. 2009). "A claimed invention is invalid for obviousness 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Id.* (quoting 35 U.S.C. § 103 (2000)); *KSR*, 127 S. Ct. at 1734 (reaffirming that the *Graham* factors "continue to define the [obviousness] inquiry").

Here, for factor (1), Janssen concedes that GSK and Life Techs are prior art to the '083 patent, and concedes they are "the closest prior art to Janssen's patent and the hypothetical claim." Opp. at 2; JSOF at Resp. to ¶¶ 33, 38. As to factor (2), as discussed below, there is no dispute as to the differences between those references and the hypothetical claim. *Infra*, IV-A; JSOF at Resp. to ¶ 37 (Janssen acknowledging that the only differences between GSK and the hypothetical claim are the particular source of iron and the particular source of vanadium); *id*. at Resp. to ¶¶ 40-41 (Janssen acknowledging the only differences between Life Techs and the hypothetical claim). Thus, while Janssen asserts it is improper "hindsight" to start with GSK or Life Techs (rather than starting with the "drawing board"), decades of Supreme Court precedent requires it.

*Second*, and relatedly, Janssen is wrong that there must be proof that one of skill in the art

would "select" a particular prior art reference as a starting point. As even Janssen's brief acknowledges: "POSA is assumed to be aware of the entire prior art." Opp. at 15, citing *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998) ("This legal construct…presumes that all prior art references in the field of the invention are available to this hypothetical skilled artisan").

It thus makes no difference whether, as Janssen argues, GSK and Life Techs are a poor starting point, or are otherwise "obscure." Opp. at 2, 15, 16. The hypothetical person of skill is charged with knowledge of all pertinent prior art, regardless of actual knowledge, and regardless of how obscure the reference may be. *In re Carlson*, 983 F.2d 1032, 1038 (Fed. Cir. 1992), *as revised on reh'g*, (Feb. 1, 1993). Indeed, the Federal Circuit's predecessor court long ago rejected Janssen's argument that "selection" of close prior art constitutes "hindsight":

> [T]he proper way to apply the 103 obviousness test to a case like this is to first picture the inventor as working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him. … Section 103 requires us to presume full knowledge by the inventor of the prior art in the field of his endeavor. We see no 'hindsight reconstruction' here, but only selection and application by the examiner of very pertinent art. That is his duty.

*Application of Winslow*, 365 F.2d 1017, 1020 (C.C.P.A. 1966).

Janssen cites *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011), for the proposition that there must be a motivation to select a particular starting reference in an obviousness analysis. But that proposition is relevant only to the very different field of chemical compounds, where chemists typically invent new compounds by first starting with a particular "lead compound." *Unigene* says so clearly: "A prima facie case of obviousness in the chemical arts is often based on a known compound, called a 'lead compound,' which serves as a starting point for a person of ordinary skill developing the claimed invention. Where the patent at issue *claims a chemical compound*, a lead compound is often used to show structural similarities between the claimed compound and prior art." *Id.* at 1361-62. Specific evidence of motivation to

identify a "lead compound" is required because "mere structural similarity between a prior art compound and the claimed compound" is not enough, and tells one nothing about the compound's properties. Indeed, there can be "a panoply of known compounds in the prior art" all of which may be structurally similar, so courts must look beyond that similarity to whether there are "positive attributes such as activity and potency" or "adverse effects such as toxicity." *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1292 (Fed. Cir. 2012).

And although *Unigene* expanded the "lead compound" rule slightly, that does not help Janssen. *Unigene* merely applied the "lead compound" analysis to a "chemical composition" "where the patented formulation was made to mimic a previously FDA-approved formulation"— a so-called "reference composition." *Id.* at 1361-62. It did so only because "the functional and pharmaceutical properties of the 'lead compound' [i.e., the mimicked FDA-approved formulation] can be more relevant than the actual chemical structure." *Id.* That is plainly not the case here. Nor is there any suggestion in *Unigene* that this framework applies in any context outside of new chemical compounds and reference compositions.

