## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JANSSEN BIOTECH, INC.,

        Plaintiff,

v.

CELLTRION HEALTHCARE CO., LTD.,
CELLTRION, INC., and
HOSPIRA, INC.

        Defendants.

No. 1:17-cv-11008
**PUBLIC**
**REDACTED VERSION**

## DEFENDANTS' RESPONSE TO PLAINTIFFS' COUNTERSTATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF <u>NONINFRINGEMENT BASED ON ENSNAREMENT</u>

Pursuant to Local Civil Rule 56.1, Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., (together, "Celltrion") and Hospira, Inc. ("Hospira") (collectively "Defendants") submit the following response to Plaintiffs' Counterstatement of Material Facts in support of their opposition to Defendants' Motion for Summary Judgment (Dkt. 228).   Numerous items within Plaintiffs' Statement of Undisputed Facts consist of argument, characterizations, legal conclusions, statements or characterization of laws or rules, hypothetical scenarios, or otherwise contain little or no factual matter.   Defendants dispute any alleged fact or portion of an alleged fact that is not specifically disputed below.   The responses contained herein are solely directed and limited to responding to Plaintiffs' opposition brief.

1.     A person of ordinary skill in the art in 2003-2004 ("POSA") typically would have developed a serum-free or chemically defined cell culture medium using the following steps:

> Consider basal medium as a potential starting point, which are typically mixtures of various media, for example, DMEM/F12 or eRDF (which itself is a modified mixture of three standard media formulations).

> Assemble a list of potential active components. By active component, I mean the component that provides the functional activity of interest in the ingredient independent of form (e.g., salt form).

> Select ingredients that can provide the active components from the assembled list to formulate a candidate medium. A POSA would consider various forms of an active component interchangeable and would select a particular ingredient based on such considerations as availability, purity, stability, cost, etc.

> Develop an experimental design where the concentrations of the ingredients are varied in the medium to determine the optimal amount(s).

> Execute the designed experiments using a matrix-based experiment, an example of which is described in Lao and Schalla.

(JSOF Ex. 14 (Glacken Reply Report) ¶ 17.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition, at least because Defendants disagree that "starting point" or "lead compound" analysis is required. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   To the extent a response is required, Defendants dispute Janssen's characterization of Dr. Glacken's report. This passage appears in the section of Dr. Glacken's report entitled "Scope And Content Of The Prior Art, And The Knowledge Of A POSA." JSOF Ex. 14 (Glacken Reply Report) at pg. 8-9.   Defendants agree that a POSA in 2003-2004 would have had these skills in addition to others.   Dr. Glacken's report makes clear this process is "illustrative."   *Id.* at ¶ 17.   Likewise, Dr. Glacken noted "a POSA as of the priority date would have looked to known cell culture media and would have combined the desired ingredients and determined their concentrations through routine

experimentation." *Id.*  Dr. Glacken has also made clear that a direct comparison between the asserted claim and GSK or Life Techs supports obviousness, as well as modifications being within the skill set of a POSA.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112.

2.      At his deposition, Dr. Glacken repeatedly referred to the steps in Janssen's Statement of Facts ("JSOF") ¶ 1 above as the basis for his obviousness opinion. (JSOF Ex. 4 (Glacken Tr.) at 78:1-6, 112:8-20, 140:17-141:3, 149:12-17, 213:3-215:20, 229:11-230:25.).

**RESPONSE:**    Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  To the extent a response is required, the statement is incorrect as a mischaracterization.  Dr. Glacken never stated that paragraph 17 of his opening invalidity report was "***the*** basis" for his obviousness opinion.  The basis for his opinion is as laid out in both his invalidity reports in their entirety.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112.  In the testimony Janssen cites (and the surrounding testimony), Dr. Glacken merely referred to paragraph 17 as, *e.g.*, a "reasonable way to do it" (JSOF Ex. 4 (Glacken Tr.) at 78:24-79:3); as a "reasonable method" but clarifying that "***I don't want to give you the idea it's exclusive*** and, you know, that there's no other ways to do it" and that "a person skilled in the art… uses this method ***or some variation thereof***" (*id*. at 112:12-20); "a reasonable methodology" (*id*. at 213:8-18).  In addition, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227.

3.     Defendants' expert (Dr. Glacken) has not opined that a POSA following the steps in JSOF ¶ 1 above would have arrived at the cell culture media claimed in the '083 patent. (JSOF Ex. 4 (Glacken Tr.) at 140:23-141:3, 149:12-17, 213:24-214:3, 215:12-20.)

**RESPONSE:**     Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, the statement is incorrect as a mischaracterization.  For example, Janssen cites Dr. Glacken's testimony at 140:23-141:3 and 149:12-17 where he states as to another reference (Jayme):

> A. Again, this is something we, you know, talked about a little before lunch. Again, it's -- it's what scientists do. I mean, I do not -- you know, No. 1, I've -- I've used all these ingredients in my -- in my media development.
>
> And as stated in paragraph 17, mixing and matching these components to come up with a formulation that is somewhat similar to the '083 patent, considering some of those ranges are pretty broad, some as high as -- I have to go back and look, but many are in the hundreds, a couple are over a thousand. So those are -- those are broad ranges to fit into, that it would not be an unexpected occurrence for a person skilled in the art who knows that all these ingredients have been in the prior -- has been in the public domain, can do experiments and come up with a formulation, one of which could be very similar to '083.

JSOF Ex. 4, Glacken Dep. Tr. at 140:12-141:3.

> So a person skilled in the art is quite capable of doing the procedure I listed in table 17 in coming up with a media that works for them.  And what works for them might be within the claims.  It would not be unreasonable that what works for them might be in the claims of the '083 patent.
>
> It's probably also not reasonable that they come up with a formulation that's just like the Celltrion media which is outside the range for 11 or 12 of the components, so, or maybe even, you know, more if their cell line was quite a bit different and their application was quite a bit different.

4

*Id*. at 149:12-23.   Janssen's citation is especially inapposite, as this testimony shows the hypothetical claim would also be obvious.   As Dr. Glacken further explained as to the literal scope of the original claim:

> A. Yes, the -- the -- you know, in doing the experiments as described in paragraph 17, a person skilled in the art is going to go where the experiments takes them and some of these may be in range, a few may be out of range, but -- or they all may be in range. Again, it's -- get back to the point I've been making all day, it's sometimes hard to generalize. Everything is going to be a case-by-case basis.

