IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., <br>        Plaintiff, <br><br>    v. <br><br> CELLTRION HEALTHCARE CO., LTD., <br> CELLTRION, INC., and <br> HOSPIRA, INC., <br>        Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 1:17-cv-11008-MLW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### JANSSEN'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF <u>NON-INFRINGEMENT BASED ON ENSNAREMENT</u>

Janssen submits this notice of supplemental authority to inform the Court about *UCB, Inc. v. Accord Healthcare, In*c., No. 2016-2610 (Fed. Cir. May 23, 2018) (attached as Exhibit A), which was decided after Janssen submitted its opposition (*see* Dkt. No. 259) to Defendants' motion for summary judgment of non-infringement based on ensnarement (*see* Dkt. No.226). *UCB* is relevant to that motion.

  One legal issue raised in connection with Defendants' motion is whether the Federal Circuit's "lead compound" framework for analyzing obviousness is applicable to the facts of this case. *See* Dkt. No. 306 (Defs' Reply Br.), at 4-9; Dkt. No. 259 (Janssen's Opp. Br.), at 15-18. Defendants contend that the closest prior art, without more, "is *necessarily* the starting point of the obviousness analysis under long-settled law," and that the lead compound line of cases "is relevant only to the very different field of chemical compounds, where chemists typically invent new compounds by first starting with a particular 'lead compound.'" Defs' Reply Br. 5-6 (emphasis in original). In fact, the Federal Circuit in *Unigene Labs., Inc. v. Apotex, Inc.*, 655

F.3d 1352 (Fed. Cir. 2011), has already applied that framework outside the chemical compound context, namely with respect to pharmaceutical formulations. *See id.* at 1361-62 (using the term "reference composition" instead of "lead compound").

In *UCB*, the Federal Circuit confirmed that the "lead compound" framework does not apply only to novel chemical compounds, but rather also applies to the purification of chemical compounds from known mixtures. In *UCB*, the patent claimed a purified enantiomer of lacosamide, an anti-epileptic drug. *Id.* (slip op. at 12-13). The relevant prior art disclosed numerous compounds, one of which (compound 107e) was a mixture of lacosamide and its mirror image compound (a so-called racemic mixture). *Id.* (slip op. at 14-15). The defendants claimed they had no obligation under the law of obviousness to identify a reason to start with the racemic mixture in particular. The district court rejected that analysis. Applying the lead compound framework, the court upheld the patent because a person of ordinary skill in the art would not have selected the racemate in the first place for purification. *Id.* (slip op. at 25).

On appeal, the defendants argued, just as Defendants do here, that the lead compound analysis "does not apply" except to the creation of novel chemical compounds and that there was no need for there to be a reason to start with the racemate. Brief for Appellants Alembic Pharm. Ltd. et al. at 48, *UCB, Inc. v. Accord Healthcare, Inc.*, No. 2016-2610 (Fed. Cir. Dec. 2, 2016), ECF No. 88. The Federal Circuit rejected the argument: "Appellants argue that the district court erred by using a lead compound analysis because this case merely involves purification (not structural modification) of a known compound. We disagree." *UCB* (slip op. at 25). The lead compound framework, according to *UCB*, is an acceptable method for analyzing the obviousness not only of novel chemical compounds based on structural similarity to a prior art compound, but also of purified compounds without structural modification. The Federal Circuit affirmed the

district court's conclusion that "a person of ordinary skill in the art would not have selected compound 107e as a lead compound." *Id.* (slip op. at 27).

The decision in *UCB* is notable not only for the Federal Circuit's continued expansion of the lead compound analysis but also for its recognition of when that form of analysis is not required – when (unlike this case) the inventing process does not itself start with such a compound: "A lead compound analysis is not required in analyzing obviousness of a chemical compound when, in the inventing process, there was no lead compound." *Id.* (slip op. at 26).

The upshot of *UCB* (and the cases on which it relies) is that the question whether to apply the lead compound test depends on the prevailing "inventing process" in a particular field. In the field of cell culture media, it is undisputed that the inventing process depends on the selection of a lead compound or composition. Ordinarily skilled artisans develop cell culture media by starting with the classical basal media or mixtures thereof, *i.e.*, a lead compound or composition. That is what Dr. Epstein (the first-named inventor on the '083 patent) did (Dkt. No. 260 (JSOF) ¶ 8), and that is what Defendants' expert Dr. Glacken has endorsed (JSOF ¶¶ 5-6; Janssen's Opp. Br. 15-17). Thus, on the undisputed the facts of this case, the lead compound framework is not only appropriate but a necessary consequence of the "inventing process" in the field of cell culture media.

This follows directly from the logic underlying the lead compound test itself. As Defendants describe the case law, the lead compound analysis "is relevant only . . . where chemists typically invent new compounds by first starting with a particular 'lead compound.'" Defs' Reply Br. 6. Here, cell culture media scientists "typically invent new [cell culture media] by first starting with a particular 'lead [media].'" Under *UCB*, then, "[a] lead compound analysis is . . . required in analyzing obviousness of a chemical compound when, in the inventing process,

there was [a] lead compound." *UCB* (slip op. at 26); *see Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1357 (Fed. Cir. 2007) (structural similarity is not enough; "it remains necessary to identify some reason that would have led a chemist to modify a known compound in a particular manner"); *Daiichi Sankyo Co. v. Matrix Labs.*, 619 F.3d 1346, 1354 (Fed. Cir. 2010) ("[I]t is the possession of promising useful properties in a lead compound that motivates a chemist to make structurally similar compounds"; "a motivation to select and then modify a lead compound to arrive at the claimed invention" is necessary to avoid "hindsight bias"); *see also Pfizer Inc. v. Teva Pharm. USA, Inc.*, 555 F. App'x 961, 970 (Fed. Cir. 2014) ("A patent challenger, however, must demonstrate the selection of a lead compound based on its 'promising useful properties,' not a hindsight-driven search for structurally similar compounds.") (quoting *Daiichi*, 619 F.3d at 1354).

Janssen respectfully requests that the Court consider *UCB* in connection with Defendants' fully-briefed ensnarement motion.

Respectfully submitted

Dated: June 1, 2018

*Of Counsel*:

Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Irena Royzman (admitted *pro hac vice*)
iroyzman@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
Andrew D. Cohen (admitted *pro hac vice*)
acohen@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
FAX: 212-336-2222

/s/ *Alison C. Casey*
Heather B. Repicky (BBO #663347)
hrepicky@nutter.com
Alison C. Casey (BBO #688253)
acasey@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

## CERTIFICATE OF SERVICE

I certify that on June 1, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and if not so registered, that copies will be electronically mailed to such parties or their counsel.

/s/ *Alison C. Casey*

3869679.1