**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.<br><br>       Plaintiff,<br><br>   v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.<br><br>       Defendants. | **Civil Action No. 1:17-cv-11008-MLW** |

**DEFENDANTS' MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 4**

I.      **INTRODUCTION**

Seeking to avoid valid criticism of its experts' shaky liability testimony, Janssen filed three motions *in limine* regarding the liability expert report of Dr. Michael Glacken. Motion *in limine* No. 4 argues that Defendants "should be barred from presenting evidence or argument regarding the public notice function of patents." Dkt. 266 (Br.) at 4. Janssen seeks to exclude Dr. Glacken's opinions in paragraphs 82–89 of his rebuttal report on this basis. Dkt. 266 (Br.) at 5.

The Court should deny Janssen's motion as unfounded and unsupported. Janssen makes sweeping arguments about Dr. Glacken's report, but it fails to quote or cite a single statement which it finds objectionable. In reality, paragraphs 82–89 of Dr. Glacken's report present well-founded scientific and contextual opinions explaining how a person of ordinary skill in the art ("POSA") would view the '083 patent. This is unquestionably relevant; "evidence of equivalence must be from the perspective of one of ordinary skill in the art." *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 2018 WL 1047155, at *16 (D.S.C. 2018). Moreover, Dr. Glacken's opinions directly respond to and debunk Janssen's unprecedented infringement theory and overbroad application of the doctrine of equivalents. For example, Dr. Butler and Dr. Wurm put forward Dr. Wurm's test as a proper measure of equivalence, and Dr. Glacken points out that Dr. Wurm "did not even conduct testing under the same conditions as described in the '083 patent." *See* Ex. 1 (Glacken Rebuttal Report) ¶ 87. Dr. Glacken's opinions, contrary to Janssen's assertion, are not a "policy critique" of the doctrine of equivalents.

On "public notice" more generally, Janssen offers no basis to exclude its discussion from trial. Public notice plays an important role with patents, allowing "[a] patent holder [to] know what he owns, and the public [to] know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730–31 (2002). While "public notice" does not preclude the doctrine of equivalents as a matter of law, neither does the doctrine of equivalents eliminate the "public

notice" function of patents. *Id.* The perspective of a POSA on the disclosure of the claims and specification are relevant to the proper application of the doctrine of equivalents.

## II. ARGUMENT

The Court should deny Janssen's motion. Dr. Glacken's so-called "public notice" opinions are not really about "public notice." Rather, they address fundamental issues which are of undisputed relevance, making their exclusion improper. Moreover, discussion of the "public notice" function of patents is proper, relevant, and non-prejudicial.

Dr. Glacken's opinions are first and foremost relevant to showing that Dr. Butler and Dr. Wurm employ the wrong method and analysis for determining "equivalence" to the '083 patent, and stretch the doctrine of equivalents beyond its breaking point. Janssen bears the burden to prove infringement under the doctrine of equivalence. Dr. Glacken's report explains that Dr. Butler and Dr. Wurm employed an inappropriate scientific analysis and performed irrelevant tests, and applied the wrong criteria to show equivalence. *See* Ex. 1 (Glacken Rebuttal Report) ¶¶ 84–88. There can be no dispute that these are proper subjects for Dr. Glacken's testimony.

For example, Dr. Glacken opines on how a POSA would view the '083 patent with respect to the doctrine of equivalents. *See* Ex. 1 (Glacken Rebuttal Report) ¶¶ 84, 85, 88. This is unquestionably relevant: "the case law is clear that evidence of equivalence must be from the perspective of one of ordinary skill in the art." *Precision Fabrics*, 2018 WL 1047155, at \*16; *see also Hilton Davis Chem. Co. v. Warner-Jenkinson Co., Inc.*, 62 F.3d 1512, 1519 (Fed. Cir. 1995) ("the vantage point of one of ordinary skill in the relevant art provides the perspective for assessing the substantiality of the differences" (citing *Valmont Indus., Inc. v. Reinke Mf'g Co., Inc.*, 983 F.2d 1039)) *overruled on other grounds* 520 U.S. 17 (1997). And Dr. Glacken should be allowed to explain how Janssen's theories, such as its contention that limitations in the '083 patent are "guidelines for estimation," Ex. 2 (1/30/18 Hr'g Tr.) at 82:20–83:3, fail to give notice to a POSA.

Similarly, Dr. Glacken criticizes Janssen's testing. For example, he notes Dr. Wurm did "not even conduct testing under the same conditions as described in the '083 patent." Ex. 1 (Glacken Rebuttal Report) ¶ 87. Dr. Glacken also criticizes Janssen's approach to equivalence because a POSA would "find it difficult to apply the doctrine of equivalents based on testing" because, for example, "additional ingredients not addressed in claim 1 could affect [the] test results," "claim 1 does not specify a publicly-available cell line to use for testing, and cell lines differ in their growth and productivity response to cell media formulations," and "testing for further equivalents would require undue experimentation, be expensive and time consuming, and ultimately still be subject to criticisms and disputes." Ex. 1 (Glacken Rebuttal Report) ¶ 88.

