# EXHIBIT 2

```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


                                     )
 JANSSEN BIOTECH, INC.,               )
 and NEW YORK UNIVERSITY,             )
                                     )
         Plaintiffs,                  )
                                     )    Civil Action
 v.                                   )    No. 15-CV-10698-MLW
                                     )
 CELLTRION HEALTHCARE CO.,            )
 LTD, CELLTRION, INC., and            )
 HOSPIRA, INC.,                       )
                                     )
         Defendants.                  )
                                     )
```

BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE

HEARING
10:06 a.m.

January 30, 2018

John J. Moakley United States Courthouse
Courtroom No. 10
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
John J. Moakley United States Courthouse
One Courthouse Way, Room 5200
Boston, Massachusetts  02210
mortellite@gmail.com

1  A.   It's not sufficient to determine the plateau, but it is
2  sufficient to determine if those particular concentrations are
3  within the plateau or whether they fall outside the plateau.
4  Q.   I want to talk to you about that, but for now I just want
5  to make sure you and I are on the same page.
6       Two concentration experiments is not enough to determine
7  the width of the plateau for any one ingredient in the context
8  of this particular cell media and this particular cell, true?
9  A.   Yes, correct.
10 Q.   When we talk about this particular cell media, this is,
11 the length of the plateau can be specific to the kind of media
12 that's in question, right?
13 A.   There is some variation, but the principle is the same.
14 Otherwise -- Dr. Ham published this, remember, so in publishing
15 it, it becomes something which is applicable to many cells in
16 many media formulations.
17 Q.   But here we're talking about a particular media with 91
18 ingredients, right, 90 plus, right?
19 A.   In the Celltrion case, yes, yes.
20 Q.   Yes, that's what I'm talking about.  And a particular kind
21 of cell as well, correct?
22 A.   Yes.
23 Q.   Can we agree that Dr. Wurm did not run the kind of
24 experiments that are necessary to determine the length of the
25 plateau for each of the 12 or 13 ingredients we're here to talk

1  about?  Is that true?
2  A.     We can agree on that, but --
3  Q.     Thank you.
4  A.     -- that wasn't the objective of the experiment.
5         MR. HURST:  Can we put up Claim 1 of the '083 patent,
6  please.  I think we need to switch.
7  Q.     So there's 61 ingredients.  There's 52 individual required
8  ingredients, right?
9  A.     Correct.
10 Q.     And we can agree, I believe, that Claim 1 lists precise
11 concentrations for those 52 required ingredients, correct?
12 A.     Concentration ranges, yes.
13 Q.     Right. And Claim 1 indicates that the inventors were
14 defining concentration ranges with precise outer boundaries,
15 correct?
16 A.     Well, when you say "precise outer boundaries," as far as
17 I'm aware they didn't do precise experiments to determine those
18 boundaries.  I mean, they do say in the patent that there are
19 possibilities for variation.
20 Q.     A natural reading of the list of concentrations is that
21 the inventors were specifying precise concentrations when
22 defining the scope of their invention.  Is that true?
23 A.     I mean, they were, as far as I know, and I'm taking some
24 reference to Dr. Epstein, who is one of the inventors, these
25 were meant to be the guidelines for estimation of that plateau

```
 1  that we're talking about from Dr. Ham's work.  So they're not
 2  precise insofar as they don't define the thresholds of that
 3  plateau or the sweet spot.
 4  Q.   Let's take a look at your deposition if we can.  If you go
 5  to page 59, 21 through 68.  You and I spoke before in the
 6  context of a deposition, correct?
 7  A.   We did, yes.
 8  Q.   And during that deposition I asked you the same question
 9  that I just asked you right now.  Do you recall that?
10  A.   I don't recall it.
11  Q.   It will be up on the screen for you.  Page 59, 21 to 68.
12  Let me just blow it up so we can see it.
13           THE COURT:  Is this a page that's in the materials in
14  the briefs?
15           MR. HURST:  It is.
16           THE COURT:  So it's something that was given to me?
17           MR. HURST:  Would you like to see the transcript?
18           THE COURT:  If there's a physical copy --
19           MR. HURST:  Yeah, I can get you one.
20           THE COURT:  -- that I can keep and write on?
21           MR. HURST:  Sure.
22  BY MR. HURST:
23  Q.   Did I ask you --
24           THE COURT:  Hold on a second.  Let me get the
25  transcript.  I think I have it.  It was Exhibit 1 to what?
```

```
 1                  CERTIFICATE OF OFFICIAL REPORTER
 2
 3              I, Kelly Mortellite, Registered Merit Reporter
 4    and Certified Realtime Reporter, in and for the United States
 5    District Court for the District of Massachusetts, do hereby
 6    certify that pursuant to Section 753, Title 28, United States
 7    Code that the foregoing is a true and correct transcript of the
 8    stenographically reported proceedings held in the
 9    above-entitled matter and that the transcript page format is in
10    conformance with the regulations of the Judicial Conference of
11    the United States.
12                        Dated this 16th day of January, 2018.
13
14                        /s/ Kelly Mortellite
15                        _____
16                        Kelly Mortellite, RMR, CRR
17                        Official Court Reporter
18
19
20
21
22
23
24
25
```