# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC.<br><br>                     Plaintiff,<br><br>          v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.<br><br>                     Defendants. | **Civil Action No. 1:17-cv-11008-MLW**<br><br>**PUBLIC—**<br>**REDACTED VERSION** |

**DEFENDANTS' MEMORANDUM**
**IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* NO. 7**

**I.     INTRODUCTION**

In motion *in limine* no. 7, Janssen again tries to keep the jury from hearing about deficiencies in the liability opinions of Dr. Michael Butler and Dr. Florian Wurm. Janssen asks the Court to bar Defendants from "question[ing] Janssen's witnesses or offer[ing] argument regarding whether Janssen's 'theory' of the doctrine of equivalents would extend to some hypothetical medium not at issue in this case." Dkt. 266 (Br.) at 15. The Court should deny Janssen's motion. Contrary to Janssen's characterization, this motion is not about some "irrelevant hypothetical medium." Dkt. 266 (Br.) at 15. Rather, it goes directly to show that Dr. Butler's and Dr. Wurm's analysis fails to show infringement.

As Defendants have explained, Janssen's infringement arguments are unprecedented, alleging a twelve-way (or more) doctrine of equivalents theory against the accused GE HyClone cell culture media. The crux of Janssen's infringement case is expert testimony from Dr. Michael Butler and testing conducted by Dr. Florian Wurm. Janssen, Dr. Butler, and Dr. Wurm treat the limitations in the '083 patent as "guidelines for estimation," Ex. 1 (1/30/18 Hr'g Tr.) at 82:20–83:3, and their infringement analysis improperly dismisses differences between the accused GE HyClone media and the '083 patent.

Defendants seek to show the jury that Dr. Butler's and Dr. Wurm's analysis and testing are incapable of determining equivalence of a particular ingredient—*i.e.*, they can find anything "equivalent." This is shown, for example, by the specific question to which Janssen objects, in which Defendants asked Dr. Butler at the *Daubert* hearing in January 2018: "Q. Because there are some [ingredients] that you could remove entirely, and on the test that you did, density, viability and titer, you might not see a difference? A. Correct." *Id.*; Ex. 1 (1/30/18 Hr'g Tr.) at 194:3–6. The fact that Dr. Butler and Dr. Wurm may not see different results with an entire ingredient removed goes to their credibility and shows that their opinions and testing do not answer the correct

question. Defendants are unquestionably allowed to expose "any flaws in [Dr. Butler's and Dr. Wurm's] opinion[s] . . . through cross-examination." *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002). Janssen has no basis to exclude these questions.

## II.   ARGUMENT

Janssen has the burden of proving equivalence. *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015). It is beyond dispute that Defendants may attack the credibility and reliability of Dr. Butler and Dr. Wurm at trial and the "jury will ultimately decide" their credibility. Ex. 2 (1/31/18 Hr'g Tr.) at 87:11–12. As this Court held: "As the Supreme Court wrote in *Daubert*, vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the appropriate means of attacking shaky but admissible evidence," such as Dr. Butler's and Dr. Wurm's testing and opinions. Ex. 2 (1/31/18 Hr'g Tr.) at 96:21–25.

The scope and precision of Dr. Butler's and Dr. Wurm's tests and opinions clearly are relevant. Moreover, Janssen's experts put at issue the scope of what they consider equivalent beyond the accused GE HyClone media. Dr. Butler's opines, for example, that "any concentration of an ingredient" on a so-called "plateau" of "interchangeable concentrations" is equivalent because it "allow[s] the media to perform, to function in [a] particular way." Ex. 1 (1/30/18 Hr'g Tr.) at 44:10–16.

Cross-examination regarding such issues helps show that the jury should reject Dr. Butler's and Dr. Wurm's opinions because they are not "an objective inquiry on an element-by-element basis," but rather they evaluate the medium as a whole. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997); *see also AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328 (Fed. Cir. 2007) ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice."). As Dr. Butler admitted at

his deposition, ███████████████████████████████████████████████

███████████████████████████████████ Ex. 3 (12/14/16 Butler Dep Tr.) at 151:7–16.

If Dr. Butler's and Dr. Wurm's test was unreliable, their conclusions likewise are unreliable. Defendants' questions probe this very issue. Whether Dr. Wurm's testing can detect removed ingredients, Ex. 1 (1/30/18 Hr'g Tr.) at 194:3–6, directly bears on whether it is reliable—if it can't detect removal of entire ingredients, it lacks the precision to identify differences. This issue is particularly critical because Dr. Butler relies on Dr. Wurm's testing and his own analysis to paper over massive concentration differences between the accused GE HyClone media and the claims of the '083 patent. And as the Court recognized "[t]he fact that Dr. Butler may have applied a legally erroneous standard . . . to a hypothetical medium testifying at his deposition may diminish Dr. Butler's credibility at trial." Ex. 2 (1/31/18 Hr'g Tr.) at 89:23−90:1.

