# EXHIBIT 2

```
                     UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MASSACHUSETTS


                                      )
  JANSSEN BIOTECH, INC.,               )
  and NEW YORK UNIVERSITY,             )
                                      )
          Plaintiffs,                  )
                                      )        Civil Action
  v.                                   )        No. 15-CV-10698-MLW
                                      )
  CELLTRION HEALTHCARE CO.,            )
  LTD, CELLTRION, INC., and            )
  HOSPIRA, INC.,                       )
                                      )
          Defendants.                  )
                                      )



                BEFORE THE HONORABLE MARK L. WOLF
                   UNITED STATES DISTRICT JUDGE


                              HEARING

                        January 31, 2018
                          10:10 a.m.



              John J. Moakley United States Courthouse
                        Courtroom No. 10
                       One Courthouse Way
                  Boston, Massachusetts  02210




                   Kelly Mortellite, RMR, CRR
                     Official Court Reporter
              John J. Moakley United States Courthouse
                   One Courthouse Way, Room 5200
                    Boston, Massachusetts  02210
                       mortellite@gmail.com
```

```
 1    the same way to accomplish substantially the same result, as
 2    the Federal Circuit said in Brilliant Instruments, 707 F. 3d at
 3    1348-49.
 4            In determining whether an accused element falls within
 5    a permissible range of equivalents, the court considers the
 6    totality of the circumstances and distinguishes between a
 7    subtle difference in degree and a clear substantial difference
 8    in kind.  Even when a claim sets precise numerical
 9    concentration limits on its ingredients, an out-of-range
10    concentration may be deemed equivalent if it performs
11    substantially the same chemical function in substantially the
12    same way with substantially the same contribution to the
13    composition's performance despite the concentration difference.
14            For example, in Abbott Labs, 287 F. 3d at 1107,
15    concentration of 68 percent to 90.7 percent of an ingredient
16    was found equivalent to a concentration of 94.5 percent because
17    it performed the same chemical function, producing an equally
18    effective drug product.  This is true as long as two
19    requirements are satisfied.  First, the out-of-range
20    concentration does not function contrary to the expressed
21    language of the specification, which was the situation in my
22    Amazin' Raisin case decided by the Federal Circuit where they
23    found that an item of fruit with a moisture content between 87
24    and 90 percent -- that to find that an item of fruit with a
25    moisture content between 87 to 90 percent is insubstantially
```

1   different from an item of dried fruit with a moisture content
2   between 10 and 18 percent as claimed in the patent would defy
3   reason and necessarily render the dry fruit limitation
4   meaningless.  Second, the specification or prosecution history
5   must not indicate that the precise range is critical to the
6   invention.  That's discussed in Conopco, 46 F. 3d 1556 at 1561.
7          For the reasons that I will describe, Janssen's
8   experts, Dr. Butler and Dr. Wurm, have the required
9   element-by-element particularized credible testimony necessary
10  to show infringement under the doctrine of equivalents.  And I
11  mean credible for the purposes of deciding admissibility.  The
12  jury will ultimately decide credibility.  Therefore the
13  testimony is relevant to the pertinent inquiry and will be
14  helpful to the jury.  I find that plaintiff's experts' relevant
15  conclusions reliably follow from the facts known to the experts
16  and the methodology used.
17         As I said earlier, Dr. Butler and Dr. Wurm are each
18  scientists rather than professional witnesses.  They've
19  testified about matters relating to their research over many
20  decades, and this is circumstantial.  And they credibly
21  testified that they did in this case what they would have done
22  if the same questions were presented in the context of a
23  scientific inquiry, not in the context of litigation.  These
24  are circumstantial indicia of reliability, but I've analyzed
25  the issue much more closely.

1            Dr. Butler addresses each ingredient in the claimed
2   composition, explains the function he believes it plays in the
3   claim concentration range.  He also opines that based on his
4   knowledge of the literature and extensive experience working in
5   the field of cell culture media, he would expect each
6   ingredient to perform substantially the same function in
7   substantially the same way in the HyClone powders.  For each
8   claimed ingredient he explains that the function of the
9   corresponding concentration is to provide an amount of the
10  ingredient sufficient to provide its particular metabolic
11  benefit or nutrient for cell growth and antibody production but
12  low enough to avoid adverse effects, such as toxicity to cells
13  or excessive osmolality when combined with other ingredients.
14           This is admissible particularized evidence of the
15  concentration's intended functions because where, as here, the
16  patent specification is silent on the desired function of each
17  ingredient, a person ordinarily skilled in the art like Dr.
18  Butler may testify what such a person ordinarily skilled in the
19  art would understand them to be, as discussed in <u>Intendis</u> at
20  1362.  Even though Dr. Butler could not identify the upper or
21  lower limits for equivalence of any given concentration, he
22  credibly testified that such limits exist and that the accused
23  concentrations are within them.  His testimony therefore does
24  not render the claimed concentrations meaningless; or to put it
25  differently, none of the claims are vitiated.

