IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC.<br><br>                        Plaintiff,<br><br>     v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.<br><br>                       Defendants. | **Civil Action No. 1:17-cv-11008-MLW**<br><br>REQUEST FOR ORAL ARGUMENT<br><br>**PUBLIC -**<br>**REDACTED VERSION** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE* NO. 9**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................. 1

II. **Janssen Fundamentally Misunderstands the Hypothetical Negotiation, and Janssen Cannot Obtain a "Reasonable Royalty" Beyond the Value of the '083 Patent** .................................................................................................................. 4

    A. The Hypothetical Negotiation Seeks to Value the Invention ................................. 5

    B. Janssen Concedes Dr. Nicholson Values "Hold Up" ............................................. 6

    C. Dr. Leonard Correctly Focuses on the Value of the Alleged Invention, Whereas Janssen Incorrectly Argues that "Hold Up" Can Only Be Considered with Certain Technologies ................................................................. 9

III. **Janssen's Remaining Arguments Are Issues for Cross Examination** ......................... 11

IV. **The Term "Hold Up" is Not Pejorative** ........................................................................ 12

V. **Conclusion** ................................................................................................................. 14

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Astrazeneca AB v. Apotex Corp.*,
  985 F. Supp. 2d 452 (S.D.N.Y. 2013), *aff'd in part, rev'd in part*, 782 F.3d
  1324 (Fed. Cir. 2015)..................................................................................................11

*Aviva Sports v. Fingerhut Direct Mktg., Inc.*,
  829 F. Supp. 2d 802 (D. Minn. 2011).............................................................................2

*Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)............................................................................. *passim*

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
  No. 6:11-CV-00201-JRG, 2017 WL 2773944 (E.D. Tex. May 26, 2017) ...............13

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014)..........................................................................5, 9, 10

*Fromson v. W. Litho Plate & Supply Co.*,
  853 F.2d 1568 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse
  Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir.
  2004) .............................................................................................................................5, 6

*Fujifilm Corp. v. Benun*,
  605 F.3d 1366 (Fed. Cir. 2010).......................................................................................6

*Garretson v. Clark*,
  111 U.S. 120 (1884).....................................................................................................3, 9

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970)..............................................................................10

*Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*,
  446 F.2d 295 (2d Cir. 1971)............................................................................................8

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
  No. 4:14-CV-371, 2017 WL 4038884 (E.D. Tex. Sept. 13, 2017).............................6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012).......................................................................................5, 9

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press &
  Shear Div.*,
  895 F.2d 1403 (Fed. Cir. 1990).......................................................................................8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F. 3d 1301 (Fed. Cir. 2009) ..................................................................................2, 5

*Nordock Inc. v. Sys. Inc.*,
   No. 11-C-118, 2013 WL 989864 (E.D. Wis. Mar. 13, 2013) ..........................................5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   No. C 09-5235 MMC, 2014 WL 4437631 (N.D. Cal. Sept. 9, 2014), 2014 WL
   6859521 (N.D. Cal. Nov. 25, 2014) ...............................................................................7

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) .........................................................................................5

*Tektronix, Inc. v. United States*,
   552 F.2d 343 (Ct. Cl.), *opinion modified on denial of reh'g*, 557 F.2d 265 (Ct.
   Cl. 1977) .........................................................................................................................5

*United States v. Mooney*,
   315 F.3d 54 (1st Cir. 2002) ...........................................................................................12

*WesternGeco LLC v. ION Geophysical Corp.*,
   791 F.3d 1340 (Fed. Cir. 2015) .......................................................................................8

*Zegers v. Zegers, Inc.*,
   458 F.2d 726 (7th Cir. 1972) ...........................................................................................8

**Rules**

Fed. R. Evid. 403 ..........................................................................................................4, 12

## I. INTRODUCTION

Janssen seeks to exclude evidence and argument that Janssen's "reasonable royalty" is based on "hold up" value, rather than the value of the patented invention. Janssen does not deny that it seeks to *obtain* "hold up" value. Instead, it makes the incredible claim that a reasonable royalty *must* include such value, or at least that Defendants should not be able point out the fact that Janssen's proposed royalty includes "hold up" value. But Janssen's motion is premised on a fundamental misunderstanding of the "hypothetical negotiation"—the legal construct Defendants used and Janssen claims to have used for determining "reasonable royalty" damages. Its motion should be denied.

