IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Civil Action No. 1:17-cv-11008-MLW<br>CELLTRION HEALTHCARE CO., LTD., )<br>CELLTRION, INC., and )<br>HOSPIRA, INC., )<br>Defendants. )<br>) | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE REBECCA BETENSKY, Ph.D.**

**I.      INTRODUCTION**

There is one reason, and one reason only, why Defendants wish to call a biostatistician as a witness in this case.  Having failed to find a cell media scientist who believes there are "substantial differences" between the '083 patent and the accused media, Defendants wish to have a biostatistician testify that there are nonetheless "statistically significant differences."  While all the experts agree that this is ***not*** the analysis under the doctrine of equivalents and that only one of skill in the art—not a statistician—can determine whether a difference is substantial, Defendants apparently wish to confuse the jury with these two scientific sounding terms.  Aha, there are statistically significant differences!  Of course, they must be substantial!  The Court should not permit this.

In opposing Janssen's motion to exclude the testimony of Dr. Betensky, Defendants make clear that her testimony will result solely in confusion to the jury and needless expenditure of trial time with, at best, minimal probative value.  Defendants do not dispute that Dr. Betensky did not, and is not qualified to, give an opinion regarding the substantiality of the differences between the Celltrion media and the '083 patent.  As both Janssen and Defendants' experts agree, only a person of skill in the art of cell culture media can make that determination.  Meanwhile, Defendants' non-infringement expert, Dr. Glacken does ***not*** opine that the differences are in fact substantial.  Rather, his testimony will be limited to arguing that Drs. Butler and Wurm have not proved by a preponderance of the evidence that the differences are insubstantial.  Dr. Betensky's opinions have nothing to do with Dr. Glacken's opinions.  Dr. Glacken does not rely on or even reference Dr. Betensky's opinions.  Allowing Dr. Betensky to testify regarding a statistical analysis that she concedes cannot show substantial differences, and on which Defendants' infringement expert does not rely, will confuse, not clarify, the issues.

It is useful to begin by clarifying what is not at issue in this motion.  Dr. Betensky does not have an opinion about the substantiality of the differences between the '083 patent and the Celltrion media.  *See* Betensky Rebuttal Report, Dkt. 241, Ex. B, ¶ 71 (concluding only that Dr. Butler's statistical analysis did not support Janssen's allegations regarding statistical proof and that there are some statistically significant differences).  Furthermore, Dr. Betensky does not even have any independent statistical analysis to present to the jury.  She did not perform her own, independent statistical analysis of the data generated by Dr. Wurm and analyzed by Dr. Butler—which was itself just a backup to Dr. Butler's independent opinions on the substantiality of the differences.  She merely critiqued the statistical methodology employed and explained— but did not conduct—what she considered would have been better statistical tests.  Most importantly, she did not conclude that the few statistically significant differences (which were identified by Dr. Butler, not Dr. Betensky) amount to substantial differences.  To the contrary, she agreed that "experts in that field" are "best able to make a determination whether or not a particular . . . difference is meaningful."  Betensky Dep. Tr., Dkt. 241, Ex. C, at 95:13–22.[1]  And she agreed that "statistically significant differences in performance" are not automatic "defen[ses] against the doctrine of equivalents."  *Id*. at 94:16–24.  As Dr. Butler's analysis showed and Janssen's expert Dr. Lavin confirmed, that there are only a small handful of statistically significant differences, well within the zone of what Dr. Betensky calls "false positive error."

---

[1] Janssen's expert Dr. Lavin likewise agreed that such a determination was "beyond my scope."  Lavin Dep. Tr., Dkt. 241, Ex. E, at 22:24−23:3.  *See also* Lavin Reply Report, Dkt. 241, Ex. D, ¶ 46−48

Betensky Rebuttal Report, Dkt. 241, Ex. B., ¶ 28.[2]  Her testimony is marginal evidence in the extreme.

Meanwhile, Defendants' infringement expert, Dr. Glacken, did not rely on Dr. Betensky's analysis or anything in her report for his opinions that Janssen has failed to prove that the differences are insubstantial.  Dr. Glacken notes *Dr. Butler's* calculation of a few statistically significant differences—which do not alter Dr. Butler's opinion that the differences are insubstantial and which do not cause Dr. Glacken to conclude otherwise.   Dr. Glacken does not even reference Dr. Betensky's analysis or critiques of Dr. Butler's methodology.  He also does not opine that the few statistically significant differences found by Dr. Butler are substantial as a matter of science. *See* Glacken Dep. Tr., Dkt. 241, Ex. F, at 189:7−15.[3]  Indeed, except for his criticisms of Dr. Wurm's test design, Dr. Glacken will have very little to say at trial.  2/2/18 H'g Tr., Dkt. 180, at 32:3–4 ("[THE COURT]: He can't give an opinion that there are substantial differences.").

