IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., <br>                Plaintiff, <br><br>        v. <br><br> CELLTRION HEALTHCARE CO., LTD., <br> CELLTRION, INC., and <br> HOSPIRA, INC., <br>                Defendants. | Civil Action No. 1:17-cv-11008-MLW <br><br> **REDACTED VERSION** |

**JANSSEN'S OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* NO. 8: TO PRECLUDE EVIDENCE AND ARGUMENT FROM
JANSSEN CONCERNING PRIVILEGE INSTRUCTIONS REGARDING THE CHANGE
OF MANUFACTURING TO SINGAPORE**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

    A.    The Reason for the Move to Singapore ................................................................ 1

    B.    The False and Misleading Testimony of Mr. Cho and Dr. Jeon ........................... 3

    C.    The Truth Comes Out ........................................................................................... 7

ARGUMENT ........................................................................................................................... 8

I.    Janssen Should Be Permitted to Use Mr. Cho's and Dr. Jeon's False and Misleading Deposition Testimony at Trial .................................................................. 8

    A.    Mr. Cho and Dr. Jeon Offered False and Misleading Testimony During Their Depositions ................................................................................................. 8

    B.    The Attorney-Client Privilege is Not Implicated by Janssen's Potential Impeachment of Mr. Cho and Dr. Jeon .................................................................. 9

II.    Defendants Attempt to Rely on Privilege to Excuse Witness Untruthfulness ............ 9

    A.    Mr. Cho's and Dr. Jeon's False and Misleading Testimony Was Not An Assertion of the Attorney-Client Privilege ......................................................... 10

    B.    Mr. Cho's and Dr. Jeon's Knowledge That █████████ Impacted the Switch to Singapore was Not Based on Privileged Information ......................... 11

    C.    Mr. Cho and Dr. Jeon Went Beyond Merely Withholding Information to Offer Affirmatively False or Misleading Testimony .......................................... 12

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Glickstein v. United States*,
    222 U.S. 139 (1911) ................................................................................................... 12

*In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*,
    348 F.3d 16 (1st Cir. 2003) ........................................................................................ 12

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    383 F.3d 1337 (Fed. Cir. 2004) .................................................................................... 9

*Moloney v. United States*,
    204 F.R.D. 16 (D. Mass. 2001) .......................................................................... 10, 11

*United States v. Apfelbaum*,
    445 U.S. 115 (1980) ................................................................................................... 12

*United States v. United Shoe Mach. Corp.*,
    89 F. Supp. 357 (D. Mass. 1950) .............................................................................. 12

**Statutes**

35 U.S.C. § 271(f)(1) .......................................................................................... 1, 5, 8

**Other Authorities**

Fed. R. Civ. P. 26(b)(5) ..................................................................................... 10, 11

Fed. R. Civ. P. 37(b)(2) ............................................................................................ 11

# INTRODUCTION

Defendants seek to prevent Janssen from using the false and misleading deposition testimony of Celltrion's Jong Moon Cho and Min Kyong Jeon about the decision to switch production of the accused media to Singapore. The reason for the switch was ████████ ████████, yet both witnesses refused to admit as much and instead offered false or materially misleading answers to questions on the subject. The falsity of those answers is now proved by internal Celltrion documents including ones directly to and from both witnesses. To block this questioning, Defendants incorrectly assert that the use of this testimony would somehow require the jury to draw an adverse inference from the invocation of the attorney client privilege. That is incorrect. Neither witness invoked the attorney-client privilege. And Janssen does not seek an adverse inference from any claim of privilege. Instead, Janssen seeks an adverse inference from the false and misleading testimony that the witnesses provided. Indeed, Janssen is content to present this evidence with counsel's privilege instruction redacted. It is the Defendants who seek to use counsel's privilege instructions as an excuse for false testimony. This proposed excuse has no bearing on the admissibility of the proposed evidence. Indeed, not only did neither witness invoke any privilege, but none was available to assert. Moreover, and most important, an assertion of privilege does not give any witness the right to lie.

