IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| JANSSEN BIOTECH, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:17-cv-11008-MLW |
| | ) |
| CELLTRION HEALTHCARE CO., LTD., | ) |
| CELLTRION, INC., and | ) |
| HOSPIRA, INC., | ) |
| Defendants. | ) |

_____ )

**JANSSEN'S OPPOSITION TO DEFENDANTS'**
**MOTION *IN LIMINE* NO. 9, TO PRECLUDE EVIDENCE AND ARGUMENT FROM**
**JANSSEN'S EXPERTS BASED ON SPECULATION OUTSIDE THEIR EXPERTISE,**
**AND MOTION *IN LIMINE* NO. 10, TO PRECLUDE EVIDENCE AND ARGUMENT**
**REGARDING CONTRACT INTERPRETATION**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................1

BACKGROUND ..............................................................................................................2

I.      The Celltrion-HyClone Agreements ................................................................2

II.     Defendants' Experts Ignore the Impact of the Celltrion-HyClone Agreements and Other
        Patent-Related Issues On Their Non-Infringing Alternatives Analysis ..............................4

III.    Janssen's Experts Dr. Butler and Mr. Lit Point Out That Dr. Frohlich and Dr. Nagaich
        Ignored the Celltrion-HyClone Agreements and Patent-Related Issues ...........................6

ARGUMENT ...................................................................................................................8

I.      Dr. Butler and Mr. Lit Should Be Permitted to Point Out That Dr. Frohlich's and Dr.
        Nagaich's Opinions About Non-Infringing Alternatives Fail to Take Into Account Likely
        Patent- and Contract-Related Delays ..................................................................9

II.     Under Federal Rule of Evidence 703, Dr. Butler and Mr. Lit Can Explain How the
        Celltrion-HyClone Agreements Form Part of the Bases for Their Opinions on the
        Availability of Non-Infringing Alternatives .........................................................12

CONCLUSION ...............................................................................................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alicea v. Machete Music*,
744 F.3d 773 (1st Cir. 2014) ................................................................13

*Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*,
No. 4:12-cv-1390, 2015 U.S. Dist. LEXIS 44702 (N.D. Ohio Apr. 6, 2015) ........................15

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
829 F. Supp. 2d 802 (D. Minn. 2011) ................................................9, 10

*Coquina Invs. v. Rothstein*,
No. 10-60786-Civ, 2011 U.S. Dist. LEXIS 120267 (S.D. Fla. Oct. 18, 2011) ......................10

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ................................................11, 12

*Fishman v. LaSalle Nat'l Bank*,
6 F. App'x. 52 (1st Cir. 2001) ................................................13

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ................................................11

*Hartford Accident & Indem. Co. v. Wesolowski*,
305 N.E.2d 907 (N.Y. 1973) ................................................13

*Hearts on Fire Co., LLC v. Circa, Inc.*,
No. 14-CV-11044-DLC, 2017 WL 4364405, 2017 U.S. Dist. LEXIS 160872
(D. Mass. Sept. 29, 2017) ................................................13

*Ji v. Bose Corp.*,
538 F. Supp. 2d 354 (D. Mass. 2008) ................................................13

*Lobo Well Serv., Ltd. Liab. Co. v. Marion Energy, Inc.*,
No. 2:07-CV-273 TS, 2011 U.S. Dist. LEXIS 38767 (D. Utah Apr. 8, 2011) ........................15

*Marx & Co. v. Diners' Club Inc.*,
550 F.2d 505 (2d Cir. 1977) ................................................13

*Micro Chem., Inc. v. Lextron, Inc.*,
318 F.3d 1119 (Fed. Cir. 2003) ................................................11, 12

*Nadherny v. Roseland Prop. Co., Inc.*,
390 F.3d 44 (1st Cir. 2004) ................................................13

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Nat'l Electro-Coatings v. Brock*,
   No. C86-2188, 1988 U.S. Dist. LEXIS 16937 (N.D. Ohio July 13, 1988) .............................13

*SEC v. Goldsworthy*,
   No. 06-10012, 2008 WL 2943398 (D. Mass. Jan. 3, 2008)......................................................13

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics, Plastics, Inc.*,
   637 F.3d 1269 (Fed. Cir. 2011)..............................................................................................11

*Synqor Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013)..............................................................................................11

