**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.<br><br>        Plaintiff,<br><br>    v.<br><br>CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC.<br><br>        Defendants. | **Civil Action No. 1:17-cv-11008-MLW**<br><br>**PUBLIC-**<br><br>**REDACTED VERSION** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 12**

There were a multitude of non-infringing alternatives available to Defendants as of the date of first alleged infringement. Dkt. 303; Dkt. 265 Ex. 12 (Frohlich Rep. ¶ 23). Rightly fearing it cannot win on the merits, Janssen now seeks to avoid having to deal with them altogether. But Janssen misstates both the law and the facts. Specifically, it argues all but two such alternatives should be excluded simply because Defendants have not implemented or tested them in the "real world," which, according to Janssen's definition, makes them "theoretical" and "confusing" and "Rube Goldberg concepts." Dkt. 268 at 13. The law is squarely against Janssen.

*Grain Processing* expressly held the "but for" world governs, not what happened in the real world. *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). This is because, "[w]ithout the infringing product, a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if available, to compete with the patent owner rather than leave the market altogether." *Id*. In contrast, in the real world, an accused infringer may justifiably choose not to implement the available alternative because it "reasonably believe[s] it ha[s] a noninfringing product." *Id*. at 1354. That is the case here, and that was the case in *Grain Processing*; nonetheless, the court found the alternative, which was not used during the infringing period, to be "available." *Id*.

Likewise, in *TQP Dev., LLC v. Merrill Lynch & Co.* the court refused to exclude alternatives on summary judgment where the evidence showed that customers "could easily obtain the algorithm necessary to implement a non-infringing alternative." No. 2:08-CV-471-WCB, 2012 WL 3283354, at *1 (E.D. Tex. Aug. 10, 2012). The court made this finding even though there was no evidence that the algorithm needed for the alternative had actually been implemented in the accused products, just that the algorithm had been "incorporated into the computer" for other purposes. *Id*. Just as the customers in *TQP* had access to the necessary algorithms to implement

1

the alternatives, there is no dispute here that Celltrion had access to the necessary materials (e.g., alternative magnesium sources, vendors, commercially available media) to implement the proposed alternatives.

The facts are also squarely against Janssen. The record is replete with testimony, documents, and admissions proving that there were numerous non-infringing substitute cell culture media on the market and available to Celltrion as of the date of first infringement, October 2009. As described in Defendants' opposition to Janssen's motion for summary judgment on non-infringing alternatives, they available alternatives included, for example: (1) commercially available media that were on the market, including one that Celltrion actually tested in 2008, and another that ███████████████████████████████████████; (2) the option to modify the accused media to remove required claim ingredients, at least one which Janssen's expert admits ███████████████████████████████████████ ███████████████████████████████████; (3) the option to modify the media ingredients to match prior art media (which is already extremely close); and (4), having the media manufactured overseas, either with HyClone (which has already been implemented and is non-infringing) or with one of several manufacturers Celltrion already had a relationship with. *See* Dkt. 303 at 4-8. The Court should deny Janssen's motion.

I. **JANSSEN'S BRIEF MISSTATES AND MISAPPLIES THE LAW ON NON-INFRINGING ALTERNATIVES**

    A. **Janssen's "real world" argument contradicts the hypothetical reconstruction of the "but for" world the Federal Circuit requires.**

Janssen argues that only alternatives implemented in the "real world" may be used, and anything else is merely "theoretical." This argument was considered and rejected by the Federal Circuit in *Grain Processing*, from which Janssen's brief selectively quotes. As the Federal Circuit held there:

2

> Reconstructing the market, ***by definition a hypothetical enterprise***, requires the patentee to project economic results ***that did not occur***… [A] fair and accurate reconstruction of the "***but for***" market also must take into account, where relevant, alternative actions the infringer foreseeably ***would have*** undertaken had he not infringed… [O]nly by comparing the patented invention to its next-best available alternative(s) – ***regardless of whether the alternative(s) were actually produced and sold during the infringement*** – can the court discern the market value of the patent owner's exclusive right…

*Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350–51 (Fed. Cir. 1999). Thus, Janssen's argument fundamentally contravenes binding precedent. For that reason alone, Janssen's motion must be denied.

Indeed, a so-called "real world" limitation would lead to unfair results. In the real world, the accused infringer may have legitimate defenses against the allegations of infringement and have little incentive to seek alternatives. That is the case here, especially given Janssen's unprecedented dozen-way doctrine of equivalents theory. *See* Dkt. 303 at 21. *Grain Processing* addressed exactly this situation—the district court and Federal Circuit considered that the defendant had not implemented the non-infringing design-around until after the damages period, but nevertheless found the alternative "available," in the "but-for" world and precluded lost profits, noting that the defendant "reasonably believed it had a noninfringing product" prior to that time. *Grain Processing*, 185 F.3d at 1354. Other courts have since affirmed availability can be based on the capability of the accused infringer, despite the fact that the alternatives were not implemented. *See, e.g.*, *TQP Dev., LLC v. Merrill Lynch & Co.*, 2012 WL 3283354, at *1 (finding access to necessary algorithm precluded summary judgment of non-infringement, even though no customer had actually used the algorithm to implement a non-infringing alternative); *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 118 (D. Del. 2016) (denying summary judgment because, in part, "it would have been relatively simple for Pure to redesign the code to implement the alternatives" despite having never done so for that alternative).

