# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| JANSSEN BIOTECH, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-11008-MLW |
| | ) | |
| CELLTRION HEALTHCARE CO., LTD., | ) | |
| CELLTRION, INC.,   and | ) | |
| HOSPIRA, INC. | ) | |
| Defendants. | ) | |
| _____ | ) | |

## JANSSEN'S PROPOSED FINAL JURY INSTRUCTIONS - LIABILITY

Plaintiff Janssen Biotech, Inc. ("Janssen"), respectfully submits the attached proposed

final jury instructions for the liability phase of the trial.  Janssen reserves the right to supplement

or modify its proposed jury instructions in view of events at trial or rulings by the Court.

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 1

### Introduction to Deliberations -- Summary of Contentions

MEMBERS OF THE JURY, now that you have heard the evidence and the

argument, it becomes my duty to give you the instructions of the Court as to the law applicable

to this case.

It is your duty as jurors to follow the law as I shall state it to you and to apply that

law to the facts as you find them from the evidence in this case.  You are not to single out one

instruction alone as stating the law but must consider the instructions as a whole.  Neither are

you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in

their arguments.  If, however, any difference appears to you between the law as stated by counsel

and that stated by the Court in these instructions, you are of course to be governed by the Court's

instructions.

Nothing I say in these instructions is to be taken as an indication that I have any

opinion about the facts of the case or what that opinion is.  As I said at the beginning of the trial,

it is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party.

The law does not permit you to be governed by sympathy, prejudice or public opinion.  All

parties expect that you will carefully and impartially consider all of the evidence, follow the law

as it is being given to you, and reach a just verdict, regardless of the consequences.[1]

As I did at the start of the case, I will first give you a summary of each side's

contentions in this case. I will then provide you with detailed instructions on what each side must

prove to win on each of its contentions.  As I previously told you, Janssen alleges that

---

[1] Adapted from 3 Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 72.01 (4th ed. 1987 & Supp. 2000) [hereinafter Devitt & Blackmar].

Defendants infringe the 083 patent by making products that Janssen argues are covered by claim 1 of the 083 patent.  Janssen contends that HyClone, a third party, manufactures two products that infringe the 083 patent.  It alleges that Celltrion is directly liable for HyClone's actions because HyClone acts Celltrion's agent, or because HyClone is subject to Celltrion's direction and control.  Janssen also argues that Celltrion and Hospira are liable for actively inducing infringement of claim 1 of the 083 patent by HyClone.  Janssen also alleges that Celltrion and Hospira participated in a joint venture and that Hospira is therefore jointly responsible for any infringement by Celltrion.  The products that are alleged to infringe are the Celltrion Growth Medium and the Celltrion Production Medium.

Defendants deny that they have infringed the asserted claim of the 083 patent. Celltrion argues further that it is not responsible for alleged infringement by HyClone, either directly or by inducing infringement.  Hospira also argues that it is not responsible for any alleged infringement by HyClone and that it is not engaged in a joint venture with Celltrion. Defendants also argue that the 083 patent is invalid.

2

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 2

### <u>The Meaning of the Claims</u>

To decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

Words in the patent claims generally should be given their plain, ordinary meaning. However, as I mentioned at the beginning of the case, there are certain terms or phrases in the claim that I have defined as a matter of law.  You must accept and use these meanings in your deliberations concerning both infringement and invalidity.

Claim 1 of the 083 patent uses the phrase: "A soluble composition, suitable for producing a final volume of cell culture media, wherein the composition comprises the following components."  In this case, I have determined that the term "<u>cell culture media</u>" in claim 1 of the patent means "a nutritive medium for culturing cells.  In patents, the word "comprises" means "including the following but not excluding others."  If you find that the Celltrion media infringe by meeting all of the elements in claim 1, you must find that the product infringes claim 1 even if the Celltrion media also includes additional components.[2]

---

[2] Adapted from Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.2, National Jury Instruction Project ("NJIP"), Model Patent Jury Instructions, Section 3.3, and American Intellectual Property Law Ass'n ("AIPLA") Model Patent Jury Instructions, Section 2.1; *Markman v. Westview Instruments, Inc*., 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *Phillips v. AWH Corp*., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention) *Cook Biotech Inc. v. ACell, Inc*., 460 F.3d 1365, 1373-78 (Fed. Cir. 2006).
.

