# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| JANSSEN BIOTECH, INC. | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:17-cv-11008-MLW |
| | ) |
| CELLTRION HEALTHCARE CO., LTD., | ) |
| CELLTRION, INC.,   and | ) |
| HOSPIRA, INC. | ) |
| Defendants. | ) |
| | ) |

## JANSSEN'S PROPOSED FINAL JURY INSTRUCTIONS - DAMAGES

Plaintiff Janssen Biotech, Inc. ("Janssen"), respectfully submits the attached proposed final jury instructions for the damages phase of the trial.  Janssen reserves the right to supplement or modify its proposed jury instructions in view of events at trial or rulings by the Court.

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 1

### Damages – Generally

Defendants have been found to have infringed the 083 patent.  You must now consider what amount of damages to award to Janssen. The damages you award must be adequate to compensate Janssen for the infringement. Your damages award should put Janssen in approximately the same financial position that it would have been in had the infringement not occurred.

Janssen has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Janssen establishes that it more likely than not suffered. While Janssen is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.

There are different types of damages that Janssen may be entitled to recover: lost profits and a reasonable royalty.  These terms will be defined in more detail later in the instructions.  In this case, Janssen seeks damages for lost profits and a reasonable royalty.  Lost profits consist of any actual reduction in business profits Janssen suffered as a result of Defendants' infringement. To the extent that Janssen does not claim or fails to prove its entitlement to lost profits, it is entitled to a reasonable royalty at a minimum.[1]

---

[1] Adapted from Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.1; *see also* 35 U.S.C. § 284; *Ericsson, Inc. v. Harris Corp*., 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Standard Havens Prods., Inc. v. Gencor Indus., Inc*., 953 F.2d 1360 (Fed. Cir. 1991).

1

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 2

### Lost Profits – "But For" Test

In this case, Janssen seeks to recover lost profits for Defendants' sales of Remicade made using the infringing cell culture media.  To recover lost profits, Janssen must show a causal relationship between the infringement and its loss of profit. In other words, Janssen must show that, but for the infringement, there is a reasonable probability that it would have earned higher profits. To show this, Janssen must prove that, if there had been no infringement, it would have made some portion of the sales of Inflectra that Defendants made or that it would have sold its products at higher prices, or both.

Factors you may consider when deciding whether defendants' infringement is the but for cause of Janssen's lost profits include:

1.      The demand for infliximab;

2.      Whether there were readily available, acceptable, noninfringing substitute cell culture media that could be used for manufacturing Defendants' infliximab biosimilar;

3.      Whether Janssen had the manufacturing and marketing capacity to make any sales of infliximab actually made by Defendants; and

4.      The amount of profit that Janssen would have made if Defendants had not infringed.[2]

The lost profits sought by Janssen consist of several components.  If it proves its entitlement to lost profits, Janssen is entitled to lost profits on every sale of its product lost to the Defendants and to the profits lost due to price erosion.

---

[2] Adapted from FBCA Section B.6.2; American Intellectual Property Law Ass'n ("AIPLA") Model Patent Jury Instructions, Section 11.2.1.1; 35 U.S.C. § 284; *Janssen Biotech, Inc. v. Celltrion Healthcare Co*, 239 F. Supp. 3d 328, 331 (D. Mass 2017) (explaining that the "usual 'but-for' causation test" applies here); *Aro Mfg. Co. v. Convertible Top Co*., 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp*., 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc*., 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co*., 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152, 1156 (6th Cir. 1978).

2

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 3

### Lost Profits – Lost Sales and Price Erosion

In this case, Janssen seeks two types of lost profits damages: lost profits on lost sales and lost profits from price erosion. Lost profits based on lost sales are calculated by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales.

Janssen can also recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, Janssen would have been able to continue to charge the same price for Remicade as it had been if Defendants had not launched their infliximab biosimilar. If this fact is established, you may award as additional damages the difference between:

1. The amount of profits Janssen would have made by selling its product at the price it would have been able to charge had there been no infringement, and

2. the amount of profits Janssen actually made by selling its product at the price that Janssen actually charged for its product.

This type of damage is referred to as price-erosion damage. If you find that Janssen suffered price erosion, you may also use the higher price in determining Janssen's lost profits from sales that were lost because of the infringement.[3]

---

[3] Adapted from FBCA Section B.6.2, National Jury Instruction Project ("NJIP"), Model Patent Jury Instructions, Section 6.2, and AIPLA Section 11.2.2; *Vulcan Eng'g Co. v. FATA Aluminum, Inc*., 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1120 (Fed. Cir. 1996); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc*., 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Kalman v. Berlyn Corp*., 914 F.2d 1473, 1485 (Fed. Cir. 1990).

