# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JANSSEN BIOTECH, INC.

      Plaintiffs,

    v.

CELLTRION HEALTHCARE CO., LTD.,
CELLTRION, INC., and
HOSPIRA, INC.

      Defendants.

Civil Action No. 1:17-cv-11008

## **DEFENDANTS' PROPOSED PRELIMINARY JURY INSTRUCTIONS**

Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc. (collectively, "Defendants"), by and through its counsel, hereby propose the following Preliminary Jury Instructions.

Defendants reserve the right to modify, supplement and/or amend its proposed preliminary instructions to the jury, including without limitation based upon Plaintiff's proposed *voir dire* questions, pre- and post-trial instructions to the jury and verdict form; the parties' arguments regarding and efforts to agree upon such materials; discussions regarding the Court's practices for jury selection; the parties' discussions regarding the claims and defenses that remain to be tried; and to respond to any other issues raised and/or resolved after this submission.

## TABLE OF CONTENTS

**INSTRUCTION NO. 1:**    **OPENING INSTRUCTIONS** ........................................................ 1

**INSTRUCTION NO. 2:**    **DUTY OF JURORS** ..................................................................... 3

**INSTRUCTION NO. 3:**    **WHAT IS AND WHAT IS NOT EVIDENCE** ........................... 4

**INSTRUCTION NO. 4:**    **RULING ON OBJECTIONS** ...................................................... 5

**INSTRUCTION NO. 5:**    **DIRECT AND CIRCUMSTANTIAL EVIDENCE** .................... 6

**INSTRUCTION NO. 6:**    **CREDIBILITY OF WITNESSES** ............................................. 7

**INSTRUCTION NO. 7:**    **JUDGE'S QUESTIONS TO WITNESSES** ............................... 8

**INSTRUCTION NO. 8:**    **FOREIGN LANGUAGE TESTIMONY** .................................... 9

**INSTRUCTION NO. 9:**    **BURDEN OF PROOF** ............................................................. 10

**INSTRUCTION NO. 10:**   **WHAT IS A PATENT AND HOW IS ONE
OBTAINED** ............................................................................. 11

**INSTRUCTION NO. 11:**   **PATENT AT ISSUE** ............................................................... 14

**INSTRUCTION NO. 12:**   **SUMMARY OF CONTENTIONS** ........................................... 15

**INSTRUCTION NO. 13:**   **OVERVIEW OF THE APPLICABLE LAW** ........................... 18

**INSTRUCTION NO. 14:**   **JUROR CONDUCT** ................................................................ 20

**INSTRUCTION NO. 15:**   **NOTETAKING** ....................................................................... 22

**INSTRUCTION NO. 16:**   **ORDER OF TRIAL** ................................................................ 23

**INSTRUCTION NO. 1:    OPENING INSTRUCTIONS**[1]

Ladies and gentlemen, you now constitute the jury in this case. The case is expected to take about three weeks. I am now going to give you detailed instructions on your role as jurors and the architecture of the case and other things that you need to know as you begin listening to the evidence.

I am going to start with a few things that are very important.  It is important that you keep an open mind until it is time to deliberate and decide the case.  That means that you may not discuss the case now or while you are hearing evidence with anyone, even the other members of the jury.  You can leave and tell your family, tell the people you work with, tell your friends that you have been selected as a juror in Federal Court.    You may say it involves pharmaceutical companies, if you want. But do not get into any discussion with anyone about the case. Because I have told you already in the process of selecting you that you have to decide the case based on the evidence, and anything someone outside of court says to you is not in evidence, it would be improper for you to be influenced by that.

In addition, you should not discuss the little you know or the more you will come to know day by day with each other.  It is important that you keep an open mind until the end of the case.  First of all, you cannot know what the relevant questions are and what standards to apply until I give you the legal instructions at the end of the case.  And I cannot tell what those instructions will be now, although I will give you some additional general preliminary instructions, because I have to listen to the evidence to see what issues are necessary for you to decide.

---

[1] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 1 at 205-208 (D. Mass. May 4, 2015) (J. Wolf).

