# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., | |
| Plaintiff, | |
| v. | Case No.  1:17-cv-11008-MLW |
| CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC., | |
| Defendants. | |

**DEFENDANTS' POSITIONS ON AND OBJECTIONS TO
JANSSEN'S PROPOSED JURY INSTRUCTIONS**

Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc. (collectively, "Defendants"), by and through its counsel, hereby present their positions with regard to disputed jury instructions.

Below, Defendants reproduce in full (including footnotes) each of Janssen's proposed instructions on which the parties expect to have substantive disagreements. Following each disputed proposed instruction, Defendants present their responsive position and objections to Janssen's proposal. Defendants reserve the right to modify, supplement, and/or amend these objections, including, without limitation, based on any subsequent modifications Janssen makes to its proposed instructions, based on Janssen's arguments, based on rulings to pending motions by the Court, based on subsequent efforts by the parties to agree on such issues, or based on other events or material identified after this submission

## CONTENTS

**JANSSEN PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7** ............................... 1

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 1** ...................................... 2

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 2** ...................................... 5

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 3** ...................................... 7

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 4** ................................... 10

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 5** ................................... 11

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 6** ................................... 14

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 7** ................................... 18

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 8** ................................... 22

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 9** ................................... 24

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 10** ................................. 26

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 11** ................................. 28

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 12** ................................. 30

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 13** ................................. 32

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 14** ................................. 34

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 15** ................................. 36

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 16** ................................. 37

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 17** ................................. 39

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 18** ................................. 42

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 1** ................................... 45

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 2** ................................... 48

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 3** ................................... 52

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 4** ................................... 55

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 5** ................................... 57

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 6**................................... **60**

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 7**................................... **62**

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 8**................................... **64**

## JANSSEN PROPOSED PRELIMINARY JURY INSTRUCTION NO. 7

### Summary of Contentions

In this case, the plaintiff, Janssen, alleges that the defendants, Celltrion and Hospira, infringe the 083 patent by making products that Janssen argues are covered by claim 1 of the 083 patent. Janssen also argues that Celltrion and Hospira have actively induced infringement of these claims of the 083 patent by HyClone. The products that are alleged to infringe are the [1] Celltrion Growth Media and the Celltrion Production Media.

Celltrion and Hospira deny that they have infringed the asserted claims of the 083 patent under the doctrine of equivalents and argue that, in addition, claim 1 is invalid. Your job is to decide whether Celltrion and Hospira have infringed claim 1 of the 083 patent and whether the claim is invalid.[1]

### DEFENDANTS' OBJECTIONS:

Defendants object to this proposed instruction as incomplete because it fails to adequately explain the parties' contentions in this case, including omitting the doctrine of equivalents from Janssen's contentions, why Janssen believes the doctrine of equivalents applies, the involvement of GE HyClone, the theories on which Janssen seeks to hold Defendants liable for the actions of others, the need for the jury to separately consider Celltrion and GE HyClone, the bases of Defendants noninfringement positions, the bases of Defendants' invalidity positions, and any mention of damages issues.

[1] Defendants object to the phrases "Celltrion Growth Media" and "Celltrion Production Media" as inaccurate and unfairly prejudicial.

Instead of Janssen Proposed Preliminary Instruction No. 7, the Court should give Defendants' Proposed Preliminary Instruction No. 12, for the reasons offered there, which are incorporated into this objection.

---

[1]   Adapted from Federal Circuit Bar Association ("FCBA"), Model Patent Jury Instructions, Section B.1 and American Intellectual Property Law Association ("AIPLA") Model Patent Jury Instructions Section 1.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 1**

**Introduction to Deliberations -- Summary of Contentions**

MEMBERS OF THE JURY, now that you have heard the evidence and the argument, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.

It is your duty as jurors to follow the law as I shall state it to you and to apply that law to the facts as you find them from the evidence in this case. You are not to single out one instruction alone as stating the law but must consider the instructions as a whole. Neither are you to be concerned with the wisdom of any rule of law stated by me.

Counsel have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the Court in these instructions, you are of course to be governed by the Court's instructions.

Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of the case or what that opinion is. As I said at the beginning of the trial, it is not my function to determine the facts, but rather yours.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is being given to you, and reach a just verdict, regardless of the consequences.[2]

[1] As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must

---

[2]   Adapted from 3 Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 72.01 (4th ed. 1987 & Supp. 2000) [hereinafter Devitt & Blackmar].

prove to win on each of its contentions. As I previously told you, Janssen alleges that Defendants infringe the 083 patent by making products that Janssen argues are covered by claim 1 of the 083 patent. Janssen contends that HyClone, a third party, manufactures two products that infringe the 083 patent. It alleges that Celltrion is directly liable for HyClone's actions because HyClone acts Celltrion's agent, or because HyClone is subject to Celltrion's direction and control. Janssen also argues that Celltrion and Hospira are liable for actively inducing infringement of claim 1 of the 083 patent by HyClone. [2] Janssen also alleges that Celltrion and Hospira participated in a joint venture and that Hospira is therefore jointly responsible for any infringement by Celltrion. The products that are alleged to infringe are the [3] Celltrion Growth Medium and the Celltrion Production Medium.

Defendants deny that they have infringed the asserted claim of the 083 patent. Celltrion argues further that it is not responsible for alleged infringement by HyClone, either directly or by inducing infringement. Hospira also argues that it is not responsible for any alleged infringement by HyClone and [2] that it is not engaged in a joint venture with Celltrion. [4] Defendants also argue that the 083 patent is invalid.[4]

**DEFENDANTS' OBJECTIONS:**

[1] Defendants object to this proposed instruction as incomplete because it fails to adequately explain the parties' contentions and the bases therefore including failing to describe the bases on which Defendants assert that the accused GE HyClone media are non-infringing, failing to state that Celltrion denies that GE HyClone is its agent, failing to state that Hospira denies that GE HyClone is its agent.

[2] Defendants object to the inclusion of Janssen's "joint enterprise" or "joint venture" theory as legally improper. Hospira is entitled to summary judgment on this issue. *See* Case No. 15-cv-10698 Dkt. 264-266, 276, 293-294, 318, 344, 378, 405.

[3] Defendants object to the phrases "Celltrion Growth Media" and "Celltrion Production Media" as inaccurate and unfairly prejudicial.

[4] Defendants object to this proposed instruction as incomplete for failing to instruct the jury that Celltrion and Hospira must be considered separately. *Federal Civil Jury Instructions Of The Seventh Circuit*, Committee on Pattern Civil Jury Instructions of the Seventh Circuit, 1.25 (2005); *Rivera-Carrasquillo v. Centro Ecuestre Madrigal, Inc.*, 812 F.3d 213, 233 (1st Cir. 2016); *Watts v. Laurent*, 774 F.2d 168, 175 (7th Cir. 1985)

Instead of Janssen Proposed Liability Instruction No. 1, the Court should give Defendants' Proposed Post-Trial Instruction Nos. 1 and 17, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 2**

**The Meaning of the Claims**

To decide the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

Words in the patent claims generally should be given their plain, ordinary meaning. However, as I mentioned at the beginning of the case, there are certain terms or phrases in the claim that I have defined as a matter of law. You must accept and use these meanings in your deliberations concerning both infringement and invalidity.

Claim 1 of the 083 patent uses the phrase: "A soluble composition, suitable for producing a final volume of cell culture media, wherein the composition comprises the following components." In this case, I have determined that the term "cell culture media" in claim 1 of the patent means "a nutritive medium for culturing cells. In patents, the word "comprises" means "including the following but not excluding others." If you find that the Celltrion media infringe by meeting all of the elements in claim 1, you must find that the product infringes claim 1 even if the Celltrion media also includes additional components.[3]

---

[3]   Adapted from Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.2, National Jury Instruction Project ("NJIP"), Model Patent Jury Instructions, Section 3.3, and American Intellectual Property Law Ass'n ("AIPLA") Model Patent Jury Instructions, Section 2.1 *;Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996) (claim construction of a patent, including claim terms, is exclusively within the province of the court); *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) ("ordinary and customary meaning" is based on the understanding of a person of ordinary skill in the art in question at the time of the invention) *Cook Biotech Inc. v. ACell, Inc.,* 460 F.3d 1365, 1373-78 (Fed. Cir. 2006).

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's proposed instruction as an incomplete and inaccurate statement of the law because it fails to inform the jury how a claim defines what it covers, what an independent claim is, and what a dependent claim is. *See Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.2.2, B.2.2a (July 2016).

Defendants further object that Janssen's proposed instruction as legally incomplete and inaccurate because it fails to inform the jury that they should not take the Court's definition of the language of the claims as an indication that the Court has a view regarding how the jury should decide the issues they are being asked to decide, such as infringement and invalidity. *See Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.2.3 (July 2016).

Defendants further object that Janssen's proposed instruction is incomplete and misleading to the extent it fails to explain to the jury that words in the claim for which the Court has not provided a definition, should be interpreted to have their common meaning to a person of ordinary skill in the art. *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005).

Instead of Janssen Proposed Liability Instruction No. 2, the Court should give Defendants' Proposed Post-Trial Instruction Nos. 18, 19, 20 and 21, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 3**

**Infringement - Direct and Induced**

I will now instruct you as to the rules you must follow when deciding whether Janssen has proven that Celltrion or Hospira infringed claim 1 of the 083 patent. [1]

This case involves two allegations of infringement. Janssen alleges that the Defendants directly infringed claim 1 of the 083 patent and also induced others to infringe claim 1 of the 083 patent. As explained further in the following instructions, direct infringement results if the accused product is made, used, sold, or offered for sale in, or imported into, the United States by the defendant, and is covered by at least one claim of the patent.[2] Induced infringement results if a defendant induces another person or entity to directly infringe a patent.[4] [3]

**DEFENDANTS' OBJECTIONS:**

[1] Defendants object to Janssen's instruction as incomplete with respect to GE HyClone, which Janssen has accused of direct infringement and forms the basis of Janssen's inducement claim. Janssen has edited the FCBA's opening statement that "I will now instruct you how to decide whether or not [alleged infringer] has infringed the [ ] patent." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1 (July 2016) (bracketed statements in original). The jury must decide if Celltrion or Hospira have directly infringed, but also must decide if GE HyClone has directly infringed as part of Janssen's inducement claim. Thus, "[alleged infringer]" in the FCBA instruction properly encompasses GE HyClone, Celltrion, or Hospira. Defendants instruction "I will now instruct you how to decide whether or not GE HyClone, Celltrion, or Hospira has infringed the '083 patent." should be given. *Id.*

In addition, the jury should be instructed that "There may be infringement by one defendant but not another" as set forth in Defendants' instructions to make clear that infringement is assessed on an entity by entity basis. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir.

---

[4]   Adapted from FCBA, Section B.3.1. and NJIP Section 3.1; 35 U.S.C. § 271; *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 797 F.3d 1020 (Fed. Cir. 2015); *Merial Ltd. v. CIPLA Ltd.,* 681 F.3d 1283, 1302-03 (Fed. Cir. 2012); *WiAVSolutions LLC v. Motorola, Inc.,* 631 F.3d 1257, 1264 (Fed. Cir. 2010); *WordTech Sys., Inc. v. Integrated Network Solutions, Inc.,* 609 F.3d 1308, 1313-18 (Fed. Cir. 2010).

2014) ("[F]or a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), *that party* must commit all the acts necessary to infringe the patent, either personally or vicariously." (emphasis added))

[2] Defendants object to Janssen's instruction as incomplete and misleading. "Direct infringement is when a person or company itself infringes a patent," as set forth in Defendants' instructions. *See* Defendants' Post-Trial Instruction No. 22; *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014). Janssen's instruction fails to make this clear. Rather, Janssen ambiguously refers to "the defendant," thereby inviting the jury to lump both defendants together for purposes of a decision. Likewise, Janssen's instruction as to "by the defendant" improperly suggests to the jury that it must look to the defendants; GE HyClone is separately alleged to have infringed, and a jury must decide which (if any) actors actually infringed.

Defendants also object to the statement "if the accused product is made, used, sold, or offered for sale in, or imported into, the United States by the defendant" as improperly suggesting (especially when spoken aloud) that territoriality only applies to importation. Rather, 35 U.S.C. §271(a) states "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, *within the United States or imports into the United States* any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. §271(a) (emphasis added).

