**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.<br><br>                    Plaintiff,<br><br>           v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.<br><br>                    Defendants. | **Civil Action No. 1:17-cv-11008-MLW**<br><br>**PUBLIC-<br>REDACTED VERSION** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 11**

## I.    INTRODUCTION

Defendants have proffered Dr. Bert Frohlich as an expert in cell culture media on technical aspects related to damages issues. Based on the false premise that Defendants are trying to fill gaps in their noninfringement and invalidity defenses, Janssen seeks to preclude dozens of paragraphs of Dr. Frohlich's opinions, arguing that they are actually liability opinions. Janssen's motion fails on every possible front: there are no gaps Defendants are trying to fill, Dr. Frohlich's opinions directly relate to damages issues, and Janssen's description of the law of non-infringing alternatives is completely wrong. Like most of Janssen's motions *in limine*, this one is an inappropriate effort to set up a trial posture where its positions and its experts do not have to face the intense scrutiny that their theories and opinions deserve.

Here, Janssen seeks to hide conflicts between factual positions it has taken on damages and non-infringing alternatives on the one hand, and infringement and invalidity on the other. *Cf.* Defendants' Response to Janssen MIL No. 13. For example, Janssen's experts have promoted one set of testing measurements as the standard way of determining scientific equivalence for infringement, while criticizing the same set of measurements as insufficient to assess the substitutability of the accused media for non-infringing alternatives. The Court should deny Janssen's motion because "[i]t is the proper role of rebuttal experts to critique plaintiff['s] expert[s'] methodologies and point out potential flaws in the plaintiff's experts' reports." *Aviva Sports v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011).

First, Janssen mischaracterizes Dr. Glacken's opinions to imply that, because Dr. Glacken will not opine affirmatively that there ***are*** substantial differences, everyone agrees the differences are insubstantial. For example, Janssen states that Dr. Wurm's testing "demonstrated that the literal differences between the accused media and the claim did not have a substantial effect on the performance of the accused media. Dr. Glacken did not disagree." Memo at 7. This is not the first

time Janssen has implied as much, but it is false--and Janssen knows it. *See, e.g.*, No. 15-cv-10698, Dkt. 343 at 4-5 (falsely stating that Dr. Glacken "did not opine in [his] expert report about insubstantiality of the differences"). Janssen bears the burden of proving infringement, Janssen's experts opine that testing is necessary to know if the differences are substantial or insubstantial, Dkt. 177, 1/30/3018 Hr. Tr. at 101:4-13, and Defendants vigorously dispute whether Dr. Wurm's tests had the ability to determine equivalents. As Dr. Glacken opines, Janssen's testing was both rigged and fatally flawed, and as a result Janssen cannot prove the differences are insubstantial. Dkt. No. 178, 1/31/2018 Hr. Tr. at 70-71. Likewise, Janssen argues Dr. Glacken "did not opine that the claimed invention would have been obvious over the prior art." Memo at 2. Also false. Dr. Glacken expressly opined that "the asserted claims are invalid because they would have been obvious to a person of ordinary skill in the art…" *E.g.*, Dkt. 221-4, Glacken Invalidity Op. ¶¶ 21, 62, 202, 206, 232-233, 242, 256 and pages 102, 122, 134. There are no "manifest deficiencies" in Dr. Glacken's opinions that Dr. Frohlich needs to "compensate" for. Memo at 2.

Second, all of the opinions Janssen asserts have no relevance to damages are, in reality, directly relevant to damages. For example, Janssen says that "technical advantages" of the claimed invention "goes to the issues of obviousness – not non-infringing alternatives." Memo at 6. But, the Federal Circuit has stated otherwise, holding that an "acceptable" non-infringing alternative must include the "***advantages of the patented product***" to the extent customers want those advantages. *Standard Havens Prod., Inc. v. Gencor Indus.*, Inc., 953 F.2d 1360, 1373 (Fed. Cir. 1991).[1]

As another example, while Janssen says "whether or not components of cell media were known" in the prior art "is of no consequence" to damages issues, Dr. Frohlich's opinions

---

[1] All emphasis added unless otherwise noted.

