**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

JANSSEN BIOTECH, INC.,

               Plaintiff,

    v.

CELLTRION HEALTHCARE CO., LTD.,
CELLTRION, INC., and
HOSPIRA, INC.

               Defendants.

No. 1:17-cv-11008

**REDACTED-
PUBLIC VERSION**

**DEFENDANTS' OPPOSITION TO JANSSEN'S MOTION *IN LIMINE* NO. 8
REGARDING EVIDENCE AND ARGUMENT OF APPORTIONMENT**

## <u>TABLE OF CONTENTS</u>

I.  **Introduction** ................................................................................................................... **1**

II.  **Argument** ..................................................................................................................... **5**

    A.  Janssen Misrepresents the Court's Prior Guidance and the Parties' Briefing ................................................................................................. 5

    B.  Janssen Ignores the Holding of *Mentor Graphics*, and Factual Differences Confirm Apportionment Is Required under Janssen's Damages Model ................ 6

    C.  Janssen's "But For"-Causation-Alone Lost Profits Theory for Unpatented Products Has Been Rejected in Favor of the Entire Market Value Rule .............. 12

    D.  Janssen's Attempt to Distinguish the Law on Apportionment Ignores the Facts of this Case and the Reasoning behind Apportionment ............................. 17

    E.  Janssen's Arguments Ignore the Differences between Lost Profits and Reasonable Royalty Damages ............................................................................. 19

III.  **Conclusion** ................................................................................................................ **20**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviva Sports v. Fingerhut Direct Mktg., Inc.*,
829 F. Supp. 2d 802 (D. Minn. 2011) ....................................................4, 5, 9, 20

*BIC Leisure Prods., Inc. v. Windsurfing Intern., Inc.*,
1 F.3d 1214 (Fed. Cir. 1993) ................................................................11

*Calico Brand, Inc. v. Ameritek Imps., Inc.*,
527 F. Appx. 987 (Fed. Cir. 2013) ......................................................10, 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ..........................................................17, 18, 20

*Garretson v. Clark*,
111 U.S. 120 (1884) ............................................................1, 3, 13, 17

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ....................................................4, 19, 20

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
382 F.3d 1367 (Fed. Cir. 2004) ..........................................................16

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ..............................................................4, 18, 20

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ..........................................................13, 20

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
851 F.3d 1275 (Fed. Cir. 2017) .......................................................... *passim*

*Mentor Graphics Corp. v. Eve-USA, Inc.*,
870 F.3d 1298 (Fed. Cir. 2017) ..........................................................7, 9

*Micro Chem., Inc. v. Lextron, Inc.*,
318 F.3d 1119 (Fed. Cir. 2003) ..........................................................15, 16

*Minco, Inc. v. Combustion Eng'g, Inc.*,
903 F. Supp. 1204 (E.D. Tenn. 1995) ..................................................14

*Minco, Inc. v. Combustion Eng'g, Inc.*,
95 F.3d 1109 (Fed. Cir. 1996) ............................................................14, 15

ii

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
  745 F.2d 11 (Fed. Cir. 1984).......................................................................13

*Piper v. Brown*,
  19 F. Cas. 722 (C.C.D. Mass. 1873) ............................................................2

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995)..................................................2, 12, 13, 14

*Rite-Hite Corp. v. Kelley Co.*,
  774 F. Supp. 1514 (E.D. Wis. 1991) ..........................................................12

*Seymour v. McCormick*,
  57 U.S. 480 (1853).......................................................................................17

*United States v. Mooney*,
  315 F.3d 54 (1st Cir. 2002) ..............................................................4, 9, 20

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)...........................................................13, 20

*Wallace & Tiernan Co. v. City of Syracuse*,
  45 F.2d 693 (2d Cir. 1930)............................................................................3

**Other Authorities**

U.S. Const., art. I, § 8, cl. 8...........................................................................13

## I.     INTRODUCTION

Janssen's damages calculations, presented by its expert Dr. Nicholson, are not based on the accused product—cell culture media—but on the entire value of infliximab, an ***unpatented***, downstream product. Yet "[w]hen a patent is ... not for an entire[] ... machine or contrivance, the patentee must ... separate or apportion ... the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark,* 111 U.S. 120, 121 (1884). Given this requirement, which has been reaffirmed countless times by the Federal Circuit, Defendants' expert Dr. Leonard criticized Dr. Nicholson's opinion because █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████

Yet, notwithstanding that Dr. Leonard's opinions are firmly grounded in extensive Supreme Court and Federal Circuit precedent ***requiring*** apportionment, Janssen remarkably argues that the jury should not hear criticism of Dr. Nicholson's opinions for failure to apportion because "[t]he apportionment concept has no application here." Dkt. 267 at 5.

