**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC.,<br><br>                     Plaintiff,<br><br>      v.<br><br>CELLTRION HEALTHCARE CO., LTD.,<br>CELLTRION, INC., and<br>HOSPIRA, INC.<br><br>                Defendants. | No. 1:17-cv-11008<br><br>**PUBLIC-**<br>**REDACTED VERSION** |

**Defendants' Memorandum In Opposition To Janssen**
**Motion *In Limine* No. 13 (Janssen's Double Standard For Infringement And Validity)**

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................................................. 1

II.    JANSSEN MISSTATES AND MISAPPLIES THE LAW ................................................. 1

III.   JANSSEN IS TREATING THE CLAIMS DIFFERENTLY FOR INFRINGEMENT AND INVALIDITY............................................................................. 5

IV.   THIS MOTION HAS ALREADY BEEN ADDRESSED................................................... 7

V.    CONCLUSION.................................................................................................................. 7

## I.      INTRODUCTION

There are factual conflicts between Janssen's affirmative case of infringement and defensive case of invalidity. This in turn presents issues for both the merits of Janssen's positions and the credibility of its witnesses. Recognizing it cannot get its story straight, Janssen now seeks an unprecedented license to speak out of both sides of its mouth while gagging the defense. Janssen's motion should be denied.[1]

## II.     JANSSEN MISSTATES AND MISAPPLIES THE LAW

Janssen's brief misstates and misapplies the law in multiple respects. Janssen cites no authority for preventing a defendant from pointing out the inconsistencies in a plaintiff's doctrine of equivalents (DOE) and invalidity theories. The one case Janssen cites for exclusion (*Siemens*) actually held the opposite: conflicts between DOE and obviousness, "when weighed by the fact-finder together with all other relevant evidence, may make equivalency considerably more difficult to make out by a preponderance of the evidence." *Siemens Medical Solutions v. Saint-Gobain Ceramics*, 637 F. 3d 1269, 1278-83 (Fed. Cir. 2011). By way of background, the plaintiff in *Siemens* argued the defendants product infringed the '080 patent under DOE. *Id.* The defendant countered that the accused product was covered by the after-arising '420 patent. *Id.* The '080 patent had been cited as prior art against the '420 patent during prosecution, but the '420 patent nonetheless issued (*i.e.* the '080 patent did not render the '420 patent obvious). *Id.* The defendant argued that a finding of DOE infringement would constructively invalidate the '420 patent, and since invalidity is governed by a clear and convincing standard, the jury should have been

---

[1] Janssen's argues that Defendants "do not really mount a non-infringement defense" and the patent is somehow non-obvious. Respectfully, these statements are not only wrong, but divorced from the entire history of this case. Rather than rehash the history, it suffices for the present motion to note that Defendants strongly disagree with Janssen's characterizations. *E.g.* Dkt. 340, 404; 1/31/18 Hr. Tr. at 87:7-16 ("The jury will ultimately decide credibility.").

instructed DOE required clear and convincing evidence (above the normal preponderance of the evidence). *Id.* Unsurprisingly, the Federal Circuit rejected the heightened standard, noting the different tests for DOE and obviousness and how one could be met and not the other. *Id.*

Critically, the Federal Circuit did not segregate the DOE and obviousness inquiries. *Id.* Rather, it held "where, as here, the alleged equivalent is claimed in a separate patent, this fact, when weighed by the fact-finder together with all other relevant evidence, may make equivalency considerably more difficult to make out by a preponderance of the evidence."[2] *Id.* In other words, the non-obviousness inquiry had a bearing on the equivalence inquiry. Indeed, the Federal Circuit has recognized that "there is a strong argument that an equivalent cannot be both non-obvious and insubstantial." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1379080 (Fed. Cir. 2007). And a "finding of insubstantial difference may raise issues relating to the obviousness and novelty of the improvements allegedly achieved by the [asserted] patent and, consequently, the validity of that patent." *Quickie Mfg. Corp. v. Libman Co.*, 180 F.Supp.2d 636, n.7 (D.N.J. 2002). Thus, while there is no presumption or heightened standard for equivalence when obviousness is considered, they are nonetheless to be considered together by the factfinder. *Siemens*, 637 F. 3d at 1278-83.

