**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC. | |
| Plaintiff, | |
| v. | **Civil Action No. 1:17-cv-11008-MLW** |
| CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC. | **PUBLIC— REDACTED VERSION** |
| Defendants. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* NO. 14**

# TABLE OF CONTENTS

**Page**

I.     **Introduction**............................................................................................................ 1

II.    **Legal Standard** .................................................................................................... 2

III.   **The Trial In This Case should Address Liability Issues and Damages Issues Together.** ................................................................................................... 3

     A.    Efficiency considerations favor trying liability and damages issues together. ...................................................................................................... 3

         1.    There is significant overlap between liability issues and damages issues. ................................................................................. 4

         2.    There is significant overlap in witness and expert testimony between liability and damages. ............................................. 6

         3.    Trying liability and damages together is substantially more efficient logistically. ............................................................... 8

     B.    Having the jury address liability and damages issues together will make the trial less complex. ............................................................. 10

         1.    The liability and damages issues in this case are not particularly complex. .......................................................................... 11

         2.    Courts regularly hold trials of far greater complexity in a single phase, addressing both liability and damages. ......................... 14

     C.    Bifurcation would unfairly prejudice Defendants by denying the jury the full context of Janssen's arguments and evidence. ............................... 15

         1.    Bifurcation would be unfairly prejudicial to Defendants. ....................... 15

         2.    Janssen identifies no actual prejudice from trying liability and damages together. .................................................................... 18

IV.   **The Court Should Reject Janssen's Request to "Preclude[]" Argument and Evidence Regarding Damages Issues** .......................................................... 19

V.    **Conclusion** ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*,
  55 F. Supp. 3d 221 (D. Mass. 2014) ............................................................... *passim*

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
  No. 5:11-cv-01845 (N.D. Cal. 2012) .....................................................................15

*Datascope Corp. v. SMEC, Inc.*,
  879 F.2d 820 (Fed. Cir. 1989).............................................................................17

*Garretson v. Clark*,
  111 U.S. 120 (1884)................................................................................................4

*Gaus v. Conair Corp.*,
  No. 94 Civ. 5693, 2000 WL 1277365 (S.D.N.Y. Sept. 7, 2000)............................3

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970)........................................................................6

*Grain Processing Corp. v. Am. Maize-Prods.*,
  185 F.3d 1341 (Fed. Cir. 1999)............................................................................14

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  136 S.Ct. 1923 (2016)............................................................................................5

*Kos Pharms., Inc.v. Barr Labs., Inc.*,
  218 F.R.D. 387 (S.D.N.Y. 2003) ................................................................... *passim*

*Laitram Corp. v. Hewlett–Packard Co.*,
  791 F. Supp. 113 (E.D. La. 1992) ...............................................................1, 3, 14

*Lewis v. City of New York*,
  689 F. Supp. 2d 417 (E.D.N.Y. 2010) ................................................................1, 3

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)........................................................................4, 13

*Masimo Corp. v. Philips Elecs. N. Am.Corp.*,
  742 F. Supp. 2d 492 (D. Del. 2010)........................................................................9

*McCarty v. Liberty Mutual Ins. Co., Co.*,
  Civ. No. 15-cv-210, 2016 WL 8290149 (D. Wy. May 6, 2016)..........................6, 9

*Miller v. Am. Bonding Co.*,
   257 U.S. 304 (1921)...............................................................................................2, 3

*Novartis Corp. v. Teva Pharms. USA, Inc.*,
   No. Civ. 04-4473, 2008 WL 10973750 (D.N.J. Oct. 28, 2008)..............................................14

*Novopharm Ltd. v. Torpharm*,
   181 F.R.D. 308 (E.D.N.C. 1998) .........................................................................16

*Pfizer Inc. v. Novopharm Ltd.*,
   No. 00 C 1475, 2000 WL 1847604 (N.D. Ill. Dec. 13, 2000) ..........................................16, 17

*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*,
   180 F.R.D. 254 (D.N.J. 1997)...........................................................................14, 16

*Real v. Bunn-O-Matic Corp.*,
   195 F.R.D. 618 (N.D. Ill. 2000)........................................................................ *passim*

*In re Seagate Tech., LLC*,
   497 F.3d 1360 (Fed. Cir. 2007) *overruled on other grounds by Halo Elecs.*,
   *Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923 (2016) ....................................................16

*SenoRx, Inc. v. Hologic, Inc.*,
   920 F. Supp. 2d 565 (D. Del. 2013)......................................................................2, 3, 4

*Smith v. Alyeska Pipeline Serv. Co.*,
   538 F. Supp. 977 (D. Del. 1982)........................................................................14

*VirnetX Inc. v. Apple Inc.*,
   6:10-cv-417 (E.D. Tex).................................................................................15

*WeddingChannel.com, Inc. v. The Knot, Inc.*,
   No. 03 Civ. 7369, 2004 WL 2984305 (S.D.N.Y. Dec. 23, 2004).................................. *passim*

*WesternGeco LLC v. ION Geophysical Corp.*,
   953 F. Supp. 2d 731 (S.D. Tex. 2013) ..................................................................15

*Wyeth v. Abbott Labs.*,
   No. Civ. 08-230, 2010 WL 4553545 (D.N.J. Nov. 3, 2010) .................................................14

**Statutes**

35 U.S.C. § 271(f)(1) ...............................................................................5, 8, 17, 20

35 U.S.C. § 284..........................................................................................5

**Rules**

Fed. R. Civ. P. 42.......................................................................................3

Fed. R. Civ. P. 42(b) ....................................................................................................................2

## I.      INTRODUCTION

Janssen's request to try liability and damages issues separately is transparent gamesmanship, seeking to unfairly prejudice Defendants, protect Janssen's specious liability and damages arguments from criticism, inoculate Janssen from its own strategic choices, and prevent the jury from knowing that Janssen is talking out of both sides of its mouth. A bifurcated trial would be inefficient, confusing, and unfairly prejudicial to Defendants. The Court should deny Janssen's motion, and hold a single trial addressing both liability and damages issues.

