# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., | |
| Plaintiff, | |
| v. | No. 1:17-cv-11008 |
| CELLTRION HEALTHCARE CO., LTD., CELLTRION, INC., and HOSPIRA, INC. | **PUBLIC-REDACTED VERSION** |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE OPINION OF SEAN NICHOLSON REGARDING DAMAGES**

## TABLE OF CONTENTS

I.      Introduction .................................................................................................. 1

II.     "But For" Causation Is Necessary But Not Sufficient to Recover Lost profits;
        Apportionment Must Always Be Satisfied ................................................... 3

        A.      But For Causation Alone Does Not Satisfy Apportionment ................................... 3

        B.      But For Causation Alone Is Never Enough To Recover Lost Profits For
                *Unpatented* Products ................................................................................. 6

        C.      Apportionment Is Not Limited to Multi-Component Products............................ 10

        D.      Janssen's "Adapted" Version of *Panduit* Fails to Show "But For"
                Causation In Any Event ................................................................................ 13

III.    Janssen Improperly Bases Its Reasonable Royalty on Inflectra® Rather than
        the Accused Products.................................................................................... 17

IV.     Janssen Mischaracterizes the Court's Prior Guidance ............................. 19

V.      Conclusion .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Castle Constr. Co. v. Acosta*,
  882 F.3d 34 (1st Cir. 2018) ...................................................................................14

*Aqua Shield v. Inter Pool Cover Team*,
  774 F.3d 766 (Fed. Cir. 2014) ...............................................................................18

*AstraZeneca AB v. Apotex Corp.*,
  782 F.3d 1324 (Fed. Cir. 2015) ........................................................................12, 13

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
  1 F.3d 1214 (Fed. Cir. 1993) ......................................................................14, 15, 17

*Boeing Co. v. United States*,
  86 Fed. Cl. 303 (2009) .............................................................................................9

*Brown v. Duchesne*,
  60 U.S. 183 (1856) .................................................................................................13

*Calico Brand, Inc. v. Ameritek Imps., Inc.*,
  527 F. Appx. 987 (Fed. Cir. 2013) .........................................................................15

*CardioNet, LLC v. ScottCare Corp.*,
  2017 WL 4742476 (E.D. Pa. Oct. 19, 2017) ..........................................................13

*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*,
  429 U.S. 167 (1976) ...............................................................................................13

*Commonwealth Sci. and Indus. Research Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015) ..............................................................................18

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ..............................................................................11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ........................................................................18, 19

*Garretson v. Clark*,
  111 U.S. 120 (1884) ........................................................................................ *passim*

*Gyromat Corp. v. Campion Spark Plug Co.*,
  735 F.2d 549 (Fed. Cir. 1984) ...............................................................................14

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
    382 F.3d 1367 (Fed. Cir. 2004)........................................................................9

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012).................................................................. *passim*

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301, 1337 (Fed. Cir. 2009)..............................................................9

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    851 F.3d 1275 (Fed. Cir. 2017).............................................................. *passim*

*Mentor Graphics Corp. v. Eve-USA, Inc.*,
    870 F.3d 1298 (Fed. Cir. 2017)........................................................................5

*Micro Chem., Inc. v. Lextron, Inc.*,
    318 F.3d 1119 (Fed. Cir. 2003).................................................................9, 10

*Minco, Inc. v. Combustion Eng'g, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996)...................................................................9, 10

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) .......................................................................14

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,
    745 F.2d 11 (Fed. Cir. 1984)...........................................................................9

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    875 F.3d 1369 (Fed. Cir. 2017)......................................................................16

*Price v. Soc. Sec. Admin.*,
    398 F.3d 1322 (Fed. Cir. 2005)......................................................................14

*Radware, Ltd. v. F5 Networks, Inc.*,
    2016 WL 590121 (N.D. Cal. Feb. 13, 2016), *Order clarified*,
    No. 5:13-CV-02024-RMW, 2016 WL 9001260 (N.D. Cal. Feb. 22, 2016)..................15, 16

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)..........................................................................1

*Rite-Hite Corp. v. Kelley Co.*,
    56 F.3d 1538 (Fed. Cir. 1995)................................................................. *passim*

*Rite-Hite Corp. v. Kelley Co.*,
    774 F. Supp. 1514 (E.D. Wis. 1991)................................................................8

*Seymour v. McCormick*,
    57 U.S. 480 (1853).........................................................................................11

*SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*,
    926 F.2d 1161 (Fed. Cir. 1991)............................................................................14

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    891 F. Supp. 751 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996)..............15

*Trell v. Marlee Elecs. Corp.*,
    912 F.2d 1443 (Fed. Cir. 1990)............................................................................18

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014).........................................................................9, 18

*Wallace & Tiernan Co. v. City of Syracuse*,
    45 F.2d 693 (2d Cir. 1930)....................................................................................4

**Statutes**

35 U.S.C. § 284................................................................................................................7

## I.  INTRODUCTION

As Defendants explained in their opening brief, apportionment is required in "every case." *Garretson v. Clark,* 111 U.S. 120, 121 (1884). There are only two exceptions to this rule: (1) in certain cases, the *Panduit* test, properly applied, may incorporate principles of apportionment; and (2) where the patentee meets the entire market value rule ("EMVR").

