**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JANSSEN BIOTECH, INC., <br><br>      Plaintiff, <br><br>   v. <br><br> CELLTRION HEALTHCARE CO., LTD., <br> CELLTRION, INC., and <br> HOSPIRA, INC. <br><br>      Defendants. | No. 1:17-cv-11008 <br><br><br> **PUBLIC-** <br> **REDACTED VERSION** |

<u>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THERE WERE AVAILABLE AND ACCEPTABLE NON-INFRINGING ALTERNATIVES TO THE ASSERTED PATENT**</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      Introduction ....................................................................................................... 1

II.     Argument ........................................................................................................... 4

      A.      No Dispute Of Material Fact That The Modified Media Is Non-Infringing........... 4

      B.      No Dispute of Material Fact That The Modified Media Is "Available"............... 13

      C.      No Dispute of Material Fact That The Modified Media Is "Acceptable" ............ 14

III.    Conclusion ...................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*,
    808 F.3d 1313 (Fed. Cir. 2015)...............................................................................1, 4, 5, 7

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
    651 F.3d 1318 (Fed. Cir. 2011)....................................................................................1, 2, 8

*Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*,
    16 F.3d 394 (Fed. Cir. 1994)...................................................................................... *passim*

*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*,
    305 F.3d 1303 (Fed. Cir. 2002)................................................................................2, 9, 10

*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)............................................................................13, 14, 15

*L-3 Communications Corporation v. Sony Corporation*,
    971 F. Supp. 2d 437 (D. Del. 2013)................................................................................11

*Overhead Door Corp. v. Chamberlain Grp., Inc.*,
    194 F.3d 1261 (Fed. Cir. 1999).........................................................................................9

*Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*,
    822 F.2d 1528 (Fed. Cir. 1987).....................................................................................3, 11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016)................................................................................ *passim*

*Sage Prod., Inc. v. Devon Indus., Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997).....................................................................................1, 2, 9

*Standard Havens Products, Inc. v. Gencor Industries, Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991).......................................................................................15

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008)..................................................................................1, 4, 8, 9

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
    520 US 17 (1997).......................................................................................................4, 6

I.      **Introduction**

Janssen's opposition makes three arguments, but all are legal error, and none create a genuine dispute of material fact.

*First*, Janssen argues that claim vitiation would *not* occur if its claims were construed to cover a media containing only one of two required magnesium ingredients. But, in fact, that is classic claim vitiation, because one element would be missing entirely. Janssen argues that it can avoid vitiation, and instead prove equivalence, if the media compensates for the elimination of *one required* magnesium ingredient by increasing the concentration of the *other required* magnesium ingredient. That is not the law.

In fact, the Federal Circuit has already rejected that very argument. "A patentee, bearing the burden of showing equivalence, cannot merely point to ***other claim limitations*** to satisfy the doctrine of equivalents," which would run afoul of the Supreme Court's "all-elements rule" requiring "special vigilance against allowing the concept of equivalence to eliminate completely" claim elements. *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1320 (Fed. Cir. 2015).[1]

Here, Janssen is "merely point[ing] to [an]other claim limitation[]"—the other required magnesium ingredient—to supply equivalence for the missing magnesium ingredient. Janssen's argument makes no sense. One claim element would still be missing entirely. And the Federal Circuit has already repeatedly rejected Janssen's argument in indistinguishable cases. *E.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016) (reversing jury verdict of infringement by equivalents); *Dolly, Inc. v. Spalding & Evenflo Companies, Inc.*, 16 F.3d 394, 399 (Fed. Cir. 1994) (reversing summary judgment of infringement by equivalents);

---

[1] All emphasis added. Internal quotations and citations omitted in this brief unless otherwise noted.

*Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1429 (Fed. Cir. 1997) (affirming summary judgment of no infringement by equivalents), *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1376-77 (Fed. Cir. 2008) (same), *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1338 (Fed. Cir. 2011) (same).

Under long settled law, infringement requires proof that "*every element* in the claim is literally or equivalently present in the accused device." *Sage*, 126 F.3d at 1423. If, say, magnesium chloride were eliminated, the compensating increase in magnesium sulfate would still meet the requirement for *magnesium sulfate* literally (if the concentration matched the required concentration) or equivalently (if the concentration was "insubstantially" outside that range). But in either case, *magnesium chloride* would still be missing entirely. That is vitiation.

