## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANSSEN BIOTECH, INC., <br><br>          Plaintiff, <br><br>    v. <br><br> CELLTRION HEALTHCARE CO., LTD., <br> CELLTRION, INC., and <br> HOSPIRA, INC. <br><br>          Defendants. | No. 1:17-cv-11008 |

## DEFENDANTS' RESPONSE TO JANSSEN'S NOTICE OF SUPPLEMENTAL AUTHORITY [DKT. 316] REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT BASED ON ENSNAREMENT

Janssen misstates *UCB, Inc. v. Accord Healthcare, Inc.*, No. 2016-2610, 2018 WL 2324751 (Fed. Cir. May 23, 2018), in its notice of supplemental authority, Dkt. 316.  It half-quotes the beginning of the decision while neglecting to mention that the Federal Circuit—even in the context of a patent covering a chemical compound—specifically held that a lead-compound analysis is ***not*** necessary: "[A]n obviousness rejection by an examiner, or a challenge in court, ***may be based on the closest prior art***, which may not have been a lead compound that the inventor had in mind." *UCB,* 2018 WL 2324751, at *11.[1]  Janssen provides neither a legal nor logical basis to extend the lead-compound analysis to this case, which has nothing to do with a new chemical structure.  Doing so would violate decades of settled law.

In *KSR*, the Supreme Court rejected a "rigid approach" to an obviousness analysis in favor of an "expansive and flexible approach" that applies "common sense."  *KSR Intern. Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1739-43 (2007).  Here, nothing in the law nor common sense provides any

---

[1] All emphasis added, as well as all internal quotations and citations omitted.

basis for applying a lead-compound analysis, particularly considering that the only issue is whether swapping known interchangeable ingredients was obvious.

Without any purported lead-compound analysis, the Supreme Court in *KSR* provided the controlling law for this very situation: "[W]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result" to avoid obviousness. *Id.* at 1740. Similarly, "when a patent 'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* "[A] court must ask whether [any alleged] improvement is more than the predictable use of prior art elements according to their established functions" (*id.*)—a question Janssen does not even pretend can be answered affirmatively.

Neither *UCB* nor *Unigene* allows Janssen to avoid this controlling law. In fact, neither case holds that a lead-compound analysis is ***ever*** required, not even for patents on new chemical structures, much less here—a case about cell culture media where there is admittedly no patentable difference from two prior art media (GSK and Life Techs), because the claimed media merely substitutes a mere handful of known interchangeable ingredients.

In *UCB*, the prior art disclosed a chemical compound called "lacosamide" in a "racemic mixture," which is a mix of two mirror images of the same compound, like a right hand and a left hand, called the "R form" and the "L Form." *UCB*, 2018 WL 2324751 at *1. The disputed claim covered "the lacosamide compound with 90% or greater purity" of the R form. *Id.* at 5. Although the district court conducted a lead-compound analysis—because the patent covered a chemical structure—the Federal Circuit specifically held that "***no such analysis is required in this case***." *Id.* at 11. In fact, the Court held—even in the context of a compound patent—that an "obviousness

rejection by an examiner, or a challenge in court, may be based on ***the closest prior art***, which may not have been a lead compound that the inventor had in mind." *Id.* The court ***separately*** affirmed the district court's determination under the lead compound analysis, holding "[***e***]***ven if a lead compound analysis is required*** here, we hold that the district court did not clearly err." *Id.*

True, the Federal Circuit had "often used" a lead-compound approach to help analyze "structural similarities between the claimed compound and prior art." *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011). But that is because of the unique way chemists attempt to invent new compounds. Chemists "often" use a discovery process "based on a known compound, called a 'lead compound,' which serves as a starting point" for creating new chemical structures. *Id.* There are often hundreds, if not thousands, of possible "lead compounds." Thus, picking an unlikely lead compound—for instance, a compound generally deemed useless because of unfavorable properties, such as low potency or high toxicity—might by itself qualify as an inventive step, particularly considering that "[e]ven minor deviations in molecular structure can radically change a particular substance's properties and propensities" (*Glastetter v. Novartis Pharmaceuticals Corp.*, 252 F.3d 986, 990 (8th Cir. 2001)), potentially producing "dramatic and unpredictable biological effects." *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 2001 WL 1397304, *14 (S.D. Ind. October 29, 2001); *accord GlaxoSmithKline PLC v. Hikma Pharmaceutical Co., Ltd.*, 2012 WL 3561970, *15 (D.N.J. Aug. 16, 2012) ("Compounds even with slight [differences in] molecular structures can behave in very different ways and have very different properties."); *Takeda Chem. Indus. v. Alphapharm Pty., Ltd.,* 492 F.3d 1350, 1357 (Fed. Cir. 2007) (noting that even with "structural similarity" to a specific compound, obviousness still requires "some reason that would have led a chemist to modify [that particular] compound in a particular manner.").