Since *Unigene*, the Federal Circuit has carefully limited the requirement that there be a motivation to "select" a "lead compound" to analysis of patents for new chemical compounds:

> Our case law demonstrates that whether *a new chemical compound* would have been prima facie obvious over particular prior art compounds ordinarily follows a two-part inquiry. First, *the court determines whether a chemist of ordinary skill would have selected the asserted prior art compounds as lead compounds, or starting points, for further development efforts…*

*Otsuka*, 678 F.3d at 1291 (Fed. Cir. 2012) (citing *Unigene*, 655 F.3d at 1362). Indeed, all of the cases that Janssen cites requiring motivation to select a "lead compound" pertain to patents for new chemical compounds, and are therefore inapplicable to the case at hand. Opp. at 17-18 (citing *Otsuka, Unigene*, and *Takeda Chem. v. Alphapharm Pty.*, 492 F.3d 1350, 1360 (Fed. Cir. 2007).

The Patent Office has likewise recognized the limited applicability of *Unigene*. In one

case, the PTAB observed that the framework discussed in *Unigene* and its progeny "apply to chemical modification of chemical compounds and not to compositions of the sort claimed by Appellants." *Ex Parte Rajnish Kohli & Jose Eder Fontana*, APPEAL 2014-005597, 2016 WL 3269664, at \*4 (June 13, 2016). That case involved a chemical *mixture* for dental floss, not a chemical *compound*. *Id.* Likewise, the PTAB refused to apply the "reference composition" framework of *Unigene* to a chemical mixture for oral care, noting that *Unigene* merely found that a prima facie case is "*often*" based on a "lead compound" analysis:

> There is no requirement, however, that the obviousness analysis for a composition or formulation claim must always be based on a motivation to modify a particular reference composition. Indeed, *Unigene* cannot run counter to the flexible analysis set out by the Supreme Court in *KSR* that recognizes the obviousness of pursuing known options within the technical grasp of the skilled artisan, *e.g.*, known equivalents… In addition, *Unigene* does not overturn well settled case law that "where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or workable ranges by routine experimentation."

*Ex Parte Abdul Gaffar*, 2015 WL 7720188, at \*3 (quoting *In re Aller*, 220 F.2d 454, 456 (CCPA 1955)); *see also Ex Parte Lynette Zaidel, Guisheng Pan, Suman K. Chopra, Prakasarao Mandadi, & Michael Prencipe*, APPEAL 2012-009555, 2015 WL 1925737, at \*4 (Apr. 23, 2015); *Ex Parte Rajnish Kohli, Richard Scott Robinson, & Richard J. Sullivan*, APPEAL 2013-001531, 2015 WL 7755538, at \*4 (Nov. 2, 2015).

Indeed, Janssen's misapplication of *Unigene* is readily apparent when compared to the Federal Circuit's subsequent decision in *Wrigley*. There, as here, the prior art disclosed a combination of ingredients with the exception of one alternative ingredient known to perform the same function. *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012). Specifically, the prior art reference disclosed a chewing gum with one "cooling agent" (WS-3) while the claims required a different cooling agent (WS-23) also known in the prior art. *Id*. The Federal Circuit affirmed summary judgment of obviousness, reasoning that "all that was

required to obtain [the claimed] combination was to substitute one well-known cooling agent for another." *Id*. That is precisely the situation here, because Janssen admits that ███████████ ██████████████████████████████████████████████████████████████ ██████████████████████████ Ex. 30 (4/17/2018 Butler Dep.) at 139:20-140:8, 154:23-155:20.

Even applying Janssen's legally erroneous framework, Janssen is incorrect that one of ordinary skill would not have "had a reason to select" GSK or Life Techs. *Otsuka*, 678 F.3d at 1291. Here, it is undisputed that by 2004, ████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████ Ex. 31 (Butler Invalidity Reb.) at ¶ 15. And GSK and Life Techs disclose such "serum-free cell culture" media. Opp. at 16. These unrebutted reasons are enough to find that a person of ordinary skill would have selected GSK or Life Techs as a reference.