*Id*. at 213:24-214:6.

> A. I think, you know, as I stated earlier, it's not an unreasonable expectation that one of the outcomes would be a medium that could include the '083 patent ranges.

*Id*. at 215:12-20.

4.      By following the steps in JSOF ¶ 1 above, a POSA would not necessarily have arrived at the cell culture media claimed in the '083 patent. (JSOF Ex. 4 (Glacken Tr.) at 140:23-141:3, 149:12-17, 213:24-214:3, 215:12-20.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.   *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.   *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect. *See* Response to Nos. 1 and 3 *supra*.   Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with

respect to at least the GSK and Life Techs references.

5.      A POSA following the steps in JSOF ¶ 1 would "look at commercial media, the classics, DMEM, F12, DMEM/F12, RPMI and look at combinations of those" as starting points for further cell culture media development.  (JSOF Ex. 4 (Glacken Tr.) at 71:19-72:8; *id.* at 78:3-6 ("the first step is, you know, considering a basal media, an example, DMEM/F12, RDF"); *id.* at 72:23-25 ("In my mind and I think in most persons skilled in the art . . . if they heard the two terms basal medium, they'd be thinking of DMEM, you know, [D]MEM/F12, RDF.").)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition, at least because Defendants disagree that "starting point" or "lead compound" analysis is required. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect as a mischaracterization. For example, Janssen mischaracterizes Dr. Glackens opinions as exclusive.  *See* Response to Nos. 1 and 2 *supra*.  Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

6.      Defendants' expert Dr. Glacken, in his own cell culture media development work, "look[ed] at commercial media, the classics, DMEM, F12, DMEM/F12, RPMI and look[ed] at

combinations of those" as starting points for further cell culture media development.  (JSOF Ex. 4 (Glacken Tr.) at 71:19-72:8.)

**RESPONSE:**  Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition, at least because Defendants disagree that "starting point" or "lead compound" analysis is required. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect as a mischaracterization. For example, Janssen mischaracterizes Dr. Glackens opinions as exclusive.  *See* Response to Nos. 1 and 2 *supra*.   Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.


7.     Dr. Glacken's opening expert report cited the Jayme 1997 reference, which set forth the formulae of seven standard basal media: MEM, F-12, DMEM, DMEM/F12, RPMI 1640, RDF, and eRDF.  (JSOF Ex. 15 (Glacken Opening Report) ¶ 168.)

**RESPONSE:**  Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, undisputed that Dr. Glacken cited Jayme 1997 and that it set forth formulae

of various standard basal media.

████ ████████████████████████████████████████

███████████████████████████████████████████████

████████████

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. "[T]he path that leads an inventor to the invention is expressly made irrelevant to patentability by statute." *Life Techs., Inc. v. Clontech Labs., Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000).  Further, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, disputed as incomplete. ███████████████████████████████████

████████████████████████████████████████████████

9.      The GSK reference "relates to a process for animal, preferably human, diploid anchorage-dependent cell culture, in the absence of exogenous components of primary animal origin, and to a cell culture medium substantially free of exogenous components of primary animal origin suitable for carrying out said process."  (JSOF Ex. 9 (GSK) at Abstract.)

**RESPONSE:**   Undisputed that the quote appears in GSK, but disputed as to completeness.  GSK is prior art for all that it teaches, and also noted "[t]he present invention also contemplates the use of the culture medium as herein above described for the cultivation of cells . . . more preferably eukaryotic cells," (Def. Ex. 18 (GSK) at 19:5-8) which is the same as the '083 Patent's "FIELD OF THE INVENTION[:] The present invention relates to chemically

defined media compositions for the culture of eukaryotic cells." (Def. Ex. 13 ('083 Patent) at 1:12-14).

10.     The GSK reference specifically discloses "that the use of a cell culture medium substantially free from exogenous components of primary animal origin and comprising at least one exogenous growth factor of non-animal secondary origin, can advantageously replace conventional culture media and serum-free media which are known to contain components from exogenous primary and/or secondary animal origin."  (JSOF Ex. 9 (GSK) at 3:25-30.)

**RESPONSE:**     Undisputed that the quote appears in GSK, but disputed as to completeness.  GSK is prior art for all that it teaches, and further GSK teaches a cell culture media containing 50 of the 52 required ingredients claimed in the '083 patent in the exact same chemical form, and for the two remaining ingredients, the same active component in a form known to be interchangeable with the '083 Patent, as well as overlapping ranges for all ingredients.  (Def. Ex. 18 (GSK) at 21-24; Dkt. 227.)

11.     The GSK reference discloses its exogenous growth factors can be added to any suitable media, including "DMEM-based (high-glucose Dulbecco's Modified Eagle's Medium), MEM (Minimum Essential Medium), Medium 199, and RPM-I 1640," as well as Ultra-MEM and the medium in Table 3 of GSK.  (JSOF Ex. 9 (GSK) at 12:4-20.)

**RESPONSE:**  Undisputed that one of the teachings of GSK is that growth factors may be added to the media listed as recited in:

> Suitable fresh media are animal-free standard media such as DMEM-based (high-glucose Dulbecco's Modified Eagle's Media), MEM (Minimum Essential Medium Eagle), Medium 199, RPM-I 1640, all commercially available from, among others, Life-technologies-Gibco-BRL, BioWittaker, Sigma-Aldrich, and further adequately supplemented with growth factor(s) and optionally with a protein

hydrolysate of nonanimal origin as taught above. The skilled man will understand that the starting medium will need to be selected according to the cell-type being cultured. A preferred commercially available fresh medium is Ultra-MEM, available from BioWhittaker (cat. n° 12-745F). Alternatively, depending on the cell type to be cultivated, the fresh medium is an animal-free medium prepared from each of the individual components, and comprises (list non-exhaustive) a source of carbohydrates, inorganic salts ingredients, trace of elements, amino acids (including non essential), vitamins, nucleotides/nucleosides, fatty acids, antibiotics, oxidation stabilisers and water, suitably supplemented with non-animal origin exogenous growth factor(s) and optionally but preferably with non-animal origin protein hydrolysate as taught above. An example of a basic composition of such a medium is given in Example I and Table 3.