With a dozen or more limitations literally absent from the '083 patent, Dr. Glacken's testimony is clearly relevant to whether a POSA would agree that the right way to determine the "substantiality of differences" is that used by Janssen's experts (*i.e.*, giving no weight to the claimed concentration ranges and performing $1 million in testing). *See, e.g.*, Ex. 1 (Glacken Rebuttal Report) ¶¶ 84 (POSA would find it difficult to determine what is or is not covered by '083 patent), 85 (POSA would believe concentration ranges are important), 88 (POSA would find it difficult to apply the doctrine of equivalents based on Janssen's testing).

Janssen's motion discusses none of these issues, much less offers an argument for why they should be excluded. Instead, Janssen simply asserts that this "entire section of Dr. Glacken's report . . . opined that the infringement 'theory' advanced by Janssen's experts . . . would fail to provide a [POSA] a practical way to assess infringement." Dkt. 266 (Br.) at 4–5. This is an inaccurate generalization of these paragraphs in Dr. Glacken's report, as discussed above.

Even Janssen agrees that that Defendants can criticize Janssen's experts at trial and that Dr. Glacken has a "right to present [] at trial" his "criticisms" of Drs. Butler and Wurm. No. 15-

3

cv-10698 Dkt. 343 at 5. Dr. Glacken should be permitted to offer his valid and relevant criticism that Janssen's infringement theory leaves a POSA with no practical way to assess infringement.

The Court also should not exclude mention of "public notice" from the trial. It is undisputed that public notice is an important function of patents; patents "must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014) (citation and internal markings omitted). "This clarity is essential to promote progress, because it enables efficient investment in innovation. A patent holder should know what he owns, and the public should know what he does not." *Festo*, 535 U.S. at 730–31. And, contrary to Janssen's argument, "public notice" is not a "legal opinion"—it is about whether "the public understand[s] the language of both the claims and the written description" as "interpreted [by] one of ordinary skill in the art." *See, e.g.*, *PSC Comput. Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004). There is no "risk that the jury would decide the case based on an erroneous view of the law," Dkt. 266 (Br.) at 4, as the Court will instruct the jury on the proper legal standard. And Janssen cites **no case** precluding the mention of the "public notice" function of patents at trial.[1]

Indeed, public notice has significant relevance to, among other things, Dr. Glacken's opinion that the '083 patent does not satisfy 35 U.S.C. §112(a), which requires that the

---

[1] Janssen's motion cites *Festo*, *Warner-Jenkinson*, *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950) and *Winans v. Denmead*, 56 U.S. 330 (1854); none of these cases support Janssen's motion because Defendants are not arguing that "public notice" precludes the the doctrine of equivalents. Consequently, Janssen's citations to *Warner-Jenkinson* and *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009) regarding "legal limitations on the doctrine of equivalents," e.g., prosecution history estoppel or ensnarement, are irrelevant. *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314 (Fed. Cir. 2011), likewise says nothing about Dr. Glacken's opinions about how a POSA would view the doctrine of equivalents. Finally, *Kenney v. Head*, 670 F.3d 354, 359 (1st Cir. 2012), is off point because Dr. Glacken's testimony has significant probative value and no risk of confusion, unfair prejudice, or misleading the jury.

"specification shall contain a written description of the invention," which Janssen has not challenged *See* Ex. 3 (Glacken Opening Report on Invalidity) ¶¶ 268, 274. Public notice is at the heart of the written description requirement's purpose, i.e., "to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353–54 (Fed. Cir. 2010) (citation omitted). The written description requirement also "ensures that the public receives a meaningful disclosure in exchange for being excluded from practicing an invention for a period of time." *Id.* at 1354 (citation omitted). Certainly, Dr. Glacken should be permitted to explain how the public disclosure provided by the written description of the '083 patent does not support the claims.

Moreover, both the term and concept of "public notice" is routinely mentioned in jury trials. It is addressed in model jury instructions, such as those promulgated by the Federal Circuit Bar Association and by the Northern District of California, and the frequently-used patent overview video for jurors provided by the Federal Judicial Center. *See, e.g.*, Fed. Cir. Bar Ass'n, Model Pat. Jury Instruction A.1 What A Patent Is And How One Is Obtained ("When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries."); U.S. Dist. Ct. for the Northern District of California, Model Patent Jury Instructions A.1 What A Patent Is And How One Is Obtained (same); Federal Judicial Center, The Patent Process: An Overview for Jurors at 3:15, 8:20 (available at https://www.fjc.gov/publications/patent-process-overview-jurors). As such, Janssen has no basis to argue prejudice or exclude discussion of "public notice" here.

### III. CONCLUSION

The Court should deny Janssen MIL 4. Dr. Glacken's opinions provide legally and scientifically relevant criticisms of Drs. Butler and Wurm and further relate to his invalidity

5

opinions. Moreover, the "public notice" function of patents is well established and Janssen has no basis to argue for its exclusion here.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

**CERTIFICATE OF SERVICE**

      I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

      /s/Andrea L. Martin, Esq.
      Andrea L. Martin, Esq.