Janssen is trying to spare its experts from addressing the fundamental unreliability of their testing, opinions, and analysis by mischaracterizing this issue as concerning "[w]hether other hypothetical media . . . would or would not be scientifically equivalent." Dkt. 266 (Br.) at 16. These questions are not "hypotheticals" about equivalence, rather they plumb Dr. Butler's analysis and Dr. Wurm's testing to demonstrate what they can detect about ingredient concentration differences. They are *directly* relevant to Dr. Butler's and Dr. Wurm's "actual opinion[s]"—whether they are doing the right scientific test and analysis to show equivalence and whether they are credible.[1] And Janssen has conceded that Defendants "are free to present their criticisms of Dr.

---

[1] Janssen's motion suggests that Dr. Wurm will opine at trial "that the concentration difference between the '083 patent's ranges and the [GE HyClone] Media do not make a substantial difference." Br. at 17. Janssen has already conceded that "Dr. Wurm's trial testimony . . . will not include a formal DOE analysis." 15cv10698 Dkt. 380 at 11.

3

Wurm's methodology to the jury," and of course, Dr. Butler's as well. No. 15-cv-10698 Dkt 380 at 2.

Janssen's motion offers no substantive reason to exclude these critical issues. While Janssen argues these issues would be "highly confusing" to the jury, it cites no cases that preclude questioning an expert on their methodology. In *Toucet v. Maritime Overseas Corp.*, the First Circuit **affirmed** a hypothetical question that the plaintiff asked its own expert. 991 F.2d 5, 10 (1st Cir. 1993). *Larue v. Nat'l Union Elec. Corp.*, dealt with an expert who offered an **opinion conditioned on** an assumed fact which was unsupported. 571 F.2d 51, 58 (1st Cir. 1978). The questions Janssen wants to exclude are not "hypotheticals" in this sense—they are not hypotheticals based on assumed facts. Rather, the questions test and show the flaws in Dr. Butler's and Dr. Wurm's approach and methodology. Such questioning is unquestionably permissible and relevant.

Likewise, Janssen's suggestion that "[t]he 'extreme outer ranges' of what would be considered equivalent are irrelevant," is nonsensical. Janssen does not bother to explain the basis of its argument or cite authority for such a position. And it is plainly false. The scope of what Drs. Butler and Dr. Wurm assert is equivalent bears on the credibility of their opinion regarding the GE HyClone accused media. For example, the breadth of Dr. Butler's and Dr. Wurm's theory is relevant to whether they're applying the right scientific analysis and whether their opinions on equivalence are credible.

Further, the one statement from this Court Janssen cites regarding Dr. Butler's deposition testimony provides Janssen no support. In the very next sentence this Court recognized the possible relevance of the very questioning Janssen seeks to exclude: "[t]he fact that Dr. Butler may have applied a legally erroneous standard . . . to a hypothetical medium testifying at his deposition may

4

diminish Dr. Butler's credibility at trial." Ex. 2 (1/31/18 Hr'g Tr.) at 89:23−90:1. Thus, rather than exclusion, the Court's comments indicate these questions are admissible.

Finally, Janssen suggests these questions will "confuse the jury about how to apply the doctrine of equivalents." Dkt. 266 (Br.) at 15. Janssen does not even try to argue the Rule 403 standard, nor could it do so successfully. ███████████████████████████████████ ███████████████████████████████████ Ex. 4 (Wurm Dep. Tr.) at 109:11–110:7; Ex. 3 (12/14/16 Butler Dep. Tr.) at 72:24-73:6. Janssen cannot credibly argue that questions regarding "scientific[] equivalen[ce]" are not highly probative. Dkt. 266 (Br.) at 15. And Defendants are entitled to cross examine Dr. Butler and Dr. Wurm to show both the scientific flaws in their opinions and the mismatch between those opinions and the legal standard. The jury will be instructed on the law and will decide, based on that, whether Janssen has carried its burden of infringement. Janssen's argument gives the jury far too little credit. Given that the issue is not confusing and its probative value is high, there is no basis for its exclusion.

### III.   CONCLUSION

Janssen has no valid basis to exclude Defendants' criticisms of Drs. Butler and Wurm from trial. The material Janssen attacks relates directly to the scientific and legal validity of their opinions. As such, the Court should deny Janssen's motion.

5

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## CERTIFICATE OF SERVICE

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

/s/Andrea L. Martin, Esq.
Andrea L. Martin, Esq.