1          Cases consistent with this conclusion are Abbott Labs,
2    287 F. 3d at 1107 and Forest Labs at pages 1309 and 1312.
3    Yesterday Dr. Butler gave relevant testimony on this point.
4    It's in the draft transcript at pages 153 to 54 and reflected
5    on plaintiff's slide 29 today.  Accordingly, Dr. Butler did
6    not, defendants argue, rely on an erroneous understanding of
7    equivalents that assumes that the claimed accused products are
8    insubstantially different just because their overall
9    performance is the same.
10          Defendants point out that in their depositions Doctors
11   Butler and Wurm both testified that any concentration could
12   work and that ingredients could even be removed if Dr. Wurm's
13   experiments showed that the whole sample medium worked the same
14   for producing cells and antibodies.  A medium that removed a
15   claimed ingredient entirely, at least without an
16   interchangeable substitute, would vitiate the limitation.  The
17   Federal Circuit discussed this in Mylan, 857 F. 3d at 869.
18   However, defense counsel's hypothetical questions asked Dr.
19   Butler to ignore in his deposition his immediately prior
20   testimony that he expected each ingredient to be important and
21   that he thought that removing an ingredient would affect the
22   test results.  That's in his deposition at pages 99 and 106.
23          The fact that Dr. Butler may have applied a legally
24   erroneous standard for equivalence, a scientific standard, not
25   a legal standard, to a hypothetical medium testifying at his

1  deposition may diminish Dr. Butler's credibility at trial.
2  However, it does not alter the conclusion that Dr. Butler
3  applied a legally correct concentration-by-concentration
4  analysis to the facts of this case.
5      Therefore, Dr. Butler's testimony, if reliable, has a
6  connection to the pertinent inquiry because it provides the
7  particularized testimony and linking argument necessary to
8  prove infringement by equivalents.
9      I do find it reliable.  As indicated earlier, Dr.
10 Butler first concludes based on his experience and general
11 knowledge of the pertinent literature that the ingredients,
12 each of the ingredients is likely to function similarly in the
13 accused concentration.  Dr. Butler's knowledge and experience,
14 as he has testified, is extensive and is some indicia of the
15 reliability of his views.  As indicated earlier, Professor
16 Salzberg indicates that judges should be reluctant to exclude
17 the testimony of qualified experts or at least careful about
18 doing it.  I of course would do it if I found the requirements
19 for admissibility weren't met, but I've scrutinized them and
20 find they are met.
21     Second, Dr. Butler grounds his conclusions in reliable
22 academic literature.  In his reply report, Dr. Butler wrote
23 that, "The view that trace element concentration differences of
24 less than an order of magnitude are likely to be insubstantial
25 is reflected in some of my published work," and he cites his

1    chapter on Serum and Protein-Free Media in Animal Cell Culture,
2    Cell Engineering, a book, learned treatise.  That Dr. Butler
3    testifies based on research he's conducted independent of
4    litigation provides some valuable objective proof that his
5    testimony comports with the dictates of good science, since,
6    among other things, experts whose findings flow from existing
7    research are less likely to have been biased toward a
8    particular conclusion by the promise of remuneration.  Such
9    research is conducted so to speak in the usual course of
10   business and must normally satisfy a variety of standards to
11   attract funding and institutional support, as written in the
12   <u>Daubert</u> decision on remand, 43 F. 3d at 1317.
13            At the hearing yesterday Dr. Butler explained that his
14   research referenced the work of Dr. Richard Ham, which Dr. Wurm
15   also described as a classic publication.  He also cited another
16   article he published in 1992 concerning concentrations of
17   phosphate salts that performed a desired function in media.
18   Though the experiments referenced in the publication were not
19   performed on the particular media compositions at issue, Dr.
20   Wurm testified that scientists routinely extrapolate from the
21   plateaus determined in experiments on other media with other
22   cell lines to estimate whether a concentration will work in
23   another composition.  Therefore, these references provide a
24   reliable basis for his conclusion that the concentration
25   differences many times larger than the differences between the