As Janssen's expert, Dr. Sean Nicholson, agrees, "hold up value" is:

█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

That type of "hold up" value is exactly what the so-called reasonable royalty from Janssen's expert is based on.

█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

1

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████

According to Janssen, it is entitled to recover this "hold up" value because "[a] patent holder may choose to license its invention on any terms it wishes, or not to license the patent at all." Dkt. 267 at 7. For this reason, Janssen asserts it can seek a "reasonable" royalty that exceeds the entire *revenue* of the products accused of infringing the '083 patent. But while Janssen may never have licensed its patent to Defendants in the real world, that is irrelevant to the hypothetical negotiation, which requires a "willing licensor-willing licensee" framework. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1324 (Fed. Cir. 2009). In fact, Janssen's theory values delay, or "hold up," exclusively, not any value associated with the '083 patent. Janssen's theory violates reasonable royalty law, which seeks "to measure *the value of the patented invention*." *Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1305 (Fed. Cir. 2015) ("*CSIRO*") (emphasis added). Defendants' expert is entitled to point these deficiencies out at trial. *See Aviva Sports v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011) ("It is the proper role of rebuttal experts to critique plaintiff['s] expert[s'] methodologies and point out potential flaws in the plaintiff's experts' reports.").

Janssen concedes, as it must, that the Federal Circuit has held that "hold up" value should be excluded from a reasonable royalty, although Janssen argues that it only applies where the patentee has committed to licensing a standard essential patent ("SEP") on reasonable and non-

2

discriminatory ("RAND") terms. Dkt. 267 at 8-9. But the Federal Circuit has explicitly rejected Janssen's argument: "[R]easonable royalties for SEPs generally—and ***not only those subject to a RAND commitment***—must not include any value flowing to the patent from the standard's adoption." *CSIRO*, 809 F.3d at 1305 (emphasis added). In other words, the patentee cannot claim the value associated with the adoption of an industry "standard" (which allows for interoperability), because that value is not based on the patent.

Janssen provides no valid rationale for removing "hold up" value from some reasonable royalty awards, but not others. The concept of excluding "hold up" value from reasonable royalties, described as a "special apportionment issue," is to "ensure that the royalty award is based on ***the incremental value that the patented invention adds to the product***." *CSIRO*, 809 F.3d at 1304 (emphasis added). And apportionment applies not just to standards essential patents, but to "every case." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). The fact that Janssen would like to capture "hold up" value through hypothetical "bargaining positions" does nothing to satisfy these requirements, and it certainly does not provide a basis for excluding Defendants' evidence.

Janssen also cites to Dr. Leonard's nearly decade-old academic articles, which recognize the issue of hold up as a ***problem***, as somehow suggesting that the law ***mandates*** the inclusion of hold-up value in a reasonable royalty. Nonsense. Dr. Leonard stated that where the accused infringer had begun development work prior to the patent issuing, a ***problem*** exists because a reasonable royalty "***may*** incorporate 'lock-in value' in addition to the inherent value of the technology." Dkt. 265-4 at 4. Dr. Leonard by no means stated that the law requires that lock-in or hold up ***must*** be included. In any event, to the extent Janssen believes Dr. Leonard has said something inconsistent in this case, the proper route is cross-examination, not exclusion.

3

As a last ditch effort, Janssen argues that the term "hold up" itself is pejorative, conjuring up images of cops and robbers. Defendants believe a jury is wise enough to understand the economic concept of "hold up" as valuing delay, rather than the patented technology itself. Indeed, delay is the *first* definition in both of Janssen's cited dictionaries. Defendants have no intent to call Janssen an "armed robber," and Dr. Leonard's discussion of the economic concept of "hold up," which both experts understand and discussed, is relevant to explaining Janssen's damages model. Any minimal prejudice that may be associated with the term "hold up" is not unfair and certainly does not "substantially outweigh[]" its probative value. Fed. R. Evid. 403.