With that in mind, it is unsurprising that Defendants' statement of the factual background largely consists of rehashing the argument the Court rejected at the *Daubert* hearing instead of explaining what opinions Dr. Betensky has and their relevance to the case. Dkt. 302 (Def. Br.) at 3–4.  Defendants again attempt to argue that Dr. Butler's analysis relies solely on Dr. Wurm's experiments for his conclusion that the differences are insubstantial.  *Id.*  But, as this Court found

---

[2] Dr. Lavin testified that the handful of statistically significant results were "far fewer than chance alone would have suggested." Lavin Dep. Tr., Dkt. 241, Ex. E, at 25:12−15.

[3] Defendants contend that Dr. Glacken's response was unduly truncated, but the full response they quote supports Janssen's argument even further, as Dr. Glacken's testimony that he was not "looking for statistically significant results," Glacken Dep. Tr., Dkt. 241, Ex. F, at 189:22, suggests that statistical significance played no part in his opinion that Janssen failed to prove infringement.

3

at the conclusion of the *Daubert* hearings, "Dr. Butler addresses each ingredient in the claimed composition, explains the function he believes it plays in the claim concentration range. He also opines that based on his knowledge of the literature and extensive experience working in the field of cell culture media, he would expect each ingredient to perform substantially the same function in substantially the same way in the HyClone powders." 1/31/18 H'g Tr., Dkt. 178, at 88:1–7. The Court went on to explain that "Dr. Butler, **in addition** to relying on his knowledge and experience in forming an opinion . . . relied on Dr. Wurm's tests essentially to challenge and ultimately confirm, as he expected, his original hypothesis." *Id.* at 92:11–15 (emphasis added).

What we are left with is a critique from someone not of skill in the relevant art regarding a statistical analysis (1) which shows only a handful of differences; (2) which was performed by Janssen's experts and used only as a backup; (3) which Dr. Betensky did not perform or attempt to re-compute in a supposedly "correct" manner; and (4) which all experts agree is not determinative of the ultimate question in the case.

## II. ARGUMENT

### A. The Difference Between Statistical Significance and Practical Importance is Well Known

It is well known and understood in science that statistical significance and practical significance or importance are entirely different concepts. Statistical significance is a measure of whether a difference is real. Practical significance or importance is an assessment of whether the difference matters. For example, after taking multiple extremely careful measurements, two apples can be proved to be exactly .001 grams different in weight to a statistical certainty. That may be a difference that is real, but most persons would consider it a difference of no

importance, a difference that would never be noticeable to anyone. *See*, *e.g.*, *Jones v. City of Bos.*, 752 F.3d 38, 49 (1st Cir. 2014) (explaining that "not all statistically significant results are practically significant, meaning practically meaningful or important") (internal quotation marks omitted); Federal Judicial Center, *Reference Manual on Scientific Evidence* 252 (3d ed. 2011) ("When practical significance is lacking—when the size of a disparity is negligible—there is no reason to worry about statistical significance.").

Recognizing that these are different ideas, FDA considers a generic drug to be clinically equivalent to a branded one if statistical tests prove that its bioavailability in the blood is 80–125% of bioavailability of the branded drug. FDA, *Guidance for Industry: Statistical Approaches to Establishing Bioequivalence* 2 (Jan. 2001), *available at* https://www.fda.gov/downloads/drugs/guidances/ucm070244.pdf. That is, even a "real" difference as large as 80–125% is not perceptible in assessing the efficacy of two drugs; they are equivalent. Similarly, courts have recognized that "[d]ata can be statistically significant without being clinically meaningful." *Abbott Lab. v. Mead Johnson & Co.*, 1991 U.S. Dist. LEXIS 21010, at *61 (S.D. Ind. Oct. 10, 1991), *vacated on other grounds* 971 F.2d 6 (Fed. Cir. 1992); *see also In re PTC Therapeutics, Inc., Secs. Litig.*, 2017 U.S. Dist. LEXIS 137930, at *34 (D.N.J. Aug. 28, 2017) (same).

That describes the role of statistics in this case. Dr. Butler addressed whether the differences between the components in the accused media and the '083 patent are substantial— whether they have "practical significance" to a cell media scientist—and used statistics only as a backup analysis. *See Jones*, 752 F.3d at 49. Dr. Betensky, without conducting any statistical analysis of her own, opined that Dr. Butler's backup analysis was not a proper way to identify

5

whether there are *statistically* significant differences between the accused media and the '083 patent.  But practical significance and statistical significance are completely different from each other, and the doctrine of equivalents analysis cares only about the former.  This is a circumstance "[w]hen practical significance is lacking—when the size of a disparity is negligible—[and so] there is no reason to worry about statistical significance."  Federal Judicial Center, *Reference Manual on Scientific Evidence* 252 (3d ed. 2011).