# BACKGROUND

### A.     The Reason for the Move to Singapore

Defendants' motivation for switching production of the accused media to Singapore has been at issue throughout this case. Prior to Janssen's claim of infringement under 35 U.S.C. § 271(f)(1), Defendants' counsel cited the move to Singapore as an endpoint to any liability for infringement. *See* Ex. 1 (Dec. 22, 2016 Hearing Tr.) at 26:6-8. Yet Celltrion's own personnel

have long denied that ████████████████████████████████████████████████████
████████

We now know that testimony is false, following the production of dozens of documents that Defendants wrongly withheld as privileged. Defendants' motion involves two witnesses, Jong Moon Cho, the team leader for cell culture media, and Min Kyong Jeon, the team leader for regulatory affairs. We review briefly the evidence that demonstrates unequivocally that both were fully aware of the real reasons for the move.

Janssen filed its patent infringement suit on March 6, 2015. Shortly thereafter, Celltrion ████████████████████████████████████████████ Mr. Cho and Dr. Jeon were front and center as these plans were formed and implemented. ████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████, which went to Mr. Cho and which list Dr. Jeon as an attendee, report ████████████████████████████████████████████████████
████████

████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████

████████████████████████████████████████████████████████████████████████

The next day, Mr. Cho forwarded ████████████ to one of his subordinates, Byung Pil Lim, with

2

a cover note explaining ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Mr. Lim responded by asking Mr. Cho to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Of course, Mr. Cho was the correct person to ask.  He was one of only three personnel at Celltrion ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ he had the technical competence to ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ By that summer, Celltrion had decided ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dozens of ordinary Celltrion business records reflect that fact.

    **B.**    **The False and Misleading Testimony of Mr. Cho and Dr. Jeon**

A year later, during his first deposition for this case in June 2016, Mr. Cho was sworn to tell the truth and the whole truth.  He insisted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ decision to move to Singapore.  He was asked the following question, which was followed by an instruction from counsel not to disclose "any attorney-client communications":

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

██████████████████████████████████████████████
███████

Ex. 6 (June 2, 2016 Cho Dep. Tr.) at 132:13-19.  We now know that the truthful answer to the question is "yes."  The decision ████████████████████████████████████ ███████████ as Mr. Cho well knew.  Moreover, we now know that counsel's advice provided no basis for Mr. Cho to withhold the truth.  None of the participants in ████████████ ███████████ was an attorney and none of Mr. Cho's follow-up efforts ████████████ involved communications with attorneys.   Counsel's advice was irrelevant on the facts; Mr. Cho was not, so far as we know, party to any attorney-client communications and, if he was, he could still easily and truthfully answer the question without revealing any.  But if Mr. Cho believed for some reason that he could not answer the question with the whole truth because of supposed attorney-client communications, he was obligated to invoke the privilege expressly, e.g., "I am unable to answer that question (or to answer it completely) without disclosing attorney-client communications."

      Instead of taking either course, Mr. Cho chose misdirection.  He did not say that counsel's instruction limited in any way his ability to answer the question.  Instead, he started ███████████ ██████████████████████████ in 2012 and he wound up with the false, or at least misleading, statement that ██████████████████████████████████████ ███████████

██████████████████████████████████████
████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████

Ex. 6 (June 2, 2016 Cho Dep. Tr.) at 132:20-133:1.  This misleading answer, in response to the straightforward question whether ██████████████████████████████████████

4

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is evidence the jury should properly be able consider.

The second round of Celltrion depositions occurred in early 2018, as part of damages-related discovery. In that context, Defendants were arguing that the Singapore plant was a non-infringing alternative (even though Janssen had recently discovered that it continued to infringe after the move under 35 U.S.C. § 271(f)(1)). Just days before Celltrion's 30(b)(6) depositions were scheduled to begin, Celltrion clawed-back 40 Korean-language documents, including the ones quoted above. *See* Ex. 7 (Feb. 1, 2018 Letter from D. Hoang to A. Fischer). The vast majority of the documents concerned ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Janssen deposed Celltrion's three 30(b)(6) damages witnesses – Mr. Cho, Ms. Yang, and Dr. Jeon – during the first week of February 2018.