*Trust Props., Inc. v. Endeka Enters., LLC*,
   No. 01-1491, 2002 U.S. Dist. LEXIS 28241 (D.D.C. June 24, 2002)....................................13

**Other Authorities**

Fed. R. Evid. 703 ................................................................................................... *passim*

## INTRODUCTION

Defendants have filed two related motions *in limine* to preclude Janssen's experts from rebutting the opinions of Defendants' experts about the supposed availability of certain alleged non-infringing alternatives by pointing out that Defendants' experts have failed to account for patent- and contract-related delays that would inevitably occur.  Defendants' ninth motion *in limine* (Dkt. No. 276) seeks to preclude Dr. Butler from explaining why implementing a design-around or an alternative media supplier would require time-consuming patent claim analysis, prior-art searching, and contract negotiations with both HyClone and the alternative media supplier.  Defendants' tenth motion *in limine* (Dkt. No. 278) seeks to prevent Mr. Lit from stating his understanding that the Celltrion-HyClone agreements did not authorize Celltrion to share HyClone's highly confidential formulae with one of HyClone's competitors, let alone permit Celltrion to have the proprietary media made by a competitor.

Both motions should be denied.  It is entirely appropriate for Dr. Butler and Mr. Lit to point out the unfounded assumptions and flaws in Defendants' speculative expert opinions about non-infringing alternatives.  As to Dr. Butler, it is appropriate for him to observe, based on his years of experience, that design-arounds that cut close to the line require legal advice and that takes time.  And as to both Dr. Butler and Mr. Lit, they may properly present their understandings of the Celltrion-HyClone agreements under Federal Rule of Evidence 703.  The agreements are simple to read and their terms are not genuinely in dispute.  Dr. Butler and Mr. Lit have decades of collective experience with biotechnology contracts and they may properly explain the business realities that Celltrion would face were it to seek to have access to HyClone's highly confidential media formulae or to have the accused media made by a manufacturer other than HyClone.

Accordingly, the Court should deny Celltrion's ninth and tenth motions *in limine*.

## BACKGROUND

**I.     The Celltrion-HyClone Agreements**

The instant motions concern how Janssen's experts dealt with—and Defendants' experts ignored—key agreements between HyClone and Celltrion or its employees, ████████████

2



The impact of all this is straightforward:  although aware of the risk of infringement, the parties did not permit Celltrion to use a third party to make the accused media in the event of infringement.  If Celltrion wished to use a third party manufacturer in that circumstance, it would need to renegotiate the contract with HyClone.



3

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

## II.   Defendants' Experts Ignore the Impact of the Celltrion-HyClone Agreements and Other Patent-Related Issues On Their Non-Infringing Alternatives Analysis

In their expert reports on non-infringing alternatives, Defendants' experts Dr. Frohlich and Dr. Nagaich opined that Defendants could have implemented design-around media or could have had the accused media manufactured by one of HyClone's competitors at a manufacturing facility outside the United States—and that doing so would not have delayed the launch of Inflectra in the United States. Both opinions were based, at root, on Dr. Frohlich's speculation that Celltrion could have (a) modified the accused media to be non-infringing based on ensnarement or vitiation, and then implemented such modified media in no more than three months, or (b) gotten one of HyClone's competitors to manufacture the accused media at a manufacturing facility outside the United States in no more than six months. Ex. 3 (Frohlich

4

Rep.) ¶¶ 246, 252, 270, 276, 279.  However, neither Dr. Frohlich nor Dr. Nagaich directly

addressed the obvious complications that the Celltrion-HyClone agreements would create for

implementing either of these alleged non-infringing alternatives in a timely fashion.  In fact, they

generally assumed that there would be no patent- or contract-related issues *at all* with

implementing these alleged non-infringing alternatives.

5

███████████████████████████████████████

██████████████

### III.   Janssen's Experts Dr. Butler and Mr. Lit Point Out That Dr. Frohlich and Dr. Nagaich Ignored the Celltrion-HyClone Agreements and Patent-Related Issues

One of the critical issues in assessing the adequacy of a non-infringing alternative is its availability, indeed, its ready availability.  That implicates directly the time necessary to implement the proposed alternative.  Therefore, in their expert reports, Janssen's experts Dr. Butler and Mr. Lit explained why it was error for Dr. Frohlich and Dr. Nagaich to ignore the delays that would inevitably be caused by ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  Dr. Butler and Mr. Lit will also explain the impact of those delays on the launch date of Inflectra in the United States, were Defendants to attempt to implement these alleged non-infringing alternatives.