Moreover, Janssen's mischaracterizations of the alternatives Defendants have offered as "theoretical" has no connection to the law. Janssen selectively quotes *Grain Processing* for the proposition that alternatives "only theoretically possible" are not "available," but ignores the guidance the court gave to actually determine whether an alternative is "available." Dkt. 268 at 16. *Grain Processing* directs courts to consider whether the accused infringer has the necessary "materials, the equipment, the know-how and experience, and the economic incentive" to switch to the alternative. *Grain Processing*, 185 F.3d at 1354. As to these factors the the jury is to use in assessing whether the alternative is "theoretical" or "available." Janssen doesn't even dispute that Celltrion possessed all such technical abilities and resources to switch to the alternatives it seeks to exclude, or that it would have had the economic incentive to do so in the "but for" world. This too, alone, warrants denying the motion.

### B. Defendants had a multitude of available and acceptable non-infringing alternatives at their disposal.

The alternatives Janssen seeks to exclude are hardly, as it claims, "Rube Goldberg concepts –complex, convoluted, fragile, indirect." Dkt. 268 at 17. To the contrary, they are well reasoned, well grounded, and backed by the testimony of Dr. Frohlich, an undisputed expert in the field of cell culture media:

- **Modified media:** Janssen concedes that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Dkt. 238 (Memorandum in Support of Def's Motion for Summary Judgment on Non-Infringing Alternatives), 303 (Def's Opposition to Summary

4

Judgment on Non-Infringing Alternatives), and Def's concurrently filed reply brief; Dkt. 298 at Resp. to ¶ 13.

- **CD CHO:** CD CHO was (and is) a commercially available alternative that was on the market and, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 303 at 8. Janssen argues this version is not "optimized" (Dkt. 268 at 15), but that's not the proper inquiry; Dr. Frohlich opined, and Janssen does not dispute, that Celltrion would have been able to optimize CD CHO (if necessary) as it did to the accused media ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 191-225.

- **Outside the U.S. Manufacturers:** Celltrion had all the necessary tools and resources to manufacture the media outside the United States. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, the lost profits analysis expressly requires a reconstruction of the "but for" world where the infringing product is no longer available. *Grain Processing*, 185 F. 3d at 1350.[1] Second, Celltrion had prior, pre-validated working relationships with media manufacturers with facilities overseas that publicly advertised their ability to make media. Dkt. 304 at Resp. to ¶ 86; Dkt. 303 at 7-8.

---

[1] Janssen argues the other manufacturers were unavailable because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1, Butler Damages Reply ¶ 89; Dkt. 246 at 8. Not only does this ignore the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it contradicts Janssen's infringement claim that "Celltrion controlled the development of the infringing media, directing details of its composition and instructing HyClone to use the combinations of ingredients that together infringe the claims of the 083 patent" (Dkt. 1 at ¶ 8).

5

As to those it doesn't even seek to exclude, but which it nonetheless labels as "theoretical" in its motion, Janssen is simply wrong. As will be shown at trial, CD Hybridoma is not a "theoretical" alternative to the patent: ███████████████████████████████████████████████████████████████████████████████████████████████████████████. Dkt. 303 at 6. And the Singapore media has been implemented by Defendants and does not infringe under 271(f) or otherwise. Dkt. 303 at 21-22; Dkt. 304 at Resp. to ¶ 1.

If anything is "Rube Goldberg[ian]," theoretical, and speculative, it is Janssen's theories as to why the non-infringing alternatives were allegedly not available. Janssen must argue that that a short implementation period in 2009 somehow would cause a domino-effect, with delay triggering delay, triggering delay, resulting in the postponement of Inflectra®'s launch *seven years later*. *Cf*. Dkt. 303 at 9-10 (explaining the numerous reasons why there would be no delay in the launch of Inflectra®).

Janssen's motion is nothing more than repackaging of its motion for summary judgment, and should be denied for all the reasons in Defendants' opposition to that motion. Dkt. 303. By the same token, Janssen's motion in *limine* reveals the weakness of its position as to the modified media alternative that Defendants seek summary judgment on. Dkt. 238. Janssen is grasping at straws with its outlandish characterization of that alternative—involving removing a single ingredient and increasing another—as "complex" and "convoluted." Dkt. 268 at 17. Accordingly, Janssen's motions on non-infringing alternatives should be denied, and Defendants' summary judgment motion granted.

6

### C. Celltrion only needed an alternative in 2009 (when the media was in development) that would have allowed an infliximab launch seven years later.