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 3

### <u>Infringement – Direct and Induced</u>

I will now instruct you as to the rules you must follow when deciding whether Janssen has proven that Celltrion or Hospira infringed claim 1 of the 083 patent.

This case involves two allegations of infringement.  Janssen alleges that the Defendants directly infringed claim 1 of the 083 patent and also induced others to infringe claim 1 of the 083 patent.  As explained further in the following instructions, direct infringement results if the accused product is made, used, sold, or offered for sale in, or imported into, the United States by the defendant, and is covered by at least one claim of the patent. Induced infringement results if a defendant induces another person or entity to directly infringe a patent.[3]

---

[3] Adapted from FCBA, Section B.3.1. and NJIP Section 3.1; 35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 797 F.3d 1020 (Fed. Cir. 2015); *Merial Ltd. v. CIPLA Ltd.*, 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1264 (Fed. Cir. 2010); *WordTech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

4

**PROPOSED FINAL LIABILITY INSTRUCTION NO. 4**

**<u>Infringement – Burden of Proof</u>**

The burden is on Janssen to prove infringement by a preponderance of the evidence.  To "establish by a preponderance of the evidence" means to prove that something is more likely so than not to be true.  A preponderance of the evidence means evidence that, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true.[4]

---

[4] Adapted from from FCBA, Section B.3.1,  NJIP Section 3.2, and Devitt & Blackmar, *supra* note 1, § 72.01.

9507258

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 5

### Elements of Infringement

To prevail on its claim of infringement, Janssen must prove by a preponderance of the evidence that the accused product contains elements identical or equivalent to each claimed element of the patented invention. You must proceed on an element-by-element basis. Janssen must establish that every element of the claim is present in the accused product.

In this case, Janssen asserts that some elements of claim 1 of the 083 patent are literally present and that others are present under the "doctrine of equivalents." A claim element is literally present in an accused product if it is present in the accused product exactly as claimed. Under the doctrine of equivalents, a product can infringe an asserted patent claim if it includes elements that are not literally present in the accused product but nonetheless are equivalent to those elements of the claim.

Equivalence can be assessed in one of two ways. First, an element of a claim is equivalent to an element of the accused product that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial. Second, an element of the accused product is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have concluded that the corresponding element in the accused product (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. A person of skill in the art may consider whether interchangeability between the elements is known in the field of technology of the patent. An element is equivalent if it meets either of these tests.[5]

---

[5] Adapted from FCBA, Section B.3,1c, NJIP Section 3.8, and AIPLA Section 3.6; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co*., 339 U.S. 605, 609

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 6

### Direct Infringement

Janssen asserts that Celltrion is responsible for making the accused products in the United States and is therefore liable for direct infringement of the 083 patent.  Celltrion asserts that it has not directly infringed the 083 patent because HyClone makes the accused products.

Celltrion is directly liable for infringing the 083 patent if the accused products infringe the 083 patent and:

(a)   HyClone acted as the agent of Celltrion in making the accused products, or

(b)   Celltrion entered into a contract for HyClone to make the accused products and exercised direction or control over HyClone when HyClone made the accused products pursuant to the contract.

HyClone acted as an agent of Celltrion if (1) Celltrion intended to grant authority to HyClone to act on its behalf, (2) HyClone agreed to the agency relationship, and (3) Celltrion retained control and direction over key aspects of HyClone's actions.[6]

---

(1950) (explaining what constitutes an "equivalent"); *Interactive Pictures Corp. v. Infinite Pictures Inc.*, 274 F.3d 1371, 1381-82 (Fed. Cir. 2001).