10385712

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 4
### <u>Lost Profits – Reasonable Foreseeability</u>

As discussed, Janssen seeks to recover damages on lost sales of its Remicade product lost to Defendants' Inflectra product, a biosimilar to Remicade.  You should award damages for lost profits based on lost sales of Remicade if you find that it was reasonably foreseeable that Defendants' infringement of the 083 patent would cause Janssen to lose sales of Remicade.[4]

---

[4] 35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1546 (Fed. Cir. 1995); *Janssen Biotech, Inc. v. Celltrion Healthcare Co* , 239 F. Supp. 3d 328, 330 (D. Mass 2017).

10385712

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 5

### Lost Profits – Availability of Noninfringing Alternatives

Defendants may show that Janssen is not entitled to lost profits if there was an

acceptable, noninfringing alternative cell media for manufacturing Defendants' infliximab

biosimilar that was readily available.  An alternative cell media may be considered "available" as

a potential substitute only if it was available as of the date of first infringement.  To be

"available," an alternative cell media must have been either on sale or readily available after a

"practically instantaneous" period of time, measured at the time of first infringement.  ATo be

"acceptable," an alternative cell media must be acceptable for the commercial production of

infliximab and produce an infliximab that is biosimilar to Janssen's Remicade.  Hypothetical,

speculative, theoretical, alternatives that did not exist in the real world at the time of first

infringement or were mere possibilities do not qualify as available noninfringing alternatives. [5]

---

[5] Adapted from FBCA Section B.6.2; *Janssen Biotech, Inc. v. Celltrion Healthcare Co.*, 239 F. Supp. 3d 328, 330 (D. Mass. 2017) ("To decide whether it was feasible for Celltrion to have used a non-infringing media powder to produce Inflectra, it must be determined whether, ***starting on the date of first infringement***, Celltrion could have switched to using a non-infringing alternative.") (emphasis added); Feb. 16, 2018 Tr. at 14:21-25 ("If it's not on the market . . . you have to prove that you could have ***quickly*** developed your own noninfringing alternative."); *see also Micro Chem. Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-23 (Fed. Cir. 2003) (assessing availability at the "time of infringement"); *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011) (assessing availability of NIA at the "time of infringement"); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1346 (Fed. Cir. 1999); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361-62 (Fed. Cir. 2012); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Synqor Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1382 (Fed. Cir. 2013); *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics, Plastics, Inc.*, 637 F.3d 1269, 1288 (Fed. Cir. 2011); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008).

10385712

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 6

### Reasonable Royalty – Entitlement

If you find that Janssen has established infringement, Janssen is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Janssen has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Janssen a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. [6]  Both parties in this case have agreed that a reasonable royalty should be an up-front lump sum payment.

---

[6] Adapted from FBCA Section B.6.5, NJIP Section 6.5, and AIPLA Section 11.2.5; 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc*., 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co*., 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

10385712

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 7
### Reasonable Royalty – Entitlement

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at the date of first infringement. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.[7]

---

[7] Adapted from FBCA Section B.6.5, NJIP Section 6.5, and AIPLA Section 11.2.5; *Golight, Inc. v. Wal-Mart Stores, Inc*., 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc*., 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc*., 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp*., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Interactive Pictures Corp. v. Infinite Pictures, Inc*., 274 F.3d 1371 (Fed. Cir. 2001); *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc*., 750 F.2d 1552 (Fed. Cir. 1984).

10385712

## PROPOSED FINAL DAMAGES INSTRUCTION NO. 8

### Reasonable Royalty – Foreign Sales

Janssen is not entitled to a reasonable royalty directly on sales of Defendants' biosimilar infliximab made with the infringing media outside the United States.  However, you may consider the prospect of sales outside the United States and how the parties may have valued those future worldwide sales as a factor in the hypothetical negotiation.[8]

---

[8] *See, e.g.*, *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1307 (Fed. Cir. 2015) (stating that defendant's foreign sales were "strongly enough tied to its domestic infringement as a causation matter to have been part of the hypothetical negotiation agreement"); *GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*, No. 1:14-CV-7080-LTS-SN, 2015 U.S. Dist. LEXIS 159419 (S.D.N.Y. Nov. 25, 2015) (ordering production of foreign sales information because it is "relevant to GE's claim for damages for allegedly infringing activities in the United States since it has, at a minimum, implications for the valuation of the invention" and is not "precluded by the presumption against extraterritoriality"); *Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 164 (D. Del. 2001).

10385712

Dated: _____ __, 2018

*Of Counsel*:

Gregory L. Diskant (admitted *pro hac vice*)
gldiskant@pbwt.com
Irena Royzman (admitted *pro hac vice*)
iroyzman@pbwt.com
Aron Fischer (admitted *pro hac vice*)
afischer@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
212-336-2000
Fax: 212-336-2222

_____
Heather B. Repicky (BBO # 663347)
hrepicky@nutter.com
NUTTER MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
Fax: 617-310-9192

*Attorneys for Plaintiff Janssen Biotech, Inc.*

9

10385712