In addition, the evidence comes in like pieces of a jigsaw puzzle.  First, the Plaintiff, Janssen Biotech, Inc., will call witnesses and question them.  The Plaintiff is the party who is suing.  Then the Defendants, Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc., get to question them.  (References to "Celltrion" will refer to Celltrion Healthcare Co., Ltd. and Celltrion, Inc., together, unless you are told otherwise.)  The Defendants are the parties who are being sued.  And then they will each get one more opportunity for redirect or re-cross absent something very unusual.  After that, Defendants will call witnesses and question them, and then the Plaintiff will get to question those witnesses.  They will also each get one more opportunity for redirect or re-cross of Defendants' witnesses absent something very unusual.  But even with a single witness, things might sound very different when the Plaintiff is questioning as compared to when the Defendants are questioning.  You need to keep an open mind that things can change as you hear more evidence.  If you begin discussing the evidence before you have heard all of it and heard my legal instructions, there is a risk that you will make up your minds before you have all the information you need to properly make a decision.  So you should not discuss the case with each other.

You may not read, listen to, or watch anything about the case that might be in the media.  You also cannot blog about the case or talk about it or communicate about it on Facebook or any social media platform.  Maybe you want to say, "I am going to be on jury duty for three weeks," but I would prefer you not even do that because, again, if anybody communicates with you, virtually as well as directly, there is the risk that you will be influenced by something that is not evidence.  Do not do any research on the case.  Everything you need to decide the case and everything you are permitted to consider will be presented here in court.

**INSTRUCTION NO. 2:    DUTY OF JURORS[2]**

You have been sworn in as the jurors in this case.  That means you will be the triers of fact.  You will decide what facts have been proven by the relevant standard of proof.  And at the end of the case, I will give you a verdict form that will be a roadmap concerning the questions you may have to answer, and I will give you detailed jury instructions that your oath requires you to follow in answering those questions.  You should not in the course of the case interpret, or, to be more precise, misinterpret, anything that I say or do as a suggestion of what I think your verdict should be.  That is entirely up to you.

---

[2] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 32-33 (D. Mass. May 5, 2015) (J. Wolf).

**INSTRUCTION NO. 3:    WHAT IS AND WHAT IS NOT EVIDENCE[3]**

As I have reiterated, you will decide the facts based on the evidence.  The facts will come to you in several forms.  It will come to you from the testimony of witnesses.  It will come to you in the form of documents and perhaps other things that will be admitted as exhibits and that you will have back in the jury room when you deliberate.   In addition, there may be some stipulations, some facts that the parties agree are true and you may accept as true for the purpose of the case.

Depositions may also be received in evidence.  Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  In some cases, a deposition may be played for you on videotape.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

You are also going to be exposed to some things that are not evidence.  Anything the lawyers say is not evidence.  When I finish these preliminary instructions, the lawyers will have an opportunity to make opening statements.  That is not evidence.  Then they will question the witnesses.  The lawyers' questions are not evidence.  The answers are evidence.  At the end of the case, the lawyers will have an opportunity to make closing arguments, and again, that will not be evidence.

All of the evidence is going to come to you essentially from the witness stand and from documents.  Anything you see between the lawyers is not evidence.  Anything you may see elsewhere in the courthouse is not evidence.  You should rely only on the evidence presented here in court.

---

[3] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 33-35 (D. Mass. May 5, 2015) (J. Wolf); 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice & Instructions* § 101:40 (6th ed. 2016).

**INSTRUCTION NO. 4:    RULING ON OBJECTIONS**[4]

In addition, it is inevitable that in the course of the case a lawyer will object to the admission of an exhibit or to a particular question.  You should understand that in Federal Court we operate under a system of rules, the Federal Rules of Evidence, which define what kind of information is sufficiently relevant and reliable to be considered in deciding this case.  So if a lawyer believes that a question will elicit an inadmissible answer or a document is not admissible, a lawyer will object.  If it is clear to me what the reason for the objection is and how I ought to rule on it, I may say "Sustained," which means it is a meritorious objection and the document will not come into evidence or the question will not be answered.  You should not speculate or guess what the document says or what the answer would have been.  If I find that the objection is not meritorious, I will overrule the objection by saying "Overruled," and then you can consider the document or the information like any other.