[3] Defendants object to Janssen's instruction as incomplete and misleading.  First, it suggests that inducement can be found even in the absence of direct infringement. This is why the FCBA Model Patent Jury Instructions, as well as Defendants' instructions, include the phrase "There cannot be indirect infringement without someone else engaging in direct infringement." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1 (July 2016); Defendants' Post-Trial Instruction No. 22.  Janssen should not be permitted to edit this instruction out.

Second, Janssen edits out the word "active" prior to the word "inducement" as used in the statute and the cited FCBA Model Patent Instructions  *See* 35 U.S.C. §271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1 (July 2016) (referring to "active inducement"). "[T]he adverb 'actively' suggests that the inducement must involve the taking of affirmative steps to bring about the desired result." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011).  Likewise, Janssen's instruction fails to make clear "Active inducement is referred to as 'indirect infringement' and it occurs when a person or company knowingly and intentionally takes affirmative steps to induce another person or company to directly infringe." as set forth in Defendants' Post-Trial Instruction No. 22.  *See* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("the adverb 'actively' suggests that the inducement must involve the taking of affirmative steps to bring about the desired result"); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc) ("Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.").

Instead of Janssen Proposed Liability Instruction No. 3, the Court should give Defendants' Proposed Post-Trial Instruction No. 22, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 4**

**<u>Infringement - Burden of Proof</u>**

The burden is on Janssen to prove infringement by a preponderance of the evidence. To "establish by a preponderance of the evidence" means to prove that something is more likely so than not to be true. A preponderance of the evidence means evidence that, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true.[5]

**<u>DEFENDANTS' OBJECTIONS:</u>**

Defendants object to Janssen's instruction as incomplete and misleading. The FCBA instruction cited by Janssen states "In order to prove infringement, [patent holder] must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved." Model Patent Jury Instructions, Fed. Circuit Bar Ass'n, Instr. B.3.1 (July 2016) (referring to "active inducement"). Defendants' Post-Trial Instruction No. 22 faithfully applies this instruction. In contrast, Janssen's instruction fails to inform the jury that all the requirements must affirmatively be proven by Janssen. In addition, Janssen's evidentiary comparison instruction improperly assumes that Janssen has presented affirmative evidence with respect to each element of infringement sufficient to make a prima facie case. *See Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1 (July 2016) citing *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468–69 (Fed. Cir. 1993) (upholding lower court's finding of noninfringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements).

Instead of Janssen Proposed Liability Instruction No. 4, the Court should give Defendants' Proposed Post-Trial Instruction No. 22, for the reasons offered there, which are incorporated into this objection.

---

[5]   Adapted from from FCBA, Section B.3.1, NJIP Section 3.2, and Devitt & Blackmar, *supra* note 1, § 72.01.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 5**

## Elements of Infringement

To prevail on its claim of infringement, Janssen must prove by a preponderance of the evidence that the accused product contains elements identical or equivalent to each claimed element of the patented invention. [1] You must proceed on an element-by-element basis. Janssen must establish that every element of the claim is present in the accused product.

In this case, Janssen asserts that some elements of claim 1 of the 083 patent are literally present and that others are present under the "doctrine of equivalents." A claim element is literally present in an accused product if it is present in the accused product exactly as claimed. Under the doctrine of equivalents, a product can infringe an asserted patent claim if it includes elements that are not literally present in the accused product but nonetheless are equivalent to those elements of the claim.

Equivalence can be assessed in one of two ways. [2] First, an element of a claim is equivalent to an element of the accused product that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial. Second, an element of the accused product is equivalent to an element of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have concluded that the corresponding element in the accused product (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the element of the claim. [3] A person of skill in the art may consider whether interchangeability between the elements is known in the field of technology of the patent. [4]  An element is equivalent if it meets either of these tests.[6]

---

[6]    Adapted from FCBA, Section B.3,1c, NJIP Section 3.8, and AIPLA Section 3.6; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17

**DEFENDANTS' OBJECTIONS:**

[1] Defendants object to Janssen's instruction as incomplete and misleading. First, it vaguely suggests Janssen's burden of proving "infringement" is met simply by showing the accused products "the accused product contains elements identical or equivalent to each claimed element of the patented invention." As recognized by the cited FCBA and Defendants' instructions, there are two types of infringement at issue—direct infringement and inducement—each with multiple requirements that must be proven by Janssen. *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1 (July 2016); Defendants' Post-Trial Instruction Nos. 22-32. Second, there are three parties at issue: GE HyClone, Celltrion, and Hospira. The jury must be informed infringement is to be determined on a party-by-party basis.

[2] Defendants object to the phrase "can" as unduly permissive of other tests. As noted above, there are specific requirements to prove the doctrine of equivalents, and the jury cannot be invited to speculate as to other means.

[3] Defendants object to Janssen's instruction as inaccurate. The cited FCBA version states "You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent . . . would have found that the [structure or action]: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1c (July 2016). Janssen improperly edits this instruction to insert "the corresponding element in the accused product," which improperly suggests there is a corresponding element in the accused product. Defendants also object to use of the term "element" as confusing; several claim elements recite chemical elements, and a juror is likely to be confused between the patent term element (which can refer to the ingredient or range) and chemical elements recited in the claims. Defendants have included an instruction on this point. Defendants' Post-Trial Instruction No. 19.

[4] Defendants object to Janssen's instruction as inaccurate. The cited FCBA version states "In order for the [structure or action] to be considered interchangeable, the [structure or action] must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time is not sufficient." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1c (July 2016). Janssen edits "must have been known" to "can consider" without any temporal aspect, and deletes "Interchangeability at the present time is not sufficient." Janssen's edited instruction improperly broadens it to allow the jury to consider interchangeability arguments explicitly denied by the instruction. If this instruction is given, it should conform to the FCBA: "In order for the accused concentration for a given ingredient to be considered interchangeable, the accused concentration for a given ingredient must have been known at the time of the alleged infringement to a person having ordinary skill in

---

(1997); Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 609 (1950) (explaining what constitutes an "equivalent"); *Interactive Pictures Corp. v. Infinite Pictures Inc.,* 274 F.3d 1371, 1381-82 (Fed. Cir. 2001).

the field of technology of the patent. Interchangeability at the present time is not sufficient." *See Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.1c (July 2016).

Instead of Janssen Proposed Liability Instruction No. 5, the Court should give Defendants' Proposed Post-Trial Instruction No. 22–33, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 6**

**Direct Infringement**

Janssen asserts that Celltrion is responsible for making the accused products in the United States and is therefore liable for direct infringement of the 083 patent. [1] Celltrion asserts that it has not directly infringed the 083 patent because HyClone makes the accused products. [2]

Celltrion is directly liable for infringing the 083 patent if the accused products infringe the 083 patent and:

(a)     HyClone acted as the agent of Celltrion in making the accused products, or

(b)     Celltrion entered into a contract for HyClone to make the accused products and exercised direction or control over HyClone when HyClone made the accused products pursuant to the contract.

HyClone acted as an agent of Celltrion if (1) Celltrion intended to grant authority to HyClone to act on its behalf, (2) HyClone agreed to the agency relationship, and (3) Celltrion retained control and direction over key aspects of HyClone's actions.[7] [3]

**DEFENDANTS' OBJECTIONS:**

Defendants maintain their objection to Janssen's instruction as misstating the law on direct infringement for the reasons stated in 10698 Dkt. 265, 293, 356, and 401 at 31-46.  For example, Janssen's approach collapses down the law on indirect infringement to one of association, which improperly ignores the requirements of knowledge of the patent, intent to infringe the patent, and the impossibility of inducement where the alleged inducer either lacks knowledge of infringement or holds a good faith belief of non-infringement.  "In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement."  *E.g. Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1926 (2015) (internal quotations omitted).  Janssen cannot mask an inducement claim as one of direct infringement.

---

[7]     Adapted from AIPLA Section 3.2.1; Case No. 15-cv-10698, Dkt. 332, 12/22/16 Hr'g Tr. at 9:3-22; *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008); *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373, 1381-82 (Fed. Cir. 2007). *Limelight Networks, Inc.* v. *Akami Techs., Inc.*, 797 F.3d 1020 (Fed. Cir. 2015); Restatement (Third) of Agency § 1.01 cmt. c.

Janssen's support is inapposite.  *BMC* involved a divided infringement of a method claim where different actors performed different steps, not a situation where one actor performed all the steps. *BMC Resources, Inc. v. Paymentech, Lp*, 498 F. 3d 1373, 1379-82 (Fed. Cir. 2007).  In fact, *BMC* distinguished the situation where one actor performed all the steps as being an inducement question: "Where a defendant participates in infringement but does not directly infringe the patent, the law provides remedies under principles of indirect infringement." *Id.*  Janssen's citations to AIPLA 3.2.1, *Muniauction*, and *Limelight* likewise addresses divided infringement where different actors are responsible for performing different steps of a method claim.  AIPLA Section 3.2.1; *Muniauction, Inc. v. Thomson Corp.,* 532 F.3d 1318, 1328-29 (Fed. Cir. 2008); *Akami Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  Janssen has cited no authority for holding one entity responsible for another entity's direct infringement absent inducement. This is especially important where, as here, GE HyClone sold the advertised the combination of ADCF mab and Cell Boost 5 to the public prior to Celltion's involvement (GEHC-10698-006760) and none of Celltrion's alleged "customizations" are alleged to have triggered infringement. Moreover, this case involves an apparatus (rather than a method claim) and Janssen has cited no authority for extending divided infringement to apparatus claims.

Indeed, Courts have subsequently rejected the application of this divided infringement case law to situations where one entity practices all claim elements; where all elements are met by a single entity, infringement must be analyzed under the inducement framework rather than the *Akami* framework.  For example in *Finjan*, the plaintiff argued vicarious liability of Sophos for its customer practice of the alleged invention.  *Finjan, Inc. V. Sophos, Inc.*, 244 F. Supp. 3d 1016, 1044 (N.D.Cal. 2017) ("Finjan responds that, under the Federal Circuit's recent decision in [*Akami*], it can sustain its method claims against Sophos by showing vicarious use of the method steps by Sophos's customers.").  The court rejected this, holding:

> Finjan misapplies the Akamai IV court's divided infringement ruling to this case. As the Akamai IV court explained, its divided infringement analysis applies "[w]here more than one actor is involved in practicing the steps" of the asserted method claim. Akamai IV, 797 F.3d at 1022. This is not a divided infringement case. Finjan asserts that a single actor satisfies all of the steps of the method claims by operating Sophos's UTM and Endpoint products. Finjan is attempting to show direct infringement by demonstrating that Sophos's customers perform all of the steps of the method claims: ***this is an indirect infringement claim, not a divided direct infringement claim, and Akamai IV does not apply to these facts.*** Because Akamai IV does not apply, and because Finjan voluntarily dismissed its indirect infringement claims, Finjan was required to show that Sophos itself performed all of the steps of the method claims.

*Id.* at 1044 (emphasis added).  Likewise in *Rearden*, the plaintiff attempted to argue that the defendant "directed and controlled" the infringement of a third party, citing *Akami* as Janssen does here.  *Rearden LLC v. Walt Disney Co.*, 293 F.Supp.3d 963, 972-73 (N.D.Cal. 2018).  Because all limitations were performed by the third party, the court dismissed the direct infringement claims and required the plaintiff to proceed under inducement.  *Id.*  This makes sense: divided infringement confronted a situation where multiple actors came together to split up yet perform all

steps of a method claim "as if each is a single actor." *Akami Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). In contrast, where a single entity is alleged to have performed all steps of the method claim and another is alleged to have caused it, that is expressly governed by statute. 35 U.S.C. §271(b); *Finjan*, 244 F. Supp. 3d at 1044; *Rearden*, 293 F.Supp.3d at 972-73.

To the extent this instruction is given at all, which it should not be for the reasons stated above, the court should instead provide Defendants Post-Trial Instruction Nos. 28, 31, for the reasons offered there, which are incorporated into this objection.

[1] Defendants object to this instruction as incomplete and misleading. Specifically, "Celltrion is responsible for making the accused products in the United States and is therefore liable for direct infringement of the 083 patent" is a misstatement of the law even under Janssen's erroneous theory. A jury is likely to interpret this statement as though a vague notion of causation is enough to trigger liability even if the alleged causation is legally insufficient. Likewise, Janssen's instruction improperly suggests mere manufacture of the accused products is sufficient for direct infringement without also establishing that the manufactured product meets the asserted claims.