regarding the state of cell culture media technology generally supports Defendants' damages expert, Dr. Leonard. Dr. Leonard considered Dr. Frohlich's opinion in connection with his analysis regarding lost profits and in calculating a reasonable royalty under *Georgia-Pacific*. *E.g.*, *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); Janssen MIL Ex. 3, Leonard Rep. ¶¶ 93, 97, 101, 116 (non-infringing alternatives), 153, 160, 162-163, 166, 247 (reasonable royalty).[2] Rule 703 expressly "allows experts to rely upon the opinions of other experts to form their own conclusions." *U.S. v. Zolot*, 968 F. Supp. 2d 411, 426 (D. Mass. 2013).

Janssen also cannot prevent Dr. Frohlich from rebutting its own experts' arguments. For example, Janssen argues that Dr. Frohlich is providing an improper infringement opinion because he criticizes Dr. Butler and Dr. Wurm for not "test[ing] any aspects of antibody quality." But Dr. Frohlich's opinions are directly in response to Dr. Butler's damages report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g.*, Dkt. 244 Ex. 9, Butler Damages Op. ¶ 73. In contrast, Dr. Butler placed no importance on product quality in opining that the accused products infringe by the doctrine of equivalents. *See* Dkt. 177, 1/30/18 Hr. Tr. at 147:20-148:8; Janssen MIL Ex. 12, Frohlich Rep ¶¶ 179, 290. Dr. Frohlich's critiques of Dr. Butler (and Wurm) are entirely proper given his role as Defendants' rebuttal expert. *See Aviva Sports*, 829 F. Supp. 2d at 834–35. Janssen's characterization of these as "disguised liability opinions" reveals a fundamental misunderstanding of the law of non-infringing alternatives and patent damages more generally, including what is or is not relevant to those inquiries.

Janssen's arguments that "damages" experts should be limited to damages issues as pretense for excluding their opinions rings hollow. Janssen itself has admitted that it intends to put

---

[2] References to Janssen MIL exhibits are to the exhibits contained in Dkt. 265.

up Richard Lit—whom they offered up only the damages phase, ostensibly as a regulatory expert in relation to non-infringing alternatives—on liability issues related to the alleged infringement of the accused media under 35 U.S.C. § 271(f).[3] Dkt. 300 at 1. Janssen cannot claim some inequity from Defendants' damages experts providing opinions that bear some connection to invalidity or infringement when they have done the same.

## II.   DR. FROHLICH'S OPINIONS ARE RELEVANT TO DAMAGES

Janssen has broken its motion up into several sub-parts. Defendants address each in turn.

### A.   Opinions "That the Accused Media Do Not Infringe"

Dr. Frohlich has not been asked to opine on whether the accused media do or do not infringe. Rather, the legal framework for damages assumes that the accused media infringes (otherwise damages would never be reached). In the footnote Janssen crop-quotes, Dr. Frohlich said "[w]hile I do not believe Janssen has shown the accused products infringe, *I have been asked to consider noninfringing alternatives should the accused products be found to infringe*." Janssen MIL Ex. 12, Frohlich Rep. ¶ 23 n.3 (bold/italics added to show portion deleted by Janssen). In other words, Dr. Frohlich made clear that he was asked to assume infringement, not that he personally believed it. Had he not said this, it seems safe to say that Janssen would have attempted the same game it did with Dr. Glacken, and argued that Dr. Frohlich agrees that the accused media infringes. Janssen's motion is moot on this point, and Janssen similarly should not be permitted to imply that Dr. Frohlich believes there is infringement.

---

[3] Dr. Frohlich's expert report provides a response to Mr. Lit's damages opinions related to 271(f). Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 235-242. If Mr. Lit is permitted offer his opinions in the context of liability, then Dr. Frohlich should be permitted to do the same.