Janssen bases its motion to exclude evidence and argument of apportionment on two faulty premises. First, Janssen incorrectly asserts that "this Court has already rejected" the argument that Janssen is required to apportion any profit related to Remicade, citing this Court's March 2017 "guidance" on certain damages issues. Dkt. 267 at 5. But neither party ***mentioned***, let alone briefed the issue of apportionment at that time, instead focusing on issues such as

territoriality, the BPCIA "patent dance," non-infringing alternatives, standing, and certain issues surrounding Janssen's request for an injunction. No. 15-10698, Dkts. 412, 414, 441, 445, 460, 471, 518. Thus, this Court has never ruled on whether Janssen is required to apportion any damages based on sales of Remicade® to account for value beyond the accused media. *See* No. 15-10698, Dkt. 518.

Second, Janssen argues that it "is entitled under the law to seek damages based on the sales of this non-patented product [Remicade®], when those sales would not have been lost but for Defendants['] infringement of Janssen's cell media patent." Dkt. 267 at 3. Janssen's fundamental argument is that it must show "but-for" causation, and nothing else, to support its claim for lost profits on Remicade®. Janssen's primary support is *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), but Janssen's reliance on *Mentor Graphics* stretches any reasonable interpretation of that case beyond the breaking point. Janssen ignores its holding, the factual differences from this case, and even how it applied the long-accepted *Panduit* factors. And, Janssen's "but for"-causation-alone-is-sufficient theory for **unpatented** products is contradicted by the other cases it cites.

To be sure, "[t]o recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). But cause-in-fact alone is not enough, as Janssen previously recognized when it alleged that its lost profits "were **proximately caused** by Defendants' continuing infringement in the United States." *See* Dkt. 246 at 17 (emphasis added); *see also Piper v. Brown*, 19 F. Cas. 722, 723 (C.C.D. Mass. 1873) ("Where profits are recoverable by the owner of a patented invention against an infringer, they are such profits or gains as result directly or immediately from the wrongful act of the infringer.

2

Remote and contingent profits or gains, depending upon the result of successive schemes or investments, are never allowed.").

Janssen's argument is incorrect because the Supreme Court has long required apportionment of patent damages in "every case." *Garretson,* 111 U.S. at 121; *see also Wallace & Tiernan Co. v. City of Syracuse*, 45 F.2d 693 (2d Cir. 1930) (apportionment still required where "but for" causation had been shown). *Mentor Graphics* itself reaffirmed that "apportionment is an important component of damages law ***generally***, and we believe it is ***necessary*** in both reasonable royalty and lost profits analysis." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017). And, as explained in Defendants' co-pending *Daubert* motion to exclude the opinions of Dr. Sean Nicholson, there are only two exceptions to the requirement to apportion: (1) when a party can meet the requirements of the entire market value rule; and (2) in certain circumstances, the *Panduit* test may satisfy the requirement to apportionment. Dkt. 240 at 11-16. Neither applies here.

Recognizing the weakness of its use of *Mentor Graphics*, Janssen provides a back-up argument, claiming that "[t]he Federal Circuit has applied an 'apportionment' requirement only in cases … where the patent-in-suit covers a particular feature or component of a multi-component product." Dkt. 267 at 5. Under Janssen's approach, if an accused product includes the patented feature along with other features, apportionment is required, but if one instead computes damages on a much more valuable downstream product that does not even include the patented feature at all, one is freed from the apportionment requirement. That makes no sense, as apportionment is even ***more*** important the further removed from the footprint of the invention, not ***less*** important. Nor has the Federal Circuit ever espoused such a rule. The accused product in this case ***does*** contain unpatented components, and moreover, the process for making infliximab

has many steps and inputs, just one of which is the use of the accused cell culture media.