Regardless, there are many overlapping issues between DOE and obviousness in this case. For example, Janssen argues that scientists working in cell culture media know "there's a broad plateau of interchangeable concentrations in cell media, you know, sometimes it's extremely broad, 2500 times." *E.g.* Dkt. 178, 1/31/18 Hr. Tr. at 11:17-19. For the doctrine of equivalents, Janssen argues this shows "insubstantial differences" when the accused media is a dozen-plus ways outside

---

[2] Notably, the dissent in *Siemens* criticized the majority for "leave[ing it to] the fact-finder—here the jury" the tension between DOE and obviousness instead of instructing them that non-obviousness bars equivalence absent additional showings. *Siemens*, 637 F. 3d at 1293.

the concentrations the inventors chose to put into their claims. *See, e.g., id.* But if scientists generally believe "there's a broad plateau of interchangeable concentrations in cell media," then they would also know that when looking at the prior art. According to the Federal Circuit, "where claimed range and prior art value are insubstantially different, prima facie obviousness rejection is proper." *In re Huai-Hung Kao*, 639 F.3d 1057, 1067 (Fed. Cir. 2011). Here, the prior art values aren't just close to the claimed ranges, they overlap. Dkt. 227, 229. Janssen articulates no reason why scientists allegedly understand differences of as much as 2,500 times are insubstantial (for its DOE infringement case), but values so close they are overlapping are somehow not insubstantial (for its validity case). And while there is a time difference between obviousness and DOE, Janssen articulates no reason why that matters here. Indeed, the plateau reference Janssen places its stock in—the Ham and McKeehan article—is from the 1970s (i.e. predating both the DOE and prior art analyses). Ex. 1, 1/30/18 Butler Direct Slides at 23; Dkt. 177, 1/30/18 Hr. Tr. at 46:8-53:10. Janssen cannot support its position, let alone take it from a jury. Janssen's positions aren't "confusing," they are conflicting and thus demonstrate the fallacies in its theories and the lack of credibility of its paid-experts.

As another example, Janssen's expert Dr. Butler has argued that the active ingredient is what scientists look to when evaluating a cell culture media. For example, the asserted claims of the '083 patent require copper sulfate in the amount of 0.001-0.005mg. Dkt. 1 Ex. A, '083 Patent at Claim 1. Because the accused products do not contain enough copper sulfate, Dr. Butler looked to another ingredient in the accused products—copper chloride—in an attempt to make up the shortfall. Dkt. 221-3, Butler 8/31/16 Rep. at ¶ 59-60. According to Dr. Butler, what mattered for the claim was "the total concentration of the active component (copper (II))." *Id.* In other words,

for infringement, Janssen argues scientists look to the active ingredient when performing a comparison.

But for obviousness, Janssen takes a contradictory approach. In the obviousness inquiry, the person of ordinary skill must compare "the differences between the prior art and the claimed invention." *Ball Aerosol & Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 991 (Fed. Cir. 2009).[3]

But when "a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 415-17 (2007); *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012). It is undisputed that GSK discloses 50 out of the 52 ingredients required by the asserted claims in the same chemical form. Dkt. 227. For the remaining two ingredients, GSK discloses alternate chemical forms that provide the same active components as in the asserted claims: chelated iron and vanadium. *Id.* In fact, GSK teaches that its chelated iron (ferric fructose) is used as a transferrin replacement, which is the same function Dr. Butler ascribes to ferric ammonium citrate.[4] *Id.* at 11. Likewise, the two chemical forms of vanadium used by GSK and the asserted claims were so similar that literature said they could be interchanged "for reasons of convenience." *Id.* at 19. Yet, despite this interchangeability, ████████████████████████████████████

---

[3] While Janssen claims that obviousness must be considered on the "whole," rather than limitation-by-limitation (Dkt. 269 at 3), Janssen glosses over the fact the GSK media is, as a whole, overwhelmingly similar to the accused media and the fact it resorts to token differences between the chemical forms for two limitations (as discussed above).

[4] Although Janssen previously told this court (without any support) ferric ammonium citrate is "a fingerprint for copying" and "prior to the '083 patent, no published cell media formula included ferric ammonium citrate" (10698 Dkt. 418 at 14), both are false. Not only was Celltrion's supplier using ferric ammonium citrate in its media years prior to the alleged invention, literature cited on the face of the '083 patent called it "preferred" for cell culture media (Dkt. 306 at 20).

███████████████████████████████████████████████

██████████████████████████ (Dkt. 260 Ex. 3, Butler Rebuttal Report at 65).   Simultaneously, however, Dr. Butler says the doctrine of equivalents is met despite missing the claimed concentrations because, for example, another unclaimed ingredient in the accused media "provides the same active component" as a claimed ingredient (*e.g.*, Dkt. 221-3, Butler Infringement Op. ¶ 82).

There is thus a tension between Dr. Butler's opinion that the chemical forms don't matter to scientists looking at cell culture media, and Janssen's argument the chemical forms somehow avoid invalidity. And Janssen has pointed to no change in knowledge in this area that would make the temporal differences between DOE and obviousness matter. To the extent summary judgment is not granted for Defendants, Janssen cannot take this issue from the jury.