"[B]ifurcation, even in patent cases, is the ***exception and not the rule***." *Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, 55 F. Supp. 3d 221, 223 (D. Mass. 2014) (citation omitted and emphasis added). This is not an "exceptional case"; Janssen identifies no "particularly compelling" circumstances to "justify[] bifurcation." *Kos Pharms., Inc.v. Barr Labs., Inc.*, 218 F.R.D. 387, 391 (S.D.N.Y. 2003). Janssen fails to prove that separate trials are "clearly necessary," *Laitram Corp. v. Hewlett–Packard Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992), and fails to "justify bifurcation on the basis of [] substantial benefits." *Lewis v. City of New York*, 689 F. Supp. 2d 417, 428 (E.D.N.Y. 2010). Its arguments for bifurcation do not stand up to scrutiny. Janssen claims that this case is complex, but its liability and damages arguments—while seriously flawed—are straightforward. Janssen also says it will suffer prejudice, absent bifurcation. But the supposed prejudice—"that the financial stakes of this litigation could unfairly prejudice the jury's liability inquiry"—cannot plausibly be sufficient to break the normal rule of trying all issues together. Dkt. 270 (Br.) at 8. Janssen chose the liability and damages theories in this case, it should not be allowed to argue that those choices are so "unfair" as to make bifurcation necessary.

Bifurcating the trial would only lead to "inconveniences, inefficiencies and harms" for "the parties and third parties, [] the courts, and [] the prompt administration of justice." *Kos Pharms.*, 218 F.R.D. at 391. Trying liability and damages together, on the other hand, will be far more

efficient. The liability, invalidity, and damages issues have significant legal, factual, and witness testimony overlap, with no reasonable way to separate them—including for example as to third party witnesses and witnesses traveling from South Korea for trial. *See, e.g.*, *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 569 (D. Del. 2013).

This case is not difficult or complex—juries consider far more complex patent cases all the time in a single-phased proceeding. It involves only one patent, one claim, and two highly similar allegedly-infringing products, which cuts against bifurcation. *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621 (N.D. Ill. 2000). It is not a "biosimilar" case—Inflectra is not an infringing product and Janssen has no patent on infliximab. Janssen's damages case, while legally unsupported and wholly improper, is typical in that it seeks lost profits and/or a reasonable royalty.  Juries consider far more complex patent cases all the time in a single-phased proceeding.

In reality, Janssen's bifurcation motion is part of its larger strategy to exclude relevant and valid criticisms of its unprecedented liability and damages theories. Janssen does not want the jury to know it is talking out of both sides of its mouth, and seeks to shield its experts from Defendants' experts' compelling criticisms of Janssen's liability and damages theories. The Court should deny Janssen's motion and give the jury the full context of this case, allowing them to apply Court's instructions to the facts.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." While the question of bifurcation is "within this Court's discretion," *Abbott*, 55 F. Supp. 3d at 222, "the general practice is to try all the issues in a case at one time." *Miller v. Am. Bonding Co.*, 257 U.S. 304, 308 (1921). "[B]ifurcation, even in patent cases, is the exception and not the rule." *Abbott*, 55 F. Supp. 3d at 223 (citing

*SenoRx*, 920 F. Supp. 2d at 568); *Real*, 195 F.R.D. at 620.

"[C]ourts should not order separate trials 'unless such a disposition is clearly necessary.'" *Laitram*, 791 F. Supp. at 114; *see also* Fed. R. Civ. P. 42 advisory committee's note ("separation of issues for trial is not to be routinely ordered"). "The inconveniences, inefficiencies and harms" bifurcation causes—"to the parties and third parties, to the courts, and to the prompt administration of justice—weigh against separation of trials and suggest that, for those probable adverse effects to be overcome, the circumstances justifying bifurcation should be particularly compelling and prevail only in exceptional cases." *Kos Pharms.*, 218 F.R.D. at 391.

Janssen "must justify bifurcation on the basis of the substantial benefits that it can be expected to produce." *Lewis v. City of New York*, 689 F. Supp. 2d 417, 428 (E.D.N.Y. 2010). "To determine whether bifurcation is warranted, courts generally consider the following three factors: '1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses.'" *WeddingChannel.com, Inc. v. The Knot, Inc.*, No. 03 Civ. 7369, 2004 WL 2984305, at *1 (S.D.N.Y. Dec. 23, 2004) (quoting *Gaus v. Conair Corp.*, No. 94 Civ. 5693, 2000 WL 1277365, at *3 (S.D.N.Y. Sept. 7, 2000)).