Janssen satisfies neither apportionment nor the EMVR, even though they are critical here because Janssen is calculating damages based neither on the patented product, cell culture media, nor even on a product containing the accused cell culture media, but instead solely on the **unpatented**, downstream infliximab product. That makes apportionment all the more important, because the further removed from the patented article, the more likely that damages are no longer tied "to the claimed invention's footprint in the market place," and would "punish[] beyond the reach of the statute." *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 869 (Fed. Cir. 2010). EMVR is similarly important here, because it "acts as a check to ensure that the royalty damages… are in fact 'reasonable' in light of the technology at issue." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).

But in its opposition, Janssen does not contend that Dr. Nicholson actually conducted an apportionment analysis. Nor could it, given that ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Nor did Janssen make any effort to satisfy the EMVR. It cannot, because, as Janssen's medical expert admitted, "cell culture media is not something that physicians or patients take into account when selecting a biologic." Dkt. 240 Ex. 4, Rustgi Reply Report ¶8. ███████████████████████████ ████████████████████████████████████████████████████████████ Dkt. 240 ██████████████████████████

Instead, Janssen argues that "'[a]pportionment' [p]rinciples [a]re [i]napplicable [h]ere," barely contends with EMVR at all, and offers a series of inconsistent arguments and half-truths to argue it did not need to. Dkt. 295 at 6. Janssen's decision to compute damages based on a wholly *unpatented*, downstream product ████ more valuable than the patented footprint, and which the accused products are not even a component of, is the elephant in the room making its damages model unprecedented. Janssen's opposition attempts to justify its methodology by artificially pigeonholing fundamental damages principles into illogical boxes, but its arguments are devoid of support in the law.

First, Janssen mischaracterizes *Mentor Graphics*, claiming the Federal Circuit held that "but-for causation adequately accounts for apportionment." Dkt. 295 at 6-7, 10. That is false. Not only does *Mentor Graphics* explicitly limit its holding to its "undisputed facts," but the court left "for another day whether a different theory of 'but for' damages adequately incorporates apportionment principles." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1288 (Fed. Cir. 2017). Indeed, *Rite-Hite*, a seminal lost profits case on which Janssen relies, *rejected* a claim for lost profits on an unpatented product despite "but for" causation, because the patentee failed to meet the entire market value rule test. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995). In any event, Janssen fails its own legally-flawed test as Dr. Nicholson's "adapted" *Panduit* factors do not even show "but for" causation.

Second, Janssen admits that apportionment is a recognized requirement for lost profits damages but asserts that only applies to "multi-component" products. Dkt. 295 at 9-11. Not only is Janssen's argument inconsistent with its argument that proof of "but for" causation satisfies apportionment, but its new argument makes no logical sense. The damages measuring unit Janssen suggests—Remicade®—is actually further removed from the patented invention than

those multi-component cases Janssen attempts to distinguish (whose products at least contained the invention). The simple, logical, and correct answer provided by the Supreme Court is that apportionment is required in "every case." *Garretson*, 111 U.S. at 121.

Perhaps realizing that precedent provides no valid excuse for Dr. Nicholson's failure to apportion, Janssen decides to misrepresent the past history of this case, arguing that "this Court rejected" Defendants' argument that apportionment is required last year. Dkt. 295 at 1. As this Court is well aware, this assertion is false. Apportionment had not been briefed, let alone decided, when this Court gave its guidance on a different damages issue. Indeed, at that time Janssen had yet to provide Dr. Nicholson's report, or any inkling that it would pursue its "adapted" and unsupported *Panduit* methodology.

Janssen has not and cannot justify Dr. Nicholson's failure to apportion. He improperly applied *Panduit* in an attempt to grossly inflate Janssen's damages, and now Janssen distorts the law—both the Federal Circuit's and this Court's—in an attempt to avoid exclusion. The Court should reject Janssen's arguments and exclude Dr. Nicholson's opinions.

## II. "BUT FOR" CAUSATION IS NECESSARY BUT NOT SUFFICIENT TO RECOVER LOST PROFITS; APPORTIONMENT MUST ALWAYS BE SATISFIED

### A. But For Causation Alone Does Not Satisfy Apportionment

The essence of Janssen's position is that a mere showing of "but for" causation entitles it to damages on sales of Remicade®, and no apportionment is required. Of course, Janssen ***must*** say that, because Dr. Nicholson ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

did nothing to apportion, or separate out, any damages attributable to the accused cell culture media compared to the other contributors of value. ███████████████████████████

Janssen does not dispute this fact.

But the logical flaw in Janssen's argument is apparent—every component used or step taken in the process of making infliximab is a "but for" cause of its existence, and thus under Dr. Nicholson's methodology each one of those causes would support a damages claim for 100% of a patent owner's lost profits on a competing downstream product. "Under *Panduit*, however, there can only be one recovery of lost profits for any particular sale." *Mentor Graphics*, 851 F.3d at 1289. That is one of the reasons apportionment is required in "every case." *Garretson*, 111 U.S. at 121; *see also Wallace & Tiernan Co. v. City of Syracuse*, 45 F.2d 693 (2d Cir. 1930) (apportionment still required where "but for" causation had been shown).