Janssen attempts to avoid this settled law by citing irrelevant rules that apply to different circumstances. It has long been settled that "[e]quivalency can also exist when separate claim limitations are **combined** into a single component of the accused device." *Dolly*, 16 F.3d at 398. In other words, equivalency can be established without vitiation as follows:

• **Combined Elements**: Element A and Element B are equivalent to Combined AB.

By contrast, vitiation *does* occur upon an attempt to prove equivalence as follows:

• **Missing Element**: Element A and Element B are equivalent to Element A alone.

Janssen is ignoring this important distinction. Cases like *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1317 (Fed. Cir. 2002), which Janssen relies on heavily, deal with the combined elements scenario, where the patentee combined two claimed elements into a single structure.

By contrast, cases like *Power Integrations*, which Defendants cite, deal with a missing element. Another case like *Power Integrations,* for instance, is *American Calcar*, which likewise

held that "finding a signal from one source to be equivalent to 'signals from a plurality of sources' [at least two] would vitiate that claim limitation by rendering it meaningless." *Am. Calcar*, 651 F.3d at 1339. Another example is *Dolly*, where the Federal Circuit rejected an equivalence argument that "*one* element of the accused device fulfills *two* functions," simultaneously providing "*both*" one required element "*and*" the missing claim element. *Dolly*, 16 F.3d at 398-399.

"[T]he doctrine of equivalents… is not designed to permit wholesale redrafting of a claim to cover non-equivalent devices." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987). But that is exactly what would happen if the complete absence of a required element could still infringe the claims. Courts cannot "convert a multi-limitation claim to one of [fewer] limitations to support a finding of equivalency." *Id.* Janssen's doctrine-of-equivalents argument fails as a matter of law.

***Second,*** Janssen argues the alternative is not "available on the date of first infringement" because it would have taken a month to several months to implement. Opp. at 10. But the argument fails because the right time to ascertain "availability" is the accounting period, not the date of first infringement, a legal error the Defendants thoroughly debunked when opposing Janssen's motion for summary judgment of no non-infringing alternatives. Dkt. 303 at 14-18.

***Third***, Janssen argues that the modified media would not be "acceptable" to Celltrion because its legal team "would [not] actually consider the trivial changes reflected in the Modified Media" to be "non-infringing." Opp. at 18. That is not the law. The "acceptability" of the alternative looks at whether it is accepted in the marketplace—which helps establish the economic value of the claimed invention—not whether lawyers supposedly would be comfortable with the alternative's legal status. How would anyone ever prove that anyway? Put lawyers on the stand? Nonsense. If this Court rules it is non-infringing, then it is not infringing, period.

As a matter of law, the elimination of a required ingredient, a magnesium ingredient, would be a non-infringing alternative. Summary judgment should be granted.

## II.     Argument

None of Janssen's three arguments has any merit.

### A.     No Dispute Of Material Fact That The Modified Media Is Non-Infringing

Janssen argues that the proposed modified media would infringe under the doctrine of equivalents because using one required magnesium ingredient allegedly is equivalent to using two required magnesium ingredients. Opp. at 4-10. The Federal Circuit has repeatedly rejected Janssen's theory.

Under the "all elements rule," the accused product must contain "elements identical or equivalent to each claimed element of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 US 17, 40 (1997). In that analysis, the "doctrine of equivalents cannot extend or enlarge the scope of the claims." *Dolly*, 16 F.3d at 398. Nor is it "a license to ignore claim limitations." *Id.*

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. "It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." *Id.*

Accordingly, "[a] patentee, bearing the burden of showing equivalence, cannot merely point to other claim limitations to satisfy the doctrine of equivalents. Doing so runs afoul of the 'all-elements rule.'" *Advanced Steel*, 808 F.3d at 1320. While there "need not be a one-to-one correspondence between elements of the accused device and the claimed invention that does not condone ignoring a claimed limitation in assessing infringement under the doctrine of equivalents.

4

Such a holding would be contrary to the 'all elements' rule." *TIP Sys.*, 529 F.3d at 1376-77.

In other words, while an accused product might combine elements A and B into a single combined component AB, both A and B must still be present at least equivalently. At the same time, the patentee cannot—as Janssen attempts to do here—assert that element A is equivalent to element B and therefore infringement requires only element A. That would violate the "all elements" rule. A patentee's "attempt to establish that the [accused product] functions in substantially the same way as the claimed invention by reference ***only to other claim elements*** does not satisfy its burden on the doctrine of equivalents." *Advanced Steel*, 808 F.3d at 1320.