There is no basis for that kind of analysis here.  Making cell culture media is nothing like a chemist's invention of a new chemical structure.  For literally decades, scientists have known the basic ingredients necessary for cell growth, such as minerals, vitamins, sugars, and proteins (amino acids). Dkt. 227 at 3 (citing Dkt. 227 Ex. 5 (Glacken Op.) at ¶ 70; Ex. 6 (Frohlich) at ¶ 63; SOF ¶¶ 22-23).  In fact, over time, there's also been a "convergence" of "opinions on the kind of ingredients" to include in the media, resulting unsurprisingly in many similar media with numerous common ingredients and overlapping concentrations.  Dkt. 227 at 8 (citing Dkt. 227 Ex. 3, 1/30/2018 Hr'g Tr. (Butler) at 88:11-25).  As a result, scientists can use any number of similar media as an appropriate "starting point" for optimization for a project involving a particular cell line and protein.  Unlike inventing a new chemical structure, optimizing a known media is not a situation where tiny changes often produce "dramatic and unpredictable" effects.  *Eli Lilly*, 2001 WL 1397304 at *14.

Moreover, no court has ever extended the lead-compound analysis as far as Janssen now proposes.  Until *Unigene,* courts had strictly limited that often-criticized approach to new chemical structures.  *See, e.g.,* Douglas L. Rogers, *Federal Circuit's Obviousness Test for New Pharmaceutical Compounds: Gobbledygook*?, 14 Chi.-Kent J. Intell. Prop. 49, 105 (2014) (describing the Federal Circuit's lead-compound analysis as "gobbledygook" and a "pre-*KSR* relic that is inconsistent with *KSR*" and *Graham.*).

Even in *Unigene,* the case involved the "chemical arts," according to the Federal Circuit, because the claimed invention was a new pharmaceutical formulation that was specifically designed to "mimic" another already "FDA-approved formulation" containing the same drug compound for treating osteoporosis.  *Unigene*, 655 F.3d at 1362.  Specifically, the claimed invention was a formulation to improve that compound's "absorption" and "stability" by adding

"about 20 mM citric acid." *Id.* at 1358. The Court thus found the case analogous to a "lead compound" case because "the patented formulation was made to mimic a previously FDA-approved formulation" and thus "the functional and pharmaceutical properties of the 'lead compound' can be more relevant than the actual chemical structure (though not always mutually exclusive)." *Id.* at 1361-62. In the end, however, the Court's lead-compound analysis was irrelevant to its holding, because the Court found that it *did* make sense for a POSA to use the "previously FDA-approved formulation" as the starting point for an improved formulation, but nevertheless found it "nonobvious" to add "20 mM citric acid" because no *other* prior art disclosed using the ingredient for the same purpose and function. *Id.* at 1362-63.

Based on nothing more than wishful thinking, Janssen nevertheless argues that the "upshot" of *UCB* and *Unigene* is that the lead-compound analysis must be applied to *any* patented composition of *any* kind where the "inventing process" includes the "selection" of a starting "composition." Dkt. 316 at 3. In other words, the lead-compound analysis should apply to *every case* because *every* "inventing process" involves the "selection" of *some* starting point.

That is nonsense. Janssen's proposal would upend decades of obviousness cases involving compositions, none of which—outside of the limited circumstances in *Unigene*—have ever applied a lead-compound analysis. Indeed, other cases have specifically rejected any such expansion. For instance, the Patent Office has held that the lead-compound analysis "appl[ies] to the chemical modification of chemical compounds and not to compositions" that are merely mixtures of various chemicals. *Ex Parte Rajnish Kohli & Jose Eder Fontana*, APPEAL 2014-005597, 2016 WL 3269664, at *2 n.2 (June 13, 2016). Applying that analysis beyond chemical structures, according to the Patent Office, would run "counter to the flexible analysis set by the Supreme Court in *KSR*," which "*recognizes the obviousness of pursuing known options within*

*the technical grasp of the skilled artisan, e.g., known equivalents*." *Ex Parte Abdul Gaffar*, 2015 WL 7720188, at *3; *accord Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) ("strong case of obviousness" where claim "recites a combination of elements that were all known in the prior art, and all that was required to obtain that combination was to substitute one well-known cooling agent for another").