Janssen also wrongly presents Dr. Glacken's opinions. Janssen ignored Dr. Glacken's opinion that "[j]ust because" certain classical basal media "would have been reasonable starting points for media formulation in 2004… this does not diminish the merit of selecting other media described in the prior art as starting points." Dkt. 221-6 (Glacken Reply) at ¶ 66. And, as he opined, both the GSK and Life Techs patents provide "a strong motivation for a POSA to select" their disclosed media compositions. *Id*. at ¶¶ 67, 114. For example, both provide compositions that addressed the challenge in 2004 (and before) of developing serum-free, animal-component-free media. *Id*. at ¶¶ 68, 114. And, in the case of Life Techs, it further discloses that it "performed as well as or better than" a commercially available classical media supplemented with serum. *Id*. at ¶ 69 (quoting Life Techs at p. 38:10-11).

Janssen's misapplication of the law does not create a genuine fact dispute.

**III.     Where, As Here, The Claim Is Nothing More Than Routine Selection Of Known Ingredients To Perform Known Functions, No Specific Motivation Is Required**

Janssen also asserts that there is a lack of explicit motivation to select the specific claimed combination of ingredients and concentrations, instead of one of the other routine and obvious options for creating useful media compositions. Opp. at 19.

Janssen's argument is in essence that there are *too many* effective combinations taught by the prior art, so none of them is obvious. That is incorrect. The mere fact that the prior art "discloses a multitude of effective combinations does not render any particular formulation less obvious." *Merck*, 874 F.2d at 807. That "is especially true" where, as here, "the claimed composition is used for the identical purpose taught by the prior art." *Id.* Nor does it matter whether the prior art highlighted the particular claimed combination, or whether it "preferred" other embodiments. *Id.* Claims are no less obvious simply because the inventors selected a particular composition from among "thousands" of obvious options. *In re Corkill*, 771 F.2d 1496, 1500 (Fed. Cir. 1985).

Janssen's argument also ignores that *KSR* did away with "[r]igid preventative rules that deny factfinders recourse to common sense." 127 S. Ct. at 1742. In *KSR*, the Supreme Court explained that the obviousness "analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." 127 S.Ct. at 1741. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 1739. To that end, and absent evidence to the contrary, "when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *Id.* at 1740. In other words, to be non-obvious, a claim must be "more than the predictable

use of prior art elements according to their established functions." *Id.*

Following *KSR*, and according to the Federal Circuit, "the legal determination of obviousness may include recourse to logic, judgment, and common sense," such that "the question of motivation to combine may … be addressed on summary judgment or JMOL in appropriate circumstances." *Wyers*, 616 F.3d at 1239. That is especially true where, as here, "all of the limitations of [a] patent [are] present in the prior art references, and the invention [is] addressed to a 'known problem[;]' '*KSR* ... compels the grant of summary judgment of obviousness.'" *Id.* at 1240 (quoting *Ball Aerosol*, 555 F.3d at 993).

Janssen's argument to the contrary strains credulity. Janssen does not allege there to be anything new or unexpected about the two ingredients missing from GSK (or the five ingredients missing from Life Tech). Yet it asserts the hypothetical claim is non-obvious because there must be a specific motivation to select and change those two (or five) specific ingredients—even though they are known and interchangeable substitutes—as opposed to selecting some other equally obvious and applicable alternative. Under Janssen's theory requiring a specific motivation, a scientist who merely ***arbitrarily*** swapped one ingredient in a prior art media for another known and interchangeable ingredient would produce a patentable media. That is nonsense.

By Janssen's logic, someone trying to implement the '083 patent media, but lacking a supply of one ingredient—ammonium metavanadate, for example—could swap in a known substitute—sodium metavanadate—and, now, they have a new and patentable media. But a product of "ordinarily skill and common sense" is not "of innovation." *KSR*, 127 S. Ct. at 1742.