Def. Ex. 18 (GSK) at 12:4-20. Janssen has also not shown how the hypothetical claim avoids ensnarement of the other media mentioned in GSK.

12.     The GSK reference ascribes no special significant to the medium of Table 3 in GSK as compared to any of the other media it describes as suitable for use with GSK's disclosed exogenous growth factors. (JSOF Ex. 9 (GSK) at 12:4-20; JSOF Ex. 15 (Glacken Opening Report) ¶ 200.).)

**RESPONSE:**     Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  To the extent a response is required, incorrect. For example, the formula recited in Table 3 is specifically taught and Janssen has identified no other such formulae in the specification.  (Def. Ex. 18 (GSK) at 21-24).  Likewise, GSK stated "An examplary advantageous fresh culture medium comprises all or most of the common ingredients as listed in Table 3." *Id.* at 21:5-6.  GSK also dedicates a section to its disclosure. (Def. Ex. 18 (GSK) at 21-24).  Janssen has also not shown how the hypothetical claim avoids ensnarement of the other media mentioned in GSK.

13.     The Life Techs reference relates to "culture media formulations that support the culture of animal cells comprising plant peptides, preferably as a primary protein source," in particular, formulations including "at least one plant peptide which is not derived from wheat and which is most preferably derived from rice," "at least one plant lipid and/or fatty acid," and "an enzymatic digest or an extract of yeast cells." (JSOF Ex. 17 (International Patent App. No. WO 98/15614 ("Life Techs")) at 7:2-11.)

**RESPONSE:**   Undisputed that the quotes appear in GSK, but disputed as to completeness.   Life Techs is prior art for all that it teaches, and also noted "[t]he present invention provides serum-free cell culture media formulations which are capable of supporting the in vitro cultivation of animal cells" (Def. Ex. 17 (Life Techs) at Abstract) which is the same as the '083 Patent's "FIELD OF THE INVENTION[:] The present invention relates to chemically defined media compositions for the culture of eukaryotic cells." (Def. Ex. 13 ('083 Patent) at 1:12-14).   By way of background, animal cells are a type of eukaryotic cell.   (Def. Ex. 18 (GSK) at 19).

14.     The Life Techs reference states that "[a]ccording to the invention, at least one plant peptide, extract, enzymatic digest or hydrolysate of plant protein, and/or at least one plant-derived lipid and/or fatty acid, is added to a basal medium to formulate the complete culture media of the present invention."  (JSOF Ex. 17 (Life Techs) at 18:14-19.)

**RESPONSE:**   Undisputed that the quote appears in Life Techs, but disputed as to completeness.   Life Techs is prior art for all that it teaches, and taught a cell culture media formula in Table 1.  (Def. Ex. 17 (Life Techs) at pg. 14-18).  Life Techs additionally teaches that "at least one peptide, extract, enzymatic digest or hydrolysate of plant protein, and/or at least one plant- derived lipid and/or fatty acid, is added to a basal medium." (*Id.* at 18:14-18).

15.     The medium in Table 1 of Life Techs is an example of a "basal medium" to which the Life Tech's additives can be added; "[o]ther basal media, however, can be equivalently used in accordance with the invention."  (JSOF Ex. 17 (Life Techs) at 18:14-19.)

**RESPONSE:** Undisputed that the quote appears in Life Techs, but disputed as to completeness.  Life Techs is prior art for all that it teaches, and taught a cell culture media formula in Table 1.  (Def. Ex. 17 (Life Techs) at pg. 14-18).  Life Techs additionally teaches that it is not the only media in existence.  (*Id.* at 18:14-19).  Defendants agree that the '083 Patent is equivalent to numerous prior art media. Janssen has also not shown how the hypothetical claim avoids ensnarement of the other media mentioned in Life Techs.

16.     The Life Techs reference ascribes no special significance to the medium of Table 1 as compared to any other media it describes as suitable. (JSOF Ex. 17 (Life Techs) at 18:14-19.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith. To the extent a response is required, incorrect. For example, the formula recited in Table 1 is specifically taught and Janssen has identified no other such formulae in the specification. (Def. Ex. 17 (Life Techs) at pg. 14-18).   Life Techs also dedicates a section to its disclosure.  (*Id*). Janssen has also not shown how the hypothetical claim avoids ensnarement of the other media mentioned in Life Techs.

17.     A POSA following the steps in JSOF ¶ 1 would not "start with a serum free medium that [he] saw in a paper somewhere."  (JSOF Ex. 4 (Glacken Tr.) at 71:19-72:8.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of

Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect as a mischaracterization.  Dr. Glacken was asking for clarification to the question and stated would not "necessarily start with a serum free medium that [he] saw in a paper somewhere" as part of a hypothetical science experiment. JSOF Ex. 4, Glacken Tr. at 71:19-72:12.  Dr. Glacken also opined that a POSA would have been motivated to select the serum free mediums in GSK and Life Techs.  Dkt. 221-6, Glacken Reply at ¶¶ 66, 114.    Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

18.    A POSA following the steps in JSOF ¶ 1 above would not have selected the medium disclosed in Table 3 of the GSK reference as a starting point for further cell culture media development. (JSOF Ex. 4 (Glacken Tr.) at 72:10-12, 82:20-83:3; JSOF Ex. 3 (Butler Rebuttal Report) ¶¶ 128-132.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition, at least because Defendants disagree that "starting point" or "lead compound" analysis is required.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-

112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect.   Janssen misquotes Dr. Glacken.   *See* Response to No. 17.   Dr. Glacken further explained he did not want "to preclude other methods of doing things as invalid, you know, based what I said in 17." JSOF Ex. 4, Glacken Tr. at 83:4-7.   Further, Dr. Glacken specifically opined that a POSA would have been motivated to select the mediums in Table 3 of GSK as a starting point.   Dkt. 221-6, Glacken Reply at ¶ 114.     Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

19.    A POSA following the steps in JSOF ¶ 1 above would not have selected the medium disclosed in Table 1 of the Life Techs reference as a starting point for further cell culture media development. (JSOF Ex. 4 (Glacken Tr.) at 72:10-12, 82:20-83:3; JSOF Ex. 3 (Butler Rebuttal Report) ¶¶ 93-96.)