1     patentee, for example.  However, an expert may compare the
2     accused product with an embodiment that meets all of the claim
3     limitations as long as he focuses on the functions and means
4     contemplated by the specification and can prove that the
5     accused elements perform them.  That was discussed by the
6     Federal Circuit in Adams Respiratory, 616 F. 3d 1283 at 1289.
7     This is what Dr. Wurm did.  Claim 1, as I have previously
8     construed it, is a comprising claim, meaning that any powder
9     containing the claimed ingredients may infringe even if others
10    are added.  The claim construction can be found in the August
11    17, 2016 transcript at pages 105 to 115.
12           Dr. Wurm's so-called all-changes variant literally
13    infringes the patent.  Moreover, the 29 added ingredients are
14    either present in the Celltrion medium or described in the
15    patent specification as necessary for culturing the cell type
16    Dr. Wurm used for his test.
17           Defendants also argue that the added ingredients may
18    have skewed the results.  All of the additional ingredients
19    were in the same concentration in every sample tested.
20    However, defendants argue that some ingredients may have
21    performed the functions of the claimed ingredients and masked
22    deficiencies in an accused concentration's performance.  A
23    reliable method must reliably control for alternative
24    explanations for its underlying data, as Judge Becker wrote in
25    Paoli, at 760.  However, Doctors Wurm and Butler need not

1  exclude with certainty every possible alternative for their
2  results, as also discussed by Judge Becker in <u>Heller</u>, 156 F. 3d
3  at 156.  Each is required to give only a reliable explanation
4  for why such alternative explanations do not change their
5  opinion.
6        While Dr. Wurm could have performed more tests to
7  control for the influence of the added ingredients, he and Dr.
8  Butler gave a persuasive explanation for why the tests done
9  remain scientifically sound and methodologically reliable.
10 They rely in part on Ham's classic generally accepted
11 experiments, which included some undefined ingredients.  The
12 added ingredients, I find, therefore, affect the weight but not
13 the admissibility of their conclusions, a point made in
14 <u>Ruiz-Troche</u>, 161 F. 3d at 85, where the First Circuit held that
15 the possibility that unaccounted for variables influence the
16 expert's analysis affected weight, not admissibility, when
17 other <u>Daubert</u> factors are satisfied.  A similar conclusion was
18 reached in <u>Phillips</u>, 238 Federal Appendix at 542.
19       By itself, an expert's failure to account for every
20 alternative cause will usually affect the analysis'
21 probativeness, not its admissibility.  As the Supreme Court
22 wrote in <u>Daubert</u>, vigorous cross-examination, presentation of
23 contrary evidence and careful instruction on the burden of
24 proof are the appropriate means of attacking shaky but
25 admissible evidence.

1             Finally, I note that neither the prosecution history
2    nor the specification indicate that the precise concentration
3    ranges claimed in the patent are critical or that they are
4    inconsistent with the plaintiff's contentions.  I also note
5    that Dr. Glacken opined only that the additional 29 ingredients
6    used in the test media may render an ingredient in Claim 1
7    unnecessary.  He did not state that it does or likely does, and
8    that sounds somewhat similar to Dr. Butler and Dr. Wurm saying
9    hypothetically -- certainly Dr. Butler saying hypothetically
10   it's possible that eliminating an ingredient in a concentration
11   in the '083 could have shown no effect, but that's not what he
12   said.  He testified that's not what he expected based on his
13   experience.
14            Nobody argued this, and this isn't material to my
15   analysis, but it is I think something of a commonsense
16   consideration.  If these ingredients in the concentrations in
17   the HyClone powder were not substantially similar and not
18   important to producing cells, I would think the defendants
19   would take them out.  If they're not doing anything or doing
20   anything important in these concentrations, why have this
21   extensive, expensive litigation?  Just take them out and then
22   there's no argument about infringement and none of these
23   fascinating questions.
24            I think I should correct -- although it has nothing to
25   do with the decision I just rendered, but I'm looking at Dr.

```
1                    CERTIFICATE OF OFFICIAL REPORTER
2
3            I, Kelly Mortellite, Registered Merit Reporter
4     and Certified Realtime Reporter, in and for the United States
5     District Court for the District of Massachusetts, do hereby
6     certify that pursuant to Section 753, Title 28, United States
7     Code that the foregoing is a true and correct transcript of the
8     stenographically reported proceedings held in the
9     above-entitled matter and that the transcript page format is in
10    conformance with the regulations of the Judicial Conference of
11    the United States.
12                        Dated this 12th day of February, 2018.
13
14                        /s/ Kelly Mortellite
15                        _____
16                        Kelly Mortellite, RMR, CRR
17                        Official Court Reporter
18
19
20
21
22
23
24
25
```