None of Janssen's arguments support excluding evidence or argument regarding the nature of Dr. Nicholson's so-called reasonable royalty as valuing hold up (or lock in), rather than the incremental value of the patented invention. The fact that Janssen's expert disagrees with Defendants' expert is not a reason to exclude evidence. Janssen's motion must be denied.

II.  **JANSSEN FUNDAMENTALLY MISUNDERSTANDS THE HYPOTHETICAL NEGOTIATION, AND JANSSEN CANNOT OBTAIN A "REASONABLE ROYALTY" BEYOND THE VALUE OF THE '083 PATENT**

Janssen argues that within the construct of a hypothetical negotiation for determining a reasonable royalty, "[a] patent holder may choose to license its invention on any terms it wishes, or not to license the patent all." Dkt. 267 at 7. Janssen also argues that in such a damages analysis "[i]t is settled law that…a patentee is entitled to obtain the best price it can negotiate for use of its invention and that may mean the prospective licensee has no other choice but to acquiesce to the patentee's terms." *Id*. Neither of these propositions are correct. The hypothetical negotiation requires a willing licensor and willing licensee, an agreement must be reached that reflects the value of the invention, and Janssen cannot withhold a license. As its motion makes plain, Janssen seeks value beyond the invention, which is improper, and Dr. Leonard should be permitted to make that criticism at trial.

4

A.     **The Hypothetical Negotiation Seeks to Value the Invention**

"[A] reasonable royalty calculation under § 284 attempts to measure the value of the patented invention." *CSIRO*, 809 F.3d at 1305. As one court aptly put it, the "essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (the reasonable royalty reflects "the economic value of the patented technology in the marketplace."). Indeed, a reasonable royalty must be "carefully tie[d]… to the claimed invention's footprint in the market place," because "evidence unrelated to the claimed invention… punishes beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).

One way to determine a reasonable royalty is through the use of the so-called "hypothetical negotiation" or "willing licensor-willing licensee" approach. *Lucent*, 580 F.3d at 1324. "[T]he basic question posed in a hypothetical negotiation is: if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?" *LaserDynamics*, 694 F.3d at 76. The hypothetical negotiation analysis by definition requires "fantasy because it requires a court to imagine what warring parties would have agreed to as willing negotiators." *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988), *overruled on other grounds by Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004). That Janssen would have, in reality, "never been willing to grant … defendants a license" is "irrelevant." *Tektronix, Inc. v. United States*, 552 F.2d 343, 349 (Ct. Cl.), *opinion modified on denial of reh'g*, 557 F.2d 265 (Ct. Cl. 1977); *Nordock Inc. v. Sys. Inc.*, No. 11-C-118, 2013 WL 989864, at *8 (E.D. Wis. Mar. 13, 2013) (excluding reasonably royalty opinion of expert who opined that patentee "*would*

5

*never have been willing* to license its patents.") (emphasis original). Further, unlike a real negotiation, the hypothetical negotiation "permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *Fromson*, 853 F.2d at 1575.

### B.  Janssen Concedes Dr. Nicholson Values "Hold Up"

As Janssen's motion and Dr. Nicholson's analysis makes clear, Janssen seeks to recover "the investment that Defendants had made in developing the [accused] cell media and their biosimilar" and purely values "hold up" or delay, not the patented invention. Dkt. 267 at 7.

Dr. Nicholson's reasonable royalty opinion is based on the assumption that, absent the alleged infringement, ███████████████████████████████████████████████████

Janssen attempts to justify its position by arguing that capturing "hold up" value simply reflects Janssen's "bargaining position" and can be considered in the hypothetical negotiation. Dkt. 267 at 7-8. Yet Janssen does not cite a single case where economic hold-up due to delay was considered as part of an accused infringer's "bargaining position" in the hypothetical negotiation. *See Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010) ("[S]trong bargaining position based on (1) defendants' entire business depending on a Fuji license; (2) Customs excluding infringing LFFPs; and (3) defendants' demonstrated inability to segregate infringing LFFPs from non-infringing LFFPs."); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-