### B. Dr. Betensky's Opinions Have Little Or No Nexus to Any Dispute at Issue in the Case

The testimony that Defendants intend to elicit from Dr. Betensky is untethered to infringement, the only possible issue in the case to which it might be relevant.  Dr. Betensky conceded that she is not a person of skill in the art of cell culture media and that only persons of skill in the art are competent to discuss whether a particular concentration difference is substantial.  Betensky Dep. Tr., Dkt. 241, Ex. C, at 65:2−8, 95:13–22.  Thus, she may not testify on issues of "noninfringement or invalidity."  *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008).  It is "contradictory to Rule 702 to allow a witness to testify on [non-infringement] who is not qualified as a technical expert" in the relevant art.  *Id.*

Defendants argue that she may still be allowed to testify because her "opinions point out the flaws in Dr. Wurm's testing and Dr. Butler's analysis from the perspective of a biostatistician."  Def. Br. at 6–7.  That might have justified admission of her opinions had Dr. Glacken, who is a person of skill in the art and will testify about non-infringement, relied on her opinions in forming his own about whether Drs. Butler and Wurm have shown the differences to be substantial.  But he did not.  In fact, he disclaimed interest in the subject altogether.  As

Defendants' point out, Dr. Glacken conceded that he was not "looking for statistically significant results." Glacken Dep. Tr., Dkt. 241, Ex. F., at 189:15-23. To the extent Dr. Glacken mentioned statistics at all, he referred to Dr. Butler's conclusions, not Dr. Betensky's. Indeed, Dr. Glacken has disclosed no opinions at all about Dr. Betensky's report. While a biostatistician's perspective might have been relevant if there were some evidence of a link between biostatistics and the ultimate question of non-infringement, there is no evidence of that connection here.

It is true that Dr. Butler considered statistics as a small part of his overall analysis, but that was not essential or even important. He makes judgments every day about the equivalence of different cell media with no statistics at all. Butler Reply Infringement Report, No. 15-cv-10698, Dkt. 380, Ex. 2 ¶ 99 ("Indeed, in the field of cell culture media, making observations directly from graphical representations of the raw data is typical, and conclusions are often reached based on graphical representations of the raw data or simple means without performing any statistical analysis."). That is because, when the differences are of no practical consequence, as Dr. Butler concluded, statistics are immaterial. In our motion, we proposed ignoring the subject altogether as it has no substantial bearing on any issue in the case. But even if the Court permits examination of Dr. Butler on this subject, nothing can validate the legitimacy of Dr. Betensky as witness. She would offer nothing more than an irrelevant critique of Dr. Butler's statistical methodology without any independent statistical analysis or reanalysis of her own, or any link to the Defendants' non-infringement arguments. Because Dr. Betensky's proffered opinions would be untethered to any analysis of infringement in this case, the law bars her from presenting them. *See Sundance*, 550 F.3d at 1363.

The case cited by Defendants, *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360 (Fed. Cir. 2010), is not to the contrary.  There, the challenged expert was not an expert in the design of the product at issue, deep fryers, but he had relevant technical expertise in certain polymers that were components of the product.  *Id.* at 1373.  Expertise in polymers was important to "selecting a material . . . that would be resistant to the hot pan."  *Id.*  Thus, while the challenged expert was not qualified to discuss the product as a whole, his testimony was relevant to a key component of that product and therefore bore on infringement.  *Id.*

In contrast, Dr. Betensky's expertise is completely unrelated to cell culture media or any relevant component or subfield relating to the production of cell culture media.  Her testimony is entirely predicated on the statistical analysis presented by Dr. Butler as a backup to his infringement opinions and it makes a completely irrelevant point about Dr. Butler's analysis (*i.e.*, that it is not properly suited to assess statistical significance).  The Federal Circuit in *SEB* distinguished *Sundance* by pointing to the expert's "relevant technical expertise" and the adequacy of the "relationship between his experience and the *claimed invention.*"  *Id*. (emphasis added).  Here, Dr. Betensky has no such relevant technical expertise and there is no relationship at all between her experience and either the invention claimed in the '083 patent or the accused media.