Mr. Cho went first. During the deposition, he was asked again about the move to Singapore and the question was followed by what we know now to be an irrelevant attorney-client privilege instruction:



Ex. 8 (Feb. 5, 2018 Cho Dep. Tr.) at 111:24-112:7. As he had in 2016, Mr. Cho chose misdirection rather than candor. And as he had in 2016, he did not invoke the attorney-client privilege. Instead, he answered that Singapore ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in 2012, without answering directly the question why ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in 2016:

5



*Id.* at 112:8-19. Mr. Cho was pressed further on the issue and ultimately testified, over an asked-and-answered objection. Now his answer was a flat-out lie:



*Id.* at 115:9-13. Mr. Cho knows exactly why ▮▮▮▮ in 2016. In his words from 2015, the move to Singapore ▮▮▮▮ Once again, these questions and answers can fairly be placed before the jury for their assessment.

Two days later, Dr. Jeon was deposed. She, like Mr. Cho, was asked about the Singapore switch. Like Mr. Cho, she received a privilege caution from counsel. And like Mr. Cho, she answered anyway, choosing misdirection rather than candor:



6



Ex. 9 (Jeon Dep. Tr.) 207:21-208:22.  Dr. Jeon did not state that the attorney-client privilege prevented her from offering a full answer.  Instead she offered almost exactly the same evasions as Mr. Cho and, like Mr. Cho, ultimately testified that she did not know the actual reason for the switch.  This was false.  As she well knew, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

### C. The Truth Comes Out

A week after these depositions were completed, Janssen received a privilege log for the clawed-back documents that, remarkably, did not identify even one attorney as the supposed source of any legal advice.  Ex. 10 (Feb. 14, 2018 Privilege Log).  Janssen promptly informed Celltrion that it was challenging the assertions of privilege.  Ex. 11 (Feb. 20, 2018 Email from B. Jackson to B. Hales, et al.).  Celltrion eventually conceded that none of the authors or recipients were attorneys, but maintained that the documents – some of which were widely disseminated throughout Celltrion – were nonetheless privileged.  Janssen filed a motion to compel production of un-redacted versions of the documents.  Janssen argued:  (1) The documents were not privileged.  They were not to or from lawyers, but rather to business executives and addressed the business plan for hedging patent risk, not the communication of legal advice.  (2) To the extent any particular document may have communicated legal advice, any privilege was waived by disseminating the information widely throughout the company.  Over 40 personnel received some version of the message that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███ Ex. 10 (Privilege Log).  The day before Defendants' response to that motion was due, they withdrew their claims of privilege and agreed to produce all of the clawed-back documents.

## ARGUMENT

**I.   Janssen Should Be Permitted to Use Mr. Cho's and Dr. Jeon's False and Misleading Deposition Testimony at Trial**

It is now clear that the deposition testimony of both Mr. Cho and Dr. Jeon was false and misleading.  Their false deposition testimony concealing the true reasons for the move to Singapore is compelling evidence from which the jury can conclude that Defendants knew they infringed the '083 patent.  Thus, the evidence is material to Janssen's allegations of induced infringement, infringement under 28 U.S.C. § 271(f)(1), and willfulness.  Moreover, if Mr. Cho and Dr. Jeon do testify at trial, Janssen their false and misleading deposition testimony bears not only on these issues, but also on their overall credibility.

**A.   Mr. Cho and Dr. Jeon Offered False and Misleading Testimony During Their Depositions**

By combination of misdirection and outright falsehood, in response to simple and direct questions, Mr. Cho and Dr. Jeon refused to disclose what they well knew to be true: ███ ████████████████████████████████████████████ As these witnesses well understood, the questions were not directed to ███████████████████████████ in 2012, but at ███████████████████ in 2016.  In private communications, Mr. Cho was readily able to draw that distinction: ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████ The answers the witnesses provided at deposition feigned an inability to make that distinction and fell well short of the whole truth.  They then lapsed into straight-out lies when they claimed ████████████████████

8

███ in 2016, but ████████████████████████████████

████ Certainly the jury would be permitted to conclude that this testimony was untruthful.