With regard to the idea that Celltrion would be able to tweak the accused media to design-around the '083 patent, Dr. Butler will testify that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████

Both Dr. Butler and Mr. Lit will also explain that Dr. Frohlich and Dr. Nagaich failed to
take into account delays that would inevitably crop up were Celltrion to attempt to have the
accused media manufactured by one of HyClone's competitors. █████████████████

████████████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████



## ARGUMENT

The Court should deny Celltrion's ninth and tenth motions *in limine*.  It is entirely

appropriate for Dr. Butler and Mr. Lit to provide testimony about the deficiencies in Dr.

Frohlich's and Dr. Nagaich's opinions that stem from their failure to take patent- and contract-

10410920

related delays into account in their estimates of how long it would take Celltrion to implement a

non-infringing alternative.  Further, under Rule 703, both Dr. Butler and Mr. Lit can properly

testify about how their understandings of the Celltrion-HyClone agreements form part of the

bases for their opinions about non-infringing alternatives.  Both Dr. Butler and Mr. Lit have

experience with such agreements and are qualified to explain how terms within them are

generally understood in the biotechnology industry.

I.      **Dr. Butler and Mr. Lit Should Be Permitted to Point Out That Dr. Frohlich's
        and Dr. Nagaich's Opinions About Non-Infringing Alternatives Fail to Take
        Into Account Likely Patent- and Contract-Related Delays**

As set forth above, Dr. Butler and Mr. Lit will testify at trial that Dr. Frohlich's and Dr.

Nagaich's estimates of how long it would take to implement Defendants' alleged non-infringing

alternatives unjustifiably fail to take into account patent- and contract-related delays.

This testimony is entirely appropriate because a party's rebuttal expert witness is permitted to point out flaws or failings in an opposing party's expert opinion. *See, e.g.*, *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834-35 (D. Minn. 2011) (collecting cases). Indeed, "[i]t is the proper role of rebuttal experts to critique [a party's] expert's methodologies and point out potential flaws in the [party's] experts' reports." *Id.* at 835. "A rebuttal expert can testify as to the flaws that she believes are inherent in another expert's report that implicitly assumes or ignores certain facts." *Coquina Invs. v. Rothstein*, No. 10-60786-Civ, 2011 U.S. Dist. LEXIS 120267, at *9 (S.D. Fla. Oct. 18, 2011).

Defendants argue that Dr. Butler's and Mr. Lit's proposed testimony about patent- and contract-related delays should be precluded as speculative—even though, ironically, this testimony is a direct response to Dr. Frohlich's and Dr. Nagaich's baseless speculation about how quickly Defendants could have implemented alleged non-infringing alternatives that they never even attempted to implement in the real world. But Dr. Butler's and Mr. Lit's testimony will not be speculative—it will simply point out that Dr. Frohlich and Dr. Nagaich have made flawed assumptions and ignored real-world facts. Dr. Butler and Mr. Lit should be permitted to explain how this flawed analysis does not comport with either the facts of this case or their real-world experience. If Dr. Frohlich and Dr. Nagaich are permitted to present their speculative and unfounded opinions to the jury, Dr. Butler and Mr. Lit should be able to respond appropriately by identifying all of the potential delays that went unaccounted for.

Defendants also argue that Dr. Butler's testimony, in particular, should be excluded as irrelevant because in their view the amount of time it would take to implement supposed non-infringing alternative is only relevant if it relates to "the accused infringer's technical ability and incentives." Dkt. No. 277 (Defs' MIL No. 9) at 5. This is plainly incorrect. The non-infringing

alternatives inquiry—which requires "reconstruction of the market, as it would have developed absent the infringing product"—"must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350-51 (Fed. Cir. 1999). There is no legal basis or logical reason to ignore, in this hypothetical world, tangible and practical impediments the accused infringer would foreseeably have faced. Otherwise, the hypothetical world would bear no resemblance to reality and the exercise would lapse into pure speculation.