Implicit in Janssen's brief is the false premise that Defendants needed an alternative in 2009 that would, *at that time*, produce an infliximab biosimilar. *E.g.*, Dkt. 268 at 13-14. But in 2009 ███████████████████████████ with FDA approval and launch years away. Dkt. 303 at 1, 4. As discussed in Defendants' opposition to Janssen's summary judgment motion, Janssen misapprehends the law and the facts; Celltrion simply needed an alternative in 2009 that it could substitute into the development process and still launch seven years later. *Id.* As this Court previously explained:

> [I]f Celltrion could, as a practical matter, have made [a] Remicade biosimilar…in the United States on about January 1, 2017—at a competitive price and on a comparable schedule—without infringing the '083 Patent, Janssen would not be entitled to recover any profits on Remicade that it lost to Inflectra.
> \* \* \* \*
> To decide whether it was feasible for Celltrion to have used a non-infringing media powder to produce Inflectra, it must be determined whether, starting on the date of first infringement, Celltrion could have switched to using a non-infringing alternative.

*Janssen Biotech v. Celltrion Healthcare*, 239 F. Supp. 3d 328, 330-31 (D. Mass. 2017). Thus, the question is what alternative could Celltrion have switched to in the hypothetical "but for" world.

Defendants expert Dr. Frohlich identified multiple non-infringing alternatives defendants could have pursued in the "but for" world. *E.g.* Dkt. 265 Ex. 12 (Frohlich Rep. ¶ 23). Indeed, all were acceptable to be used in Celltrion's development process. And contrary to Janssen's brief, Janssen bears the burden of proving that these alternatives were not acceptable. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017).

## II. JANSSEN'S 403 ARGUMENT SHOULD BE REJECTED

Janssen's argument that these alternatives should be excluded under FRE 403 as "Rube Goldberg concepts –complex, convoluted, fragile, indirect," really a rehash of its "theoretical" and

7

"real world" arguments, should be viewed as nothing more than a ploy to get properly damaging evidence excluded. Likewise, Janssen's argument that Defendants should be limited to the two alternatives actually explored in the real world, because Defendants "need only prove one", should be rejected. Dkt. 268 at 18. Janssen chose to pursue $1 billion in lost profits damages on an unprecedented and strained theory of infringement, along with an equally unprecedented and strained damages methodology that can be defeated by numerous non-infringing alternatives. *See* Dkt. 240, Memo ISO Motion to Exclude the Opinion of Sean Nicholson, and Defendant's opposition to Janssen's MIL No. 8, filed concurrently herewith. There is no basis to exclude, and it would be particularly prejudicial to Defendants, to do so here, where Janssen seeks to mislead the jury into thinking there were few if any alternatives Defendants could turn to during development and still launch years later. *See Janssen Biotech v. Celltrion Healthcare*, 239 F. Supp. 3d 328, 330-31 (D. Mass. 2017).

Janssen's complaints of "confusion" are ironic to say the least. Janssen is asserting a paper-thin ***12-way*** doctrine of equivalents theory of infringement based on a ***multi-tier*** theory of inducement and agency. Meanwhile, the alternatives Janssen seeks to exclude involve, for example, removing a ***single*** ingredient and increasing another. And, although Janssen argues that one alternative—switching to an overseas manufacturer—would involving "studying and understanding the HyClone-Celltrion contract," which Defendants contend can be done simply— this is no basis for exclusion. The same contract is just as likely to come up in relation to Janssen's own convoluted theory of infringement, in which Janssen has to prove, somehow, that the actions of third-party GE HyClone are attributable to Celltrion, and through Celltrion to Hospira.

Janssen's brief reveals the weakness of its position on non-infringing alternatives. It admits that there is no special advantage to the '083 Patent in relation to the profits it seeks, as the asserted

claims "are not directed specifically to infliximab" (Dkt. 268 at 9), implicitly acknowledging that other media would have worked for Celltrion's purpose as well. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And, Janssen itself doesn't even use the '083 patent to make infliximab. In short, there is nothing special about the '083 Patent that could not be provided by Celltrion's alternatives. That Janssen does not want to confront these facts, does not justify their exclusion.

Tellingly, Janssen does not engage directly in the Rule 403 standard. Janssen says the non-infringing alternatives are "misleading, wasteful, confusing, or cumulative," but ignores that evidence may only be excluded where the "probative value of is *substantially outweighed*" by those dangers. Fed. R. Evid. 403. Janssen's argument, instead, is merely that it views these non-infringing alternatives as weak (they are not). But, each alternative demonstrates that there is nothing special about the '083 patent media, that the economic value of the '083 patent is limited, and that Defendants would not have ceded the market in the "but for" world. The supposed dangers of this evidence is minimal, particularly when compared to the confusing and convoluted theories Janssen has put forth on infringement, invalidity, and damages.

There is no legitimate dispute that Celltrion could have switched over to one of many alternative cell culture media products during development and still launched on time. Dkt. 227, 306. Defendants are due the opportunity to rebut Janssen's assertion by every reasonable means.

Janssen's motion should be denied.

9

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## **CERTIFICATE OF SERVICE**

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

/s/Andrea L. Martin, Esq.
Andrea L. Martin, Esq.