[6] Adapted from AIPLA Section 3.2.1; Case No. 15-cv-10698,Dkt. 332, 12/22/16 Hr'g Tr. at 9:3-22; *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007). *Limelight Networks, Inc. v. Akami Techs., Inc.*, 797 F.3d 1020 (Fed. Cir. 2015); Restatement (Third) of Agency § 1.01 cmt. c.

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 7

### **Inducing Infringement**

In this case, Celltrion and Hospira are also accused of actively inducing HyClone to directly infringe Janssen's patent after December 2014. To find that Defendants actively induced infringement, it is not necessary to show that they themselves directly infringed, provided: (1) Defendants actively induced acts of infringement by HyClone and (2) Defendants knew, or were willfully blind to the probability that, the acts were infringing.

To prove active inducement, Janssen must establish that it is more likely than not that:

1.  Defendants aided, instructed, or otherwise acted with the intent to cause acts by HyClone that would constitute direct infringement of the patent;

2.  Defendants knew of the patent, or showed willful blindness to the existence of the patent, at that time;

3.  Defendants knew, or showed willful blindness such that it consciously ignored the probability tha, HyClone's actions would infringe at least one claim of the patent; and

4.  HyClone infringed at least one patent claim.

To find willful blindness: (1) Defendants must have subjectively believed that there was a high probability that a patent existed covering the accused product; and (2) Defendants must have taken deliberate actions to avoid learning of the patent or that the accused product infringes the patent.[7]

---

[7] Adapted from FCBA, Section B.3.2, NJIP Section 3.11, and AIPLA Model Patent Jury Instructions Section 3.10; 35 U.S.C. § 271(b); *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 797 F.3d 1020 (Fed. Cir. 2015); *Global-Tech Appliances, Inc., v. SEB, S.A.*, 563 U.S. 754 (2011); *Commil USA, LLC v. Cisco Sys., Inc., Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920 (2015); *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (en banc); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 8

### Infringement by Supply of the Components of a Patented Invention to Another Country

Janssen asserts that Defendants also infringed claim 1 of the 083 patent by causing a substantial portion of the components of the patented product to be supplied from the United States to another country and actively inducing the assembly of those components into a product that would infringe the 083 patent if they had been assembled in the United States.

To show infringement under based on supply of components to be assembled in another country, Janssen must prove that each of the following is more likely than not:

1.  the product, as it was assembled outside the United States, would have infringed claim 1 of the 083 patent if it had been assembled in the United States;

2.  the Defendants caused components to be supplied from the United States that make up all or a substantial portion of the product described in claim 1 of the 083 patent; and

3.  the Defendants specifically intended to induce the combination of the components into a product that would infringe the 083 patent if the components had been combined in the United States.[8]

---

[8] Adapted from FCBA, Section B.3.4, and AIPLA Model Patent Jury Instructions Section 3.11; 35 U.S.C. § 271(f)(1); *Life Techs. Corp. v. Promega Corp.*, 580 U.S. ____ (2017); *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc*. 576 F.3d 1348, 1359-67 (Fed. Cir. 2009); *Microsoft Corp. v. AT&T Corp*., 550 U.S. 437, 453-56 (2007); *Minn. Mining & Mfg. Co. v. Chemque, Inc*., 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

9507258

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 9

### Joint Enterprise

In addition to alleging that Hospira actively induced infringement by HyClone, Janssen also alleges that Celltrion and Hospira were engaged in a joint enterprise and that Hospira is therefore responsible for Celltrion's direct and/or induced infringement.  Celltrion and Hospira were engaged in a joint enterprise if:

1.      there was an agreement, express or implied, between Celltrion and Hospira;

2.      there was a common purpose to be carried out by Celltrion and Hospira;

3.      Celltrion and Hospira had a common financial interest with respect to that purpose; and

4.      Celltrion and Hospira had an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

If you find that Celltrion and Hospira were engaged in a joint enterprise, then Hospira is liable for the same acts of direct or induced infringement as Celltrion.  For example, if you find Celltrion to be liable for direct or induced infringement, and you find that Celltrion and Hospira were engaged in a joint enterprise, then Hospira is liable for direct or induced infringement as well.[9]

---

[9] Adapted from FCBA, Section B.3.7; *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 797 F.3d 1020 (Fed. Cir. 2015); Restatement (Second of Torts) § 491 cmt. c; *Lyon v. Ranger III*, 858 F.2d 22 (1st Cir. 1988).