It is possible that I will give a limiting instruction with regard to some evidence.  I may instruct you that you can consider the evidence for some particular purpose and no other purpose.  You will have to follow that direction in your deliberations.  Sometimes it will not be clear to me what the reason is for the objection or how I ought to rule on it.  Then I will see the attorneys at sidebar out of your hearing.  The purpose of these conferences is to decide how certain matters are to be treated under the rules of evidence.  The discussion is not an intention to keep something really interesting or important away from you.  It is just to give me the information I need to make properly informed decisions.  So do not try to listen to that.

It may be that a witness will answer a question before I can rule on an objection.  I might direct you to disregard the testimony, and you will need to do that.

---

[4] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 33-35 (D. Mass. May 5, 2015) (J. Wolf).

**INSTRUCTION NO. 5:    DIRECT AND CIRCUMSTANTIAL EVIDENCE**[5]

The evidence is going to come to you essentially in two forms.  There is direct evidence, and there is circumstantial evidence.  Direct evidence is proof of a fact directly, like the testimony of an eyewitness who says, "I was there.  This is what I saw."

Circumstantial evidence involves proof of some facts from which you can infer that other facts exist even though you do not have direct evidence on that subject.  Now, that may sound like some complicated legal concept, but you really make decisions based on circumstantial evidence every day.  For example, if you went to sleep tonight and the ground was green in front of your house and you got up in the morning and there was six inches of snow there, you would infer that during the night, while you were sleeping, it snowed even though you did not see it and nobody told you that, and you would be right.  That is an example of circumstantial evidence.

---

[5] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 35-36 (D. Mass. May 5, 2015) (J. Wolf).

**INSTRUCTION NO. 6:    CREDIBILITY OF WITNESSES[6]**

As jurors it will be part of your job to decide the credibility of the witnesses and the other evidence.  That means the believability of the witnesses and the other evidence.  At the end of the case, I will give you a kind of commonsense set of considerations you may want to use in judging the credibility of the disputed evidence.  You may in the course of the case hear from certain people who by virtue of their training and experience have opinions that might be helpful to you.  They are sometimes called experts.  But you will not be required to follow those opinions.  You will be required to judge their credibility and decide whether the facts on which they rely have been proven and whether the opinions are credible, believable, and persuasive.

---

[6] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 36 (D. Mass. May 5, 2015) (J. Wolf).

**INSTRUCTION NO. 7:     JUDGE'S QUESTIONS TO WITNESSES[7]**

During the trial, I may sometimes ask a witness questions.  Please do not assume that I have any opinion about the subject matter of my questions.

---

[7] Based on 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice & Instructions* § 101:30 (6th ed. 2016).

**INSTRUCTION NO. 8:   FOREIGN LANGUAGE TESTIMONY[8]**

Languages other than English may be used during this trial.  For example, Korean may be used during this trial with some witnesses.  You must not make any assumptions about a witness or party based solely upon the use of a translator to assist that witness or party.  If a translator is used, you are to consider only that evidence provided through the official court translator.  Although some of you may know the language used, it is important that all jurors consider the same evidence.  Therefore, you must base your decision on the evidence presented in the English translation and disregard any different meaning of the non-English words.

---

[8] Based on 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice & Instructions* § 101:50 (6th ed. 2016).

**INSTRUCTION NO. 9:    BURDEN OF PROOF[9]**

This is a civil case.  I want to explain to you the burden of proof in this case.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not.  Or if you view this as scales of justice, that the credible evidence tips the scales at least slightly in a party's favor.  On other issues that I will identify for you, you must use a different standard and decide whether the fact has been proven by clear and convincing evidence.  That means that you have been left with a clear conviction that the fact has been proven.

Some of you have been jurors before.  You may have had a criminal case.  In a civil case like this one, the parties are not required to prove their claims or defenses beyond a reasonable doubt.  Depending on the issue, Plaintiff or Defendants are required to prove the essential evidence of their claims by either a preponderance of the evidence or by clear and convincing evidence, which are lower standards than beyond a reasonable doubt.