[2] Defendants object to this instruction as incomplete and misleading. Defendants dispute infringement on numerous grounds, including the fact that the accused products do not meet the claims a dozen or more ways, Janssen's purported evidence is improper and unreliable, vitiates the claim limitations, and ensnares the prior art.

[3] Defendants object to this instructions of "HyClone acted as the agent of Celltrion in making the accused products", "Celltrion entered into a contract for HyClone to make the accused products and exercised direction or control over HyClone when HyClone made the accused products pursuant to the contract" and the remainder of the instructions in the passage as incomplete and misleading. For the reasons stated in Defendants Post-Trial Instruction No. 31, there are numerous other requirements to vicarious liability (to the extent vicarious liability even applies, which it does not). For example as to agency, if the parties disavow an agency relationship relating to the creation of the allegedly infringing media powders, you should not find that one exists. *Ericsson v. D-Link Sys.*, 773 F.3d 1201, 1236 (Fed. Cir. 2014) (Agency requires "(1) the principal manifested intent to grant authority to the agent, and (2) the agent agreed or consented to the agency relationship."); *All Boys Music v. DeGroot*, No. 89 CIV. 8258 (LMM), 1992 WL 51502, at *12 (S.D.N.Y. Mar. 9, 1992) ("It is axiomatic…that the formation of an agency relationship requires the consent of both parties thereto."); *Tellium v. Corning*, No. 03 CIV. 8487 (NRB), 2004 WL 307238, at *6 (S.D.N.Y. Feb. 13, 2004) ("Where an agreement specifically precludes the creation of an agency relationship, courts will not create one."); *Butto v. Collecto*, 802 F. Supp. 2d 443, 449 (E.D.N.Y. 2011) ("Given Collecto's express disavowal of an agency relationship with either wireless provider—including an express disavowal of the wireless providers' control over Collecto's operations—it is difficult to find that Collecto was an agent of either.").

Likewise, the mere purchase of a product does not make the seller the buyer's agent. *Joao Control & Monitoring Sys. of Cal. v. Sling Media*, No. C-11-6277 EMC, 2012 WL 3249510, at *7 (N.D. Cal. Aug. 7, 2012) ("To allow a vicarious liability claim based solely on a customer relationship[] . . . would run afoul of the Federal Circuit's warning in BMC that 'expanding the rules governing

direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement.'"); *see also BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007) ("expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement").

Some aspect of direction and control is not enough, either.  Instead, agency is a fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act. Restatement (Third) of Agency § 1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.").

To the extent this instruction is given at all, which it should not be for the reasons stated above, the court should instead provide Defendants Post-Trial Instruction Nos. 28, 31, for the reasons offered there, which are incorporated into this objection.

## JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 7

### Inducing Infringement

In this case, Celltrion and Hospira are also accused of actively inducing HyClone to directly infringe Janssen's patent after December 2014. To find that Defendants actively induced infringement, it is not necessary to show that they themselves directly infringed, provided: (1) Defendants actively induced acts of infringement by HyClone and (2) Defendants knew, or were willfully blind to the probability that, the acts were infringing. [1]

To prove active inducement, Janssen must establish that it is more likely than not that:

1.    Defendants aided, instructed, or otherwise acted with the intent to cause acts by HyClone that would constitute direct infringement of the patent;

2.    Defendants knew of the patent, or showed willful blindness to the existence of the patent, at that time;

3.    Defendants knew, or showed willful blindness such that it consciously ignored the probability [2] that HyClone's actions would infringe at least one claim of the patent; and

4.    HyClone infringed at least one patent claim. [3]

To find willful blindness: (1) Defendants must have subjectively believed that there was a high probability that a patent existed covering the accused product; and (2) Defendants must have taken deliberate actions to avoid learning of the patent or that the accused product infringes the patent.[8] [4]

---

[8]    Adapted from FCBA, Section B.3.2, NJIP Section 3.11, and AIPLA Model Patent Jury Instructions Section 3.10; 35 U.S.C. § 271(b); *Limelight Networks, Inc.* v. *Akamai Techs., Inc., 797* F.3d 1020 (Fed. Cir. 2015); *Global-Tech Appliances, Inc.,* v. *SEB, S.A.,* 563 U.S. 754 (2011); *Commil USA, LLC* v. *Cisco Sys., Inc., Commil USA, LLC* v. *Cisco Sys.,* 135 S. Ct. 1920 (2015); *DSU Medical Corp.* v. *.IMS Co.,* 471 F.3d 1293, 1304-05 (Fed. Cir. 2006) (enbanc); *Metabolite Labs., Inc.* v. *Lab. Corp. of Am. Holdings,* 370 F.3d 1354, 1365 (Fed. Cir. 2004); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC,* 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553 (Fed. Cir. 1990); *Hewlett-Packard Co.* v. *Bausch & Lomb, Inc.,* 909 F.2d 1464, 1468-69 (Fed. Cir. 1990).

**DEFENDANTS' OBJECTIONS:**

[1] Defendants object to Janssen's instruction as incomplete and misleading. Inducement must be assessed on an entity-by-entity and claim-by-claim basis.

[2] Defendants object to Janssen's instruction as incomplete and misleading. Janssen has edited out "high" probability from its heavily modified FCBA instruction.  Willful blindness requires a "high probability," not merely a "probability." *See Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2070-71 (2011).

[3] Defendants object to Janssen's instruction as incomplete and misleading. Inducement cannot be found unless there is an underlying act of direct infringement by GE HyClone and that Defendants induced it.  For example, the Federal Circuit recently vacated a jury verdict noting "to prevail under a theory of indirect infringement, plaintiff must first prove that the defendants' actions led to direct infringement of the patent-in-suit." *See Power Integrations, Inc. v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1330-31 (Fed. Cir. 2016) (internal quotations omitted).  Similarly, Janssen's instruction improperly decouples the alleged act of infringement from the alleged inducing acts.

[4] Janssen's instruction as being vague and misleading as to "a patent."  The patent at issue is the '083 Patent, not a vague patent that may be held by anyone.

In addition, Janssen improperly suggests (via the disjunction "or") willful blindness may be found where the alleged inducer takes deliberate action to avoid learning of the patent. This is not enough and Janssen has edited the FCBA instruction to introduce it as an improper alternative. Specifically, the alleged inducer must take deliberate action to avoid learning of the infringement, not merely of the patent. *See Global-Tech Appliances, Inc. v. SEB SA*, 131 S. Ct. 2060, 2070-72 (2011).

In addition, the phrase "ignored the probability that HyClone's actions would infringe" or "ignored the [high] probability that HyClone's actions would infringe" improperly assumes and suggests to the jury that HyClone does in fact infringe.

To the extent the willful blindness instruction is given (which it should not be), the FCBA version Janssen edited actually states "or that [Defendants] believed there was a high probability that the acts by [GE HyClone] would infringe a patent [by Janssen] and [Defendants] took deliberate steps to avoid learning of that infringement." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.2 (July 2016).

In addition, Janssen improperly edits out numerous other restrictions on the doctrine of inducement, such as "If you find that [Defendant] was aware of the patent, but believed that the acts it encouraged did not infringe that patent, [Defendant] cannot be liable for inducement"  and:

> In order to establish active inducement of infringement, it is not sufficient that [GE HyClone] itself directly infringes the claim. Nor is it sufficient that [Defendant] was aware of the act(s) by [GE HyClone] that allegedly constitute the direct

infringement. Rather, in order to find active inducement of infringement, you must find either that [Defendant] specifically intended [GE HyClone] to infringe the ['083] patent or that [Defendant] believed there was a high probability that [GE HyClone] would infringe the ['083] patent, but deliberately avoided learning the infringing nature of [GE HyClone]'s acts. The mere fact, if true, that [Defendant] knew or should have known that there was a substantial risk that [GE HyClone]'s acts would infringe the ['083] patent would not be sufficient for active inducement of infringement.

*Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.2 (July 2016) citing 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1927-28 (2015); *Global- Tech Appliances, Inc. v. SEB S. A.*, 563 U.S. 754, 765-70 (2012); *Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) ("[I]nducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.") (citation and internal quotation marks omitted); *MGM Studios Inc. v. Grokster*, 419 F.3d 1005 (Fed. Cir. 2005); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1377-78 (Fed. Cir. 2004) (inducer must have actual or constructive knowledge of the patent); *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys.*, LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003) (no inducement where evidence did not show defendant knew or should have known that his actions were encouraging infringement); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-66 (Fed. Cir. 2003) (no infringement where lack of intent to induce).

Janssen's removal of this and the remainder of the instruction invites the jury to violate those restrictions. *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.2 (July 2016).

Likewise, Janssen's instruction fails to inform the jury that belief in non-infringement is a defense to inducement. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015) ("And the Global–Tech rationale is sound. Qualifying or limiting its holding, as the Government and Commil seek to do, would lead to the conclusion, both in inducement and contributory infringement cases, that a person, or entity, could be liable even though he did not know the acts were infringing. In other words, even if the defendant reads the patent's claims differently from the plaintiff, and that reading is reasonable, he would still be liable because he knew the acts might infringe. Global–Tech requires more. It requires proof the defendant knew the acts were infringing. And the Court's opinion was clear in rejecting any lesser mental state as the standard."); *Koninklijke Philips N.V. v. Zoll Med. Corp.*, 656 F. App'x 504, 523 (Fed. Cir. 2016) ("For the claims of the '454 waveform patent and the '905 waveform patent, we find that Zoll's belief in non-infringement, based on its reasonable claim construction argument, does negate the knowledge requirement of contributory infringement."); *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367–68 (Fed. Cir. 2013), *vacated in part on other grounds*, 135 S. Ct. 1920 ("Under our case law, it is clear that a good-faith belief of non-infringement is relevant evidence that tends to show that an accused inducer lacked the intent required to be held liable for induced infringement.").

Instead of Janssen Proposed Liability Instruction No. 7, the Court should give Defendants' Proposed Post-Trial Instruction No. 32, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 8**

**Infringement by Supply of the Components of a Patented Invention to Another Country**

Janssen asserts that Defendants also infringed claim 1 of the 083 patent by causing a substantial portion of the components of the patented product to be supplied from the United States to another country and actively inducing the assembly of those components into a product that would infringe the 083 patent if they had been assembled in the United States.

[1] To show infringement under based on supply of components to be assembled in another country, Janssen must prove that each of the following is more likely than not:

1. the product, as it was assembled outside the United States, would have infringed claim 1 of the 083 patent if it had been assembled in the United States;

2. [2] the Defendants caused components to be supplied from the United States that make up all or a [3] substantial portion of [4] the product described in claim 1 of the 083 patent; and

3. the Defendants specifically [5] intended to induce the combination of the components into a product that would infringe the 083 patent if the components had been combined in the United States.[9]


**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as it is contrary to law.

[1] Defendants object to the phrase "under based on" as improper, unclear, confusing, and nonsensical. Defendants object to the phrase "based on supply of components to be assembled in another country" as a legally inaccurate and misleading. The statue provides the requirements for infringement under 35 U.S.C. § 271(f)(1), and "based on supply of components to be assembled in another country" is an inaccurate, incomplete, and misleading summary. 35 U.S.C. § 271(f)(1); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.4 (July 2016).

[2] Defendants object to Janssen's proposed instruction as incomplete because it fails to describe explain to the jury the legal requirements to show causation under 35 U.S.C. § 271(f)(1).

---

[9]   Adapted from FCBA, Section B.3.4, and AIPLA Model Patent Jury Instructions Section 3.11; 35 U.S.C. § 271(f)(1); *Life Techs. Corp.* v. *Promega Corp.*, 580 U.S. __ (2017); *Cardiac Pacemakers, Inc.* v. *St. Jude Medical, Inc.* 576 F.3d 1348, 1359-67 (Fed. Cir. 2009); *Microsoft Corp.* v. *AT&T Corp.*, 550 U.S. 437, 453-56 (2007); *Minn. Mining &Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)**.**

*WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340 (Fed. Cir. 2015), *cert. granted, judgment vacated on other grounds,* 136 S. Ct. 2486 (2016); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113 (Fed. Cir. 2004). Relevant legal principles are further provided in Defendants' Motion to Exclude Certain Opinions of Michael Butler and Richard Lit. *See* Dkt. 244.