**B.      Opinions "About The Scope of the Prior Art or the Inventiveness of the '083 Patent"**

Dr. Frohlich opines that (1) there are no "technical advantages to [the '083 patent embodiment] MET 1.5 or the media composition of claim 1 of the '083 patent over other cell culture media compositions that existed in 2004", (2) that the '083 patent recites "standard media components that were well known and commonly used in cell culture media compositions," and (3) that "[o]ptimization of a process for biologic manufacturing is routine." Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 44, 185. Janssen argues these opinions, and 19 paragraphs from Dr. Frohlich's report, should be excluded because "[w]hether or not the components of the claimed invention were 'well-known' or provided a 'technical advantage' goes to issues of obviousness – not non-infringing alternatives." Memo at 6. Janssen fundamentally misunderstands the law of noninfringing alternatives, and ignores other damages issues to which this is also relevant.

*First*, Janssen's argument that Dr. Frohlich's opinions are not relevant to the acceptability of non-infringing alternatives is flat wrong. Whether a non-infringing alternative is "acceptable" is determined, in part, by whether it has the "advantages of the patented product" (if the "customer… wants those advantages"). *Standard Havens Prod., Inc. v. Gencor Indus.*, Inc., 953 F.2d 1360, 1373 (Fed. Cir. 1991). Said another way, "the dispositive question as 'whether there is economically significant demand for a product having all ... attributes [of the claim in suit],' i.e., whether consumers demand every claimed feature." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1348 (Fed. Cir. 1999). Dr. Frohlich therefore properly considered what advantages there are, if any, of the patented invention in view of the prior art and the field of cell culture media more generally. He found none.

Likewise, *Panduit* expressly recognized that comparisons to the prior art are relevant to the acceptability of non-infringing alternatives:

> Proof of the absence of noninfringing substitutes: (I)nvolves some of the same evidence as that which was introduced in support of the validity of the patent....
> *[A]lthough the patent may have embodied some trifling improvement which was patentable to a narrow extent, such improvement did not create any preference for the patented product rather than a noninfringing substitute.*

*Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1162 (6th Cir. 1978). That the proofs for noninfringing substitutes "involve[d] some of the same evidence as that which was introduced in support of validity," did not result in exclusion there, nor should it here. *Id.*

In fact, courts evaluating noninfringing alternatives frequently consider whether the claimed invention has "unique advantages" that the market demands, just as Dr. Frohlich did. For example, in *Grain Processing*, the Federal Circuit explained that "[b]ecause consumers find the 'waxy' and 'descriptive ratio' elements of claim 12 'irrelevant,' the prospect of an available, acceptable noninfringing substitute expands because a competitor may be able to drop or replace the 'irrelevant' elements from its product." *Grain Processing*, 185 F.3d at 1354. Likewise, the Court in *Slimfold Manufacturing* considered whether "buyers of bi-fold metal doors specifically want a door having the advantages of the Ford patent." *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991). Here, Dr. Frohlich's opinion that the claimed media has no "unique" advantages to consider is directly relevant to the acceptability of the available non-infringing alternatives.

***Second***, Dr. Frohlich's opinions as to what techniques were known in the art at the time of first alleged infringement go to availability of the non-infringing alternatives. In assessing whether a non-infringing alternative was "available" to the accused infringer, courts consider whether the accused infringer had "the know-how" to switch to the alternative. *Grain Processing*, 185 F.3d at 1354. Moreover, "[i]n determining whether the alternative product is available, the court may consider whether… the non-infringing alternative was ***well known in the field*** at the time of

infringement." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2016 WL 524904, at *8 (N.D. Cal. Feb. 10, 2016).

Here, Dr. Frohlich opined that the techniques of cell culture media optimization "for biologic manufacturing is routine and has been performed since prior to 2004." Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 185, 222. That supports Dr. Frohlich's opinion that, if needed, "it would have been relatively easy for Celltrion to optimize its infliximab production process to use CD Hybridoma to meet certain productivity and antibody product quality goals through routine efforts." *E.g.*, Janssen MIL Ex. 12, Frohlich Rep. ¶ 181. That these techniques were known even before the '083 patent is further evidence that they were well-ingrained and available to the Defendants in switching to any alternative media.