Finally, Janssen's motion to exclude evidence and argument of apportionment ignores the differences between lost profits and reasonable royalty damages. Janssen never addresses that the hypothetical negotiation construct and *Georgia-Pacific* factors—which both sides' experts used as a part of determining a reasonable royalty—expressly include consideration of the "portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). In other words, "apportionment." Janssen also ignores that "it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

In reality, Janssen's failure to apportion requires exclusion of Dr. Nicholson's opinions, as Defendants demonstrated in their *Daubert* Motion to Exclude Opinion of Sean Nicholson Regarding Damages. Dkt. 240. But at the very least, even if Dr. Nicholson is permitted to testify on a theory that his opinion satisfies the apportionment requirement, there is zero basis to exclude Dr. Leonard's criticisms, which are based on well-accepted damages methodologies, of Janssen's damages model for failure to properly apportion. *See United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) ("any flaws in [expert's] opinion may be exposed through cross-examination or competing expert testimony"); *Aviva Sports v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834–35 (D. Minn. 2011) ("It is the proper role of rebuttal experts to critique plaintiff['s] expert[s'] methodologies and point out potential flaws in the plaintiff's experts' reports."). Defendants respectfully request that the Court deny Janssen's motion.

## II.   ARGUMENT

### A.   Janssen Misrepresents the Court's Prior Guidance and the Parties' Briefing

Janssen begins its motion by misstating the history of this case and this Court's March 3, 2017 "guidance" on certain damages issues. Janssen continually asserts that "this Court has already rejected" the argument that Janssen is required to apportion any profit related to Remicade®. Dkt. 267 at 2; *see also id*. at 6 ("Dr. Leonard's report recycles the same argument that this Court already rejected…."). These statements are false. Neither the parties in their briefing, nor the Court in its order, addressed apportionment.[1] No. 15-10698, Dkts. 412, 414, 441, 445, 460, 471, 518.

The briefing from 2017 focused on other issues, including territoriality, the BPCIA "patent dance," non-infringing alternatives, standing, and certain issues surrounding Janssen's request for an injunction. *Id*. Janssen's cropped quotes imply that a mention of the "intrinsic value of the invention" was related to apportionment (Dkt. 267 at 2), but a review of the prior page reveals the discussion was about the proper time to begin the "but for" reconstruction of the market, not apportionment. No. 15-10698 Dkt. 515 at 140-141. Likewise, Janssen cites Defendants' 2017 brief (Dkt. 267 at 2-3, citing Dkt. 414 at 6), but that brief addressed irreparable harm for purposes of an injunction, not apportionment. No. 15-10698, Dkt. 414 at 6.

The Court's prior guidance on other damages issues did not relate to apportionment, and is not a basis for excluding evidence and argument regarding apportionment.

---

[1] In fact, the Court did not even "rule" on the issues that were briefed in 2017, since no motion for "summary judgment or trial issue" had been presented to the court. No. 15-10698 Dkt. 515 at 5. This makes sense, as up to that point, damages had been bifurcated from liability, damages discovery had yet to begin, and Janssen had yet to provide Defendants with an expert report detailing its method of calculating its alleged damages. Instead, as the Court made perfectly clear, it was providing "guidance" on certain damages issues. *See*, No. 15-10698, Dkt. 518.

**B.    Janssen Ignores the Holding of *Mentor Graphics*, and Factual Differences Confirm Apportionment Is Required under Janssen's Damages Model**

Janssen argues that it is entitled to any lost profits it would have made "but for" Defendants' alleged infringement,[2] with no apportionment required, and that this principle "flows directly from *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017)." Dkt. 267 at 3. Janssen again is incorrect. In fact, while numerous Supreme Court and Federal Circuit cases hold apportionment is required in all cases, no case—not even *Mentor Graphics*— says apportionment is not required. To the contrary, *Mentor Graphics* recognized "that apportionment is an important component of damages law ***generally***, and we believe it is ***necessary*** in both reasonable royalty and lost profits analysis." *Id.* at 1287 (emphasis added). All that happened in *Mentor Graphics* was that the Federal Circuit held that, in that case and on its facts, the application of the *Panduit* test met the required apportionment because "Mentor's damages [were] tied to the worth of its patented features." *Id.* at 1288.

The court explained that Mentor sought damages on a patented product, in a two-player market, where it could meet market demand for that patented product. *Id.* at 1286. Further, its ability to meet demand for the patented product was paired with undisputed proof of *Panduit* factors 1 and 2; there was demand for the ***patented*** product, and there were no non-infringing alternatives for the patented feature. *Id.* It was also undisputed that without the patented features, the customer would not have purchased the infringing product. *Id.* at 1290. These undisputed facts "tie[d] lost profit damages to specific claim limitations and ensure[d] that damages are commensurate with the value of the patented features." *Id.* at 1289.