## III.   JANSSEN IS TREATING THE CLAIMS DIFFERENTLY FOR INFRINGEMENT AND INVALIDITY

Janssen's brief likewise sets up and then attacks a straw man, arguing the differences in *legal* standards between the doctrine of equivalents (DOE) and invalidity mean the inquiries should be compartmentalized. But that ignores another common issue between DOE and obviousness: the asserted claims. The Federal Circuit has repeatedly cautioned, "[c]laims must be interpreted the same way for determining infringement as was done to sustain their validity." *E.g. CR Bard, Inc. v. M3 Systems, Inc.*, 157 F. 3d 1340, 1363 (Fed. Cir. 1998).

Contrary to Janssen's brief, Janssen and its experts have taken every position imaginable, attempting to read the claims one way for infringement and another way for validity:[5]

---

[5] Additional details may be found in 10698 Dkt. 382 at 14-19.

| Position for Infringement | Position for Validity |
|---|---|
| _Concentration ranges are not hard limits._ "Generally speaking, the precise concentrations of the trace element-containing ingredients are not critical." Dkt. 221-3, Butler Opening Report ¶ 42. | _Concentration ranges are hard limits_ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ Butler Rebuttal Report ¶ 168. |
| _Comprising claim._ "The presence or absence of additional, un-claimed ingredients is irrelevant to the infringement analysis." Dkt. 221-3, Butler Opening Report ¶ 36. | _Not a comprising claim._ ████████████████████████ ████████████████████████ ████████████████████████ ████████████████████████ 260 Ex. 3, Butler Rebuttal Report ¶ 98. |
| _Not limited to chemically defined media._ "'Cell culture media,' based on its ordinary meaning, may refer to media containing un-defined components (such as soy hydrolysate) or media containing proteins (such as insulin)." 10698 Dkt. 162-2, Wurm Claim Construction Declaration ¶ 6. | _Limited to chemically defined media._[6] ████████████████████████ ████████████████████████ ████████████████████████ Dkt. 260 Ex. 3, Butler Rebuttal Report ¶ 156. |
| _Active Component Matters_ "Adding together the $CuSO_4 \cdot 5H_2O$ and $CuCl_2 \cdot 2H_2O$ in the Celltrion Media, the total concentration of the active component (copper (II)) supplied by the Celltrion Media is within the range of that total concentration of copper (II) supplied by claim 1 of the '083 patent." Dkt. 221-3, Butler Opening Report ¶ 60. | _Chemical Form Matters_ "[T]here is no reason why a POSA would wind up with the 52 particular forms of active components." Dkt. 259 at 18. |

---

[6] For infringement, Janssen argues (as it must) that the claims are not limited to chemically defined media. For validity, Janssen argues that alleged invention satisfied a long-felt need for a chemically defined media. But where, as here, the alleged invention covers media that are may or may not be chemically defined, the secondary consideration is improper. _Therasense, Inc. v. Becton, Dickinson & Co._, 593 F.3d 1325, 1336 (Fed. Cir. 2010) ("Because the claims are broad enough to cover devices that either do or do not solve the 'short fill' problem, Abbott's objective evidence of non-obviousness fails because it is not commensurate in scope with the claims which the evidence is offered to support."). Thus Janssen needs to argue (as it must) that the claims are limited to chemically defined media.

**IV.     THIS MOTION HAS ALREADY BEEN ADDRESSED**

Janssen argues in a footnote that its present motion is somehow different from its prior motion (No. 10698 Dkt. 341 at 16-19) to preclude Dr. Glacken from pointing out inconsistencies in Janssen's DOE and obviousness theories, and that this issue has "not yet been decided." Dkt. 269 at n.1. Defendants opposed that motion (No. 10698 Dkt. 382 at 14-19) and the Court heard argument during the January/February hearing. As this Court recognized: "That's one of the things that's coming into focus for me. The plaintiffs need to walk a tightrope in this case. In some respects, the stronger the arguments are on equivalents, the stronger your elements are on obviousness." Dkt. 179, 2/1/18 Hearing at 11:19-22. Indeed, after Janssen's counsel argued, again, that its stories were somehow consistent, the Court noted "Well, you'll need to explain it to the jury." Dkt. 180, 2/2/18 Hearing at 27:15-28:5. Evidently fearing it cannot walk the tightrope between DOE and obviousness, Janssen seeks, again, to hide it from the jury. Janssen's motion should be denied.

**V.     CONCLUSION**

Janssen's motion should be denied. To the extent Janssen's case is permitted to go forward, Janssen cannot hide the serious conflicts underlying their DOE and obviousness positions by pretending they do not exist and filing motions to somehow hide them from the jury. Janssen's motion should be denied.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/*Andrea L. Martin, Esq.*

Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: 617-345-3000
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
Gregory B. Sanford (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com
gregory.sanford@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 879-5000
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare
Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

**CERTIFICATE OF SERVICE**

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

*/s/Andrea L. Martin, Esq.*
Andrea L. Martin, Esq.