## III. THE TRIAL IN THIS CASE SHOULD ADDRESS LIABILITY ISSUES AND DAMAGES ISSUES TOGETHER.

The Court should not bifurcate this trial into liability and damages phases because it will not produce any "substantial benefits." *Lewis*, 689 F. Supp. 2d at 428. This case is "the rule," not "the exception" supporting bifurcation. *Abbott*, 55 F. Supp. 3d at 223. As such, this Court should go with "the general practice . . . to try all the issues in a case at one time." *Miller*, 257 U.S. at 308.

### A. Efficiency considerations favor trying liability and damages issues together.

Liability and damages should be tried together because "significant resources [will not] be

saved by bifurcation." *WeddingChannel.com*, 2004 WL 2984305, at *1. Rather, bifurcation would lead to a substantially less efficient trial: the facts and arguments for damages and liability overlap significantly, most witnesses will address both liability and damages issues, and bifurcation will cause substantial logistical redundancy. *See SenoRx*, 920 F. Supp. 2d at 569.

        1.    <u>There is significant overlap between liability issues and damages issues.</u>

Janssen tries to paint this case as if liability issues and damages issues are two separate and distinct parts. But numerous factual and legal issues are relevant to both liability and damages. "[R]epeat presentations of the same evidence," like would be required here, cuts against bifurcation. *WeddingChannel.com*, 2004 WL 2984305, at *1. "[A]n overlapping of issues" is "significant," because "the more that two bifurcated trials would tread the same legal and evidentiary ground, the less it can be said that bifurcation would serve judicial efficiency." *SenoRx*, 920 F. Supp. 2d at 569.

For example, there will be substantial fact and expert testimony about the development of the accused GE HyClone media and Inflectra, including witnesses from third party GE HyClone and from Celltrion in South Korea. This is relevant to both liability and damages. On liability, Janssen's infringement theories tie in to GE HyClone's development of the accused media, its agency theories relate to Celltrion's alleged control over the development process, and its inducement theories relate to Celltrion's actions in the development process. On damages, facts about the development process will relate to GE HyClone's ability to develop and supply a non-infringing alternative, *see, e.g.*, Dkt. 236 at 3–4, 6–7, apportionment of damages between allegedly patented features and unpatented features, *Garretson v. Clark*, 111 U.S. 120, 121 (1884), and the reasonable royalty hypothetical negotiation for "recreat[ing] the *ex ante* licensing negotiation scenario." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009).

A common legal issue between liability and damages is whether Defendants intended to

infringe the '083 patent, which is relevant to both the liability issue of inducement and the damages issue of willful infringement. Dkt. 270 (Br.) at 10. Willfulness arises out of the patent *damages statute*, 35 U.S.C. § 284, and Janssen does not dispute that it is a damages issue. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1928 (2016). The scienter required for willful infringement is not identical to that required for induced infringement, but as Janssen admits, they share common questions. Dkt. 270 (Br.) at 9–10. But contrary to Janssen's arguments, this commonality cuts in favor of trying *all* damages issues with liability, not just willfulness.

Another factual commonality is Janssen's argument (which Defendants dispute) that GE HyClone's sourcing strategies for components of the accused GE HyClone media are relevant to infringement under 35 U.S.C. § 271(f)(1). *See* Dkt. 300 at 6–7. Janssen will present these same sourcing arguments in response to one of Defendants' non-infringing alternatives: producing the accused GE HyClone media outside the United States. *See, e.g.*, Dkt. 244-7 ¶ 66. And Defendants will present similar rebuttal evidence on both points.

Janssen's agency or "joint enterprise" theory of infringement likewise relates to damages and liability issues. On liability, Janssen argues that Celltrion controlled GE HyClone and is therefore liable for GE HyClone's alleged infringement. Dkt. 1 (Complaint) ¶ 8. In the damages context, Janssen argues the opposite in connection with non-infringing alternatives: that ███████ ████████████████████████████████████████████████████████████████████ Ex. 1 (Lit Dep. Tr.) at 231:17–232:3. Facts relevant to these issues overlap, and in particular, Janssen should not be permitted to cloak its contradictory positions by bifurcating liability and damages.

Numerous other issues overlap. These include secondary considerations of obviousness (e.g., the invention's commercial success (or lack thereof), the existence of an alleged long felt but unresolved need, alleged praise by others, etc.) which overlap with the *Georgia-Pacific* reasonable

royalty factors. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (e.g., commercial success, popularity, advantages over old modes or devices).

Given the common facts and arguments between liability and damages, it will be far more efficient to deny bifurcation and allow the parties to present these facts and arguments once, when the jury can consider everything fully.

<u>2.   There is significant overlap in witness and expert testimony between liability and damages.</u>

Almost all of the fact witnesses and many expert witnesses would have to testify both in the liability phase and in the damages phase. "[R]epeat presentations of the same . . . witnesses," also cuts against bifurcation. *WeddingChannel.com*, 2004 WL 2984305, at *1; *see also McCarty v. Liberty Mutual Ins. Co.*, Civ. No. 15-cv-210, 2016 WL 8290149, *4 (D. Wy. May 6, 2016) (denying bifurcation based on, *inter alia*, "duplicative witnesses [and] duplicative testimony").