Janssen rests its argument on the assertion that, in *Mentor Graphics*, the Federal Circuit held that apportionment is never necessary when "but for" causation has been shown. Dkt. 295 at 6. That is false. *Mentor Graphics* actually reaffirmed "that apportionment is an important component of damages law ***generally***, and we believe it is ***necessary*** in both reasonable royalty and lost profits analysis." 851 F.3d at 1287 (emphasis added). In *Mentor Graphics*, the Court held that "***on the undisputed facts of this record***, satisfaction of the ***Panduit factors*** satisfies principles of apportionment: Mentor's damages are ***tied to the worth of its patented features***." *Id*. at 1288 (emphasis added). It did ***not*** hold that apportionment was ***never*** required.

And importantly, *Mentor Graphics* did ***not*** hold that satisfying the *Panduit* test ***always*** satisfies the apportionment requirement. The holding was far narrower: as shown above it was based "on the undisputed facts of this record," and the Court explained that "this case [is] ***quite narrow*** and unlike the complicated fact patterns that impact so many damages models in patent cases." *Id*. at 1286-88 (emphasis added). The Federal Circuit left "for another day whether a different theory of 'but for' damages adequately incorporates apportionment principles." *Id*. at 1288. Judge Stoll's concurring opinion denying rehearing *en banc*, which was joined by Judges

Newman, Moore, O'Malley, Reyna, and Wallach, emphasized the narrowness of the holding:

> ***Under the narrow facts of this case***, however, the panel determined that because the *Panduit* factors are satisfied, the damages award properly accounted for apportionment. ***I do not read the panel's decision to apply broadly to all lost profits analyses.*** Accordingly, based on the jury's undisputed fact findings on the *Panduit* factors in this case, I agree with the panel that Mentor properly accounted for apportionment of lost profits between the patented and unpatented features of the infringing emulator system.

*Mentor Graphics Corp. v. Eve-USA, Inc.*, 870 F.3d 1298, 1300 (Fed. Cir. 2017); *see also id.* ("[u]nder these circumstances, further apportionment is unnecessary," because whether viewed "in terms of what imbues value to the ultimate combination of features or what is a driver of demand for those combined features, the result is the same: the apportionment required by *Garretson* is satisfied.").

*Mentor Graphics*' narrow ruling thus cannot excuse Dr. Nicholson's admitted failure to apportion because the facts here diverge significantly from *Mentor Graphics*. *See* App'x A. For example, in *Mentor Graphics*, the patentee sought lost profits for sales that competed directly with the patented product. *Id*. Here, Janssen seeks lost profits for sales of Remicade®, which does not compete with the patented product, cell culture media. In *Mentor Graphics*, the patented product was the same as the damages measuring product and was in a two-player market. *Id*. Here, the patented product is not the same as the damages measuring product, and both are in multiplayer markets. *Id*. In *Mentor Graphics*, the infringer did not contest "but for" causation for the lost sales at issue. *Id*. Here, Defendants vigorously contest the issue. In *Mentor Graphics*, purchasers of the damages measuring product cared about the patented feature. *Id*. ███

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████   The unique circumstances that satisfied the apportionment requirement in *Mentor Graphics* have zero applicability to this case. Dr.

Nicholson's admitted failure to apportion requires exclusion of his opinions.

Even if *Mentor Graphics* stood for the proposition that an application of the *Panduit* factors **always** satisfies the requirement to apportion damages—and it does not—Dr. Nicholson would still need to apportion because Janssen concedes he "adapted" the *Panduit* factors in his damages model. Dkt. 295 at 2, 13-16. "Adapting" the *Panduit* factors is Janssen doublespeak for not applying them. Indeed, Janssen's "adaptation" conflicts with the Federal Circuit's reasoning for why *Mentor Graphics*' application of *Panduit* "satisfie[d] principles of apportionment" in that case (851 F.3d at 1288):

> The first [*Panduit*] factor—demand for the patented product—considers demand for the product as a whole. The second [*Panduit*] factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention. Together, requiring patentees to prove demand for the product as a whole and the absence of non-infringing alternatives ***ties lost profit damages to specific claim limitations and ensures that damages are commensurate with the value of the patented features***.

*Mentor Graphics*, 851 F.3d at 1285 (internal citations omitted, emphasis added). Mentor's ability to satisfy the demand for the ***patented product*** (emulators) tied its claimed damages directly to the value of the patented features. *Id.* at 1288. This logic does not apply to Janssen's modified *Panduit* test, which applies some factors to infliximab and other factors to cell culture media. *See* section II.D, *infra*; Dkt. 295 at 14; Ex. 1, Janssen Proposed Final Damages Instruction No. 2.