That is settled law. Janssen attempts to distort the case law to show otherwise, but it fails. It cannot distinguish any of Defendants' cited cases, including *Power Integrations*, which reversed a jury's infringement finding because "***not using two*** distinct signals to control voltage and current can't be equivalent to ***using*** distinct signals—the signals are either distinct or they aren't." *Power Integrations,* 843 F.3d at 1344. "A finding to the contrary" would violate the rule against vitiation because it "would render the requirement that the feedback signals be 'distinct'… meaningless." *Id*.

So too here. A media using only ***one*** required ingredient to supply magnesium "can't be equivalent" to the claims requiring ***two*** ingredients to supply magnesium, which would plainly render "meaningless" and thus vitiate the requirement of ***two*** sources of magnesium.

Janssen makes much of the fact that *Power Integrations* construed the claims to explicitly require that the "second feedback signal be 'distinct from the first feedback signal.'" *Power Integrations,* 843 F.3d at 1342. That makes no difference. Janssen is referring to the Federal Circuit's application of an unappealed claim construction, where the claim language did not necessarily require two separate signals (*i.e*., two elements) as opposed to allowing one combined

signal carrying information associated with two different sources (*i.e.*, one element): "a first feedback signal *associated with a voltage control loop* and a second feedback signal *associated with a current control loop*." *Id.* at 1338. After the district court held that "second feedback signal be 'distinct from the first feedback signal,'" nobody appealed, meaning there were two separate and distinct elements. *Id.* at 1342. Therefore, the Court held that "vitiation" occurred upon a jury verdict finding DOE infringement for a product "contain[ing] a ***single*** feedback signal, not ***two*** 'distinct' feedback signals as required by the claims." *Id* at 1344.

Here, the claim language on its face requires two separate and distinct elements. Janssen has never argued otherwise. Nor could it. ███████████████████████████████

████████████████████████████████████████████████████████████████████

██████ Dkt. 298, JSOF at Resp. to ¶ 2; Dkt. 260 Ex. 3, Butler Inv. Reb. ¶ 162. The claims do so by listing those two ingredients separately and specifically, and giving each ingredient its own required concentration amount: "anhydrous $MgCl_2$, 15-50 mg;" and "anhydrous $MgSO_4$, 20-80 mg." *Id*. Indeed, Dr. Butler opined █████████████████████████████████

████████████████████████████████████████████████████████████████████

Dkt. 260 Ex. 3, Butler Inv. Reb. ¶ 147.

Janssen also makes much of fact that the Federal Circuit in *Power Integrations* discussed the importance having two separate feedback signals, citing the inventor's trial testimony about the "difficulty" of creating two signals and his assertion that it "is what distinguished the claimed invention from the prior art." *Power Integrations,* 843 F.3d at 1344. But *nowhere* does the Federal Circuit hold that vitiation *turns on* the importance of the missing claim element, where vitiation would somehow be barred for allegedly "important" elements but allowed for allegedly "unimportant" elements.

The notion is absurd. *Janssen* itself chose to require two distinct magnesium ingredients in its claims. And the Supreme Court has definitively held—while discussing vitiation—that "***[e]ach element*** contained in a patent claim is deemed material." *Warner-Jenkinson*, 520 U.S. at 29. Moreover, for its validity position, Janssen specifically relies on its claims' required inclusion of a long list of separate and distinct ingredients. ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

In any event, other cases reach the same conclusion as *Power Integrations* in equally indistinguishable circumstances, where, again, the Federal Circuit specifically rejects efforts to "merely point to other claim limitations" to argue for equivalence for a missing element. *Advanced Steel*, 808 F.3d at 1320.

A good example is *Dolly*, which was about a claimed "child's chair," where the claim "require[ed] a stable rigid frame *independent* of seat and back panels," while the accused product "lack[ed] a stable rigid frame *separate* from the panels." 16 F.3d at 396, 398. In the trial court, the patentee prevailed on the doctrine of equivalents by arguing—similar to Janssen here—that ***other claim limitations*** supplied the missing "stable rigid frame," asserting that "***one element*** of the accused device ***fulfills two functions*** of the claimed chair—the [accused chair's back and seat] panels serve as ***both*** the stable rigid frame ***and*** the body supporting feature." *Id.* at 398-399.