Moreover, applying the lead-compound analysis here—where the patent claims a media that nearly matches the prior art media (GSK and/or Life Techs), which discloses every claimed ingredient either in the same chemical form or as an alternative form with the same active component—would be contrary to literally decades of settled law on obviousness.  Since the Supreme Court's decision in *Graham* in 1966, the central obviousness analysis required, first, the identification of "the differences between the prior art and the claimed invention" (here, the minimal differences between the '083 media and the GSK and/or Life Techs media) and, second, a determination of whether those "differences…would have been obvious at the time the invention was made" to a POSA.  *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 991 (Fed. Cir. 2009); *accord Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 37 (1966) (the "patent must fall as not meeting the test of § 103, *since the differences between them and the pertinent prior art* would have been obvious to a person reasonably skilled in that art."); *UCB*, 2018 WL 2324751 at *11 (noting that obviousness "may be based on *the closest prior art*"); *Tr. of Columbia Univ. in City of New York v. Illumina, Inc.*, 620 F. App'x 916, 932 (Fed. Cir. 2015) (noting that obviousness analysis with respect to secondary considerations "must" be "compared with "*the closest prior art*" (citing cases)); *Application of Winslow*, 365 F.2d 1017, 1020 (C.C.P.A. 1966) ("We see no 'hindsight reconstruction' here, but only selection and application by the examiner of *very pertinent art*. That is his duty."); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d

714, 718 (Fed. Cir. 1991) ("We conclude that the district court correctly determined the scope of the *pertinent prior art* and compared it to the claimed invention to ascertain the salient differences."); *Application of Susi*, 440 F.2d 442, 445 (C.C.P.A. 1971) ("The [prior art]'s disclosure is huge, but it undeniably includes at least some of the compounds recited in [the patentee's] generic claims and it is of a class of chemicals to be used for the same purpose as [the patentee's] additives."); *In re Corkill*, 771 F.2d 1496, 1500 (Fed. Cir. 1985) ("[I]t cannot be predicted how any candidate will work in a detergent composition, but that it must be tested, this does not overcome [the prior art's] teaching that [the class of compounds] will work.").

In short, Janssen's supplemental authority only confirms that summary judgment of non-infringement based on ensnarement is appropriate here.  This Court should follow *UCB* and thus consider the "closest prior art"—GSK and Life Techs—and then apply *KSR*'s holding that "mere substitution of one element for another known in the field" is obvious as a matter of law.  *KSR*, 550 US at 405.

Dated: June 11, 2018

Respectfully submitted,

Celltrion Healthcare Co., Ltd., Celltrion, Inc., and Hospira, Inc.

By their attorneys,

/s/*Andrea L. Martin, Esq.*
Dennis J. Kelly (BBO # 266340)
Andrea L. Martin (BBO #666117)
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Tel: 617-345-3000
dkelly@burnslev.com
amartin@burnslev.com

James F. Hurst, P.C. (*pro hac vice*)
Bryan S. Hales, P.C. (*pro hac vice*)
Elizabeth A. Cutri (*pro hac vice*)
Gregory B. Sanford (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: (312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com
elizabeth.cutri@kirkland.com
gregory.sanford@kirkland.com

Ryan Kane (*pro hac vice*)
James McConnell (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
ryan.kane@kirkland.com
james.mcconnell@kirkland.com

Noah S. Frank (*pro hac vice*)
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
Tel: (202) 879-5000
noah.frank@kirkland.com

Charles B. Klein (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
cklein@winston.com

Samuel S. Park (*pro hac vice*)
Dan H. Hoang (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-7931
spark@winston.com
dhoang@winston.com

*Attorneys for Defendants Celltrion Healthcare
Co., Ltd., Celltrion, Inc., and Hospira, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 11, 2018.

*/s/Andrea L. Martin, Esq.*
Andrea L. Martin, Esq.

4832-8051-4665.1