The Patent Office recognizes this as well. It guides patent examiners that "[e]xemplary rationales that may support obviousness include":

> … Simple substitution of one known element for another to obtain predictable results; … Use of known technique to improve similar devices (methods, or

> products) in the same way; … "Obvious to try" – choosing from a finite number of
> identified, predictable solutions, with a reasonable expectation of success; …

Ex. 32, MPEP § 2143.  Only at the end of this list does it gets to what Janssen alleges is required:

"[s]ome teaching, suggestion, or motivation in the prior art."  *Id.*  Here, the '083 patent claims are

obvious under any and all of the above rationale.  *See In re Ethicon, Inc.*, 844 F.3d 1344, 1349–50

(Fed. Cir. 2017) (affirming obviousness rejection where claimed invention was "merely the simple

substitution" of one component "known to be useful" in the field).

To that end, the Federal Circuit and other courts have repeatedly held claims obvious even

without an explicit motivation to combine, where the motivation is apparent from logic, judgment,

and common sense.  For example, in *In re Omeprazole Patent Litig.*, 483 F.3d 1364 (Fed. Cir.

2007), the claims recited an "alkaline reacting compound (ARC)" wherein the ARC is "an alkaline

salt of phosphoric acid, carbonic acid, or silicic acid."  *Id.* at 1367-1368.  The prior art disclosed a

different ARC, arginine.  ████████████████████████████████████

████████████████████████████ the patent holder in *Omeprazole* admitted that

"arginine is 'just like' other ARCs and 'it is easy to substitute' arginine for another ARC.'"  *Id.* at

1374.  Given these admissions as to the known substitutability of one prior art ingredient for

another, the Federal Circuit did not require any further motivation.  To the contrary, it found "no

clear error in the district court's factual findings and no error in its conclusion that it would have

been obvious to one skilled in the art to substitute one ARC for another."  *Id.*

As another example, in *Wrigley*, the prior art reference disclosed a gum with one "cooling

agent," while the patent claimed a gum with a different cooling agent.  *Id.* at 1364.  The Federal

Circuit found this was sufficient for obviousness:

> This case presents a strong case of obviousness based on the prior art references of
> record. Claim 34 recites a combination of elements that were all known in the prior
> art, and ***all that was required to obtain that combination was to substitute one
> well-known cooling agent for another***… This case is thus one in which a person

12

of ordinary skill in the art would find it "obvious to try" the combination recited in claim 34.

*Wrigley*, 683 F.3d at 1364.

Here, a person of skill in the art equipped with the GSK media need only substitute one known source of iron for another, and one known source of vanadium for another, each from a finite set of obvious-to-try options, leading to the anticipated success. That is the definition of "ordinary skill and common sense"; it is not patentable. *KSR*, 127 S. Ct. at 1742. That conclusion applies with equal force to the substitutions needed for the Life Techs reference.

Janssen focuses on the large number of required ingredients—52—rather than the limited number differences between the claimed media and the GSK/Life Tech media. That approach is legally indefensible. It misunderstands *Graham*, and logically, makes no sense. There are not 52 differences between the claim and the prior art, there are only two. And each has a finite number of known substitutions to provide the same predictable result—less than a dozen known options for an ingredient that would provide iron, and a handful of known options for an ingredient that would provide vanadium. JSOF ¶¶ 34, 35.

In view of this "finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp." *KSR*, 127 S. Ct. at 1732. "[O]ne skilled in the art [would] look[] to" known options that had been "used successfully within" the field. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1366 (Fed. Cir. 2007). Under these circumstances, the hypothetical claims are obvious. *Id.* (reversing a finding of non-obviousness where there were only "53 pharmaceutically-acceptable anions" to try); *see also Wrigley*, 683 F.3d at 1364.

And of course Janssen is incorrect that there are an "infinite number" of chelated iron or vanadium sources (or manganese, selenium, or tin in the case of Life Techs). Indeed, as Dr. Butler

conceded, ███████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████   Ex. 3 (1/30/2018 Hr'g Tr. (Butler)) at 88:11-25; Ex.