**RESPONSE:**    Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition, at least because Defendants disagree that "starting point" or "lead compound" analysis is required.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect.   Janssen misquotes Dr. Glacken.   *See* Response to No. 17.   Dr. Glacken further explained he did not want "to preclude other methods of doing things as invalid, you know, based what I said in 17." JSOF Ex. 4, Glacken Tr. at 83:4-7.  Further, Dr. Glacken specifically

opined that "a POSA would have been motivated to select the cell culture medium of Table 1" in Life Techs.  Dkt. 221-6, Glacken Reply at ¶ 66.  Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

20.    Defendants' expert Dr. Glacken did not recall being aware of either the GSK reference or the Life Techs reference prior to this litigation. (JSOF Ex. 4 (Glacken Tr.) at 70:3-71:13.)

**RESPONSE:**    Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, the obviousness analysis gives the person of ordinary skill in the art awareness of all pertinent art.  *Id.*  Likewise, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*.  To the extent a response is required, incorrect as a mischaracterization.  Dr. Glacken testified as "it's obviously possible I could have . . . I can't say that I really did or didn't see [Life Techs] prior to my involvement in this case" and "it's quite conceivable I've run across [Life Techs and GSK]."  JSOF Ex. 4, Glacken Tr. at 70:3- 71:13.

21.    Defendants have selected the GSK and Life Techs references for analysis using hindsight.  (*See generally* Def. Br.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, the obviousness analysis gives the person of ordinary skill in the art awareness of all pertinent art.  *Id.*  Likewise, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*.  To the extent a response is required, disputed.  Dr. Glacken opined that both the GSK and Life Techs patents provides "a strong motivation for a POSA to select" the disclosed compositions with a "reasonable expectation of success." Dkt. 221-6 at ¶¶ 67, 114.  For example, both provide compositions that addressed the recognized challenge in 2004 (and before) of developing serum-free, animal-component-free media.  Id. at ¶¶ 68, 114.  And, in the case of Life Techs, it further discloses that it "performed as well as or better than" a commercially available classical media supplemented with serum.  Id. at ¶ 69 (quoting Life Techs at p. 38:10-11). Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

22.    Defendants have identified no reason why a person of ordinary skill in the art would have selected the media in Table 3 of the GSK reference or Table 1 of the Life Techs reference as a starting point for further development. (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and

Reply Memorandum filed concurrently herewith.  For example, the obviousness analysis gives the person of ordinary skill in the art awareness of all pertinent art.  *Id.*  Likewise, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*.  To the extent a response is required, incorrect.  Dr. Glacken opined that both the GSK and Life Techs patents provides "a strong motivation for a POSA to select" the disclosed compositions with a "reasonable expectation of success."  Dkt. 221-6 at ¶¶ 67, 114.  For example, both provide compositions that addressed the recognized challenge in 2004 (and before) of developing serum-free, animal-component-free media.  Id. at ¶¶ 68, 114.  And, in the case of Life Techs, it further discloses that it "performed as well as or better than" a commercially available classical media supplemented with serum (Def. Ex. 17 (Life Techs) at p. 38:10-11), which Dr. Glacken opined would have "motivated a POSA to use [Life Techs] as a guide for preparing serum-free media that supported high cell growth.  Dkt. 221-6 at ¶ 69.   Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

23.     Regarding "serum-free cell culture medi[a]," Dr. Glacken has written that there is "[a]lmost an infinite number of possible formulations." (JSOF Ex. 5 (Glacken Report Ex. 10), at CELLREM-0345754.)

**RESPONSE**:  Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the

'083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*. To the extent a response is required, incorrect as a mischaracterization.   The document states "[a]lmost an infinite number of possible formulations" in reference to a media optimized for a specific cell line.  JSOF Ex. 5 (Glacken Report Ex. 10), at CELLREM-0345754.  Moreover, both GSK and Life Techs describe formulations which already match the formulations of the hypothetical claim, with the only differences being as to a few components that share the same active ingredient and are known to be interchangeable.  Dkt. 227.

24.    The medium of Table 3 of the GSK reference lists 96 ingredients with various concentration ranges and a preferred concentration for each.  (JSOF Ex. 9 (GSK) at Table 3.)

**RESPONSE:**    Defendants agree that Table 3 of GSK recites 96 ingredients with concentration ranges for each ingredient.   Defendants agree that GSK Table 3 includes an additional column reciting a different set of ranges which it characterizes as "preferred." Defendants contend that GSK is prior art for all that it teaches and the other ranges are immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.

25.    The medium of Table 3 of the GSK reference does not include two ingredients required by claim 1 of the '083 patent: ferric ammonium citrate and ammonium metavanadate. (JSOF Ex. 9 (GSK) at Table 3.)

**RESPONSE:**    Undisputed that Table 3 of GSK does not recite the specific chemical forms of ferric ammonium citrate and ammonium metavandate, but rather recites ferric fructose and ammonium metavanadate.  Both ferric ammonium citrate and ferric fructose share the same

18

active component (chelated iron) and were known to be substitutable in cell culture media.  Dkt. 227 at 10-11, 22-24.  In fact, ferric ammonium citrate was known to be "preferred."  *Id.* at 10. Likewise, both ammonium metavanadate and sodium metavanadate share the same active component (vanadium) and were known to be substitutable in cell culture media.  *Id.* at 9-10, 21-22.  In fact, they could be substituted for "reasons of convenience."  *Id.* at 22.

26.     Defendants have identified no reason why a person of ordinary skill in the art would have selected the iron- and vanadium-containing ingredients in the medium of Table 3 of GSK for modification. (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to No. 25 *supra*.   To the extent a response is required, incorrect.  Dr. Glacken opined that "[t]here is nothing novel in the selection of any of particular trace element salt, and it would have been obvious for a POSA to try the claimed trace element salts in place of the exemplary salts listed in the '955 application."  Dkt. 221-4, Glacken Op. ¶ 256.  Dr. Glacken also opined that "[t]he known interchangeability… provides the motivation and ability to substitute the trace element-containing ingredients of the '955 application with its equivalent salt/hydrate form claimed in the '083 patent, depending on, for example, availability, solubility, or cost."  Dkt. 221-6, Glacken Reply at ¶ 140.  Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen

has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.