6

CV-371, 2017 WL 4038884, at *2 (E.D. Tex. Sept. 13, 2017) (granting ongoing royalty based on **post-judgment** hypothetical negotiation and explaining that patentee would have stronger bargaining position due to increased commercial success of patented technology); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C 09-5235 MMC, 2014 WL 4437631, at *3 (N.D. Cal. Sept. 9, 2014), on reconsideration in part, 2014 WL 6859521 (N.D. Cal. Nov. 25, 2014) (noting without discussion "that Power Integrations would have been in an exceptionally strong bargaining position at the time of the hypothetical negotiation"). Defendants have moved to exclude Dr. Nicholson's legally flawed theory, *see* Dkt. 240, but even if Janssen is permitted to present its theory at trial, none of its cases **prohibit Defendants** from presenting evidence or argument that Janssen is trying to recover value not properly attributable to the '083 patent.

As Dr. Leonard points out, Dr. Nicholson's analysis does not value the patented invention, and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As Dr. Leonard will explain at trial, Dr. Nicholson's analysis simply reflects ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Had Celltrion known of the pending issuance of the '083 patent in October 2008, it could have avoided any costs of switching to a different media as no work would have needed to be repeated. *Id*. Consequently, there would also be no delay, as development work had not been started at that point.

Any value associated with avoiding sunk costs incurred between the start of Celltrion's media work and the issuance of the '083 patent in October 2009 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7

████████████████ The lack of a connection between the royalty Janssen seeks and the value of the '083 patent is confirmed by Janssen's own experts. ████████████████

████████████████

████████████████

████████████████

████████████████

████████████████

████████████████

████████████████

Indeed, ████████████████

████████████████

████████████████ This demonstrates that Janssen seeks a "reasonable royalty" for the accused cell culture media beyond the value of the '083 patent. Courts routinely reject such unreasonable royalties. *See WesternGeco LLC v. ION Geophysical Corp.*, 791 F.3d 1340, 1353 (Fed. Cir. 2015) (affirming the exclusion of a "reasonable royalty" that was revenue eliminating); *see also Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1408 (Fed. Cir. 1990) ("opinion that [accused infringer] 'would agree to pay a royalty in excess of what it expected to make in profit' was, in light of all the evidence in this case, absurd."); *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 299 (2d Cir. 1971) (royalty which "gobbles up all of [accused infringer's] expected profit" was improper); *Zegers v. Zegers, Inc.*, 458 F.2d 726, 729 n.8 (7th Cir. 1972) ("It would, of course, be most unlikely that a licensee would be willing to pay 100% of his profits to the patentee in exchange for a license.").

### C. Dr. Leonard Correctly Focuses on the Value of the Alleged Invention, Whereas Janssen Incorrectly Argues that "Hold Up" Can Only Be Considered with Certain Technologies

Dr. Leonard's criticisms of Dr. Nicholson are perfectly consistent with the law of reasonable royalties, as he focuses on the value of the patented invention, rather than some other value. Indeed, the Federal Circuit has specifically addressed the problem of "hold up" in the context of standard essential patents: "[p]atent hold-up exists when the holder of a [standard essential patent] demands excessive royalties *after companies are locked into using a standard*." *Ericsson*, 773 F.3d at 1209. As the Federal Circuit has explained, "the value of the technology— is distinct from any value that artificially accrues to the patent due to the standard's adoption." *CSIRO*, 809 F.3d at 1305.

The point of this "special apportionment issue" is that the "the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology" or value "from all of the unpatented features reflected in the standard." *Id*. at 1304. The Federal Circuit concluded that apportionment was "necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product." *Id*. That reasoning applies with equal force here. Dr. Nicholson's royalty is based on Celltrion allegedly being locked in to using the accused media, which is analogous to being locked in to using a standard. It is also consistent with the Supreme Court mandate that a patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features."[1] *Garretson*, 111 U.S. at 121.

---

[1] As explained in Defendants' co-pending motion to exclude the opinions of Dr. Nicholson, Janssen failed to apportion its reasonable royalty. Dkt. 240 at 19-20. Rather than basing his royalty on the "smallest salable patent-practicing unit," as is "generally required," Dr. Nicholson used Inflectra® as the basis for his royalty. *LaserDynamics*, 694 F.3d at 67. He should have used the accused cell culture media, not the downstream drug, Inflectra®.