### C.     Any Minimal Probative Value that Dr. Betensky's Value Has is Substantially Outweighed by the Risk of Confusion and Wasted Time

Given that Dr. Betensky is not testifying regarding non-infringement and Defendant's non-infringement expert does not rely on her testimony, the only possible use of her testimony is to critique the results of Dr. Wurm's experiments and Dr. Butler's reliance on them.  Any minimal probative value that her critiques might have is outweighed by the potential for

8

confusion and waste of time that will result if she testifies.  If Defendants call Dr. Betensky to present her critiques of the statistical methods used by Dr. Butler, Janssen will necessarily call its statistics expert, Dr. Lavin, to rebut her testimony.  Unlike Dr. Betensky, who conducted no analysis other than to qualitatively critique Dr. Butler's methodology, Dr. Lavin actually did the statistical tests that Dr. Betensky suggested.   Dr. Lavin's analysis shows results that are little different from Dr. Butler's analysis.  Dr. Butler has considered all of these tests and they do not affect the conclusion.  The differences between the '083 patent and the accused media are of no practical consequence and so statistics are immaterial.  But the testimony of Dr. Betensky and Dr. Lavin will consume significant trial time while two statisticians have an extended back-and-forth regarding the appropriateness of a statistical analysis that is not integral to Dr. Butler's opinions on infringement or the reliability of Dr. Wurm's experiments and that no cell culture media scientist from either side links in any way to the question of infringement.

Defendants contend that the evidence would go to "core issues at the heart of Dr. Butler's doctrine of equivalents opinion, including the design of Dr. Wurm's experiment, and Dr. Butler's credibility." Def. Br. at 12.  But Dr. Betensky's opinions bear at best a tangential relationship to these issues, and Defendants' will have sufficient opportunity to test Dr. Wurm's experiment and Dr. Butler's credibility through cross-examination and Dr. Glacken's testimony.  The cases relied on by Defendants indicate that the opportunity for cross-examination is sufficient to test the proffering expert's testimony.  *See Straub v. Simmons Co.*, No. 91-cv- 2854, 1992 U.S. Dist. LEXIS 10298, at *12–13 (E.D. Pa. July 17, 1992) (holding that defendant should be permitted to cross plaintiff's expert on standard relied on in his report); *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1155 (N.D. Ohio 2013) (explaining the scope of cross-

9

examination of witnesses). Indeed, Defendants' *Daubert* motion to exclude Drs. Wurm and Butler, which extensively critiques Dr. Wurm's experiments and Dr. Butler's analysis, does not even reference Dr. Betensky or statistical analysis. Nor did they cross-examine Drs. Wurm or Butler on Dr. Betensky's critiques at the *Daubert* hearing. Thus, Dr. Betnsky's and Lavin's testimony would be a quintessential "mini-trial about a side issue." *United States v. George*, 761 F.3d 42, 57 (1st Cir. 2014).

Meanwhile, the opportunity for significant and unfairly prejudicial jury confusion is considerable. Few lay persons can readily tell the difference between "substantial differences" (or "not insubstantial differences") and "statistically significant differences" —except perhaps to incorrectly think that the latter sounds more scientific. That confusion is the heart of the matter. Of course, as Defendants point out, this "case will involve many technical terms which the jurors may learn for the first time during trial, including terms which sound similar." Def. Br. at 13. But it is one thing when the terms are necessary and another when they have little or no probative value and an undue capacity to sow harmful confusion. Defendants' reliance on *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3rd Cir. 1994), is thus unavailing. There, though the scientific evidence at issue there was complex and potentially confusing, it went explicitly to the key dispute in the case—whether the plaintiffs' injuries were caused by PCB exposure. *Id.* at 760–61.

Finally, allowing Dr. Betensky to testify would result in undue delay and wasted time. Fed. R. Evid. 403. Trial of this case promises to be lengthy and dense. If Dr. Betensky testifies, Janssen will need to call Dr. Lavin to rebut her testimony. And then Dr. Butler will be recalled to explain why none of this makes a difference. Dr. Betensky's critiques will be both confusing

10


and "needlessly cumulative" of Defendants' cross-examinations of Drs. Wurm and Butler and Dr. Glacken's testimony on non-infringement.

## CONCLUSION

For the foregoing reasons, the Court should grant Janssen's motion to exclude the testimony of Dr. Betensky.

Respectfully Submitted,

Dated: June 4, 2018

| | |
|---|---|
| *Of Counsel*<br>Gregory L. Diskant (admitted *pro hac vice*)<br>gldiskant@pbwt.com<br>Aron Fischer (admitted *pro hac vice*)<br>afischer@pbwt.com<br>PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036-6710<br>212-336-2000 | */s/ Alison C. Casey*<br>Heather B. Repicky (BBO# 663347)<br>hrepicky@nutter.com<br>Alison C. Casey (BBO# 688253)<br>acasey@nutter.com<br>NUTTER MCCLENNEN & FISH LLP<br>Seaport West<br>155 Seaport Boulevard<br>Boston, MA 02210<br>617-439-2000<br>FAX: 617-310-9192<br><br>*Attorneys for Plaintiff Janssen Biotech, Inc.* |

**CERTIFICATE OF SERVICE**

I certify that on June 4, 2018, this document, filed through the ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and if not so registered, that copies will be electronically mailed to such parties or their counsel.

*/s/ Alison C. Casey*_____
Alison C. Casey