### B. The Attorney-Client Privilege is Not Implicated by Janssen's Potential Impeachment of Mr. Cho and Dr. Jeon

As the above discussion makes obvious, the attorney-client privilege is irrelevant to Janssen's potential use of deposition testimony to impeach Mr. Cho and Dr. Jeon. Janssen has no intention of seeking an adverse inference, or even mentioning the attorney-client privilege. The evidence it seeks to offer is the actual deposition testimony offered by each witness. So far as Janssen is concerned, counsel's irrelevant instructions would, as is typical, be redacted. The testimony speaks for itself, and its deceptiveness is readily apparent.

The attorney-client privilege issue described in Defendants' motion is an irrelevant proposition on these facts. As the only legal support for their motion, Defendants note that parties are prohibited from obtaining an adverse inference from an invocation of the attorney-client privilege. *See Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004). Janssen agrees with this principle as a point of law, but it has nothing to do with Janssen's proposed use of the deposition testimony of Mr. Cho and Dr. Jeon.

## II. Defendants Attempt to Rely on Privilege to Excuse Witness Untruthfulness

In reality, it is ***Defendants*** who hope to confuse the issues by invoking the attorney-client privilege. Recognizing that Mr. Cho's and Dr. Jeon's deposition testimony is false or misleading on its face, Defendants seemingly intend to use counsel's generic advice not to reveal privileged attorney-client communications as an ***excuse*** for the witnesses to give false answers. This is exact opposite of the professed point of Defendants' motion. Janssen is not asking the jury to draw an ***adverse*** inference because a witness refused to answer a question on the grounds of privilege. That never happened. Rather, it is Defendants who apparently wish to ask the jury to

9

draw a *favorable* inference – that their witnesses did not lie – from their counsel's privilege instruction.  This argument ignores three essential facts:  (1) Neither Mr. Cho nor Dr. Jeon invoked the attorney-client privilege; (2) the underlying communications were not privileged in the first place; and (3) both witnesses went beyond withholding information and offered affirmatively misleading or false testimony.

        A.        **Mr. Cho's and Dr. Jeon's False and Misleading Testimony Was Not An Assertion of the Attorney-Client Privilege**

To withhold information based on the attorney-client privilege, a party must "***expressly*** make the claim" of privilege.  Fed. R. Civ. P. 26(b)(5)(A)(i) (emphasis added); *see Moloney v. United States*, 204 F.R.D. 16, 20 (D. Mass. 2001) ("By its terms, [Rule 25(b)(5)] applies to depositions as well as other discovery vehicles.").  Neither Mr. Cho nor Dr. Jeon made such a privilege claim during their depositions.  Defendants suggest that privilege was asserted over communications regarding concerns about the '083 patent during the deposition.  But that is not what happened.  In all three exchanges cited in Defendants' brief, counsel for Janssen asked about the decision to switch to Singapore, and counsel for Celltrion cautioned the witness not to reveal privileged information but instructed that they could answer if they could do so without revealing privileged communications.

That generic instruction can, and is, properly given to any witness before a deposition and it can be given as a reminder at any time while a witness is testifying.   It is sound advice.  But that routine advice does not mean that any and all answers that follow must necessarily be withholding privileged information.  There is no reason to draw that inference unless the witness says so – both as a matter of logic and a matter of law.  Rule 26(b)(5) requires privileges to be asserted *expressly*, not impliedly.  And express notice is required for good reason:  Without notice that a privilege has been invoked, opposing counsel is deprived of the opportunity to

10

assess the claim of privilege or establish a meaningful record to challenge the privilege. *See Moloney*, 204 F.R.D. at 21. Given the imperative to provide notice when asserting a privilege, "[t]o withhold materials without such notice is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection." Fed. R. Civ. P. 26(b)(5) advisory committee's note (emphasis added).