Thus, not only is it appropriate to consider all foreseeable delays associated with the implementation of a proposed alternative, it would also be *inappropriate* to ignore them. Janssen's experts' testimony about likely delays—whether scientific, technical, legal, regulatory, or otherwise—is certainly relevant, because an acceptable non-infringing alternative not on the market must be able to be implemented "practically instantaneous[ly]" (*i.e.*, within a couple of weeks) to be considered "available." *See id.* at 1346, 1353 (Fed. Cir. 1999) (alternative implemented in two weeks was "available"). In other words, a non-infringing alternative must be "readily available." *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123-24 (Fed. Cir. 2003); *see also Synqor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics, Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009).

A central question relevant to the availability of a non-infringing alternative is therefore the overall amount of time it would take to implement the alternative in the hypothetical "but for" world. In *Grain Processing*, the Federal Circuit explained that courts must look *both* to the accused infringer's technical abilities and incentives *and* at "alternative actions the infringer

11

foreseeably would have undertaken had he not infringed." 185 F.3d at 1350-51. Myopically focusing on the infringer's technical ability or economic incentives, particularly on these facts, ignores impediments the infringer foreseeably would have encountered had it pursued the proposed alternative, and the actions the infringer would foreseeably have to take in order to overcome the impediments and implement the alternative. The testimony of Dr. Butler and Mr. Lit about the impediments that would limit the availability of Defendants' alleged non-infringing alternatives are certainly relevant. *See, e.g.*, *Micro Chem.*, 318 F.3d at 1123 (limited raw material supply relevant to the availability of the substitute); *DePuy Spine*, 567 F.3d at 1332 (failure to submit proposed alternative for FDA approval relevant to availability of substitute).

Dr. Butler's and Mr. Lit's testimony about Dr. Frohlich's and Dr. Nagaich's failure to take likely delays into account is appropriate, non-speculative, and relevant rebuttal testimony, and therefore should not be precluded.

## II.     Under Federal Rule of Evidence 703, Dr. Butler and Mr. Lit Can Explain How the Celltrion-HyClone Agreements Form Part of the Bases for Their Opinions on the Availability of Non-Infringing Alternatives

Dr. Butler and Mr. Lit may also properly present their straightforward—and undisputed—understanding of the Celltrion-HyClone agreements to the jury. The interpretation of these agreements (if any interpretation were necessary) is not one of the ultimate issues that must be decided by the Court or the jury, but rather simply one of many considerations that Janssen's experts took into account in forming their opinions on non-infringing alternatives. As such, Dr. Butler's and Mr. Lit's understanding of the contracts may properly be presented to the jury under Federal Rule of Evidence 703, which states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data

12

> would otherwise be inadmissible, the proponent of the opinion may
> disclose them to the jury only if their probative value in helping the
> jury evaluate the opinion substantially outweighs their prejudicial
> effect.

Fed. R. Evid. 703. Indeed, contrary to Defendants' argument, it is routine for experts to rely on contracts in forming opinions on ultimate issues that do not concern contractual interpretation, such as the availability of non-infringing alternatives. *See, e.g.*, *Trust Props., Inc. v. Endeka Enters., LLC*, Nos. 01-1491, 2002 U.S. Dist. LEXIS 28241, at *5-6 (D.D.C. June 24, 2002) ("Experts in commercial and other real estate routinely rely on contracts for the lease or sale of property as a basis for their opinions."); *Nat'l Electro-Coatings v. Brock*, No. C86-2188, 1988 U.S. Dist. LEXIS 16937, at *16-19 (N.D. Ohio July 13, 1988) (expert computation based on contracts is admissible).

The cases that Defendants cite in support of their motions are off point because each is a breach of contract, insurance, or securities case centering on a dispute over the meaning of a key contractual term. *See generally* Dkt. No. 278 (Defs.' MIL No. 10) (citing *Alicea v. Machete Music*, 744 F.3d 773, 786 (1st Cir. 2014); *Nadherny v. Roseland Prop. Co.,* 390 F.3d 44, 48 (1st Cir. 2004); *Fishman v. LaSalle Nat'l Bank*, 6 F. App'x. 52, 55 (1st Cir. 2001); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977); *Hearts on Fire Co., LLC v. Circa, Inc.*, No. 14-CV-11044-DLC, 2017 WL 4364405, 2017 U.S. Dist. LEXIS 160872, at *4 (D. Mass. Sept. 29, 2017); *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 359 (D. Mass. 2008); *SEC v. Goldsworthy*, No. 06-10012, 2008 WL 2943398, at *4 (D. Mass. Jan. 3, 2008); *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973)). These cases merely stand for the proposition that it is improper for an expert to opine on the meaning of a disputed contractual term where that is the ultimate issue to be determined by the Court (if the contract is unambiguous) or the jury (if it is not). *E.g.*, *Nadherny*, 390 F.3d at 48.