9507258

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 10

### **Infringement – Willful Infringement**

In this case, Janssen argues not only that Defendants infringed, but that Defendants infringed willfully. If you have decided that the 083 patent was infringed, you must go on and address the additional issue of whether or not this infringement was willful.

To show that the infringement was willful, Janssen must prove by a preponderance of the evidence that the Defendants acted with reckless disregard of the claims of Janssen's patent. When considering Defendants' conduct, you must decide whether Janssen has proven it is highly probable that the Defendants proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an unjustifiably high risk that it was infringing the claims of a valid and enforceable patent.  If you conclude that Janssen has proven that the Defendants' conduct was reckless, then you need to consider whether Janssen proved it is highly probable that the unjustifiably high risk of infringement was known or so obvious that it should have been known to the Defendants.[10]

---

[10] Adapted from FCBA, Section B.3.10, NJIP Section 4.1, and AIPLA Section 12.0; 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992)

9507258

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 11

### <u>Invalidity – Burden of Proof</u>

I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that claim 1 of the 083 patent is invalid.

The claims of the 083 patent are presumed to be valid.  To prove that any claim of a patent is invalid, the Defendants must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.   Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard, where you need believe only that a party's claim is more likely true than not true.  This standard does not, however, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.[11]

---

[11] Adapted from FCBA, Section B.4.1 and AIPLA Model Patent Jury Instructions Section 4; 35 U.S.C. § 282 (2004); 35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp. v. i4i Limited P'hsip*, 131 S.Ct. 2238 (2011). Invalidity may be asserted for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a defense to alleged infringement. *Schumer v. Lab. Computer Sys., Inc*., 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc*., 849 F.2d 1461, 1463 (Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies, Inc*., 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 12

### **Invalidity - Obviousness**

The Defendants contend that claim 1 of the 083 patent are invalid because the claimed invention(s) is "obvious."

To establish that this claim is invalid as obvious, Defendants must show, by clear and convincing evidence, that the claimed invention would have been obvious to persons of ordinary skill in the art at the time the invention was made.  You may not consider what might have been obvious in hindsight but only what was known at the time of the invention.

The following factors must be evaluated to determine whether the Defendants have established that the claimed invention(s) is obvious:

1.    The scope and content of the prior art relied upon by the Defendants;

2.    The difference or differences, if any, between each claim of the 083 patent that the Defendants contends is obvious and the prior art;

3.    The level of ordinary skill in the art at the time the invention of the 083 patent was made; and

4.    Additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated and they may be analyzed in any order.[12]

---

[12] Adapted from FCBA Section B.4.3c, NJIP Sections 5.8-5.9, and AIPLA Section 7.0; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012).

9507258

**PROPOSED FINAL LIABILITY INSTRUCTION NO. 13**

**<u>Obviousness – Scope and Content of the Prior Art</u>**

In determining obviousness, you will be asked to consider the prior art.  Prior art

includes any of the following items received into evidence during trial:

1.      Any product that was publicly known or used by others in the United States
before the patented invention was made;

2.      Patents that issued more than one year before the filing date of the patent, or
before the invention was made; and

3.      Publications having a date more than one year before the filing date of the
patent, or before the invention was made.[13]

In this case, Defendants principally contend that the claim is obvious over each of the following
are prior art references in view of the knowledge of a person of ordinary skill in the art:

- International Patent Application No. WO 2004/078955 ("the GSK application")

- International Patent Application No. WO 98/15617 ("the Life Techs application")

---

[13] 35 U.S.C. § 102(a)(1)-(2); 35 U.S.C. § 102(b)(1)-(2)

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 14

### <u>Obviousness – Differences Between the Claimed Invention and the Prior Art</u>

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.[14]

---

[14] Adapted from FCBA Section B.4.3c, NJIP Sections 5.8-5.9, and AIPLA Section 7.2; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1194-96 (Fed. Cir. 2014); *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d, 1362 (Fed. Cir. 2012); *In re Kubin,* 561 F.3d 1351, 1357 (Fed. Cir. 2009).