---

[9] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 36-37 (D. Mass. May 5, 2015) (J. Wolf); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.5 (July 2016).

**INSTRUCTION NO. 10:  WHAT IS A PATENT AND HOW IS ONE OBTAINED[10]**

This case involves a dispute relating to a United States patent.  Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution.  To obtain a patent, one must first file an application with the PTO.  The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents.  The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed.  In examining a

---

[10] Based on *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.1 (July 2016).

patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, the PTO can

make mistakes.[11]   A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.   It is your job to consider the evidence presented by the parties and determine independently whether or not the Defendants have proven that the patent is invalid.

---

[11] *Skyhook Wireless, Inc. v. Google, Inc.*, No. CV 10-11571-RWZ, 2015 WL 10015295, at *1 (D. Mass. Feb. 27, 2015) ("Yet, the parties may suggest that the USPTO is not infallible. They may argue that the USPTO sometimes makes mistakes, and that it specifically may have erred in reviewing the asserted patents (*e.g.*, by not reviewing certain prior art or not considering certain invalidity arguments).").

**INSTRUCTION NO. 11:  PATENT AT ISSUE[12]**

The patent at issue in this trial is called U.S. Patent No. 7,598,083, or "the '083 patent." The '083 patent, like other patents, has three different parts: a specification, figures, and the claims.  The specification is a description of the invention and of the manner and process of making or using the claimed invention.  The figures are visual representations that illustrate various aspects of the claimed invention.  Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land.  That is, similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed.  In this case, the only asserted claims of the '083 patent are claims 1 and 2.

I have already determined that the phrase "cell culture media" in the beginning of claim 1 means "nutritive media for culturing cells."[13]  You are to apply my definition of this term throughout this case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. For any claim terms for which I have not provided you with definitions, you should apply the ordinary meaning to a person of ordinary skill in the art.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

---

[12] Based on *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.3, Glossary (July 2016).

[13] Dkt. No. 226, 8/19/2016 Memorandum and Order at ¶ 4.

**INSTRUCTION NO. 12:  SUMMARY OF CONTENTIONS[14,15]**

I will now give you a summary of each side's contentions in this case.  The Plaintiff, Janssen, alleges that Defendants, Celltrion and Hospira, infringe claims 1 and 2 of the '083 patent.  Specifically, Janssen alleges that General Electric Company's subsidiary GE Healthcare (also known as GE, GE HyClone, or HyClone), which is not a defendant in this case, directly infringes the '083 patent by making two cell culture media powders that Janssen argues are covered by claims 1 and 2 of the '083 patent.  Janssen admits that the accused media powders do not literally infringe the '083 patent because there are differences between the accused products and the asserted claims.  Specifically, Janssen admits that the concentrations of at least 12 ingredients in each accused product fall outside of the ranges listed in claim 1 of the '083 patent.  Instead, Janssen alleges that GE HyClone has infringed the '083 patent under the doctrine of equivalents by making the cell culture media powders in the United States.  The GE HyClone media powders that are alleged to infringe are (1) Catalog No. SH3A2713, also known as the growth powder, or the growth media powder, and (2) Catalog No. SH3A2800, also known as the production powder, or the production media powder.  Janssen also alleges that GE HyClone infringes the '083 patent by supplying or causing to be supplied all or a substantial portion of the components listed in claims 1 and 2 of the '083 patent from the United States in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.  Janssen

---

[14]    Based on *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.2 (July 2016).

[15]    Defendants have moved for summary judgment of non-infringement for Hospira.  As part of that briefing, Defendants dispute the legal validity of any theory of infringement for Hospira based on an alleged joint enterprise with Celltrion.  To the extent the Court denies Defendants' motion, Defendants will propose a modified version of this instruction to incorporate Janssen's allegations under a joint enterprise theory.

makes three arguments in an effort to hold Celltrion and Hospira liable for this alleged infringement.