[3] Defendants object to Janssen's proposed instruction as incomplete for failing to describe the legal requirements for a "substantial portion," which is a quantitative inquiry and which cannot be satisfied by the export of a single component. *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 739–41 (2017); AIPLA Model Patent Jury Instruction 3.11.

[4] Defendants object to the phrase "the product described in claim 1 of the 083 patent" as misleading, confusing, and legally inaccurate. Claim 1 of the '083 patent does not describe a "product." Janssen's phrasing suggests that the jury should consider all components of the accused GE HyClone media, not just the ones claimed in the '083 patent. 35 U.S.C. § 271(f)(1). Defendants further object to this instruction as incomplete and misleading for failing to explain to the jury the legal requirements to show causation under 35 U.S.C. § 271(f)(1), which requires more than merely placing an order. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340 (Fed. Cir. 2015), *cert. granted, judgment vacated on other grounds,* 136 S. Ct. 2486 (2016); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113 (Fed. Cir. 2004).

[5] Defendants object to this instruction as incomplete because it fails to explain the "intent to induce" requirement of § 271(f)(1) that requires Janssen to prove that Defendants intended to induce both the components to be combined and for the assembled components to infringe the '083 patent. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340 (Fed. Cir. 2015), *cert. granted, judgment vacated on other grounds,* 136 S. Ct. 2486 (2016); *Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113 (Fed. Cir. 2004); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.4 (July 2016).

Relevant legal principles are further provided in Defendants' Memorandum in Support of its Motion to Exclude Certain Opinions of Michael Butler and Richard Lit and accompanying reply brief. *See* Dkt. 244 at 7–8.

Instead of Janssen Proposed Liability Instruction No. 8, the Court should give Defendants' Proposed Post-Trial Instruction No. 28, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 9**

**Joint Enterprise**

In addition to alleging that Hospira actively induced infringement by HyClone, Janssen also alleges that Celltrion and Hospira were engaged in a joint enterprise and that Hospira is therefore responsible for Celltrion's direct and/or induced infringement. Celltrion and Hospira were engaged in a joint enterprise if:

1. there was an agreement, express or implied, between Celltrion and Hospira;

2. there was a common purpose to be carried out by Celltrion and Hospira;

3. Celltrion and Hospira had a common financial interest with respect to that purpose; and

4. Celltrion and Hospira had an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

If you find that Celltrion and Hospira were engaged in a joint enterprise, then Hospira is liable for the same acts of direct or induced infringement as Celltrion. For example, if you find Celltrion to be liable for direct or induced infringement, and you find that Celltrion and Hospira were engaged in a joint enterprise, then Hospira is liable for direct or induced infringement as well.[10]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as it is contrary to law.  As a preliminary matter, "joint enterprise" liability only applies to divided infringement of method claims under 35 U.S.C. § 271(a).  *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 797 F.3d 1020 (Fed. Cir. 2015); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) ("Our cases have applied joint infringement to method claims and not system claims."); *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 972 (N.D. Cal. 2018) ("Divided infringement describes a situation in which more than one actor is involved in practicing the steps of the claimed method."); *Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV, 2017 WL 3776914, at *3 (S.D. Fla. Aug. 31, 2017) ("The Akamai III

---

[10]   Adapted from FCBA, Section B.3.7; *Limelight Networks, Inc. v. Akamai Techs., Inc.,* 797 F.3d 1020 (Fed. Cir. 2015); Restatement (Second) of Torts) § 491 cmt. c; *Lyon v. Ranger III,* 858 F.2d 22 (1st Cir. 1988).

framework does not apply to system claims, which are infringed where a party 'put[s] the invention into service, i.e., control[s] the system as a whole and obtain[s] benefit from it.'"); *Arcelormittal & Arcelormittal Atlantique Et Lorraine v. AK Steel Corp.*, No. CV 13-685-SLR, 2017 WL 239344, at *4 (D. Del. Jan. 19, 2017) ("Plaintiffs' request for discovery is unnecessary given that divided infringement applies to method claims in particular circumstances, not to the product by process claims at bar."); *Akamai Techs., Inc v. Limelight Networks, Inc.*, 786 F.3d 899, 910 (Fed. Cir.), *on reh'g en banc sub nom. Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 (Fed. Cir. 2015), *and reh'g en banc granted, opinion vacated sub nom. Akamai Techs., Inc. v. Limelight Networks, Inc.*, 612 F. App'x 617 (Fed. Cir. 2015) ("only method claims can raise an issue of divided infringement"). Such a theory cannot apply to product claims like those asserted from the '083 patent because there is one entity that actually makes the accused products. Further, no case has applied joint enterprise liability to § 271(b). In this case, GE HyClone makes the accused products. Defendants also object to Janssen's instruction as it would allow the imputation of an alleged mental state from Celltrion to Hospira without evidence that Hospira actually intended to infringe. There are only two possible avenues to prove vicarious liability for the making of the accused products: (i) through agency or (ii) by proving induced infringement under § 271(b). This issue is more fully briefed in Defendants' Motion for Summary Judgment of Non-Infringement, *see* No. 15-10698, Dkts. 264–266, 293–294, 318, 344, 378, 405.

Defendants also object to Janssen's instruction as it fails to state that Janssen bears the burden of proof to prove its (legally erroneous) infringement theory. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014) ("A patentee ordinarily bears the burden of proving infringement.").

Defendants object to Janssen's instruction as it fails to state that each element of the joint enterprise theory must be directed to the making of the accused cell culture media. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (acts must be "within the scope of the enterprise").

To the extent the Court is going to give an instruction regarding joint enterprise, Defendants request that the Court give Defendants' Proposed Post-Trial Instruction Nos. 29–30 regarding Divided Infringement as they are a balanced and accurate recitation of the law, and for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 10**

**Infringement - Willful Infringement**

In this case, Janssen argues not only that Defendants infringed, but that Defendants infringed willfully. If you have decided that the 083 patent was infringed, you must go on and address the additional issue of whether or not this infringement was willful.

[1]To show that the infringement was willful, Janssen must prove by a preponderance of the evidence that the Defendants acted with reckless disregard of the claims of Janssen's patent.

[2]When considering Defendants' conduct, you must decide whether Janssen has proven it is highly probable that the Defendants proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an unjustifiably high risk that it was infringing the claims of a valid and enforceable patent. [3]If you conclude that Janssen has proven that the Defendants' conduct was reckless, then you need to consider whether Janssen proved it is highly probable that the unjustifiably high risk of infringement was known or so obvious that it should have been known to the Defendants.[11][4]

**DEFENDANTS' OBJECTIONS:**

[1] Defendants object to Janssen's instruction as it is contrary to law. Janssen's proposed instruction provides a legally inaccurate summary of Janssen's burden of proof on willfulness, which is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith. Defendants further object to the phrase "reckless disregard" as a legally inaccurate. *See Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S.Ct. 1923, 1928-29, 1931-32, 1936 (2016); *Tr. of Boston Univ. v. Everlight Elec. Co., Ltd.*, 212 F. Supp. 3d 254, 256-57 (D. Mass. 2016); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.10 (July 2016).

[2] Defendants object to Janssen's proposed instruction as incomplete and inaccurate because it suggests that willful infringement may be established by a mere showing of knowledge of the

---

[11]  Adapted from FCBA, Section B.3.10, NJIP Section 4.1, and AIPLA Section 12.0; 35 U.S.C. § 284; *Halo Elecs., Inc.* v. *Pulse Elecs., Inc.,* 136 S. Ct. 1923 (2016); *In re Seagate Technology, LLC,* 497 F.3d 1360 (Fed. Cir. 2007) (en banc); *Read Corp.* v. *Portec, Inc.,* 970 F.2d 816 (Fed. Cir. 1992)

patent.  Willful infringement cannot be found just because the infringer knew of the '083 patent and infringed. *See Tr. of Boston Univ. v. Everlight Elec. Co., Ltd*., 212 F. Supp. 3d 254, 256-57 (D. Mass. 2016); *Halo Elec., Inc. v. Pulse Elec., Inc*., 136 S.Ct. 1923, 1936 (2016) (Breyer, J., concurring); (*Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.10 (July 2016). Janssen's instruction improperly which is contrary to the Fed. Circuit Bar Ass'n Model Jury Instructions which explicitly states that the juror "may not determine that the infringement was willful just because [alleged infringer] knew of the [ ] patent and infringed it." *Id.*

[3] Defendants object to Janssen's proposed instruction as inaccurate, confusing, and misleading, including its uses of the phrases "conduct was reckless" and "so obvious that it should have been known to the Defendants." *See Halo Elec., Inc. v. Pulse Elec., Inc*., 136 S.Ct. 1923, 1928-29, 1931-32, 1936 (2016); *Tr. of Boston Univ. v. Everlight Elec. Co., Ltd*., 212 F. Supp. 3d 254, 256-57 (D. Mass. 2016); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.10 (July 2016).

[4] Defendants object to Janssen's proposed instruction as incomplete for omitting the portions of the model instruction discussing the Jury's need to consider all facts and the *Read* factors. *Read Corp*. v. *Portec, Inc.,* 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that indicate the degree of an infringer's culpability); *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.3.10 (July 2016).

Instead of Janssen Proposed Liability Instruction No. 10, the Court should give Defendants' Proposed Post-Trial Instruction No. 63, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 11**

**Invalidity - Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether or not Defendants have proven that claim 1 of the 083 patent is invalid.

The claims of the 083 patent are presumed to be valid. To prove that any claim of a patent is invalid, the Defendants must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard, where you need believe only that a party's claim is more likely true than not true. This standard does not, however, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.[12]

**DEFENDANTS' OBJECTIONS:**

Defendants object to this instruction as incomplete. The jury should be informed that, while a patent is presumed valid, the patent office may not have had available to it the prior art presented by the Defendant and that the Defendant has a right to present an invalidity defense. *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. A.1 (July 2016).

In addition, the jury should be informed that "It is important to remember that a patent must be interpreted the same way for determining infringement and for determining invalidity." *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1075 (Fed. Cir. 2009) ("As this court

---

[12]   Adapted from FCBA, Section B.4.1 and AIPLA Model Patent Jury Instructions Section 4; 35 U.S.C. § 282 (2004); 35 U.S.C. § 282 (patents presumed valid); *Microsoft Corp.* v. *i4i Limited P'hsip*, 131 S.Ct. 2238 (2011). Invalidity may be asserted for failure to comply with any requirement of 35 U.S.C. § 101, 102, 103, 112, or 251, as a defense to alleged infringement. *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315 (Fed. Cir. 2002) (to overcome presumption of validity, challenging party must present clear and convincing evidence of invalidity); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed. Cir. 1988) (clear and convincing evidence is that "which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable") (alteration in original) (citation and internal quotation marks omitted); *Hybritech Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1375 (Fed. Cir. 1986) ("Notwithstanding that the introduction of prior art not before the examiner may facilitate the challenger's meeting the burden of proof on invalidity, the presumption remains intact and on the challenger throughout the litigation, and the clear and convincing standard does not change.").

has repeatedly instructed in the past, '[i]t is axiomatic that claims are construed the same way for both invalidity and infringement.'"); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("A claim must be construed before determining its validity just as it is first construed before deciding infringement."); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1363 (Fed. Cir. 1998) ("Claims must be interpreted the same way for determining infringement as was done to sustain their validity."); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."); *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.,* 31 F.3d 1154, 1163 (Fed. Cir. 1994) ("We have already interpreted the claims for purposes of assessing their validity. The same claim interpretation of course applies to the infringement analysis.").  By not including this instruction, Janssen is inviting the jury to interpret the claims differently for invalidity versus infringement.  This is especially important where, as here, Janssen must walk a tightrope between infringement and invalidity. 2/1/18 Hearing at 11:19-22 ("THE COURT: That's one of the things that's coming into focus for me. The plaintiffs need to walk a tightrope in this case. In some respects, the stronger the arguments are on equivalents, the stronger your elements are on obviousness.").