***Third***, Dr. Frohlich's opinions as to the state of the prior art go to the available alternatives being non-infringing. If an alternative is prior art or merely practicing the prior art, it is non-infringing (or the patent would be invalid if Janssen argued otherwise). Under Janssen's indefinite and all-encompassing infringement theories (on liability and with respect to non-infringing alternatives), Janssen has effectively argued any cell culture media that works—despite differing concentrations (*e.g.* the accused media) and missing ingredients (*e.g.* Dkt. 297 at 4)—somehow infringes. Given Janssen's disregard for the metes and bounds of the claimed invention, defendants ability to point to the prior art nature of the alternatives, here, is particularly important because several such prior art alternatives (*e.g.*, CD Hybridoma, CD CHO, the media disclosed in the GSK reference) have formulas that are extremely close to the claimed media. Even to the extent Janssen concedes that these alternatives are non-infringing (*see* Memo at 9), they cannot simply sweep their prior art status under the rug while proceeding to put forth expansive infringement theories.

Contradictions between Janssen's damages theories, infringement theories, and invalidity theories are fair game.

**Fourth**, both parties' experts used the *Georgia-Pacific* factors to evaluate the reasonable royalty. Factor 9 expressly considers "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified sub nom. *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). Dr. Frohlich's opinion that the claimed media (including the MET 1.5 embodiment) have no such utility or advantages over the prior art, Janssen MIL Ex. 12, Frohlich Rep. ¶ 44, is therefore directly on point. And Dr. Leonard relied on Dr. Frohlich's opinions when analyzing *Georgia-Pacific* factor 9 for purposes of calculating a reasonable royalty. Ex. Janssen MIL Ex. 3, Leonard Rep. ¶ 153; *see also* ¶ 74.

### C.   Opinions "About Ferric Ammonium Citrate"

Janssen has repeatedly argued during this case that ferric ammonium citrate (FAC) "was not commonly used in cell culture media" and is a "fingerprint" for infringement. Memo at 6; Dkt. 306 Ex. 34, 2/24/17 Hr. Tr. at 69:3-5.[4] This implies that FAC provided an advantage to the patented media over prior media formulations. In direct response to Janssen's and its experts' positions, Dr. Frohlich opines that the iron source claimed in the patented media, ferric ammonium citrate, is not "unique in cell culture media" and there are no "unique advantages" to it. *E.g.*, Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 45, 265. He also opines, based on contemporaneous literature, that there are

---

[4] Janssen previously told this Court that "[p]rior to the '083 patent, no published cell media formula included ferric ammonium citrate" (15-10698 Dkt. 418 at 14). That representation was just wrong. Not only was ferric ammonium citrate used by Celltrion's supplier years earlier, it had been published in the prior art literature cited on the face of the '083 Patent as "preferred" for cell culture media. Dkt. 306 at 20. Unsurprisingly, Janssen now tries to backtrack and claim it was somehow "uncommon." Unsupported and ultimately false statements like this should be rejected.

other iron sources that are "equally as effective, or more effective, than ferric ammonium citrate." *Id*. ¶ 46. Janssen claims this should all be excluded because it is solely a "liability position." Memo at 6.

But it is clearly not. As explained above, a proper analysis of the acceptability of non-infringing alternatives considers whether the alternatives have the advantages of the patented invention, to the extent the market demands them. *Supra* B. Dr. Frohlich's opinion that FAC provides no such advantage supports his opinion that it would not be a required ingredient for an alternative to be considered acceptable. Thus, Dr. Frohlich proposes that one possible noninfringing alternative media would involve modifying the accused media to omit FAC. Janssen MIL Ex. 12, Frohlich Rep. ¶ 261. This alternative media would be acceptable despite the lack of FAC because "there are no unique benefits to ferric ammonium citrate that would have prevented it from being replaced with another iron complex, such as the ferric fructose stock solution in GSK." *Id*. at ¶ 265.

Janssen's argument has nothing to do with alleged "unfair prejudice." Janssen wants to tout the alleged "unique[ness]" of FAC for infringement and validity purposes, and also to foster the notion that FAC provides an "advantage" to the '083 patented media over the prior art, but then prevent Defendants from rebutting that implication. There is no justification for Janssen's motion.