---

[2] Janssen misleadingly states that it "seeks lost profits damages resulting from ***Defendants' infringing use of the patented cell media to make Inflectra***." Dkt. 267 at 1. But Defendants' ***use*** of the accused media to make Inflectra® takes place in Korea, and does not infringe the '083 patent.

Thus, Janssen's contention that all "but-for" analyses "adequately incorporate[]" apportionment principles," because *Mentor Graphics* applies to but-for causation generally," Dkt. 295 at 7; *see also* Dkt. 267 at 3, is wrong. Its ruling was narrow. The Federal Circuit based its holding "on the undisputed facts of [the] record," and noted that "[t]his is important as it makes this case quite narrow and unlike the complicated fact patterns that impact so many damages models in patent cases." *Mentor Graphics*, 851 F.3d at 1286-88. It specifically noted that "[w]e leave for another day whether a different theory of 'but for' damages adequately incorporates apportionment principles." *Id*. at 1288. This was reaffirmed in Judge Stoll's concurring opinion denying rehearing *en banc*, which was joined by Judges Newman, Moore, O'Malley, Reyna, and Wallach:

> ***Under the narrow facts of this case***, however, the panel determined that because the *Panduit* factors are satisfied, the damages award properly accounted for apportionment. ***I do not read the panel's decision to apply broadly to all lost profits analyses.*** Accordingly, based on the jury's undisputed fact findings on the *Panduit* factors in this case, I agree with the panel that Mentor properly accounted for apportionment of lost profits between the patented and unpatented features of the infringing emulator system.

*Mentor Graphics Corp. v. Eve-USA, Inc.*, 870 F.3d 1298, 1300 (Fed. Cir. 2017) ("*Mentor II*"); *see also id*. ("[u]nder these circumstances, ***further*** apportionment is unnecessary," because whether viewed "in terms of what imbues value to the ultimate combination of features or what is a driver of demand for those combined features, the result is the same: the apportionment required by *Garretson* is satisfied.") (emphasis added).

Janssen's invocation of *Mentor Graphics* to justify its failure to apportion fails in two additional ways. First, the facts of this case diverge significantly from *Mentor Graphics*. The following table summarizes the critical differences compared to Janssen's damages model:

| Facts of *Mentor Graphics* | Facts of this Case |
|---|---|
| The product for which lost profits were sought included the patented invention and directly competed with the infringing product. 851 F.3d at 1287. | ████████████████████████ |
| The market for which Mentor Graphics sought lost profits was the same as the market for the patented product. 851 F.3d at 1286-87. | ████████████████████████ |
| There were only two competitors in the market for the patented product. 851 F.3d at 1286-87. | ████████████████████████ |
| There were only two competitors in the market for which Mentor Graphics sought lost profits. 851 F.3d at 1286-87. | ████████████████████████ |
| Defendant did not contest that but for its infringement, Mentor Graphics would have made each infringing sale. 851 F.3d at 1286. | ████████████████████████ |
| Purchasers of the product for which Mentor Graphics sought lost profits would not have purchased the product without the patented feature. 851 F.3d at 1289. | ████████████████████████ |

| Facts of *Mentor Graphics* | Facts of this Case |
|---|---|
| | ████████████████████████ |
| Mentor Graphics proved the *Panduit* factors for a single market (emulators), and those findings were not disputed on appeal. 851 F.3d at 1286-87. | ████████████████████████ |

As explained in Defendants' co-pending *Daubert* motion to exclude Dr. Nicholson, *Mentor Graphics*' unique circumstances meant that "the apportionment required by *Garretson* [was] satisfied." *Mentor II*, 870 F.3d at 1300. The factual differences between this case and *Mentor Graphics* preclude Janssen's assertion that *Mentor Graphics* justifies a failure to apportion. Alternatively, if Dr. Nicholson's opinion is not excluded entirely, Janssen's misapplication of *Panduit* and *Mentor Graphics* requires that Defendants are able to challenge Dr. Nicholson's failure to apportion by cross-examination and through competing expert testimony. *See Mooney*, 315 F.3d at 63 ("any flaws in [expert's] opinion may be exposed through cross-examination or competing expert testimony"); *Aviva*, 829 F. Supp. 2d at 834–35 ("It is the proper role of rebuttal experts to critique plaintiff's experts' methodologies and point out potential flaws in the plaintiff's experts' reports.").