Defendants presently expect almost ***all*** of their fact witnesses and Janssen's fact witnesses at trial will testify on both liability and damages issues. Defendants' witnesses, for example, will testify on issues relevant to liability, e.g., Celltrion's lack of control over GE HyClone, lack of control over the accused GE HyClone media, and Celltrion's belief of non-infringement, and to damages, e.g., Celltrion's ability to implement non-infringing alternatives, and facts relating to the hypothetical negotiation. As to Janssen's fact witnesses, even if Janssen "does not expect the need to recall any" of them, Dkt. 270 (Br.) at 12, Defendants likely will want them to provide testimony on damages issues, such as apportionment, non-infringing alternatives, and the lack of credibility of Janssen's damages claims. The chart below lists a subset of likely fact witnesses and some of the topics for which Defendants expect their testimony to be relevant.

| Witness | Party | Exemplary Areas of Liability Testimony | Exemplary Areas of Damages Testimony |
|---|---|---|---|
| Dr. Susan Lenk | Janssen | Alleged infringement; invalidity | Noninfringing alternatives; apportionment |
| Mr. Jong Moon Cho | Celltrion | Noninfringement; invalidity | Noninfringing alternatives; apportionment |
| Dr. Min Kyoung Jeon | Celltrion | Noninfringement | Noninfringing alternatives |
| Ms. Yun Jeong Yang | Celltrion | Noninfringement | Noninfringing alternatives |
| Mr. Antoine Pompe van Meerdevoort | Hospira | Noninfringement | Noninfringing alternatives |
| Mr. William Whitford | GE HyClone | Noninfringement; invalidity | Noninfringing alternatives; apportionment |

Bifurcation will result in significant inconvenience and expense for Defendants' witnesses and third party witnesses. Celltrion's fact witnesses have to fly to trial from South Korea. And some third party GE HyClone employees have to travel from Utah. Having a single-phase trial will allow them to testify only once on all issues. If the trial is bifurcated, they will either have to travel home then return to testify again during damages (a virtual impossibility for the Korean witnesses) or remain in Boston indefinitely waiting to provide the remainder of their testimony. Either way, there is no good reason to add this unnecessary burden on these fact witnesses.

Janssen offers an unfairly prejudicial "solution" to this burden on the witnesses, that they "present all of their testimony in the liability phase (subject to appropriate [limiting] instructions)." Dkt. 270 (Br.) at 12. But this is no solution at all. First, it prejudices Defendants to present damages-related testimony without the jury having the appropriate context. The jury would receive facts with no instruction on how to use them or explanation as to how they relate to the case. Then, providing the appropriate context in a later phase will involve repeatedly recapping the prior testimony, in hopes that the jury remembers and can appreciate its significance. Second, limiting

instructions also would prejudice Defendants, because such instructions create a risk that the jury will ignore or disregard critical damages evidence that was presented during the liability phase.

Bifurcation will also lead to significant repeat testimony from experts. Janssen expects to call two of its experts on both liability issues and damages issues—Dr. Butler and Mr. Lit. Janssen will call a third Janssen expert, Dr. Wurm, on liability issues, but his testimony is relevant to damages as well (e.g., non-infringing alternatives), and Defendants plan to cross-examine him on those issues. Defendants also may call two experts on liability and damages issues—Dr. Bert Frohlich and Dr. Akhilesh Nagaich who in addition to damages issues, may testify in rebuttal to Dr. Butler and Mr. Lit regarding infringement under 35 U.S.C. § 271(f)(1). *See* section IV, *infra*.

### 3. Trying liability and damages together is substantially more efficient logistically.

A single trial which addresses all issues will be substantially more efficient. Janssen's demand for bifurcation should be rejected because it inherently leads to "inconveniences, inefficiencies and harms" for "the parties and third parties, [] the courts, and [] the prompt administration of justice." *Kos Pharms.*, 218 F.R.D. at 391.

For example, the parties, court, and jury will need to do things twice. Presenting two opening statements and two closing statements will inherently be less efficient. As explained above, liability issues and damages issues have significant overlap in this case. Consequently, the opening and closing statements in each phase will inevitably tread much of the same ground. A single opening and closing would be more streamlined and less repetitive.

Bifurcation will inconvenience the jury as well, as it will "require additional time for jurors to deliberate," such as by repeating discussions and debates over various issues in both phases. *McCarty v. Liberty Mutual Ins. Co.*, Civ. No. 15-cv-210, 2016 WL 8290149, *3 (D. Wy. May 6, 2016). For example, the jury will have to engage in an infringement analysis during the liability

phase, and then have to reconstruct their thinking on infringement to consider Defendants' non-infringing alternatives (assuming the Court does not grant Defendants' motion for summary judgment on non-infringing alternatives). Allowing the jury to address the related issues in a single deliberation will be more efficient and likely lead to quicker overall resolution of the case.

Janssen's proposed bifurcation is also less efficient because it creates uncertainty about the length of trial. Under Janssen's plan, the jury would deliberate once in the middle of trial, leading to uncertainty about when the damages phase would begin and end. This uncertainty in the start of the damages phase will lead to uncertainty in when (if at all) damages-phase witnesses will need to testify. As a result, those witnesses will need block out more of their time from their jobs and lives to be available and present when needed. It will also substantially increase costs for the parties, including booking accommodations for more days to account for the uncertain end of trial and having expert witnesses present for longer periods of time.