**B.     But For Causation Alone Is Never Enough To Recover Lost Profits For *Unpatented* Products**

Janssen also fails to address EMVR in any meaningful way, simply arguing that it only applies to multi-component products having both patented and unpatented components. Dkt. 295 at 10. Janssen does concede, however, that for a multi-component product, to justify damages for the entire product "requires the plaintiff to show that the entire value of a multi-component product is attributable to the patented component." *Id.* Janssen's argument that EMVR is not

relevant here makes zero sense. If EMVR is required to justify damages for an entire product that includes both unpatented and patented components, then EMVR must be ***even more critical*** to justify damages for an entire product, like here, that has ***only unpatented components***, or is ***entirely unpatented***.

Janssen misses the very point of EMVR. Its purpose is to ***prohibit*** the recovery of lost profits on a non-patented item ***unless*** (1) the item is part of a multicomponent product or the patented and unpatented products "together constitute[] a functional unit," ***and*** (2) "the patent-related feature is the 'basis for customer demand.'" *Rite-Hite*, 56 F.3d at 1549-1550 (citation omitted). "In effect, the entire market value rule acts as a check to ensure that the royalty damages being sought under 35 U.S.C. § 284 are in fact 'reasonable' in light of the technology at issue." *LaserDynamics*, 694 F.3d at 67.

Janssen fails both requirements. Janssen does not argue that the accused cell culture media and Remicade® are a multicomponent product or together constitute a functional unit, instead conceding that the product for which it seeks damages is entirely unpatented. Janssen also concedes the patented invention does not drive demand for the product on which it seeks damages. Dkt. 267 at 4. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

The Federal Circuit's decision in *Rite-Hite* is directly on point. It rejected a "but for"-causation-alone test for lost profits damages on sales of unpatented products, in a case where "but for" causation existed. In *Rite-Hite*, the patentee sought lost profits in two forms: first, for its lost sales on products (vehicle restraints) "that directly competed with the infringing product," and second, for lost sales on products (dock levelers) "that [were] neither competitive with nor

function[ed] with the patented invention." *Rite-Hite*, 56 F.3d at 1546, 1551. The district court—

applying the same "but for" logic Janssen advocates here—awarded lost profits on the

unpatented dock levelers:

> [The defendant's] ability to sell levelers in the package [vehicle restraint]-leveler
> sales was dependent upon [the defendant's] use of the [patented] technology: [the
> defendant's] infringement of the [] patent permitted it to sell the [vehicle]
> restraint, which in turn permitted [the defendant] to sell a significant number of
> [unpatented] levelers.
>
> ***This application of the entire market value rule proceeds from the overriding
> rule that a patentee can recover as damages all profits from lost sales upon
> proof that, "but for" the infringement, it would have made on the sales***. …
> [T]he defendant's infringement of one of the [patented] restraining hook
> technologies caused the plaintiffs to lose sales of units embodying both
> technologies, in addition to packaged leveler sales.

*Rite-Hite Corp. v. Kelley Co.*, 774 F. Supp. 1514, 1542-43 (E.D. Wis. 1991) (emphasis added,

internal citations omitted).

The Federal Circuit reversed the award of lost profits on the ***unpatented*** dock levelers,

explaining that the patentee needed to meet the "entire market value rule" to collect lost profits

on unpatented products. *Rite-Hite*, 56 F.3d at 1549. That rule requires that the patentee show (1)

the patented feature is "the basis for customer demand" for an "apparatus containing several

features" and (2) the "unpatented and patented components are physically part of the same

machine," or "the unpatented and patented components together were considered to be

components of a single assembly or parts of a complete machine, or they together constituted a

functional unit." *Id*. at 1549-50, 1572. "The facts of [*Rite-Hite*] d[id] not meet this requirement,"

*id*. at 1550, and therefore the patentee could not collect damages on the levelers, despite proving

"but for" causation.

As the Federal Circuit explained, "there is no basis for extending that recovery to include

damages for items that are neither competitive with nor function with the patented invention."

*Rite-Hite*, 56 F.3d at 1551. This holding is compelled by the Supreme Court's mandate that patentees, in "every case," provide "evidence tending to separate or apportion … patentee's damages between" the "added … usefulness" of the patent's "improvement" and "the other parts" of the "marketable article." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337 (Fed. Cir. 2009) (partly quoting *Garretson*, 111 U.S. at 121) (emphasis added). It ensures that a patentee "seek[s] only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (citing *Garretson*, 111 U.S. at 120–21).

The remainder of Janssen's citations merely confirm that the principles of the entire market value rule must be met to seek damages beyond the footprint of the patented invention. *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996); and *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119 (Fed. Cir. 2003) have all been subsequently recognized as applications of the entire market value rule. *Rite-Hite*, 56 F.3d at 1550 (discussing *Paper Converting's* application of EMVR); *Boeing Co. v. United States*, 86 Fed. Cl. 303, 316-17, n.12 (2009) (referencing *Minco* as an application of EMVR); *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1372 (Fed. Cir. 2004) (recognizing *Micro Chem.* as an application of EMVR).