Based on vitiation, the Federal Circuit reversed and specifically rejected that argument, which, again, is precisely what Janssen is arguing here. The Court noted that equivalency can

"exist when separate claim limitations are combined into a single component of the accused device" (16 F.3d at 396, 398-399) (*i.e.*, element A and element B can be equivalent to an accused device with combined AB). But the Court declined to extend that concept to an argument that one claim element is equivalent to two claim elements, in which case the absent element "cannot work in 'substantially the same way'" given that the "limitation (including its equivalent) is missing." *Id.* at 398-400. The Court explained:

> [T]he concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims. A stable rigid frame assembled from the seat and back panels is not the equivalent of a separate stable rigid frame which the claim language specifically limits to structures exclusive of seat and back panels.

*Id.* at 400. Thus, the Court declined—in a holding that controls here too—to "convert a multi-limitation claim to one of [fewer] limitations to support a finding of equivalency." *Id.* at 399.

The Federal Circuit in *Am. Calcar v. Am. Honda Motor* similarly held that "finding a signal from one source to be equivalent to 'signals from a plurality of sources' would vitiate that claim limitation by rendering it meaningless." 651 F.3d at 1339. Here, likewise, "finding [magnesium] from one source to be equivalent to '[magnesium] from a plurality of sources' would vitiate that claim limitation" requiring two magnesium sources, thus "rendering it meaningless."

In another indistinguishable case, the Federal Circuit in *TIP Sys. v. Phillips & Brooks/Gladwin* again rejected an effort to prove equivalence for *one* missing claim element by pointing to *another* claim clement. 529 F.3d at 1377. The claims in *TIP* required both a "phone housing" and a "handle." *Id.* The Court thus rejected the argument that the "phone housing" in the accused product could satisfy *both* limitations. *Id.* It found "no merit" in the "argument that the phone housing substitutes for the handle," because any such finding would "be contrary to the 'all elements' rule." *Id.* Although "there need not be a one-to-one correspondence between elements of the accused device and the claimed invention, that does not condone ignoring a claimed

limitation in assessing infringement under the doctrine of equivalents." *Id.* Thus, the Court held it could not "find that the housing in the accused device functions as an equivalent of the 'handle' in the patented invention without rendering the 'housing' limitation meaningless." *Id.*

That holding controls here too. This Court cannot "find that [the first required magnesium ingredient] in the accused [media] functions as an equivalent of the [second required magnesium ingredient] in the patented invention without rendering the [first required magnesium ingredient] meaningless." *TIP Sys. v. Phillips & Brooks/Gladwin*, 529 F.3d at 1377. In other words, classic vitiation occurs when a patent argues that claim element A is equivalent to claim element B and therefore DOE infringement can be established with element A alone.

Yet another good example is *Sage Products, Inc. v. Devon Industries, Inc*. is on point. 126 F.3d at 1423-1424. There, the patent holder argued infringement by equivalents of a "disposal container" patent based on two distinct limitations, "top of the container" and "over said slot." *Id*. at 1424. But none of its infringement theories "simultaneously satisfied" *both* limitations at the same time. *Id*. Similar to Janssen here, the patentee was "essentially" arguing that "having *two constrictions* below the top of the container is the same, for purposes of infringement, as having *one constriction* above and one constriction below." *Id*. The Federal Circuit rejected that argument based on the "all elements" rule, finding that "the doctrine of equivalents does not grant [the patentee] license to remove entirely the 'top of the container' and 'over said slot' limitations from the claim. *Id.; accord Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261, 1271 (Fed. Cir. 1999) (noting that the "proposed application of the doctrine in *Sage Products* would have utterly written out of the claim not one, but at least two (maybe more) express limitations of the claim" and similarly noting that "[n]o matter how the patentee purported to apply the claim to the accused device under the doctrine, the device was always missing at least one limitation.")

Janssen cannot distinguish any of these cases. So instead, it relies on *Eagle*, which addresses a *different* circumstance where "***separate claim limitations are combined into a single element* of the accused device**." 305 F.3d at 1317. In *Eagle,* the accused device combined two different limitations into one structure. The claims recited "a collet assembly" "comprising… a front cap… [and] a rear insert body." *Id* at 1310. As shown below, the accused collet assembly did not have a separate "front cap" (yellow) and "rear insert body" (green); rather it had an "'integrated' insulation block" (blue). *Id*.



| *Eagle* Patent | Accused Product in *Eagle* |
| --- | --- |

*Id*. at 1308, 1311 (colors added). Thus, *Eagle* was about the unremarkable situation where the patentee argues that elements A and B are equivalent to a combined AB in the accused structure.