16 (Butler Dep.) at 273:22-274:22; Dkt. 228 (SOF) ¶ 36.

Janssen's "infinite" variations argument quickly leads to illogical results.  For a claim that

recites 100 media ingredients, and the prior art discloses 99 of the 100, Janssen's logic would

suggest obviousness is impossible given the sheer number of combinations.  By the same token, if

a claim recites just 2 ingredients, and the prior art discloses one of them, Janssen's logic would

suggest the claim is more likely obvious given the limited combinations, even though in this

example the prior art only discloses 50% of the claim, and in the prior example the prior art

discloses 99% of the claim.  That plainly backwards result follows directly from Janssen's logic.

None of the cases upon which Janssen cites deal with the mere substitution of known

interchangeable ingredients for their intended purpose.  *See* Opp. at 21-22 (citing *Eisai Co. v. Dr.*

*Reddy's Labs., Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008) (not dealing with substitute ingredients,

instead affirming ruling that "lead compound" would not be selected); *In re Cyclobenzaprine*

*Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1084 (Fed. Cir. 2012)

(considering whether it was "obvious to try to target bioequivalence when formulating an

extended-release formulation"); *In re Kubin*, 561 F.3d 1351, 1361 (Fed. Cir. 2009) (affirming

obviousness finding and obvious-to-try analysis).

Janssen's arguments contradict *KSR* and its progeny, and should be rejected.

## IV.   Despite Its Burden, Janssen's Opposition Fails To Rebut The Prima Facie Obviousness Of The Hypothetical Claims

### A.   Janssen Offers No Evidence Of Unexpected Results

Once Janssen's flawed legal framework is set aside, judgment on ensnarement is

unavoidable.   Ensnarement is a "legal limitation on the application of the doctrine of equivalents," one that is "determined by the court," that is "decid[ed] as a matter of law," and that is routinely disposed of "on a pretrial motion for partial summary judgment." *Deputy Spine*, 567 F.3d at 1323-24; *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374-75 (Fed. Cir. 2014).

Indeed, Janssen does not dispute *any* of the material facts. Janssen's opposition "accepts Defendant's hypothetical claim," Opp. at 10, and does not dispute ███████████████ ████████████ Ex. 16, Butler 2016 Dep. at 72:13-20; JSOF at Resp. to ¶ 32. Janssen also admits that GSK and Life Techs "are the closest prior art to Janssen's patent and the hypothetical claim." Opp. at 2. Further, as to GSK, Janssen's opposition:

- Does not dispute that ████████████████████████████ ██████████████████████████ Ex. 16. Butler 2016 Dep. at 270:4-8; JSOF at Resp. to ¶ 55.

- Does not dispute tha ████████████████████████████ ████████████ Ex. 30 (4/17/2018 Butler Dep.) at 139:20-140:8, 154:23-155:20.

- Does not dispute that GSK's alternative ingredients provide concentration ranges of the same active component that overlap with the '083 patent's claimed concentration ranges. Dkt. 229, Mot. Appendix A.

And as to Life Techs, Janssen's opposition:

- Does not dispute that Life Techs discloses "47 [of 52 ingredients that] are listed in claim 1 of the '083 patent as required ingredients," which "overlap[] in concentration ranges" with the '083 patent claims.  JSOF at Resp. to ¶¶ 40, 55; *see also* Dkt. 230, Mot. Appendix B.

- Does not dispute tha ████████████████████████████ ████████████████ Ex. 30 (4/17/2018 Butler Dep.) at 139:20-140:8, 154:23-155:20, 326:4-16, 325:5-21, 324:7-20.

- Does not dispute that the "respective range of molar amounts of iron, manganese, selenium, tin, and vanadium supplied" by Life Techs' alternate ingredients "overlaps with the range of molar amounts supplied" by the claimed ingredients of the '083

15

patent. JSOF at Resp. to ¶ 41.