27.    Defendants have identified no reason why a person of ordinary skill in the art would have selected only the iron- and vanadium-containing ingredients for modification out of the 96 ingredients in the medium of Table 3 of GSK. (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**    Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to No. 25 *supra*.  Nor has Janssen provided any legal authority requiring that it only be obvious to modify the prior art to arrive at the claims. To the extent a response is required, incorrect.  Defendants have identified why a person of ordinary skill in the art would have selected iron- and vanadium- containing ingredients for modification.  *See* Response to No. 26. Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.


28.    Defendants have identified no reason why a person of ordinary skill in the art would have modified the iron- and vanadium-containing ingredients in the medium of Table 3 of GSK to arrive at the iron- and vanadium-containing ingredients of claim 1 of the '083 patent (or

the hypothetical claim). (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to No. 25 *supra*.  To the extent a response is required, incorrect.  *See* Response to No. 26.  Further, Defendants identified additional reasons in its opening brief and SOF.  The prior art taught that "[t]he chelated salts such as… ferric ammonium citrate are preferred." SOF ¶ 47; Ex. 22 (WO 03/046162) at 18:28-31 (cited at Def. Ex. 13 ('083 Patent) at Cover). Further, a 1983 article reports the "substitute[ion]" in one media recipe of "$NaVO_3$" (sodium metavanadate) "for $NH_4VO_3$" (ammonium metavanadate) simply "for reasons of convenience." SOF ¶ 42; Def. Ex. 19 (Cleveland 1983) at Table 1.  Janssen does not dispute that these statements are in the prior art.  JSOF at Resp. to ¶¶ 28, 42.

29.    The medium of Table 1 of the Life Techs reference lists 88 ingredients with various concentration ranges and a preferred and most preferred concentration for each. (JSOF Ex. 17 (Life Techs) at Table 1.)

**RESPONSE:**  Defendants agree that Table 1 of Life Techs recites 88 ingredients with concentration ranges for each ingredient.  Defendants agree that Life Techs Table 1 includes an additional columns labeled "preferred" and "most preferred" concentrations.  Defendants contend that Life Techs is prior art for all that it teaches and the other ranges are immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt.

227 and Reply Memorandum filed concurrently herewith.

30.     The medium of Table 1 of the Life Techs reference does not include five ingredients required by claim 1 of the '083 patent: ferric ammonium citrate, MnSO4•H2O, Na2SeO3, SnCl2•2H2O, and NH4VO3.  (JSOF Ex. 17 (Life Techs) at Table 1.)

**RESPONSE:**   Undisputed that Table 1 of Life Techs does not recite the specific chemical forms of ferric ammonium citrate, MnSO4•H2O, Na2SeO3, SnCl2•2H2O, and NH4VO3, but rather recites other chemical forms containing the same active components that were known to be interchangeable.  Dkt. 227 at 9-12, 27-30.  For example, ferric ammonium citrate and Life Tech's ferric citrate form the same chemical form chelated iron in solution.  *Id.*

███████████████████████████████████████████████████████

█████████████████████████████████████

31.     Defendants have identified no reason why a person of ordinary skill in the art would have selected the iron-, managanese-, selenium-, tin-, and vanadium-containing ingredients in the medium of Table 1 of Life Techs for modification. (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, Life Techs already discloses an obvious variation on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to No. 30 *supra*.    To the extent a response is required, incorrect.  As to the iron- and vanadium- containing ingredients, see Response to No. 25 *supra*.  Further, Dr. Glacken

opined that "a POSA in 2004 would have been motivated, with a reasonable expectation of success, as part of routine experimentation, to substitute alternative forms of ingredients that already provide the same active component (including manganese, selenium, tin, vanadium, and iron) to achieve certain advantages tangentially related to its cell culture performance (e.g., more readily available, already-in-hand, more soluble, more stable, and cheaper ingredients)… to achieve better results for a cell line of interest to the POSA." Dkt. 221-6, Glacken Reply ¶ 78. Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

32.    Defendants have identified no reason why a person of ordinary skill in the art would have selected only the iron-, managanese-, selenium-, tin-, and vanadium-containing ingredients for modification out of the 88 ingredients in the medium of Table 1 of Life Techs. (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**    Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, Life Techs already discloses an obvious variation on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to No. 30 *supra*.  Nor has Janssen provided any legal authority requiring that it only be obvious to modify the prior art to arrive at the claims. To the extent a response is required, incorrect.  Defendants have identified why a person of ordinary skill in the art would

have selected iron- and vanadium- containing ingredients for modification. *See* Response to

Nos. 25, 31. Further, for the reasons outlined in Defendant's opening brief and concurrently filed

reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute

and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life

Techs references.

33.     Defendants have identified no reason why a person of ordinary skill in the art

would have modified the iron-, managanese-, selenium-, tin-, and vanadium-containing

ingredients in the medium of Table 1 of Life Techs to arrive at the iron-, managanese-,

selenium-, tin-, and vanadium-containing ingredients of claim 1 of the '083 patent (or the

hypothetical claim). (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF

Ex. 14 (Glacken Reply Report).)

**RESPONSE:**     Defendants object to this allegation as immaterial to resolution of

Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and

Reply Memorandum filed concurrently herewith.  For example, Life Techs already discloses an

obvious variation on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken

Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see

also* Response to No. 30 *supra*.  To the extent a response is required, incorrect. *See* Response to

No. 26.  Further, Defendants identified additional reasons in its opening brief and SOF.   The

prior art taught that "[t]he chelated salts such as… ferric ammonium citrate are preferred." SOF ¶

28; Def. Ex. 13 ('083 Patent) at Cover; Def. Ex. 22 (WO 03/046162) at 18:28-31.  Further, a

1983 article reports the "substitute[ion]" in one media recipe of "NaVO3" (sodium

metavanadate) "for NH4VO3" (ammonium metavanadate) simply "for reasons of convenience."