9

Awarding Janssen damages related to Celltrion choosing a media prior to the issuance of the '083 patent would award Janssen value unrelated to the patented technology itself.

Janssen concedes that "Federal Circuit cases recogniz[e] [the hold-up] concept," but argues that those cases are limited to the "situation where a patentee committed to licensing a 'standard essential patent' … **on 'reasonable and non-discriminatory'… terms**." Dkt. 267 at 8-9. According to Janssen, "in the absence of [a RAND] commitment, the law would permit the patentee to use any leverage it has when negotiating a license -- including … hold-up value." *Id*. at 9. But the Federal Circuit has already rejected Janssen's argument: "[R]easonable royalties for SEPs generally—and **not only those subject to a RAND commitment**—must not include any value flowing to the patent from the standard's adoption." *CSIRO*, 809 F.3d at 1305 (emphasis added). Likewise, the fact that the Federal Circuit has addressed "hold-up" or "lock in" in cases dealing with standard essential patents does not limit that economic concept to such cases. Instead, as the Federal Circuit has explained, the necessity to apportion out "hold up" value flows from the purpose of a reasonable royalty: it "attempts to measure the value of the patented invention." *Id*.

This concept of separating out value not attributable to the patented invention has long been accepted in determining reasonable royalties. For example, the *Georgia-Pacific* analysis—a technique applied by both Dr. Nicholson and Dr. Leonard—also "allude[s] to apportionment concepts." *Ericsson*, 773 F.3d at 1228 n.5. Factor 13 asks what "portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Dr. Leonard's hold up criticisms of Dr. Nicholson's analysis fit squarely within this framework,

and there is no valid reason why the jury should be permitted to hear Dr. Nicholson's analysis of these factors, while simultaneously excluding Dr. Leonard's analysis *of the same factors*.

Janssen cites *Astrazeneca AB v. Apotex Corp.*, 985 F. Supp. 2d 452 (S.D.N.Y. 2013), *aff'd in part, rev'd in part*, 782 F.3d 1324 (Fed. Cir. 2015) to argue that "hold up" is limited to standard essential patents. Dkt. 267 at 9. But *Astrazeneca* is inapposite, in addition to not being binding. Apotex argued that non-infringing alternatives should have been assessed as of the year 2000, when it filed its ANDA, as opposed to 2003, when it launched its ANDA product. *Astrazeneca*, 985 F. Supp. 2d at 500-1. According to Apotex, this would avoid improperly including any "hold-up" value in the reasonable royalty. *Id*. at 500. The court rejected this argument, noting that the parties had stipulated to a 2003 hypothetical negotiation. *Id*. Moreover, *Astrazeneca* was not a case in which the accused infringer had sunk costs into a product prior to when the patent issued. In fact, Apotex had started development of its ANDA product in 1996, at which time it was *aware* of the patents at issue. *Id*. at 481-82. Thus, the concerns underpinning "hold up" value were simply not present in *Astrazeneca*. In any event, the opinion in *Astrazeneca* is the result of a bench trial where the judge clearly considered the issue of "hold up"—it does not support Janssen's request to exclude these issues from trial. *Id*. at 459-60

### III.   JANSSEN'S REMAINING ARGUMENTS ARE ISSUES FOR CROSS EXAMINATION

Janssen makes much of a nearly decade-old article written by Dr. Leonard. Dkt. 267 at 9-10. In that article, Dr. Leonard pointed out an economic problem with some damages models. Specifically, Dr. Leonard recognized that a "defendant may have incorporated the technology of the patent-in-suit before the patent actually issued." Dkt. 265-4 at 4. In such a case, "the defendant's choice to incorporate the technology was noninfringing at the time the decision was made." *Id*. Dr. Leonard explained that when the hypothetical negotiation takes place after patent

11

issuance, but the defendant invested before that time, a reasonable royalty "may incorporate 'lock-in value' in addition to the inherent value of the technology." *Id*. And while Dr. Leonard stated that "current law mandates" a date of hypothetical negotiation after patent issuance, Janssen twists Dr. Leonard's recognition of this problem into an admission that "hold up" is proper to consider in a reasonable royalty. It is not. As explained above, value beyond the patented invention should not be included in a reasonable royalty. *See supra* at § II. Indeed, just a few years **after** Dr. Leonard's article, the Federal Circuit explicitly recognized the problem of "hold up" and mandated that such value be apportioned out of the reasonable royalty at issue. *CSIRO*, 809 F.3d at 1304.