Following counsel's generic privilege reminder, Mr. Cho and Dr. Jeon offered lengthy answers about the reasons for switching to Singapore media. Neither witness gave any indication that their answers were limited by the privilege, let alone an express assertion of privilege. Instead of saying that they could not answer or indicating that some of the reasons were privileged, Mr. Cho and Dr. Jeon gave false testimony. This is not an assertion of privilege; it is deception.

### B. Mr. Cho's and Dr. Jeon's Knowledge That ▬▬▬▬▬ Impacted the Switch to Singapore was Not Based on Privileged Information

In any event, there was no privilege for these witnesses to assert. They were aware of ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ from ordinary course-of-business communications that involved no lawyers whatsoever. These Celltrion internal communications are not privileged. Defendants find it "notable" that Janssen did not challenge Celltrion counsel's privilege instructions during the depositions. But there was nothing to challenge. Counsel did not expressly assert a privilege and did not direct the witness not to answer the questions. Moreover, as noted above, Celltrion's witnesses did not indicate that any material was being withheld or that attorney-client communications in any way impeded their ability to answer the questions. Once Defendants actually asserted a privilege over specific communications regarding the switch to Singapore by clawing back documents, Janssen promptly challenged the privilege and filed a motion explaining why the assertions of privilege

11

were baseless. Thereupon, Celltrion withdrew its claim of privilege and produced the documents. Having withdrawn their unsupported claims of privilege over the documents in the only context that the privilege was ever actually asserted, Defendants cannot continue to describe these business communications as "privileged."

      **C.**    **Mr. Cho and Dr. Jeon Went Beyond Merely Withholding Information to Offer Affirmatively False or Misleading Testimony**

Most importantly, the attorney client privilege does not give a witness the right to lie. The attorney-client privilege allows a client to "prevent the disclosure of information." *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950). Because it is "an obstacle of sorts to the search for truth" courts have emphasized that it "must be narrowly construed" in light of its purpose of safeguarding communications between client and lawyer and applied "only to the extent necessary to achieve its underlying goals." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). In other words, the attorney-client privilege operates narrowly to prevent disclosure of specific communications. A testimonial privilege "'does not endow the person who testifies with a license to commit perjury.'" *United States v. Apfelbaum*, 445 U.S. 115, 127 (1980) (quoting *Glickstein v. United States*, 222 U.S. 139, 142 (1911)) (discussing the Fifth Amendment privilege to withhold self-incriminating testimony).

Both Mr. Cho and Dr. Jeon went beyond merely omitting ██████████████ as a reason for the Singapore switch. In 2016, Mr. Cho testified that ██████████████ ██ ██████████████, and both witnesses said that they were not aware of the actual reasons for the switch when asked in 2018. This testimony is false.

## CONCLUSION

Defendants' motion should be denied.

12

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 4, 2018 | */s/ Alison C. Casey* |
| *Of Counsel*: | Heather B. Repicky (BBO # 663347)<br>hrepicky@nutter.com |
| Gregory L. Diskant (admitted *pro hac vice*)<br>gldiskant@pbwt.com | Alison C. Casey (BBO #688253)<br>acasey@nutter.com |
| Irena Royzman (admitted *pro hac vice*)<br>iroyzman@pbwt.com | NUTTER MCCLENNEN & FISH LLP<br>Seaport West |
| Aron Fischer (admitted *pro hac vice*)<br>afischer@pbwt.com | 155 Seaport Boulevard<br>Boston, MA 02210 |
| Andrew D. Cohen (admitted *pro hac vice*)<br>acohen@pbwt.com | 617-439-2000<br>FAX: 617-310-9192 |
| Benjamin F. Jackson (admitted *pro hac vice*)<br>bjackson@pbwt.com | *Attorneys for Plaintiff Janssen Biotech, Inc.* |
| PATTERSON BELKNAP WEBB & TYLER LLP<br>1133 Avenue of the Americas<br>New York, NY 10036-6710<br>212-336-2000<br>FAX: 212-336-2222 |  |

**CERTIFICATE OF SERVICE**

  I certify that on June 4, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing.

                  /s/ *Alison C. Casey*

10402351