13

In this case, the ultimate issue to be decided by the jury is whether a non-infringing alternative was readily available to Defendants—not whether Janssen's interpretation of the Celltrion-HyClone agreements is correct.  Indeed, Defendants *do not actually dispute* Janssen's experts' interpretation of the agreements, and they provide no explanation for why Dr. Butler's or Mr. Lit's testimony on this issue is wrong or would unfairly prejudice them.  Janssen's experts should accordingly be permitted to present their understanding of the Celltrion-HyClone agreements to the jury.

Further, both Dr. Butler's and Mr. Lit's experience qualifies them to testify about their understanding of the terms of the agreements.  Dr. Butler is not only a cell culture media expert—he is also the founder of cell culture media company Biogro Technologies, Inc. ("Biogro"), which he formed over twenty years ago.  *See* Ex. 9 (Butler Opening Damages Report Ex. A, Butler CV) at 12; Ex. 10 (Butler 4/17/18 Tr.) at 61:21-62:14.  ███████████

███████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████████████████████

███████████████████████████████

███████████████████ He may not know precisely how long it would take to obtain the legal opinions on which Dr. Frohlich's proposed design-arounds are predicated, but he surely knows, as he testified, "that would take time."  Ex. 10 (Butler 4/17/18 Tr.) at 133:24-134:6.  Dr. Butler is therefore qualified to present rebuttal testimony about Dr. Frohlich's failure to take likely patent- and contract-related delays into account.

As for Mr. Lit, he has decades of experience as an executive at a biotechnology manufacturer and experience with agreements like the Celltrion-HyClone agreements, which qualifies him to provide admissible testimony regarding how people in the industry generally understand the terms of the agreements, including such familiar concepts as "uncured breach" and "force majeure"—and why they do not mean "infringement."  *See, e.g.*, *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, No. 4:12-cv-1390, 2015 U.S. Dist. LEXIS 44702, at *13-14 (N.D. Ohio Apr. 6, 2015) ("[T]he expert will be permitted to testify generally as to how those in the industry understand the relevant contract terms."); *Lobo Well Serv., LLC v. Marion Energy, Inc.*, No. 2:07-CV-273 TS, 2011 U.S. Dist. LEXIS 38767, at *16 (D. Utah Apr. 8, 2011) ("Treybig will be permitted to testify in trial as to Marion's duties under the contract. The contract at issue closely resembles contracts typically used in the oil and gas industry, and Treybig has expertise in the industry. His opinions may aid the jury in determining whether either party breached the contract and whether a contract existed. . . . [H]e should be permitted to testify as to what the contract requires according to industry norms.").

In interpreting the agreements, Mr. Lit relied both on instructions from counsel *and* on his own credentials and qualifications as a biotechnology industry expert with over 25 years of experience, as he explained at his deposition:



Ex. 11 (Lit Tr.) at 55:5-20 (objection omitted).

10410920



*Id.* at 224:18-225:2; *see also id.* at 55:5-20, 226:19-227:7.  Mr. Lit is fully qualified to explain how participants in the biotechnology industry would understand terms like "uncured breach" and "force majeure."

Dr. Butler's and Mr. Lit's proposed testimony about the Celltrion-HyClone agreements is thus entirely appropriate under Rule 703.

**CONCLUSION**

For the above reasons, Celltrion's ninth and tenth motions *in limine* should be denied.


Dated:  June 4, 2018

*Of Counsel*:

Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Irena Royzman (admitted *pro hac vice*)
iroyzman@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
Andrew D. Cohen (admitted *pro hac vice*)
acohen@pbwt.com
Benjamin F. Jackson (admitted *pro hac vice*)
bjackson@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
FAX: 212-336-2222

Respectfully submitted,

*/s/ Alison C. Casey*
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
Alison C. Casey (BBO #688253)
acasey@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

16

10410920

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 4, 2018, this document, filed through the Court's ECF system, will be sent electronically to the parties or their counsel who are registered participants as identified on the Notice of Electronic Filing and if not so registered, that copies will be electronically mailed to such parties or their counsel.

/s/ *Alison C. Casey*