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 15

### <u>Obviousness – Hindsight</u>

When considering whether the claimed invention was obvious, you must be careful not to determine obviousness using hindsight.  You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent. You should be careful not use the patent as a road map for selecting and combining items of prior art.[15]

---

[15] Adapted from NJIP Section 5.9, and AIPLA Section 7.0.1; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012).

9507258

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 16
### Obviousness – Level of Ordinary Skill

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the field of cell culture media compositions.  The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant.  The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.[16]

In this case, the parties agree that a person of ordinary skill in the art in the field of cell culture media compositions would have an advanced degree in biochemistry, molecular biology, or a related filed with several years of experience with the formulation and use of cell culture media in the context of biopharmaceutical production.

---

[16] Adapted from FCBA Section B.4.3c(i), NJIP Section 5.11, and AIPLA Section 7.3; *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envt'l Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696-97 (Fed. Cir. 1983).

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 17

### Obviousness– Other Considerations

Before deciding the issue of obviousness, you must also consider certain factors, which may help to determine whether or not the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole.  Factors to consider include:

1.  Was there long felt need for a solution to the problem facing the inventors, which was satisfied by the claimed invention?

2.  Did the inventor proceed contrary to accepted wisdom in the field?

3.  Did the claimed invention achieve unexpectedly superior results over the closest prior art?

4.  Did persons having ordinary skill in the art of the invention express surprise regarding the invention?

5.  Did others in the field praise the invention?

6.  Did others copy the claimed invention?

If some, or all, of these factors are present, this may suggest that the claim was not obvious.  These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claims.  Even if you conclude that some of the above indicators have been established, those factors should be considered along with all the other evidence in the case in determining whether the Defendants has proven that the claimed invention would have been obvious.[17]

---

[17] Adapted from FCBA Section B.4.3c, NJIP Sections 5.8-5.9, and AIPLA Model Patent Jury Instructions Section 7.4; *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *United States v. Adams*, 383 U.S. 39, 52 (1966); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

## PROPOSED FINAL LIABILITY INSTRUCTION NO. 18
### Invalidity– Written Description

Defendants also contend that claim 1 of the 083 patent is invalid because the specification of the patent does not contain an adequate written description of the invention.  To succeed on this defense, Defendants must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application (including the original claims) would have recognized that the inventor possessed the subject matter claimed in the patent.  "Possession" does not require that the claimed invention was actually made, only that it was described in writing in such a way as to demonstrate to a person of ordinary skill in the art that the inventors actually invented what is claimed.

The written description of the patent must adequately describe the full scope of the claims.  It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the invention claimed by the patent.[18]

---

[18] Adapted from FBCA Section B.4.2a, NJIP Section 5.2, and AIPLA Section 9; 35 U.S.C. § 112, ¶¶ 1, 2; *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co*., 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Lizard Tech., Inc. v. Earth Res. Mapping Inc*., 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co*., 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp. v. Genentech, Inc*., 363 F.3d 1247, 1253-55 (Fed. Cir. 2004); *Purdue Pharma L.P. v. Faulding, Inc*., 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an adequate written description; however, it need not include the exact words of the claim*); Lampi Corp. v. Am. Power Prods., Inc*., 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp*., 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly & Co*., 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton*, 76 F.3d 1168, 1172 (Fed. Cir. 1996).

9507258

Dated: _____ __, 2018

*Of Counsel*:

Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Irena Royzman (admitted *pro hac vice*)
iroyzman@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
Fax: 212-336-2222

_____
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
Fax: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

9507258