First, as to Celltrion only, Janssen argues that even though Celltrion does not make the media powders, it should be held vicariously liable for GE HyClone's alleged acts of direct infringement under the theory that GE HyClone acted as Celltrion's agent in manufacturing the accused media powders.

Second, Janssen argues that Celltrion is liable for actively inducing GE HyClone to make the allegedly infringing media powders.

Third, Janssen argues that Hospira is liable for actively inducing GE HyClone to make the allegedly infringing media powders.

Janssen also alleges that Celltrion and Hospira infringe the '083 patent by causing to be supplied all or a substantial portion of the components listed in claims 1 and 2 of the '083 patent from the United States in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.

You must consider each company separately when determining whether either actively induced GE HyClone's alleged direct infringement.

Celltrion and Hospira both deny that GE HyClone directly infringed the asserted claims of the '083 patent, because they deny that the GE HyClone media powders meet all of the requirements of claims 1 and 2 of the '083 patent literally or under the doctrine of equivalents. If the GE HyClone media powders do not directly infringe, then there can be no infringement by Celltrion or Hospira. Celltrion also denies that it is vicariously liable for GE HyClone's alleged direct infringement under an agency theory. Both Celltrion and Hospira also deny that they have

actively induced any infringement by GE HyClone.  Both Celltrion and Hospira also deny that they have caused the supply of components from the United States in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.  Finally, Celltrion and Hospira allege that claims 1 and 2 of the '083 patent are invalid due to obviousness and/or lack of written description.

Your job is to decide whether GE HyClone's media powders directly infringe the asserted claims of the '083 patent, whether Celltrion is vicariously liable for GE HyClone's alleged direct infringement, whether Celltrion has actively induced GE HyClone's alleged direct infringement, whether Hospira has actively induced GE HyClone's alleged direct infringement, and whether the asserted claims of the '083 patent are invalid.  If you find that Celltrion or Hospira is liable for infringement of one or more of the asserted claims of the '083 patent and you find that the infringed claim(s) are valid, you will determine what amount of damages, if any, Janssen is entitled to due to infringement of the '083 patent.

**INSTRUCTION NO. 13:  OVERVIEW OF THE APPLICABLE LAW[16]**

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether the Defendants have infringed the claims of the '083 patent.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one patent claim but not infringement as to another patent claim.  There are a few different ways that a patent may be infringed.  I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.  In general, however, the '083 patent may be directly infringed by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product meeting all the requirements of a claim of the '083 patent.  The '083 patent may be indirectly infringed by actively inducing another person or entity to infringe.  The '083 patent may be indirectly infringed by causing to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States.  I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the '083 patent is invalid.  A patent may be invalid for a number of reasons, including because it claims subject matter that is obvious.  Even though every element of a claim is not shown or sufficiently described in a single

---

[16] Based on *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.4 (July 2016).

piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time frame. You will need to consider a number of questions in deciding whether the invention(s) claimed in the '083 patent are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet the written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as the invention is claimed in the claims of the issued patent.

Finally, if you find that Celltrion or Hospira infringed one or more claims of the '083 patent, you will determine what damages, if any, Janssen is entitled to due to the infringement. I will provide you detailed instructions on these issues at the conclusion of the case.

**INSTRUCTION NO. 14:  JUROR CONDUCT**[17]

With regard to your conduct as jurors, it is very important that you keep an open mind until it is time to deliberate and decide. This means you may not discuss the case with anybody who is not on the jury, and you also may not discuss the evidence you will hear in the case with yourselves.  That can be hard to do.  You all do not know each other.  You are brought together for the purpose of hearing the case.  But as I explained to you, evidence will come in like pieces in a jigsaw puzzle, and until you have all the evidence and what my instruction on the applicable law is, you cannot begin to properly make up your mind.  If you discuss the case, there is the real risk you will begin making up your mind before you have all the necessary information. And that is not permissible.

You may not read or listen to anything about the case if it is in the media.  You may not do any research to learn anything about the individuals or corporations involved in the case.  In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.  Everything you need to know and everything you are permitted to consider will be presented to you here in court.