Instead of Janssen Proposed Liability Instruction No. 11, the Court should give Defendants' Proposed Post-Trial Instruction No. 33, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 12**

**<u>Invalidity - Obviousness</u>**

The Defendants contend that claim 1 of the 083 patent are invalid because the claimed invention(s) is "obvious." [1]

To establish that this claim is invalid as obvious, Defendants must show, by clear and convincing evidence, that the claimed invention would have been obvious to persons of ordinary skill in the art at the time the invention was made. You may not consider what might have been obvious in hindsight but only what was known at the time of the invention.[2]

The following factors must be evaluated to determine whether the Defendants have established that the claimed invention(s) is obvious:

5. The scope and content of the prior art relied upon by the Defendants;

6. The difference or differences, if any, between each claim of the 083 patent that the Defendants contends is obvious and the prior art;

7. The level of ordinary skill in the art at the time the invention of the 083 patent was made; and

8. Additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated and they may be analyzed in any order.[13]


**<u>DEFENDANTS' OBJECTIONS:</u>**

[1] Defendants object to this instruction as incomplete and misleading.  Defendants contend that all asserted claims are obvious, not just claim 1.

[2] Defendants object to this instruction as incomplete and misleading. The FCBA instruction cited by Janssen actually reads "In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the

---

[13]    Adapted from FCBA Section B.4.3c(i), NJIP Section 5.8-5.9, and AIPLA Section 7.0; *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere* Co., 383 U.S. 1, 17-18 (1966); *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.,* 678 F.3d 1280, 1296 (Fed. Cir. 2012).

invention [or the patent's filing date]." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.3c (July 2016). Janssen's edited instruction improperly suggests to a lay juror that which would have been obvious at the time cannot be obvious if it is *also* obvious in hindsight.

Instead of Janssen Proposed Liability Instruction No. 12, the Court should give Defendants' Proposed Post-Trial Instruction No. 35, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 13**

**Obviousness - Scope and Content of the Prior Art**

In determining obviousness, you will be asked to consider the prior art. Prior art includes

any of the following items received into evidence during trial:

> 1.  Any product that was publicly known or used by others in the United States before the patented invention was made;
>
> 2.  Patents that issued more than one year before the filing date of the patent, or before the invention was made; and
>
> 3.  Publications having a date more than one year before the filing date of the patent, or before the invention was made.[14] [1]

In this case, Defendants principally contend that the claim is obvious over each of the

following are prior art references in view of the knowledge of a person of ordinary skill in the

art:

- International Patent Application No. WO 2004/078955 ("the GSK application")
- International Patent Application No. WO 98/15617 ("the Life Techs application")[2]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as incomplete and misleading. Janssen cites no authority
for its instruction.  The FCBA model instruction states for "Scope and Content of the Prior Art":

> In considering whether the claimed invention was obvious, you must first determine
> the scope and content of the prior art.
>
> The scope and content of prior art for deciding whether the invention was obvious
> includes at least prior art in the same field as the claimed invention. It also includes
> prior art from different fields that a person of ordinary skill in the art would have
> considered when trying to solve the problem that is addressed by the invention.
>
> Where the party challenging the validity of the patent is relying on prior art that
> was not considered by the PTO during examination, you may consider whether that

---

[14]   35 U.S.C. § 102(a)(l)-(2); 35 U.S.C. § 102(b)(l)-(2)

prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it was different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.

*Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.3c(iii) (July 2016).

[1] Defendants object to Janssen's definition of prior art as incomplete and misleading.  The standards for what constitutes prior art are set forth in 35 U.S.C. §102 and includes things such as "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent" (35 U.S.C. §102(a)), "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States" (35 U.S.C. §102(b)), and "the invention was described in — (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language."

For example, Janssen neglects applications filed prior to the date of invention.  35 U.S.C. §102(e).

Janssen's instruction also improperly suggests that the reference must be dated more than one year prior to the date of the invention.  *See* 35 U.S.C. §102(a) and §102(e).

Janssen also does not cite the relevant statute. Specifically, Janssen cites "35 U.S.C. § 102(a)(l)-(2); 35 U.S.C. § 102(b)(l)-(2)." This is appears to be the post-AIA version of 35 U.S.C. § 102, which does not support Janssen's statements. In any event, the '083 patent is governed by the pre-AIA 35 U.S.C. § 102 version of the statute rather than the post-AIA 35 U.S.C. § 102 given the '083 patent was filed in 2005. MPEP 2159.01 ("The changes to 35 U.S.C. 102 and 103 in the AIA do not apply to any application filed before March 16, 2013. Thus, any application filed before March 16, 2013, is governed by pre-AIA 35 U.S.C. 102 and 103.").

[2] Defendants object to Janssen's instruction as incomplete and misleading. Defendants have additional prior art that they may present at trial.

Instead of Janssen Proposed Liability Instruction No. 13, the Court should give Defendants' Proposed Post-Trial Instruction No. 34 and 37, for the reasons offered there, which are incorporated into this objection.

## JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 14

### Obviousness - Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the invention as a whole, and not merely some portion of it.

Importantly, a claim is not proved obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense.[15]


**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as incomplete and misleading.  Janssen cites to FCBA 4.3c but rewords it and deletes key provisions relating to obviousness. For example, Janssen edits out the factors supporting obvious (thereby inviting the jurors to ignore them):

> In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention [or the patent's filing date] there was a reason that would have prompted a person having ordinary skill in the field of [the invention] to combine the known elements in a

---

[15] Adapted from FCBA Section B.4.3c, NJIP Section 5.8-5.9, and AIPLA Section 7.2; *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Par Pharm, Inc., v. TWI Pharms., Inc.,* 773 F.3d 1186, 1194-96 (Fed. Cir. 2014*); Alcon Research, Ltd. v. Apotex Inc.,* 687 F.3d, 1362 (Fed. Cir. 2012)*; In re Kubin,* 561 F.3d 1351, 1357 (Fed. Cir. 2009).

way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces.

*Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.3c (July 2016). Indeed, the only difference between the prior art and Janssen's claims is the product of substitutions of known elements, which the Federal Circuit has recognized supports obviousness. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007) ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."); *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 977 (Fed. Cir. 2014) ("Claims would have been obvious if they are nothing more than a combination of familiar elements that yield predictable results.").

The court should give Defendants' Post-Trial Instruction No. 38. Instead of Janssen Proposed Liability Instruction No. 14, the Court should give Defendants' Proposed Post-Trial Instruction No. 34, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 15**

## Obviousness - Hindsight

When considering whether the claimed invention was obvious, you must be careful not to determine obviousness using hindsight. You should put yourself in the position of a person of ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent. You should be careful not use the patent as a road map for selecting and combining items of prior art.[16]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as incomplete and misleading.  For example, Janssen's instruction "You should put yourself in the position of a person of ordinary skill . . ." invites members of a lay jury to ask only if they would consider the invention obvious, rather than whether a person of ordinary skill would consider the invention obvious. While a lay jury may find an invention obvious from their lay experience, they should not discount expert testimony as to a science they may not themselves be experts in.

Likewise, the statement "you should not consider what is known today or what is learned from the teaching of the patent" improperly invites the jury to discount knowledge at the time of the invention if it was (1) *also* known today, or (2) *also* stated in the patent.

Rather, the Court should use Defendants' instruction "Do not use hindsight.  That is, consider only what was known at the time of the invention" which is verbatim from the FCBA Model Instructions and part of a larger instruction on obviousness. Defendants' Post-Trial Instruction No. 38; *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.3c (July 2016).

Instead of Janssen Proposed Liability Instruction No. 15, the Court should give Defendants' Proposed Post-Trial Instruction No. 38, for the reasons offered there, which are incorporated into this objection.

---

[16]   Adapted from NJIP Section 5.9, and AIPLA Section 7.0.1; *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Otsuka Pharm . Co., Ltd. v. Sandoz, Inv.,* 678 F.3d 1280, 1296 (Fed. Cir. 2012).

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 16**

**Obviousness - Level of Ordinary Skill**

The determination of whether a claimed invention is obvious is based on the perspective of a person of ordinary skill in the field of cell culture media compositions. The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.[17]

In this case, the parties agree that a person of ordinary skill in the art in the field of cell culture media compositions would have an advanced degree in biochemistry, molecular biology, or a related filed with several years of experience with the formulation and use of cell culture media in the context of biopharmaceutical production. [1]

**DEFENDANTS' OBJECTIONS:**

[1] Defendants object to Janssen's instruction as to the level of ordinary skill as incomplete and misleading. Defendants contend that "A person of ordinary skill in this art area would have a doctorate degree in biochemistry, molecular biology, or a related field with one or two years of direct experience in formulation of and use of cell culture media in the context of biopharmaceutical product production.  A person of ordinary skill in the art could also have fewer years of formal education if they held either a bachelor's or master's degree in the same fields listed above but also had several years of hands-on experience in academic or industrial laboratories in this area." Defendants' Post-Trial Instruction No. 36.

Moreover, Janssen's instruction edits out instructions in the FCBA as to how the jury should determine the level of ordinary skill. As set forth in the FCBA and Defendants' instructions: "In deciding what the level of ordinary skill in the field of [invention] is, you should consider all the

---

[17]   Adapted from FCBA Section B.4.3c(i), NJIP Section 5.11, and AIPLA Section 7.3; *KSR Int'l Co. v. Teleflex Inc.,* 127 S. Ct. 1727, 1742-43 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Ruizv. A.B. Chance Co.,* 234 F.3d 654, 666-67 (Fed. Cir. 2000); *Envt'l Designs, Ltd.* v. *Union Oil Co.,* 713 F.2d 693, 696-97 (Fed. Cir. 1983).

evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.3c(i) (July 2016); Defendants' Post-Trial Instruction No. 36.

Instead of Janssen Proposed Liability Instruction No. 16, the Court should give Defendants' Proposed Post-Trial Instruction No. 36, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 17**

**<u>Obviousness- Other Considerations</u>**

Before deciding the issue of obviousness, you must also consider certain factors, which

may help to determine whether or not the invention would have been obvious. No factor alone is

dispositive, and you must consider the obviousness or nonobviousness of the invention as a

whole. Factors to consider include:

1.  Was there long felt need for a solution to the problem facing the inventors, which was
    satisfied by the claimed invention?

2.  Did the inventor proceed contrary to accepted wisdom in the    field?

3.  Did the claimed invention achieve unexpectedly superior results over the closest
    prior art?

4.  Did persons having ordinary skill in the art of the invention express surprise
    regarding the invention?

5.  Did others in the field praise the invention?

6.  Did others copy the claimed invention?

If some, or all, of these factors are present, this may suggest that the claim was not

obvious. These factors are relevant only if there is a connection, or nexus, between the factor and

the invention covered by the patent claims. Even if you conclude that some of the above

indicators have been established, those factors should be considered along with all the other

evidence in the case in determining whether the Defendants has proven that the claimed

invention would have been obvious.[18]

---

[18]   Adapted from FCBA Section B.4.3c, NJIP Sections 5.8-5.9, and AIPLA Model Patent Jury Instructions Section
       7.4; *Graham* v. *John Deere Co.,* 383 U.S. 1, 17-18 (1966); *United States* v. *Adams,* 383 U.S. 39, 52 (1966);
       *Perkin-Elmer Corp.* v. *Computervision Corp.,* 732 F.2d 888, 894-95 (Fed. Cir. 1984); *Envtl. Designs, Ltd.* v.
       *Union Oil Co.,* 713 F.2d 693, 697 (Fed. Cir. 1983); *WL Gore & Assocs., Inc.* v. *Garlock, Inc.,* 721 F.2d 1540,
       1555-56 (Fed. Cir. 1983); *Stratoflex, Inc., v. Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as incomplete and misleading.  First, Janssen's instruction improperly suggests the required nexus may be found through some vague connection, which does not convey that they secondary condition must be commensurate in scope with the claimed invention. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1336 (Fed. Cir. 2010) ("Abbott's objective evidence of non-obviousness fails because it is not 'commensurate in scope with the claims which the evidence is offered to support.'"); *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995) ("For objective evidence to be accorded substantial weight, its proponent must establish a nexus between the evidence and the merits of the claimed invention."); *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983) ("It is well settled 'that objective evidence [of] non-obviousness must be commensurate in scope with the claims which the evidence is offered to support.'").