### D.     Opinions "Relating to Dr. Wurm's Laboratory Testing"

Janssen mischaracterizes Dr. Frohlich's opinion, claiming that he "directly criticizes Dr. Wurm's testing" relating to infringement under the doctrine of equivalents "without identifying any purported connection to damages." Memo at 7. This is not true. Dr. Frohlich's discussion of Dr. Wurm's testing—of both the similarities and deficiencies as compared to his own testing—directly bolsters his opinions on non-infringing alternatives. Dr. Frohlich's ability to bolster his opinions in this way are all the more important because Dr. Butler has criticized Dr. Frohlich's

testing, despite having endorsed the same (indeed, less reliable) testing from Dr. Wurm. Thus, Janssen's motion on this point should be denied for several reasons.

***First***, the similarities between Dr. Wurm's and Dr. Frohlich's testing are relevant because they confirm the reliability of Dr. Frohlich's experiments. Dr. Frohlich measured the growth, productivity, and titer of the non-infringing alternative media against the accused media, which are the exact same measurements that Dr. Wurm used to test equivalence for infringement. Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 116, 119. Thus, Janssen and its experts have already endorsed Dr. Frohlich's methodology.

Janssen tries to argue the similarities are irrelevant because the doctrines of equivalents and non-infringing alternatives are different. This is a red herring. During the Daubert hearing to exclude Dr. Wurm's tests, Dr. Butler explained that—outside of any litigation context—looking at growth, productivity, and titer are how scientists measure equivalents in the real world:

> [I]n scientific terms, if you wanted to choose a particular media, you would test media formulations that might be totally different and test them in the same way that Dr. Wurm's experiments were conducted. And if they performed in the same way and had the same cell growth and antibody production, you would say that those media were equivalent.

1/30/18 Hr. Tr. at 148:1-6.

***Second***, the differences between Dr. Frohlich's testing and Dr. Wurm's testing are relevant because they also bolster Dr. Frohlich's opinion. Not only did Dr. Frohlich consider the same measurements as Dr. Wurm, but he took it several steps further to ensure the reliability of his testing. For example, unlike Dr. Wurm, Dr. Frohlich's tests actually used and tested for the production of infliximab. *Id*. at ¶ 291.

***Third***, and perhaps most importantly, Dr. Frohlich is entitled to discuss the similarities and differences between his and Dr. Wurm's testing in rebuttal. Dr. Butler has directly criticized Dr.

Frohlich's testing. *E.g.*, Dkt. 244 Ex. 1, Butler Damages Reply ¶¶ 31, 36. Dr. Frohlich should be permitted to defend his methodology and point out the different positions Dr. Butler has taken about what scientists do in the real world. This itself provides yet another reason why the case should not be bifurcated as Janssen suggests: Janssen wants to argue scientists in the real world look at growth, productivity, and titer for equivalence (when it comes time for arguing infringement), and that scientists in the real world do not look to growth, productivity, and titer to determine equivalents (when it comes time for arguing alternatives). Defendants are entitled to challenge that inconsistency through their own expert. *Aviva*, 829 F. Supp. 2d at 834–35.

It is irrelevant that infringement and non-infringing alternatives are different issues: the jury is going to know that two experts did testing and will inevitably be comparing the methodologies to evaluate their credibility. To that end, Defendants should be entitled to present evidence showing the reliability of Dr. Frohlich's testing for purposes of non-infringing alternatives. Indeed, it is highly relevant to both Dr. Butler's arguments and credibility that he endorsed and relied upon Dr. Wurm's testing, but criticized a more robust set of tests from Dr. Frohlich.

### E.      Opinions "Challeng[ing] Dr. Butler's Infringement Opinions"

To support his opinion that acceptable alternative media were commercially available at the time of first alleged infringement, Dr. Frohlich tested two such media, CD Hybridoma and CD CHO, alongside the accused media. *E.g.*, Janssen MIL Ex. 12, Frohlich Rep. ¶ 116. "The goal of this testing was to determine whether… CD Hybridoma and CD CHO… would have been acceptable cell culture media for producing infliximab." *Id*. Janssen claims this testing is somehow a criticism of Dr. Butler's infringement opinion because Celltrion *also* tested **one** of these media, CD Hybridoma, back in 2008, so there would "seem to be no purpose to this new testing" other than to "challenge Dr. Butler's infringement opinions." Memo at 8-9. This makes no sense.