Second, even if *Mentor Graphics* stood for the proposition that an application of the *Panduit* factors **always** satisfies the requirement to apportion damages—and it does not—Janssen would still need to apportion because Janssen did not apply the *Panduit* factors. Janssen concedes it "adjusted" the *Panduit* factors in its damages model. Dkt. 267 at 4. "Adjust[ing]" the

*Panduit* factors is simply Janssen doublespeak for not applying them.[3] Janssen asserts this "adjust[ment]" is necessary "to reflect the fact that the relevant demand that causes lost profits is the demand for the non-patented product Remicade, ***not the patented product itself***." Dkt. 267 at 4. But the first *Panduit* factor clearly requires proof of "demand for the patented product." *See, e.g.*, *Mentor Graphics*, 851 F.3d at 1285. As a result of Janssen's "adjust[ments]," the Federal Circuit's reasoning for why Mentor Graphics' particular application of *Panduit* in that case satisfied the principles of apportionment does not apply here:

> While there may have been other features of the [patented product] that were important to Intel, only Mentor could sell Intel an [patented product] with *all* the features it required. Because Mentor had proprietary rights to the only means of satisfying this demand by Intel, because no other party could sell Intel an [patented product] with those two components, no one else had the right to sell [patented product] to Intel that satisfied all of Intel's requirements. In short, for these particular sales, no other party could satisfy the *Panduit* factors, making it impossible for multiple patentees to obtain lost profit damages for the same sales.

*Id.* at 1289. This logic does not apply to Janssen's modified *Panduit* test, which does not require "demand for the patented product" ***at all***, or the ability to meet such demand.

Janssen now concedes the patented product has nothing to do with the "demand that causes [Janssen's alleged] lost profits." Dkt. 267 at 4. This should end the lost profits inquiry in Defendants' favor. As the Federal Circuit explained in *Calico Brand, Inc. v. Ameritek Imps., Inc.*, causation requires showing "demand for [the] patented component." 527 F. Appx. 987, 996 (Fed. Cir. 2013). But when a patentee "make[s] no attempt to argue that the [patented component] drives demand for its specific product," fails to present "evidence that the patented feature drove customer demand," and "elicit[s] no testimony to distinguish between the value of the patented and unpatented features," lost profits are not appropriate. *Id*. Simply put, the fact that demand

---

[3] As explained in detail in Defendants' co-pending *Daubert* motion to exclude Janssen's economics expert, Dr. Nicholson applied some factors to the cell culture media market and other factors to the drug market. Dkt. 240 at 16-19. This is fatal to Dr. Nicholson's analysis. *Id.*

may exist for another, unpatented product does not satisfy the *Panduit* test. *Id.*; *see also BIC Leisure Prods., Inc. v. Windsurfing Intern., Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) (explaining that if the infringing product and patentee's product are too dissimilar "the first *Panduit* factor does not operate to satisfy the elemental 'but for' test").

Janssen's Frankenstein-*Panduit* test fails on a fundamental level; as modified, it does not prove "but for" causation. By mixing two markets within the *Panduit* test itself, only a portion of a "but for" test is satisfied for either market. The end result is that "but for" causation for lost profits is not proven in either market. Under Janssen's Franken-test, it has not shown that Janssen lost any sales in the cell culture media market as it failed to show the ability to fulfil any demand for the patented cell culture media (*Panduit* factor 3). Likewise, such a test does not prove lost profits in the drug market because Janssen has not shown the absence of non-infringing substitutes for Inflectra® (*Panduit* factor 2). In other words, Janssen's Franken-test would allow it to recover "lost profits" even if, in a world without Inflectra®, an Inflectra® sale would have gone to another Remicade® competitor. This scenario is not farfetched. Remicade® competes against 

### C.    Janssen's "But For"-Causation-Alone Lost Profits Theory for Unpatented Products Has Been Rejected in Favor of the Entire Market Value Rule

Janssen argues that it is "black letter law" that it is "entitled under the law to seek damages based on the sales of this non-patented product, when those sales would not have been lost but for Defendants infringement." Dkt. 267 at 3. But Janssen's arguments ignore the Federal Circuit's decision in *Rite-Hite*, which rejected a "but for"-causation-alone test for lost profits damages on sales of unpatented products.