While Janssen contends bifurcation will lead to efficiency, none of those claims hold up. First, Janssen argues that a bifurcated trial would be more efficient if "Defendants were to prevail during the [liability] phase." Dkt. 270 (Br.) at 11. Janssen makes no effort to show what courts look for—a "***probability*** that the defendant would prevail on the infringement issue." *Real*, 195 F.R.D. at 621; *see also Masimo Corp. v. Philips Elecs. N. Am.Corp.*, 742 F. Supp. 2d 492, 496–97 (D. Del. 2010). While Defendants expect to prevail on liability, that is not enough to justify bifurcation, which remains "the ***exception and not the rule***." *Abbott*, 55 F. Supp. 3d at 223 (citation omitted and emphasis added). And, as other courts have recognized, bifurcation inherently leads to "inconveniences, inefficiencies and harms" for "the parties and third parties, [] the courts, and [] the prompt administration of justice." *Kos Pharms.*, 218 F.R.D. at 391.

Second, Janssen argues that "a liability verdict in Janssen's favor" may promote settlement.

9

Dkt. 270 (Br.) at 11. This is false. As the parties have told the Court, a major impediment to settlement in this case is Janssen's unrealistic, unsupportable, and legally inappropriate damages demand, which will not change if Janssen prevails on liability. Moreover, even if Janssen prevails at trial, Defendants are highly confident that they would prevail on appeal.

Third, Janssen argues that a bifurcated proceeding would reduce the need for limiting instructions, but offers no examples. Dkt. 270 (Br.) at 11. In reality, absent bifurcation, the Court will not need to give limiting instructions. Bifurcating trial, on the other hand, will ***create*** the need for such instructions and make the trial less efficient.

Fourth, Janssen claims that bifurcation would allow a more focused presentation of issues. Dkt. 270 (Br.) at 11. But as discussed above, liability issues and damages issues are highly intertwined. As a consequence, trying issues together will be more focused and streamlined, while bifurcation would lead to substantial repetition of facts and argument.

Finally, Janssen claims that bifurcation would "eliminate the need for alternative damages timelines." Dkt. 270 (Br.) at 11. But there are no "alternative damages timelines." Now that Janssen does not oppose Defendants' motion in limine nos. 6 and 7 (which both relate to "alternative damages timeline"), the only relevant "timeline" for lost profits and reasonable royalty is based on a date of September or October 2009.

## B.     Having the jury address liability and damages issues together will make the trial less complex.

This case is not particularly complex, and falls well within the general principle that "bifurcation, even in patent cases, is the exception and not the rule." *Abbott*, 55 F. Supp. 3d at 223. Given this simplicity, there is no reason to believe that "bifurcation will increase juror comprehension." *WeddingChannel.com*, 2004 WL 2984305, at \*1. Consequently, liability and damages issues should be tried together.

10

1.    The liability and damages issues in this case are not particularly complex.

This case is not particularly complex. Janssen asserts one claim, of one patent, against two cell culture media which Janssen essentially treats as one product. Courts regularly keep such cases together. *See, e.g.*, *WeddingChannel.com*, 2004 WL 2984305, at *2; *Real*, 195 F.R.D. at 626.

Neither does the "context" make this case unusual or difficult. The accused products are generic cell culture media—normal chemical compositions which present no complexities or difficulties beyond those in any other patent case. Janssen's repeated argument that this case is unusual "due to the novel biosimilar context," fails because this is not a biosimilar case at all. *E.g.*, Dkt. 270 (Br.) at 4, 6. The accused products are not biosimilars and '083 patent does not cover a biosimilar. And while Janssen purports to seek damages based on infliximab, its damages measures are not particular to the "biosimilar context."

Liability: This case does not present "complex infringement issues" or "multiple patents, infringing products, claim[s], counterclaims, or parties." *Real*, 195 F.R.D. at 620. The liability issues in this case are straightforward, and Janssen does not argue otherwise. The legal question for the jury on infringement will be under the doctrine of equivalents, which juries in patent cases frequently address. And while Janssen's 12-way (or more) theory of equivalence is unprecedented and legally unsupportable, it is not unusually complex or difficult for a jury to understand.

Likewise, Defendants' invalidity arguments, including obviousness and lack of written description, are straightforward and typical in patent cases. Indeed, given how close the prior art is to the '083 patent's claims, it should be particularly easy for the jury to address invalidity issues.

Janssen says very little about confusion or complexity of liability issues, but the arguments it does make do not stand up to scrutiny. For example, Janssen argues that "examining [Defendants' non-infringing alternatives] options prior to resolving the concrete liability issues would introduce serious confusion." Dkt. 270 (Br.) at 6. But the Court will instruct the jury on

infringement and non-infringing alternatives, and there is no reasonable probability that it will confuse the accused GE HyClone media with Defendants' non-infringing alternatives. Likewise, bifurcation makes the jury's analysis of cell culture media made by GE HyClone in Singapore *more complex*, not easier. *Id.* at 6–7. Even if the GE HyClone media from Singapore infringes, it still may be an available non-infringing alternative. Considering arguments on infringement and non-infringing alternatives together for the Singapore media will make their deliberations more efficient. The overlap in these issues favors trying them together rather than separately.