As noted, Janssen flunks this test from the get-go, as it never showed that the accused cell culture media is "the basis for customer demand" for Remicade®. *Rite-Hite*, 56 F.3d at 1549. Dr. Nicholson never even attempted such a showing, nor could he, as shown in Defendants' opening brief. *See* Dkt. 240 at 12-13. By contrast, the inventions at issue in *Micro Chem.*, *Minco*, and *Paper Converting* all drove demand for the damages measuring product. For example, "[t]he auxiliary components [in *Paper Converting*] ***derived their market value*** from the patented rewinder…." *Rite-Hite*, 56 F.3d at 1550 (emphasis added). Likewise, *Minco* involved "evidence

of **demand for the patented furnace**"—which both the patentee and infringer used to compete in the market—and "the absence of acceptable non-infringing substitutes, [] shown by **strong market preference for the fused silica produced by the patented furnace.**" *Minco*, 903 F. Supp. at 1222 (emphasis added); *see also Minco*, 95 F.3d at 1119 (same). And "the record show[ed] that two other primary fused silica manufacturers had bowed out of the market 'in deference' to the [asserted] patent." *Minco*, 95 F.3d at 1119. In *Micro Chem.*, the patented machines similarly formed the basis for customer demand for microingredients because once a farm possessed the patented machine, it needed microingredients for it to dispense. *See Micro Chem.*, 318 F.3d at 1121.

Janssen's remaining arguments need not detain the Court for long. Janssen misrepresents *Micro Chem.*'s procedural posture and holding when it described the case as "holding that lost profits damages were properly awarded where it was 'reasonably foreseeable' that infringement would cause plaintiff to lose sales of an unpatented product." Dkt. 295 at 5. Instead, the Federal Circuit reversed a finding of no lost profits and remanded to provide the patentee "an opportunity to prove lost profits under the Panduit test" or "the two-supplier market test." *Micro Chem.*, 318 F.3d at 1124, 1125. The Federal Circuit also expressly rejected Janssen's argument that *Paper Converting* only required that the patentee show an "objectively reasonable probability that a patentee would have made the relevant sales." *Rite-Hite*, 56 F.3d at 1550. None of these cases discuss apportionment, and they certainly do not stand for the proposition that apportionment is not required. Instead, they confirm that to go beyond the patented product, Janssen must meet the principles of the entire market value rule.

### C.    Apportionment Is Not Limited to Multi-Component Products

Janssen ignores the requirement to apportion in "every case," *Garretson*, 111 U.S. at 121, by arguing that the entire body of apportionment case law is restricted only to multi-component

or multi-feature products. Dkt. 295 at 9-11. Of course, that is not the law. *See, e.g.*, *Mentor Graphics*, 851 F.3d at 1287 ("apportionment is an important component of damages law **generally**, and we believe it is **necessary** in both reasonable royalty and lost profits analysis") (emphasis added); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("apportionment is required even for non-royalty forms of damages").

Janssen's argument is premised on the idea that in cases of multi-component products, "an available non-infringing alternative will always exist in the form of 'the infringing product without the patented feature.'" Dkt. 295 at 10 (citing *Mentor Graphics*, 851 F.3d at 1286). That may be true in some cases, but does not mean that apportionment is **only** required for multi-component products. *Mentor Graphics* simply noted that the "absence of acceptable non-infringing alternatives[] often proves the most difficult obstacle for patent holders," because a customer might "have bought the infringing product without the patented feature or with a different, non-infringing alternative to the patented feature." *Mentor Graphics*, 851 F.3d at 1286. That is not a justification for eliminating the apportionment requirement, it is merely recognition that there are multiple ways that efforts to prove lost profits can fail.

Janssen cites no case where the Supreme Court or the Federal Circuit restricted apportionment only to damages based on "multi-component" products that include the patented invention. That Janssen's theory is unsupported is not surprising. The Supreme Court has already explained that apportionment would be required in circumstances similar to those here. "[O]ne who invents some improvement in the machinery of a mill could not claim that the profits of the whole mill should be the measure of damages for the use of his improvement." *Seymour v. McCormick*, 57 U.S. 480, 489 (1853). An improvement to the upstream process to produce flour—the mill—cannot result in all of the profits of the downstream product—the flour—going

to the patentee. The damages must be apportioned despite the fact that the flour is not a "multi-component" product. That point works here exactly: Janssen's patent relates to a product used in an upstream process (cell media), and it cannot result in an award of all of the profits of the downstream infliximab product.

Janssen next argues that because "[t]he patented technology is a necessary predicate to the existence of Defendants' Inflectra product," apportionment does not apply. Dkt. 295 at 11. Of course, the Federal Circuit has rejected this argument, too.  It is not enough to show even that the patented feature is "essential" to the end product or that an end product without the patented feature would be "commercially unviable." *LaserDynamics*, 694 F.3d at 68. Otherwise, a "plethora of features" would be "deemed to drive demand for the entire product." *Id*.