But *Eagle* is irrelevant to the current situation, where one element is missing entirely. Nobody is arguing that the proposed non-infringing media **combines** the two required magnesium ingredients into one multi-ingredient additive. One ingredient is just missing. The remaining source of magnesium could satisfy the limitation for ***that*** required ingredient, either literally or equivalent depending on its concentration. But the ***other*** required magnesium ingredient would remain missing entirely. Again, classic vitiation.

Ultimately, Janssen's effort to keep this case alive by constantly ignoring claim limitations is almost jaw dropping. According to Janssen, the '083 patent's claim limitations mean nothing at

all as long at the media is capable of growing cells. Janssen says the concentration limitations don't matter, and can equivalently cover concentrations reaching at least as high as 400% over the upper limit and as low as only 10% of the lower limit the accused media. Dkt. 228 ¶ 20. Indeed, Janssen's experts have argued that equivalent concentrations can be extended to even thousand-fold differences: "there's a broad plateau of interchangeable concentrations in cell media, you know, sometimes it's extremely broad, 2500 times." Dkt. 260 at Resp. to ¶ 11.

Janssen is now saying that the ingredient list doesn't matter either. In most instances, Janssen's claims specify a single ingredient to provide a single component required for growth. But even for those ingredients, Janssen's current theory would allow it to cover media using a completely different list of ingredients to supply those same components. Even worse, in addition to specifying two sources of magnesium ($MgSO_4$ and $MgCl_2$), the claims recite *three* sources of iron ($FeSO_4.7H_2O$, $Fe(NO_3)_3.9H_2O$, ferric ammonium citrate) and *two* sources of phosphate ($NaH_2PO_4.H_2O$, $Na_2HPO_4$). JSOF at Resp. to ¶ 2. Under Janssen's current equivalence theory, therefore, an accused media could *still* infringement by equivalence if it eliminated entirely *four required ingredients*, leaving one source each for magnesium, iron, and phosphate.

The Court has to reject Janssen's constant effort to ignore its claim limitations. Enough is enough. The doctrine of equivalents simply does not "permit wholesale redrafting of a claim to cover non-equivalent devices." *Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987). The bottom line is that "[a] single element is the antithesis of the requirement for two separate and distinct elements." *L-3 Communications Corporation v. Sony Corporation*, 971 F. Supp. 2d 437, 445-46 (D. Del. 2013) (granting summary judgment of non-infringement under the doctrine of equivalents). That is precisely why the modified media cannot infringe under the doctrine of equivalents. A single magnesium source is the antithesis of the

requirement for two separate and distinct magnesium sources. The modified media *is* a non-infringing alternative.

In addition to the lack of any genuine dispute on that issue, Dr. Butler's deposition provides yet another reason for this Court to reject Janssen's infringement theory—specifically, Janssen represented infringement was not in dispute to justify an instruction not to answer, thus shutting down any questioning on the issue in blatant violation of Federal Rule of Civil Rule of Procedure 30(c)(2). On March 21, 2018, Dr. Frohlich provided his report explaining how the magnesium substitution was a non-infringing alternative. Dkt. 247 Ex. 1, Frohlich Rep. ¶ 273. On April 10, 2018, Dr. Butler submitted his reply report without offering a counter opinion, ███████████ ████████████████████████████████████████████████████████ Dkt. 244 Ex. 1, Butler Damages Reply ¶ 112.

During Dr. Butler's deposition on April 17, 2018, Defendants then attempted to probe Dr. Butler's position on how infringement of the patent could be avoided. Janssen's attorney blocked any question with a wholly improper instruction not answer, contending there was no dispute in this area:



Ex. 1, Butler 4/17/18 Dep. Tr. at 307:12-308:13. On that same basis, Janssen's counsel instructed

Dr. Butler not to answer a total of at least four times on issues surrounding non-infringing alternatives. *See id.* at *e.g.* 300:17-308:13; *see also id.* 215:20-218:2 (*cf.* Dkt. 244 Ex. 1, Butler Damages Reply ¶ 89 (regarding infringement dispute)); 249:6-250:22, 252:14-255:10, and 261:20-262:21 (*cf.* Dkt. 247 Ex. 1, Frohlich Rep. ¶ 119, 176).

Defendants were therefore shocked to see infringement raised for the first time in Janssen's opposition to Defendants motion for summary judgment. This is especially egregious given Janssen's recognition that the amount of magnesium sulfate in the alternative is over the claimed limit. Dkt. 297 at 10 n.5. Having shut down questions as to how the patent could be avoided, as well as representing that "infringement is not in dispute" for the "alternatives on the table," Janssen's course reversal on this alternative should be rejected.