These undisputed facts make this a textbook case of obviousness. *See Ormco*, 463 F.3d 1299 at 1311; *In re Peterson*, 315 F.3d at 1329; KSR, 127 S. Ct. at 1740.[1]

Faced with this prima facie case of obviousness, Janssen offers *zero* evidence that swapping the prior art's ingredients with known substitutes is anything beyond the common sense of a skilled artisan. Janssen also offers *zero* evidence that the claimed composition yields unexpected results. That lack of dispute over the only material facts that matter renders summary judgment appropriate.

### B.     Janssen's "Copying" Allegations Cannot Avoid Summary Judgment

Janssen argues that evidence of purported "copying" by GE HyClone creates a genuine fact issue. But these copying allegations do not overcome summary judgment for three reasons.

### 1.     No Amount Of Secondary Considerations Can Overcome Obviousness In This Case

First, when "the [claimed] invention[] represent[s] no more than 'the predictable use of prior art elements according to their established functions,'" as here, "the secondary considerations are inadequate to establish nonobviousness as a matter of law." *Wyers*, 616 F.3d at 1246 (quoting *KSR*, 127 S.Ct. at 1727); *accord Stone Strong, LLC v. Del Zotto Prods. of Florida, Inc.*, 455 Fed. App'x 964, 971 (Fed. Cir. 2011) ("The secondary consideration of copying, even if established by Stone Strong at trial, is insufficient to overcome the strong prima facie case of obviousness

---

[1] Janssen argues there is no presumption of obviousness due to the overlapping concentration ranges, citing *Genetics Institute, LLC v. Novartis Vaccines & Diagnostics*, Inc., 655 F.3d 1291 (Fed. Cir. 2011). Opp. at 25-27. But *Genetics Institute* is irrelevant. It relates to optimization of amino acids in a protein structure, which is not analogous. 665 F.3d at 1303. The Federal Circuit recently explained *Genetics Institute* is limited to when the prior art discloses "various structures," and does not apply to when it discloses "a range of values." *Gen. Hosp. Corp. v. Sienna Biopharmaceuticals, Inc.*, No. 2017-1012, 2018 WL 2072125, at *4 (Fed. Cir. May 4, 2018). The other cases Janssen cites are no better.

discussed above.").

In *Wyers*, "at the time of the invention, there were two known [design options]… and both design options were common and widely used in … in the prior art," making it "a matter of common sense" to substitute one for the other. *Id.* at 1245. That was enough to hold the claims obvious, despite the patentee's evidence of "copying" and other secondary considerations. *Id.* at 1246. The Federal Circuit held: "secondary considerations of nonobviousness—considered here by the district court—simply cannot overcome a strong prima facie case of obviousness." *Id.* So too here.

### 2. The Accused Media Are Radically Different From The Claimed Media

Second, the accused products are radically different from the '083 patent—with twelve or thirteen concentration differences plus 29 extra ingredients and two missing optional ingredients—defeating any allegation of copying. When the accused product "is materially different from [the] patented invention," there is no secondary considerations evidence of copying. *Stone Strong*, 455 Fed. Appx. at 971.

Here, as to the 52 ingredient concentrations required by the claims, the accused products are outside of them a dozen or more ways. JSOF at Resp. to ¶ 19. Plus



Dkt. 237, Ex. 2 (Frohlich Rep.) at App'x C. Janssen simply ignores that all those extra ingredients

Case No. 15-10698, Dkt. 339 Ex. 1 (Butler Dep.) at 231:15-18 (emphasis added).

As Janssen's Dr. Wurm also admitted,

██████████████ Ex. 33, Wurm 12/7/2016 Dep. Tr. at 156:17-30.  Ironically, ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ Ex. 30 (4/17/2018 Butler Dep.) at 47:14-16, 178:11-181:4.

Without any actual evidence, Janssen asserts that copying must be *assumed* given the allegedly "trillions" of possible formulations based on the large number of ingredients.  Opp. at 28.  But if the purported similarity to '083 media were enough to prove copying, then there is an equally applicable assumption that the '083 inventors copied the GSK and Life Techs references. In any event, as discussed above, ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ SOF ¶ 36.  That there is a large overlap in ingredients from one media to another in this space is thus far from surprising, but rather expected.