SOF ¶ 42; Def. Ex. 19 (Cleveland 1983) at Table 1.  Janssen does not dispute that these

statements are in the prior art.  JSOF at Resp. to ¶¶ 28, 42.  Further, for the reasons outlined in Defendant's opening brief and concurrently filed reply brief, Defendants disagree that Janssen has raised facts sufficient to raise a genuine dispute and overcome their burden for purposes of ensnarement with respect to at least the GSK and Life Techs references.

34.     There are at least 11 iron-containing ingredients that can be used in a cell culture media. (JSOF Ex. 8 ('704 patent) at col. 6:16-66; JSOF Ex. 9 (GSK) at Table 3; JSOF Ex. 17 (Life Techs) at Table 1; JSOF Ex. 18 ('083 patent) at claim 1.)

**RESPONSE:**  Defendants agree that there are 11 interchangeable and not patentably distinct iron-containing ingredients that can be used in cell culture media. Dkt. 227.  Janssen has not identified any purported advantage or unexpected result for the claimed chemical forms.

35.     There are at least 5 vanadium-containing ingredients that can be used in a cell culture medium. (JSOF Ex. 8 ('704 patent) at col. 6:16-66; JSOF Ex. 9 (GSK) at Table 3.)

**RESPONSE:**  Defendants agree that there are 5 interchangeable and not patentably distinct vanadium-containing ingredients that can be used in cell culture media. Dkt. 227. Janssen has not identified any purported advantage or unexpected result for the claimed chemical forms.

36.     There are at least 55 (5 x 11) unique combinations of iron- and vanadium-containing ingredients that can be used in a cell culture medium.  (JSOF ¶¶ 34-35.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both

already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227. Defendants otherwise agree that there are at least 55 interchangable and not patentably distinct from the combinations of iron- and vanadium- containing ingredients. Janssen has not identified any purported advantage or unexpected result for the claimed chemical forms.

37.     Of the at least 55 unique combinations of iron- and vanadium-containing ingredients that can be used in a cell culture medium, only one such combination (FAC and ammonium metavanadate) would meet the hypothetical claim (and the '083 patent claim). (JSOF ¶¶ 34-36.)

**RESPONSE:**     Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith. For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227. As the iron and vanadium compounds recited in GSK and Life Techs are interchangable and not patentably distinct with the claimed FAC and vanadium, incorrect. Dkt. 227.

38.     There are at least 6 nickel-containing ingredients that can be used in a cell culture medium. (JSOF Ex. 8 ('704 patent) at col. 6:16-66; JSOF Ex. 18 ('083 patent) at claim 1.)

**RESPONSE:**     Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and

Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227.  To the extent a response is required, Defendants agree that there are 6 interchangeable and not patentably distinct nickel-containing ingredients that can be used in cell culture media. Dkt. 227. Janssen has not identified any purported advantage or unexpected result for the claimed chemical forms.

39.     There are at least 6 copper-containing ingredients that can be used in a cell culture medium.  (JSOF Ex. 8 ('704 patent) at col. 6:16-66. JSOF Ex. 18 ('083 patent) at claim 1.)

**<u>RESPONSE</u>:**     Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.  *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227.  To the extent a response is required, Defendants agree that there are 6 interchangeable and not patentably distinct copper-containing ingredients that can be used in cell culture media. Dkt. 227. Janssen has not identified any purported advantage or unexpected result for the claimed chemical forms.

40.     There are at least 625 (5 x 5 x 5 x 5) unique combinations of iron-, vanadium-, nickel-, and copper-containing ingredients that can be used in a cell culture medium. (JSOF ¶¶ 34-35, 38-39.)

**<u>RESPONSE</u>:**     Defendants object to this allegation as immaterial to resolution of

Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith. For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227. As the iron-, vanadium-, nickel-, and copper-containing ingredients in GSK and Life Techs are interchangable and not patentably distinct with the claimed iron-, vanadium-, nickel-, and copper-containing ingredients, disputed. Dkt. 227.

41.     Of the at least 625 unique combinations of iron-, vanadium-, nickel-, and copper-containing ingredients that can be used in cell culture, only one such combination (FAC, ammonium metavanadate, nickel sulfate, and copper sulfate) would meet the hypothetical claim (and the '083 patent claim). (JSOF ¶¶ 34-35, 38-40.)

**RESPONSE:** Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith. For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent. *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227. As the iron-, vanadium-, nickel-, and copper-containing ingredients in GSK and Life Techs are interchangable and not patentably distinct with the claimed iron-, vanadium-, nickel-, and copper-containing ingredients, disputed. Dkt. 227.

42.     Dr. Glacken performed an "exemplary calculation" of the number of different possible combinations of concentrations (not including combinations of ingredients) within claim 1 of the '083 patent. (JSOF Ex. 14 (Glacken Reply Report) ¶ 168 n.23.)

**RESPONSE:**  Defendants agree Dr. Glacken stated:

> To support my opinion that the inventors were not in possession of this broad genus claimed by merely disclosing a single embodiment, I have performed an exemplary calculation to illustrate how many species would be encompassed by the concentration ranges recited in claim 1. This calculation results in $1 \times 10^{29}$ distinctive media that would fall within this claim. I note that this calculation only represents a small fraction of the actual species claimed because I only considered three concentrations for each of the claimed ranges (e.g., minimum, maximum, MET 1.5), while there are clearly many more potential concentrations encompassed by each claimed concentration range for each of the 61 claimed ingredients. This value was obtained by calculating 3 to the power of 61.

Dkt. 221-6, Glacken Reply at ¶ 168 n.23.

43.     Taking just three concentrations within each range (high, middle, and low) in claim 1 of the '083 patent, there are $3^{61}$ (three possibilities for 61 ingredients, 3 to the 61st power, *i.e.*, "trillions and trillions and trillions") unique media within claim 1 of the '083 patent claim (and the hypothetical claim). (JSOF Ex. 14 (Glacken Reply Report) ¶ 168 n.23; JSOF Ex. 4 (Glacken Tr.) at 117:20-118:14.)

**RESPONSE:**  Defendants agree Dr. Glacken stated:

> To support my opinion that the inventors were not in possession of this broad genus claimed by merely disclosing a single embodiment, I have performed an exemplary calculation to illustrate how many species would be encompassed by the concentration ranges recited in claim 1. This calculation results in $1 \times 10^{29}$ distinctive media that would fall within this claim. I note that this calculation only represents a small fraction of the actual species claimed because I only considered three concentrations for each of the claimed ranges (e.g., minimum, maximum, MET 1.5), while there are clearly many more potential concentrations encompassed by each claimed concentration range for each of the 61 claimed ingredients. This value was obtained by calculating 3 to the power of 61.