In any event, setting aside the fact that an article from an expert cannot change the requirements of damages law, Dr. Leonard certainly never suggested that "hold up" or "lock in" ***must*** be included in a reasonable royalty. Instead, he explained that "an analysis of the value of the patented technology that is based on sound business and economic principles will give the 'right' answer" for a reasonable royalty. Dkt. 265-4 at 3; *see also* Dkt. 265-5 at 18 ("an economic analysis based on the specific facts of the case will provide the greatest flexibility in identifying the true economic value of a patent"). And that is exactly what Dr. Leonard did in this case. To the extent Janssen is arguing that Dr. Leonard's prior articles are somehow inconsistent with his opinions in this case, it can certainly cross examine him on that subject, but it is not a basis to exclude his opinions. *See United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) ("any flaws in [expert's] opinion may be exposed through cross-examination or competing expert testimony").

## IV.   THE TERM "HOLD UP" IS NOT PEJORATIVE

Janssen also argues that the term "hold up" is pejorative and prejudicial. Dkt. 267 at 6. Defendants disagree. As a preliminary matter, under Federal Rule of Evidence 403, "relevant evidence" may only be excluded "if its probative value is ***substantially*** outweighed by a danger of … ***unfair*** prejudice." Fed. R. Evid. 403. As Janssen concedes, Dr. Nicholson's royalty reflects

12

hold up value. Dkt. 267 at 6-8. To point out this economic fact to the jury is not unfairly prejudicial to Janssen, while excluding it would be prejudicial to Defendants. Further, the value captured by Dr. Nicholson's analysis is relevant to whether his reasonable royalty accurately reflects "the value of the patented invention," which is the precise question the jury will have to answer should it reach the issue of damages. *CSIRO*, 809 F.3d at 1305.

Janssen relies on a single case and two dictionary definitions to argue that the term "hold up" is prejudicial. Dkt. 267 at 6. Viewing Janssen's cropped quotations from the dictionaries (which Janssen did not bother to attach), one might come to the conclusion that "hold up" refers only to armed robbers. Yet while Janssen quotes the ***second*** definition as referring to a gunpoint robbery, Janssen ignores that the ***first*** definition of "hold up" is "delay." *See* Ex. 5, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1983) at 575 (defining "hold up" as "delay, impede"); Ex. 6, THE AMERICAN HERITAGE DICTIONARY (SECOND COLLEGE EDITION) (1982) at 616 (defining "hold up" as "a delay; interruption"). Indeed, "delay" is exactly what Dr. Leonard is referring to when he uses the words "hold up":

[redacted] The single case Janssen cites contains no analysis, merely a laundry list of terms that could not be used to describe a non-practicing entity. *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 2773944, at *1 (E.D. Tex. May 26, 2017) (prohibiting terms like "shell," "sham," "conspirator," or "patent troll" and the terms "paper patent," "stick up," "hold up," "shakedown," or "litigation lottery").

While it is telling that Janssen is concerned with being thought of as a patent troll—indeed it does not practice the '083 patent—the jury is unlikely to think of a robbery at gunpoint during

13

testimony about costs in biosimilar development. Defendants certainly have no intention of calling Janssen an "armed robber," and Dr. Leonard's explanation of the economic concept of "hold up" is relevant to critiquing Janssen's damages model. Janssen's motion should be denied.

## V. CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny Janssen's motion *in limine* to exclude evidence or argument related to hold up or lock in.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## **CERTIFICATE OF SERVICE**

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

/s/Andrea L. Martin, Esq.
Andrea L. Martin, Esq.