I know that many of you use cell phones, smart phones, the Internet and other tools of technology.  You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case until the trial has ended and you have been discharged as jurors.  This includes your family and friends.  You may tell people you are a

---

[17] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 39-40 (D. Mass. May 5, 2015) (J. Wolf); 3 Kevin F. O'Malley, Jay Grenig, and William C. Lee, *Federal Jury Practice & Instructions* §§ 101:11, 101:13 (6th ed. 2016).

juror, but do not tell them anything else about the case.  You may not communicate with anyone about the case on your cell phone, through e-mail, iPhone, text messaging, or on Twitter, through any blog or website, including Facebook, Google+, LinkedIn, or YouTube.  You may not use any similar technology of social media to communicate about the case, even if I have not specifically mentioned it here.  It would create the risk that somebody would communicate with you, and you would be influenced by something other than the evidence.

During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case.

I expect you will inform me right away if you become aware of another juror's violation of these instructions.

**INSTRUCTION NO. 15: NOTETAKING[18]**

After the opening statements of the lawyers, I will have the deputy clerk give you notebooks. If you want, you can take notes on the testimony you will be hearing over the next three weeks. Since what the lawyers say is not evidence, I am not giving you the notebooks for the opening statements. But while taking notes can be helpful, you should not be distracted by doing that. You are not going to be able to write down everything. I think, in every case, judgments on credibility by the jury will be important. I have not heard the testimony, but you may hear different versions of certain events. And you will have to decide who to believe, and when you watch the witness, that can help you decide who is believable and who is not. So you do not want to be distracted by your notes. And in your deliberations, you should recognize that your notes may not be accurate or complete. Ultimately, you are going to have to rely on what you remember of the evidence. And the fact that somebody has it in her notes and somebody else does not remember or have it in their notes should not be given too much weight.

Although the stenographer is taking all of this down, I will not have transcripts of the testimony to give you at the end of the case. They are just drafts at that point. So listen carefully, make notes if you think it will help you remember things that you think are important. But there will not be transcripts.

---

[18] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 40-41 (D. Mass. May 5, 2015) (J. Wolf).

## INSTRUCTION NO. 16:  ORDER OF TRIAL[19]

With regard to the architecture of the trial, in a moment the lawyers will have an opportunity to make opening statements.  An opening statement is not intended to be or allowed to be an argument, but it is the opportunity that the lawyers have to introduce themselves, their clients, to tell you what they expect the evidence will show and to point out certain things that they hope you will be particularly alert to.  What they say is not evidence.

After the opening statements, Plaintiff will present its evidence in support of its contention that some of the claims of the '083 patent have been infringed by the Defendants.  To prove infringement of any claim, the Plaintiff must persuade you that it is more likely than not that the Defendants have infringed that claim.  The Plaintiff has the burden of proof on the issue of infringement and damages, so the Plaintiff gets to call witnesses first.  The Plaintiff will do what is called direct examination.  The Defendants will have an opportunity for cross-examination.  The Plaintiff will have an opportunity for what is called redirect that asks some more questions relating to cross-examination.  And the Defendants will have an opportunity for re-cross.  Absent something very unusual, each side will get to question a witness no more than twice, and then we will move to the next witness.

The Defendants will then present their evidence that the claims of the '083 patent are invalid.  To prove invalidity of any claim, the Defendants must persuade you by clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, the Defendants will put on evidence responding to Plaintiff's proof of infringement.

---

[19] Based on the Preliminary Jury Instructions from *Alves v. Daly, et al.*, Civ. No. 12-cv-10935, Jury Trial Day 2 at 41-42 (D. Mass. May 5, 2015) (J. Wolf); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.5 (July 2016).

Plaintiff may then put on additional evidence responding to Defendants' evidence that the claims of the '083 patent are invalid.   This is referred to as "rebuttal" evidence.   Plaintiff's "rebuttal" evidence may respond to any evidence offered by the Defendants.

After you have heard all the evidence, the lawyers will have an opportunity to make closing arguments where they can remind you of the evidence as they remember it and argue what inferences they would like you to draw.   Then I will give you my detailed instructions, and then it will be time for you to deliberate and decide the case.