Second, Janssen's statement "connection, or nexus, between the factor and the invention covered by the patent claims" improperly suggests that nexus may be found with something covered by the patent claims, even if there is no nexus with the scope of the claim. *Id.* For example, if there is a long-felt need satisfied by a product meeting the asserted claims, but not all products meeting the asserted claims would satisfy that long felt need, there is no nexus. For example in *Therasense*, the Federal Circuit rejected the argument that the long-felt need can be satisfied if the claims also cover compositions that do not satisfy the need. *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1336 (Fed. Cir. 2010) ("Because the claims are broad enough to cover devices that either do or do not solve the 'short fill' problem, Abbott's objective evidence of non-obviousness fails because it is not commensurate in scope with the claims which the evidence is offered to support.")

Third, Janssen edits out of its FCBA source multiple other considerations:

> a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

> b. Whether the invention satisfied a long-felt need;

> c. Whether others had tried and failed to make the invention;

> d. Whether others invented the invention at roughly the same time;

> e. Whether others copied the invention;

> f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

> g. Whether the invention achieved unexpected results;

> h. Whether others in the field praised the invention;

> i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

*Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.3c (July 2016). If this instruction is to be presented, cannot cherry-pick factors it believes are helpful and disregard the rest.

Instead of Janssen Proposed Liability Instruction No. 1, the Court should give Defendants' Proposed Post-Trial Instruction No. 40, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL LIABILITY INSTRUCTION NO. 18**

**Invalidity- Written Description**

Defendants also contend that claim 1 of the 083 patent is invalid because the specification of the patent does not contain an adequate written description of the invention. To succeed on this defense, Defendants must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application (including the original claims) would have recognized that the inventor possessed the subject matter claimed in the patent. "Possession" does not require that the claimed invention was actually made, only that it was described in writing in such a way as to demonstrate to a person of ordinary skill in the art that the inventors actually invented what is claimed.

The written description of the patent must adequately describe the full scope of the claims. It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required; only enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the invention claimed by the patent.[19]

---

[19]    Adapted from FBCA Section B.4.2a, NJIP Section 5.2, and AIPLA Section 9; 35 U.S.C. § 112, " 1, 2; *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.,* 598 F.3d 1336 (Fed. Cir. 2010) (en banc); *Lizard Tech., Inc.* v. *Earth Res. Mapping Inc.,* 424 F.3d 1336, 1344-45 (Fed. Cir. 2005); *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 929 (Fed. Cir. 2004); *Chiron Corp.* v. *Genentech, Inc.,* 363 F.3d 1247, 1253- 55 (Fed. Cir. 2004); *Purdue Pharma L.P.* v. *Faulding, Inc.,* 230 F.3d 1320, 1323 (Fed. Cir. 2000) (patent's specification must include an adequate written description; however, it need not include the exact words of the claim); *Lampi Corp.* v. *Am. Power Prods., Inc.,* 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Gentry Gallery, Inc.* v. *Berkline Corp.,* 134 F.3d

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as incomplete and misleading. First, Janssen edits out the FCBA explanation of what written description requires, thereby removing its context and preventing the jury from properly understanding the requirements of written description. Specifically, the FCBA instructions include this passage which Janssen deletes:

> The patent law contains certain requirements for the part of the patent called the specification. [Alleged infringer] contends that claim(s) [ ] of [patent holder]'s [ ] patent [is/are] invalid because the specification of the [ ] patent does not contain an adequate written description of the invention. To succeed, [alleged infringer] must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention. In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

*Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.2a (July 2016).

Second, Janssen inexplicably deletes the bolded portion of the FCBA instruction: "The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that ***it describes the full scope of the claimed invention as it is finally claimed in the issued patent and*** that the inventor actually possessed that full scope by the filing date of the original application." *Model Patent Jury Instructions*, Fed. Circuit Bar Ass'n, Instr. B.4.2a (July 2016) (emphasis added). Janssen's edit does not instruct the jury that written description also requires a person of ordinary skill to recognize that it describes the full scope of the claimed invention as it is finally claimed in the issued patent, ***in addition to*** the requirement that the person of ordinary skill also believe the inventors were in possession of the full scope of the invention. "[T]he [written description] requirement serves both to satisfy the inventor's obligation to disclose the technologic knowledge upon which the patent is based, and to demonstrate that the patentee was in possession of the invention that is claimed." *Capon v. Eshhar*, 418 F. 3d 1349, 1357 (Fed. Cir. 2005). In other words, it is not enough to show that the inventors possessed the full scope of the invention if the full scope is not adequately described.

Third, Janssen's instruction fails to give the jury important instructions about how the written description must ensure that the scope of scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification. *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353–54 (Fed. Cir. 2010) ("As this court has repeatedly stated, the purpose of the written description requirement is

---

1473, 1478-80 (Fed. Cir. 1998); *Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1568 (Fed. Cir. 1997); *In re Alton,* 76 F.3d 1168, 1172 (Fed. Cir. 1996).

to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'").

Fourth, Janssen fails to instruct the jury that the written description requirement is not met simply because certain claim language appears verbatim in the specification. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002) ("We next address Enzo's additional argument that the written description requirement for the generic claims is necessarily met as a matter of law because the claim language appears *in ipsis verbis* in the specification. We do not agree. Even if a claim is supported by the specification, the language of the specification, to the extent possible, must describe the claimed invention so that one skilled in the art can recognize what is claimed. The appearance of mere indistinct words in a specification or a claim, even an original claim, does not necessarily satisfy that requirement."). Rather, Janssen's instruction improperly suggests to the jury it may be met through an *in ipsis verbis* recitation in the specification, which is contrary to law.

Instead of Janssen Proposed Liability Instruction No. 18, the Court should give Defendants' Proposed Post-Trial Instruction No. 42, for the reasons offered there, which are incorporated into this objection.

## JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 1

### Damages - Generally

Defendants have been found to have infringed the 083 patent. You must now consider what amount of damages to award to Janssen. The damages you award must be adequate to compensate Janssen for the infringement. Your damages award should put Janssen in approximately the same financial position that it would have been in had the infringement not occurred.

Janssen has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Janssen establishes that it more likely than not suffered. While Janssen is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty.

There are different types of damages that Janssen may be entitled to recover: lost profits and a reasonable royalty. These terms will be defined in more detail later in the instructions. In this case, Janssen seeks damages for lost profits and a reasonable royalty. Lost profits consist of any actual reduction in business profits Janssen suffered as a result of Defendants' infringement. To the extent that Janssen does not claim or fails to prove its entitlement to lost profits, it is entitled to a reasonable royalty at a minimum.[20]

---

[20] Adapted from Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.1; *see also* 35 U.S.C. § 284; *Ericsson, Inc.* v. *Harris Corp.,* 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc.* v. *Lextron, Inc.,* 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc.* v. *United States,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360 (Fed. Cir. 1991).

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as it assumes the issues of damages and liability will be bifurcated and that both Hospira and Celltrion have been found to infringe the '083 patent. For all the reasons in Defendants' opposition to Janssen's motion *in limine* no. 14 for bifurcation, bifurcation is inappropriate and prejudicial to Defendants. As the model instruction indicates, a proper instruction would instruct the jury that damages are only appropriate if Celltrion or Hospira have infringed a valid claim of the '083 patent. See Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.1.

Defendants also object to Janssen's instruction as it removes the caution to the jury that damages "are not meant to punish an infringer" but are rather compensatory in nature. *See* Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.1; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("[T]he purpose of compensatory damages is not to punish the infringer, but to make the patentee whole."). Defendants also object as Janssen removed the instruction that the jury "may not award damages that are speculative, damages that are only possible, or damages that are based on guess work." *See* Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.1; Thompson v. Haynes, 305 F.3d 1369, 1382 (Fed. Cir. 2002) ("the Supreme Court and the Tenth Circuit draw a distinction between proof of the fact of damages, which must be established with at least reasonable certainty, and the amount of damages, which may be estimated, provided it is not merely speculative"); *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31–32 (Fed. Cir. 2012) ("We believe that Dr. Shapiro's testimony and the arguments premised thereon encouraged the jury to reach a purely speculative judgment."); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) ("While any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty, a trier of fact must have some factual basis for a determination of a reasonable royalty.'"); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996) ("Even where defendant's records are not complete, damages may 'not be determined by mere speculation or guess.'").

Defendants object to Janssen's instruction as it ignores the requirement that patentees must apportion damages in "every case," and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("When a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features.""); *Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent."); *Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature."); *Mentor Graphics v. EVE–USA*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (order denying rehearing en banc) ("[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required."). Janssen removed this concept from the model jury instruction by deleting the following: "But regardless of the type of damages you may choose to

award, you must be careful to ensure that award is no more or no less than the value of the patented invention."   See Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.1.   Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson.

Defendants object to Janssen's instruction as it fails to tell the jury that Janssen cannot collect damages from before May 31, 2011, which is 6 years from the date of Janssen's complaint. 35 U.S.C. § 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."); *A. Stucki Co. v. Buckeye Steel Castings Co.*, 963 F.2d 360, 363 (Fed. Cir. 1992) ("Stucki argues that certain equitable considerations in the nature of those that may overcome the equitable defense of laches, e.g., the 'other litigation' exception, can also operate to 'toll' application of § 286. We disagree."). Indeed, Janssen lacked standing as of its first complaint in 2015 for at least the reason that it failed to have an assignment from inventor Horwitz.[21]   Janssen's instruction is also confusing as it fails to tell the jury that additional instructions regarding the evidentiary requirements for damages will follow.

Defendants object to Janssen's instruction as it fails to tell the jury that Janssen may receive only lost profits or a reasonable royalty for any particular sale. *See Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996) ("The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit calculation."); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017) ("For sales in which the patentee cannot prove the elements necessary to establish entitlement to lost profits, the statute guarantees the patentee a reasonable royalty for those sales. In those circumstances, the patentee obtains its lost profits on the sales where it can prove all the *Panduit* factors and a reasonable royalty on the other infringing sales.").

As Defendants' proposed Damages Introduction Instruction is a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 44, for the reasons offered there, which are incorporated into this objection.

---

[21]   The Court never ruled on this standing issue as Janssen dismissed its prior complaints without prejudice. Defendants also continue to believe that Janssen lacks standing due to Janssen's other standing defects (i.e., its form employment agreement assigning inventions to the J&J family of companies), but recognizes that the Court ruled that Janssen had standing by the time it filed its third complaint.

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 2**

**Lost Profits - "But For" Test**

In this case, Janssen seeks to recover lost profits for Defendants' sales of Remicade made using the infringing cell culture media. To recover lost profits, Janssen must show a causal relationship between the infringement and its loss of profit. In other words, Janssen must show that, but for the infringement, there is a reasonable probability that it would have earned higher profits. To show this, Janssen must prove that, if there had been no infringement, it would have made some portion of the sales of Inflectra that Defendants made or that it would have sold its products at higher prices, or both.

Factors you may consider when deciding whether defendants' infringement is the but for cause of Janssen's lost profits include:

1. The demand for infliximab;

2. Whether there were readily available, acceptable, noninfringing substitute cell culture media that could be used for manufacturing Defendants' infliximab biosimilar;

3. Whether Janssen had the manufacturing and marketing capacity to make any sales of infliximab actually made by Defendants; and

4. The amount of profit that Janssen would have made if Defendants had not infringed.[22]

---

[22]  Adapted from FBCA Section B.6.2; American Intellectual Property Law Ass'n ("AIPLA") Model Patent Jury Instructions, Section 11.2.1.1; 35 U.S.C. § 284; *Janssen Biotech, Inc. v. Celltrion Healthcare Co,* 239 F. Supp. 3d 328, 331 (D. Mass 2017) (explaining that the "usual 'but-for' causation test" applies here); *AroMfg. Co.* v. *Convertible Top Co.,* 377 U.S. 476, 502-07 (1964); *Ericsson, Inc.* v. *Harris Corp.,* 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.,* 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc.* v. *United States,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp.* v. *Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (enbanc); *BICLeisure Prods., Inc.* v. *WindsurfingInt'l, Inc.,* 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carellav. Starlight Archery,* 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp.* v. *Champion SparkPlug Co.,* 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp.* v. *Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

The lost profits sought by Janssen consist of several components. If it proves its entitlement to lost profits, Janssen is entitled to lost profits on every sale of its product lost to the Defendants and to the profits lost due to price erosion.

## DEFENDANTS' OBJECTIONS:

Defendants object to Janssen's instruction as confusing and factually inaccurate. As a preliminary matter, Defendants do not sell Remicade. Further, Janssen's instruction improperly allows for recovery of lost profits on Remicade without the requirement to apportion or meet the entire market value rule.