First, Dr. Frohlich's testing of CD Hybridoma is not made redundant simply because Celltrion also tested CD Hybridoma in 2008. Celltrion tested CD Hybridoma before the final specification for the accused media had been determined, so there is no data from 2008 comparing CD Hybridoma to the accused media as it exists today. *See* Janssen Ex. 12, Frohlich Rep. ¶¶ 104, 109. Moreover, it is appropriate for Defendants to have Dr. Frohlich test CD Hybridoma using the methodology that Janssen's experts used, in order to remove opportunities for baseless criticism. In any event, even if Dr. Frohlich's testing of CD Hybridoma were considered redundant (it is not), it is unclear how that makes it a criticism of Dr. Butler's infringement opinions, or grounds for exclusion.

Second, if Janssen is simply arguing that Dr. Frohlich should not be permitted to compare the testing he performed for non-infringing alternatives to the testing Dr. Butler endorsed for infringement, that is untenable. As explained above, Dr. Frohlich is entitled to demonstrate the reliability and adequacy of his own testing on non-infringing alternatives, including to point out similarities with testing endorsed by Janssen, and any additional facts indicative of reliability. *Supra* D; *see Aviva*, 829 F. Supp. 2d at 834–35. Moreover, Dr. Butler has expressly criticized Dr. Frohlich's testing. *E.g.*, Dkt. 244 Ex. 1, Butler Damages Reply ¶¶ 31, 36. If Dr. Butler is permitted to do that, Dr. Frohlich must be permitted to respond to avoid any unfair prejudice.

### F.  Opinions Comparing "CD Hybridoma and CD CHO… With the Patent Claim"

Janssen argues that Dr. Frohlich should not be permitted to compare two alternative media—CD Hybridoma and CD CHO—to the media claimed in the '083 patent because "Janssen had already conceded these two alternatives do not infringe" and are "in the prior art." Memo at 10. Again, Janssen's argument that this is a backdoor invalidity opinion misses the mark.

The similarities between a proffered alternatives and the claimed invention go directly to the acceptability of those alternatives. As *Grain Processing* has explained, "[i]mportant factors" to consider for acceptability "may include… similarity of physical and functional attributes of the patentee's product to alleged competing products." *Grain Processing Corp.*, 185 F.3d at 1355. This includes consideration of the demand for the "claimed feature[s]." *Id.* at 1349. Dr. Frohlich thus compared the alternatives to the patented invention opined that "CD Hybridoma's similarity to MET 1.5 and the formulation of claim 1 of the '083 patent… supports a conclusion that CD Hybridoma is and was an acceptable non-infringing alternative to the accused media." Janssen MIL Ex. 12, Frohlich Rep. ¶ 166.[5] Importantly, Janssen disputes that CD Hybridoma is an acceptable alternative, and plans to put Dr. Butler up in support of that argument. *See, e.g.*, Dkt. 246; Dkt. 244 Ex. 1, Butler Damages Reply ¶ 21. Dr. Butler did not perform any tests for his non-infringing alternatives analysis. It cannot be the case that Janssen's expert gets to opine that CD Hybridoma is not acceptable, while Defendants' expert is precluded from presenting counter-evidence, including testing from Dr. Frohlich himself.

Moreover, the similarities are an indicator that "to the extent the accused media have better performance than CD Hybridoma… it is due to the unclaimed ingredients in the accused media." Janssen MIL Ex. 12, Frohlich Rep. ¶ 168. This not only confirmed Dr. Frohlich's opinion that the patented media has no unique advantages that would be required in the alternative media, but also suggested that, to the extent any improvement in performance were needed before Celltrion could

---

use CD Hybridoma for producing infliximab biosimilar, those unclaimed ingredients (such as "protein hydrolysate") could be added to CD Hybridoma "in much the same way" to "improve media performance." *Id*. ¶ 186.