In *Rite-Hite*, the patentee sought lost profits in two forms: first, for its lost sales on products (vehicle restraints) "that directly competed with the infringing product," and second, for lost sales on products (dock levelers) that "that [were] neither competitive with nor function[ed] with the patented invention." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (*en banc*). The district court found that "in the absence of [defendant's] infringing [vehicle restraint] competition, plaintiffs would have sold an additional [unpatented] 1,692 dock levelers." *Rite-Hite Corp. v. Kelley Co.*, 774 F. Supp. 1514, 1530 (E.D. Wis. 1991). The district court applied "but for" causation logic—precisely as Janssen suggests here—to justify an award of lost profits on the unpatented levelers:

> [The defendant's] ability to sell levelers in the package [vehicle restraint]-leveler sales was dependent upon [the defendant's] use of the [patented] technology: [the defendant's] infringement of the [] patent permitted it to sell the [vehicle] restraint, which in turn permitted [the defendant] to sell a significant number of [unpatented] levelers.
>
> ***This application of the entire market value rule proceeds from the overriding rule that a patentee can recover as damages all profits from lost sales upon proof that, "but for" the infringement, it would have made on the sales***. As the Supreme Court stated in *Aro Mfg.*, the essential question is: "had the [i]nfringer not infringed, what would the [p]atent [h]older-[l]icensee have made?" … [T]he defendant's infringement of one of the [patented] restraining hook technologies caused the plaintiffs to lose sales of units embodying both technologies, in addition to packaged leveler sales.

*Id*. at 1542-1543 (emphasis added, internal citations omitted).

On appeal, the Federal Circuit reversed the district court's award of lost profits on dock levelers. *Rite-Hite*, 56 F.3d at 1551. The Federal Circuit held that in order to collect lost profits on both patented and unpatented products, courts should apply the entire market value rule. *Id.* at 1549-51. That rule requires that the patentee show (1) the patented feature is "the 'basis for customer demand'" for an "apparatus containing several features" and (2) the "unpatented and patented components are physically part of the same machine," or "the unpatented and patented components together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit." *Id.* at 1549-51 (citation omitted). The Federal Circuit held that the patentee did not meet this test and could not collect damages on the levelers ***even though*** it had proved "but for" causation:

> It is a clear purpose of the patent law to redress competitive damages resulting from infringement of the patent, ***but there is no basis for extending that recovery to include damages for items that are neither competitive with nor function with the patented invention***. Promotion of the useful arts, see U.S. Const., art. I, § 8, cl. 8, requires one, but not the other.

*Id.* at 1551. This holding makes sense in light of the Supreme Court's mandate that patentees apportion in "every case" and provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (partly quoting *Garretson*, 111 U.S. at 121) (emphasis added). It ensures that a patentee "seek[s] only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (citing *Garretson*, 111 U.S. at 120–21).

Indeed, the cases on which Janssen relies for its "but for"-causation-only theory reinforce these basic principles. In *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22-23 (Fed. Cir. 1984), the Federal Circuit expressly invoked the entire market value rule as its justification for affirming profits on an overall assembly line, rather than a single component.

Further, Janssen's argument—that *Paper Converting* only concerned itself with whether the patentee would have made the unpatented sale "but for" the infringement—has been expressly rejected by the Federal Circuit. The Federal Circuit recognized that, although the "court [in *Paper Converting*] articulated the entire market value rule in terms of the objectively reasonable probability that a patentee would have made the relevant sales," that statement was "made in the context of the facts of the case and did not separate the rule from its traditional moorings." *Rite-Hite*, 56 F.3d at 1550. The *Rite-Hite* court explained that "**the components [at issue] together constituted one functional unit**, including the patented component, to produce rolls of paper." *Id.* at 1550. The court also explained that "**[t]he auxiliary components derived their market value from the patented rewinder** because they had no useful purpose independent of the patented rewinder." *Id.* Thus, far from supporting Janssen's theory, *Paper Converting* confirms that, to seek lost profits on Remicade® sales, Janssen was required to satisfy the entire market value rule, and further, that the rule is a narrow exception to apportionment.