Janssen's suggestion that "Defendants . . . hope to present expert testimony on non-infringing alternatives that risks being confused with liability analysis" is simply false. Dkt. 270 (Br.) at 7. And Janssen identifies no issues where it believes Dr. Frohlich's "testimony would hopelessly conflate liability and damages issues." *Id.* As Defendants' opposition to Janssen MIL 11 explains, Dr. Frohlich's testimony addresses damages-specific issues—he offers neither a non-infringement opinion for the accused GE HyClone media nor an invalidity opinion for the '083 patent. As explained above, there is overlap between facts and arguments relevant to both liability and damages, but that does not turn Dr. Frohlich's damages opinions into liability opinions. Rather, the overlap (and "repeat presentations of the same evidence and witnesses") counsels *against* bifurcation. *See WeddingChannel.com*, 2004 WL 2984305, at *1.

Damages: The Court should exclude Janssen's damages theories based on significant legal errors that Janssen's damages expert committed. *See* Dkts. 240, 238. But even if the Court allows Janssen to present these unprecedented and legally-flawed theories to the jury, they are not unusually complex or difficult for the jury to understand.

The legal standards under which Janssen seeks damages—reasonable royalty and lost profit—are straightforward and addressed by every jury that decides patent damages. *See Lucent*

*Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). And those juries almost always consider reasonable royalty and/or lost profits issues at the same time they decide infringement and invalidity. *See* section III.B.2, *infra*.

Likewise, Janssen's particular calculation of its alleged damages is not complex and does not present the "extenuating circumstance[]" of "a need for voluminous documents." *Real*, 195 F.R.D. at 621. Janssen's expert assumes Janssen lost sales of Remicade and reduced the price on Remicade. He further assumes Defendants' alleged infringement was a "but for" cause of those purported losses. Then, he runs a few calculations that he asserts show what would have happened in the market absent Inflectra. Janssen's expert discusses very little (if anything) about the actual economics of Remicade, its competitors, or the marketplace in which it competes. For example, he failed to substantively consider products other than Inflectra or Remicade.

Janssen's claim that the damages issues are "complex" and "present a substantial risk of jury confusion," e.g., Dkt. 270 (Br.) at 3–8, is unsupported. For example, while Janssen claims the "damages calculations . . . are complex," *id.* at 4, it identifies no particular complexity to those calculations. Similarly, Janssen says "the net price for Remicade is not the official list price," but, again, this issue is not complex and is well within the jury's comprehension. Likewise, Janssen cites "constructing a 'but-for' world in which Defendants' infringement did not occur," but a "but for" reconstruction of the market is part of any lost profits claim. *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999). As to the other "treatment[s] approved for the numerous approved indications," this is a factor that any lost profits case must address. *See, e.g.*, *id.* None of these are "particularly compelling" circumstances to "justify[] bifurcation." *Kos Pharms.*, 218 F.R.D. at 391.

Similarly, Janssen argues that the "reasonable royalty" is complex because it involves a

different "legal framework" than lost profits, and which has "fifteen separate factors." Dkt. 270 (Br.) at 5. But, again, this is true in every case involving reasonable royalty damages. Likewise, there is no particular complexity in the jury deciding between the parties' competing reasonable royalty approaches; every jury deciding reasonable royalty damages must make that choice.

The cases Janssen cites do not compel a different result. Most of Janssen's cases made the bifurcation at an earlier phase of the proceeding and stayed damages (and willfulness) discovery until after a decision on liability; here, with all discovery complete, many of the considerations these cases discuss are irrelevant. *See*, *e.g.*, *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 261 (D.N.J. 1997); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 986 (D. Del. 1982); *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 116 (E.D. La. 1992); *Wyeth v. Abbott Labs.*, No. Civ. 08-230, 2010 WL 4553545, at *2 (D.N.J. Nov. 3, 2010). Janssen's cases also involve far more patents and claims than are at issue here. *Princeton Biochemical*, 180 F.R.D. at 257 (40 claims asserted); *Laitram*, 791 F. Supp. at 114 (five patents); *Wyeth*, 2010 WL 4553545, at *2 ("multiple patents, multiple accused products and multiple Defendants"). And in one of Janssen's cases, the parties had ***agreed*** on bifurcation. *Novartis Corp. v. Teva Pharms. USA, Inc.*, No. Civ. 04-4473, 2008 WL 10973750, at *2 (D.N.J. Oct. 28, 2008).

> 2. <u>Courts regularly hold trials of far greater complexity in a single phase,
> addressing both liability and damages.</u>

A cursory look at other patent cases shows that there is nothing particularly complex about this case which justifies bifurcation. Indeed, juries frequently consider liability issues and damages issues together in complex patent cases. For example, in *WesternGeco LLC v. ION Geophysical Corp.*, 953 F. Supp. 2d 731 (S.D. Tex. 2013), the court held a three and a half week jury trial on liability and damages for infringement of four patents which led to a $105.9 million award on lost profits and reasonable royalty. *Id. at* 739–40, 755. Liability and damages were also tried together

14

in a three-week trial in *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 5:11-cv-01846 (N.D. Cal.

2012), which involved both cross-assertion of 13 patents, against more than 25 products. *See id.*,

Dkt. 1890 (verdict form). Similarly, for the three separate trials in *VirnetX Inc. v. Apple Inc.*, 6:10-

cv-417 (E.D. Tex), each addressed both liability and damages issues in a single phase; these trials

lasted between five and seven days, involving five total patents, and more than 15 total claims.