Janssen's theory inverts the reasoning behind apportionment. Under Janssen's theory, infringement of *a single* component used in a process to make a ***non-patented*** product justifies recovery of 100 percent of the profit of the non-patented product. That theory makes apportionment ***more important***, not less important. Especially here, ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

Janssen's reliance on *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330 (Fed. Cir. 2015) is of no avail. That case was not about lost profits. *Id*. The parties had "agreed that damages were to be assessed based on a reasonable royalty theory." *Id*. Janssen's suggestion that *AstraZeneca* does not require apportionment where the infringement is a predicate basis for the existence of the product is incorrect because "Astra's patents cover[ed] the infringing product ***as a whole***, not a single component of a multi-component product." *Id*. at 1338 (emphasis added).

Thus, there was "no unpatented or non-infringing feature in the product." *Id*. Janssen, by contrast, seeks damages based on infliximab, which does not contain the accused media at all and is ***unpatented***. Thus the entirety of the article is ***non-infringing***.[1]

The *CardioNet* case likewise does not aid Janssen. The *CardioNet* court recognized that "[a]pportionment is ***required*** where the infringing product contains both patented and unpatented components." *CardioNet, LLC v. ScottCare Corp.*, 2017 WL 4742476, *4 (E.D. Pa. Oct. 19, 2017). Further, the *CardioNet* court recognized that "in certain cases, the apportionment requirement may be satisfied using the *Panduit* factors." *Id*. These findings support excluding Dr. Nicholson's opinion, not presenting it to the jury. And as explained below, Dr. Nicholson did not even apply the *Panduit* factors, instead he changed them.

### D.  Janssen's "Adapted" Version of *Panduit* Fails to Show "But For" Causation In Any Event

As explained in Defendants' opening brief, Dr. Nicholson's misapplication of the *Panduit* factors requires the exclusion of his lost profits opinion. Dkt. 240 at 16-19. Now Janssen ***admits*** that Dr. Nicholson did not apply the *Panduit* factors, arguing "[t]hose factors needed to be ***adapted***" for this case. Dkt. 295 at 2, 13-16 (emphasis added). But merely "calling a thing by a name does not make it so." *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 174 (1976).

---

[1] Janssen also either fundamentally misunderstands or misrepresents ***what*** the alleged infringing act is in this case. For example, Janssen states that it "will demonstrate that Defendants infringed the '083 patent by ***using*** infringing cell media to make Inflectra," and that "Defendants' infringing ***use*** of the patented media caused Janssen to lose profits…." Dkt. 295 at 2 (emphasis added). This is simply not true. The use of a patented product in Korea cannot infringe a U.S. patent. *See, e.g.*, *Brown v. Duchesne*, 60 U.S. 183, 195–96 (1856) ("[T]he use of [the patented invention] outside of the jurisdiction of the United States is not an infringement of [the patentee's] rights, and he has no claim to any compensation for the profit or advantage the party may derive from it."). Janssen actually alleges that GE HyClone's manufacture of the accused cell culture media in the U.S. and the exportation of certain ingredients infringes the '083 patent. *See* Dkt. 1 ¶¶ 112-14, 122, 127, 133; Dkt. 94 ¶¶ 34, 48.

At bottom, "the *Panduit* test is a demanding one," *Mentor Graphics*, 851 F.3d at 1289, and Janssen simply has not met it. Janssen's admitted inability to satisfy *Panduit*—the only test Dr. Nicholson purports to apply—means it is not entitled to lost profits damages. It cannot rewrite the test—particularly a well-established test like *Panduit*—to get the outcome it prefers. *See A.C. Castle Constr. Co. v. Acosta*, 882 F.3d 34, 42 (1st Cir. 2018) (rejecting proposed interpretation of test factor which "would rewrite the test as stating 'common business address' rather than 'common worksite,' which is the term used in [the test]"); *Price v. Soc. Sec. Admin.*, 398 F.3d 1322, 1327 (Fed. Cir. 2005) ("This court declines Ms. Price's invitation to rewrite the law governing the 'gross procedural error' *Allen* factor.").

Dr. Nicholson's application of "*Panduit*" is so fundamentally flawed that it does not even show "but for" causation. "***Properly applied***, the *Panduit* test is an acceptable, though not an exclusive, test for determining 'but for' causation." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) (emphasis added). But it "operates under an inherent assumption, not appropriate in this case, that the patent owner and the infringer sell products sufficiently similar to compete against each other in the same market segment." *Id*. That "market" is the market for the "patented product." *Id*. at 1218-19. Of course, ████████████ ████████████████████████████████████████████████████████████████ ████████████████████ *see Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) ("demand for the patented product"); *Gyromat Corp. v. Campion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984) ("capability to meet the demand for the product covered by the patent"); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991) (the patent owner must prove "(1) a demand for the patented product," and "(3) the patent owner's manufacturing and marketing capability to exploit the demand for the

patented product."); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 891 F. Supp. 751, 825 (E.D.N.Y. 1995), *aff'd*, 96 F.3d 1409 (Fed. Cir. 1996) ("The third-Panduit factor concerns the manufacturing and marketing capability of the patentee to meet the demand for the patented product.").