### B.    No Dispute of Material Fact That The Modified Media Is "Available"

Janssen argues that magnesium alternative was not "'readily available' as of the date of first infringement" because it would take Celltrion "a matter of months" to substitute it for the accused media. Opp. at 12, 15. That's not the issue, however. The only relevant question in a lost profits analysis is whether the alternative is "available" as of the accounting period. That is precisely what *Grain Processing* and its progeny require. Defendants fully address and refute Janssen's misstatement of law in opposing Janssen's motion for summary judgment of no non-infringing alternatives. Dkt. 303 at 14-18. Defendants incorporate those arguments here by reference.

When looking at availability under the right legal framework, there is no dispute of material fact. ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ meaning that Celltrion could indisputably release a biosimilar infliximab made using the modified media no later than the accounting period. Dkt. 303.

Janssen takes issue with the amount of delay, claiming that its expert did not consider other important factors leading to further delay, concluding that it would actually take "months to substitute the modified media for the accused media." Opp. at 12. Even if Janssen did have evidence to back up that assertion, that dispute is not material. Whether the delay was a single month, or multiple "months" as Janssen alleges, there is no dispute—and Janssen never even addresses—that Defendants could get a biosimilar infliximab product on the market as of the accounting period.

Janssen also argues that the modified media is "purely theoretical" in the sense that Defendants have never implemented it. Opp. at 16-17. But there is no requirement that a substitute be actually implemented in the real world to qualify, and in fact, *Grain Processing* says just the opposite. *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350-1351 (Fed. Cir. 1999). Nor is there anything scientifically "theoretical" about the modification. ███████████

██████████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 1, Butler 4/17/18 Dep. Tr. at 115:24-116:13; JSOF at Resp. to ¶ 12; Opp. at 4. That makes this exactly the type of alternative that one must consider as a limit on a request for lost profits. *Id.*

Janssen also attacks the implementation of other alternative courses of action in the "real" world, arguing that they would not work. Opp. at 16-17. But, even putting aside the factual inaccuracies of Janssen's opposition, such arguments about the technical feasibility of other alternatives is irrelevant to the current motion.

Janssen's various "availability" arguments cannot save it from summary judgment.

### C.    No Dispute of Material Fact That The Modified Media Is "Acceptable"

Janssen argues that the modified media is not acceptable because "Celltrion would not have risked that such a modification… would turn out not to avoid the patent." Opp. at 18 (quoting Dkt.

247 Ex. 13, Lit Reply Report ¶ 107). But no case says that, and that is not the law. Whether or not a substitute is "acceptable" turns on whether the substitute shares the "advantages of the patented product" and whether "purchasers in the marketplace generally were willing to buy the patented product for its advantages." *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

It literally has nothing to do with whether the purchaser (here Celltrion) would have considered the substitute non-infringing under the case law. No case has ever said that and Janssen cites none. It also makes no sense, since the existence of a non-infringing alternative reflects on the *economic* value of the claimed invention. *Grain Processing*, 185 F.3d at 1351. How would anyone even present evidence about this hypothetical "uncertainty" about the law? A legal expert? Because if so, Defendants hereby seek leave to add a legal expert to explain that eliminating an ingredient is a classic way of avoiding infringement given long-settled vitiation rules. But ultimately this is an issue for the Court. If the Court finds the proposed alternative media non-infringing, that finding would be binding on both parties. It is not a matter for the jury.

As to whether the modified media would have been acceptable to the marketplace—which is the only question that matters—there is no dispute. Janssen and its expert admit that the difference between the modified media and the accused media (which of course works for its intended purpose) is "inconsequential" and "utter[ly] trivial[]." Opp. at 2-3, 4. Janssen agrees the change "would make no difference from a scientific perspective." *Id.* Janssen's acceptability arguments thus do not avoid summary judgment either.

## III.   Conclusion

For the reasons above, the Court should grant summary judgment that Janssen has failed to prove the absence of non-infringing alternatives and preclude Janssen from seeking lost profits.

Dated: June 4, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/*Andrea L. Martin, Esq.*
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: 617-345-3000
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
Gregory B. Sanford (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com
gregory.sanford@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 879-5000
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 4, 2018.

*<u>/s/Andrea L. Martin, Esq.</u>*
Andrea L. Martin, Esq.