### 3.      Janssen Offers No Evidence Of Actual Copying

Janssen's copying claim boils down to the assertion that "it is not a coincidence" that the accused media contains "every single" ingredient in the claims with only 12 or 13 differences in concentration.  Opp. at 28-29. But Janssen cites zero evidence in support of copying, as opposed to coincidence, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████ JSOF at Resp. to ¶ 32.

The Federal Circuit cautions against Janssen's approach: "[n]ot every competing product that arguably falls within the scope of a patent is evidence of copying; otherwise, 'every infringement suit would automatically confirm the nonobviousness of the patent.'"  *Wyers*, 616 F.3d at 1246 (citation omitted).  "Our case law holds that copying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents,

direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." *Id.*

In *Wyers*, the patent owner had none of that. *Id.* Neither does Janssen. It points to no actual evidence that any information that Janssen provided to GE HyClone was actually copied. For example, Janssen has not shown that any of the specific concentrations of ingredients provided to GE HyClone are the concentrations used in the accused products.

The evidence does, on the other hand, overwhelmingly indicate that any alleged similarity is *not* the result of copying. For example, as discussed above:

- █████████████████████████████████████████████ (JSOF at Resp. to ¶ 32);

- █████████████████████████████████████████ (Dkt. 229, Mot. Appendix A);

- GSK already disclosed 50 out of the 52 claimed ingredients with the only two remaining active components present in a different chemical form (chelated iron from ferric fructose in GSK and from ferric ammonium citrate in the '083 patent), Br. at 8-10;

- Keenan taught that "sodium nitroprusside…, ferric nitrate…, iron choline citrate…, ferric citrate…, *ferric ammonium citrate*…, ferric ammonium sulfate…, and ferrous sulfate" were all suitable ingredients for providing chelated iron, (Ex. 23 (Keenan) at 451); and

- Sodium metavanadate and ammonium metavanadate were known in the art to be interchangeable, so much so that literature reported one could be used over the other "for reasons of convenience." (Ex. 19 (Cleveland) at 223).

*Supra*, IV-A; Br. at 8-10.

Similar correlations exist regarding Life Techs, Br. at 27-29, as well as to the historical development of cell culture media going back for decades, Br. at 3-5. The extensive prior art knowledge of the ingredients and concentrations at issue caused Dr. Butler to concede that █

████████████████████████████████████████████████████████████████

███████████████████████████████████ Ex. 3 (1/30/2018 Hr'g Tr. (Butler)) at 88:11-25; Ex. 16 (Butler Dep.) at 273:22-274:22; SOF ¶ 36. Thus, the Federal Circuit's recognition that, in a "market" in which "parties have a practice of marketing very similar products," such general similarities are "not a strong indicator of nonobviousness," applies with full force here. *Wrigley*, 683 F.3d at 1364.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ Ex. 34 (2/24/17 Hearing Tr.) at 69:3-5. Janssen appears to have, sensibly, abandoned that unsupportable charge. ████████████████████

████████████████████████████████████████████████████

██████████████████████████ Ex. 25 (Douglas (GE HyClone) Dep.) at 235:11-24. And contemporaneous cell culture media publications considered ferric ammonium citrate "preferred." JSOF at Resp. to ¶ 47.

Moreover, Janssen's allegations of copying are all directed to GE HyClone, who is not a party to this lawsuit. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ It cannot.

There is no copying evidence, and even if there were, it would not avoid summary judgment on the issue of obviousness.

## V.      Conclusion

The Court should grant summary judgment of non-infringement.

Dated: May 29, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/ *Andrea L. Martin, Esq.*
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: 617-345-3000
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
Gregory B. Sanford (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com
gregory.sanford@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 879-5000
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare*
*Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 29, 2018.

<u>*/s/Andrea L. Martin, Esq.*</u>
Andrea L. Martin, Esq.