Dkt. 221-6, Glacken Reply at ¶ 168 n.23. Defendants agree that there are trillions and trillions and trillions of media shared between GSK and the hypothetical claim.

44.     If a POSA were to conduct a media development project starting with a cell culture media formulation disclosed in terms of ingredients and concentration ranges, one

common way to do so would be to look to the preferred embodiment of the cell culture media. (JSOF Ex. 4 (Glacken Tr.) at 211:1-11.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  "[A]ll disclosures of the prior art, including unpreferred embodiments, must be considered."  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).   To the extent a response is required, incorrect as a mischaracterization and incomplete. Dr. Glacken testified a POSA would look at the extremes of the range as well. JSOF Ex. 4, Glacken Dep. at 211:1-11.


45.   Seventeen (17) of the preferred concentrations of the ingredients in the medium of Table 3 of the GSK reference fall outside the corresponding concentration ranges in the hypothetical claim.  (*Compare* JSOF Ex. 9 (GSK) at Table 3, *with*, Def. SOF, at App'x A.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.  "[A]ll disclosures of the prior art, including unpreferred embodiments, must be considered."  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).  To the extent a response is required, Defendants further object to this allegation as incomplete and misleading. GSK teaches a complete set of concentration ranges which overlap with every one of the concentration ranges in the hypothetical claim.  *E.g.* Dkt. 227 at 1-2. GSK also teaches a complete set of preferred concentration ranges which do not overlap for only 7 of the 52 required ingredients, but are otherwise close in range.  *Compare* Def. Ex. 18 (GSK) at Table 2, *with*, Mot. App'x A.  GSK also discloses a concentration labeled preferred, which do not overlap for 17 out of the 52 required ingredients, but are otherwise close

to the range.  Janssen has not shown how the ranges of the hypothetical claim are critical.

46.     Considering the concentrations of only those 17 ingredients, and using Dr. Glacken's approach of analyzing high, middle (*i.e.*, preferred), and low concentrations within each range, there are approximately 129 million unique combinations of concentrations (3 to the 17th power), only one of which would literally fall within the concentration ranges of the hypothetical claim.  (JSOF ¶ 45; *see* JSOF Ex. 14 (Glacken Reply Report) ¶ 168 n.23.)

**RESPONSE:**  Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   "[A]ll disclosures of the prior art, including unpreferred embodiments, must be considered."  *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).  Further, "Where a claimed range overlaps with a range disclosed in the prior art, there is a presumption of obviousness."  *Ormco Corp. v. Align Tech. Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).    To the extent a response is required, disputed as Janssen has not offered an expert opinion as to this calculation.

47.     Defendants have identified no reason why a person of ordinary skill in the art would have modified the preferred concentrations of all of the 17 ingredients in the medium of Table 3 of the GSK reference whose concentrations fall outside the corresponding range in the hypothetical claim to arrive at concentrations within the hypothetical claimed range.  (*See generally* Def. Br.; JSOF Ex. 15 (Glacken Opening Report); JSOF Ex. 14 (Glacken Reply Report).)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and

Reply Memorandum filed concurrently herewith.   Further, "all disclosures of the prior art, including unpreferred embodiments, must be considered." *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989).   Further, "Where a claimed range overlaps with a range disclosed in the prior art, there is a presumption of obviousness." *Ormco Corp. v. Align Tech. Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006).   Janssen therefore bears the burden of "rebutt[ing]" the presumption with a showing "that the prior art teaches away from the claimed range, or the claimed range produces new and unexpected results." *Ormco*, 463 F.3d at 1311.   To the extent a response is required, incorrect.   "The normal desire of scientists or artisans to improve upon what is already generally known provides the motivation to determine where in a disclosed set of" concentration "ranges is the optimum combination" of concentrations.   *See In re Peterson*, 315 F.3d 1325, 1330 (Fed. Cir. 2003).   Further disputed because Janssen has not shown how the ranges of the hypothetical claim are critical or achieve unexpected results.

48.     Twelve (12) of the preferred concentrations of the ingredients in the medium of Table 1 of the Life Techs reference fall outside the corresponding concentration ranges in the hypothetical claim. (*Compare* JSOF Ex. 17 (Life Techs) at Table 1, *with*, Def. SOF, at App'x B.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.   *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   For example, GSK and Life Techs both already disclose obvious variations on the cell culture media claimed in the '083 patent.   *E.g.* Dkt. 221-4, Glacken Op. at ¶¶ 234-249, 250-260; Dkt. 221-5, Glacken Reb. at ¶¶ 101-107, 108-112; Dkt. 227; *see also* Response to Nos. 1 and 2 *supra*.   To the extent a response is required, incorrect. First, this allegation is misleading because Life Techs teaches a complete set of

concentration ranges, which overlap with every one of the concentration ranges in the hypothetical claim with the exception of one compound (and the law recognized a close but non-overlapping range supports obviousness). *E.g.* Dkt. 227 at 20, 29. █████████████

████████████████████████████████████████

██████████████████████████ (*Compare* Def. Ex. 7 (Butler Reb.) at Table 4, *with*, Def. SOF, at App'x B.)[1]  Janssen has not shown how the ranges of the hypothetical claim are critical.

49.     Ferric ammonium citrate ("FAC") is a transferrin replacement that supplies chelated iron.  (JSOF Ex. 3 (Butler Rebuttal Report) ¶ 81.)

**RESPONSE:**  Undisputed.

50.     Neither the GSK nor the Life Techs media uses FAC as the chelated iron source; GSK uses a stock solution of ferric fructose, and Life Techs uses ferric citrate. (JSOF Ex. 3 (Butler Rebuttal Report) ¶ 117, 141; JSOF Ex. 9 (GSK) at Table 3; JSOF Ex. 17 (Life Techs) at Table 1.)