Defendants object to Janssen's instruction as it incorrectly states that if it proves just one lost sale or on instances of price erosion, it should receive all of the alleged lost profits due to volume loss in addition to price erosion. That is incorrect. Janssen must prove each sale that it allegedly lost due to Defendants' alleged infringement. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1289 (Fed. Cir. 2017) ("A patentee cannot obtain lost profits unless it and only it could have made the sale—there are non-infringing alternatives or, put differently, the customer would not have purchased the product without the infringing feature."). Further, Janssen must prove that any price erosion damages it requests were actually caused by Defendants' alleged infringement rather than some other cause. *See, e.g.*, *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993) ("The district court evaluated the documentary and testimonial evidence on price erosion and found it too speculative to support an award of price erosion lost profits."); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996) ("the record supports the district court's finding that price erosion damages were too speculative").

Defendants further object to Janssen's instruction as it has improperly modified the *Panduit* factors, which are often used to prove lost profits and which is the only test Janssen's expert used in evaluating lost profits. Specifically, Janssen has changed Panduit factor 1 from "demand for the patented product" to "demand for infliximab," which is not patented. *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978) ("demand for the patented product").

For factor 2, Janssen has improperly inserted the requirement that a non-infringing alternative for the accused cell culture media must be "readily" available. As explained in Defendants' opposition to Janssen's motion for summary judgment of no non-infringing alternatives, Janssen's requirement that an alternative be "readily" available at the time of first infringement is not the law. *See* Defendants' Opposition to Janssen's Motion for Summary Judgment on Non-Infringing Alternatives, Dkt. 303. Further, Janssen improperly requires that the alternative "could be used for manufacturing Defendants' infliximab biosimilar." Again, this is a misstatement of the law, as the alternative need only be acceptable to the consumer of the accused product, which is Celltrion in this case. *Id.*

For factor 3, Janssen has improperly changed the question from whether Janssen can meet the demand for the patented product (cell culture media) to whether Janssen has the manufacturing and marketing capacity to make sales of infliximab. This is an erroneous statement of the law. Instead, factor 3 should focus on whether Janssen can make the allegedly infringing sales of cell culture media at issue. *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984) (asking whether the patent owner has "capability to meet the demand for the product covered by the patent"); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991) (the patent owner must prove "(1) a demand for the patented product," and "(3) the patent owner's manufacturing and marketing capability to exploit the demand for the patented product"); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 825 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996) ("The third-Panduit factor concerns the manufacturing and marketing capability of the patentee to meet the demand for the patented product.").

For factor 4, Janssen again improperly focuses on infliximab rather than sales of the patented product. Janssen's modifications are evident from a comparison of the model instruction to Janssen's proposed instruction. *See* Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.2. Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson. *See* Dkt. 240; Def's Op. to Janssen MIL 8.

Defendants object to Janssen's instruction for failing to state that Janssen needs to prove all four of the Panduit factors to be entitled to lost profits. Instead, Janssen's instruction lists the factors as something the jury "may" consider and is silent on which party bears the burden. But it is black letter law that Janssen bears the burden on this issue, and that it must prove all four factors. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee."); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017) ("the patentee obtains its lost profits on the sales where it can prove all the Panduit factors and a reasonable royalty on the other infringing sales"); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991) ("[f]our elements must be proved"). Janssen's improper modification is evident from a comparison to the model instruction. *See* Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.2.

Defendants object to Janssen's instruction for failing to actually meet the standard for "but for" causation. The law requires proof of but for causation for lost profits. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer."). Under Janssen's instruction, a jury could award lost profits damages without showing but for causation. For example, under Janssen's instruction, other competitors to Remicade are ignored despite the fact that in the "but for" world Inflectra sales would go to drugs other than Remicade.

Defendants object to Janssen's instruction as it ignores the requirement that patentees must apportion damages in "every case," and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the

other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) (""When a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features.""); *Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent."); *Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature."); *Mentor Graphics v. EVE–USA*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (order denying rehearing en banc) ("[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required."). Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson.

Defendants object to Janssen's instruction as it assumes the issues of damages and liability will be bifurcated and that both Hospira and Celltrion have been found to infringe the '083 patent. For all the reasons in Defendants' opposition to Janssen's motion *in limine* no. 14 for bifurcation, bifurcation is inappropriate and prejudicial to Defendants.

As Defendants' proposed Damages Instructions regarding Apportionment, the Entire Market Value Rule, the proper Identification of the Relevant Market, Participation in the Relevant Market, the Panduit Factors, and Price Erosion are a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 49 & 50–58, for the reasons offered there, which are incorporated into this objection.

## JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 3

### Lost Profits - Lost Sales and Price Erosion

In this case, Janssen seeks two types of lost profits damages: lost profits on lost sales and lost profits from price erosion. Lost profits based on lost sales are calculated by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales.

Janssen can also recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, Janssen would have been able to continue to charge the same price for Remicade as it had been if Defendants had not launched their infliximab biosimilar. If this fact is established, you may award as additional damages the difference between:

1. The amount of profits Janssen would have made by selling its product at the price it would have been able to charge had there been no infringement, and

2. The amount of profits Janssen actually made by selling its product at the price that Janssen actually charged for its product.

This type of damage is referred to as price-erosion damage. If you find that Janssen suffered price erosion, you may also use the higher price in determining Janssen's lost profits from sales that were lost because of the infringement.[23]

---

[23] Adapted from FBCA Section B.6.2, National Jury Instruction Project ("NJIP"), Model Patent Jury Instructions, Section 6.2, and AIPLA Section 11.2.2; *Vulcan Eng'g Co. v. FATA Aluminum, Inc.,* 278 F.3d 1366, 1377 (Fed. Cir. 2002); *Minco, Inc.* v. *Combustion Eng'g, Inc., 95* F.3d 1109, 1120 (Fed. Cir. 1996); *BIC Leisure Prods., Inc.* v. *Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1220 (Fed. Cir. 1993); *Kalman* v. *Berlyn Corp.,* 914 F.2d 1473, 1485 (Fed. Cir. 1990).

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as confusing as it is unclear how the act of alleged infringement relates to Janssen's requests for lost profits.

Defendants object to Janssen's instruction as it fails to state Janssen bears the burden of proof for proving any purported lost sales. *See, e.g., Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) ("The burden of proving damages falls on the patentee.").   Janssen's instruction is also legally erroneous because it states that lost profits are based on Janssen's claims rather than what Janssen actually proves at trial.  This is incorrect. Janssen must prove each sale that it allegedly lost due to Defendants' alleged infringement.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1289 (Fed. Cir. 2017) ("A patentee cannot obtain lost profits unless it and only it could have made the sale—there are no non-infringing alternatives or, put differently, the customer would not have purchased the product without the infringing feature.").  Further, Janssen must prove that any price erosion damages it requests were actually caused by Defendants' alleged infringement rather than some other cause.  *See, e.g., BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993) ("The district court evaluated the documentary and testimonial evidence on price erosion and found it too speculative to support an award of price erosion lost profits."); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996) ("the record supports the district court's finding that price erosion damages were too speculative").

Defendants object to Janssen's instruction as it fails to identify the relevant market, which, in this case, is cell culture media.  *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003) ("The proper starting point to identify the relevant market is the patented invention."); *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1355 (Fed. Cir. 1999) ("Where the alleged substitute differs from the patentee's product in one or more of these respects, the patentee often must adduce economic data supporting its theory of the relevant market in order to show 'but for' causation."); *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218–19 (Fed. Cir. 1993) ("The first Panduit factor—demand for the patented product—presupposes that demand for the infringer's and patent owner's products is interchangeable. Under this assumption, evidence of sales of the infringing product may suffice to show Panduit's first factor, 'demand for the patented product.'").

Defendants object to Janssen's instruction as it is factually inaccurate as Janssen's price erosion damages model does not assume Remicade prices are kept constant, as Janssen's proposed instruction suggests.

Defendants object to Janssen's instruction for failing to actually meet the standard for "but for" causation.  Janssen's instruction fails to inform the jury that it should consider any decrease in sales Janssen would have suffered by using a higher price for its product.  *See* Federal Circuit Bar Ass'n ("FCBA") Model Patent Jury Instructions Section B.6.4.  Defendants object to Janssen's instruction for failing to explain that other causes of price erosion, for example, other competition, marketing, or other contributors of value, are not compensable.  The law requires proof of but for causation for lost profits.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer.").

Defendants object to Janssen's instruction as it ignores the requirement that patentees must apportion damages in "every case," and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) (""When a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features.""); *Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent."); *Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature."); *Mentor Graphics v. EVE–USA*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (order denying rehearing en banc) ("[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required.").  Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson.

Defendants object to Janssen's instruction as it assumes the issues of damages and liability will be bifurcated and that both Hospira and Celltrion have been found to infringe the '083 patent.  For all the reasons in Defendants' opposition to Janssen's motion *in limine* no. 14 for bifurcation, bifurcation is inappropriate and prejudicial to Defendants.

As Defendants' proposed Damages Instructions regarding Apportionment, the Entire Market Value Rule, the proper Identification of the Relevant Market, Participation in the Relevant Market, the Panduit Factors, and Price Erosion are a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 49 & 50–58, for the reasons offered there, which are incorporated into this objection..

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 4**

**Lost Profits - Reasonable Forseeability**

As discussed, Janssen seeks to recover damages on lost sales of its Remicade product lost to Defendants' Inflectra product, a biosimilar to Remicade. You should award damages for lost profits based on lost sales of Remicade if you find that it was reasonably foreseeable that Defendants' infringement of the 083 patent would cause Janssen to lose sales of Remicade.[24]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as confusing as it is unclear how the act of alleged infringement relates to Janssen's requests for lost profits. Defendants also object because the first sentence of the instruction is difficult to follow.

Defendants object to Janssen's instruction as a misstatement of the law. Janssen's instruction reads as if foreseeability alone allows Janssen to collect lost profits on an unpatented product. This is incorrect. For example, Janssen must also prove but for causation for each alleged lost sale and alleged price erosion. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer."); *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1289 (Fed. Cir. 2017) ("A patentee cannot obtain lost profits unless it and it only it could have made the sale—there are no non-infringing alternatives or, put differently, the customer would not have purchased the product without the infringing feature."); *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993) ("The district court evaluated the documentary and testimonial evidence on price erosion and found it too speculative to support an award of price erosion lost profits."); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1120 (Fed. Cir. 1996) ("the record supports the district court's finding that price erosion damages were too speculative").

Defendants also object to Janssen's instruction as it fails to explain that foreseeability should be objective in nature, not subjective. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995) ("We believe that under § 284 of the patent statute, the balance between full compensation, which is the meaning that the Supreme Court has attributed to the statute, and the reasonable limits of liability encompassed by general principles of law can best be viewed in terms of ***reasonable, objective foreseeability***." (emphasis added)).

Defendants object to Janssen's instruction as it ignores the requirement that patentees must apportion damages in "every case," and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and the

---

[24]   35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1546 (Fed. Cir. 1995); *Janssen Biotech, Inc.* v. *Celltrion Healthcare Co*, 239 F. Supp. 3d 328, 330 (D. Mass 2017).

other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("'When a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features.'"); *Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent."); *Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature."); *Mentor Graphics v. EVE–USA*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (order denying rehearing en banc) ("[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required.").  Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson.

Defendants object to Janssen's instruction as it assumes the issues of damages and liability will be bifurcated and that both Hospira and Celltrion have been found to infringe the '083 patent.  For all the reasons in Defendants' opposition to Janssen's motion *in limine* no. 14 for bifurcation, bifurcation is inappropriate and prejudicial to Defendants.