Given the clear probative value of Dr. Frohlich's opinions on the issue of non-infringing alternatives, Janssen's motion should be denied.

### G.     Opinions "Regarding… Modifications to the Accused Media"

Dr. Frohlich has opined that, to the extent the accused media infringe (as is assumed for purposes of lost-profit analysis), the accused media could have been modified in several different ways to avoid infringement. One of these alternatives is the subject of Defendants' co-pending motion for summary judgment that there were available and acceptable non-infringing alternatives. Dkt. 238. Janssen argues that Dr. Frohlich should not be permitted to provide opinions to the jury that these alternatives do not infringe, because those opinions "are improper attempts to argue validity and infringement" and because they rely on the doctrines of ensnarement and vitiation, which are questions of law, not fact. Memo at 11-12.[6] Janssen's request should be denied.

Dr. Frohlich does not provide any "validity" or "infringement" opinions on liability. Thus, for example, he does not analyze the question of infringement of the accused media. Instead, he analyzes whether certain ***alternative*** media would be available, acceptable non-infringing alternatives. Of course, part of establishing this is that the proposed alternatives are not infringing. *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989). Dr. Frolich applies straightforward vitiation and ensnarement concepts in non-controversial ways to demonstrate that

---

[6] Janssen also incorrectly argues that these alternatives are "speculative" and "theoretical." Memo at 11, 12. However, Janssen has filed a separate motion, MIL No. 12, based on those contentions. Memo at 13-18. Defendants respond to those arguments in its opposition to MIL 12, rather than in this opposition.

certain proposed alternatives are noninfringing. *E.g.*, Janssen MIL Ex. 12, Frohlich Rep. ¶¶ 271-272.

For example, Dr. Frohlich opines that Defendants could have modified the accused media to practice the prior art Glaxo Smith Kline ("GSK") media. Because the accused media are so similar to the GSK media, these changes would have been "simple," requiring "no further optimization work" for use in the manufacture of Inflectra®. *E.g.*, Janssen MIL Ex. 12, Frohlich Rep. ¶ 116. And, because GSK is prior art, it cannot infringe, either literally or under the doctrine of equivalents. *Id*. at 11-12. This is a straightforward principle that will not confuse the jury.

As another example, Dr. Frohlich opined that another alternative would be to remove certain ingredients (e.g., magnesium chloride) from the accused media and increase alternative claimed ingredients (e.g., magnesium sulfate) that supply the same active component (magnesium). *E.g.*, *id*. at ¶ 272. He opined that this alternative would not infringe, either literally or under the doctrine of equivalents. *Id*. Indeed, as explained in Defendants' co-pending motion for summary judgment on non-infringing alternatives, this alternative would not infringe under the doctrine of equivalents as a matter of law based on the rule against vitiation. Dkt. 238; *see also* Defendants' co-filed Reply to Dkt. 238.

There is no legitimate dispute that these alternatives are non-infringing, and Janssen has offered no evidence to the contrary. Rather, Janssen argues juries can't consider legitimate alternatives that are non-infringing due (at least in part) to vitiation. Memo at 12. But the jury should be able to consider any proposed noninfringing alternative, regardless of why it does not infringe. Janssen cites no case to the contrary. Janssen asks for a perverse result: if an alternative would be non-infringing as a matter of law, the jury cannot consider it as an alternative.

Key here, on non-infringing alternatives, Janssen bears the burden of showing infringement, including as to the modified media alternatives. *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989). Janssen cannot argue that Defendants' proposed alternatives infringe the '083 patent, on which it bears the burden, while simultaneously preventing Dr. Frohlich from opining that they do not infringe. Moreover, Janssen cannot reasonably believe that Dr. Frohlich's non-infringement opinions will be confusing to the jury, because he offers no infringement opinions related to the accused GE HyClone media. Janssen MIL Ex. 19 (Frohlich Tr.) at 8:15-9:5.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Janssen's motion *in limine* to exclude testimony from Dr. Frohlich related to liability.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L. Martin, Esq.
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

<u>/s/Andrea L. Martin, Esq.</u>
Andrea L. Martin, Esq.