Janssen's reliance on *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996) is similarly misplaced. As a preliminary matter, *Minco* does not discuss the issue of apportionment. *Id.*; *see also Minco, Inc. v. Combustion Eng'g, Inc.*, 903 F. Supp. 1204 (E.D. Tenn. 1995). This makes sense as the patent at issue covered the entire furnace, which converted silica into fused silica. Ex. 7, U.S. Pat. No. 4,217,462. Further, in *Minco,* the patented furnace drove demand for the unpatented fused silica, justifying its use as the damages measuring product. For example, "evidence of demand for the patented furnace, and of the absence of acceptable non-infringing substitutes, [] shown by **strong market preference for the fused silica produced by the patented furnace.**" *Minco*, 903 F. Supp. at 1222; *see also Minco*, 95 F.3d at 1119 ("The record show[ed] a preference for Minco's quality, fused silica in the market.").

14

Indeed, "[b]oth [the infringer] and [the patentee] used the invention to compete in [the fused silica] market." *Minco*, 95 F.3d at 1118. Further, "the record show[ed] that two other primary fused silica manufacturers had bowed out of the market 'in deference' to the [asserted] patent. Before use of the infringing [furnace], the record shows that the market considered [the infringer] a source of 'last resort.'" *Id*. at 1119.

None of the critical facts of *Minco* exist here. █████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

Janssen's last case, *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003), also fails to support Janssen's bid to exclude evidence and argument of apportionment. As a preliminary matter, Janssen misrepresents *Micro Chem.*'s procedural posture and holding when it described the case as "holding that lost profits damages properly awarded where it was

'reasonably foreseeable' that infringement would cause plaintiff to lose sales on unpatented product." Dkt. 267 at 3. Instead, the Federal Circuit reversed a finding of no lost profits and remanded to provide the patentee "an opportunity to prove lost profits under the *Panduit* test" or under "the two-supplier market test" (a test for lost profits that requires that the patentee and the accused infringer be the only two competitors in the market for the patented invention). *Micro Chem.*, 318 F.3d at 1124, 1125. *Micro Chem.* does not discuss the issue of apportionment. *Id.*

While the Federal Circuit noted that on the record "a damage calculation based on lost microingredient sales is appropriate under *Rite–Hite*," *id.* at 1126, this is not surprising as the facts of *Micro Chem.* reveal that an application of the entire market value rule could be appropriate on remand. The patented products at issue were "machines [that] measure and dispense microingredients." *Id.* at 1121. Both the patentee and infringer "place[d] their weigh machines in feedlots at no cost" and made money by selling the microingredients used with such machines. *Id.* at 1121. The patented microingredient machines dispensed microingredients, working as a single functional unit, meeting one requirement of the entire market value rule. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1372 (Fed. Cir. 2004) (analyzing *Micro Chem.* in the context of the EMVR). Further, it is clear that the patented machines formed the "basis for customer demand" for microingredients, as the machines needed microingredients to even operate.[4] *See Micro Chem.*, 318 F.3d at 1121. Just as with *Minco*, none of the critical facts of *Micro Chem.* exist here either. Far from working as a single functional unit, cell media is not even present in the infliximab which is eventually sold. Ex. 1, Leonard Rep. ¶ 21.

---

[4] This is analogous to the market for home printers and printer ink (or razors and razor blade replacements). For example, a company may sell printers at relatively low prices while selling replacement ink for a premium. https://en.wikipedia.org/wiki/Razor_and_blades_model. The printer itself is what creates the demand for the ink and the two work hand and hand as a single functional unit.

Janssen's but-for-causation-only damages theory for unpatented products conflicts with binding law and does not provide a basis for excluding evidence or argument of apportionment.

### D.   Janssen's Attempt to Distinguish the Law on Apportionment Ignores the Facts of this Case and the Reasoning behind Apportionment

Janssen also makes a halfhearted attempt to distinguish the myriad case law on apportionment by arguing it is a "requirement only in cases, unlike this one, where the patent-in-suit covers a particular feature or component of a multi-component product." Dkt. 267 at 5. Janssen's argument has no basis in law or fact.

The Supreme Court has held that apportionment applies "in every case." *Garretson*, 111 U.S. at 121. The Federal Circuit has reiterated that holding over and over again. *See, e.g., Mentor Graphics*, 851 F.3d at 1287 ("apportionment is an important component of damages law *generally*, and we believe it is *necessary* in both reasonable royalty and lost profits analysis") (emphasis added); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("apportionment is required even for non-royalty forms of damages").