*See, e.g.*, *id.* Dkts. 598 (verdict form), 790 (verdict form), 1025 (verdict form).

This case involves one claim of one patent, two products, and two damages theories, not

"multiple patents, infringing products, claim[s], counterclaims, or parties." *Real*, 195 F.R.D. at

620. It is not the exception where separation of damages and liability is necessary. It is counsel's

job to make these issues and facts understandable to a lay jury. And like the much larger and more

complex cases which have tried liability and damages together, counsel will do so here.

> **C.     Bifurcation would unfairly prejudice Defendants by denying the jury the full
> context of Janssen's arguments and evidence.**

> 1.     <u>Bifurcation would be unfairly prejudicial to Defendants.</u>

Finally, Janssen argues that it would be prejudiced by trying damages issues and liability

issues together. In reality, Janssen's entire goal is to set up a trial which is unfairly prejudiced

against Defendants. Specifically, Janssen's intent with bifurcation (and its motions *in limine*

generally) is to keep Defendants from criticizing and rebutting Janssen's unprecedented and

unsupportable approach to this case and to prevent the jury from seeing that Janssen is talking out

of both sides of its mouth. The jury should hear the full story at once, not just the

compartmentalized bits and pieces Janssen wants it to hear.

Bifurcation would prevent Janssen from facing its own inconsistencies on the scientific

testing in this case. Both Janssen and Defendants conducted scientific testing on cell culture media:

Janssen in connection with liability issues, Defendants in connection with non-infringing

alternatives. On liability issues, Janssen will tell the jury its tests only need to show similar cell growth. *See, e.g.*, Ex. 2 (1/30/18 Hr'g Tr.) at 147:20–148:11. On damages issues, Janssen will tell the jury that ████████████████████████████████████████████████████████████ ███████████ *See, e.g.*, Dkt. 244-1 (Butler Damages Reply Rpt.) ¶ 32. This is inconsistent. So Janssen asks to bifurcate so it doesn't have to make both arguments at the same time.

Janssen likewise seeks bifurcation so it can avoid the jury seeing the tension between its focus on cell culture media for liability issues and its focus on infliximab for damages issues. For liability, Janssen will tell the jury that the '083 patent is something special. Defendants' damages case will show the jury that this is not true, and that there actually were many acceptable non-infringing alternatives at the time. *See, e.g.*, Dkt. 237-2 (Frohlich Rpt.) ¶ 23.

The bifurcation motion itself also reveals Janssen's gamesmanship. For example, Janssen admits that willfulness is frequently tried with damages when a case is bifurcated, yet Janssen asks the Court to include it with liability. Dkt. 270 (Br.) at 9–10; *see, e.g., Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 312 (E.D.N.C. 1998) (liability tried separately from willfulness and damages); *Pfizer Inc. v. Novopharm Ltd.*, No. 00 C 1475, 2000 WL 1847604, at *4 (N.D. Ill. Dec. 13, 2000) (same); *Princeton Biochemicals*, 180 F.R.D. at 260 (same); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (willfulness should be bifurcated from liability "in appropriate cases") *overruled on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923 (2016). It gives no consideration to whether Defendants might raise an advice-of-counsel defense. Rather, Janssen seeks to stack the trial so that bifurcation does not prevent it from making the damages arguments it wishes to use on liability issues—*i.e.*, willfulness.

Similarly, Janssen tries to stack the deck on infringement under 35 U.S.C. § 271(f)(1). Janssen states that its damages expert, Mr. Richard Lit, may testify during the liability phase, Dkt.

270 (Br.) at 12, but that Defendants' experts, Dr. Frohlich and Dr. Akhilesh Nagaich, should not be allowed to respond to these opinions. *Id.* at 13.

Janssen likewise tries to prevent Defendants' technical expert on damages issues, Dr. Frohlich, from opining that Defendants' non-infringing alternatives do not infringe the '083 patent. *Id.* at 7. On non-infringing alternatives, Janssen bears the burden of showing infringement. *See, e.g., Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989). Dr. Frohlich addresses infringement in connection with non-infringing alternatives. Janssen cannot argue that Defendants' proposed alternatives infringe the '083 patent, while simultaneously denying Dr. Frohlich the opportunity to explain why they do not. Janssen cannot reasonably believe that Dr. Frohlich's non-infringement opinions will be confusing to the jury, because he offers no infringement opinions related to the accused GE HyClone media.

Janssen's other motions show this same strategy of keeping key criticisms from the jury. On liability, Janssen expressly tries to keep Defendants from pointing out that Janssen's experts are offering inconsistent positions on infringement and invalidity (Dkt. 249) and from demonstrating the flaws in their opinions (Dkts. 241, 266). On damages, Janssen wants to keep the jury from knowing about Celltrion's **many** acceptable non-infringing alternatives to the GE HyClone media (Dkts. 246, 268), from knowing about another approved infliximab biosimilar (Dkt. 267), and from knowing that its damages theories are based on impermissible "hold up," not the value of the claimed invention (Dkt. 267).

The general practice of one trial on all issues will prevent Janssen from creating this unfair prejudice and allow the jury to understand the entire context and picture of the case. Indeed, last year Janssen argued that "[t]he jury should not consider this case in a vacuum." No. 15-10698 Dkt. 419 at 6. Janssen's motion to bifurcate liability from damages should be denied.