Janssen brazenly brushes aside the "patented product," arguing that "the relevant demand that causes lost profits is the demand for the non-patented product Remicade®, ***not the patented product itself***." Dkt. 267 at 4. This alone negates any attempt to prove lost profits because causation requires showing "demand for [the] ***patented component***." *Calico Brand, Inc. v. Ameritek Imps., Inc.*, 527 F. Appx. 987, 996 (Fed. Cir. 2013) (emphasis added). Because Janssen "make[s] no attempt to argue that the [patented component] drives demand," lost profits are inappropriate. *Id*. Janssen's attempt to substitute demand for unpatented Remicade® fails to meet "the first *Panduit* factor [and] does not operate to satisfy the elemental 'but for' test." *BIC*, 1 F.3d at 1219.

Janssen cites *Radware* for the proposition that Dr. Nicholson can "adapt[]" the *Panduit* factors, but that case does not assist Janssen. Instead, it confirms that Dr. Nicholson's opinions should be excluded. In *Radware*, the patentee argued that the accused infringer's expert had construed *Panduit* factor one too narrowly as "whether demand existed for the patented feature," as opposed to "whether demand existed for the patented product." *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 590121, *17 (N.D. Cal. Feb. 13, 2016).[2] But the court found that "whether demand existed for the patented feature" was relevant to the ***second** Panduit* factor (and "the 'but for' analysis as a whole") and that the expert had "not limited [her discussion] to *Panduit* factor one." *Id*. Far from endorsing an "adapted" version of *Panduit*, the court found that the expert had

---

[2] *Order clarified*, No. 5:13-CV-02024-RMW, 2016 WL 9001260 (N.D. Cal. Feb. 22, 2016).

properly applied the factors as they exist and could opine that the patentee "cannot establish lost profits" because of a lack of evidence showing the patents "were a driver of consumer demand" for the alleged lost sales. *Id*. The court never endorsed any modification of *Panduit* that ignores demand for the patented product or the patentee's inability to meet such demand.

Janssen goes on to argue that it can prove "but for" causation for the "relevant demand" because it can manufacture and sell Remicade® and (under its theory) Celltrion has no alternative cell culture media for making infliximab. Dkt. 267 at 4; Dkt. 295 at 2-3. Even under these assumptions, however, Janssen's theory of "but for" causation fails because it cannot show an absence of non-infringing alternatives "to the patent owner's product," *i.e.*, **Remicade®**. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1381 (Fed. Cir. 2017). "[I]f there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale." *Mentor Graphics*, 851 F.3d at 1286. Remicade®—the product for which Janssen seeks lost profits— competes against ████████████████████████████████ over a dozen drugs treating overlapping indications. ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Thus, even without an alternative to the accused cell culture media, it does not "follow as a matter of course"

that Remicade® would necessarily garner more sales or charge higher prices.[3] Dkt. 295 at 1. Janssen does not mention, let alone address, any of these alternatives to Remicade®.

The central problem with Dr. Nicholson's "*Panduit*" analysis is that it mixes and matches markets, the end result being that "but for" causation for lost profits is not proven in either market. Under Janssen's Franken-test, it has not shown that Janssen lost any sales in the cell culture media market because it failed to show it could fulfill any demand for cell culture media (*Panduit* factor 3). Likewise, such a test does not prove lost profits in the drug market because Janssen has not shown the absence of non-infringing alternatives to Remicade® (*Panduit* factor 2). In other words, Janssen's Franken-test would allow it to recover "lost profits" even if in a world without Inflectra®, an Inflectra® sale would have gone to another Remicade® competitor. This is not correct as a matter of law and logic. "An award of lost profits may not be speculative. Rather the patent owner must show a reasonable probability that, absent the infringement, it would have made the infringer's sales." *BIC*, 1 F.3d at 1218.

While Janssen makes much of the fact that *Panduit* is "[o]ne useful, but non-exclusive method" to prove lost profits, Dkt. 295 at 13, that is irrelevant here. Dr. Nicholson's so-called *Panduit* analysis was the **only** methodology he applied to determine whether lost profits were appropriate. Dkt. 240 Ex. 5, Report at 3; Dkt. 240 Ex. 1, Nicholson Dep. Tr. at 197:11-19. Dr. Nicholson misapplied that analysis, and his lost profits opinion should be excluded.

## III.   JANSSEN IMPROPERLY BASES ITS REASONABLE ROYALTY ON INFLECTRA® RATHER THAN THE ACCUSED PRODUCTS

To justify Dr. Nicholson's failure to apportion his so-called reasonable royalty, Janssen

---

[3] Indeed, Remicade®'s market share implies that any damages based on Remicade® should be lower, even under Janssen's theory. Other record evidence shows that ███████

makes two arguments, neither of which save Dr. Nicholson's opinion.