**RESPONSE:**  Undisputed that neither GSK does not expressly disclose FAC as the chelated iron.  However, disputed as to Life Techs, which discloses "ferric citrate chelate," which a "POSA would have understood… to refer to a ferric citrate chelate (a class that includes

---

[1]     ███████████████████████████████████████████████████████████████
        2 of those differences are eliminated under the hypothetical claim: (1) $Na_2HPO_4$, disclosed as 300 mg/liter, within the hypothetical range of 30-374.15 (CGM) and 30-432.64 (CPM), and (2) L-histidine•HCl•$H_2O$, disclosed as 68 mg/liter, within the hypothetical range of 13.52-500 (CGM) and 15.64-500 (CPM).

both the ingredients ferric citrate and ferric ammonium citrate) rather than just the specific ingredient commonly referred to in the art as simply 'ferric citrate.'" Dkt. 221-6, Glacken Reply. at ¶ 102. In any event, there is no dispute that ferric fructose, ferric citrate, and ferric ammonium citrate are all known transferrin replacements that supply chelated iron. *See* Response to No. 49; Dkt. 227 at 10.

51. Different forms of chelated iron have the potential to perform differently in cell culture. (JSOF Ex. 4 (Glacken Tr.) at 179:14-180:6; JSOF Ex. 3 (Butler Rebuttal Report) ¶¶ 83-88, 118-119.)

**RESPONSE:** Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith. Defendants further object to this allegation is misleading and incomplete. Different forms of chelated iron have the potential to perform differently with respect to specific cell lines. JSOF Ex. 4, Glacken Tr. at 179:14-180:6. However, all are capable of delivering iron to the cells in a cell culture media. *Id.* Janssen has not shown different forms of chelated iron would in fact perform differently for purposes of patentability.

52. Dr. Glacken testified that "most persons skilled in the art consider iron chelates as a separate sort of category from just straight iron." (JSOF Ex. 4 (Glacken Tr.) at 179:14-180:6.)

**RESPONSE:** Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition. *See* Dkt. 227 and Reply Memorandum filed concurrently herewith. Undisputed that the '083 Patent, GSK, and Life Techs all use iron chelates and that they can be considered in a separate category from

straight iron.

53.     The Keenan 1996 reference demonstrates that different forms of chelated iron promote cell growth to different extents. (JSOF Ex. 3 (Butler Rebuttal Report) ¶¶ 83-84; JSOF Ex. 7 (Keenan) at Figure 1.)

**RESPONSE:**   Defendants object to this allegation as immaterial to resolution of Defendants' motion, and as having no pertinence to Plaintiffs' opposition.  *See* Dkt. 227 and Reply Memorandum filed concurrently herewith.   Undisputed that Keenan demonstrated that different forms of chelated iron may promote cell growth to different extents for specific cell lines.  JSOF Ex. 4, Glacken Tr. at 179:14-180:6; JSOF Ex. 7 (Keenan) at Figure 1. However, all are capable of delivering iron to the cells in a cell culture media. *Id.*  Janssen has not shown different forms of chelated iron would in fact perform differently for purposes of patentability.

54.     The prior art teaches away from using FAC as a transferrin replacement. (JSOF Ex. 3 (Butler Rebuttal Report) ¶¶ 82-84.)

**RESPONSE:**   Disputed.   As an initial matter, Janssen misapprehends the law on teaching away, as discussed in the Reply Memorandum filed concurrently herewith.   Keenan does not teach away from using FAC as a transferrin replacement.  Moreover, it is undisputed that the prior art refers to ferric ammonium citrate is "preferred."  JSOF at Resp. to ¶ 47.

55.     Of the seven potential transferrin replacements studied in Keenan 1996 (including ferric ammonium citrate and ferric citrate), "only FAS, SNP, and Fe2SO4 appeared as suitable replacements for transferrin."   (JSOF Ex. 7 (Keenan) at 453; JSOF Ex. 3 (Butler Rebuttal Report) ¶¶ 83-84.)

**RESPONSE:**  Defendants object to this allegation to the extent meant to imply relevance to the "teaching away" doctrine.  Janssen misapprehends the law on teaching away, as discussed in the Reply Memorandum filed concurrently herewith.  Defendants further object to this allegation as misleading and incomplete.  Keenan stated "In summary, all the factors tested were able to exert a concentration-dependent, growth-promoting effect on MDCK cells in single-stage growth assays. These factors have been previously used as transferrin replacements with various degrees of success, being tested primarily on hybridoma and myeloma cell lines and most commonly in single-stage growth assays only."  Def. Ex. 23 (Keenan) at 453.  Keenan limited its statement about suitability to "in subculture experiments."  Similarly, subsequent prior art taught that ferric ammonium citrate was "preferred." Dkt. 227 at 22.

56.     Given the Keenan 1996 reference, "one would have been dissuaded from [adding FAC] in favor of other iron-containing transferrin replacements." (JSOF Ex. 3 (Butler Rebuttal Report) ¶ 89.)

**RESPONSE:**  Defendants object to this allegation as incorrect as a matter of law to the extent meant to imply applicability to the doctrine of "teaching away."  Janssen misapprehends the law on teaching away, as discussed in the Reply Memorandum filed concurrently herewith. Keenan stated "In summary, all the factors tested were able to exert a concentration-dependent, growth-promoting effect on MDCK cells in single-stage growth assays. These factors have been previously used as transferrin replacements with various degrees of success, being tested primarily on hybridoma and myeloma cell lines and most commonly in single-stage growth assays only."  Def. Ex. 23 (Keenan) at 453.  Similarly, subsequent prior art taught that ferric ammonium citrate was "preferred." Dkt. 227 at 22.

57.



58.



59.

60.

61. ███████████████████████████████████

████████████████████████████████████

█████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

62. ███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

████████████████████████████

63.     ████████████████████████████████

████████████████████████████████████

████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

64.     ████████████████████████████████

████████████████████████████████████

██████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

65.     ████████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████



66. ████████████████████████████████████████

████████████████████████████████████████████

████████

67. ██████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████



68.

69.



Dated: May 29, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/*Andrea L. Martin, Esq.*
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: 617-345-3000
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
Gregory B. Sanford (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com
gregory.sanford@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 879-5000
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare*
*Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## CERTIFICATE OF SERVICE

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 29, 2018.

/s/ *Andrea L. Martin, Esq.*
Andrea L. Martin, Esq.