As Defendants' proposed Damages Instructions regarding Apportionment, the Entire Market Value Rule, the proper Identification of the Relevant Market, Participation in the Relevant Market, the Panduit Factors, and Price Erosion are a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 49–58, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 5**

**Lost Profits - Availability of Noninfringing Alternatives**

Defendants may show that Janssen is not entitled to lost profits if there was an acceptable, noninfringing alternative cell media for manufacturing Defendants' infliximab biosimilar that was readily available. An alternative cell media may be considered "available" as a potential substitute only if it was available as of the date of first infringement. To be "available," an alternative cell media must have been either on sale or readily available after a "practically instantaneous" period of time, measured at the time of first infringement. ATo be "acceptable," an alternative cell media must be acceptable for the commercial production of infliximab and produce an infliximab that is biosimilar to Janssen's Remicade. Hypothetical, speculative, theoretical, alternatives that did not exist in the real world at the time of first infringement or were mere possibilities do not qualify as available noninfringing alternatives.[25]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as a material misstatement of the law as discussed in Defendants' opposition to Janssen's motion for summary judgment on non-infringing alternatives. Dkt. 303. Janssen has alleged a date of first infringement in October of 2009 while infliximab was not FDA approved and launched until 2016. *See* Dkt. 303. Janssen is seeking to collapse this

---

[25]     Adapted from FBCA Section B .6.2; *Janssen Biotech, Inc. v. Celltrion Healthcare Co., 239* F. Supp. 3d 328, 330 (D. Mass. 2017) ("To decide whether it was feasible for Celltrion to have used a non-infringing media powder to produce Inflectra, it must be determined whether, *starting on the date of first infringement,* Celltrion could have switched to using a non-infringing alternative.") (emphasis added); Feb. 16, 2018 Tr. at 14:21-25 ("If it's not on the market. . . you have to prove that you could have *quickly* developed your own noninfringing alternative."); *see also Micro Chem. Inc. v. Lextron, Inc.* ,318 F.3d 1119, 1122-23 (Fed. Cir. 2003) (assessing availability at the "time of infringement"); *Siemens Med. Sols. USA, Inc.* v. *Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1288 (Fed. Cir. 2011) (assessing availability of NIA at the "time of infringement"); *Grain Processing Corp. v. American Maize- Products Co.,* 185 F.3d 1341, 1346 (Fed. Cir. 1999); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 702 F.3d 1351, 1361-62 (Fed. Cir. 2012); *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Synqor Inc.* v. *Artesyn Techs., Inc.,* 709 F.3d 1365, 1382 (Fed. Cir. 2013); *Siemens Med. Solutions USA, Inc.* v. *Saint-Gobain Ceramics, Plastics, Inc.,* 637 F.3d 1269, 1288 (Fed. Cir. 2011); *Mars, Inc.* v. *Coin Acceptors, Inc.,* 527 F.3d 1359, 1373 (Fed. Cir. 2008).

inquiry down into whether the alternatives that were available in 2009 would have allowed a launch in 2009. As this Court already held:

> [I]f Celltrion could, as a practical matter, have made the Remicade biosimilar, Inflectra, that it began marketing in the United States on about January 1, 2017 — at a competitive price and on a comparable schedule — without infringing the '083 Patent, Janssen would not be entitled to recover any profits on Remicade that it lost to Inflectra. It would, instead, be limited to a reasonable royalty. . . .

> To decide whether it was feasible for Celltrion to have used a non-infringing media powder to produce Inflectra, it must be determined whether, starting on the date of first infringement, Celltrion could have switched to using a non-infringing alternative. The fact-finder must consider how the market would have developed "absent the infringing product," if the infringement had not occurred. Grain Processing, 185 F.3d at 1350-51. "A proper reconstruction of the `but for' world that would have existed absent infringement must consider actions the infringer would have taken to avoid infringement — including designing around the patented intellectual property — starting on the date of first infringement and not on some later date, such as the date of first notice" or the date the infringement began generating lost profits. Apple Inc. v. Samsung Electronics Co. Ltd., 2013 WL 5958172, *2-3 (N.D. Cal. 2013). Before the date of sales that cause the patentee to lose profits, any infringement would justify damages in the amount of a reasonable royalty.

*Janssen Biotech, Inc. v. Celltrion Helthcare Co. Inc.*, 239 F.Supp.3d 328, 330-31 (D. Mass. 2017). In short, the relevant question is whether Celltrion could have switched to a non-infringing alternative in 2009 and still launched on or about January 1, 2017. *Id.* Thus, the alternatives would merely have needed to substitute into Celltrion's development process that was still years away from approval and launch.

Defendants also maintain their objection that the proper comparison for non-infringing alternatives is between the alternative cell culture media and Janssen's cell culture media product, not with the accused product. As the Federal Circuit recently held:

> As to the "acceptable substitute" question, the district court stated that "[Defendan's] own witness testified that the [alternatives] are not as good as the [accused product]," and concluded that "the [alternative] was not an acceptable, noninfringing alternative." On appeal, Presidio argues that "the [alternative] did not perform as well as the infringing [accused product]."

> The district court's analysis and Presidio's argument were flawed. ***The correct inquiry under Panduit is whether a non-infringing alternative would be acceptable compared to the patent owner's product, not whether it is a substitute for the infringing product***.

*Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F.3d 1369, 1380-81 (Fed. Cir. 2017) (emphasis added; internal citations omitted). As Janssen admittedly has no cell culture

media product and does not compete in the cell culture media market, Janssen cannot meet these requirements. Dkt. 303.

As Defendants' proposed Damages Instruction regarding Non-Infringing Alternatives is a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 55, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 6**

**Reasonable Royalty - Entitlement**

If you find that Janssen has established infringement, Janssen is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Janssen has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Janssen a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.[26]  Both parties in this case have agreed that a reasonable royalty should be an up-front lump sum payment.

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as it states that the parties agree a reasonable royalty should be an up-front lump sum payment.  Defendants do not agree that Janssen's reasonable royalty is legally or economically appropriate.  It is misleading to tell the jury the parties "agree" on the form of the royalty.  Indeed, Defendants' expert opined that under Janssen's proposed royalty methodology, a lump sum royalty payment would not be appropriate.  *See* Leonard Report ¶¶ 264-269.

Defendants object to Janssen's instruction as it is confusing.  Janssen asks for a reasonable royalty on Inflectra sales, which is inappropriate.  Instead, "infringing sales" should refer only to the accused cell culture media.

To the extent Janssen is permitted to offer evidence of a reasonable royalty based on Inflectra sales, Defendants object to Janssen's instruction as it ignores the requirement that patentees must apportion damages in "every case," and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("When a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features.""); *Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery

---

[26]   Adapted from FBCA Section B.6.5, NJIP Section 6.5, and AIPLA Section 11.2.5; 35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.,* 246 F.3d 1336 (Fed. Cir. 2001); *Fromson* v. *W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc.* v. *Combustion Eng'g, Inc.,* 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar* v. *C.R. Bard, Inc.,* 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co., 56* F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent."); *Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature."); *Mentor Graphics v. EVE–USA*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (order denying rehearing en banc) ("[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required.").   Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson.

As Defendants' proposed Damages Instructions regarding Reasonable Royalties are a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 59, for the reasons offered there, which are incorporated into this objection.

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 7**

**Reasonable Royalty - Entitlement**

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at the date of first infringement. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.[27]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as it modifies the model instruction to refer to the date of the hypothetical negotiation as the time first infringement rather than taking place at a time prior to when the infringement first began.   See Federal Circuit Bar Association's Model Patent Instructions, § B.6.5.  This issue is further briefed in Defendants' Motion in Limine regarding the Safe Harbor Provision of 35 U.S.C. § 271(e)(1), Dkt. 281.

---

[27] Adapted from FBCA Section B.6.5, NJIP Section 6.5, and AIPLA Section 11.2.5; *Golight, Inc. v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1338 (Fed. Cir. *2004); Maxwell v. J. Baker, Inc.,* 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp.* v. *Kelley Co., 56* F.3d 1538, 1554 (Fed. Cir. 1995) (enbanc); *Georgia-Pacific Corp.* v. *II.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Interactive Pictures Corp.* v. *Infinite Pictures, Inc.,* 274 F.3d 1371 (Fed. Cir. 2001); *Trans-WorldMfig. Corp.* v. *Al Nyman & Sons, Inc.,* 750 F.2d 1552 (Fed. Cir. 1984).

Defendants object to Janssen's instruction as it fails to identify the date of first alleged infringement, which is October 2009.  Janssen's damages expert provided a reasonable royalty analysis based on three dates.  The later two dates are based on indirect infringement and are incorrect as a matter of law, as explained in Defendants' Motion in Limine regarding the Date of the Hypothetical Negotiation.  Dkt. 273.  Thus, the jury should be instructed the hypothetical negotiation takes place in September 2009.

Defendants object to Janssen's instruction as it fails to tell the jury that Janssen cannot collect damages from before May 31, 2011, which is 6 years from the date of Janssen's complaint.  35 U.S.C. § 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."); *A. Stucki Co. v. Buckeye Steel Castings Co.*, 963 F.2d 360, 363 (Fed. Cir. 1992) ("Stucki argues that certain equitable considerations in the nature of those that may overcome the equitable defense of laches, e.g., the 'other litigation' exception, can also operate to 'toll' application of § 286. We disagree.").

Defendants also object to Janssen's instruction as it fails to provide any guidance on the factors considered in the hypothetical negotiation.  *See* Federal Circuit Bar Association Model Patent Instruction B.6.7.

As Defendants' proposed Damages Instructions regarding Reasonable Royalties are a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction Nos. 60–62, for the reasons offered there, which are incorporated into this objection..

**JANSSEN PROPOSED FINAL DAMAGES INSTRUCTION NO. 8**

**Reasonable Royalty - Foreign Sales**

Janssen is not entitled to a reasonable royalty directly on sales of Defendants' biosimilar infliximab made with the infringing media outside the United States. However, you may consider the prospect of sales outside the United States and how the parties may have valued those future worldwide sales as a factor in the hypothetical negotiation.[28]

**DEFENDANTS' OBJECTIONS:**

Defendants object to Janssen's instruction as it implies that Janssen is entitled to a reasonable royalty on Inflectra sales in the United States, which is not correct as a matter of law. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454–55 (2007); *Brown v. Duchesne*, 60 U.S. 183, 195–96 (1856); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1371–72 (Fed. Cir. 2013); *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 791 F.3d 1340, 1349–50 (Fed. Cir. 2015). Janssen primarily relies on *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1307 (Fed. Cir. 2015), but *Carnegie Mellon* involved a damages measuring unit that actually performed the infringing method at issue. By contrast, Inflectra does not infringe, nor is it capable of infringing the '083 patent.

Defendants object to Janssen's instruction as it is inconsistent with Janssen's damages analysis, which directly uses foreign sales in coming to a so-called reasonable royalty. *See* Nicholson Report at 35-47.

To the extent Janssen is permitted to offer evidence of a reasonable royalty based on Inflectra sales, Defendants object to Janssen's instruction as it ignores the requirement that patentees must apportion damages in "every case," and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009); *see also Garretson v. Clark*, 111 U.S. 120, 121 (1884) (""When a patent is ... not

---

[28]   *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.,* 807 F.3d 1283, 1307 (Fed. Cir. 2015) (stating that defendant's foreign sales were "strongly enough tied to its domestic infringement as a causation matter to have been part of the hypothetical negotiation agreement"); *GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.,* No. 1:14-CV-7080-LTS-SN, 2015 U.S. Dist. LEXIS 159419 (S.D.N.Y. Nov. 25, 2015) (ordering production of foreign sales information because it is "relevant to GE's claim for damages for allegedly infringing activities in the United States since it has, at a minimum, implications for the valuation of the invention" and is not "precluded by the presumption against extraterritoriality"); *Novartis Pharms. Corp.* v. *Abbott Labs.,* 203 F.R.D. 159, 164 (D. Del. 2001).

for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features.""); *Seymour v. McCormick*, 57 U.S. 480, 489 (1853) ("[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement."); *Philp v. Nock*, 84 U.S. 460, 462 (1873) ("Where the infringement is confined to a part of the thing sold, the recovery must be limited accordingly. It cannot be as if the entire thing were covered by the patent."); *Sessions v. Romadka*, 145 U.S. 29, 45 (1892) ("[P]rofits upon the entire article are only allowable where such article is wholly the invention of the patentee, or where its entire value is properly and legally attributable to the patented feature."); *Mentor Graphics v. EVE–USA*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (order denying rehearing en banc) ("[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required.").   Relevant legal principles are further described in Defendants' Opposition to Janssen's Motion in Limine Regarding Apportionment and Defendants' Daubert Motion Regarding Dr. Sean Nicholson.

As Defendants' proposed Damages Instructions regarding Foreign Sales are a balanced and accurate recitation of the law, Defendants respectfully request that the Court give Defendants' Post-Trial Instruction No. 45–46, for the reasons offered there, which are incorporated into this objection..