Janssen cites no case where the Federal Circuit restricted apportionment only to damages based on "multi-component" products that include the patented invention. This is not surprising as the Supreme Court's apportionment precedent precludes Janssen's specialized rule. In *Seymour v. McCormick*, the Supreme Court explained that "one who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement." 57 U.S. 480, 489 (1853). The profits of a mill are based on the sale of flour, which is not a multi-component product. An improvement to the upstream inputs or machinery of the mill (*e.g.*, the items that grind grain into flour) cannot result in 100 percent of the profits on the flour going to the patentee. *Id*. While Janssen argues that apportionment does not apply where the "damages-causing product would not *exist* without

use of the patented technology," Dkt. 267 at 5, the Federal Circuit has already rejected the argument that being "essential" to a product permits damages to be based on the entire product without apportionment. *LaserDynamics*, 694 F.3d at 68. The "essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson*, 773 F.3d at 1226.

Even if Janssen were correct that apportionment only applies to multi-component products—and it is not—such a rule is satisfied in this case. 

These unpatented components add value to the accused media. Ex. 1, Leonard Rep. ¶ 166;

Thus, the accused media themselves are "multi-component" products and include unpatented features. In addition, the process for making infliximab, which is not covered by the '083 patent and does not even occur in the U.S.,

Thus, infliximab is the result of an amalgam of many technologies, only one tiny portion of which is at issue here.

Janssen advocates for a rule that turns the apportionment requirement on its head. Under Janssen's view, a process that uses many inputs, one of which is an infringing multi-component product, to make a ***non-patented*** downstream product, results in recovery of 100 percent of the profit for a product that competes against the non-patented downstream product, because the patentee is relieved of the requirement to apportion. Janssen's rule would have the illogical result

of requiring apportionment when a patentee competes in the infringing market, but not requiring it when the patentee does not compete in the infringing market, instead competing in a market in which the patented product plays a much smaller role.

Janssen's proposed rule would have the result of providing **_smaller_** damages for a patentee that actually sold a product in the patented invention's market because (1) profits on media are magnitudes smaller than profits on infliximab, and (2) such a patentee would have to apportion its media profits, █████████████████████████████████████████ ███████████. By contrast, an entity that only competed in the downstream drug market, which is further removed from the footprint of the patented invention, could seek a damages award magnitudes larger. Janssen's illogical and arbitrary limits on apportionment should be rejected.

### E.   Janssen's Arguments Ignore the Differences between Lost Profits and Reasonable Royalty Damages

Janssen's attempt to exclude evidence and argument of apportionment suffers from an additional flaw—it ignores the differences between lost profits and reasonable royalties. Janssen's motion fixates on "but for" causation, but that concept is inapplicable to reasonable royalties. Janssen's expert provides a reasonable royalty opinion "[i]n the event that the court finds an award compensating Janssen for lost profits is inappropriate in this case." Ex. 3, Nicholson Rep. ¶ 13.

Janssen also ignores that each expert examined the *Georgia-Pacific* factors for their reasonable royalties. Ex. 3, Nicholson Rep. ¶¶ 145-158; Ex. 1, Leonard Rep. ¶¶ 137-173. *Georgia-Pacific* Factor 13 asks what "portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pac.*, 318 F. Supp. at 1120. This factor "allude[s] to apportionment concepts," and was analyzed by

Defendants' damages expert, Dr. Leonard. *Ericsson*, 773 F.3d at 1228 n.5. Janssen has no basis for excluding this analysis of the hypothetical negotiation, which is a "common approach" to determining a reasonable royalty. *See Lucent*, 580 F.3d at 1324 (citing *Georgia–Pacific*, 318 F. Supp. at 1120). Dr. Leonard properly considered apportionment under this factor and should be permitted to testify about his analysis at trial. If Janssen disagrees, the appropriate remedy is cross-examination or rebuttal testimony. *See Mooney*, 315 F.3d at 63; *Aviva*, 829 F. Supp. 2d at 834–35.

Finally, Janssen ignores the fact that "it is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics*, 694 F.3d at 67. Indeed, "the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment." *Virnetx*, 767 F.3d at 1327. Janssen says nothing about this requirement for reasonable royalties, and its expert did not base his so-called reasonable royalty calculation on the smallest salable patent-practicing unit, here, the accused cell culture media, which is in fact, sold. Defendants should be permitted to introduce evidence and argument on these flaws with Janssen's so-called reasonable royalty.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Janssen's motion *in limine* to exclude any evidence or argument related to apportionment.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/ *Andrea L. Martin, Esq.*
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.

Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare*
*Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed through the electronic filing system and served electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Andrea L. Martin*