2.     Janssen identifies no actual prejudice from trying liability and damages together.

Janssen claims that "[b]ifurcation would avoid the . . . risk of unfair prejudice." Dkt. 270 (Br.) at 1. But, in truth, Janssen's motion identifies no prejudice it would suffer from trying liability and damages together. The potential prejudices Janssen identifies either are not unfairly prejudicial or are not real risks in this case.

Janssen's primary claimed prejudice is that "[t]here is [] a risk that the financial stakes of this litigation could unfairly prejudice the jury's liability inquiry." Dkt. 270 (Br.) at 8. Janssen suggests that Defendants will "introduce unfair prejudice into the liability case by emphasizing the size of Janssen's claimed damages and trying to use that as a purported liability defense." Dkt. 270 (Br.) at 1. But Janssen's argument is, at best, speculative, and the Court should not allow Janssen to cite circumstances of its own making as unfairly prejudicial. Janssen set "the financial stakes of the case," not Defendants. Dkt. 270 (Br.) at 8. And Janssen chose to assert unprecedented, unsupportable, and legally improper case theories on infringement and damages. In short, Janssen's claimed prejudice is that a jury, looking at Janssen's liability case and damages case together, will realize that neither has any merit and throw them both out. This, however, is not unfairly prejudicial.  The fact that Janssen is embarrassed by its own outlandish damages demand does not justify hiding it from the jury through bifurcation.

This purported prejudice cannot satisfy Janssen's obligation to prove "particularly compelling" circumstances that justify bifurcation. *Kos Pharms.*, 218 F.R.D. at 391. The general rule and general practice in patent cases of trying all issues together should not be disturbed here. *Abbott*, 55 F. Supp. 3d at 223. The Court will instruct the jury on the legal principles for deciding questions of infringement and invalidity, and it is not reasonable to presume that the jury will take other factors into account.

18

Janssen also claims that Defendants will "argue to the jury that biosimilar drugs lower the costs of health care and that they should win this case for that reason, no matter what the patent law says." Dkt. 270 (Br.) at 8. Of course, Janssen offers no basis to think Defendants will argue this. Likewise, Defendants have never argued that "price erosion damages are inappropriate in a case involving biosimilar drugs, given the purported reduction in healthcare costs offered by biosimilars" (though Janssen is not entitled to price erosion damages on Remicade for other reasons). Dkt. 270 (Br.) at 8. Janssen cannot reasonably argue that the price of Inflectra is irrelevant to this case—most of Janssen's damages claim is based on █████████████████████████████ ████████████████ Regardless, Janssen filed a motion in limine related to this issue; it is not the type of exceptional circumstance necessary to justify bifurcation. *Kos Pharms.*, 218 F.R.D. at 391.

The only other alleged "prejudice" Janssen identifies is "Dr. Frohlich's testimony." Dkt. 270 (Br.) at 8. As explained above, Dr. Frohlich's testimony and opinions are relevant to damages. *See* section III.B.1, *supra*. He offers no opinion on whether the '083 patent is invalid or whether the accused GE HyClone media infringes the asserted claim.[1] Janssen has no plausible basis to claim prejudice from his testimony.

## IV.    THE COURT SHOULD REJECT JANSSEN'S REQUEST TO "PRECLUDE[]" ARGUMENT AND EVIDENCE REGARDING DAMAGES ISSUES

Janssen's motion ends with a brief and unsupported request to preclude "evidence and argument regarding damages issues." Dkt. 270 (Br.) at 13. Bifurcation is not warranted, so the Court should deny Janssen's request. But even if the Court chose to bifurcate, Janssen's request should still be denied.

First, Janssen's rule is inconsistent with its own brief. Janssen already concedes that

---

[1]    If Janssen has its damages expert witness Richard Lit testify on infringement under 35 U.S.C. § 271(f)(1), Dr. Frohlich might provide responsive testimony.

Defendants may offer damages evidence during the liability phase, for example, through Defendants' fact witnesses. *Id.* at 12.

Second, Janssen's sweeping, but unsupported, argument seeks to exclude rebuttal expert testimony from Dr. Frohlich and Dr. Nagaich which it has not actually challenged. Janssen intends that its damages witnesses, Dr. Michael Butler and Mr. Richard Lit, will testify about liability issues related to § 271(f)(1). Drs. Frohlich and Nagaich provided rebuttal opinions to Dr. Butler's and Mr. Lit's reports. To the extent Janssen wishes to offer its experts on this issue, Defendants' experts must be allowed to respond.

Finally, the Court should deny Janssen's request because it is unclear what Janssen means by "damages issues." As explained above, this case has significant overlap between lability issues and damages issues. Janssen's proposed rule is so broad that it will lead to unnecessary disputes about what is or is not a "damages issue[]."

## V.    CONCLUSION

The Court should try this case in one single phase, addressing both liability and damages together. Consequently, the Court should deny Janssen's motion *in limine* 14.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/Andrea L.  Martin, Esq.
Dennis J.  Kelly (BBO # 266340)
Andrea L.  Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com

amartin@burnslev.com

*Of counsel:*

Charles B.  Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C.  (*pro hac vice*)
Bryan S.  Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare
Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## CERTIFICATE OF SERVICE

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

/s/Andrea L. Martin, Esq.
Andrea L. Martin, Esq.

21