First, Janssen argues that because courts have permitted the hypothetical negotiation to take into account anticipated profits that Janssen need not apportion. Dkt. 295 at 12. But both cases Janssen cites address anticipated profits on *patented products*, not a downstream *unpatented* product. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 768 (Fed. Cir. 2014); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990). Moreover, in *Trell* the Federal Circuit reversed a "reasonable royalty" of 6 percent on the accused device because other record evidence "tend[ed] to negate" that high royalty rate, including the fact that "the infringement…relate[d] to only one aspect of its accused device" and that "the cost of producing that infringing aspect…was relatively small and did not contribute appreciably to [the infringer's] sales price or profit" on the accused products. *Trell*, 912 F.2d at 1446. Dr. Nicholson suggests a "reasonable royalty" based on *unpatented* Inflectra® ██████████████ ████████████████████████████████████████████████████████████

In any event, Janssen's argument is a *non sequitur*. Even if the hypothetical negotiation may take into account anticipated profits, "to be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *See Commonwealth Sci. and Indus. Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015); *VirnetX*, 767 F.3d at 1328 ("only theories comporting with settled principles of apportionment [are] allowed to reach the jury"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311-12 (Fed. Cir. 2018) (vacating portion of reasonable royalty opinion which failed to apportion); *LaserDynamics*, 694 F.3d at 66 (affirming grant of new trial on damages due to expert's failure to apportion).

Second, Janssen cites to *Finjan* and implies that decision restricted the general rule of

using the smallest salable patent practicing unit as the basis for a reasonable royalty to "multi-component" products. Dkt. 295 at 12. Janssen is wrong. While the accused product in *Finjan* was a multi-component product, the court ***did not*** limit the concept of the smallest saleable unit to such products. Instead, the court explained that, even starting from the smallest salable patent practicing unit, ***further*** apportionment could be required in order to meet the "'essential requirement' that the 'ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018).

Here, Inflectra® is entirely non-infringing and contains valuable features—such as the infliximab antibody itself—which requires apportionment. By contrast, the accused media themselves are the smallest salable patent practicing units. Dr. Nicholson's decision to use an unpatented product for the basis of his reasonable royalty does not excuse his failure to apportion.

## IV.    JANSSEN MISCHARACTERIZES THE COURT'S PRIOR GUIDANCE

Finally, seeking to prop up its legally bankrupt theory, Janssen mischaracterizes the Court's prior guidance on damages issues. Janssen argues that the parties have already briefed and argued the issue of apportionment and that it has already won. Dkt. 295 at 1. That is not true. The parties never briefed or argued apportionment, and the Court never decided it. No. 15-cv-10698, Dkts. 412, 414, 441, 445, 460, 471, 518. Indeed, no court has ever blessed a damages theory like Dr. Nicholson's. As the Court may recall, the briefing from 2017 focused on other issues including territoriality, the BPCIA "patent dance," non-infringing alternatives, standing, and certain issues surrounding Janssen's request for an injunction. *Id*.

Janssen also cites to a prior hearing, where Defendants supposedly "raised the same 'apportionment' argument." Dkt. 295 at 4. That too is false. The discussion in that hearing

involved territoriality, burdens of proof for non-infringing alternatives, and the date on which to start the non-infringing alternative analysis. *See* Dkt. 515 at 91:24-93:5. The single comment that "lost profits [are] designed to measure the intrinsic value of the invention" is not the same as briefing and arguing the issue of apportionment. *Id*. at 141:8-9. The brief Janssen cites does not address apportionment. *See* Dkt. 295 at 4 (citing No. 15-cv-10698, Dkt. No. 414 at 6). Instead it addressed the issue of an injunction and the causal nexus necessary to obtain such relief. *See* No. 15-cv-10698, Dkt. No. 414 at 6. Janssen's claim that Defendants were "content to leave" the Court's "guidance" alone also has nothing to do with apportionment. Dkt. 97 at 28:3-13. Defendants merely agreed that they did not need a formal ruling on territorial issues and could "reserve that [issue] through other avenues." *Id*.

In any event, Dr. Nicholson had not submitted an expert report at the time (he had not even been disclosed as an expert), and, therefore, Defendants could not have raised the numerous flaws with his analysis at the time. Indeed, given Janssen's prior admission that "[t]he *Panduit* factors are not well suited to the facts of this case," No. 15-10698, Dkt. 412 at 3, Defendants had no expectation that Janssen would ***even try*** to apply *Panduit*. Janssen's misrepresentations do not justify allowing Dr. Nicholson's improper opinion to reach the jury.

## V.    CONCLUSION

Janssen has not and cannot justify Dr. Nicholson's failure to apportion. Further, Janssen concedes that Dr. Nicholson did not faithfully apply the *Panduit* factors, and his Franken-test for damages fails to even show "but for" causation. Thus, Defendants respectfully request that the Court grant Defendants' *Daubert* motion regarding Dr. Nicholson and exclude his opinions from trial.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc.,
and Hospira, Inc.

By their attorneys,

/s/Andrea L.  Martin, Esq.
Dennis J.  Kelly (BBO # 266340)
Andrea L.  Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299
dkelly@burnslev.com
amartin@burnslev.com

*Of counsel:*

Charles B.  Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL  60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

James F. Hurst, P.C.  (*pro hac vice*)
Bryan S.  Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
noah.frank@kirkland.com

*Attorneys for Defendants Celltrion Healthcare*
*Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed through the electronic filing system and served electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Andrea L. Martin*